Michael J. Gomez (State Bar No. 251571)
  mgomez@frandzel.com
Reed S. Waddell (State Bar No. 106644)
  rwaddell@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
  gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor
FARM CREDIT WEST, FLCA

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>NORTHERN HOLDINGS, LLC,<br><br>Debtor. | Case No. 8:20-bk-13014-MW<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FARM CREDIT WEST, FLCA'S MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:    November 30, 2020<br>Time:   9:00 a.m.<br>Place:   Courtroom 6C<br>           United States Bankruptcy Court<br>           411 W. Fourth Street<br>           Santa Ana, CA 92701<br><br>Hon. Mark S. Wallace |

**TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE:**

Farm Credit West, FLCA ("FCW") submits the following Memorandum of Points and Authorities in support of its Motion for Relief from Automatic Stay ("Motion").

## I.   INTRODUCTION

This bankruptcy is a blatant scheme to hinder, delay, and defraud FCW to prevent its foreclosure sale. First, we have the traditional skeletal filing on the eve of the foreclosure sale with very few creditors. Next, we have two bankruptcies timed to stop a foreclosure sale. The first bankruptcy involved the same property over which relief from stay was litigated and granted in favor of FCW. Then, we have one of those bankruptcies occurring once state court litigation went awry for the debtor. Finally, we have an unauthorized transfer of real property to an affiliated insider of the prior debtor, also occurring on the eve of a foreclosure sale.

Equity demands relief. Not only must *in rem* relief from the automatic stay be granted, but extraordinary relief must be granted too in order to prevent the furtherance of more schemes.

## II.   FACTUAL BACKGROUND

This is the tortured story of two loans to Erich Lee Russell ("Russell") and his spouse, and their protracted attempts to thwart a foreclosure sale of their winery and vineyard.

### A.   Loan 1

On or about March 5, 2007, FCW made a $17,500,000.00 loan ("Loan 1") to Russell and Joanne Russell ("J. Russell" and together with Russell, "Borrowers"). Loan 1 is secured by a deed of trust and assignment of rents ("Deed of Trust") recorded in the San Luis Obispo County Recorder's Office on March 23, 2007, as instrument number 2007019418, against Russell's real property located in San Luis Obispo County (the "Real Property Collateral").

As additional security for Loan 1, the Borrowers and Rabbit Ridge Wine Sales, Inc. ("Rabbit Ridge"), executed and delivered to FCW a security agreement ("Security Agreement"), granting FCW a security interest on all of their existing and after-acquired goods, farm products,

inventory, bulk and cased wine inventory, accounts, general intangibles, equipment, and proceeds thereof, including fixtures on certain real property more particularly described in the Security Agreement ("Personal Property Collateral" and together with Real Property Collateral, "Collateral").[1]  (Kevin Ralph ["Ralph"] Decl. ¶¶ 3 - 7, Exhs. 1 - 5.)

### B. Loan 2

On or about January 15, 2009, FCW made a further advance of $3,525,000.00 ("Loan 2") to the Borrowers.  The Borrowers each also executed and delivered to FCW a Notice of Advance Under Deed of Trust ("Notice of Advance"), which constituted an advance secured by the Deed of Trust, which Notice of Advance was recorded on February 6, 2009, in the San Luis Obispo County Recorder's Office, assigned document number 2009-005727.  (Ralph Decl. ¶ 8, Exhs. 6 - 7.)

### C. The Workouts and the Foreclosure

The Borrowers later defaulted on their loan obligations to FCW, resulting in the Borrowers and FCW entering into four separate Loan Restructure and Workout Agreements.  The fourth such workout agreement ("Fourth Workout") was entered into between the Borrowers and FCW on or about March 11, 2015, *over five years ago now*, and entailed a forbearance by FCW along with the sale of certain real property collateral.

On or about December 9, 2015, the Borrowers and FCW entered into the First Amendment to the Fourth Workout, which entailed a further forbearance by FCW as well as payments by the Borrowers and the sale of certain real estate to pay down FCW's delinquent debt.

The Borrowers further defaulted on their obligations, and on June 12, 2017, FCW recorded a Notice of Default regarding its Real Property Collateral secured by the Deed of Trust.  On October 2, 2019, after **two more** years of workout attempts, FCW recorded its notice of sale.

