D. EDWARD HAYS, #162507
ehays@marshackhays.com
DAVID A. WOOD, #272406
dwood@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>NORTHERN HOLDING, LLC,<br><br>Debtor. | Case No. 8:20-bk-13014-MW<br><br>Chapter 7<br><br>CHAPTER 7 TRUSTEE'S MOTION TO APPROVE FARM OPERATOR AGREEMENT AND FOR ORDER TO OPERATE DEBTOR'S BUSINESS FOR THE LIMITED PURPOSE OF COMPLETING FALL 2021 HARVEST OF CURRENT CROP OF FRUIT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RICHARD A. MARSHACK AND LEROY CODDING IN SUPPORT<br><br>Date: August 30, 2021<br>Time: 2:00 p.m.<br>Ctrm: 6C<br>Address: 411 W. Fourth Street, Santa Ana, CA 92701 |

TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

RICHARD A. MARSHACK, in his capacity as Chapter 7 Trustee ("Trustee") of the

Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), brings this motion to approve a

farm operator agreement and for an order authorizing the Trustee to operate the Debtor's business

for the limited period of time and for the sole purpose of completing the harvest of the current crop

of fruit growing on Debtor's land. In support thereof, the Trustee respectfully represents as follows:

## 1.    Summary of Argument

Debtor is the title owner of approximately 450 acres of land suitable for vineyards across two separate parcels of real property, located at 1172 San Marcos Road, Paso Robles, CA ("San Marcos Property"), which includes a turnkey winery production facility, real property located at APN 027-145-022 in Paso Robles, CA ("Texas Road Property") and 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property") (collectively, "Properties"). Around 135 acres are currently planted with crops that are anticipated to be ready for harvest in late September or early October of this year, with an estimated yield of 253.5 tons. Based on the Trustee's personal visual inspection of the Properties, it would be an enormous waste if all of these crops were allowed to wither and die – the current crop should be brought to fruition and sold for the benefit of the Estate. To accomplish this goal, the Trustee personally drafted and negotiated an agreement with LeRoy Codding ("Mr. Codding" or "Operator") where the Debtor's principal and person in charge of farm operations would personally advance all operational costs for tending, maintaining, cultivating, and harvesting existing crops, with all proceeds to be delivered to the Trustee. Thereafter, Operator would be allowed to be reimbursed all reasonable expenses of harvest from the proceeds of the sale. The crops are currently being tended and require regular care and supervision under a person with knowledge and expertise regarding the cultivation of the types of crops on the land. Thus, continuity is crucial for this year's harvest.

The Trustee respectfully requests that the Court approve the farm management agreement with Mr. Codding ("Agreement") and enter an order pursuant to 11 U.S.C. § 721 to allow him to permit operations on the Properties for the sole and limited purpose of completing the fall 2021 harvest of crop, selling the crop, and holding the proceeds pending further order of the Court (recognizing that all such proceeds would be subject to the lien asserted by Farm Credit West, FCLA).

## 2.    Procedural Background

Erich Russell was the former owner and operator of Rabbit Ridge Winery ("Rabbit Ridge"), which was as of October 2020 located at 1172 San Marcos Road, Paso Robles, CA (previously defined as "San Marcos Property"). To finance his business operations, Mr. Russell borrowed

MOTION FOR ORDER AUTHORIZING LIMITED OPERATION OF DEBTOR'S BUSINESS
4824-2330-5952,v.1

1    substantial sums of money from Farm Credit West, FLCA ("FCW"), which were secured certain

2    assets including substantially all assets of Rabbit Ridge and Properties.

3          Prior to a foreclosure of the Properties by FCW, Mr. Russell filed an individual Chapter 11

4    case, initiating bankruptcy case number 9:20-bk-10035-DS ("Individual Case"). On June 19, 2020,

5    the Individual Case was dismissed for cause.

6          A subsequent foreclosure sale for the Properties was scheduled by FCW for October 29,

7    2020. Prior to the foreclosure date, Mr. Russell and FCW continued to discuss a possible forbearance

8    and an extension of the foreclosure date.

9          On or about October 28, 2020, Mr. Russell signed quitclaim deeds transferring the Properties

10   to Debtor. These quitclaim deeds were recorded on the same date. Additionally, ownership and

11   control of Rabbit Ridge passed to LeRoy Codding, who operated as a *de facto* chief restructuring

12   officer.

13         On October 28, 2020, Debtor filed a voluntary petition for bankruptcy under Chapter 11 of

14   Title 11 of the United States Code, initiating the above-captioned bankruptcy proceeding.

15         On October 29, 2020, as Dk. No. 5, FCW filed a notice of continuation of perfection of

16   security interest and demand to sequester cash collateral. No motion or stipulation to use cash

17   collateral has ever been filed in this case. To the best of the Trustee's knowledge, FCW has not

18   agreed to the use of its cash collateral for any purpose, although the Trustee has been in extensive

19   negotiations with FCW regarding his proposed course of administration of the case.

20         On November 5, 2020, Debtor filed its registration as a limited liability company in

21   California, file no. 202031410753. Prior to this date, Debtor was not a registered limited liability

22   company in California. Northern Holding, LLC was registered as of April 30, 2012 with the

23   Minnesota Secretary of State, file number 486524600029. A true and correct copy of the LLC filing

24   statement for the Debtor as a Minnesota LLC is attached to the request for judicial notice ("RJN") as

25   Exhibit " 5 ."

26         On November 6, 2020, as Dk. No. 11, FCW filed a motion for relief from the automatic stay

27   regarding the Properties ("Stay Relief Motion"). The hearing on the Stay Relief Motion has been

28   trailed and is currently set for August 2, 2021, with interim partial relief granted by the Court.

MOTION FOR ORDER AUTHORIZING LIMITED OPERATION OF DEBTOR'S BUSINESS
4824-2330-5952,v.1

On February 16, 2021, as Dk. No. 60, the Office of the United States Trustee ("OUST") filed a motion to dismiss or convert the case for cause pursuant to 11 U.S.C. § 1112(b).

On March 31, 2021, as Dk. No. 104, Debtor filed a monthly operating report for the month of February ("February MOR"). This was the last monthly operating report ever filed by Debtor. The February MOR showed that in that month, Debtor was entitled to receive rental and operating income – but the Trustee is informed that no rental and operating income was ever received by Debtor based on what was alleged to be offsetting debts arising from oral consulting agreements. The Trustee has never been provided with any copy of any consulting agreement and disputes the validity of such agreements, if they even exist.

