D. EDWARD HAYS, #162507
ehays@marshackhays.com
DAVID A. WOOD, #272406
dwood@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>NORTHERN HOLDING, LLC,<br><br>            Debtor. | Case No. 8:20-bk-13014-MW<br><br>Chapter 7<br><br>REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SUPPLEMENT TO CHAPTER 7 TRUSTEE'S MOTION FOR ORDER COMPELLING TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 542(A) AND FOR DETERMINATION THAT EVICTION MORATORIA DO NOT APPLY TO TURNOVER OF BANKRUPTCY ESTATE PROPERTY; REQUEST FOR JUDICIAL NOTICE<br><br>[DK. 185]<br><br>Date: August 30, 2021<br>Time: 2:00 p.m.<br>Ctrm: 6C<br>Address: 411 W. Fourth Street, Santa Ana, CA 92701 |

/ / /

/ / /

REQUEST FOR JUDICIAL NOTICE

4824-2330-5952,v.1

1

### REQUEST FOR JUDICIAL NOTICE

2

3      RICHARD A. MARSHACK, in his capacity as Chapter 7 Trustee ("Trustee") of the

4   Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), through his attorneys, Marshack

5   Hays LLP, hereby requests pursuant to Federal Rule of Evidence 201, that this Court take judicial

6   notice of the following documents to be considered in connection with the Supplement to Chapter 7

7   Trustee Motion for Order Compelling Turnover of Estate Property Pursuant to 11 U.S.C. §542(a)

8   and for Determination that Eviction Moratoria Do No Apply to Turnover of Bankruptcy Estate

9   Property (Dk. No. 185):

| | JUDICIALLY NOTICED DOCUMENT |
|---|---|
| 7 | A true and correct copy of Alabama Assoc. of Realtors, v. Department of Health and Human Services, 594 U.S. ___ (2021). |

10

11

12

13

14   DATED: August 27, 2021                    MARSHACK HAYS LLP

15                                                   /s/ Tinho Mang
                                          By:_____
16                                                D. EDWARD HAYS
                                                  TINHO MANG
17                                                Attorneys for Chapter 7 Trustee
                                                  RICHARD A. MARSHACK
18

19

20

21

22

23

24

25

26

27

28

4824-2330-5952,v.1

**EXHIBIT 7**

Cite as: 594 U. S. ____ (2021)          1

Per Curiam

# SUPREME COURT OF THE UNITED STATES

No. 21A23

ALABAMA ASSOCIATION OF REALTORS, ET AL. *v.*
DEPARTMENT OF HEALTH AND
HUMAN SERVICES, ET AL.

ON APPLICATION TO VACATE STAY

[August 26, 2021]

PER CURIAM.

The Director of the Centers for Disease Control and Prevention (CDC) has imposed a nationwide moratorium on evictions of any tenants who live in a county that is experiencing substantial or high levels of COVID–19 transmission and who make certain declarations of financial need. 86 Fed. Reg. 43244 (2021). The Alabama Association of Realtors (along with other plaintiffs) obtained a judgment from the U. S. District Court for the District of Columbia vacating the moratorium on the ground that it is unlawful. But the District Court stayed its judgment while the Government pursued an appeal. We vacate that stay, rendering the judgment enforceable. The District Court produced a comprehensive opinion concluding that the statute on which the CDC relies does not grant it the authority it claims. The case has been thoroughly briefed before us— twice. And careful review of that record makes clear that the applicants are virtually certain to succeed on the merits of their argument that the CDC has exceeded its authority. It would be one thing if Congress had specifically authorized the action that the CDC has taken. But that has not happened. Instead, the CDC has imposed a nationwide moratorium on evictions in reliance on a decades-old statute that authorizes it to implement measures like fumigation and pest extermination. It strains credulity to believe

EXHBIT 7, PAGE 3

2      ALABAMA ASSN. OF REALTORS *v.* DEPARTMENT
OF HEALTH AND HUMAN SERVS.
Per Curiam

that this statute grants the CDC the sweeping authority
that it asserts.