Prior to FCW's nonjudicial foreclosure sale, Russell filed a complaint in San Luis Obispo Superior Court and obtained a temporary restraining order, halting the foreclosure sale.  On

---

[1] Rabbit Ridge also guaranteed the Borrowers' obligations to FCW.

3989373.1 | 100967-0004

3

MEMORANDUM OF POINTS AND AUTHORITIES

January 10, 2020, however, the Superior Court denied Russell's motion for preliminary injunction, and Russell filed for chapter 11 hours later. (Ralph Decl. ¶¶ 9 - 13, Exhs. 8 – 12.)

### D.    The First Bankruptcy; Case No. 9:20-bk-10035-DS

Russell's petition was a face-sheet filing, lacking any schedules or a statement of financial affairs. When Russell did file Schedules, they only disclosed three other creditors, the County for property taxes, an insider (his co-borrower spouse), and only one general, unsecured creditor. (Ralph Decl. ¶ 14, Exh. 15.)

On February 10, 2020, Russell filed a Status Conference Report ("Status Report") (Dkt. 36), attaching Budget Projections ("Budget"), reflecting, among other things, that Russell leases all of his property to his wholly-owned corporation, Rabbit Ridge. The Status Report and Budget reflected that Russell receives no rent, per se, from his corporation. Rather, apparently, the corporation merely funds the expenses related to Russell's winery operating on the property. Russell has never provided FCW with a written lease.

On January 15, 2020, FCW filed and served, in accordance with the exception to the automatic stay set forth in 11 U.S.C. § 362(b)(3), its *Notice of Continuation of Perfection of Security Interests, Demand for Adequate Protection; and Demand of Sequestration of Cash Collateral Pursuant to 11 U.S.C. §§ 362(b)(3), 363(c)(4), 363(e), 546(b), and 552(b)* (Dkt. 11), which Russell ignored. FCW had to compel compliance with 11 U.S.C. § 363(c) by filing a motion with the Court, which the Court granted (Dkt. 51).

As of January 10, 2020, FCW was owed not less than $19,040,509.25. (Ralph Decl. ¶ 15.) According to the Declaration of Erich Russell in Response to Farm Credit West Motion re Use, Accounting and Control of Cash Collateral ("Russell Declaration") (Dkt. 45) filed on February 14, 2020, the Collateral is worth only $15,000.000.00. (Ralph Decl. ¶ 29, Exh. 13, Russell Decl., ¶ 8 ["I believe all of the current Russell Property including the winery equipment and farm equipment are currently worth approximately $15,000,000, which is approximately $5,000,000 less than is allegedly owed to FCW."]). The "Russell Property" is defined in the Russell Declaration as Debtor's real property and improvements. (Ralph Decl. ¶ 29, Exh. 13, Russell Decl., ¶ 2.)

/ / /

### E. Relief From Stay and the Dismissal of Case No. 9:20-bk-10035-DS

On March 3, 2020, FCW filed its lift stay motion in Russell's case (Dkt. 53). Russell initially opposed the motion (Dkt. 61), however, after discussions with Russell's counsel and Russell's loan broker, a fellow named Leroy "Lee" Codding, Russell and FCW arrived at a stipulation for relief from stay. Under the stipulation, FCW agreed that, among other things, in exchange for relief from stay, it would forbear from foreclosing on the Real Property Collateral until July 24, 2020, and that if Russell paid FCW $15.4 million on or before July 24, 2020, FCW would accept that figure in full satisfaction of its debt. (Ralph Decl. ¶ 16, Exh. 17.)

The Court approved the relief from stay stipulation, finding Russell had no equity in the Collateral and that the Collateral was not adequately protected, lifting the stay under both 11 U.S.C. §§ 362(d)(1) and (d)(2). As part of the lift stay stipulation, Rabbit Ridge and Russell's non-filing spouse agreed that that if they filed for bankruptcy, it would be presumed that their case was filed in bad faith   (Ralph Decl. ¶ 16, Exh. 17, at internal p.6 ¶ 7, and Exh. 18.)

Later on in the case, finding that Russell had violated court orders and sought to have his case dismissed following a request for relief from the automatic stay, the Court dismissed Russell's case and barred him from filing for bankruptcy again for 180 days. (Ralph Decl. ¶ 17, Exh. 19.)