On June 15, 2021, as Dk. No. 116, the Court entered an order converting the case to Chapter 7. Richard A. Marshack (previously defined as "Trustee") was appointed as the Chapter 7 trustee.

Upon the Trustee's appointment, he was informed that Debtor's insurance premium finance company and insurance broker had not been paid in full and that the Debtor's insurance policies were at risk of cancellation.

The Trustee has requested that the Debtor immediately produce a report pursuant to FRBP 1019 regarding post-petition debts. On June 25, 2021, as Dk. No. 126, the FRBP 1019 report was filed by Debtor.

In the course of the Chapter 11 case, Debtor as a debtor-in-possession sought to market and sell the Properties. No sale motion was ever filed. The Trustee is investigating whether a sale of the Properties is feasible at this point and whether and to what extent to pursue marketing and sale efforts for the Properties. There are currently parties expressing interest in the Properties including the Riboli family (owners of the San Antonio Winery) who are conducting extensive due diligence at the Live Oak Property.

## A.    Farm Management Agreement and Proposed Operations

On July 27, 2021, the Trustee personally visited and toured the Properties with Mr. Codding. The Trustee personally discussed options with Mr. Codding regarding the continued maintenance of

MOTION FOR ORDER AUTHORIZING LIMITED OPERATION OF DEBTOR'S BUSINESS
4824-2330-5952,v.1

1 the Properties and the crops growing on the Properties.[1] The Trustee concluded in his business

2 judgment that while Mr. Codding may not have understood all of the best practices in connection

3 with a Chapter 11 bankruptcy case but now believes that Mr. Codding will work in earnest for the

4 benefit of the Estate. The Trustee believes that Mr. Codding is the best situated person to supervise

5 the Fall 2021 harvest of the currently-growing crop, because he has the most institutional knowledge

6 of the current crop. A true and correct copy of the crop estimated yields as of August 5, 2021

7 prepared by Mr. Codding is attached to the Declaration of LeRoy Codding ("Codding Declaration")

8 as Exhibit "3."

9       Furthermore, pursuant to the farm management agreement (previously defined as

10 "Agreement") personally drafted, edited, and negotiated by the Trustee, Mr. Codding agreed to pay

11 for all operating expenses up front at no expense to the Estate. Thus, all of the financial risk in

12 continued operations will be borne by Mr. Codding. A true and correct, executed copy of the

13 Agreement is attached to the Declaration of Richard A. Marshack ("Marshack Declaration") as

14 Exhibit "1."

15       If Operator fails to procure and maintain adequate insurance, or fails in any other way to

16 properly maintain and cultivate the crops, the Trustee will terminate the Agreement and remove

17 Operator.

18       Also on July 27, 2021, Mr. Codding signed (on behalf of Rabbit Ridge) a stipulation for

19 turnover of the San Marcos Property acknowledging the Trustee's sole right of possession and

20 control. A separate copy of the turnover stipulation will be filed by the Trustee.

21       As stated in the Agreement, Operator projects that gross revenue from the sale of the current

22 crop is $723,000 and projects that expenses will be $400,000. The Agreement provides that Operator

23 will be entitled to 5% of the net profit (discussed as the difference between the gross revenue and

24 only the direct expenses incurred to complete the harvest such as utilities, labor, and supplies).

25 Operator will not be compensated other than through a percentage of the net proceeds – Operator

26 shall not collect any salary.

27

28   [1] Pictures of the crop currently growing on the Properties which were taken by Mr. Codding and a
diagram of the crop locations are collectively attached to the Codding Declaration as Exhibit "2."

## 3.    Legal Argument

"The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." 11 U.S.C. § 721.

### A.    There is good cause for the Court to allow continued operation of the Debtor's business.

Under Section 721, the bankruptcy court may authorize the debtor's business to be operated in a Chapter 7 case "where the interim operation of the debtor's business is in the best interest of the estate and consistent with the orderly liquidation of the estate." COLLIER ON BANKRUPTCY ¶ 721.02 (16th ed. 2020) (citing *In re Brints Cotton Mktg., Inc.*, 737 F.2d 1338, 1342 n.7 (5th Cir. 1984)); *see, e.g., In re Quarter Moon Livestock Co. Inc.*, 116 B.R. 775, 782 (Bankr. D. Idaho 1990) (trustee's request to operate cattle ranch business until autumn to "roundup and sell the cattle herd" granted); *see also Nakhuda v. Mansdorf (In re Nakhuda)*, 2015 Bankr. LEXIS 649 at *5-7 (B.A.P. 9th Cir. 2015). Additionally, "if the sudden termination of the debtor's business would cause great hardship to the general public or innocent third parties, authorization of the chapter 7 trustee to operate the debtor's business at a loss might be appropriate." COLLIER ON BANKRUPTCY ¶ 721.02 (16th ed. 2020).

The Office of the United States Trustee has set forth the following five factors which a trustee must consider when determining whether continued operation is in the best interest of the Estate:

"1.    Whether operating the business will result in an operating loss;

2.    The tax consequences of operating the business;

3.    The costs necessary to bring the business within compliance of local laws to the extent local laws do not conflict with the Bankruptcy Code;

4.    Potential liabilities and claims against the estate and the trustee which may arise from the operation of the business; and

5.    The length of time the business will be operated."

United States Dep't of Justice, Handbook for Chapter 7 Trustees page 4-30 (eff. October 1, 2012).

4824-2330-5952,v.1

Each of these factors will be addressed in turn. After analysis of all options and the relative benefit and liabilities to the Estate, there is good cause for the Court to authorize the Trustee to operate the Debtor's business for a limited time and as set forth in this motion.

### i.     There is no anticipated operating loss for the operation of the Debtor's business.

The Trustee in this case is relying heavily on the projections of Operator regarding the estimated revenues and expenses for completing the harvest. Operator is best-situated as the prior management of the Debtor and the farmland to project the anticipated revenue, expense, and profit to complete the growing process and harvest the current crop. A true and correct copy of the projected operating budget through October 2021 is attached to the Declaration of LeRoy Codding ("Codding Declaration") as Exhibit "2."