## I
## A

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act to alleviate burdens caused by the burgeoning COVID–19 pandemic.  Pub. L. 116–136, 134 Stat. 281.  Among other relief programs, the Act imposed a 120-day eviction moratorium for properties that participated in federal assistance programs or were subject to federally backed loans. §4024, *id.*, at 492–494.

When the eviction moratorium expired in July, Congress did not renew it.  Concluding that further action was needed, the CDC decided to do what Congress had not.  See 85 Fed. Reg. 55292 (2020).  The new, administratively imposed moratorium went further than its statutory predecessor, covering all residential properties nationwide and imposing criminal penalties on violators.  See *id.*, at 55293, 55296.

The CDC's moratorium was originally slated to expire on December 31, 2020.  *Id.*, at 55297.  But Congress extended it for one month as part of the second COVID–19 relief Act. See Consolidated Appropriations Act, 2021, Pub. L. 116–260, §502, 134 Stat. 2078–2079.  As the new deadline approached, the CDC again took matters into its own hands, extending its moratorium through March, then again through June, and ultimately through July.  86 Fed. Reg. 8020, 16731, 34010.

The CDC relied on §361(a) of the Public Health Service Act for authority to promulgate and extend the eviction moratorium.  See 58 Stat. 703, as amended, 42 U. S. C. §264(a).  That provision states:

"The Surgeon General, with the approval of the [Secretary of Health and Human Services], is authorized to make and enforce such regulations as in his judgment

EXHBIT 7, PAGE 4

Per Curiam

are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

See also 42 CFR §70.2 (2020) (delegating this authority to the CDC). Originally passed in 1944, this provision has rarely been invoked—and never before to justify an eviction moratorium. Regulations under this authority have generally been limited to quarantining infected individuals and prohibiting the import or sale of animals known to transmit disease. See, *e.g.*, 40 Fed. Reg. 22543 (1975) (banning small turtles known to be carriers of salmonella).

B

Realtor associations and rental property managers in Alabama and Georgia sued to enjoin the CDC's moratorium. The U. S. District Court for the District of Columbia granted the plaintiffs summary judgment, holding that the CDC lacked statutory authority to impose the moratorium. *Alabama Assn. of Realtors* v. *Department of Health and Human Servs.*, 2021 WL 1779282, *10 (May 5, 2021).

But the court stayed its order pending appeal. It reasoned that even though the Government had not shown a substantial likelihood of success, it did make a lesser showing of a "serious legal question on the merits," which the court said warranted granting a stay when the remaining stay factors weighed in the Government's favor. *Alabama Assn. of Realtors* v. *Department of Health and Human Servs.*, 2021 WL 1946376, *4–*5 (May 14, 2021) (citation

4          ALABAMA ASSN. OF REALTORS *v.* DEPARTMENT
OF HEALTH AND HUMAN SERVS.
Per Curiam

omitted); see also *Nken* v. *Holder*, 556 U. S. 418, 434 (2009)
(listing the four traditional stay factors: "(1) whether the
stay applicant has made a strong showing that he is likely
to succeed on the merits; (2) whether the applicant will be
irreparably injured absent a stay; (3) whether issuance of
the stay will substantially injure the other parties inter-
ested in the proceeding; and (4) where the public interest
lies" (citation omitted)).  The D. C. Circuit agreed, though it
rated the Government's arguments more highly.  *Alabama
Assn. of Realtors* v. *Department of Health and Human
Servs.*, 2021 WL 2221646 (June 2, 2021).

   This Court declined to vacate the stay.  *Alabama Assn. of
Realtors* v. *Department of Health and Human Servs.*, *post*,
p. ___.  JUSTICE KAVANAUGH concurred, explaining that he
agreed with the District Court that the CDC's moratorium
exceeded its statutory authority.  But because the CDC
planned to end the moratorium in only a few weeks, and
because that time would allow for additional and more or-
derly distribution of congressionally appropriated rental-
assistance funds, he concluded that the balance of equities
justified leaving the stay in place.  JUSTICE THOMAS,
JUSTICE ALITO, JUSTICE GORSUCH, and JUSTICE BARRETT
noted that they would vacate the stay.