### F. A Further Forbearance

Following the dismissal of his bankruptcy, Russell, through his broker, Lee Codding, requested an extension of the July 24, 2020 forbearance period. As an accommodation and in exchange for a forbearance fee of $200,000, FCW agreed to extend the forbearance period until October 28, 2020. The foreclosure sale was continued to October 29, 2020. (Ralph Decl. ¶¶ 18-21, Exhs. 20, 21, 28, and 29; Reed Waddel Decl. ["Waddell Decl."] Decl. ¶¶ 4-5, Exhs. 28 and 29.)

With the foreclosure sale date approaching, Mr. Codding requested another extension of the forbearance period. FCW declined the request. As the foreclosure sale date marched closer, FCW's communications to Mr. Codding and Russell regarding the status of the payment to FCW went unanswered. (Ralph Decl. ¶ 22, Exh. 22.)

/ / /

**G.    The Second Bankruptcy**

Finally, just thirty minutes before the foreclosure sale, Mr. Codding unexpectedly surfaced and advised FCW that:

> We could not get funding finalized as per the deadline under Rabbit Ridge's current structure . . .The Russells have signed everything over to an LLC I have.

FCW next learned that an entity it had never heard of before called Northern Holdings, LLC, contacted the foreclosure trustee, claimed an interest in the Real Property Collateral, and asserted it had filed for bankruptcy and its bankruptcy filing stopped the sale. (Ralph Decl. ¶¶ 22-23, Exh. 23.)

Upon investigating the matter further, FCW found that three quitclaim deeds had been signed from Russell to Northern Holdings, LLC (the "Debtor") the day before the foreclosure sale. In reviewing the petition for the Debtor and the other case commencement documents, FCW learned that:

- The Debtor filed for bankruptcy within hours of the recording of the quitclaim deeds, on the eve of the foreclosure sale.
- The petition was a face sheet filing without schedules.
- Mr. Codding, *i.e.*, Mr. Russell's loan broker, signed the petition on behalf of the Debtor.
- Mr. Codding apparently completely owns the Debtor.
- Mr. Russell is listed as one of only six creditors of the Debtor with a large, unsecured claim.
- Mr. Codding flagrantly failed to report to the Court and creditors of this case's relationship with the prior Russell bankruptcy.
- Mr. Codding failed to list the County of San Luis Obispo which is owed millions of dollars in property taxes secured by the Real Property Collateral

(Ralph Decl. ¶¶ 25-27, Exhs. 24-25.)

/ / /

/ / /

### H. Additional Lack of Adequate Protection

To make matters worse, FCW's requests to the Debtor to account for its cash collateral have gone unheeded. (Ralph Decl. ¶ 28, Exh. 26.) This case is unfolding much like the Russell where FCW had to obtain a court order directing Russell to comply with his cash collateral obligations. In the meantime, FCW has also now learned that the County of San Luis Obispo is now owed $3 million in property taxes, accruing interest at a rate in excess of 18% per annum and default penalties, and that it is noticed its own tax sale of the Real Property Collateral. (Waddel Decl. ¶ 3, Exhs. 14, 16, and 27.) Mr. Codding has also apparently taken over FCW's guarantor, Rabbit Ridge, and is acting as, among other things, its Chief Executive Officer. (Exh. 29.)

## III. ARGUMENT

### A. FCW is Entitled to Relief from Stay Because "Cause" Exists Under § 362(d)(1).

Under § 362(d)(1) of the Bankruptcy Code, a bankruptcy court shall grant relief from the automatic stay "for cause." "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985).

Lack of adequate protection constitutes "cause" under § 362(d)(1). *Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 435 (9th Cir. BAP 1985). An insufficient equity cushion may support a finding that a secured creditor is not adequately protected. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1401 (9th Cir. 1984).