The operating budget is reproduced below in full:

| Cost item | Amount | Running total |
|---|---|---|
| Farm Labor<br><br>-    $12,000/month for tending vineyards<br><br>-    $350/ton labor contractor to harvest | $123,500 | $123,500 |
| Workers' compensation insurance | $6,000 | $129,500 |
| Power & Water Utilities | $22,000 | $151,500 |
| Well service & maintenance | $20,000 | $171,500 |
| Nutrients | $8,000 | $179,500 |
| Licensing | $1,200 | $180,700 |
| Equipment maintenance | $10,000 | $190,700 |
| Previously expended cultivation costs[2] | $284,000 | $474,700 |

All of the expenses in the operating budget will be borne solely by Operator. Also, pursuant to the Agreement, Operator has agreed to cap his reimbursements for expenses at $400,000. Thus,

---

[2] To be clear, the Trustee has not approved of payment of, or the amount of, costs expended prior to the Agreement. This is an open issue.

7

based on Operator's own projections, he may be personally absorbing a substantial loss in order to complete the harvest and generate anticipated gross proceeds of $811,700. Thus, there is an anticipated net benefit of $411,700 over reimbursed expenses to the Estate. Operator shall only be reimbursed any expense if and when the crop is sold and only from crop proceeds.

### ii. There are no additional anticipated tax consequences for operating the business which would render operations prohibitive.

Debtor merely owns real properties. As such, there are property taxes which are accruing on the Properties and must be paid from the Estate. Also, when selling the crop, the Trustee is informed that there are no sales taxes or duties on the sale of the crop. Therefore, there are no tax consequences associated with and flowing from the Trustee's proposed operation of the farming business.

### iii. No known regulatory issues exist which would result in extraordinary costs to comply with local laws – ordinary operating expenses will include regulatory fees.

Operator has informed the Trustee that the only regulatory requirements for farming the land are to obtain a grower's license and a pest control application license from local or state authorities. The Trustee is informed that these licenses have already been obtained by Operator and will be maintained by Operator for the duration of the engagement.

### iv. Potential and reasonably anticipated liabilities and claims against the Estate and Trustee which may arise from the limited operation of the business do not exceed operating income.

As an operating business with farm laborers, there will be an inherent risk of workers' compensation issues and injuries. The business of farming this particular type of crop is not particularly dangerous and Operator has committed to obtaining satisfactory insurance which will insure and cover any incidence of foreseeable injury. Included in Operator's budget is worker's compensation insurance which will provide coverage for the laborers.

MOTION FOR ORDER AUTHORIZING LIMITED OPERATION OF DEBTOR'S BUSINESS
4824-2330-5952,v.1

### v.  The proposed length of operation for farming operations on the Properties is limited to an approximate three-month period to complete the Fall 2021 harvest.

The Trustee does not request authorization to operate for an extended period of time. Authorization to operate is only requested through the end of the Fall 2021 harvest, which is anticipated to be completed by end of October 2021. The requested relief is appropriate and consistent with the Trustee's statutory duty to maximize the value of the Estate. *See, e.g., In re Quarter Moon Livestock Co.*, 116 B.R. 775, 782 (Bankr. D. Idaho 1990) (trustee authorized to operate "until fall to roundup and sell the cattle herd, and to maintain the livestock until that time."). Because proceeds of the crops will be used to substantially pay down the debt owed to FCW, completing this year's harvest is necessary and appropriate in the Trustee's business judgment.

### B.  The Trustee's Operation of the Properties is Consistent with their Orderly Liquidation.

Because the Properties are marketed to buyers in the winery industry, the proof of concept that grapes can actually be successfully grown on the Properties is crucial to the Trustee's marketing efforts, especially with regard to the Live Oak Property. In fact, vines are currently being grown on each of the three Properties and must be maintained on a regular basis to prevent the vines from withering and dying, and the crops being ruined by neglect. Operator's maintenance of the current vines will facilitate the sale to any interest buyer, because the soil will be maintained and will not be subject to simply eroding away with the wind. In addition to Operator's maintenance of the crops, he has been extremely cooperative with the Trustee's administration and has been instrumental in facilitating the due diligence of various buyers on the Properties. The Trustee considers Operator's expertise and availability to be crucial to his successful administration of Estate assets. Finally, constant maintenance of the crops will reduce the fire risk to the Properties because the vines will not be dry, dead and flammable.

MOTION FOR ORDER AUTHORIZING LIMITED OPERATION OF DEBTOR'S BUSINESS
4824-2330-5952,v.1

**C.    All income, which constitutes FCW's cash collateral, will be segregated and shall not be used absent consent or further court order.**

"The trustee may not use, sell, or lease cash collateral… unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c); *see United States Dep't of Agriculture v. Hopper (In re Colusa Regional Medical Center)*, 604 B.R. 839, 859-61 (B.A.P. 9th Cir. 2019) (discussing implied consent to use of cash collateral). After-acquired assets and proceeds traceable to collateral may also be subject to a secured creditor's duly perfected lien. *See* Cal. Comm. Code § 9204; *see also, e.g., Qmect, Inc. v. Burlingame Capital Partners II, L.P.*, 373 B.R. 682, 686-87 (N.D. Cal. 2007). "[T]he key consideration in deciding whether to allow the use of cash collateral is whether the secured creditor's interest is adequately protected." *Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436, 444 (B.A.P. 9th Cir. 2004).

In this case, FCW has not expressly consented to the use of its collateral or cash collateral to pay for any operating expenses whatsoever. Before the crop is finally harvested and the benefit to FCW is determined, the Court may not have all of the facts it needs to determine whether any expenses can be charged against FCW's collateral (including the proceeds of crop, which are cash collateral). Provided that Mr. Codding's projections are correct and there is a substantial amount of proceeds resulting from the harvest and sale of the current crop, the proceeds will not be disbursed unless either: (1) FCW consents, or (2) the Court enters an order specifically authorizing any disbursements over FCW's objection. Pursuant to the Agreement, all gross proceeds must be paid directly to the Trustee without deduction.