   The moratorium expired on July 31, 2021.  Three days
later, the CDC reimposed it. See 86 Fed. Reg. 43244.  Apart
from slightly narrowing the geographic scope, the new mor-
atorium is indistinguishable from the old.

   With the moratorium once again in place, the plaintiffs
returned to the District Court to seek vacatur of its stay.
The District Court agreed with the plaintiffs that the stay
was no longer warranted for two reasons.  First, the Gov-
ernment was unlikely to succeed on the merits, given the
four votes to vacate the stay in this Court and JUSTICE
KAVANAUGH's concurring opinion.  2021 WL 3577367, *6
(Aug. 13, 2021).  Second, the equities had shifted in the
plaintiffs' favor: Vaccine and rental-assistance distribution

EXHBIT 7, PAGE 6

Cite as: 594 U. S. ____ (2021)          5

Per Curiam

had improved since the stay was entered, while the harm to
landlords had continued to increase. *Ibid.*, n. 3. But the
court concluded that its hands were tied by the law of the
case, in light of the D. C. Circuit's earlier decision not to
vacate the stay. *Ibid.* That denial was followed by one more
stop at the D. C. Circuit, where that court again declined to
lift the stay. 2021 WL 3721431 (Aug. 20, 2021).

 Having passed through the lower courts twice, the plain-
tiffs return as applicants to this Court to again ask us to
vacate the District Court's stay.

## II

 The District Court concluded that its stay is no longer
justified under the governing four-factor test. See *Nken* v.
*Holder*, *supra*, at 434. We agree.

## A

 The applicants not only have a substantial likelihood of
success on the merits—it is difficult to imagine them losing.
The Government contends that the first sentence of §361(a)
gives the CDC broad authority to take whatever measures
it deems necessary to control the spread of COVID–19, in-
cluding issuing the moratorium. But the second sentence
informs the grant of authority by illustrating the kinds of
measures that could be necessary: inspection, fumigation,
disinfection, sanitation, pest extermination, and destruc-
tion of contaminated animals and articles. These measures
directly relate to preventing the interstate spread of disease
by identifying, isolating, and destroying the disease itself.
The CDC's moratorium, on the other hand, relates to inter-
state infection far more indirectly: If evictions occur, some
subset of tenants might move from one State to another,
and some subset of that group might do so while infected
with COVID–19. See 86 Fed. Reg. 43248–43249. This
downstream connection between eviction and the interstate

6      ALABAMA ASSN. OF REALTORS *v.* DEPARTMENT
OF HEALTH AND HUMAN SERVS.
Per Curiam

spread of disease is markedly different from the direct tar-geting of disease that characterizes the measures identified in the statute.  Reading both sentences together, rather than the first in isolation, it is a stretch to maintain that §361(a) gives the CDC the authority to impose this eviction moratorium.

Even if the text were ambiguous, the sheer scope of the CDC's claimed authority under §361(a) would counsel against the Government's interpretation.  We expect Congress to speak clearly when authorizing an agency to exercise powers of "vast 'economic and political significance.'" *Utility Air Regulatory Group* v. *EPA*, 573 U. S. 302, 324 (2014) (quoting *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U. S. 120, 160 (2000)).  That is exactly the kind of power that the CDC claims here.  At least 80% of the country, including between 6 and 17 million tenants at risk of eviction, falls within the moratorium.  See Response in Opposition 26, 29.  While the parties dispute the financial burden on landlords, Congress has provided nearly $50 billion in emergency rental assistance—a reasonable proxy of the moratorium's economic impact.  See 86 Fed. Reg. 43247. And the issues at stake are not merely financial.  The moratorium intrudes into an area that is the particular domain of state law: the landlord-tenant relationship.  See *Lindsey* v. *Normet*, 405 U. S. 56, 68–69 (1972).  "Our precedents require Congress to enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power and the power of the Government over private property." *United States Forest Service* v. *Cowpasture River Preservation Assn.*, 590 U. S. ___, ___–___ (2020) (slip op., at 15–16).