The existence of bad faith in commencing a bankruptcy case constitutes cause for granting relief from the stay pursuant to § 362(d)(1). 3 COLLIER ON BANKRUPTCY ¶ 362.07[3][a] (Richard Levin & Henry J. Sommer, eds., 16th Ed.) (citing *In re Laguna Assoc. Ltd. Partnership*, 30 F.3d 734 (6th Cir. 1994); *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023 (11th Cir. 1989)). A bankruptcy filing arising from a two-party dispute, while not constituting *per se* bad faith, will constitute bad faith where "it is an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction." *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 616 (9th

Cir. BAP 2014) (quoting *Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC)*, 2011 WL 4502102, at *10 (9th Cir. BAP Aug. 26, 2011) (citing *N. Cent. Dev. Co. v. Landmark Capital Co. (In re Landmark Capital Co.)*, 27 B.R. 273, 279 (Bankr. D. Ariz. 1983))). Hallmarks of a "bad faith" filing include, in pertinent part, no available sources of income to fund a plan of reorganization or fund adequate protection payments, few and small unsecured creditors, bankruptcy filed on eve of foreclosure after failing to obtain injunction in state court, and where bankruptcy offers little more than further delay. *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986) other citations omitted).

Here, "cause" exists for the Court to grant relief from stay to FCW under § 362(d)(1) based upon lack of adequate protection and because this case was filed in "bad faith."  First, there is presently no equity cushion in the Collateral according to Russell.  Further, this Court already found there is no equity in the Collateral as part of its prior relief from stay ruling, and the Debtor should be bound by the same result on collateral estoppel grounds and because the Debtor is a non-statutory insider of Russell.  11 U.S.C. § 101(31); *see In re Winstar Commc'ns Inc.*, 554 F.3d 382 (3d Cir. 2009). And, FCW's currently *under*secured collateral position in the Real Property Collateral is eroding postpetition due to the accrual of *ad valorem* real property taxes.  Not mention the fact that the Debtor is completely ignoring its cash collateral obligations to FCW, just like Mr. Russell did in his prior bankruptcy.

In addition, and as further "cause" for relief form stay, this case was filed in bad faith—on the day before the foreclosure sale was to occur.  This is also the second case in the same year involving the same property where FCW previously obtained relief from stay.  In addition, the prior bankruptcy case was filed the same day the Superior Court rejected Russell's legal arguments for a preliminary injunction.  There are only five unsecured creditors (one of which is an insider, Mr. Russell).  FCW provided Russell with plenty of opportunities to cure the defaults, he received one form of forbearance or another since 2015, with the most recent forbearance expiring on October 28, 2020.  Hence, this case has no chance of reorganizing and was filed

merely to delay FCW's foreclosure remedies.[2]  Unless relief from stay is granted immediately, FCW will suffer irreparable harm as its secured property interests will be further eroded.  Further, this case is just another extension of the two party dispute between FCW and Russell, and whatever delay tactic Russell and those working in concert with him can conjure up.  Accordingly, "cause" exists sufficient to allow the Court to grant relief from stay.

### B. FCW is Also Entitled to Relief Under § 362(d)(2) Because There is No "Equity" in the Collateral and it is Not "Necessary for an Effective Reorganization" that is "In Prospect."

Title 11 U.S.C. §362(d)(2) states, in pertinent part, that "the court shall grant relief from the stay . . . if—(A) the debtor does not have any equity in such property; and (B) such property is not necessary to effective reorganization." While the movant has the burden of establishing the lack of equity, the debtor has the burden to show "all other issues," including that the property is necessary to an effective reorganization. *See* 11 U.S.C. § 362(g).  Property is necessary to an effective reorganization only where there is a "reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 376 (1988) (citation omitted).

There is no equity in the Collateral and there is no chance at a successful reorganization whatsoever here.  Total liens on the Property are well over $20 million and the Collateral is only worth $15 million according to Mr. Russell, which the Court already previously found.  The Debtor is bound by that ruling under collateral estoppel rules and because it is a non-statutory insider of Mr. Russell.  In addition, the Debtor will be unable to demonstrate that the Collateral is "necessary for an effective reorganization" that is "in prospect."  This case was filed on October 28, 2020, the same day that an extension of an arm's length forbearance expired that was negotiated as part of a prior bankruptcy case affecting the same property.  The Debtor owes over $3 million in ad valorem real property taxes, which accrue interest at the statutory rate in excess of 18% per annum.

---

[2] Once schedules are actually filed, FCW reserves the right to augment the record and its argument on this score.

For these reasons, FCW requests stay relief under § 362(d)(2).