Here, the value of FCW's collateral will be greatly diminished in value if the Properties are completely abandoned and all of the crops are allowed to wither and die. It is not subject to reasonable dispute that dead, dry plants are at the greatest risk of fire, and that dead plants will result in great waste and removal costs to any eventual purchaser of the Properties. Furthermore, as shown in the pictures and projections from Operator, there is currently over two hundred tons of grapes

1  growing on the Properties which would be completely wasted if they were not being maintained. The

2  Debtor has no money to fund operations and unless the Court enters an order authorizing operations

3  pursuant to 11 U.S.C. § 721, with reimbursement of actual, reasonable expenses, FCW's collateral

4  will drastically decrease in value. Thus, the Court should enter an order authorizing the use of cash

5  collateral solely to pay and reimburse expenses from the proceeds of crop.

6  **4.   Conclusion**

7  　　　Based upon the foregoing, the Trustee respectfully submits that good cause exists for

8  granting the Motion and respectfully requests that the Court enter an order as follows:

9  　　　1.    Approving the farm operator agreement attached to the Marshack Declaration as

10  Exhibit "1" and authorizing the Trustee to operate the Debtor's business for the limited purpose of

11  completing the Fall 2021 harvest pursuant to 11 U.S.C. § 721;

12  　　　2.    Authorizing the Trustee to operate the Properties to the extent necessary to complete

13  the fall 2021 harvest, with such authorization to terminate at the earliest of: (a) the completion of the

14  fall 2021 harvest October 31, 2021;

15  　　　3.    Authorizing the Trustee to cancel all currently existing grape sales agreements and to

16  renegotiate all such agreements;

17  　　　4.    Directing the proceeds of all sales of crop to be paid directly to the Estate and

18  authorizing the Trustee to receive and hold all gross proceeds of the sale of any crop from the

19  Properties pending further order of the Court;

20  　　　5.    Authorizing the Trustee to, upon receipt of proceeds from the sale of crop, use cash

21  collateral to pay and reimburse actual and reasonable expenses incurred for harvesting and selling

22  the grapes, and including any utility payments and insurance costs for the three Properties; and

23  For such other and further relief as the Court deems just and proper.

24  　DATED: August __9__, 2021　　　　　　MARSHACK HAYS LLP

25  　　　　　　　　　　　　　　　　　　　　　　　/s/ Tinho Mang

26  　　　　　　　　　　　　　　　　By:_____
　　　　　　　　　　　　　　　　　　　D. EDWARD HAYS

27  　　　　　　　　　　　　　　　　　　　TINHO MANG
　　　　　　　　　　　　　　　　　　　Attorneys for Chapter 7 Trustee

28  　　　　　　　　　　　　　　　　　　　RICHARD A. MARSHACK

MOTION FOR ORDER AUTHORIZING LIMITED OPERATION OF DEBTOR'S BUSINESS
4824-2330-5952,v.1

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare and state as follows:

1.      I am the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Northern Holding, LLC ("Debtor").

2.      I am an individual over 18 years of age and competent to make this declaration. Except as set forth as matters of judicial notice, I have personal knowledge of the matters set forth in this Declaration, and if called upon to do so I could and would competently testify to these facts.

3.      All terms not defined herein are used as they are defined in the Motion.

4.      I conducted the meeting of creditors pursuant to 11 U.S.C. § 341(a) on July 13, 2021. At this meeting, Lee Codding appeared as the representative for the Debtor and testified on behalf of the Debtor.

5.      Because the Properties and the crops growing there require daily maintenance, Mr. Codding has been supervising the tending of the crops without prior expectation of reimbursement and I am informed that he also has advanced over $280,000 in costs to date without any revenues. I have been coordinating my marketing efforts in part through Mr. Codding, who has been instrumental in answering questions from the interested buyer parties and showing the Properties to the buyers, along with my brokers. Based on my conversations with Mr. Codding, I believe that he is motivated to see the fall 2021 harvest completed and he has committed to advancing all expenses to complete the harvest. I personally drafted, revised, and negotiated the farm operator agreement with Mr. Codding and he signed the operator agreement in my presence. A true and correct copy of the farm operator agreement is attached as Exhibit "1."

6.      On July 27, 2021, I personally toured the Properties along with my proposed farm operator Lee Codding (who acted as my tour guide and provided me with all information related to crop cultivation and production). Mr. Codding had deep knowledge and expertise regarding the Properties and the crops growing on the Properties. I believe that his familiarity with the crops on the Properties is essential to a successful harvest this year. No other party or secured or unsecured creditor has proposed an alternative to retaining prior management to complete the harvest. Additionally, the Riboli parties are not interested in taking over current farming operations, which I

am informed are substantially different from the method by which the Riboli parties would grow crop. I am informed that the harvest will begin in September and will end in October. The Estate has no reasonable alternative to hiring Mr. Codding if we are to complete the harvest this year.

7.    When I toured the Properties, a significant amount of the vines appeared to be healthy, but a substantial portion also appeared somewhat less healthy, which I am informed was due to a lack of funds available to properly maintain the crops. In my business judgment, it is extremely important that the crops be adequately maintained.

8.    Mr. Codding informed me that he expects and projects the crops to result in gross revenues of around $800,000 by the end of harvest, and agreed to be reimbursed expenses. Thus, according to Mr. Codding, the harvest of crop is anticipated to generate proceeds of at least double the expenses. Because Mr. Codding as the operator has agreed to advance all costs of farming and to procure and maintain adequate insurance, the Estate will not be bearing the financial risk of the farming operations.

9.    Provided that the harvest generates substantial revenues in excess of expenditures, I believe that it is necessary and appropriate for the harvest to be completed in order to pay down the secured debt owed to Farm Credit West.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 9, 2021.

_____
RICHARD A. MARSHACK

MOTION FOR ORDER AUTHORIZING LIMITED OPERATION OF DEBTOR'S BUSINESS
4824-2330-5952,v.1

# Declaration of Leroy Codding

I, LEROY "LEE" CODDING, declare and state as follows:

1.      I am the managing member of Northern Holding, LLC ("Debtor").

2.      I am an individual over 18 years of age and competent to make this declaration. Except as set forth as matters of judicial notice, I have personal knowledge of the matters set forth in this Declaration, and if called upon to do so I could and would competently testify to these facts.

3.      All terms not defined herein are used as they are defined in the Motion.

4.      I am the Trustee's chosen operator for to complete the cultivation and harvest of crops at the Debtor's properties, including the Live Oak Property, the San Marcos Property, and the Texas Road Property. There are crops growing on all three properties, but the majority of the crops are currently being grown at Live Oak.