Indeed, the Government's read of §361(a) would give the CDC a breathtaking amount of authority.  It is hard to see what measures this interpretation would place outside the CDC's reach, and the Government has identified no limit in §361(a) beyond the requirement that the CDC deem a

EXHBIT 7, PAGE 8

Per Curiam

measure "necessary."  42 U. S. C. §264(a); 42 CFR §70.2.
Could the CDC, for example, mandate free grocery delivery
to the homes of the sick or vulnerable?  Require manufac-
turers to provide free computers to enable people to work
from home?  Order telecommunications companies to pro-
vide free high-speed Internet service to facilitate remote
work?

This claim of expansive authority under §361(a) is un-
precedented.  Since that provision's enactment in 1944, no
regulation premised on it has even begun to approach the
size or scope of the eviction moratorium.  And it is further
amplified by the CDC's decision to impose criminal penal-
ties of up to a $250,000 fine and one year in jail on those
who violate the moratorium.  See 86 Fed. Reg. 43252; 42
CFR §70.18(a).  Section 361(a) is a wafer-thin reed on which
to rest such sweeping power.

                    B
The equities do not justify depriving the applicants of the
District Court's judgment in their favor.  The moratorium
has put the applicants, along with millions of landlords
across the country, at risk of irreparable harm by depriving
them of rent payments with no guarantee of eventual recov-
ery.  Despite the CDC's determination that landlords
should bear a significant financial cost of the pandemic,
many landlords have modest means.  And preventing them
from evicting tenants who breach their leases intrudes on
one of the most fundamental elements of property owner-
ship—the right to exclude.  See *Loretto* v. *Teleprompter
Manhattan CATV Corp.*, 458 U. S. 419, 435 (1982).

As harm to the applicants has increased, the Govern-
ment's interests have decreased.  Since the District Court
entered its stay, the Government has had three additional
months to distribute rental-assistance funds to help ease
the transition away from the moratorium.  Whatever inter-
est the Government had in maintaining the moratorium's

8          ALABAMA ASSN. OF REALTORS *v.* DEPARTMENT
                   OF HEALTH AND HUMAN SERVS.
                             Per Curiam

original end date to ensure the orderly administration of
those programs has since diminished.  And Congress was
on notice that a further extension would almost surely re-
quire new legislation, yet it failed to act in the several
weeks leading up to the moratorium's expiration.

It is indisputable that the public has a strong interest in
combating the spread of the COVID–19 Delta variant.  But
our system does not permit agencies to act unlawfully even
in pursuit of desirable ends.  Cf. *Youngstown Sheet & Tube
Co.* v. *Sawyer*, 343 U. S. 579, 582, 585–586 (1952) (conclud-
ing that even the Government's belief that its action "was
necessary to avert a national catastrophe" could not over-
come a lack of congressional authorization).  It is up to Con-
gress, not the CDC, to decide whether the public interest
merits further action here.

                    *          *          *

If a federally imposed eviction moratorium is to continue,
Congress must specifically authorize it.  The application to
vacate stay presented to THE CHIEF JUSTICE and by him re-
ferred to the Court is granted.

                                        *So ordered.*

Cite as: 594 U. S. ____ (2021)          1

BREYER, J., dissenting

# SUPREME COURT OF THE UNITED STATES

————

No. 21A23

————

ALABAMA ASSOCIATION OF REALTORS, ET AL. *v.*
DEPARTMENT OF HEALTH AND
HUMAN SERVICES, ET AL.

ON APPLICATION TO VACATE STAY

[August 26, 2021]

JUSTICE BREYER, with whom JUSTICE SOTOMAYOR and
JUSTICE KAGAN join, dissenting.

The Centers for Disease Control and Prevention (CDC)
has issued an order that, in light of the rise of the COVID–
19 Delta variant, temporarily prohibits certain evictions in
high-transmission counties through October 3.  Today, this
Court, as an emergency matter, without full briefing or ar-
gument, blocks that order by vacating a lower court's stay.
I think the Court is wrong to do so, and I dissent.