**C. This Bankruptcy Was Filed as Part of a Scheme to Hinder, Delay, and Defraud FCW, Involving Both a Transfer of the Property and Multiple Bankruptcy Cases Affecting the Property**

Section 362(d)(4) provides, in pertinent part, that

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> (B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4). *See also In re Dorsey*, 476 B.R. 261, 267 (Bankr. C.D. Cal. 2012) (citation omitted); COLLIER ON BANKRUPTCY, ¶ 362.07[6] (16th ed.) (citations omitted).

To obtain relief under § 362(d)(4), the court must find that three elements are present. *First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 870 (B.A.P. 9th Cir. BAP 2012). First, the filing of the bankruptcy petition must have been part of a scheme.[3] Second, the object of the scheme must have been to delay, hinder, or defraud creditors. Third, the scheme must involve either (a) the transfer of some interest in the real property without the secured creditor's consent or court approval, or (b) multiple bankruptcy filings affecting the property. *Id.*

A "scheme" means "an intentional artful plot or plan to delay, hinder or defraud creditors." *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006) (citing Black's Law Dictionary (8th ed. 2004)). "It is not common to have direct evidence of an artful plot or plan to deceive others." *Id.* Section 362(d)(4) does not require that the debtor be a party to the scheme. If a an insider of the debtor engaged in the scheme, that showing is a sufficient basis for relief under § 362(d)(4). *Id.*

/ / /

---

[3] The Debtor's actual participation in the "scheme" is not required for the movant to obtain relief under section 362(d)(4). *In re Vazquez*, 580 B.R. 526 (Bankr. C.D. Cal. 2017); *In re 4th Street East Investors, Inc.*, 474 B.R. 709, 710 (Bankr. C.D. Cal. 2012).

"Delay" and "hinder" essentially mean the same thing: to stall a creditor from collecting on its debt. *Id.* at 34. Mere hindrance and delay occurs when a party simply acts to stall a foreclosure sale. *See In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008) ("There is no question that debtor intended to hinder delay…she conceded that she filed the present case to delay the sheriff's sale.") The term "defraud" contains more meaning, generally conveying a scheme to avoid paying creditors and is commonly proven by circumstantial evidence of the "badges of fraud." *In re Duncan & Forbes Dev., Inc.,* 368 B.R. at 35.

The "badges of fraud" include:

(1) a close relationship between the transferor and the transferee;

(2) that the transfer was in anticipation of a pending suit;

(3) that the transferor was insolvent or in poor financial condition at the time;

(4) that all or substantially all of the transferor's property was transferred;

(5) that the transfer so completely depleted the transferor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and

(6) the transferor received inadequate consideration for the transfer.

*In re Woodfield*, 978 F.2d 516, 518 (9th Cir. 1992).

Moreover, when Congress constructed the "*in rem*" relief in § 362(d)(4) it was not writing a blank slate. For years before the enactment of BAPCPA courts fashioned "*in rem*" orders to curb abusive bankruptcy filings. *See, e.g.*, *In re Fernandez*, 212 B.R. 361, 371 (Bankr. C.D. Cal. 1997) ("Otherwise, the bankruptcy process becomes a farce and parties to bankruptcy cases pursuing legitimate interests before the court will be put to a seemingly endless round of motions, based solely on a Lewis Carroll view of the working of the automatic stay and the workings of due process."); *see also* Luis F. Chaves, *In Rem Bankruptcy Refiling Bars: Will They Stop Abuse of the Automatic Stay Against Mortgagees?*, 24 CAL. BANKR. J. NO. 1, p.3 (1998).

The abuses were only limited by imagination. *E.g.*, *In re Duvar Apt.*, 205 B.R. 196 (B.A.P. 9th Cir. 1996) (highlighting the "new debtor syndrome"); *see also Final Report of the Bankruptcy Foreclosure Scam Task Force*, 32 LOY. L.A. L. REV. 1063, 1069-1073, 1092 (June 1999) (enumerating abuses like transfers of fractional interests and serial filings and

recommending a modification of § 362 as the ultimate fix). This history cannot be ignored. It "informs our understanding of the language of the [Bankruptcy] Code." *Kelly v. Robinson*, 479 U.S. 36, 44 (1986).