5.      Below is a table showing all my estimated expenses for the successful completion of the harvest. Prior to entering into the Agreement and termination of the lease between Debtor and Rabbit Ridge, I expended an additional $284,000 for costs of cultivation and crop maintenance.

| Cost item | Amount | Running total |
|---|---|---|
| Farm Labor<br><br>-    $12,000/month for tending vineyards<br><br>-    $350/ton labor contractor to harvest | $123,500 | $123,500 |
| Workers' compensation insurance | $6,000 | $129,500 |
| Power & Water Utilities | $22,000 | $151,500 |
| Well service & maintenance | $20,000 | $171,500 |
| Nutrients | $8,000 | $179,500 |
| Licensing | $1,200 | $180,700 |
| Equipment maintenance | $10,000 | $190,700 |

/ / /

/ / /

14

6.      A true and correct copy of pictures that I took of the currently growing crop as of August 2021, and a diagram of the growing areas that I personally prepared is attached as Exhibit "2."

7.      A true and correct copy of my crop yield estimates as of August 5, 2021 is attached as Exhibit "3."

8.      I have over 28 years of experience in the wine business. I graduated in 1993 from Cal Poly with a degree in agricultural business and a concentration in wine marketing. I grew up in a farming family and have been involved in farming for nearly my entire life. I am well-qualified to supervise the cultivation and harvest of the crop currently growing on the Properties. The estimates that I have provided to the Trustee are based on my 28 years' expertise and education in the wine production industry, and I believe that they are accurate to a high degree. A true and correct copy of my resume is attached as Exhibit "4."

9.      I personally discussed and negotiated with the Trustee regarding the farm management agreement which is attached to Mr. Marshack's declaration as Exhibit "1." I am committed to completing the Fall 2021 harvest and advancing all costs, provided that I am reimbursed pursuant to the terms of the Agreement. If I am permitted to receive reimbursement of reasonable expenses incurred, I have agreed that the total amount of reimbursed expenses will be limited to $400,000, which includes the $190,700 in projected future expenses. I have also agreed to compensation to me pursuant to the Agreement of 5% of the net revenue. I understand that all proceeds from the sale of crop must be directed to and turned over to the Trustee.

10.     I have been intimately involved in the daily farming operations of the Debtor since the bankruptcy filing, including that I have rented housing in the local area so I can be more accessible to the Properties and supervise them daily. I am deeply committed to seeing that the harvest is completed and I fully support the Trustee's marketing efforts and I will continue to do so, including providing information to interested purchasers upon request. I also provided a tour of the Properties to the Trustee on July 27, 2021 and have been personally involved with negotiating with Erich Russell and his family to secure a voluntary turnover of the Live Oak Property.

11.    I have obtained a grower's license and a pest control application license and will maintain such licensing. I will procure and maintain adequate workers' compensation insurance.

12.    In October 2020, I on behalf of Rabbit Ridge Wine Sales, Inc. executed a document entitled "Scope of Work: Russell/Rabbit Ridge: Founder Roles" where Mr. Erich Russell and Mrs. Joanne Russell were contracted by Rabbit Ridge for consulting services in exchange for a consulting fee of $15,000 per month in cash and "12,000 value of residential lease on Russell Live Oak Villa." The only parties to that agreement were Rabbit Ridge, Erich Russell, and Joanne Russell. To be clear, none of the proceeds that will be received from the harvest and sale of the grapes discussed in the motion and budget will be used to fund any obligation or reimburse any expense owed to Mr. Erich Russell or Mrs. Joanne Russell.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 9, 2021.

LEROY CODDING

MOTION FOR ORDER AUTHORIZING LIMITED OPERATION OF DEBTOR'S BUSINESS
4824-2330-5952,v.1

# REQUEST FOR JUDICIAL NOTICE

RICHARD A. MARSHACK, in his capacity as Chapter 7 Trustee ("Trustee") of the

Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), through his attorneys, Marshack

Hays LLP, hereby requests pursuant to Federal Rule of Evidence 201, that this Court take judicial

notice of the following documents to be considered in connection with Trustee's motion to approve a

farm operator agreement and for an order authorizing the Trustee to operate the Debtor's business

for the limited period of time and for the sole purpose of completing the harvest of the current crop

of fruit growing on Debtor's land:

| | JUDICIALLY NOTICED DOCUMENT |
|---|---|
| 5 | A true and correct copy of LLC filing statement for Debtor as a Minnesota LLC – Minnesota Secretary of State file number 486524600029. |

DATED: August 9, 2021                    MARSHACK HAYS LLP

                                                    /s/ Tinho Mang
                                         By:_____
                                                D. EDWARD HAYS
                                                TINHO MANG
                                                Attorneys for Chapter 7 Trustee
                                                RICHARD A. MARSHACK

MOTION FOR ORDER AUTHORIZING LIMITED OPERATION OF DEBTOR'S BUSINESS
4837-0183-4931, v. 1

**EXHIBIT 1**

# Farm Operator Agreement 2021

## July 26, 2021

Richard Marshack, Bankruptcy Trustee and Leroy Codding) agree to the following terms whereby the estate retains Codding to manage certain operations  relating to Northern Holding, LLC assets now in possession of Richard A. Marshack, Chapter 7 Trustee ("Trustee") for Northern Holding, LLC ("Debtor"). The parties to this agreement are the Trustee, on the one hand, solely in his capacity as the Chapter 7 trustee, and Leroy Codding ("Operator or Codding"), on the other hand.

Term: August 1, 2021 to **October 10,** 2021. Term may be extended only by mutual agreement by the parties for no more than 30 days.