"We may not vacate a stay entered by a [lower] court . . .
unless that court clearly and 'demonstrably' erred in its ap-
plication of 'accepted standards.'" *Planned Parenthood of
Greater Tex. Surgical Health Servs.* v. *Abbott*, 571 U. S.
1061 (2013) (Scalia, J., concurring in denial of application
to vacate stay) (quoting *Western Airlines, Inc.* v. *Teamsters*,
480 U. S. 1301, 1305 (1987) (O'Connor, J., in chambers)).
Those accepted factors are "(1) whether the stay applicant
has made a strong showing that he is likely to succeed on
the merits; (2) whether the applicant will be irreparably in-
jured absent a stay; (3) whether issuance of the stay will
substantially injure the other parties interested in the pro-
ceeding; and (4) where the public interest lies." *Nken* v.
*Holder*, 556 U. S. 418, 426 (2009) (internal quotation marks
omitted).  In my view, the courts below did not clearly err
for three reasons.

*First*, it is far from "demonstrably" clear that the CDC lacks the power to issue its modified moratorium order. The CDC's current order is substantially more tailored than its prior eviction moratorium, which automatically applied nationwide. Justified by the Delta-variant surge, the modified order targets only those regions currently experiencing sky-rocketing rates. 86 Fed. Reg. 43244, 43245, 43250 (2021). If a covered county "no longer experiences substantial or high levels of community transmission," the order "will no longer apply" there. *Id.,* at 43250. To illustrate the difference, when we denied applicants' last motion, fewer than 20% of counties would have been covered under the modified moratorium order's criteria. See CDC, COVID–19 State Profile Report 476 (June 25, 2021). Today, however, that figure is over 90%. See *infra*, at 7.

To be protected from eviction, a tenant must reside in a covered area and attest that he or she:

> (1) has "used best efforts to obtain all available governmental assistance for rent or housing";

> (2) satisfies certain income requirements;

> (3) is unable to pay rent "due to substantial loss of household income, loss of        compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses";

> (4) continues to "us[e] best efforts to make timely partial rent payments that are as close to the full rent payment as . . . permit[ted]"; and

> (5) has "no other available housing options." *Id.*, at 43245.

Unlike under New York's moratorium, see *Chrysafis* v. *Marks, post*, at 1, landlords remain free to "challeng[e]" in court "the truthfulness of a tenant's . . . declaration" that he or she qualifies for the order's protection. 86 Fed. Reg.

Cite as: 594 U. S. ____ (2021)                3

BREYER, J., dissenting

43251.

The CDC issued this modified moratorium order (like its prior moratorium order) pursuant to its powers under §361(a) of the Public Health Service Act.  That provision "authorize[s]" the CDC:

> "[T]o make and enforce such regulations as in [its] judg-
> ment are necessary to prevent the introduction, trans-
> mission, or spread of communicable diseases [inter-
> state].  For purposes of carrying out and enforcing such
> regulations, the Surgeon General may provide for such
> inspection, fumigation, disinfection, sanitation, pest
> extermination, destruction of animals or articles found
> to be so infected or contaminated as to be sources of
> dangerous infection to human beings, and other
> measures, as in his judgment may be necessary."
> 42 U. S. C. §264(a).

The statute's first sentence grants the CDC authority to design measures that, in the agency's judgment, are essen-tial to contain disease outbreaks.  The provision's plain meaning includes eviction moratoria necessary to stop the spread of diseases like COVID–19.  When Congress enacted §361(a), public health agencies intervened in the housing market by regulation, including eviction moratoria, to con-tain infection by preventing the movement of people.  See, *e.g.,* 5,589 New Cases in One Day Break Influenza Record, N. Y. Times, Jan. 29, 1920, section 1, pp. 1–2, col. 1 ("'[T]he Health Department . . . instruct[s] all landlords that no per-son suffering from [influenza and pneumonia] can be re-moved under any condition whatever without the sanction of the Health Department . . . '").  If Congress had meant to exclude these types of measures from its broad grant of au-thority, it likely would have said so.

Section 361(a)'s second sentence is naturally read to ex-pand the agency's powers by providing congressional au-thorization to act on personal property when necessary.  See

EXHBIT 7, PAGE 13

*FTC* v. *American Tobacco Co.*, 264 U. S. 298, 305–306 (1924). It could also be read to provide emphasis regarding particular enforcement measures. See *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 226 (2008).