Here, the Debtor's filing of the bankruptcy petition was part of the "scheme," because the petition was used as part of a plan to delay and hinder FCW's foreclosure sale by quitclaiming the Real Property Collateral to the Debtor and having the Debtor—an entity that FCW has never heard of or ever done business with before—on the eve of the foreclosure sale.

This was a continuation of a scheme, which involved the prior bankruptcy case of Russell. Each time the scheme involves the filing of a bankruptcy case with a face sheet filing when it is clear that all other avenues to block the foreclosure sale have been exhausted and that the foreclosure sale will proceed. Last time, it was the denial of Russell's request for a preliminary injunction and this time it was the expiration of the forbearance.

In addition, Russell made the transfer in violation of its covenant to not to transfer any interest in the Real Property Collateral contained in the Deed of Trust. *See In re Duncan & Forbes Dev., Inc.*, 368 B.R. at 37 ("lenders frequently negotiate a right to approve any transfer or sale of the collateral. In such circumstance, § 362(d)(4) may properly authorize relief from stay if such approval is not obtained. . . "). These circumstances all indicate a plot to frustrate the foreclosure efforts. Notably, in inducing FCW to further forbear until October, 2020, Mr. Russell represented to FCW that he would "not ask for any additional extensions or take any further actions to stop the foreclosure if FCW does not receive the $15.4 million." (Waddell Decl. ¶ 5, Exh. 29.)

Movant has also clearly been defrauded. Almost all of the badges of fraud are present. (A) There is a close relationship between the transferor and the transferee – Russell transferred the real property from himself to a company that his loan broker owns and the loan broker was *extensively* involved in negotiating the terms of the forbearance and the payoff. Indeed, the transferee is a non-statutory insider of Russell.

(B) The transfer was made in anticipation of creditor action. The Borrowers previously defaulted on the loans years ago and the filing occurred on the eve of the foreclosure sale. *See In*

3989373.1 | 100967-0004

12

*re Woodfield*, 978 F.2d at 519 ("The Debtors concededly were trying to…prevent seizure of assets.").

(C) The transferor was insolvent or in poor financial condition.  Russell made judicial admissions that the Collateral was only worth $15 million, which the Court adopted in in making its lift stay ruling.  Russell's debts, on the other hand, now exceed $20 million.  *See id.* ("The partnership was admittedly in poor financial condition at the time, having defaulted on several obligations.").

(D) The transferor hindered or delayed the creditor from its recovery as a result of the transfer.  Movant discussed this issue above.  *See also id.* ("They omitted the transfers from their statement of financial affairs in bankruptcy.").

(E) The transferor received inadequate consideration for the transfer.  According to the List of 20 Largest Unsecured Creditors, Russell is owed over $6 million by the Debtor.  Hence, it looks like Russell received nothing in terms of money or money's worth.

Finally, this scheme involved ***both*** the fraudulent transfer of the Real Property Collateral without FCW's consent or court approval (§ 362(d)(4)(A)), ***and*** two bankruptcy cases affecting the Russell Property Collateral (*i.e*., the Russell bankruptcy case and the instant case) (§ 362(d)(4)(B)).

For these reasons, FCW is entitled to *in rem* stay relief under section 362(d)(4).

**D.     The Court Should Waive Federal Rule of Bankruptcy Procedure 4001(a)(3)**

Federal Rule of Bankruptcy Procedure, Rule 4001(a)(3) provides that "An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 4001(a)(3).

Good cause exists for the Court to waive the 14-day stay imposed by Rule 4001(a)(3).  In particular, the stay causes unnecessary delay, preventing FCW from immediately exercising its non-bankruptcy law remedies.  Such delay is prejudicial to FCW and completely unnecessary.  Given the bad faith scheme to hinder, delay, and defraud FCW, the 14-day stay should be waived to prevent further continuing prejudice to FCW due to delay.

**IV. CONCLUSION**

WHEREFORE, FCW requests that the Court granting the Motion and allow it to proceed with its non-bankruptcy law remedies with respect to the Collateral.

DATED: November 5, 2020

FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL J. GOMEZ
REED S. WADDELL
GERRICK M. WARRINGTON


By: _____/s/ Michael J. Gomez_____
MICHAEL J. GOMEZ
Attorneys for FARM CREDIT WEST, FLCA