Scope of Retention:
Codding is retained by Trustee for the following purposes:

1. To maintain the crops including watering, fertilizing and otherwise caring for the crop as a good and prudent operator trying to cost efficiently maximize production of grapes.
2.  Take all steps which are reasonable to maintain and increase the value of the soil and the crops.
3.  Keep all irrigation systems working and fully functional.
4. Harvest (pick) grapes when timing is appropriate to receive maximum value but no later than termination of this agreement.
5. Maintain good and proper practices including taking prudent care of the orchard/soil/vines including pest control and irrigation and maintain perimeter fencing.
6. Cancel any and all existing purchase contracts for the grapes and present new contracts to Trustee for execution.  New contracts shall be at fair market value and the seller shall be "Richard Marshack, Bankruptcy Trustee".
7. All revenue shall be made payable solely to "Richard Marshack, Bankruptcy Trustee".
8.  Codding shall be permitted to subcontract the labor from employees of Rabbit Ridge Wine Sales Inc.  Codding to provide proof of workers compensation insurance and other required insurances and compliance with tax withholdings obligations.
9. At harvest Codding, if permitted by law and in accordance with the law, may retain outside labor contractor to pick the crop.
10.  Codding to advance all costs and expenses necessary to carry out the terms of this contract and will be reimbursed reasonable expenses from the proceeds of the crop. Codding to provide Trustee a weekly list of expenses.
11.  Codding estimates that gross revenue will be $723,000 and estimates the expenses to be approximately $400,000.  Codding to receive compensation of 5% of the net profit.
12.  Codding to comply with all state and federal and municipal laws including labor laws, taxation laws, permits and licensing laws.

Access

Trustee grants Operator limited access (as described below) to and use of Debtor's vineyards and other assets set forth in Exhibit "A" solely for the purpose of growing, tending, and harvesting grapes and carrying out the obligations set forth above.

Operator agrees and understands they are not to remove or work with any casks or bottles or cases of wines or any other personal property.  Further Operator shall not use any equipment or inventory.

Trustee allows Operator reasonable access to and use of Debtor's vineyards located at 1172 San Marcos Rd., 2380 Live Oak Rd., and Texas Road (APN No. 027-0145-022) in Paso Robles, California, solely to the extent carry out the above obligations on the permitted land. No access shall be allowed to Operator for any other reason and no access shall be allowed to Operator to any other asset or aspect of the real properties except with express written permission of the Trustee.

Access does not equate to possession. Trustee has possession and authority over of all assets of the Debtor, including real estate, improvements and equipment. Access may be revoked upon written notice from the Trustee. Operator will bear cost outlay for all farming expenses including labor, cultural costs etc. Operator shall maintain satisfactory and adequate insurance at all times for operations and provide proof of insurance to the Trustee, at Operator's own expense. Operator shall procure and maintain at his own cost all insurance contracts which are customary for the type and extent of work contemplated in this agreement.

Miscellaneous Terms

Operator shall cancel all existing grape sales agreements including any grape sale agreements between Rabbit Ridge Corporation and third-party purchasers and shall reissue such agreements for the benefit of the Estate, payable to the Trustee. In other words, all gross proceeds from the sale of crops grown on the Properties shall be paid directly to the Trustee. All crop sale agreements are subject to review and recommendation by Kevin Otus, and approval of the Bankruptcy Court, if necessary. The Parties acknowledge that all crops and their proceeds may be subject to the lien rights of Farm Credit West, FCLA.

Trustee may terminate this agreement or assignment of the rights created under this agreement at any time and for any reason and without any notice.

This agreement does not establish or constitute any ongoing obligation between the parties beyond the successful completion of 2021 harvest.

This agreement is subject to approval of the United States Bankruptcy Court. In the event of any inconsistency between an order of the Court and this agreement, the Court's order shall control.

The written terms of this agreement constitute the entire agreement between the parties. All prior oral statements, discussions, and written communications have been incorporated into this agreement and there is no agreement other than what is stated herein.  If a term is missing or needs to be modified or there is a material issue that is prudent to add or delete, then either party may petition the court by motion and the court may supplement this agreement for good cause shown and if beneficial to the bankruptcy estate.  All parties agree that if there is a dispute it can be raised with the court and addressed by motion under rules established by the court to insure fairness.

Dated: July 27, 2021

**Richard Marshack,**
**In his capacity as the Chapter 7**
**Trustee**
**of Northern Holdings, LLC.**
**c/o MARSHACK HAYS LLP**

**870 Roosevelt**
**Irvine, CA 92620**

Dated: July 27, 2021

**Leroy "Lee" Codding**
**179 Niblick Rd. Box 406**
**Paso Robles CA 93446**

**EXHIBIT 2**



EXHIBIT 2, PAGE 21



EXHIBIT 2, PAGE 22



EXHIBIT 2, PAGE 23



EXHIBIT 2, PAGE 24



EXHIBIT 2, PAGE 25



EXHIBIT 2, PAGE 26



EXHIBIT 2, PAGE 27



EXHIBIT 2, PAGE 28



EXHIBIT 2, PAGE 29



EXHIBIT 2, PAGE 30



EXHIBIT 2, PAGE 31

EXHIBIT 2, PAGE 32



EXHIBIT 2, PAGE 33



EXHIBIT 2, PAGE 34



EXHIBIT 2, PAGE 35



EXHIBIT 2, PAGE 36





EXHIBIT 2, PAGE 38



EXHIBIT 2, PAGE 39



EXHIBIT 2, PAGE 40

EXHIBIT 2, PAGE 41



EXHIBIT 2, PAGE 42



EXHIBIT 2, PAGE 43



EXHIBIT 2, PAGE 44

EXHIBIT 2, PAGE 45



EXHIBIT 2, PAGE 46



EXHIBIT 2, PAGE 47



EXHIBIT 2, PAGE 48



EXHIBIT 2, PAGE 49



EXHIBIT 2, PAGE 50



EXHIBIT 2, PAGE 51



EXHIBIT 2, PAGE 52

## TEXAS GRAPE VARIETAL LIST

### Field #1 (Black)

| | |
|---|---|
| 1. | Merlot (RP) |
| 2. | Merlot (RP) |
| 3 | Merlot (RP) |
| 4. | Merlot (RP) |
| 5 | Merlot (RP) |
| 6. | Merlot (RP) |
| 7. | Merlot (A) / Sangiovese (B) / (RP) |
| 8. | Zinfandel (North) / Merlot (South) / (RP) |
| 9. | Mourvedre |
| 10. | Grenache |

## TEXAS GRAPE VARIETAL LIST

### Field #2 (Red)

| | |
|---|---|
| 1. | Zinfandel |
| 2. | Merlot |
| 3 | Merlot |
| 4. | Merlot |
| 5 | Merlot |