Applicants urge, and today's *per curiam* agrees, that the second sentence should instead be read to cabin the CDC's authority. Not only does that reading lack a clear statutory basis but the second sentence goes on to empower the CDC to take "other measures, as in [its] judgment may be necessary." 42 U. S. C. §264(a). Furthermore, reading the provision's second sentence to narrow its first would undermine Congress' purpose. As a key drafter explained, "[t]he second sentence of subsection (a)" was written not to limit the broad authority contained in the first sentence, but to "expressly authorize . . . inspections and . . . other steps necessary in the enforcement of quarantine." Hearings on H. R. 3379 before the Subcommittee of the Committee on Interstate and Foreign Commerce, 78th Cong., 2d Sess., 139 (1944).

The *per curiam* also says that Congress must speak more clearly to authorize the CDC to address public health crises via eviction moratoria. But it is undisputed that the statute permits the CDC to adopt significant measures such as quarantines, which arguably impose greater restrictions on individuals' rights and state police powers than do limits on evictions. Indeed, the current Congress did not bristle at the Government's reading of the statute. In 2020, Congress extended the CDC's moratorium "issued . . . under section 361 of the Public Health Service Act." Consolidated Appropriations Act, 2021, Pub. L. 116–260, §502, 134 Stat. 2078–2079.

In any event, lower courts have split on this question. Compare *Alabama Assn. of Realtors* v. *Department of Health and Human Servs.*, 2021 WL 2221646, *2 (CADC, June 2, 2021), with *Tiger Lily, LLC* v. *United States Dept. of Housing and Urban Development*, 5 F. 4th 666, 669–670

EXHBIT 7, PAGE 14

BREYER, J., dissenting

(CA6 2021). Given the split among the Circuits, it is at least hard to say that the Government's reading of the statute is "demonstrably wrong." See *Coleman* v. *Paccar Inc.*, 424 U. S. 1301, 1304 (1976) (Rehnquist, J., in chambers). At minimum, there are arguments on both sides.

Certainly this Court did not resolve the question by denying applicants' last emergency motion, whatever one Justice might have said in a concurrence. The scope of that challenged moratorium, the balance of the equities, and the public interest were all different. As is typical in this Court's emergency orders denying extraordinary relief, we said almost nothing about our reasons for declining to act.

*Second*, the balance of equities strongly favors leaving the stay in place. Applicants say they have lost "thousands of dollars" in rental income. See Application 32. That injury is lessened by the moratorium order's directive that tenants have an obligation to make "as close to the full rent payment" as possible. 86 Fed. Reg. 43245. And to compensate for the shortfall, Congress has appropriated more than $46.5 billion to help pay rent and rental arrears. See §501, 134 Stat. 2070–2078 (appropriating $25 billion); American Rescue Plan Act, 2021, Pub. L. 117–2, §3201(a)(1), 135 Stat. 54 (appropriating $21.5 billion more). It may, as applicants say, take time to get that money—and that is an injury.

But compare that injury to the irreparable harm from vacating the stay. COVID–19 transmission rates have spiked in recent weeks, reaching levels that the CDC puts as high as last winter: 150,000 new cases per day.

6    ALABAMA ASSN. OF REALTORS *v.* DEPARTMENT
OF HEALTH AND HUMAN SERVS.

Breyer, J., dissenting



Source: CDC, Trends in Number of COVID–19 Cases and Deaths in the US Reported to CDC, https://covid.cdc.gov/covid-data-tracker/#trends_dailycases.

To date, the CDC estimates that 38,150,911 Americans have been sickened. *Ibid.* 629,139 have died. *Ibid.* This week, the CDC calculates average new daily hospital admissions at 12,209. See CDC, New Admissions of Patients with Confirmed COVID–19, https://covid.cdc.gov/covid-data-tracker/#new-hospital-admissions. The number of patients hospitalized with COVID–19 is up 13.3% from last week. See CDC, Prevalent Hospitalization of Patients With Confirmed    COVID–19,    https://covid.cdc.gov/covid-data-tracker/#hospitalizations.