* (RP) = Ready For Replant

* (A)= East

* (B)= West

EXHIBIT 2, PAGE 53

# TEXAS GRAPE VARIETAL LIST

## Field #3 (Blue)

| | |
|---|---|
| 1. | Zinfandel |
| 2. | Zinfandel (South) / Grenache Blanc (North) |
| 3 | Zinfandel (South) / Grenache Blanc (North) |
| 4. | Zinfandel |
| 5 | Zinfandel |
| 6. | Cabernet |
| 7. | Petit Sirah |
| 8. | Petit Sirah |
| 9. | Primitivo / Zinfandel |
| 10. | Grenache (North  / Viognier (South) |
| 11. | Syrah |
| 12. | Grenache |
| 13. | Mourvedre |

# TEXAS GRAPE VARIETAL LIST

## Field #4 (Green)

| | |
|---|---|
| 1. | Petit Verdot |
| 2. | Petit Verdot |
| 3 | Grenache (South) / Petit Sirah (North) |
| 4. | Petit Sirah (RP) |

* (RP) = Ready For Replant

## SAN MARCOS GRAPE VARIETAL LIST

### Field #1 (Black)

| | |
|---|---|
| 1. | Cabernet (RP) |
| 2. | Sauvignon Blanc / Muscat (RP) |
| 3 | Syrah |
| 4. | Syrah |
| 5 | Zinfandel |
| 6. | Zinfandel |
| 7. | Sauvignon Blanc (RP) |
| 8. | Cabernet (RP |
| 9. | Cabernet (RP) |

## SAN MARCOS GRAPE VARIETAL LIST

### Field #2 (Red)

| | |
|---|---|
| 1. | Petit Sirah (RP) |
| 2. | Petit Sirah (RP) |
| 3 | Petit Sirah (RP) |
| 4. | Syrah (RP) |
| 5 | Zinfandel |
| 6. | Zinfandel |
| 7. | Zinfandel |
| 8. | Zinfandel |

* (RP) = Ready For Replant

EXHIBIT 2, PAGE 55

## SAN MARCOS GRAPE VARIETAL LIST

### Field #3 (Blue)

| | |
|---|---|
| 1. | Zinfandel |
| 2. | Zinfandel / Primitivo |
| 3 | Zinfandel / Primitivo |
| 4. | Zinfandel / Primitivo |

## SAN MARCOS GRAPE VARIETAL LIST

### Field #4 (Green)

| | |
|---|---|
| 1. | Primitivo / Zinfandel |
| 2. | Primitivo / Zinfandel |
| 3 | Cabernet (RP) |
| 4. | Petit Sirah / Sauvignon Blanc (RP) |
| 5 | Sangiovese (RP) |
| 6. | Cabernet (RP) |
| 7. | Cabernet (RP) |

* (RP) = Ready For Replant

1300ft
1
5.62ac
2
22
17.46ac
1200ft
3
5
7
6
8
9
21
3.09ac
1100ft
026-342-039
approx. 176.4 ac±
4.73ac
23
2.46ac
3.71ac
25
20
2.28ac
0.92ac
26
27
24
3.58ac
2.53ac
4.53ac
19
15
3.65ac
4.1ac
17
14
3.49ac
16
13
11



**EXHIBIT 3**

NHC Crop Estimates 2021

| Blocks | 2021 | | | Updated 8-5 LC | | |
|---|---|---|---|---|---|---|
| | Yield | Price/ Ton | | | | |
| | | | | | | |
| **Texas Road** | Tons (Estimated) | Anticipated | Extended Gross | | Tons "committed" 7/30 | Tons "committed"8/5 |
| Cabernet | 25 | $2,800 | $70,000 | | 0 | 12 |
| Petite Sirah | 15 | $2,200 | $33,000 | | all | all |
| Zinfandel | 18 | $2,000 | $36,000 | | 0 | 0 |
| | | | | | | |
| San Marcos | | | | | | |
| Zinfandel | 40 | $2,200 | $88,000 | | 0 | 0 |
| Primitivo | 19 | $1,800 | $34,200 | | 0 | 20 |
| | | | $261,200 | | | |
| | | | | | | |
| Live Oak | | | | | | |
| Chardonnay | 5 | $3,500 | $17,500 | | 5 | 5 |
| Cabernet (new) | 0 | $5,000 | $0 | | n/a | n/a |
| Rousanne | 5 | $3,500 | $17,500 | | 3 | 3 |
| Viognier | 4.5 | $3,500 | $15,750 | | 3 | 3 |
| Syrah (producing) | 38 | $5,000 | $190,000 | | 20 | 20 |
| Cabernet Franc | 5 | $5,000 | $25,000 | | 3 | 5 |
| Mourvèdre | 3 | $5,000 | $15,000 | | 3 | 3 |
| Petite Verdot | 6 | $5,000 | $30,000 | | 5 | 5 |
| Tempranillo | 2 | $5,000 | $10,000 | | | 2 |
| Petit Sirah | 3 | $4,000 | $12,000 | | 3 | 3 |
| Cabernet Sauvignon (producing) | 65 | $3,350 | $217,750 | | 50 | 60 |
| **Total Yield** | 253.5 | | $550,500 | | | |
| | | | | | | |
| **Revenue** | | | $811,700 | | | |
| | | | | | | |
| | | | | | | |

1

**EXHIBIT 3, PAGE 59**

**EXHIBIT 4**

# Lee Codding

Orange, Calif                                                    e lecoddingiv@icloud.com     m 952/220-8216

**Objective**: To provide cross-functional leadership and collaboration for management teams of dynamic wine business ventures with a focus on asset optimization and brand development to build value, return on investment and successfully realized vision for ownership.

### Founder/ Managing Partner/ Chief Strategist/ GM, Fluid Advisors, LLC 2012-present
- Managing partner of Fluid Wine Advisors; strategic and finance innovation for the wine trade.
- Client-based finance, facility planning, finance and marketing for clients such as Loring, Sanger Wines, Alma Rosa Vineyard, Metro Wine Marketing, REPAMI S.A. de C.V. and WarRoom Ventures among others.
- Fractional General Manager- interim project basis:
    o Restructuring production, vineyard cap-ex plan and budgets.
    o Revision and implementation of channel plan and staffing plan for Wholesale, Export and DTC.
    o Concept and execution of strategic plans for sustainable profitability.
    o Perform CFO duties and manage assignment to network of outsourced third party specialists.
- Development of business plans, third party funding (equity and debt) and capital expenditure budgets.
- Built international portfolio with partners, including marketing and pricing plans for EU, ZA and South America.