Look back at the order's criteria for temporary eviction relief. The CDC targets only those people who have nowhere else to live, in areas with dangerous levels of community transmission. These people may end up with relatives, in shelters, or seeking beds in other congregant facilities where the doubly contagious Delta variant threatens to spread quickly. See CDC, Delta Variant: What We Know About the Science, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (Delta variant is "more than 2x as contagious as previous variants" and may "cause

more severe illness than previous strains in unvaccinated persons"). Absent the current stay, the CDC projects a strong "likelihood of mass evictions nationwide" with public-health consequences that would be "difficult to reverse." 86 Fed. Reg. 43247, 43252.

*Third*, the public interest is not favored by the spread of disease or a court's second-guessing of the CDC's judgment. The CDC has determined that "[a] surge in evictions could lead to the immediate and significant movement of large numbers of persons from lower density to higher density housing. . . when the highly transmissible Delta variant is driving COVID–19 cases at an unprecedented rate." *Id.*, at 43248. The CDC cites models showing up to a 30% increased risk of contracting COVID–19 for some evicted people and those who share housing with them after displacement. *Ibid*. The CDC invokes studies finding nationally over 433,000 cases and over 10,000 deaths may be traced to the lifting of state eviction moratoria. *Ibid.*

The public interest strongly favors respecting the CDC's judgment at this moment, when over 90% of counties are experiencing high transmission rates. See CDC, COVD–19 Integrated County View, https://covid.cdc.gov/covid-data-tracker/#county-view. That figure is the highest it has been since at least last winter. See CDC, COVID–19 State Profile Report 372 (Aug. 20, 2021). It was in the *single digits* when we considered the CDC's previous moratorium order and denied applicants' earlier motion. See CDC, COVID–19 State Profile Report 476 (June 25, 2021).

On applicants' last trip to this Court, they argued that the "downward trend in COVID–19 cases and the effectiveness of vaccines" left "no . . . public-health rationale for the [CDC's then-operative eviction] moratorium." Application in No. 20A169, p. 4. These predictions have proved tragically untrue. Today they show just how little we may presume to know about the course of this pandemic.

8        ALABAMA ASSN. OF REALTORS *v.* DEPARTMENT
             OF HEALTH AND HUMAN SERVS.
                 BREYER, J., dissenting

Applicants raise contested legal questions about an important federal statute on which the lower courts are split and on which this Court has never actually spoken. These questions call for considered decisionmaking, informed by full briefing and argument. Their answers impact the health of millions. We should not set aside the CDC's eviction moratorium in this summary proceeding. The criteria for granting the emergency application are not met. I respectfully dissent.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A TRUE AND CORRECT COPY OF THE FOREGOING DOCUMENT ENTITLED: REQUEST FOR JUDICIAL
NOTICE IN SUPPORT OF SUPPLEMENT TO CHAPTER 7 TRUSTEE'S MOTION FOR ORDER
COMPELLING TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 542(A) AND FOR
DETERMINATION THAT EVICTION MORATORIA DO NOT APPLY TO TURNOVER OF
BANKRUPTCY ESTATE PROPERTY; REQUEST FOR JUDICIAL NOTICE
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August
27, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **August 27, 2021**, I served the following persons and/or entities at the last
known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR**
NORTHERN HOLDING, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT,
OR TO ANY OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE SERVICE
13217 JAMBOREE RD #429
TUSTIN, CA 92782

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 27, 2021**, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

**VIA PERSONAL DELIVERY: PRESIDING JUDGE'S COPY**
HONORABLE MARK S. WALLACE
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 27, 2021 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **William H Brownstein**    Brownsteinlaw.bill@gmail.com
- **ATTORNEY FOR U.S. TRUSTEE (SA):** Nancy S Goldenberg nancy.goldenberg@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR ERICH RUSSELL, JOANNE RUSSELL:  Kari L Ley**    Ley1238@att.net
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE:** Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.:** Paul F Ready tamara@farmerandready.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
- **INTERESTED PARTY COURTESY NEF:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**