### General Manager/ Senior Vice President, World Class Wines, Inc. 2007-2012
- Lead senior multi-disciplinary management team for business strategy, sales, finance and operations.
- Managed portfolio team to optimize sales (up 30% in 3 years) and best on record GP.
- Ran supplier relations including Eurpoevin, Winebow, CIV, Cristalino, small wineries and DI (Spain, Italy, France).
- Responsible for direct reports running departments of sales, portfolio, operations, administration.
- Spearheaded positioning for sale of business and guided M&A process/ cross-functional integration team.

### Vice President/ Director of Marketing & Sales, Talbott Vineyards 2001-2007
- Ran national and international sales for distributor network in USA and export markets.
- Responsible for production planning, vineyard P&L, costing, forecasting and financial returns.
- Served on cross-functional executive management team of Robert Talbott, Inc.
- Responsible for all aspects of marketing and PR agency relationship management.
- Managed direct-to-consumer sales team, marketing plan and implementation.
- Winery trade channel sales grew 300% during this period.

### Director, Trade Development, Wine.com 1999-2001
- Responsible for department running portfolio management for all suppliers both import and domestic.
- Developed structure, hired, and ran department of 24 in entrepreneurial environment.

### Regional Manager, Frederick Wildman and Sons, Ltd. 1998-1999
- Responsible for distributor management relationships in 3 western states.
- Primary responsibility for programming, pricing, inventory and management.

### Field Market Manager, E&J Gallo Winery 1997-1998
- Ran field sales territory in San Francisco Bay Area with Wine Warehouse sales team.
- Helped integrate distinct sales efforts and cultures.

### Wine Sales Consultant, Wine Warehouse 1994-1997
- Ran sales territory in San Francisco on/off trade including key accounts.
- Developed sales, service and fine wine knowledge via formal training and personal interest.

**Interests**: Attending and contributing at children's sports and activities, PTO executive committee, Women's LAX Board, Cub Scout executive committee, various charitable fundraising efforts, alpine skiing, fine wine and spirits appreciation, fishing, boating, travel, hiking, gardening, writing, food, cooking, music.
**Education**: California Polytechnic State University, San Luis Obispo
BS; Agricultural Business, Marketing/ Minor; Speech Communication/ Honors Graduate
Harvard Business School Extension -  Business Analytics Program (WIP)

**EXHIBIT 5**

# Office of the Minnesota Secretary of State
## Certificate of Organization

I, Mark Ritchie, Secretary of State of Minnesota, do certify that: The following business entity has duly complied with the relevant provisions of Minnesota Statutes listed below, and is formed or authorized to do business in Minnesota on and after this date with all the powers, rights and privileges, and subject to the limitations, duties and restrictions, set forth in that chapter.

The business entity is now legally registered under the laws of Minnesota.

Name:                                 Northern Holding LLC

File Number:                          486524600029

Minnesota Statutes, Chapter:          322B

This certificate has been issued on:  04/30/2012

*Mark Ritchie*

Mark Ritchie
Secretary of State
State of Minnesota

# Office of the Minnesota Secretary of State
## Minnesota Limited Liability Company/Articles of Organization
*Minnesota Statutes 322B*



**The individual(s) listed below who is (are each) 18 years of age or older, hereby adopt(s) the following Articles of Organization:**

ARTICLE 1 - LIMITED LIABILITY COMPANY NAME:

**Northern Holding LLC**

ARTICLE 2 - REGISTERED OFFICE and AGENT:

Name:                    Address:

**Leroy  E Codding**

**5309 Wooddale Ave  Edina MN 55424  USA**

ARTICLE 3 - DURATION:  **PERPETUAL**

ARTICLE 4 - ORGANIZERS:

Name:                    Address:

**Leroy E Codding**        **5309 Wooddale Ave  Edina MN 55424  USA**

If you submit an attachment, it will be incorporated into this document. If the attachment conflicts with the information specifically set forth in this document, this document supersedes the data referenced in the attachment.

*By typing my name, I, the undersigned, certify that I am signing this document as the person whose signature is required, or as agent of the person(s) whose signature would be required who has authorized me to sign this document on his/her behalf, or in both capacities.  I further certify that I have completed all required fields, and that the information in this document is true and correct and in compliance with the applicable chapter of Minnesota Statutes.  I understand that by signing this document I am subject to the penalties of perjury as set forth in Section 609.48 as if I had signed this document under oath.*

SIGNED BY:  **Leroy E. Codding**

MAILING ADDRESS:  **None Provided**

EMAIL FOR OFFICIAL NOTICES:

**lecoddingiv@gmail.com**



**Work Item 486524600029**
**Original File Number 486524600029**

STATE OF MINNESOTA
OFFICE OF THE SECRETARY OF STATE
FILED
**04/30/2012 11:59 PM**

*Mark Ritchie*

Mark Ritchie
Secretary of State

EXHIBIT 5, PAGE 63

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE FARM OPERATOR AGREEMENT AND FOR ORDER TO OPERATE DEBTOR'S BUSINESS FOR THE LIMITED PURPOSE OF COMPLETING FALL 2021 HARVEST OF CURRENT CROP OF FRUIT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RICHARD A. MARSHACK AND LEROY CODDING IN SUPPORT; REQUEST FOR JUDICIAL NOTICE**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 9, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **August 9, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| **DEBTOR** | **INTERESTED PARTY** | **U.S. TRUSTEE** |
|---|---|---|
| NORTHERN HOLDING, LLC | LEE CODDING | UNITED STATES TRUSTEE (SA) |
| ATTN: OFFICER, A MANAGING OR | 13217 JAMBOREE RD #429 | 411 W FOURTH ST., SUITE 7160 |
| GENERAL AGENT, OR TO ANY OTHER | TUSTIN, CA 92782 | SANTA ANA, CA 92701-4593 |
| AGENT AUTHORIZED BY APPOINTMENT | | |
| OR LAW TO RECEIVE SERVICE | | |
| 13217 JAMBOREE RD #429 | | |
| TUSTIN, CA 92782 | | |

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 9, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY: PRESIDING JUDGE'S COPY**
HONORABLE MARK S. WALLACE
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 9, 2021 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
- **ATTORNEY FOR U.S. TRUSTEE (SA):** Nancy S Goldenberg nancy.goldenberg@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE:** Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.:** Paul F Ready tamara@farmerandready.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
- **INTERESTED PARTY COURTESY NEF:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**