KRISTINE A. THAGARD, #94401
kthagard@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| In re | Case No. 8:20-bk-13014-MW |
|---|---|
| NORTHERN HOLDING, LLC, | Chapter 7 |
| Debtor. | CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 2380 LIVE OAK ROAD, PASO ROBLES, CA: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); AND (2) AUTHORIZING AMENDMENT TO PURCHASE AND SALE AGREEMENT; MEMORANDUM OF POINTS OF AUTHORITIES; DECLARATIONS OF RICHARD A. MARSHACK, K. KEVIN OTUS, AND JEFF AZUSE IN SUPPORT; AND REQUEST FOR JUDICIAL NOTICE |

Date:      February 9, 2022[1]
Time:      2:00 p.m.
Ctrm:      6C
Location:  United States Bankruptcy Court
           411 West Fourth Street
           Santa Ana, CA 92701-4593

---

[1] Hearing Date specially set with permission.

# TABLE OF CONTENTS

1.   Summary of Argument ....................................................................................................2

2.   Factual Background .......................................................................................................3

    A.   Pre-Petition ........................................................................................................3

    B.   The Bankruptcy Case .........................................................................................3

    C.   Farm Operator Agreement & Drilling Motion....................................................6

3.   The Property...................................................................................................................7

A.   Legal Description...............................................................................................7

B.   Encumbrances ....................................................................................................8

C.   Marketing Efforts and the Offer ........................................................................9

D.   Estimated Distribution of Proceeds .................................................................10

    E.   Auction and Overbid Procedures .....................................................................12

4.   Legal Argument ...........................................................................................................14

    **A.**   The Property is property of the Estate. .............................................................14

    **B.**   There is a sound business purpose for the sale. ................................................15

    **C.**   The sale of the Property may be free and clear of all liens, claims, and
interests pursuant to 11 U.S.C. § 363(f)...........................................................16

        i.   The Property may be sold free and clear of the FCW's deeds of trust
(FCW DOT 1, FCW DOT 2, FCW DOT 3, and FCW Advance
pursuant to 11 U.S.C. § 363(f)(2) based on the Agreement. ...........................17

        ii.   The Property may be sold free and clear of any interest of Erich
Russell, Joanne Russell, and the Wild Documents pursuant to 11
U.S.C. § 363(f)(4). ...........................................................................................17

        iii.   Property may be sold free and clear of various statutory provisions
relating to agricultural trusts or liens. .............................................................19

        iv.   The Property may be sold free and clear of liens which are "out of the
money" pursuant to 11 U.S.C. § 363(f)(3).......................................................20

    **D.**   Buyer is entitled to a good faith determination.................................................22

    **E.**   Tax Consequences ............................................................................................23

i

4833-0726-0118,v.1

F.    Waiver of the Fourteen-Day Period for Effectiveness of Sale Order .........................23

G.    The Court should approve the PSA, as amended, for the terms of the sale of the Live Oak Property. ................................................................................24

5.    Conclusion ...............................................................................................................24

Declaration of Richard A. Marshack ...............................................................................28

Declaration of K. Kevin Otus .........................................................................................31

Declaration of Jeff Azuse................................................................................................33

REQUEST FOR JUDICIAL NOTICE ............................................................................35

## TABLE OF CONTENTS

**Cases**

*Brace v. Speier (In re Brace)*,

   908 F.3d 531, 538 (9th Cir. 2018) ............................................... 14

*Chequers Investment Associates v. Hotel Sierra Vista Limited Partnership*

   *(In re Hotel Sierra Vista Limited Partnership)*, 112 F.3d 429, 433-35 (9th Cir. 1997).......... 14, 18

*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*,

   94 B.R. 343 (E.D. Pa. 1988)........................................................ 17

*Clear Channel Outdoor Inc., v. Knupfer (In re PW, LLC)*,

   391 B.R. 25 (B.A.P. 9th Cir. 2008) .............................................. 21

*Ewell v. Diebert (In re Ewell)*,

   958 F.2d 276, 281 (9th Cir. 1992) ............................................... 23

*Filtercorp*,

   163 F.3d at 577 ............................................................................ 23

*FutureSource LLC v. Reuters Ltd*.,

   312 F.3d 281 (7th Cir. 2002) ....................................................... 17

*Hargrave v. Pemberton (In re Tabore, Inc.)*,

   32 C.B.C.2d 1239, 175 B.R. 855 (Bankr. D.N.J. 1994) ................ 17

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

1  *Hayden v. QDOS, Inc. (In re QDOS, Inc.)*,

2    607 B.R. 338 (B.A.P. 9th Cir. 2019) ............................................................. 18

3  *In re Altanta Retail Inc.*,

4    456 F.3d 1277 (11th Cir. 2006) .................................................................... 21

5  *In re Beker Industries Corp.*,

6    63 B.R. 474 (Bankr. S.D.N.Y. 1986) ............................................................ 21

7  *In re Beker Industries*,

8    63 B.R. at 475 ...................................................................................... 21, 22

9  *In re Canonigo*,

10   276 B.R. 257, 261 ........................................................................................ 21

11  *In re Collins*,

12   180 B.R. 447, 441 (Bankr. E.D. Va. 1995) ................................................... 21

13  *In re Continental Air Lines, Inc.*,

14   780 F.2d 1223, 1226 (5th Cir. 1986) ............................................................ 15

15  *In re Gerwer*,

16   898 F.2d 730 (9th Cir. 1990) ........................................................................ 16

17  *In re Kellogg-Taxe*,

18   2014 Bankr. LEXIS 1033 at *17 (Bankr. C.D. Cal. 2014) (Neiter, J.) .................. 15, 18

19  *In re Oneida Lake Development, Inc.*,

20   114 Bankr. 352, 357 (Bankr. N.D.N.Y. 1990) .............................................. 21

21  *In re QDOS, Inc.*,

22   591 B.R. 843, 848-50 (Bankr. C.D. Cal. 2018) (Wallace, J.) .......................... 18

23  *In re Shary*,

24   152 B.R. 724 (Bankr. N.D. Ohio 1993) ......................................................... 17

25  *In re Terrace Gardens Park.*,

26   96 B.R. 707 (Bankr. W.D. Tex. 1989) ........................................................... 21

27

28

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

*In re Wilde Horse Enterprises, Inc.*,

   136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ............................................................ 15, 22

*In re Yavoobian Enterprises LP*,

   2012 WL 3818194 (Bankr. C.D. Cal. 2012) ................................................................ 17

*Marciano v. Fahs (In re Marciano)*,

   459 B.R. 27, 54 (B.A.P. 9th Cir. 2011) ...................................................................... 18

*Matter of Riverside Investment Partnership*,

   674 F.2d 364, 640 (9th Cir. 1982) .............................................................................. 21

*Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc.*

   *(In re Qintex Entertainment, Inc.)*, 950 F.2d 1492, 1495 (9th Cir. 1991) .................... 15

*Pacific Capital Bancorp, N.A. v. East Airport Development, LLC*

   *(In re East Airport Development, LLC)*, 443 B.R. 823, 831 (B.A.P. 9th Cir. 2011)...... 17

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*,

   163 F.3d 570, 577 (9th Cir. 1998) .............................................................................. 22

*Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC*

   *(In re of Spanish Peaks Holdings II, LLC)*, 862 F.3d 1148 (9th Cir. 2017) ............. 15, 16

*S&H Packing & Sales Co. v. Tanimura Distributing, Inc.*,

   883 F.3d 797, 803 (9th Cir. 2018) .............................................................................. 20

*SEC v. Capital Cove Bancorp LLC*,

   2015 U.S. Dist. LEXIS 174856 at *15-16 (C.D. Cal. 2015) ........................................ 18

*Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*,

   325 B.R. 282, 288 (B.A.P. 9th Cir. 2005) .................................................................. 15

*State Department of Revenue v. Blixseth*,

   942 F.3d 1179 (9th Cir. 2019) .................................................................................... 18

*Thomas v. Namba (In re Thomas)*,

   287 B.R. 782, 785 (B.A.P. 9th Cir. 2002). ............................................................. 22, 23

MOTION FOR ORDER APPROVING SALE OF PROPERTY

*United Savings Association of Texas v. Timbers of Inwood Forest Associates*,

   484 U.S. 365, 369 (1988) .......................................................................................................... 21

*United States v. Whiting Pools*,

   462 U.S. 198, 204-05 (1983) ................................................................................................ 14

*Gladstone v. U.S. Bancorp*,

   811 F.3d 1133, 1139 (9th Cir. 2016) ................................................................................... 14

*Walter v. Sunwest Bank (In re Walter)*,

   83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ........................................................................... 15

*Wilmington Trust, N.A. v. BOH Park Highlands NV, L.P.*

   *(In re November 2005 Land Investors, LLC)*, 636 Fed.Appx. 723, 725 (9th Cir. 2016) .............. 18

**Statutes**

11 U.S.C. § 303 ........................................................................................................................... 18

11 U.S.C. §363(f)(3) .............................................................................................................. 20, 21

11 U.S.C. § 363(b) .................................................................................................................. 14, 15

11 U.S.C. § 363(b)(1) .................................................................................................................. 15

11 U.S.C. § 363(f) .................................................................................................................. 16, 21

Section 363(f)(2) ......................................................................................................................... 17

11 U.S.C. § 363(f)(4) ................................................................................................................... 17

11 U.S.C. § 363(m) ...................................................................................................................... 23

11 U.S.C. § 363(p)(2) ............................................................................................................. 14, 18

11 U.S.C. § 365 ............................................................................................................................. 1

11 U.S.C. §§ 361(1)-(2) ............................................................................................................... 21

11 U.S.C. §363(e) ........................................................................................................................ 21

11 U.S.C. §506(a) ........................................................................................................................ 21

11 U.S.C. § 541(a)(2) ................................................................................................................... 14

7 U.S.C. § 183 .............................................................................................................................. 20

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

7 U.S.C. § 499e(c)(2) ........................................................................................................ 20

7 U.S.C. §§ 181 ................................................................................................................. 20

Cal. Evid. Code § 662 ................................................................................................ 14, 15

**Other Authorities**

COLLIER ON BANKRUPTCY ¶

   6004.11 (16th ed. 2019) ............................................................................................... 23

**Rules**

Fed. R. Bank. P. 6004(h) ................................................................................................. 23

Local Bankruptcy Rule 9013-1(f)(3) .............................................................................. 17

Local Bankruptcy Rule 9013-1(h) ................................................................................... 17

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES, ALL

CREDITORS, AND/OR THEIR ATTORNEYS OF RECORD:

Richard A. Marshack, the duly appointed and acting chapter 7 trustee ("Trustee") for the

bankruptcy estate ("Estate") of Northern Holding, LLC ("Debtor"), files this motion for order

authorizing the sale of the real property located at and commonly known as 2380 Live Oak Road,

Paso Robles, CA ("Live Oak Property" or "Property") pursuant to 11 U.S.C. § 363, subject to

overbid to Riboli Paso Robles, LLC ("Buyer") pursuant to an Agreement of Purchase and Sale and

Escrow Instructions  dated September 28, 2021, and subsequent amendments (as amended, "PSA")[2],

and for approval of an amendment to the PSA ("Amendment to PSA")[3]. In support of the Motion,

Trustee represents as follows:

## 1.    Summary of Argument

A trustee may sell property of the estate outside the ordinary course of business where such

sale is supported by a sound business reason and is based on a sound exercise of business judgment.

In this case, Trustee seeks to sell the Live Oak Property to a third-party purchaser for $9,100,000,

subject to approved overbid procedures. This instant Motion is the culmination of ***months*** of diligent

hard work by Trustee and his professionals to market and sell the Property and to generate a benefit

for the Estate as a result of such sale. Pursuant to the partial subordination of the lien and secured

claim held by Farm Credit West, FCLA ("FCW"), which was also recently approved by the Court,

the sales price will provide a distribution of no less than $8,250,000 to FCW, and provide a

substantial distribution to administrative, priority, and unsecured creditors. With the consent of FCW

to record partial releases from certain deeds of trust (as described below) and pursuant to the

agreement with Lender dated December 10, 2021 and the discussion below, Trustee may sell this

property free and clear of liens, claims and interests, with such liens, claims, and interests to attach

to the proceeds of sale. Trustee requests that the Court grant the Motion, subject to overbid.

---

[2] A true and correct copy of the PSA is attached as Exhibit "1" to the declaration of Richard A. Marshack ("Marshack Declaration").
[3] A true and correct copy of the draft Amendment to PSA is attached as Exhibit "2" to the Marshack Declaration.

4833-0726-0118,v.1

**2.   Factual Background**

**A.   Pre-Petition**

Erich Russell was the former owner and operator of Rabbit Ridge Winery ("Rabbit Ridge"), which was as of October 2020 located at 1172 San Marcos Road, Paso Robles, CA ("San Marcos Property"). To finance his business operations, Mr. Russell borrowed substantial sums of money from Farm Credit West, FLCA ("FCW"), which loans were secured certain assets including substantially all assets of Rabbit Ridge and Properties.[4]

Prior to a foreclosure of the Properties by FCW, Mr. Russell filed an individual Chapter 11 case, initiating bankruptcy case number 9:20-bk-10035-DS ("Individual Case"). On June 19, 2020, the Individual Case was dismissed for cause.

A subsequent foreclosure sale for the Properties was scheduled by FCW for October 29, 2020. Prior to the foreclosure date, Mr. Russell and FCW continued to discuss a possible forbearance and an extension of the foreclosure date.

On or about October 28, 2020, Mr. Russell signed quitclaim deeds transferring the Properties to Debtor. These quitclaim deeds were recorded on the same date.[5] Additionally, ownership and control of Rabbit Ridge passed to LeRoy Codding ("Mr. Codding").

**B.   The Bankruptcy Case**

On October 28, 2020 ("Petition Date"), Northern Holding, LLC, a Minnesota limited liability company ("Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. Debtor's managing member was Mr. Codding.

On October 29, 2020, as Dk. No. 5, FCW filed a notice of continuation of perfection of security interest and demand to sequester cash collateral.

---

[4] In additional to the Live Oak Property, Debtor is the title owner of real property, located at 1172 San Marcos Road, Paso Robles, CA ("San Marcos Property"), which includes a turnkey winery production facility and real property identified as APN 027-145-022 in Paso Robles, CA ("Texas Road Property"). The Live Oak Property, San Marcos Property and Texas Road Property are collectively referred to as "Properties."

[5] The recorded quitclaim deed regarding the Live Oak Property is attached to the Request for Judicial Notice ("RJN") as Exhibit "12." A copy of this sale motion and notice will be served on Erich Russell and Joanne Russell to ensure that, to the extent that they have any asserted interest in the Live Oak Property, the sale will be free and clear of such interest.

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

1    On November 6, 2020, as Dk. No. 11, FCW filed a motion for relief from the automatic stay

2 regarding the Live Oak Property and Debtor's other two properties (which are not relevant for this

3 motion). In short, FCW has a blanket lien in the approximate amount of $19-20 million over all

4 assets of Debtor including the Live Oak Property, and the purchase price of $9,100,000 is

5 insufficient to satisfy FCW's entire secured claim.

6    On March 18, 2021, a proof of claim was filed on behalf of the County of San Luis Obispo

7 related to unpaid property taxes. Although the total amount of the filed secured claim was

8 $3,056,482.21, Trustee understands that the vast majority of the claimed property tax obligation is

9 on account of the San Marcos Property,[6] and any outstanding property taxes on the Live Oak

10 Property are relatively minimal.

11    On June 15, 2021, the case was converted to Chapter 7. Richard A. Marshack was appointed

12 as the Chapter 7 trustee.

13    On July 16, 2021, as Dk. No. 140, Trustee filed an application to employ Onyx Asset

14 Advisors, LLC ("Onyx") jointly with Hilco Real Estate, LLC ("Hilco") on modified employment

15 terms to market and sell the Properties on behalf of the Estate ("Broker Employment Application").

16 On September 7, 2021, as Dk. No. 209, the Court entered an order approving the Broker

17 Employment Application. Onyx and Hilco have been working collaboratively to assist Trustee to

18 market and sell the Properties.

19    On July 28, 2021, as Dk. No. 159, Trustee filed a notice of assets. The Court set a claims bar

20 date of November 1, 2021 ("Bar Date"). By the Bar Date, only eight proofs of claim had been filed,

21 and only one proof of claim was filed as a partial general unsecured claim – the claim by the

22 Franchise Tax Board in the amount of $10,297.92 (priority claim: $3,529.47). Thus, the vast

23 majority of the nearly $30 million in claims are comprised of secured and administrative or priority

24 unsecured claims.

25    On August 26, 2021, as Dk. No. 201, Trustee and FCW filed a stipulation providing for

26 certain terms for relief from the automatic stay.

27

28
[6] A true and correct copy of the detailed payoff statement for the San Marcos Property provided to Trustee by the County of San Luis Obispo is attached to the Marshack Decl. as Exhibit "17."

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

On August 31, 2021, as Dk. No. 207, Trustee filed a stipulation for turnover of the Properties which was signed by Erich Russell, Joanne Russell, and representatives from the Rabbit Ridge entities.

On September 7, 2021, as Dk. No. 210, the Court entered an order granting relief from stay to FCW pursuant to the stipulated terms agreed to by Trustee and FCW. Importantly, the stipulated terms provided that no enforcement action would be taken against the Live Oak Property before December 1, 2021 ("Enforcement Date"). Thus, Trustee had a short timeline under which he would be allowed to continue marketing the Live Oak Property (and other Estate properties) to sell.

On September 28, 2021, Trustee and Buyer executed a purchase and sale agreement ("PSA") for those specified assets listed and described in Article I of the PSA (which includes, essentially, the Live Oak Property). Under the PSA, Buyer would continue conducting its due diligence which includes drilling exploratory water wells to determine the level of water at the Live Oak Property for future agricultural use.

On October 5, 2021, as Dk. No. 232, Trustee filed a Motion for Order Approving Overbid Procedures for the sale of the Live Oak Property ("Bid Procedure Motion").

On October 20, 2021, as Dk. No. 238, the Court entered an order granting the Bid Procedure Motion ("Bid Procedure Order"). A true and correct copy of the Bid Procedure Order is attached as Exhibit "13" to the RJN.

Pursuant to the Bid Procedure Order, the overbid procedures set forth in the Bid Procedure Motion and the PSA were approved in their entirety, and the Court set a hearing for a sale Motion for the Live Oak Property for December 13, 2021, at 2:00 p.m., with a deadline of November 22, 2021, to file said sale motion.

On December 20, 2021, as Dk. No. 264, Trustee filed a motion to approve settlement and partial subordination agreement with FCW, where FCW consented to certain terms for the sale of the Live Oak Property ("Compromise Motion"). Included in the stipulation for partial subordination was an extension of the Enforcement Date to January 28, 2022, with an automatic extension if a sale motion was filed by such date, to March 15, 2022. A true and correct copy of the Compromise

4833-0726-0118,v.1

1 | Motion is attached to the RJN as Exhibit "14."

2 |     On January 14, 2022, as Dk. No. 276, the Court entered an order granting the Compromise

3 | Motion, which also granted permission for Trustee to file and serve a sale motion to be heard on

4 | February 9, 2022 at 2:00 p.m.

5 | ### C.    Farm Operator Agreement & Drilling Motion

6 |     Trustee has been negotiating through his brokers with Buyer regarding its due diligence and

7 | satisfaction of conditions to the PSA. One of the conditions which is extremely important to Buyer

8 | (and, indeed, any buyer) is the amount of water available at the Live Oak Property to grow and

9 | sustain a crop. Trustee is informed that in San Luis Obispo County (or at least in that general area),

10 | there are heavy restrictions on water usage but the main source of water for agricultural use is

11 | groundwater wells. Thus, it is vitally important for a buyer that the level of water available at the

12 | Live Oak Property is sufficient to sustain the level of agricultural use desired by any such buyer.

13 |     On August 9, 2021, as Dk. No. 186, Trustee filed a motion to approve a farm operator

14 | agreement and to authorize operations at the Properties for the limited purpose and scope of

15 | completing the Fall 2021 harvest with the assistance of a farm operator ("Operate Motion").

16 |     On September 7, 2021, as Dk. No. 211, the Court entered an order approving the Operate

17 | Motion ("Operate Order"). The harvest has now concluded and the period for the Operate Order has

18 | expired. The Trustee is in the process of collecting the receivables for the fall harvest.

19 |     On October 4, 2021, as Dk. No. 227, Trustee filed a motion for order authorizing water well

20 | drilling on property to acquire water data ("Drilling Motion").

21 |     On November 1, 2021, as Dk. No. 242, the Court entered an order granting the Drilling

22 | Motion ("Drilling Order").

23 |     After entry of the Drilling Order, Trustee and Buyer were informed by Miller Drilling

24 | Company ("Miller") that its schedule was fully booked and that drilling would not be able to start

25 | until January due to Miller's schedule. Additionally, heavy rains in the area may have caused

26 | further delays. As a result, to date, no drilling has commenced and the condition for Buyer's

27 | purchase of the property has not yet been met. Nonetheless, because of the Enforcement Date,

28 |

MOTION FOR ORDER APPROVING SALE OF PROPERTY

Trustee had to file this sale motion to seek approval of the sale of the Property.

## 3.    The Property

### A.    Legal Description

According to the, preliminary title report dated October 15, 2021 ("PTR")[7], the Live Oak

Property is commonly known as 2380 Live Oak, Paso Robles, CA and is legally described as:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF
SAN LUIS OBISPO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST,
MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO,
STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1A:

AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND
EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF
THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST,
MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO,
STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1B:

AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND
INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHEAST 1/4 AND
THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 12,
TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN,
OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE
SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT
DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF,
AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED
CENTERLINE:

BEGINNING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER
BEING SHOWN AS A 1/2 INCH REBAR CAPPED RCE 14994 IN BOOK 1 PAGE 159
OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE
SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET,
MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE
NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING;
THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET

---

[7] A true and correct copy of the PTR is attached as Exhibit "3" to the Declaration of Richard A. Marshack
("Marshack Declaration").

TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°30'20" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

APN: 026-342-039

*See* Marshack Decl., Ex. 3, pg. 110. However, the legal description (including the description of the easement) stated in the PTR differs substantially from the "approved legal description" by FCW, which was attached as Exhibit "1" to the stipulation for voluntary subordination of FCW's lien. Any differences between FCW's approved legal description of the Live Oak Property and title will be resolved in the escrow and sale process.

## B.    Encumbrances

Trustee has conducted a search of all known liens, claims, and interests in the Live Oak Property. As set forth in the PTR, Trustee has determined that the Live Oak Property is encumbered by the following liens:

| Rec. Date | Description | Face Amt. | Disputed? |
|---|---|---|---|
| n/a | Unpaid Property Tax (2021-2022) | $37,511.26 | n/a |
| n/a | Supplemental Assessment (2020-2021) | $5,657.16 | n/a |
| n/a | Defaulted Tax Payment for fiscal year 2020 | $31,646.94 $32,055.71 | n/a |
| 03/23/2007 | Farm Credit West, FCLA First Deed of | $17,500,000 | N |

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

| | | | |
|---|---|---|---|
| | Trust [8] | | |
| 02/06/2009 | Farm Credit West FCLA Second Deed of Trust[9] | $3,525,000 | N |
| 03/16/2010 | Farm Credit West FCLA Third Deed of Trust[10] | $300,000 | N |
| 12/28/2010 | Notice of Advance[11] | $650,000 | |

## C.    Marketing Efforts and the Offer

Onyx Asset Advisors, LLC ("Onyx") and Hilco Trading, LLC ("Hilco" together with Onyx "Agents") have jointly been marketing the Properties since April 2021, with Hilco commencing its marketing process prior to conversion. Declaration K. Kevin Otus ("Otus Decl."), ¶7 and Declaration of Jeff Azuse ("Azuse Decl."), ¶7.

The Agents' marketing efforts include a mix of print and digital advertisements, internet web listings, e-blasts, public relations efforts, and cold-calling. The Properties were marketed in the Wall Street Journal, Los Angeles, Times, San Francisco Chronicle, The Chinese World Journal, and the Korea Times, in addition to digital/website advertisements in SonomaMag.com, SFGate.com, The Somm Journal, and Modern Luxury. Additionally, the Properties were listed on multiple websites, with the Onyx page receiving 1,266 views, the Hilco page receiving 7,251 views with an average view time of 3 minutes and 52 seconds, and multiple LinkedIn postings receiving a combined over 3,700 views. Also, the LoopNet listing to the Properties have received a combined 95,320 total

---

[8] First Deed of Trust, recorded on March 23, 2007, by Farm Credit West, FLCA, as instrument number 2007-19418, in the face amount of $17,500,000 ("FCW DOT 1"). FCW DOT 1 is attached to the RJN as Exhibit "4." An Agreement and Declaration of Subordination was recorded December 31, 2008, as Instrument No. 2008-63934, and is attached to the RJN as Exhibit "5."

[9] Second Deed of Trust, recorded on February 6, 2009, by Farm Credit West, FLCA, as instrument number 2009-5727, in the face amount of $3,525,000 ("FCW DOT 2"). FCW DOT 2 is attached to the RJN as Exhibit "6."

[10] Third Deed of Trust, recorded against the Live Oak Property on March 16, 2010, by Farm Credit West, FLCA, as instrument number 2010-11915, in the face amount of $300,000 ("FCW DOT 3"). FCW DOT 3 is attached to the RJN as Exhibit "7."

[11] Notice of Advance Under Deed of Trust, recorded against the Live Oak Property on December 28, 2010, by Farm Credit West PCA, as instrument number 2010-66312, in the amount of $650,000 ("FCW Advance"). FCW Advance is attached to the RJN as Exhibit "8."

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

1  views, with 29,788 unique prospects. The Zillow listing has received 4,914 total views, and the

2  listing on redfin.com has received 753 total views. The Agents also sent e-mail blasts to their

3  proprietary and other contact lists, and the Properties were marketed through various social media

4  networks. In total, 172 direct contacts were received by the Agents and 55 interested parties

5  executed forms for access to the data room to conduct further due diligence. 10 on-site tours were

6  conducted as described in the Agents' marketing summary attached to the Azuse Declaration and

7  Otus Declaration. As noted, multiple offers were received for the Properties, but only the present

8  offer was on terms acceptable in principle to FCW (which must necessarily consent to a sale free and

9  clear of its secured claim). In fact, the offer presented in the Motion is by far the best and highest,

10 and most complete offer.

11      Consistent with the PSA, Buyer provided Trustee with an earnest money deposit of

12 $273,000, which is being held by Trustee. Additionally, Buyer purchased approximately 10 tons of

13 grapes from the Live Oak Property, presumably as part of its due diligence for the Live Oak

14 Property. This purchase of the grapes constituted a separate transaction from the purchase of the

15 Live Oak Property, and closing on the purchase of the Live Oak Property is not a condition to

16 payment for the 10 tons of grapes.[12]

17      Based on the extensive marketing by the brokers, and as evidenced by the declarations in

18 support of this Motion, Trustee believes that that marketing process has led to the best and highest

19 offer for the Live Oak Property, and that the $9,100,000 represents a fair market price for the Live

20 Oak Property. Marshack Declaration, ¶10.

21      **D.    Estimated Distribution of Proceeds**

22      Trustee proposes to distribute the sale proceeds in the amounts estimated below, based on an

23 initial gross sale price of $9,100,000:

| Description | Amount | Running Total |
|---|---|---|
| Property Taxes (est.)[13] | $90,000 | $9,010,000 |

---

[12] A true and correct copy of the grape purchase agreement between the Estate and Buyer regarding the purchase of grapes is attached to the Marshack Declaration as Exhibit "18." Trustee is informed that only approximately one-third of the contracted amount was shipped to Buyer.

[13] *See* Marshack Dec., Ex. 3, pg. 111. As of December 21, 2021, outstanding taxes totaled $32,464.49, with

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

| | | |
|---|---|---|
| Closing costs (est.) | $29,750 | $8,980,250 |
| County Transfer Tax | $10,010 | $8,970,240 |
| Real Estate Commissions to Onyx (1.75%)[14] | $159,250 | $8,810,990 |
| Real Estate Commission to Hilco (1.75%)[15] | $159,250 | $8,651,740 |
| Trustee's Compensation (2.25%)[16] | $227,500 | $8,424,240 |
| Attorneys' Fees[17] | $100,000 | $8,324,240 |
| Liability Insurance Reimbursement[18] | $6,770.68 | $8,317,469.32 |
| Insurance Reserve[19] | $15,000 | $8,302,469.32 |
| Miscellaneous Payment[20] | $30,000 | $8,272,469.32 |
| Field Agent Fees [21] | $12,000 | $8,260,469.32 |
| NET PROCEEDS TO FCW | $8,260,469.32 | -0- |

Pursuant to the terms of the PSA, Farm Credit West, FLCA ("Lender"), must approve this sale and agree to and record partial releases of the Real Property from that certain deed of trust to secure and original indebtedness of $17,500,000 recorded March 23, 2007 as Instrument No. 2007-005727, that certain notice of advance recorded February 6, 2009 as Instrument No. 2009-005727, that certain deed of trust to secure an original indebtedness of $300,000 recorded February 26, 2010 as Instrument No. 2010-011915, and that certain notice of advance in the amount of $650,000 recorded December 28, 2010 as Instrument No. 2010-066312. Pursuant to the approved Compromise Motion, FCW does not consent to the sale if it receives any less than $8,250,000. In the event that estimated expenses are under-estimated in the table above (i.e. the net anticipated distribution to FCW is less than $8,250,000), Trustee requests approval from the Court to adjust down any line items in the distribution from escrow to ensure that FCW receives a distribution of no less than $8,250,000 out of escrow. Otherwise, FCW will not consent to the sale free and clear of its lien.

---

supplemental taxes of $5,657.16. Estimated taxes for the first half of 2021-22 equal $45,000. The amount due is over-estimated at $90,000.
[14] Shall be paid directly from escrow. Reduced amount pursuant to ¶2(j) of agreement.
[15] Shall be paid directly from escrow. Reduced amount pursuant to ¶2(g) of agreement.
[16] Shall be held pending distribution order. Reduced amount pursuant to ¶2(m) of agreement.
[17] Shall be held pending distribution order. Flat amount pursuant to ¶2(d) of agreement.
[18] Funded to the Estate out of escrow. Pursuant to ¶2(c) of agreement.
[19] Funded to the Estate out of escrow. Pursuant to ¶2(c) of agreement.
[20] Funded to the Estate out of escrow. Pursuant to ¶2(p) of agreement.
[21] Shall be held pending distribution order. Pursuant to ¶2(q) of agreement.

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

## E.    Auction and Overbid Procedures

While Trustee is prepared to accept the offer for the Live Oak Property as set forth in this Motion, Trustee is also interested in obtaining the maximum price for the Live Oak Property.

Accordingly, the Court has authorized the implementation of the overbid procedure regarding the sale of the Property on the following terms, pursuant to the Bid Procedure Order filed on October 20, 2021, as Dk. No. 238, and pursuant to the terms of the PSA, on the following terms:

Any potential overbidder is encouraged to obtain a copy of the Motion and contact Trustee's counsel prior to the hearing. The Live Oak Property will be sold subject to overbid at an open auction (the "Auction") to be conducted by Trustee before the Court at the time that this Motion is heard.  Trustee has established the following overbid procedures, which shall govern any bidding:

The proposed bidding procedures are set forth in ¶ 6.4.2 of the PSA, which is reproduced in full below:

(a)    If there are no overbids, Seller will recommend and request the approval of the sale to Buyer upon the terms and conditions contained in this Agreement.

(b)    In order to overbid, any prospective bidder shall be required to establish to the satisfaction of Seller its financial ability to successfully consummate the transaction. This shall include as conditions of eligibility to bid a non-refundable deposit equal to three (3%) of the Buyer's purchase offer, evidence of availability of cash to close, and the execution of a form of Purchase Agreement substantially the same as this Agreement. The only changes to it should be the bid price, the identity of the bidder and provision made for compliance with these Bidding Procedures.

(c)    If the Court conducts an auction of the Property, the initial minimum overbid shall FIFTY THOUSAND DOLLARS ($50,000.00) higher than Buyer's agreed Purchase Price plus the Breakup Fee, defined below, and thereafter will go up in TWENTY-FIVE THOUSAND DOLLAR ($25,000.00) increments.

(d)    If Buyer is not the successful bidder at the auction due to an overbid ("*Overbid*"), Buyer shall be entitled to receive the amount of its Due Diligence costs (not to exceed ONE HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($175,000.00) plus a break-up fee of TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS ($225,000.00) (collectively "Breakup Fee").

(e)    The Buyer's right to a Breakup Fee is contingent on: (i) Buyer being a ready, willing and able buyer for the Property at the time the Bankruptcy Court conducts the last hearing on the sale of the Property; (ii) Buyer has completed Buyer's Due Diligence, waived in writing all contingencies and confirmed in writing that all approval periods have expired; and (iii) Buyer is overbid and the successful bidder in fact purchases the Property for the sum it bids at the hearing

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

(f)    Buyer shall provide its Due Diligence costs, with backup documentation, to Trustee within five (5) days after the expiration of the Due Diligence Period. The Breakup Fee shall be paid within seven (7) business days of the close of the Property with the successful bidder

(g)    If there is an overbid of at least NINE MILLION FIVE HUNDRED FIFTY THOUSAND DOLLARS ($9,550,000.00) and Buyer is the successful bidder, Buyer shall be entitled to a credit to the overbid purchase price in the amount of the Breakup Fee. If Buyer is not the successful bidder, Buyer agrees that its last bid shall serve as a back-up bid. The Deposit, less the Independent Consideration shall be returned to Buyer within seven (7) business days of the close of the Property with the successful bidder.

In summary, the bid procedures are as follows:

- Buyer to deposit $273,000 with Trustee within 3 business days of the mutual execution of the PSA. Deposit has been received by Trustee.

- Any overbidder must provide a nonrefundable deposit of 3% of $9,100,000, which is a deposit of $273,000 (same as Buyer), provide terms substantially similar to the PSA, and provide evidence of ability to close.

- Minimum overbid to be $9,550,000,[22] and subsequent minimum increments for bidding shall be $25,000.

- If it is not the successful bidder at auction, Buyer is entitled to a break-up fee of $225,000, which is 2.47% of the initial bid price of $9,100,000. Buyer will also be entitled to recover its due diligence costs not to exceed $175,000. The $175,000 reimbursement plus the $225,000 break-up fee are collectively referred to as the Break Up Fee.

- Buyer may only be entitled to the Break Up Fee if it waives all contingencies, has completed its due diligence, and is a ready, willing, and able buyer on the sale hearing date.[23]

- If there is an overbid of at least $9,550,000, Buyer may use the Break Up Fee as a

---

[22] The due diligence costs are not anticipated to exceed $175,000. The successful bidder, if not Buyer, will be entitled to a credit in an amount equal to the difference between Buyer's actual due diligence costs and $175,000. For example, if the due diligence costs are $125,000, and Buyer is not the successful bidder, the winning bidder will be entitled to receive a $50,000 credit against the purchase price.

[23] Because drilling by Miller has not commenced, Buyer has not yet waived its contingencies. The Trustee will provide an update to the Court no later than the hearing date.

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

cash credit against its bid, provided that it is the successful/highest bidder.

- Buyer agrees that its last bid, if unsuccessful, will serve as the back-up bid.

- Trustee has sole discretion to determine the "best bid" for the Live Oak Property.

Trustee believes the foregoing overbid terms are reasonable under the circumstances of this case and will ensure that the price ultimately received for the Property will be the highest and best price.

## 4.  Legal Argument

A trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

### A.  The Property is property of the Estate.

The filing of a bankruptcy petition creates an estate comprised of, *inter alia*, "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case." 11 U.S.C. § 541(a)(2). "§ 541(a)(1)'s scope is broad." *United States v. Whiting Pools*, 462 U.S. 198, 204-05 (1983); *see also Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1139 (9th Cir. 2016) (Section 541(a) has a "broad scope" with "narrow exceptions"). In California, "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title." Cal. Evid. Code § 662; *see Brace v. Speier (In re Brace)*, 908 F.3d 531, 538 (9th Cir. 2018). In a hearing under Section 363, "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p)(2); *see, e.g., Chequers Investment Associates v. Hotel Sierra Vista Limited Partnership (In re Hotel Sierra Vista Limited Partnership)*, 112 F.3d 429, 433-35 (9th Cir. 1997).

As of the Petition Date, Debtor was the title owner of the Live Oak Property by virtue of quitclaim deed recorded on October 28, 2020, and the Live Oak Property was listed as property of the Estate in Debtor's bankruptcy petition and schedules. As the title owner of the Live Oak Property, under California law, Debtor is presumed to be the owner of the full beneficial title of the Live Oak Property as well. Due to the timing of the October 28, 2020 quitclaim deeds, title insurance is requiring that Trustee obtain a specific finding regarding Debtor's interest in the Live Oak

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

1  Property, and further requiring that the sale order provide that the sale is free and clear of any

2  interest of the quitclaiming parties (i.e. Erich Russell and Joanne Russell) and documents they

3  executed and recorded on behalf of Debtor[24]. Pursuant to the Bankruptcy Code, if any entity asserts

4  any superior interest to the Estate, it must prove such interest by clear and convincing evidence at the

5  hearing. *See* Cal. Evid. Code § 662 (title "presumption may be rebutted only by clear and convincing

6  proof.").

7  ## B.    There is a sound business purpose for the sale.

8  "The court's obligation in § 363(b) sales are to assure that optimal value is realized by the

9  estate under the circumstances." *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R.

10  282, 288 (B.A.P. 9th Cir. 2005). For a trustee to sell property of the estate, "there must be some

11  articulated business justification for using, selling, or leasing the property outside the ordinary

12  course of business… whether the proffered business justification is sufficient depends on the case."

13  *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (adopting the

14  language of *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)). Section 363

15  even allows the trustee to sell "substantially all of the assets of the estate." *Otto Preminger Films,*

16  *Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.)*, 950 F.2d 1492, 1495 (9th Cir.

17  1991); *see, e.g., In re Kellogg-Taxe*, 2014 Bankr. LEXIS 1033 at *17 (Bankr. C.D. Cal. 2014)

18  (Neiter, J.); *see also, e.g., Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re of*

19  *Spanish Peaks Holdings II, LLC)*, 862 F.3d 1148 (9th Cir. 2017). The court should approve a sale of

20  property under Section 363(b)(1) if the trustee has established a sound business purpose for the

21  proposed transaction. *Walter*, 83 B.R. at 16; *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841

22  (Bankr. C.D. Cal. 1991) ("In any sale of estate assets, the ultimate purpose is to obtain the highest

23  price for the property sold."). The business judgment standard is deferential. *Lahijani*, 325 B.R. at

24  289 ("Ordinarily, the position of the trustee is afforded deference, particularly where business

25

---

26  [24] Three additional documents were executed by Debtor and recorded on October 28, 2020: (i) Agreement To
Purchase and Sell a Corporation and Real Estate, recorded as document no. 2020-61134 (RJN, Ex. "9"); (ii)

27  Assumption and Assignment Agreement, recorded as document no. 020-61135 (RJN, Ex. "10") ; and (iii)
Assumption and Assignment Agreement, recorded as document no. 020-61136 (RJN, Ex. "11") (collectively

28  "Wild Documents").

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

1  judgment is entailed in the analysis or where there is no objection.").

2      Although FCW's secured claim exceeds the gross sale price of the Live Oak Property at the

3  stalking horse bid level of $9.1 million, the sale of the Live Oak Property will generate a significant

4  benefit for creditors and the Estate pursuant to the subordination agreement approved by the Court.

5  All administrative costs of sale will be paid, at the agreed-upon discounted rates, and there will be an

6  estimated $30,000 for the benefit of unsecured creditors.

7      **C.      The sale of the Property may be free and clear of all liens, claims,**

8      **and interests pursuant to 11 U.S.C. § 363(f).**

9      Trustee seeks authority to complete the sale free and clear of all liens, claims, and

10  interests. Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of

11  any interest in such property of an entity," if any one of the following five conditions is met:

12      (1) Applicable non-bankruptcy law permits a sale of such property free
            and clear of such interest;
13      (2) Such entity consents;
        (3) Such interest is a lien and the price at which such property is to be
14          sold is greater than the aggregate value of all liens on such property;
15      (4) Such interest is in bona fide dispute; or
        (5) Such entity could be compelled, in a legal or equitable proceeding,
16          to accept money satisfaction of such interest.

17  11 U.S.C. § 363(f); *see e.g., Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re*

18  *of Spanish Peaks Holdings II, LLC)*, 862 F.3d 1148, 1153-54 (9th Cir. 2017). Section 363(f) is

19  written in the disjunctive, such that satisfaction of any one of the five conditions is sufficient to

20  allow a trustee to sell property of the estate free and clear of liens. *In re Gerwer*, 898 F.2d 730 (9th

21  Cir. 1990).

22      Trustee does not seek to sell free and clear of secured or unsecured property tax liens, and all

23  unpaid property taxes will be paid in full from escrow. Undisputed liens will also be paid in full.

24  / / /

25  / / /

26

27

28

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

1    **i.    The Property may be sold free and clear of the FCW's deeds of**
2    **trust (FCW DOT 1, FCW DOT 2, FCW DOT 3, and FCW**
3    **Advance[25] pursuant to 11 U.S.C. § 363(f)(2) based on the**
4    **Agreement.**

5    A Chapter 7 trustee may sell free and clear of a lien if that interest holder consents. 11 U.S.C.

6    §363(f)(2); *Pacific Capital Bancorp, N.A. v. East Airport Development, LLC (In re East Airport*

7    *Development, LLC)*, 443 B.R. 823, 831 (B.A.P. 9th Cir. 2011). A lienholder's failure to oppose any

8    proposed sale may also be deemed consent. *Yacoobian Enterprises, L.P. v. Canico Enterprises, L.P.*

9    *(In re Yacoobian Enterprises LP)*, 2012 Bankr. LEXIS 4062 at *5-6 (Bankr. C.D. Cal. 2012) (Mund

10   J.) ("A foreclosure sale is a sale of the property. Section 363(f)(2) can be interpreted to mean that

11   Dumaine's silence was consent to the sale.").[26]

12   Pursuant to the Agreement, which was approved by the Court pursuant to a stipulation and

13   order, FCW has consented to a sale free and clear of its secured claim and a partial release of its

14   deed of trust solely pursuant to and limited by the terms of the Agreement. Thus, with the agreement

15   of FCW, the sale may be approved free and clear of FCW DOT 1, FCW DOT 2, FCW DOT 3, and

16   FCW Notice of Advance pursuant to 11 U.S.C. § 363(f)(2), provided that FCW receives no less than

17   $8,250,000 out of escrow from a sale of the Live Oak Property. .

18   **ii.    The Property may be sold free and clear of any interest of**
19   **Erich Russell, Joanne Russell, and the Wild Documents**
20   **pursuant to 11 U.S.C. § 363(f)(4).**

21   Where a free and clear sale is proposed under 11 U.S.C. § 363(f)(4), "[t]he parties must

22   provide some factual grounds to show some objective basis for the dispute." *In re Kellogg-Taxe*,

23

24   [25] A true and correct copy of FCW DOT 1, FCW DOT 2, FCW DOT 3, and FCW Advance are attached
     to the RJN as Exhibits "4, 6-8."

25   [26] *See also*, *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002) (failure to object may constitute
     consent, if there was adequate notice), *cert. denied*, 538 U.S. 962, 123 S. Ct. 1769, 155 L. Ed. 2d 513 (2003);
26   *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343 (E.D. Pa. 1988) (implied consent
     found); *Hargrave v. Pemberton (In re Tabore, Inc.)*, 32 C.B.C.2d 1239, 175 B.R. 855 (Bankr. D.N.J. 1994)
27   (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of section 363); *In re*
     *Shary*, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to object to transfer of liquor license constituted
28   consent to sale); Local Bankruptcy Rule 9013-1(f)(3); Local Bankruptcy Rule 9013-1(h).

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

1  2014 Bankr. LEXIS 1033 at *22 (Bankr. C.D. Cal. 2014); *accord*, *SEC v. Capital Cove Bancorp*

2  *LLC*, 2015 U.S. Dist. LEXIS 174856 at *15-16 (C.D. Cal. 2015); *cf. Marciano v. Fahs (In re*

3  *Marciano)*, 459 B.R. 27, 54 (B.A.P. 9th Cir. 2011) (defining a bona fide dispute in the context of 11

4  U.S.C. § 303 as requiring "an objective basis for either a factual or a legal dispute as to the validity"

5  of the interest). If a claim is disputed in part, then the entire claim may be treated as a disputed

6  claim. *See In re QDOS, Inc.*, 591 B.R. 843, 848-50 (Bankr. C.D. Cal. 2018) (Wallace, J.) ("the

7  proposition 'a partially disputed claim is a disputed claim' is not only true, it is <u>necessarily true</u>.")

8  (*rev'd on procedural grounds by Hayden v. QDOS, Inc. (In re QDOS, Inc.)*, 607 B.R. 338 (B.A.P.

9  9th Cir. 2019)); *see also State Department of Revenue v. Blixseth*, 942 F.3d 1179 (9th Cir. 2019).

10  Again, to the extent that any such interest is asserted by a creditor or third party, "the entity

11  asserting an interest in property has the burden of proof on the issue of the validity, priority, or

12  extent of such interest." 11 U.S.C. § 363(p)(2); *see, e.g., id.* ("Under § 363(p)(2), [judgment creditor]

13  had the burden of proof on the issue of the validity, priority, or extent of any interest in assets."); *see*

14  *also, e.g., Chequers*, 112 F.3d at 434 (9th Cir. 1997) (*cited with approval by Wilmington Trust, N.A.*

15  *v. BOH Park Highlands NV, L.P. (In re November 2005 Land Investors, LLC)*, 636 Fed.Appx. 723,

16  725 (9th Cir. 2016)). Specifically, "as a preliminary matter, the party must prove that it holds a

17  perfected security interest in the [collateral] to which its liens attach." *Chequers*, 112 F.3d at 434.

18  On March 31, 2021, a proof of claim (No. 5-1) was filed on behalf of Erich Russell in the

19  amount of $7,000,000, as a fully secured claim ("Russell Claim").[27] Attached to the Russell Claim

20  was a document entitled "Agreement to Purchase and Sell a Corp & Real Estate" which appears to

21  have been recorded in the County of San Luis Obispo as document no. 2020-061134. Nowhere on

22  the document does there appear any discussion of a security interest in any property, and a

23  contractual intent to create a security interest is a prerequisite to the existence of a security interest in

24  the first place. As such, the secured status of the Russell Claim is subject to a bona fide dispute and

25  the Live Oak Property may be sold free and clear of any security interest purported to be held by

26  Erich Russell.

27

28  [27] A true and correct copy of POC 5-1 is attached to the RJN as Exhibit "15."

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

Finally, because of the timing of the quitclaim deeds from Erich Russell to Debtor, the title company is requesting that the sale order specifically provide that the sale is free and clear of any interest of Erich Russell in the Live Oak Property. As far as Trustee is aware, Mr. Russell asserts no ownership interest in the Live Oak Property, and also signed the stipulation for turnover of the Properties.[28] In the absence of any proof presented by Erich Russell that he is the owner of the Live Oak Property pursuant to 11 U.S.C. § 363(p)(2), the sale order should specifically provide that the sale is free and clear of any interest of Erich Russell in the Live Oak Property. As for the Wild Documents which appear to have been drafted, executed, and recorded around the Petition Date, it is unclear what interest, if any, is created in the Live Oak Property by the Wild Documents. It appears, for example, that the Russell Claim purports to be a secured claim but the Wild Documents do not appear to create a secured claim of any type. Mr. Russell will be served with a copy of this motion and the burden of proof lies on him to assert and prove any interest in the Live Oak Property pursuant to 11 U.S.C. § 363(p)(2).

Further, the Assumption and Assignment Agreement, recorded as document no. 020-61135 (RJN, Ex. "10") and Assumption and Assignment Agreement, recorded as document no. 020-61136 (RJN, Ex. "11"), purport to assign the obligations of Joanne Russell and Erich Russell under the FCW promissory notes to Debtor. A necessary party to these agreements would be FCW, and it did not execute the Assumption and Assignment documents. Therefore, once again, the Wild Documents do not create any type of secured claim.

### iii. Property may be sold free and clear of various statutory provisions relating to agricultural trusts or liens.

"Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall

---

[28] A true and correct copy of the stipulation for turnover [Dk. 184] is attached to the RJN as Exhibit "16." No one is currently occupying any of the Properties, and Mr. and Mrs. Russell voluntarily vacated the Properties pursuant to the stipulation for turnover. Additionally, Rabbit Ridge Wine Sales, Inc. voluntarily vacated the Properties.

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

1  be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid

2  suppliers or sellers of such commodities or agents involved in the transaction, until full payment of

3  the sums owing in connection with such transactions has been received by such unpaid suppliers,

4  sellers, or agents." 7 U.S.C. § 499e(c)(2). Generally, PACA (7 U.S.C. §§ 499 *et seq.*) is "intended to

5  shield agricultural growers from risk" inherent in selling perishable agricultural commodities. *See*

6  *S&H Packing & Sales Co. v. Tanimura Distributing, Inc.*, 883 F.3d 797, 803 (9th Cir. 2018).

7  Also, title insurance may require that the sale be free and clear of any lien or trust under 7

8  U.S.C. §§ 181 *et seq.*, the Packers and Stockyards Act ("P&S Act"). The P&S Act applies only to

9  "the livestock and meat-packing industries." 7 U.S.C. § 183.

10  In this case, Debtor owns real property on which certain agricultural businesses can be and

11  were operated. For example, the Court granted limited permission for Trustee to operate and

12  complete the harvest for Fall 2021, which expired in October 2021. Debtor never purchased any

13  perishable agricultural commodities (instead, Trustee was the *seller* of such commodities), and there

14  are no known PACA liens or trusts which could be imposed against the Live Oak Property. As for

15  the P&S Act, such laws only apply to the meatpacking industry, and to the best of Trustee's

16  knowledge, the Live Oak Property was never involved with any commercial activity to which the

17  P&S Act would apply. Trustee will serve a copy of this motion on all grape purchasers and, absent

18  objection, it is appropriate for the Court to enter an order providing that the sale is free and clear of

19  any trust or lien under either PACA or the P&S Act.

20  ### iv.    The Property may be sold free and clear of liens which are

21  ### "out of the money" pursuant to 11 U.S.C. § 363(f)(3).

22  Section 363(f)(3) permits a sale free and clear of an interest if such interest is a lien and the

23  price at which such property is to be sold is greater than the aggregate value of all liens on such

24  property. 11 U.S.C. § 363(f)(3).

25  There is a split of authority as to the interpretation of the phrase "…greater than the

26  aggregate value of all liens on such property." A number of courts have construed "value" to mean

27  the face amount of the liens, such that a sale free and clear could only be approved if the sale price

28

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

1  exceeded the total amount of debts against the property. *See e.g.*, *Matter of Riverside Investment*

2  *Partnership*, 674 F.2d 634, 640 (7th Cir. 1982). In the alternative, the majority of courts have found

3  that "value" should be defined as the economic value or secured value, not the face amount of the

4  liens. *See In re Canonigo*, 276 B.R. 257, 261 (citing *In re Beker Industries Corp.*, 63 B.R. 474

5  (Bankr. S.D.N.Y. 1986)). *See also, In re Atlanta Retail Inc.*, 456 F.3d 1277 (11th Cir. 2006). *But see,*

6  *Clear Channel Outdoor Inc., v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (B.A.P. 9th Cir. 2008)

7  (holding §363(f) did not authorize sale free and clear of liens where price of property was equal to or

8  less than amount of all claims held by creditors who held a lien or security interest in the property

9  being sold).

10        "When construing statutory language, terms of a particular meaning to the subject matter are

11  to be interpreted in line with that meaning, and in light of other provisions of the statute." *In re*

12  *Collins*, 180 B.R. 447, 441 (Bankr. E.D. Va. 1995) (citing *In re Beker Industries*, 63 B.R. at 475). 11

13  U.S.C. §506(a) also utilizes the term "value," and suggest that with respect to the interest of a

14  secured creditor, "value" means actual value as determined by the court, rather than the face amount

15  of the lien. *Id*. The Supreme Court has ruled that value in § 506(a) means the same as "value" under

16  other provisions of the Code, specifically 11 U.S.C. §§ 361(1)-(2), which address adequate

17  protection. *Id*. (citing *United Savings Association of Texas v. Timbers of Inwood Forest Associates*,

18  484 U.S. 365, 369 (1988)). Because 11 U.S.C. §363(e) makes adequate protection integral of any

19  proposed sale under §363(f), it is logical to extend the definition of "value" with regard to a secured

20  creditor's interest to "value" in §363(f)(3). *Id*. (citing *In re Terrace Gardens Park.*, 96 B.R. 707

21  (Bankr. W.D. Tex. 1989)). Further, this analysis gives deference to congressional intent in utilizing

22  the term "value" rather than "amount" in the statute. *Id*. (citing *In re Oneida Lake Development, Inc.*,

23  114 Bankr. 352, 357 (Bankr. N.D.N.Y. 1990).

24        When confronted with a situation where trustee proposes to sell property for a price of less

25  than the aggregate amount of liens encumbering the property, case law indicates courts must find

26  special circumstances justifying a sale for less than the amount of the lien, and must also determine

27

28

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

1  that the proposed sale is the best price obtainable under the circumstances. *Beker Industries*, 63 B.R.

2  at 477.

3       Here, as set forth above, Trustee's title insurance company has conducted a title search,

4  which revealed that there are three deeds of trust, a notice of advance under deed of trust, and

5  various unpaid taxes and assessments encumbering the Property:

6       • FCW First Deed of Trust in the amount of $17,500,000;

7       • FCW Second Deed of Trust in the amount of $3,525,000;

8       • FCW Third Deed of Trust in the Amount of $300,000;

9       • FCW Advance in the amount of $650,000;

10      • Unpaid property taxes for 2021-2022 in the amount of $37,511.26;

11      • Unpaid property taxes for 2020-2021 in the amount of $45,657.16;

12      • Unpaid property taxes for 2021 in the amount of $63,702.65; and

13      In total, there are over $20 million in secured claims asserted against the Live Oak Property,

14  which is significantly less than the stalking horse initial bid price of $9,100,000. It is clear, therefore,

15  that the sale of the Live Oak Property will be insufficient to satisfy all secured claims against the

16  Live Oak Property. Nonetheless, the sale of the Live Oak Property for its economic value is within

17  Trustee's sound business judgment. *See In re Canonigo*, 276 B.R. at 262.

18      **D.    Buyer is entitled to a good faith determination.**

19      "A good faith buyer is one who buys in good faith and for value." *Paulman v. Gateway*

20  *Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 577 (9th Cir. 1998) (internal

21  quotation marks omitted). "[A]n actual finding of good faith is not an essential element for approval

22  of a sale under § 363(b)." *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (B.A.P. 9th Cir.

23  2002). "Good faith encompasses fair value, and further speaks to the integrity of the transaction." *In*

24  *re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991) (internal quotation

25  marks omitted). "Lack of good faith is typically shown by fraud, collusion between the purchaser

26  and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

27

28

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

*Filtercorp*, 163 F.3d at 577 (citing *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992)); *see also Thomas*, 287 B.R. at 785.

To the best of Trustee's knowledge, Buyer in this case has no connection with Trustee, the Debtor, the Estate's creditors, and their respective professionals, and it is offering substantial value to the Estate for the Property. If Buyer is the Successful Bidder, it should be entitled to receive a good faith determination under 11 U.S.C. § 363(m). Once Buyer finishes its due diligence, it will prepare and file its own declaration regarding good faith.

## E.    Tax Consequences

Trustee is informed that the sale of the Live Oak Property will not result in any negative tax consequences resulting from any capital gains. Rather, the record shows that the Live Oak Property (among other Properties) was sold to Debtor for the stated purchase price of approximately $30,000,000, and the Live Oak Property is being sold to Buyer for significantly less than the purchase price by Debtor. As for all property and county taxes for the Live Oak Property, these will be paid in full in connection with escrow.

## F.    Waiver of the Fourteen-Day Period for Effectiveness of Sale Order

Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FRBP 6004(h).  The legislative history to Rule 6004 provides:

> The court may, in its discretion, order that Rule 6004(g) [now 6004(h)] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court. Alternatively, the court may order that the stay under Rule 6004(g) [now 6004(h)] is for a fixed period less than 10 [now 14] days.

The leading treatise on bankruptcy law opines that "if an objection [to the sale] has been filed and is overruled, the court should eliminate or reduce the 14-day stay period only upon a showing that there is a sufficient business need to close the transaction within the 14-day period and the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected." COLLIER ON BANKRUPTCY ¶ 6004.11 (16th ed. 2020).

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

In order to facilitate the timely and speedy close of escrow, Trustee respectfully requests that, absent any opposition, the fourteen-day stay of effectiveness of the sale order be waived in order to allow escrow to proceed without delay.

### G.   The Court should approve the PSA, as amended, for the terms of the sale of the Live Oak Property.

In connection with the sale of the Live Oak Property to Buyer, Trustee extensively negotiated a purchase and sale agreement with Buyer, including amendments (as amended, "PSA"). Because the sale of the Live Oak Property is a complicated real estate transaction of a large parcel of property for commercial and agricultural use, the PSA was a necessary and indispensable component of such a transaction which provides significant protections for both buyer and seller and provides a negotiated framework for the transfer and sale of the Live Oak Property. If the Court is inclined to approve the sale of the Live Oak Property to Buyer, it should also enter an order approving the PSA as the document to memorialize and effectuate the sale, and authorize Trustee to enter into the PSA and its amendments.

## 5.   Conclusion

Based on the foregoing, Trustee respectfully requests that the Court enter an order that provides that:

1.   The Motion is granted;

2.   The Live Oak Property is property of the Estate which may be sold and administered by Trustee;

3.   Trustee is authorized to sell the Live Oak Property pursuant to 11 U.S.C. § 363 and is further authorized to pay, pursuant to demands submitted to escrow, all liens and encumbrances to the extent provided herein;

4.   Trustee is authorized to sign all documents necessary to consummate the sale and close escrow, including, but not limited to, the purchase and sale agreement, grant deed and escrow instructions, and any amendments;

MOTION FOR ORDER APPROVING SALE OF PROPERTY

5.      Trustee is authorized to make distributions from the sale of the Live Oak Property in accordance with the stipulated terms in the Agreement, including that:

  a. Trustee is authorized to pay all customary costs of sale;

  b. Trustee is authorized to pay all property taxes incurred on account of the Live Oak Property out of escrow, to be divided between buyer and seller according to the customary practices for the purchase of similarly situated real property;

  c. Trustee is authorized to pay a broker's commission equal to 1.75% of the sale price out of escrow to Onyx;

  d. Trustee is authorized to pay a broker's commission equal to 1.75% of the sale price out of escrow to Hilco;

  e. Trustee is authorized to receive the reduced compensation equal to 2.25% of the purchase price out of escrow, to be held pending further order;

  f. Trustee is authorized to receive $100,000 out of escrow and hold such amount for the purpose of paying attorneys' fees;

  g. Trustee is authorized to receive $6,770.78 out of escrow for the Estate as a reimbursement for insurance premiums advanced on behalf of the Estate;

  h. Trustee is authorized to receive $15,000 out of escrow for the Estate as a further reserve for future insurance costs, and may return such funds (if unused) to FCW without further order of the Court;

  i. Trustee is authorized to receive $30,000 out of escrow for the Estate as the miscellaneous contribution;

  j. Trustee is authorized to receive $12,000 out of escrow for the Estate for the purpose of paying the fees and expenses of Lori Ensley, his field agent; and

  k. Trustee is authorized to disburse all remaining funds out of escrow to FCW on account of its secured claim, and may adjust in his business discretion any line item above to ensure that FCW receives no less than $8,250,000 out of escrow;

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

6.     The sale is in the best interest of the Estate, and the final bid price in the amount of $9,100,000 or higher is a fair market price for the Live Oak Property;

7.     Buyer is a good faith purchaser entitled to protection under 11 U.S.C. § 363(m);

8.     The Property is sold free and clear of all liens, claims, and interests of any creditor which consents to the sale pursuant to 11 U.S.C. § 363(f)(2);

9.     The Property is sold free and clear of the FCW DOT 1 recorded as document no. 2007-19418, pursuant to 11 U.S.C. § 363(f)(2);

10.    The Property is sold free and clear of the FCW DOT 2 recorded as document no. 2009-5727, pursuant to 11 U.S.C. §§ 363(f);

11.    The Property is sold free and clear of the FCW DOT 3 recorded as document no. 2010-11915, pursuant to 11 U.S.C. §§ 363(f);

12.    The Property is sold free and clear of the FCW Advance recorded as document no. 2010-66312, pursuant to 11 U.S.C. §§ 363(f);

13.    The Property is sold free and clear any interest of Erich Russell and Joanne Russell;

14.    The Property is sold free and clear of the Agreement To Purchase and Sell a Corporation and Real Estate, recorded as document no. 2020-61134;

15.    The Property is sold free and clear of the Assumption and Assignment Agreement, recorded as document no. 020-61135;

16.    The Property is sold free and clear of the Assumption and Assignment Agreement, recorded as document no. 020-61136;

17.    The Property is sold free and clear of any claim that the Property is subject to a trust or lien that might be created under the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a, et seq. ("PACA");

18.    The Property is sold free and clear of any claim that the Property is subject to a trust or lien that might be created under the Packers and Stockyards Act, 7 U.S.C. §§ 181 *et seq.*, or under similar state laws;

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

19.    The Property is sold free and clear of any rights of any parties in possession of the Property (although none are known to Trustee);

20.    The Motion is granted and the Purchase and Sale Agreement and Escrow Instructions, including addendums and amendments attached to the Marshack Declaration as **Exhibits "1" and "2"** are approved, and Trustee is authorized to execute the PSA, its exhibits and amendments thereto;

21.    The sale of the Property shall be "as-is" and "where-is" with all faults and without warranty, representation, or recourse whatsoever;

22.    The 14-day stay regarding the effectiveness of the order shall be waived;

23.    This Court retains jurisdiction: (a) to interpret, enforce, and implement the terms and provisions of this sale; and (b) to resolve any disputes arising under or related to this order; and

24.    Such other and further relief as the Court may deem just and proper.


DATED: January 19, 2022                    MARSHACK HAYS LLP

                                                           /s/ Tinho Mang
                                           By: _____
                                                    KRISTINE A. THAGARD
                                                    TINHO MANG
                                                    Attorneys for Chapter 7 Trustee,
                                                    RICHARD A. MARSHACK

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare as follows:

1.    I am an individual over 18 years of age and competent to make this Declaration.

2.    If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.    I am the duly appointed and acting chapter 7 trustee ("Trustee") for the bankruptcy estates ("Estate") of Northern Holding, LLC ("Debtor"), the title owner of real property commonly known as 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property").

4.    I have been negotiating at length with Riboli Paso Robles, LLC ("Buyer") for the purchase and sale of the Live Oak Property. On September 28, 2021, Buyer and I executed a purchase and sale agreement ("PSA") which memorializes certain terms to allow Buyer to proceed with its due diligence on the Live Oak Property. Subsequently, an amendment to the PSA was prepared to clarify and supplement the terms of the PSA. A true and correct copy of the PSA, including addenda and amendments, is attached here as Exhibit "1" and "2."

5.    My office received a deposit check of $273,000 from Buyer on September 30, 2021, and the check was deposited and the funds are being held pending the completion of this sale transaction.

6.    A true and correct copy of a preliminary title report for the Property dated October 15, 2021 which I received from the Fidelity Title Insurance Company is attached as Exhibit "3."

7.    A true and correct copy of the detailed tax payoff statement that my office received from the County of San Luis Obispo appearing to show the outstanding property tax liabilities for the San Marcos Property is attached as Exhibit "17." I am informed that outstanding property tax obligations related to the Live Oak Property are relatively minimal, and are estimated at around $90,000 through the estimated date of the close of escrow.

8.    I believe that a sale free and clear of all liens, claims, and interests pursuant to 11 U.S.C. § 363(f) will result in the best result for the Estate and is anticipated to generate substantial distributions for the benefit of creditors, based on the Court-approved stipulation for voluntary

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

1  partial subordination of FCW's secured claim regarding the Live Oak Property. Because FCW's

2  consent to sale pursuant to 11 U.S.C. § 363(f)(2) is expressly conditioned on its receipt of no less

3  than $8,250,000 out of escrow, I request authority from the Court to make downward adjustments to

4  distributions out of escrow in order to ensure that FCW's consent to sale is preserved.

5       9.     I believe that, unless there are objections to the Motion that are not consensually

6  resolved, it is appropriate and good cause exists for the Court to order that Rule 6004(h) is not

7  applicable, and that the Property may be sold immediately.

8       10.     I believe that the Motion satisfies the standards for approval of a sale of the

9  Property outside of the ordinary course of business pursuant to § 363(b). I believe that, pursuant

10  to the detailed description of the marketing by my professionals Onyx and Hilco, that the

11  Properties were all extensively and thoroughly exposed to the open market, and the $9,100,000

12  offer for the Live Oak Property represents a fair market value for the Live Oak Property. I have

13  also presented other offers for the purchase of other Properties to FCW, and it has so far declined

14  to consent to a sale of any of the other Properties based on the offers received. I and my

15  professionals will continue to market the Properties to obtain overbids.

16       11.     I am unaware of any connection between the Estate and Buyer except through this

17  sale. The sale was negotiated at arms' length through each parties' respective brokers and

18  attorneys. Additionally, Buyer purchased a few tons of crop from the Live Oak Property at a

19  commercially reasonable and fair market price. A true and correct copy of the grape purchase

20  agreement between the Estate and Buyer related to a contract to purchase 10 tons of grapes is

21  attached as Exhibit "18."

22       12.     Accordingly, I believe good cause exists to make a finding that Buyer or any

23  overbidders are purchasing the Property in "good faith" pursuant to Section 363(m).

24  / / /

25  / / /

26

27

28

29

MOTION FOR ORDER APPROVING SALE OF PROPERTY

1       13.    I am informed that there will be no negative tax consequences from a sale of the

2   Live Oak Property, because the purchase price paid by Debtor for the Properties on the eve of

3   bankruptcy compared with the sale price of the Live Oak Property does not result in any capital

4   gain. All property and county transfer taxes are intended to be paid out of escrow. Thus, I am

5   informed that there are no negative tax consequences that will affect the Estate's ability to sell

6   the Live Oak Property.

7

8       I declare under penalty of perjury that the foregoing is true and correct. Executed on January

9   19, 2022.

10  _____

11          RICHARD A. MARSHACK

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

# Declaration of K. Kevin Otus

I, K. KEVIN OTUS, say and declare as follows:

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     If called as a witness, I could and would competently testify to the following of my own personal knowledge.

3.     I am the Managing Partner and managing member of Onyx Asset Advisors, LLC ("Onyx), which maintains a principal place of business at201 Mission Street, Suite 1200, San Francisco, CA 94105.

4.     Onyx was hired by the Trustee to market and sell the property commonly known as At 2380 Live Oak Rd., Paso Robles, CA ("Live Oak Property"), and Onyx's employ has been approved by Court, on September 7, 2021, as Dk. No. 209.

5.     I make this Declaration in support of the Motion for Order Authorizing Sale of the Live Oak Property (A) Outside the Ordinary Course of Business; (B) Free and Clear of Liens, Claims, and Encumbrances; (C) Subject to Overbid; and (D) for Determination of Good Faith Purchaser Under 11 U.S.C. §363(M) ("Motion").

6.     All terms not defined herein are used as they are defined in the Motion.

7.     Onyx has been marketing the Property since July 2021.

8.     Our marketing efforts to date include Please see attached Marketing and Status Update for a complete overview of Onyx's Marketing Efforts to date.

9.     In the last 30 days, 429 people have viewed the opportunity on the main sale page.

10.     According to CoStar/LoopNet, the listing is getting 12X more exposure than a typical basic industrial listing.

11.     The total views are 7,251; unique prospects are 6,485; detail page clicks are 6,066.

12.     Lastly, visitor details are as follows: The response has been steady throughout the campaign from around the country.  Our marketing efforts garnered attention from coast to coast. To date, Onyx's marketing efforts have generated approximately 172 direct inquiries from interested parties.

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

13.     Following these efforts and follow ups, 10separate on-site inspections were conducted with prospective buyers.

14.     The efforts of Onyx resulted in several offers to purchase the Property.

15.     I am informed and believe that the Trustee has received an offer from Buyer for sourced from our marketing efforts for $9,100,000.

16.     I am informed and believe that Buyer provided the Trustee with proof of funds and upon execution of the PSA, agreed to an initial deposit of $273,000 to be deposited into escrow, which together with any interest earned is referred to as the "Deposit", which will be held in escrow pending court approval and closing of the sale.

17.     I am informed and believe that the deposit shall be refundable only if certain conditions to the sale are not satisfied or Buyer is not the successful bidder in the event overbids are received.

18.     I am informed and believe that Buyer's offer is the highest and best offer received to date by the Trustee.

19.     We continue to actively market the Property and seek overbids.

20.     To the best of my knowledge, there is no connection between myself and the proposed stalking horse Buyer. The transaction has been negotiated at arms' length and Buyer, if they are the successful bidder, qualifies as a good faith purchaser for value.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 19, 2022, at San Francisco, California.

_____
K. KEVIN OTUS

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

# Declaration of Jeff Azuse

I, JEFF AZUSE, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called as a witness, I could and would competently testify to the following of my own personal knowledge. Terms not otherwise defined herein are used as they are defined in the Application above.

3.      I am the Senior Vice President of Hilco Real Estate, LLC ("Hilco").

4.      Hilco was hired by the Trustee to market and sell the property commonly known as 2380 Live Oak Rd., Paso Robles, CA ("Live Oak Property"), and Hilco's employ has been approved by Court, on September 7, 2021, as Dk. No. 209.

5.      I make this Declaration in support of the Motion for Order Authorizing Sale of the Live Oak Property (A) Outside the Ordinary Course of Business; (B) Free and Clear of Liens, Claims, and Encumbrances; (C) Subject to Overbid; and (D) for Determination of Good Faith Purchaser Under 11 U.S.C. §363(M) ("Motion").

6.      All terms not defined herein are used as they are defined in the Motion.

7.      Hilco has been marketing the Property since April 2021.

8.      Our marketing efforts to date include: Please see attached Marketing and Status Update for a complete overview of Hilco's Marketing Efforts to date.

9.      In the last 30 days 429 people have viewed the opportunity on the Hilco Website.

10.     According to CoStar/LoopNet, the listing is getting 12X more exposure than a typical basic Specialty listing.

11.     The total views are 7,251; unique prospects are 6,485; detail page clicks are 6,066.

12.     Lastly, visitor details are as follows: The response has been steady throughout the campaign from around the country.  Our marketing efforts garnered attention from coast to coast, most of the interest came from California, split evenly between Northern and Southern California.

13.     To date, Hilco's marketing efforts have generated approximately 172 direct inquiries

MOTION FOR ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

from interested parties.

14.   Following these efforts and follow ups, 10 separate on-site inspections were conducted with prospective buyers.

15.   The efforts of Hilco resulted in several offers to purchase the Property.

16.   I am informed and believe that the Trustee has received an offer from a Buyer sourced from our marketing efforts for $9,100,000.

17.   I am informed and believe that Buyer provided the Trustee with proof of funds and upon execution of the PSA, agreed to an initial deposit of $273,000 to be deposited into escrow, which together with any interest earned is referred to as the "Deposit", which will be held in escrow pending court approval and closing of the sale.

18.   I am informed and believe that the deposit shall be refundable only if certain conditions to the sale are not satisfied or Buyer is not the successful bidder in the event overbids are received.

19.   I am informed and believe that Buyer's offer is the highest and best offer received to date by the Trustee.

20.   We continue to actively market the Property and seek overbids.

21.   To the best of my knowledge, there is no connection between myself and the proposed stalking horse Buyer. The transaction has been negotiated at arms' length and Buyer, if they are the successful bidder, qualifies as a good faith purchaser for value.


I declare under penalty of perjury that the foregoing is true and correct.


I declare under penalty of perjury that the foregoing is true and correct. Executed on January 19, 2022.

_____

JEFF AZUSE

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1





January 19, 2022

**RE: Marketing Status Update – Northern Holding, LLC – Vineyard, Winery & Estate Paso Robles, CA**

Mr. Marshack,

Below is the breakdown of our overall marketing campaign of the vineyard, winery & estate properties in Paso Robles, CA. Since starting the marketing campaign, we have performed the following extensive program, which included a mix of print and digital advertisements, internet web listings, e-blasts, public relations, and cold calling. Below is more detail on each of those marketing outlets:

The portfolio and bid deadline have been marketed in the following publications:
- Wall Street Journal
- Los Angeles Times
- San Francisco Chronicle
- The Chinese World Journal
- The Korea Times

Digital Advertising:
- SonomaMag.com – Website ad – for one month (100,000 Impressions)
- SFGate.com – Website Ad – For one month (150,000 impressions)
- The Somm Journal – E-Newsletter
- Modern Luxury – Dedicated E-blast

The properties have been listed on numerous websites, including:
- Onyx Asset Advisors:  https://www.thinkonyx.com/sale/northern-holdings-llc-paso-robles-ca/
- The Property Specific Landing Page has received **1,266** views. Mid-December LinkedIn Posting of the Graphic has received **1,685** views.
- Hilco Real Estate: https://marketing.hilcoglobal.com/hre-paso-robles-california-winery-2021/
- The property specific landing page has received **7,251** views with an average view time of 3 minutes and 52 seconds.
- Hilco has posted the opportunity 4 times to LinkedIn since November the graphic has received **2,057** views.
- Loopnet.com (Live Oak Road): Loopnet Link to Live Oak Road Listing
- Loopnet.com (San Marcos & Texas Rd.): Loopnet Link to San Marcos & Texas Road Listing
  - These landing pages have combined **95,320** total views and received **29,788** unique prospects since the start of marketing.
- Additional webpage listings:
  - Zillow.com has received 4,914 total views
  - Redfin.com has received 753 total views

We also e-blasted the properties to numerous parties via different proprietary contact lists and services we have/use. We sent out to the following lists:

- Hilco's Proprietary List: 20,000+ active investor contacts
- Onyx Proprietary List: 3,000+ active contacts
- Property Campaign: 300,000+ active commercial real estate professionals
- Big Boy Blast: 136,500+ Opt-In commercial real estate professionals
- Property Blast: 90,000+ Opt-In commercial real estate professionals
- Property Send: 120,000+ Opt-In commercial real estate professionals
- CRE Push: 142,000+ Opt-In commercial real estate professionals
- Blast Agent: 93,000+ Opt-In commercial real estate professionals





1

PAGE 35





A national public relations campaign was run for each property.  The press releases were picked up by various publications such as, PR Newswire, Mark Brown's Newsletter and Wine Industry Insight.

The properties are being marketed through several paid social media channels , including LinkedIn, Twitter and Facebook. The strength behind these ads is the breadth of our combined  networks personally promoting these posts to their networks, which spreads the message to a large national and international group of professionals.

The following is a breakdown of interest, as well as notes on some of the interested groups we are speaking with:

**Total Response to Marketing Campaign**

**Direct Contacts (Call-in or E-mail):**      172
**Data Room Access Forms Executed:**      55

**Property Tours & Descriptions of Participants**

**Total Onsite Tours:**      10

- Ensemble Real Estate: Toured the winery and the estate. They are a real estate firm with 30+ years of expertise in a variety of disciplines.  This particular asset is of interest to expand their hospitality sector.
- Sergey Vershinin: Toured the winery and the estate.  This party is an individual investor and submitted a preemptive bid described below.
- Chris Cameron – Broken Earth Winery: Toured the winery and is a well-heeled wine producer in Paso Robles with an active 2,500-acre ranch, has expressed interest in the past and remains extremely interested.
- Mike Lau – Yosemite Foods: Toured the winery and estate. This group has been in the pork and meat product business out of California for four generations and is seeking to diversify their product offering and are looking at the wine industry to expand.
- Jim Collins – Anthony Family Wines: Toured the winery and is large wine producer in Napa Valley producing millions of cases of wine annually and are looking to expand their operation and see this as a great opportunity to do so.
- Jenny Heinzen – On behalf of client: Toured the winery and estate, this party represents another large wine producer from northern California that is also seeking to expand their operation to the central coast and see this as a great opportunity to do so. Presented an offer on behalf of WarRoom Ventures, LLC for $6,000,000 for only San Marcos Road.
- Santo Riboli – Riboli Family Wines: Toured the winery and the estate.  This party is a large wine producer with over 1,200-acres of vineyards throughout central and northern California.
- Jeff Malk – CRM Properties: Toured the winery and estate.  This group is a real estate firm out of Chicago that sees value in Paso Robles and is interested in repositioning the property for future/further development.
- Nick Swanson – DEP 63 II, LLC: Toured the estate and is a real estate firm out of California that has significant real estate holdings, sees value in the real estate and is interested in repositioning the property for future/further development.
- Joseph Giampaolo – MHL Financial, Inc.: Inquired through Hilco and toured the estate and the winery with Onyx.  He has investors potentially interested in submitting an offer for everything, but he has not produced that offer yet.





PAGE 36





**Conclusion:**

As the response statistics demonstrate, our mission of reaching the market has been highly effective. We have launched a very robust marketing program and have invested a lot of time and money into this sales process. We have **One Hundred & Seventy-Two (172)** individual groups that have expressed additional interest in these properties, these parties have formally registered on our website and requested additional information, **fifty-five (55)** individuals have executed the Data Room Access Form and reviewed the due diligence information provided. **Ten (10)** individual parties attended the property tour.

We are continuing to have conversations with a few buyers who have interest in the winery but have expressed the need for some additional time to get comfortable enough to submit an offer. We are still working with these buyers, encouraging them to continue their due diligence and ultimately make an offer. The following groups previously submitted offers:

**Deadline Bid Submissions:**

- Michael Fine – Live Oak Partners, LLC - $13,650,000 Total Purchase Price for 2830 Live Oak Rd. $400,000 Earnest Money deposit 10 days after bid acceptance – Closing 90 days after Seller's acceptance. Funding is a combination of cash and financing. *Note: This buyer ultimately could not perform and was not able to provide adequate proof of funds.*
- Mike Reynolds – Hall Wines Vineyards, LLC – Total Purchase Price $8,400,000 Cash for 2830 Live Oak Road, $500,000 initial earnest money and 30-day due diligence after execution of a Purchase and Sale Agreement. Close 10 days following the end of due diligence. *Note: we have stayed in touch with this buyer, as of this report we don't think they will participate in the overbid process for Live Oak.*
- Charles Yi – California Wine Company – submitted 3 Letters of Intent:
  - Entire Offering: Total Purchase Price - $5,932,500 cash close in 35 days. Earnest money deposit was left blank
  - 1172 San Marcos Rd./Texas Rd. – Total Purchase Price $2,782,500 cash close in 35 days Earnest money deposit was left blank
  - 2830 Live Oak Rd. – Total Purchase Price $3,150,000 cash close in 35 days Earnest money deposit was left blank *– Note: Price is not acceptable, buyer is not willing to increase his offers.*
- Neol Jose - Bernard Holding – $5,000,000 Total Purchase Price for 1172 San Marcos Rd./Texas Rd./2830 Live Oak Rd. – Initial Earnest Money section was left blank. Cash buyers close in 45 days. *- Note: Price is not acceptable, buyer is not willing to increase his offers.*
- James Forage – $5,040,000 Total Purchase Price for 2830 Live Oak Rd. – Initial Earnest Money $144,000. Funding: Financing from Bank of America Private Bank close in 60 days. *- Note: Price is not acceptable, buyer is not willing to increase his offers.*
- Sergey Vershinin – Total Purchase Price $3,675,000 for 1172 San Marcos Rd./Texas Rd./2830 Live Oak Rd. – Initial Earnest Money $50,000. Combination of cash and bank financing 90 day close. *- Note: Price is not acceptable, buyer is not willing to increase his offers.*

2830 Live Oak Road, Paso Robles, CA, is currently under contract with a stalking horse bid of $9,100,000 and is continuing to be marketed to prospective buyers with a minimum over bid of $9,550,000. Hilco Real Estate and Onyx Asset Advisors are continuing their efforts to identify buyers for all the properties.

**Attachments:**
- Updated Brochure
- Updated Ad Examples








www.thinkONYX.com

**CoStar/Loopnet**







PAGE 38






## Vineyard & Turnkey Winery Production Facility | 1172 San Marc

45,000 SF | Specialty Building | Paso Robles, CA





☑ **Edit Listing** - edit details, photos, attachments, contacts, and more.    1 Day Last Updated    Confirm up-to-date

### INVESTMENT HIGHLIGHTS

- Turnkey winery capable of producing 400,000 cases of wine annually
- Up to 217 fertile acres

- Significant commercial grade winemaking equipment included in sale
- Located less than 1 mile from U.S. Hwy 101




PAGE 39





**Onyx Email Blast and LinkedIn Posting**



*VINEYARD, WINERY & ESTATE IN PASO ROBLES, CALIFORNIA*

**MAGNIFICENT PROPERTIES IN ONE OF CALIFORNIA'S PREMIER WINE REGIONS**

# FOR SALE

DATE CERTAIN BANKRUPTCY SALE: Northern Holding, LLC | 8:20-bk-13014-MW

**Properties can be purchased together or individually**

## 310± AC Vineyard with Turnkey Winery

**45,000± SF Production Facility on 155 ± AC**
(1172 San Marcos Road, Paso Robles, CA)

- Turnkey winery able to produce 400,000 cases annually
- Over 91± AC of Vines
- Operating, commercial grade, winemaking process equipment included in sale

**155± AC Vineyard – Texas Road**
(Texas Road, Paso Robles, CA)

- Recurring income opportunity – Vineyard lease
- Over 119± AC of Vines
- 5± AC of established olive orchards
- Development opportunity, 1± AC buildable residential site

## Hilltop Estate and Vineyard

**160± AC  Vineyard w/ 7,500± SF Home**
(2830 Live Oak Road, Paso Robles, CA)

- Recurring income opportunity – Vineyard lease
- Over 71± AC of Vines
- 5-BR, 4-BA estate home in the Willow Creek District
- Complete with pool, tennis court & large terraces
- 900± SF guest house & 3,000± SF maintenance shop

## Date Certain Timeline*

Due Diligence period:
Ends December 8, 2021
Qualified Bids Due:
5:00 p.m. (PT), December 8, 2021
Auction:
Monday, December 13, 2021
Bid Acceptance:
Tuesday, December 14, 2021



For more information or to schedule
an on-site inspection.
Please contact:

**K . Kevin Otus: kotus@thinkONYX.com**

www.thinkONYX.com

Exclusive Sales Agents

**\*Timeline Subject to Court Approval**
Sale in conjunction with:    Hilco.


ONYX ASSET ADVISORS


A Hilco Global Company
Vested in Your Success

PAGE 40





**Hilco Real Estate E-mail Blast**

Bankruptcy Auction | 160-AC Vineyard in Prime California AVA District & Luxury Est...

File   Message   Help   Acrobat   ◌ Tell me what you want to do

🗑 ▾   ☐   ☐ ▾   ↩   ↩   →   ✉ Mark Unread   ⊞ ▾   🏳 ▾   🔍 Find   🔍 Zoom   •••

**Bankruptcy Auction | 160-AC Vineyard in Prime California AVA District & Luxury Estate | Bid De...**

HR   Hilco Real Info        ↩ Reply   ↩ Reply All   → Forward   •••
      To  ✓ Burke, Elizabeth                              Tue 11/16/2021 1:32 PM

ⓘ If there are problems with how this message is displayed, click here to view it in a web browser.

### Hilltop Estate on 160± AC | 2830 Live Oak Road

[ VIEW PROPERTY VIDEO ]

- Up to 114 fertile acres of vineyard in the premier Willow Creek/West Side AVA District
- Stunning 5-BR, 4-BA home with an office
- Complete with high-end entertainer's kitchen, inground pool, tennis court & large terraces
- Includes 900± SF guest house & 3,000± SF shop

### CONTACT

**JONATHAN CUTICELLI**
📞 203.561.8737
✉ jcuticelli@hilcoglobal.com

**ADAM ZIMMERMAN**
📞 847.504.2461
✉ azimmerman@hilcoglobal.com

*Hilco Real Estate, LLC in cooperation with Onyx Asset Advisors.*





PAGE 41





### 1172 San Marcos Road & Texas Road
### Paso Robles, California



**VIEW PROPERTY VIDEO**

- Located less than 1 mile from U.S. Hwy 101
- San Marcos Road parcel consists of 155± total acres with 93± AC being fertile
- Turnkey winery capable of producing 400,000 cases of wine annually
- Significant commercial grade winemaking equipment included in sale
- Texas Road parcel consists of 155± AC with 124± AC being fertile
- Remaining acreage can be used for infrastructure

## CONTACT

**JONATHAN CUTICELLI**

📞 203.561.8737

✉ jcuticelli@hilcoglobal.com

**ADAM ZIMMERMAN**

📞 847.504.2461

✉ azimmerman@hilcoglobal.com

*Hilco Real Estate, LLC in cooperation with Onyx Asset Advisors.*










**Updated Marketing Brochure Covers**











1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REQUEST FOR JUDICIAL NOTICE

Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of Northern Holding LLC ("Debtor"), through his attorneys Marshack Hays LLP, hereby requests pursuant to Federal Rule of Evidence 201, that this Court take judicial notice of the following documents to be considered in connection with this motion for order authorizing the sale of real property ("Motion") located at and commonly known as 2380 Live Oak Road, Paso Robles, CA ("Property").

| | JUDICIALLY NOTICED DOCUMENTS |
|---|---|
| 4. | Deed of Trust, recorded on March 23, 2007, by Farm Credit West, FLCA, as instrument number 2007-19418, in the face amount of $17,500,000 ("FCW DOT 1"). |
| 5. | Agreement and Declaration of Subordination, recorded on December 31, 2008, as instrument number 2008-63934, executed by Farm Credit West, FLCA |
| 6. | Deed of Trust, recorded on February 6, 2009, by Farm Credit West, FLCA, as instrument number 2009-5727, in the face amount of $3,525,000 ("FCW DOT 2". |
| 7. | Deed of Trust, recorded on March 16, 2010, by Farm Credit West, FLCA, as instrument number 2010-11915, in the face amount of $300,000 ("FCW DOT 3"). |
| 8. | Notice of Advance Under Deed of Trust, recorded on December 28, 2010, by Farm Credit West PCA, as instrument number 2010-66312, in the amount of $650,000 ("FCW Advance"). |
| 9. | Agreement To Purchase and Sell a Corporation and Real Estate, recorded on October 28, 2020, as instrument 2020-61134. |
| 10. | Assumption and Assignment Agreement recorded on October 28, 2020, by Northern Holding, LLC and Farm Credit FLCA Corporation, as instrument number 2020-61135. |

MOTION FOR ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

| | JUDICIALLY NOTICED DOCUMENTS |
|---|---|
| 11. | Assumption and Assignment Agreement recorded on October 28, 2020, by Northern Holding, LLC and Farm Credit FLCA Corporation, as instrument number 2020-61136. |
| 12. | Quitclaim Deed, recorded on October 28, 2020, from Erich Russell to Northern Holdings, LLC, as Instrument number 2020-61138 ("Russell Quitclaim Deed".) |
| 13. | Order Granting Bid Procedure Motion, entered October 20, 2021, as Dk. No. 238. |
| 14. | Motion to approve settlement and partial subordination agreement with FCW, where FCW consented to certain terms for the sale of the Live Oak Property ("Compromise Motion"), filed December 20, 2021, as Dk. No. 264. |
| 15. | Proof of Claim 5-1, filed by Erich Russell on March 31, 2021. |
| 16. | Stipulation between Trustee and Rabbit Ridge Wine Sales, Inc. for Turnover of Real Property Located at 1172 San Marcos Road, Paso Robles, CA; filed on August 9, 2021, as Dk. No. 184. |

DATED: January 19, 2022                    MARSHACK HAYS LLP


                                        /s/ Tinho Mang
                              By: _____
                                    KRISTINE A. THAGARD
                                    TINHO MANG
                                    Attorneys for Chapter 7 Trustee,
                                    RICHARD A. MARSHACK

4833-0726-0118,v.1

**EXHIBIT 1**

Execution Copy

## AGREEMENT OF PURCHASE AND SALE

## AND ESCROW INSTRUCTIONS

## Among

### Richard A. Marshack, as Chapter 7 Trustee for the Estate of Northern Holding, LLC,

### Debtor

### And

### Riboli Paso Robles, LLC as Buyer

### Dated for reference purposes only: September 8, 2021

EXHIBIT 1, PAGE 46

## TABLE OF CONTENTS

**Page**

Article I PURCHASE AND SALE OF PROPERTY ....................................................................1

    1.1    Sale of the Property ..........................................................................................1

    1.2    Defined Terms .................................................................................................2

    1.3    Conventions ....................................................................................................2

Article II PURCHASE PRICE.............................................................................................3

    2.1    Purchase Price .................................................................................................3

    2.2    Payment of Purchase Price...............................................................................3

    2.3    Form of Payments ...........................................................................................4

    2.4    Treatment of Deposit, Closing Payment and Allocation of Purchase Price ...........4

Article III BUYER'S DUE DILIGENCE................................................................................4

    3.1    Due Diligence Materials ...................................................................................4

    3.2    Indemnity for Access to Real Property ...............................................................5

    3.3    Right to Terminate. .........................................................................................5

    3.4    Natural Hazard Disclosure Requirement Compliance ...........................................6

    3.5    Statutory Disclosure Requirements........................**Error! Bookmark not defined.**

    3.6    "AS-IS...........................................................................................................7

    3.7    Buyer's Acknowledgment .................................................................................8

    3.8    Tangible Personal Property...............................................................................10

    3.9    Intangibles ....................................................................................................10

    3.10    Buyer's Obligations ........................................................................................10

    3.11    Buyer's Pre-Closing Inspection ........................................................................10

Article IV TITLE ...........................................................................................................10

4818-3374-2076,v.2

**EXHIBIT 1, PAGE 47**

4.1    Preliminary Title Report ................................................................................10

4.2    Approval/Disapproval of Title........................................................................10

4.3    Condition of Title...........................................................................................11

4.4    Title Policy.....................................................................................................11

4.5    Partial Release by Lender. .............................................................................12

Article V OPENING AND CLOSING OF ESCROW .................................................................12

5.1    Establishment of Escrow................................................................................12

5.2    Opening of Escrow .........................................................................................12

5.3    Form Escrow Instructions ..............................................................................12

5.4    Closing Date....................................................................................................12

Article VI CONSUMMATION OF SALE AND CONDITIONS TO CLOSING ........................13

6.1    Documents and Funds Delivered into Escrow or by Escrow Holder ....................13

6.2    Conditions to Close.........................................................................................14

6.3    Recordation and Transfer...............................................................................15

6.4    Bankruptcy Court Approval............................................................................16

6.5    Lender Carve-out. ...........................................................................................18

6.6    Termination Rights .........................................................................................18

Article VII PRORATIONS AND COSTS ...............................................................................18

7.1    Taxes and Assessments...................................................................................18

7.2    Utilities............................................................................................................19

7.3    Service Contracts ............................................................................................19

7.4    Insurance .........................................................................................................19

7.5    Other Income and Expenses............................................................................19

7.6    Closing Costs ..................................................................................................19

Article VIII REPRESENTATIONS OF SELLER.....................................................................20

2

4818-3374-2076,v.2

| | | |
|---|---|---|
| 8.1 | Execution and Delivery | 20 |
| 8.2 | Legal and Binding Obligation | 20 |
| 8.3 | Not Foreign Person. | 20 |
| 8.4 | Anti-Terrorism | 20 |
| 8.5 | Survival | 21 |
| Article IX | REPRESENTATIONS OF BUYER | 21 |
| 9.1 | Execution and Delivery | 21 |
| 9.2 | Legal and Binding Obligation | 21 |
| 9.3 | No Breach | 21 |
| 9.4 | No Insolvency | 21 |
| 9.5 | Litigation | 21 |
| 9.6 | Financial Capability | 22 |
| 9.7 | Anti-Terrorism | 22 |
| Article X | [INTENTIONALLY OMITTED] | 22 |
| Article XI | CONDEMNATION AND DESTRUCTION | 22 |
| 11.1 | Condemnation | 22 |
| 11.2 | Damage or Destruction | 23 |
| 11.3 | Termination | 24 |
| Article XII | COMMISSIONS | 24 |
| Article XIII | REMEDIES | 25 |
| 13.1 | Seller's Remedy | 25 |
| 13.2 | Buyer's Remedy | 25 |
| Article XIV | JURISDICTION; JURY WAIVER; AND JUDICIAL REFERENCE | 26 |
| 14.1 | Governing Law, Jurisdiction, Venue | 26 |
| 14.2 | Jury Waiver | 26 |

4818-3374-2076,v.2

EXHIBIT 1, PAGE 49

Article XV GENERAL PROVISIONS ..................................................................................26

    15.1    Notices ...................................................................................................26

    15.2    Notices may be either: (a) delivered by hand; (b) delivered by a nationally recognized overnight courier which maintains evidence of receipt; or (c) sent by e mail or facsimile transmission with a confirmation. Notices shall be effective on the date of receipt. ...................................................28

    15.3    Assignment ...........................................................................................28

    15.4    Attorneys' Fees and Legal Expenses .....................................................28

    15.5    No Buyer Contingencies. ......................................................................28

    15.6    Reporting of Foreign Investment ..........................................................29

    15.7    Time Calculations .................................................................................29

    15.8    Entire Agreement ..................................................................................29

    15.9    Amendments .........................................................................................29

    15.10   Severability ..........................................................................................29

    15.11   Further Assurances ...............................................................................29

    15.12   Counterpart Execution ..........................................................................29

    15.13   Electronic Signatures ............................................................................29

    15.14   Gender and Number ..............................................................................30

    15.15   Section Headings ..................................................................................30

    15.16   Exhibits and Schedules Incorporated by Reference................................30

    15.17   Trustee's Capacity and Liability ...........................................................30

SCHEDULE 1.1.6..................................................................................................1

SCHEDULE 3.6......................................................................................................1

EXHIBIT A............................................................................................................1

**EXHIBIT B**.........................................................................................................1

    FORM OF GRANT DEED.....................................................................................2

4

EXHIBIT 1, PAGE 50

**Attachment 1** ........................................................................................................5

**EXHIBIT C** ...........................................................................................................1

    FORM OF BILL OF SALE .............................................................................1

    BILL OF SALE...............................................................................................2

**EXHIBIT D** ...........................................................................................................1

    ASSGINMENT AGREEMENT .......................................................................2

5

4818-3374-2076,v.2

## AGREEMENT OF PURCHASE AND SALE
## AND ESCROW INSTRUCTIONS

THIS AGREEMENT OF PURCHASE AND SALE AND ESCROW INSTRUCTIONS (this "***Agreement***"), dated for reference purposes only September __, 2021, is made, executed and entered into by and among **Richard A. Marshack, as Chapter 7 Trustee ("*Trustee*") for the Estate of Northern Holding, LLC ("*Estate*",)** bankruptcy case number No. 8:20-bk-13014-MW ("Bankruptcy Case") currently pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("***Bankruptcy Court***"), as the seller (the "***Seller***"), and **Riboli Paso Robles, LLC**, a California limited liability company, as the buyer (the "***Buyer***"). Seller and Buyer are sometimes referred to individually as a "***Party***" and collectively as the "***Parties***."

## ARTICLE I
## PURCHASE AND SALE OF PROPERTY

1.1     Sale of the Property. For the consideration hereinafter set forth and subject to and upon the terms, covenants and conditions of this Agreement, Seller hereby agrees to sell to Buyer, and Buyer hereby agrees to purchase from Seller, the following:

1.1.1     Fee simple title to those certain parcels of land located in the unincorporated area of the County of San Luis Obispo, State of California (the "***Land***"): (a) consisting of approximately 160+/- acres; (b) commonly known by the street address of 2380 Live Oak Road, Paso Robles, CA, on which is situated an approximately 7500+/- House; (c) identified by Assessor's Parcel Number 026-342-039; and (d) legally described on Exhibit A to this Agreement.

1.1.2     All buildings, structures and other improvements located on the Land and owned by Seller (collectively, the "***Improvements***"). The Improvements include but are not limited to: an approximately 7500+/- House.

1.1.3     All right, title and interest of Seller if any, and without any Seller's warranty, in and to any privileges, easements and appurtenances relating to the Land and Improvements, including all easements, rights-of-way, rights to utility connections and hook-ups, and other appurtenances used or connected with the beneficial use or enjoyment of the Land and Improvements, including (i) access to a public way, and (ii) rights to any land lying in the bed of any street, alley, road or avenue opened or proposed, appurtenant to, abutting, or adjoining the Land, to the center line thereof (collectively, the "***Appurtenances***").

1.1.4     Unless specifically provided for in the Bill of Sale, no right, title and interest of Seller, if any, in any Tangible Personal Property, defined below, is included with the sale of the Land or Improvements. If any Tangible Personal Property is included in the Bill of Sale, it is without any Seller's warranty. Tangible Personal Property is defined as machinery, fixtures and equipment located on the Land or in the Improvements that are: (a) owned by Seller; (b) attached to the Land or the Improvements as of both the Execution Date and Closing Date (as hereinafter defined) under this Agreement; and (c) used in connection with the operation, ownership,

1

maintenance, management, occupancy or improvement of the Land and Improvements (collectively, the "***Tangible Personal Property***").

1.1.5    Unless specifically provided for in the Intangible Assignment, no right, title and interest of Seller, if any, in any Intangible Property, defined below, is included with the sale of the Land or Improvements. If any Intangible Property is included in the Intangible Assignment, it is without any Seller's warranty. Intangible Property is defined as personal property used in connection with the ownership of the Land and Improvements, owned by Seller both as of the Execution Date and Closing Date (as hereinafter defined) under this Agreement including: (a) all existing permits, licenses, and any City, County, State, Federal, or other approvals for the Land and the Improvements, whether issued or applied for in the name of Seller or any prior owner of the Land and Improvements or any agent thereof; and (b) all assignable warranties and guaranties (express or implied), issued to Seller in connection with the Improvements and/or Tangible Personal Property, all of which are collectively referenced as the "***Intangible Property***".

1.1.6    Unless specifically provided for Schedule 1.1.6 no rights and interests of Seller or any obligations of Seller in any service agreements and amendments, exhibits, addenda and riders thereto pertaining to the operation, maintenance or management of the Land, Improvements, Appurtenances, and Tangible Personal Property are included in the sale of Property (collectively, the "***Service Contracts***").

1.1.7    The Land, Improvements and Appurtenances are hereinafter sometimes collectively referred to as the "***Real Property***." The Real Property, and included Tangible Personal Property, Intangible Property, and Service Contracts, if any, are hereinafter sometimes collectively referred to as the "***Property***."

1.2      Defined Terms. For purposes of this Agreement, the following terms shall have the meanings set forth below:

"***Business Day***" means any calendar day other than those days listed in California Civil Code section 7.1.

"***Execution Date***" means the date on which this Agreement is executed by Seller and Buyer and delivered to the Escrow Holder.

"***Related Entities***" collectively means with respect to each Party, the members, directors, officers, management, partners, employees, attorneys, consultants, representatives and agents of that Party.

1.3      Conventions. This Agreement incorporates the following conventions:

1.3.1    The words "***include***", "***includes***" and "***including***" will be deemed and construed to be immediately followed by the words "***without limitation***".

EXHIBIT 1, PAGE 53

1.3.2    The words "*will*", "*shall*" and "*must*" refer to a mandatory act or obligation, unless the context in which the word is used logically prohibits the application of this convention.

1.3.3    The word "*person*" includes humans, trusts, estates, receiverships, corporations, limited liability companies, partnerships, joint ventures, agencies, labor unions, and federal, state, county or municipal governmental authorities and agencies of competent jurisdiction.

1.3.4    The word "*Dollars*" and the symbol "*$*" refer to United States Dollars.

1.3.5    Words or phrases denoting the singular will include the plural, those denoting the plural will include the singular, and those denoting gender will include all genders unless applying this convention would be contrary to the obvious intent of this Agreement.

1.3.6    Unless otherwise expressly stated, all references to "*days*" will mean calendar days, and all references to "*years*" will mean calendar years.

## ARTICLE II
## PURCHASE PRICE

2.1    <u>Purchase Price</u>. The purchase price for the Property shall be NINE MILLION ONE HUNDRED THOUSAND DOLLARS ($9,100,000.00) (the "*Purchase Price*") to be paid as follows: (a) a TWO HUNDRED SEVENTY THREE THOUSAND DOLLARS ($273,000.00) deposit referenced in <u>Section 2.2.1</u>, and (b) an EIGHT MILLION EIGHT-HUNDRED TWENTY-SEVEN THOUSAND DOLLARS ($8,827,000) Closing Payment referenced in <u>Section 2.2.2</u>.

2.2    <u>Payment of Purchase Price</u>. The Purchase Price shall be paid by Buyer as follows:

2.2.1    <u>Deposit</u>. TWO HUNDRED SEVENTY THREE THOUSAND DOLLARS ($273,000.00) (the "*Deposit*"), shall be deposited by Buyer with Trustee no later than 5:00 p.m., Pacific time, on the third Business day following the Execution Date. If Buyer does not terminate, and is not otherwise deemed to have terminated this Agreement prior to 5:00 p.m., Pacific time on the last day of the period beginning with the Execution Date and ending five business days after Buyer receives the last report of the Water Inspection (the "*Due Diligence Period*"), the Deposit shall be non-refundable, unless Seller defaults or as otherwise provided in this Agreement.

2.2.2    <u>Balance of Purchase Price</u>. The balance of the Purchase Price (the "*Closing Payment*"), shall be deposited by Buyer with Escrow Holder no later than 12:00 noon, Pacific time, one (1) Business Day prior to the Closing Date or no later than 12:00 noon, Pacific time on the Closing Date, if permitted by Escrow Holder . The Closing Payment shall be subject to adjustment for any prorations required pursuant to Article VII.

3

EXHIBIT 1, PAGE 54

2.3     <u>Form of Payments</u>. The Deposit shall be made by check payable to Richard A. Marshack, Chapter 7 Trustee, and the Closing Payment shall be made by wire transfer of immediately available funds to Escrow Holder.

2.4     <u>Treatment of Deposit, Closing Payment and Allocation of Purchase Price</u>.

2.4.1     In the event that the Closing (as hereinafter defined) occurs pursuant to this Agreement, the Deposit and the Closing Payment shall be credited against the Purchase Price as provided in this Agreement.

2.4.2     Notwithstanding any provision herein to the contrary, in the event of any termination of this Agreement for any reason, in addition to any other amounts Seller is entitled to receive pursuant to this Agreement, Seller shall be entitled to receive a portion of the Deposit in the amount of ONE HUNDRED DOLLARS ($100.00) (the "***Independent Consideration***"), which amount Seller and Buyer agree has been bargained for as consideration for Seller's execution and delivery of this Agreement.

## ARTICLE III
## BUYER'S DUE DILIGENCE

3.1     <u>Due Diligence Materials</u>. Seller has or will provide Buyer access to a virtual data room containing copies of financial statements, appraisals, tax map, water well and vineyard information as all of the preceding relate to the Property and which are in Seller' possession (collectively, the "***Due Diligence Materials***"). Buyer acknowledges that Seller makes no representation or warranty regarding the truth, accuracy or completeness of any Due Diligence Materials received by Buyer from Seller. In the event this Agreement is terminated prior to the Closing Date, Buyer shall return all Due Diligence Materials, if any exist and have been provided to Buyer. Test Drilling (water). Buyer has requested, that it be allowed to perform drilling on the Real Property to determine the available water ("Drilling"). In order to perform the Drilling, it is necessary that Trustee apply for and be issued permits for the Drilling. Upon execution of this Agreement, Seller shall sign any documents necessary for the issuance of the permits for the Drilling, and Buyer shall immediately cause the permit application to be filed and pay the cost of the application for the Permits to the appropriate agency. Seller shall also file, within seven business (7) days of the execution of this Agreement, a motion with the Court to authorize the Drilling. Subject to Bankruptcy Court approval, and a deposit into Trustee's trust account of the amount for the Drilling, issuance of permits, and all other costs and expenses associated with the Drilling, Seller will allow and assist Buyer with the Drilling. The contractor performing the Drilling shall name Seller and Trustee as additional insureds on its general liability insurance policy prior to the commencement of the Drilling. The Drilling, and the reports generated from the Drilling, shall be referred to as the Water Inspection. Without regard to any other provision of this Agreement, the Water Inspection is an express contingency of Buyer's obligation to perform and close on the sale provided for in this Agreement. Buyer shall provide Seller copies of all reports from the Drilling and Water Inspection. If the Water Inspection and report(s) issued with respect to the Drilling are unacceptable to Buyer for any reason in Buyer's sole discretion, Buyer may unilaterally terminate this Agreement at which time the entirety of the Deposit shall immediately be returned to Buyer, less the Independent

4

EXHIBIT 1, PAGE 55

Consideration. Buyer shall not be obligated to commence the physical drilling until Seller and Lender have entered into the carve-out agreement provided for in section 6.5 below.

      3.2   <u>Indemnity for Access to Real Property</u>. Buyer agrees to indemnify, defend and hold harmless Seller from any and all losses, damages, costs, liabilities and expenses, including attorneys' fees, disbursements and court costs reasonably and actually incurred by Seller, due to any act or omission of Buyer or its representatives, employees, contractors, subcontractors and agents ("***Buyer's Representatives***") during any of their entries on the Real Property either prior to or after the execution of this Agreement (expressly excluding any matters which are merely discovered by reason of Buyer's inspections). Buyer covenants and agrees, at its sole cost and expense, to protect, defend, indemnify, release and hold harmless Seller from and against any and all Losses (defined below) imposed upon or incurred by or asserted against Seller, including but on limited to, those relating to the Water Inspection and Drilling, and directly or indirectly arising out of or in any way relating to its entries on the Real Property, including, but not limited to, any one or more of the following: (a) any inspection or testing of the Real Property, including, but not limited to, the Drilling and Water Inspection; (b) the imposition, recording or filing or the threatened imposition, recording or filing of any lien encumbering any of the Property due to any activity by Buyer or Buyer's Representatives; (c) any administrative processes or proceedings or judicial proceedings arising out Buyer's inspection or testing of the Real Property; and (d ) any personal injury, wrongful death or damage to the Real Property, any personal property or any surrounding properties from any activity by Buyer or Buyer's Representatives. The foregoing indemnity by Buyer shall survive either (i) the Closing Date and shall not be deemed merged into the provisions of any Closing Documents, or (ii) any termination of this Agreement.

      The term "***Losses***" includes any losses, damages, costs, fees, expenses, claims, suits, judgments, awards, liabilities (including but not limited to strict liabilities), obligations, debts, repair costs, diminutions in value, fines, penalties, charges, costs of Remediation (whether or not performed voluntarily), amounts paid in settlement, foreseeable and unforeseeable consequential damages, litigation costs, attorneys' fees, engineers' fees, environmental consultants' fees, and investigation costs by reason of damage caused by the Buyer which is not remedied by Buyer. Buyer shall also be responsible for taking whatever actions are necessary after the Drilling, including capping the test wells.

      3.3   <u>Right to Terminate</u>. If Buyer is dissatisfied, in Buyer's sole and absolute discretion, with the results of any of Buyer's tests, inspections, studies, reviews of documents or the like relating to the Property or if Buyer otherwise decides in its sole and absolute discretion for any reason or no reason not to proceed under this Agreement, Buyer shall have the right to terminate this Agreement by delivering written notice to Seller and Escrow Holder (the "***Termination Notice***") on or before the expiration of the Due Diligence Period which shall be five business days after Buyer receives the last report(s) of the Water Inspection, in which event this Agreement and the Escrow created pursuant hereto shall be deemed cancelled, the Deposit, less the Independent Consideration, and any other portion of the Purchase Price which has been delivered to Trustee or Escrow Holder shall be returned to Buyer, and neither party shall have any further rights or obligations hereunder, except for any rights or obligations set forth in the provisions of this Agreement which specifically provide that they survive such termination. If Buyer has elected not to terminate this Agreement on or

4818-3374-2076,v.2

EXHIBIT 1, PAGE 56

before the expiration of the Due Diligence Period pursuant to this Section, Buyer acknowledges and agrees that Buyer shall deliver a written notice to Seller and Escrow Holder (the "***Notice to Proceed***") indicating that Buyer wishes to proceed with the transaction. Buyer's failure to deliver a Notice to Proceed or Termination Notice to Seller and Escrow Holder on or before the expiration of the Due Diligence Period shall be deemed to be Buyer's election to proceed with the transaction. Buyer agrees to destroy or return promptly all the Due Diligence Materials to Seller following a termination of this Agreement, and such obligation shall survive any termination of this Agreement.

      3.4    <u>Natural Hazard Disclosure Requirement Compliance</u>. Buyer and Seller acknowledge that Seller is required to disclose if the Property lies within the following natural hazard areas or zones: (1) a special flood hazard area designated by the Federal Emergency Management Agency (Cal. Civ. Code § 1102.17); (2) an area of potential flooding (Cal. Gov. Code § 8589.4); (3) a very high fire hazard severity zone (Cal. Gov. Code § 51183.5); (4) a wild land area that may contain substantial forest fire risks and hazards (Pub. Resources Code § 4136); (5) an earthquake fault zone (Pub. Resources Code § 2621.9); (6) a seismic hazard zone (Pub. Resources Code § 2694), or (7) airport in vicinity (Cal. Civ. Code § 1103.4) . Seller agrees that Seller will employ the services of a company ("***NHDS Provider***"), and hereby instructs Escrow Holder to retain an NHDS Provider, to examine the maps and other information specifically made available to the public by government agencies for the purpose of enabling Seller to fulfill its disclosure obligations with respect to the natural hazards referred to in California Civil Code § 1102.6c(a) and to report the result of its examination, in writing, to Buyer and Seller using substantially the form of the "NATURAL HAZARD DISCLOSURE STATEMENT" set forth in California Civil Code § 1102.6c(b). The written report prepared by NHDS Provider regarding the results of its examination fully and completely discharges Seller from its disclosure obligations referred to herein, and, for the purpose of this Agreement, the provisions of Civil Code § 1102.4 regarding the non-liability of each of Seller for errors or omissions not within in its personal knowledge shall be deemed to apply and NHDS Provider shall be deemed to be an expert, dealing with matters within the scope of its expertise with respect to the examination and written report regarding the natural hazards referred to above. Buyer's approval of the Natural Hazard Disclosure Statement is an express condition of Buyer's obligation to perform under this Agreement.

      3.5    <u>Statutory Disclosure Requirements</u>. Buyer and Seller acknowledge that Seller, as the Seller of 1-4 residential units, is required to comply with certain statutory disclosure requirements, which will be prepared by Seller's Brokers, including: Agency Disclosure and Confirmation (Cal. Civ. Code §§ 2079.13 et seq.), Brokers Statutory Duty to Inspect Property (Cal. Civ. Code §§ 2079 et seq.), Common Interest Development Documents (if applicable) (Cal. Civ. Code §§ 4525, 4528,4530 and 4202), Flood Disaster Insurance Requirements (42 U.S.C. §5154a); Gas and Hazardous Liquid Transmission Pipeline Notice (Cal. Civ. Code § 2079.10.5.), Groundwater Basin Comprehensive Notice (if received) (Cal. Code of Civil Procedure § 836(f).), Lead-Based Paint Pamphlet and Form (if property built before 1987) (42 U.S.C.S. § 4852d; 40 CFR Part 745.), Megan's Law Disclosure (Registered Sex Offender Database)( Cal. Civ. Code § 2079.10a); Methlab Clean Up Order (Cal.Health & Safety Code § 25400.28 (disclosure); §§ 25400.11(q) and (r)), Smoke Detectors Compliance (Cal. Health & Safety Code §§ 13113.7, 13113.8, 18029.6), Water Conserving Fixture

EXHIBIT 1, PAGE 57

compliance/Disclosure (applies only to property built on or before January 1, 1994) (Cal. Civ. Code §§ 1101.4(b) (c), 1101.5(a) (d) (e), 1102.055.), Water Hearing Bracing Statement of Compliance (Cal. Health & Safety Code §§ 19211, 18031.7;25 Cal. Code Regs. §4102.). Buyer acknowledges that Seller is relying on third parties in the preparation of these document and Seller has no independent knowledge, nor is he an expert. If any of the items are of concern to Buyer, Buyer shall make its own independent investigation.

3.5    "AS-IS." BUYER DOES HEREBY ACKNOWLEDGE AND AGREE THAT BUYER IS PURCHASING THE PROPERTY IN AN "AS-IS, WHERE IS, WITH ALL FAULTS" CONDITION AS OF THE CLOSE OF ESCROW. EXCEPT AS SET FORTH IN THIS AGREEMENT, SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES REGARDING THE PROPERTY; AND BY THE CLOSE OF ESCROW, BUYER SHALL HAVE UNDERTAKEN ALL SUCH INSPECTIONS AND EXAMINATIONS IN CONNECTION WITH THE PROPERTY AS BUYER DEEMS NECESSARY OR APPROPRIATE UNDER THE CIRCUMSTANCES (INCLUDING THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE PROPERTY, THE AVAILABILITY OF WATER, THE ZONING OF THE PROPERTY, THE PROPERTY'S COMPLIANCE WITH APPLICABLE LAWS, THE CONDITION OF ANY IMPROVEMENTS ON THE PROPERTY, AND THE AVAILABILITY OR LACK THEREOF OF ENTITLEMENTS FOR THE DEVELOPMENT AND USE OF THE PROPERTY), AND THAT BASED UPON THE SAME, BUYER IS AND WILL BE RELYING STRICTLY AND SOLELY UPON SUCH INSPECTIONS AND EXAMINATIONS AND THE ADVICE OF ITS AGENTS, CONSULTANTS, CONTRACTORS, VENDORS AND REPRESENTATIVES. EXCEPT AS SET FORTH IN THIS AGREEMENT, NEITHER SELLER NOR ANY REPRESENTATIVE, MEMBER, AGENT, EMPLOYEE, PROPERTY MANAGER, BROKER, PRINCIPAL, PARTNER, AFFILIATE OR CONSULTANT OF SELLER IS MAKING OR HAS MADE ANY WARRANTY OR REPRESENTATION (EITHER EXPRESS OR IMPLIED) WITH RESPECT TO ALL OR ANY PART OF THE PROPERTY AS AN INDUCEMENT TO BUYER TO ENTER INTO THIS AGREEMENT AND THEREAFTER TO PURCHASE THE PROPERTY OR FOR ANY OTHER PURPOSE. BUYER HEREBY EXPRESSLY DISCLAIMS (ON BEHALF OF ITSELF AND ANY PARTY AFFILIATED WITH OR RELATED TO BUYER) ANY AND ALL SELLER REPRESENTATIONS AND WARRANTIES (EITHER EXPRESS OR IMPLIED), EXCEPT TO THE EXTENT EXPRESSLY PROVIDED FOR IN THIS AGREEMENT. BY REASON OF ALL OF THE FOREGOING, BUYER SHALL ASSUME THE FULL RISK OF ANY LOSS OR DAMAGE OCCASIONED BY ANY FACT, CIRCUMSTANCE, CONDITION, OR DEFECT IN CONNECTION WITH THE PROPERTY AND THE CONSUMMATION OF THE CLOSING SHALL CONCLUSIVELY EVIDENCE AND CONSTITUTE BUYER'S RELEASE OF SELLER FROM ALL LOSS, DAMAGE AND LIABILITY FOR CLAIMS THAT MAY ARISE AFTER THE CLOSING WITH RESPECT TO ACTS OR OMISSIONS THAT OCCURRED, OR CONDITIONS THAT EXISTED, AT OR PRIOR TO THE CLOSING. WITHOUT LIMITING THE FOREGOING, BUYER SPECIFICALLY RELEASES SELLER AND SELLER'S AFFILIATES FROM ANY CLAIMS BUYER MAY HAVE AGAINST SELLER AND/OR SELLER'S AFFILIATES NOW OR IN THE FUTURE ARISING FROM THE ENVIRONMENTAL CONDITION OF THE PROPERTY OR THE PRESENCE OF HAZARDOUS SUBSTANCES OR CONTAMINATION ON OR

4818-3374-2076,v.2

EXHIBIT 1, PAGE 58

EMANATING FROM THE PROPERTY. THE FOREGOING WAIVERS AND
RELEASES BY BUYER SHALL SURVIVE EITHER (I) THE CLOSING DATE AND
SHALL NOT BE DEEMED MERGED INTO THE PROVISIONS OF ANY CLOSING
DOCUMENTS, OR (II) ANY TERMINATION OF THIS AGREEMENT.

California Civil Code section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

By initialing this section, Buyer acknowledges that it has read, is familiar with, and waives the
provisions of California Civil Code section 1542 set forth above, and agrees to all of the
provisions of this Section.

_____          *(Please see next page for initials)*
Seller's Initials                  _____
                                   Buyer's Initials

    3.6   <u>Buyer's Acknowledgment</u>. Without in any way limiting the generality of the
provisions of <u>Section 3.7</u>, in entering into this Agreement and purchasing the Property, Buyer
hereby acknowledges and agrees that Seller has not made, does not hereby make and will not
hereafter make any representations or warranties, whether express or implied, with respect to
the Property, except as set forth in Article VIII, or the physical condition thereof, including:

    A.   THE SIZE, INCLUDING THE SQUARE FOOTAGE OF THE LAND
AND IMPROVEMENTS, QUALITY, NATURE, ADEQUACY AND PHYSICAL
CONDITION OF THE PROPERTY.

    B.   THE QUALITY, NATURE, ADEQUACY AND PHYSICAL
CONDITION OF SOILS, GEOLOGY AND GROUNDWATER.

    C.   THE EXISTENCE, QUALITY, NATURE, ADEQUACY AND
PHYSICAL CONDITION OF UTILITIES SERVICING THE PROPERTY.

    D.   THE DEVELOPMENT POTENTIAL OF THE PROPERTY, AND THE
PROPERTY'S USE, HABITABILITY, MERCHANTABILITY, FITNESS, SUITABILITY,
VALUE OR ADEQUACY FOR ANY PARTICULAR PURPOSE, OR THE ABILITY TO
CHANGE THE USE OF THE PROPERTY.

    E.   THE ZONING OR OTHER LEGAL STATUS OF THE PROPERTY OR
ANY OTHER PUBLIC OR PRIVATE RESTRICTIONS ON USE OF THE PROPERTY.

    F.   THE COMPLIANCE OF THE PROPERTY OR ITS OPERATION WITH
ANY APPLICABLE CODES AND LAWS OR WITH THE RESTRICTIONS OF ANY

EXHIBIT 1, PAGE 59

EMANATING FROM THE PROPERTY. THE FOREGOING WAIVERS AND RELEASES BY BUYER SHALL SURVIVE EITHER (I) THE CLOSING DATE AND SHALL NOT BE DEEMED MERGED INTO THE PROVISIONS OF ANY CLOSING DOCUMENTS, OR (II) ANY TERMINATION OF THIS AGREEMENT.

California Civil Code section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

By initialing this section, Buyer acknowledges that it has read, is familiar with, and waives the provisions of California Civil Code section 1542 set forth above, and agrees to all of the provisions of this Section.

*(Please see previous page for initials)*

Seller's Initials                Buyer's Initials

    3.6    <u>Buyer's Acknowledgment</u>. Without in any way limiting the generality of the provisions of <u>Section 3.7</u>, in entering into this Agreement and purchasing the Property, Buyer hereby acknowledges and agrees that Seller has not made, does not hereby make and will not hereafter make any representations or warranties, whether express or implied, with respect to the Property, except as set forth in Article VIII, or the physical condition thereof, including:

    A.    THE SIZE, INCLUDING THE SQUARE FOOTAGE OF THE LAND AND IMPROVEMENTS, QUALITY, NATURE, ADEQUACY AND PHYSICAL CONDITION OF THE PROPERTY.

    B.    THE QUALITY, NATURE, ADEQUACY AND PHYSICAL CONDITION OF SOILS, GEOLOGY AND GROUNDWATER.

    C.    THE EXISTENCE, QUALITY, NATURE, ADEQUACY AND PHYSICAL CONDITION OF UTILITIES SERVICING THE PROPERTY.

    D.    THE DEVELOPMENT POTENTIAL OF THE PROPERTY, AND THE PROPERTY'S USE, HABITABILITY, MERCHANTABILITY, FITNESS, SUITABILITY, VALUE OR ADEQUACY FOR ANY PARTICULAR PURPOSE, OR THE ABILITY TO CHANGE THE USE OF THE PROPERTY.

    E.    THE ZONING OR OTHER LEGAL STATUS OF THE PROPERTY OR ANY OTHER PUBLIC OR PRIVATE RESTRICTIONS ON USE OF THE PROPERTY.

    F.    THE COMPLIANCE OF THE PROPERTY OR ITS OPERATION WITH ANY APPLICABLE CODES AND LAWS OR WITH THE RESTRICTIONS OF ANY

4818-3374-2076,v.2

EXHIBIT 1, PAGE 60

GOVERNMENTAL OR QUASIGOVERNMENTAL ENTITY OR OF ANY OTHER PERSON OR ENTITY.

G.     THE PRESENCE OF HAZARDOUS MATERIAL(S) ON, UNDER, IN OR ABOUT THE PROPERTY OR THE ADJOINING OR NEIGHBORING PROPERTIES OR THE EXISTENCE OF ANY UNDERGROUND TANKS, CONTAINERS OR CONDUITS ON, UNDER, IN OR ABOUT THE PROPERTY. THE TERMS "***HAZARDOUS MATERIAL***" AND "***HAZARDOUS MATERIALS***" SHALL MEAN AND REFER TO (I) ASBESTOS, RADON, UREA-FORMALDEHYDE, POLYCHLORINATED BIPHENYLS ("***PCBS***"), OR SUBSTANCES CONTAINING PCBS, NUCLEAR FUEL OR MATERIALS, RADIOACTIVE MATERIALS, EXPLOSIVES, KNOWN CARCINOGENS, PETROLEUM PRODUCTS AND BYPRODUCTS, AND ANY SUBSTANCE DEFINED AS HAZARDOUS OR TOXIC OR AS A CONTAMINANT OR POLLUTANT IN, OR THE RELEASE OR DISPOSAL OF WHICH IS REGULATED BY ANY ENVIRONMENTAL LAW; AND (II) FUNGI, BACTERIA, OTHER MICROORGANISMS AND MICROBIAL SUBSTANCES THAT ARE PRESENT AT LEVELS REGULATED BY ENVIRONMENTAL LAW OR THAT MAY BE HARMFUL TO HUMAN HEALTH AND SAFETY. THE TERM "***ENVIRONMENTAL LAW***" SHALL MEAN AND REFER TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980 ("***CERCLA***"), 42 U.S.C. §9601, ET SEQ.; THE FEDERAL RESOURCE CONSERVATION AND RECOVERY ACT OF 1976 ("***RCRA***"), 42 U.S.C. §6901, ET SEQ.; THE FEDERAL WATER POLLUTION CONTROL ACT, 33 U.S.C. §1251, ET SEQ.; THE CLEAN AIR ACT, 42 U.S.C. §7401, ET SEQ.; THE OCCUPATIONAL SAFETY AND HEALTH ACT, 29 U.S.C. § 651 ET SEQ.; ALL AS THE SAME MAY BE FROM TIME TO TIME AMENDED, AND ANY OTHER FEDERAL, STATE, COUNTY, MUNICIPAL, LOCAL OR OTHER STATUTE, LAW, ORDINANCE OR REGULATION WHICH RELATES TO OR DEALS WITH HUMAN HEALTH OR THE ENVIRONMENT, INCLUDING ALL REGULATIONS PROMULGATED BY A REGULATORY BODY PURSUANT TO ANY SUCH STATUTE, LAW, ORDINANCE OR REGULATION.

H.     ACCESS RIGHTS TO AND FROM THE PROPERTY.

I.     THE CONDITION OF TITLE OF THE PROPERTY.

J.     THE ECONOMICS OF THE OPERATION OF THE PROPERTY.

K.     THE QUALITY OF ANY LABOR AND MATERIALS USED IN ANY IMPROVEMENTS ON THE PROPERTY.

L.     CURRENT OR PAST LITIGATION CONCERNING THE PROPERTY AND ITS EFFECT ON THE PROPERTY.

M.     CURRENT OR PAST ALLEGED CODE VIOLATIONS.

Buyer further acknowledges that it has had access to documents in a data room maintained by Hilco Real Estate ("***Hilco***") and Onyx Asset Advisors, LLC ("***Onyx***"), a list of which is set forth in Schedule 3.6. Buyer also acknowledges that the Property is being sold

9

EXHIBIT 1, PAGE 61

pursuant to fully noticed motion, subject to overbid, pursuant to 11 U.S.C. § 363, to be filed in the Bankruptcy Court.

3.7    <u>Tangible Personal Property</u>. Seller makes no representation or warranty regarding any Tangible Personal Property on the Land, including any mobile home or storage shed. Specifically, Seller does not represent or warrant whether the Tangible Personal Property was installed with permits or correct licenses, or whether it is currently licensed or permitted. Buyer shall be solely responsible for the transfer of any title relating to the Tangible Personal Property to its name. In the event the Tangible Personal Property is unpermitted, not to code, or not properly licensed and any entity requires its removal from the Land after Closing, Buyer shall be solely responsible for the costs of removal.

3.8    <u>Intangibles</u>. Seller makes no representation or warranty regarding the validity or existence of existing permits, licenses, and any City, County, State, Federal, or other approvals for the Land and the Improvements, whether issued or applied for in the name of Seller or any prior owner of the Land and Improvements or any agent thereof. Buyer shall be responsible for the transfer to its name of all Intangibles, if any, as of the Closing Date.

The provisions of <u>Sections 3.7, 3.8, 3.9 and 3.10</u> shall survive the Closing Date.

3.9    <u>Buyer's Obligations</u>. Buyer further acknowledges that it is responsible for providing the applicable governmental entities with any documentation and information for the transfer of the permits, if any, for the operation of the Property.

3.10    <u>Buyer's Pre-Closing Inspection</u>. Buyer shall have the right to verify that the residence and any other structure on the property is vacant ten (10) days before Closing. Seller shall provide Buyer with evidence that the current occupant of the residence has been permanently removed from the Property ten (10) days before Closing.

**ARTICLE IV**
**TITLE**

4.1    <u>Preliminary Title Report</u>. Seller has caused or will cause to be delivered to Buyer from Fidelity National Title Company ("***Title Company***"), a current preliminary title report pertaining to the Real Property containing such exceptions as the Title Company would specify in a ALTA Standard Owner Policy form of owner's policy of title insurance (the "***ALTA Form***") with links to legible copies of all documents relating to the title exceptions and other matters referred to in such preliminary title reports (collectively, the "***Preliminary Title Reports***").

4.2    <u>Approval/Disapproval of Title</u>. Buyer shall have until on or prior to the expiration of the Due Diligence Period to notify Seller in writing of Buyer's approval or disapproval of any matters that are disclosed in the Preliminary Title Reports or would be disclosed by diligent inspection of the Property. In the event the Title Company issues any supplements to the Preliminary Title Reports after the expiration of the Due Diligence Period, Buyer shall have five (5) Business Days following delivery of the supplement to approve or disapprove in writing any exception contained therein not caused or created by

Buyer and not disclosed in the Preliminary Title Reports or prior supplement thereto. If Buyer fails to disapprove an exception in writing within the time period specified above, the exception or matter shall be deemed to be approved by Buyer. If Buyer disapproves an exception or matter as permitted above, Seller shall have the right, but is not obligated, within five (5) Business Days after receipt of Buyer's written disapproval to inform Buyer whether or not Seller will cause the disapproved exception(s) or matter(s) to be removed or will cause the Title Company to bond, insure or endorse over such disapproved exception or matter in a manner acceptable to Buyer, in Buyer's sole and absolute discretion, on or before the Closing Date. If Seller does not so inform Buyer that Seller will cause the removal of the disapproved exception(s) or matter(s) or to cause the Title Company to bond, insure or endorse over such disapproved exception or matters, Buyer shall have the right to terminate this Agreement in writing, on or prior to the expiration of the Due Diligence Period, or in the case of a supplement to the Preliminary Title Reports issued after the Due Diligence Period, five (5) Business Days after delivery of the supplement to the Preliminary Title Reports, and, in the absence of such termination Buyer shall be deemed to have waived its disapproval of the disapproved exception(s) or matter(s) that Seller has not agreed to remove. All matters shown in the Preliminary Title Reports or any supplement thereto, which matters are not disapproved by Buyer or as to which Buyer is deemed to have waived its disapproval, together with such additional matters as Buyer may approve, and all matters that would be disclosed by diligent inspection or survey of the Property, shall be considered to be "***Permitted Exceptions***." Notwithstanding the foregoing, on or prior to the Closing, Seller shall cause all monetary liens (other than nondelinquent property taxes and assessments prorated as of the Closing) to be removed from any title insurance policies issued pursuant to this Agreement. If Buyer timely disapproves a title matter, and Seller does not cause the disapproved matter to be timely removed, then Buyer's sole remedy shall be the return of the Deposit, less the Independent Consideration, together with any interest earned or accrued thereon which shall also be returned to Buyer.

4.3    Condition of Title. The Real Property shall be conveyed by Seller to Buyer on the Closing Date free and clear of all liens, encumbrances and easements, excepting only the following (collectively, the "***Permitted Encumbrances***"):

4.3.1    The Permitted Exceptions.

4.3.2    Current real estate taxes and assessments that are a lien not yet payable.

4.4    Title Policy.

4.4.1    Buyer, in its sole and absolute discretion, may make one or both of the following elections (collectively, the "***Title Elections***") with respect to the Owner's Title Policy: (a) upgrade the ALTA Form to an ALTA form of owner's extended policy of title insurance (the "***ALTA Extended***"); and (b) obtain such title endorsements to the Owner's Title Policy as Buyer may require or desire; provided that (i) the satisfaction of any of the Title Elections shall not be a condition of the Closing and shall not delay or postpone the Closing, (ii) Buyer shall bear any and all additional costs of any Title Elections, (iii) in the event that the Title Company requires an ALTA Survey as a condition to the issuance of an ALTA Extended or the performance of the other Title

EXHIBIT 1, PAGE 63

Elections, Buyer shall be responsible for providing such ALTA Survey at its sole cost. Buyer shall confirm that its Title Election are available from the Title Company during the Due Diligence Period.

4.4.2    At Closing, Seller shall cause the Title Company to issue to Buyer an Owner's Title Policy covering the Real Property. The term "Owner's ***Title Policy***" means (i) a ALTA Form or (ii) an ALTA Extended, if Buyer has made a Title Election pursuant to Section 4.4.1(a) and has satisfied the conditions of Section 4.4.1. The Owner's Title Policy shall: (a) be issued by the Title Company in an amount equal to the amount of the Purchase Price set forth in Section 2.1; and (b) show title to the Real Property vested in Buyer, subject only to the Permitted Encumbrances.

4.5    Partial Release by Lender. As a condition of this transaction, Farm Credit West, FLCA ("Lender"), must approve this sale and agree to and record partial releases of the Real Property from that certain deed of trust to secure and original indebtedness of $17,500,000 recorded March 23, 2007 as Instrument No. 2007-005727, that certain notice of advance recorded February 6, 2009 as Instrument No. 2009-005727, that certain deed of trust to secure an original indebtedness of $300,000 recorded February 26, 2010 as Instrument No. 2010-011915, and that certain notice of advance in the amount of $650,000 recorded December 28, 2010 as Instrument No. 2010-066312.

## ARTICLE V
## OPENING AND CLOSING OF ESCROW

5.1    Establishment of Escrow. An escrow for the purpose of facilitating the consummation of the purchase and sale of the Property pursuant to this Agreement (the "***Escrow***") shall be established at A & A Escrow Services, Inc, 415 N. Crescent Drive, Suite 320, 415 N. Crescent Drive, Suite 320 Beverly Hills, CA 90210, Antonia Delgado, escrow agent (the "***Escrow Holder***").

5.2    Opening of Escrow. Escrow shall be deemed to have opened on the date of the receipt by Escrow Holder of: (a) the original or counterparts of this Agreement, duly executed by Seller and Buyer.; and (b) confirmation from Trustee he has received the Deposit from Buyer ("***Opening of Escrow***").

5.3    Form Escrow Instructions. This Agreement shall constitute escrow instructions among Seller and Buyer for the Escrow. Seller and Buyer agree to execute such additional documents that may be required by Escrow Holder attendant to this Agreement and the purchase and sale herein contemplated. In the event of any conflict between the form escrow instructions and this Agreement, the terms and conditions of this Agreement shall control and govern.

5.4    Closing Date. Unless earlier terminated by a Party pursuant to a specific right of termination expressly set forth in this Agreement, the consummation of the purchase and sale of the Property pursuant to this Agreement (the "***Closing***") shall occur on the first Business Day to occur three (3) calendar days following the date upon which the Sale Order has become a final order (the "***Closing Date***"). Notwithstanding the above, the Parties may

EXHIBIT 1, PAGE 64

mutually agree to a sooner Closing Date so long as there is no stay of the Sale Order pending appeal.

5.5     Outside Closing Date. Provided Lender supports this sale, if the Closing does not occur by December 31, 2021, then either Party may terminate this Agreement and cancel the Escrow, so long as the terminating Party is not in material breach of any of its representations, warranties, covenants or agreements contained in this Agreement. For the avoidance of doubt if Buyer is not in material breach of this agreement and Seller is unable or unwilling to close on or prior to December 31, 2021, the Deposit, less the Independent Consideration, and any other portion of the Purchase Price which has been delivered to Escrow Holder shall be returned to Buyer, and neither party shall have any further rights or obligations hereunder. If the Lender does not support this sale, the Buyer acknowledges that Lender has the right to foreclose after December 1, 2021.

## ARTICLE VI
## CONSUMMATION OF SALE AND CONDITIONS TO CLOSING

6.1     Documents and Funds Delivered into Escrow or by Escrow Holder. The following shall be delivered into the Escrow in connection with the purchase and sale of the Property:

6.1.1   No later than 12:00 noon, Pacific time, one (1) Business Day prior to the Closing Date, Seller shall deposit into Escrow:

(a)     One (1) original of a grant deed to the Real Property (the "***Grant Deed***"), duly executed by Seller and notarized in the form set forth in Exhibit B to this Agreement.

(b)     One (1) original of a Bill of Sale (the "***Bill of Sale***"), duly executed by Seller, in the form set forth in Exhibit C to this Agreement, by which Seller transfers to Buyer all right, title and interest of Seller in and to the Tangible Personal Property, if any, and without any warranty by Seller.

(c)     Two (2) originals of an Assignment Agreement (the "***Intangible Assignment***") in the form set forth in Exhibit D to this Agreement, duly executed in counterpart by Seller, by which Seller assigns to Buyer all of Seller's interest, if any, and without any Seller's warranty in and rights to the: (i) Intangible Property and (ii) Service Contracts, if any

(d)     Two (2) originals of a written certification from Seller which satisfies the requirements of section 1445 of the Internal Revenue Code, as amended (the "***1445 Certificate***"), duly executed by Seller, in a form acceptable to Buyer and the Title Company.

(e)     Two (2) originals of a Withholding Exemption Certificate (Form 593) from the State of California ("***Form 593***"), duly executed by Seller.

13

*Rmm*

EXHIBIT 1, PAGE 65

(f)      One (1) certified Sale Order (as defined below).

(g)      An approved closing statement prepared by Escrow setting forth the economic terms of the Closing in accordance herewith (the "***Closing Statement***"). The Closing Statement shall set forth the prorations and adjustments to the Purchase Price respecting the Property to be made pursuant to this Agreement and all other amounts to be charged to the Seller or paid out of the Escrow, executed by Seller. The Closing Statement shall include a holdback by Escrow of anticipated supplemental taxes due from the transfer of the property to Debtor in October 2020, if any.

(i)      Such other instruments and documents as may be reasonably required by the Title Company or governmental entities as a condition to its delivery of the Owner's Title Policy.

6.1.2    No later than 12:00 noon, Pacific time, one (1) Business Day prior to the Closing Date (other than the Closing Payment which shall be deposited with Escrow Holder not later than the time and date set forth in <u>Section 2.2.2</u>), Buyer shall deposit into Escrow:

(a)      Two (2) originals of the Intangible Assignment, duly executed in counterpart by Buyer.

(b)      One (1) original of a Preliminary Change of Ownership Report for the Real Property, which satisfies the requirements of California Revenue and Taxation Code section 480.3, fully completed and executed by Buyer (the "***Ownership Change Report***").

(c)      The Closing Payment required under <u>Section 2.2.2</u>, as adjusted by the prorations, costs and other items credited for or chargeable to Buyer pursuant to Article VII.

(d)      Such other instruments and documents as may be reasonably required by the Title Company as a condition to its delivery of the Owner's Title Policy.

6.2      <u>Conditions to Close</u>.

6.2.1    The Closing shall not occur unless and until the following conditions have been satisfied or waived in writing by Buyer:

(a)      All documents described in Section 6.1.1 have been delivered by Seller to Escrow.

(b)      All representations and warranties of Seller under Article VIII are true and correct as of the Closing.

14

(c)      Seller has complied with all of its obligations under this Agreement.

(d)      The Title Company is in a position to issue to the Owner's Title Policy.

(e)      Buyer confirms the residence is vacant.

6.2.2    The Closing shall not occur unless and until the following conditions have been satisfied or waived in writing by Seller:

(a)      All documents and funds described in Section 6.1.2 have been delivered by Buyer to Escrow.

(b)      All representations and warranties of Buyer under Article IX are true and correct as of the Closing.

(c)      Buyer has complied with all of its obligations under this Agreement.

6.2.3    Seller and Buyer mutually acknowledge and agree that whenever in this Agreement there are conditions to Closing which are provided for the benefit of a Party to this Agreement, that Party shall have the right, at any time during the Escrow Period (as hereinafter defined), to waive such conditions and the benefits conferred thereby and proceed to Closing without such conditions having been satisfied.

6.3      <u>Recordation and Transfer</u>. Upon satisfaction or waiver of all of the conditions set forth in <u>Section 6.2</u>, Escrow Holder shall transfer the Property as follows:

6.3.1    Cause the following documents (collectively, the "***Recordable Documents***") to be recorded in the official records of San Luis Obispo, California (the "***Official Records***"): the Sale Order and Grant Deed.

6.3.2    Cause the following documents to be delivered to the San Luis Obispo County Recorder: (a) the Statement of Transfer Tax and (b) the Ownership Change Report.

6.3.3    Cause the Form 593 to be filed with the California Franchise Board.

6.3.4    Deliver to Buyer: (a) one (1) fully executed original of the Bill of Sale and 1445 Certificate; (b) one (1) fully executed counterpart original of the Intangible Assignment; (c) one (1) conformed copy of the recorded Recordable Documents and the Ownership Change Report.

6.3.5    Deliver to Seller: (a) one (1) conformed copy of the Recordable Documents; and (b) one (1) fully executed counterpart original of the Intangible Assignment.

15

EXHIBIT 1, PAGE 67

6.3.6   Deliver to the Parties entitled thereto any other Closing documents.

6.3.7   Disburse all funds deposited with Escrow Holder by Buyer in the following manner:

(a)    Compute the amount of all costs and prorations chargeable to Seller and Buyer pursuant to Article VII.

(b)    Deliver to Seller, pursuant to written instructions to be delivered by Seller to Escrow Holder, an amount equal to the Purchase Price, less the costs and prorations which are chargeable to the account of Seller pursuant to Article VII. Deduct the amounts of all costs and prorations which are chargeable to the account of Buyer as calculated under Section 6.3.7(a).

(c)    Disburse the remaining balance of the funds deposited by Buyer, if any, to Buyer promptly upon the Closing pursuant to written instructions to be delivered by Buyer to Escrow Holder.

6.4    Bankruptcy Court Approval. This Agreement and the sale of the Property are subject to Bankruptcy Court approval. Buyer acknowledges that the sale to Buyer may be subject to overbid.

6.4.1   Sale Motion. Within 14 calendar days of the granting of the Bid Procedures Motion below, Seller shall file a motion for approval under 11 U.S.C. Section 363(b) and (f) ("Sale Motion").

(a)    The Sale Motion shall seek a final order ("Sale Order") approving the sale and all of the substantive terms and conditions contained in this Agreement and containing a finding that the Buyer is a good faith purchaser as provided in the Bankruptcy Code. The Sale Order shall also contain findings that (i) the sale of the Property was properly noticed to creditors under Sections 101(1)(A) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, and 6004; (ii) the sale was free of collusion and was negotiated at arm's length (iii) the requirements of Section 363(m) have been met and Buyer has acted in good faith; and (iv) the sale price of the Property to Buyer was reasonable, fair and as much or more than the Property's fair market value; The Sale Order shall not be submitted to the Court for approval and signing until it has been approved by Buyer. If Buyer does not approve the proposed Sale Order by the later of (i) two (2) days after the sale hearing or (ii) two (2) days after it is provided to Buyer with all material provisions (except the final price and identity of overbidders, if any) Buyer shall have the right to file objections with the Court.

(b)    The Sale Order approving the transaction shall provide the Property is being transferred to Buyer free and clear of all claims, liens and encumbrances, including claims against the Debtor and Erich L. Russel, and Robert G. Pierce, III, except as expressly provided in this Agreement.

(c)    The Sale Order approving the transaction shall authorize the

16

payment of the customary costs of sale from escrow, including those costs and expenses described in Articles VII and XII of this Agreement.

6.4.2   <u>Bid Procedures Motion</u>. A Bid Procedures Motion shall be filed within seven business days of the signing of this Agreement. In the Bid Procedures Motion, the Seller shall request the following terms and overbid procedures:

(a)      If there are no overbids, Seller will recommend and request the approval of the sale to Buyer upon the terms and conditions contained in this Agreement.

(b)      In order to overbid, any prospective bidder shall be required to establish to the satisfaction of Seller its financial ability to successfully consummate the transaction. This shall include as conditions of eligibility to bid a non-refundable deposit equal to three (3%) of the Buyer's purchase offer, evidence of availability of cash to close, and the execution of a form of Purchase Agreement substantially the same as this Agreement. The only changes to it should be the bid price, the identity of the bidder and provision made for compliance with these Bidding Procedures.

(c)      If the Court conducts an auction of the Property, the initial minimum overbid shall FIFTY THOUSAND DOLLARS ($50,000.00) higher than Buyer's agreed Purchase Price plus the Breakup Fee, defined below, and thereafter will go up in TWENTY-FIVE THOUSAND DOLLAR ($25,000.00) increments.

(d)      If Buyer is not the successful bidder at the auction due to an overbid ("***Overbid***"), Buyer shall be entitled to receive the amount of its Due Diligence costs (not to exceed ONE HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($175,000.00) plus a break-up fee of TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS ($225,000.00) (collectively "Breakup Fee").

(e)      The Buyer's right to a Breakup Fee is contingent on: (i) Buyer being a ready, willing and able buyer for the Property at the time the Bankruptcy Court conducts the last hearing on the sale of the Property; (ii) Buyer has completed Buyer's Due Diligence, waived in writing all contingencies and confirmed in writing that all approval periods have expired; and (iii) Buyer is overbid and the successful bidder in fact purchases the Property for the sum it bids at the hearing

(f)      Buyer shall provide its Due Diligence costs, with backup documentation, to Trustee within five (5) days after the expiration of the Due Diligence Period. The Breakup Fee shall be paid within seven (7) business days of the close of the Property with the successful bidder

(g)      If there is an overbid of at least NINE MILLION FIVE HUNDRED FIFTY THOUSAND DOLLARS ($9,550,000.00) and Buyer is the successful bidder, Buyer shall be entitled to a credit to the overbid purchase price

4818-3374-2076,v.2

**EXHIBIT 1, PAGE 69**

in the amount of the Breakup Fee. If Buyer is not the successful bidder, Buyer agrees that its last bid shall serve as a back-up bid. The Deposit, less the Independent Consideration shall be returned to Buyer within seven (7) business days of the close of the Property with the successful bidder.

6.4.3    Trustee's Discretion. Trustee, as to two or more qualified bidders shall, in his sole discretion determine the "best bid."

6.5    Lender Carve-out. This Agreement and the sale of the Property are conditioned on Trustee and Estate entering into an acceptable carve-out agreement with Lender.

6.6    Termination Rights. To the extent that liens, claims, co-owners, encumbrances, or any other matter make the sale of the Property infeasible or unprofitable to the Estate, Seller, at his option, may terminate the Agreement. In such case, the Buyer and Escrow Holder agree to fully and completely release the Seller from any and all obligations under the Agreement and escrow shall be cancelled. Upon such cancellation, Buyer's Deposit, less the Independent Consideration shall be returned to Buyer. Seller and Buyer agree to promptly execute any documents reasonably requested by the other party or Escrow Holder to evidence the termination of this Agreement and the cancellation of Escrow and the return of the Deposit to Buyer.

## ARTICLE VII
## PRORATIONS AND COSTS

7.1    Taxes and Assessments. Real estate taxes and assessments relating to the Property shall be allocated and prorated between Seller and Buyer as follows:

7.1.1    General real estate taxes for the then-current fiscal year relating to the Property shall be prorated as of the Closing Date with each party to pay the taxes attributable to the time it owns the Property. If the Closing shall occur before the actual taxes for the then-current fiscal year are known, the apportionment of taxes shall be upon the basis of taxes for the immediately preceding fiscal year; provided that, if the taxes for the current year are thereafter determined to be more or less than the taxes for the preceding year (after any appeal of the assessed valuation thereof is concluded), Seller and Buyer promptly shall adjust the proration of such taxes and Seller or Buyer, as the case may be, shall pay to the other any amount required as a result of such adjustment. All special taxes or assessments related to the Property shall be prorated as of the Closing Date. All taxes or assessments relating to the Property arising out of a change in the use of the Property by Buyer after the Closing or a change in ownership after the Closing shall be allocated to and paid by Buyer. All refunds of general real estate taxes for the pre-Closing portion of the current fiscal year or any prior fiscal year shall belong to Seller and Buyer shall pay to Seller any such amounts received by Buyer.

7.1.2    Any supplemental real estate taxes or assessments against the Property, which are levied after the Closing but which are applicable to the period of time prior to the Closing (collectively, the "***Supplemental Taxes***"), will remain the responsibility of Seller on and after the Closing. Escrow shall hold back an amount of the estimated

4818-3374-2076,v.2

supplemental taxes which may be owed by Seller, if any, and Escrow will reimburse Buyer for the amount of the Supplemental Taxes within thirty (30) calendar days after Escrow's receipt of Buyer's written demand therefore accompanied by the appropriate tax bill for the Supplemental Taxes. Seller shall have the right to reasonably review and approve any such Supplemental Taxes, and in the event Seller disapproves same, Seller may dispute all or any portion of such Supplemental Taxes, at Seller's sole cost and expense, with the appropriate taxing authority, provided that Seller's dispute of the Supplemental Taxes will have no adverse impact upon the Property, shall be at no cost to Buyer, and shall not require an unreasonable resource or time commitment on the part of Buyer. Any amount of the escrow holdback for estimated supplemental taxes not reimbursed to Buyer, will be paid to Seller.

     7.2   <u>Utilities</u>.

     7.2.1   Seller shall be responsible for all charges and/or amounts due to utilities related to the Property prior to the Closing Date. Outstanding charges for utilities to the Property which are provided by utility providers pursuant to accounts established in the name of Seller related to services provided on or after the Closing Date shall be paid by Buyer. Buyer shall promptly pay all utility bills for such utility services provided on or after the Closing Date.

     7.2.2   Seller shall not assign to Buyer any deposits which Seller has with any of the utility services or companies servicing the Property. Buyer shall arrange with such services and companies to have accounts opened in Buyer's name beginning at 12:01 a.m. on the Closing Date.

     7.3   <u>Service Contracts</u>. All fees paid or payable by Seller under any Service Contracts which are being transferred with the Property shall be prorated as of the Closing Date.

     7.4   <u>Insurance</u>. Buyer shall obtain its own insurance coverage covering the Property as of the Closing.

     7.5   <u>Other Income and Expenses</u>. All other customarily prorated items of expense or receipt shall be prorated between the Parties hereto as of the Closing in the customary manner. Except with respect to items prorated at the Closing, Seller shall be responsible for payment of any and all bills or charges incurred on or prior to the Closing for work, services, supplies or materials with respect to the Property, and Buyer shall be responsible for the payment of any and all bills or charges incurred after the Closing for work, services, supplies or materials with respect to the Property.

     7.6   <u>Closing Costs</u>.

     7.6.1   Documentary transfer taxes and local transfer or conveyance taxes shall be paid by Seller. Any escrow fee charged by the Escrow Holder shall be paid one-half (1/2) by Seller and one-half (1/2) by Buyer. Buyer shall pay the fee for the recording of the Grant Deed. Each Party shall be responsible for the payment of its own attorneys' fees incurred in connection with the transaction which is the subject of this Agreement.

4818-3374-2076,v.2

7.6.2    Seller shall pay toward the cost of the Owner's Title Policy an amount equal to the cost of the ALTA Form covering the amount of the Purchase Price. In the event that Buyer makes a Title Election to have an ALTA Extended issued at Closing in lieu of a ALTA Form and/or desires to increase the coverage to an amount in excess of the Purchase Price, Buyer shall pay the incremental cost to obtain an ALTA Extended and/or such excess coverage. In the event that Buyer makes a Title Election to have title endorsements issued by the Title Company for the Owner's Title Policy, Buyer shall also pay the cost of any title insurance endorsements requested by Buyer.

## ARTICLE VIII
## REPRESENTATIONS OF SELLER

Seller represents to Buyer that:

8.1    Execution and Delivery. The execution and delivery by Seller of, and Seller's performance under, this Agreement are subject to the approval of the Bankruptcy Court. As provided for in this Agreement, Seller will file the Sale Motion. Subject to the approval of the Bankruptcy Court of the Sale Order and as otherwise provided for in this Agreement, the execution and delivery by Seller of, and Seller's performance under, this Agreement are within Seller's powers and have been duly authorized by all requisite action, and the Person executing this Agreement on behalf of Seller has the authority to do so.

8.2    Legal and Binding Obligation. Subject to the approval of the Bankruptcy Court of the Sale Order and satisfaction or waiver of Seller's condition set forth in Section 6.2.2(d) hereof, this Agreement constitutes the legal, valid and binding obligation of Seller enforceable in accordance with its terms.

8.3    Not Foreign Person. Seller is a Chapter 7 Debtor under the United States Bankruptcy Code and not a "foreign person" within the meaning of section 1445 of the Internal Revenue Code of 1986 (i.e., Seller is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate, as those terms are defined in the Internal Revenue Code and regulations promulgated thereunder).

8.4    Anti-Terrorism. Seller is not in violation of any anti-terrorism law and Seller is not, as of the date hereof: (a) conducting any business or engaging in any transaction or dealing with any prohibited person, including the making or receiving of any contribution of funds, goods or services to or for the benefit of any prohibited person; (b) dealing in, or otherwise engaging in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224; or (c) engaging in or conspiring to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in, any anti-terrorism law. Neither Seller nor any of its officers, directors, shareholders or members, as applicable, is a prohibited person. As used herein, "anti-terrorism law" is defined as any law relating to terrorism, anti-terrorism, money-laundering or anti-money laundering activities, including, the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986, Executive Order No. 13224, and Title 3 of the USA Patriot Act, and any regulations promulgated under any of them. As used herein "Executive Order No. 13224" is defined as Executive Order

20

No. 13224 on Terrorist Financing effective September 24, 2001, and relating to "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism," as may be amended from time to time. "***Prohibited Person***" is defined as (i) a person or entity that is listed in the Annex to Executive Order No. 13224, or a person or entity owned or controlled by an entity that is listed in the Annex to Executive Order No. 13224; (ii) a person or entity with whom Buyer is prohibited from dealing or otherwise engaging in any transaction by any anti-terrorism law; or (iii) a person or entity that is named as a "specially designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control at its official website, http://www.treas.gov/ofac/t11sdn.pdf or at any replacement website or other official publication of such list. "USA Patriot Act" is defined as the "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001" (Public Law 107 56), as may be amended from time to time.

8.5     Survival. Seller acknowledges that Buyer is relying upon the foregoing Seller warranties, representations, and covenants in reaching its decision to enter into this Agreement to acquire the Property. The foregoing warranties, representations, and covenants will be deemed made on the Execution Date of this Agreement and again on the Closing Date and will survive the Closing and the passage of title for a period of one (1) year.

## ARTICLE IX
## REPRESENTATIONS OF BUYER

Buyer represents to Seller that:

9.1     Execution and Delivery. The execution and delivery by Buyer of, and Buyer's performance under, this Agreement are within Buyer's powers and have been duly authorized by all requisite action, and the Person executing this Agreement on behalf of Buyer has the authority to do so.

9.2     Legal and Binding Obligation. This Agreement constitutes the legal, valid and binding obligation of Buyer enforceable in accordance with its terms.

9.3     No Breach. Performance of this Agreement will not result in any breach of, or constitute any default under, any agreement or other instrument to which Buyer is a Party or by which Buyer might be bound.

9.4     No Insolvency. Buyer: (a) is not in receivership or dissolution; (b) has not made any assignment for the benefit of creditors; (c) has not admitted in writing its inability to pay its debts as they mature; (d) has not been adjudicated a bankrupt; (e) has not filed a petition in voluntary bankruptcy, a petition or answer seeking reorganization, or an arrangement with creditors under the Federal Bankruptcy Law or any similar law or statute of the United States and any state; and (f) does not have any such petition described in clause (e) filed against Buyer.

9.5     Litigation. There is no adverse claim, litigation or administrative proceeding or investigation pending or, to Buyer's actual knowledge, threatened, that does or will affect

21

EXHIBIT 1, PAGE 73

the Buyer or the Buyer's ability to consummate the purchase of the Property as contemplated herein.

9.6 <u>Financial Capability</u>. Buyer is capable of performing its financial obligations set forth in this Agreement.

9.7 <u>Anti-Terrorism</u>. Buyer is not in violation of any anti-terrorism law and Buyer is not, as of the date hereof: (a) conducting any business or engaging in any transaction or dealing with any prohibited person, including the making or receiving of any contribution of funds, goods or services to or for the benefit of any prohibited person; (b) dealing in, or otherwise engaging in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224; or (c) engaging in or conspiring to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in, any anti-terrorism law. Neither Buyer nor any of its officers, directors, shareholders or members, as applicable, is a Prohibited Person. As used herein, "anti-terrorism law" is defined as any law relating to terrorism, anti-terrorism, money-laundering or anti-money laundering activities, including the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986, Executive Order No. 13224, and Title 3 of the USA Patriot Act, and any regulations promulgated under any of them. As used herein "Executive Order No. 13224" is defined as Executive Order No. 13224 on Terrorist Financing effective September 24, 2001, and relating to "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism," as may be amended from time to time.

**ARTICLE X**
**[INTENTIONALLY OMITTED]**

**ARTICLE XI**
**CONDEMNATION AND DESTRUCTION**

11.1 <u>Condemnation</u>.

11.1.1 In the event that any proceedings for the condemnation of the Property or any portion thereof are instituted by any Applicable Agency prior to Closing, then promptly upon a Party obtaining knowledge of the institution of the proceedings, that Party will notify the other Party in writing (the "***Condemnation Information Notice***") of the pendency of such proceedings.

11.1.2 If there is a total taking of the Property prior to Closing, this Agreement shall terminate pursuant to <u>Section 11.3</u> upon delivery of the Condemnation Information Notice.

11.1.3 If prior to Closing there is a partial taking of or the threatened partial taking of the Property pursuant to a resolution of intention to condemn by a Condemning Authority (as hereinafter defined), that would materially affect the use or development of the Property in the judgment of Buyer, then Buyer may elect to terminate this Agreement by written notice to Seller and Escrow Holder no later than fifteen (15) calendar days

EXHIBIT 1, PAGE 74

following the delivery of the Condemnation Information Notice (the "***Condemnation Termination Notice***"). If the Buyer fails to deliver the Condemnation Termination Notice to Seller and Escrow Holder within such fifteen (15)-day period, Buyer shall be deemed to have waived its right to terminate this Agreement pursuant to this <u>Section 11.1.3</u>.

11.1.4   Unless this Agreement is terminated pursuant to <u>Section 11.1.3</u> or another provision of this Agreement, then notwithstanding a partial taking of or the threatened partial taking of the Property pursuant to a resolution of intention to condemn by a Condemning Authority prior to Closing, Buyer shall consummate the purchase of the Property at Closing, but with the right to receive upon Closing the entire amount of the award paid by the Condemning Authority as a result of such partial taking of the Property.

11.1.5   As used in this Article: (a) the terms "condemnation," "condemn" or "taking" shall mean the exercise of, or intent to exercise, the power of eminent domain, expressed in writing, as well as the filing of any action or proceeding for such purpose, by a Condemning Authority, and shall include a voluntary sale by Seller to any such Condemning Authority, either under the threat of condemnation or while condemnation proceedings are pending; and (b) the term "Condemning Authority" means an Applicable Authority with the right or power of eminent domain. A condemnation shall be deemed to occur in point of time upon the actual physical taking of possession pursuant to the exercise of said power of eminent domain.

11.2    <u>Damage or Destruction</u>.

11.2.1   In the event that, prior to the Closing Date, the Property is damaged in whole or in part by fire or other casualty, Seller shall promptly notify Buyer in writing of such event (the "***Damage Information Notice***"). Subject to the provisions of <u>Section 11.2.2</u>, all risk or loss concerning the Property prior to the Closing shall be borne by Seller and all risk of loss concerning the Property subsequent to the Closing shall be borne by Buyer.

11.2.2   In the event that prior to the Closing Date the Property is damaged in whole or in part by fire or other casualty for which the Estate has insurance coverage, the following procedures shall apply:

(a)      A licensed contractor mutually acceptable to the Parties shall estimate in writing the cost of repairing the damage to the Property (the "***Estimate***").

(b)      If the Estimate to repair the damage to the Real Property is less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) (the "***Damage Repair Threshold***"), this Agreement shall remain in full force and effect and Seller shall not repair such damage prior to Closing, but, Buyer shall be entitled to receive at Closing (A) an assignment by Seller of any rights and proceeds under any casualty insurance policy maintained by Seller covering such damage

4818-3374-2076,v.2

*Rm*

EXHIBIT 1, PAGE 75

or loss to the Property, and (B) a credit against the Purchase Price in the amount of any deductible under such casualty insurance policy.

(c)     If the Estimate to repair the damage to the Property is equal to or greater than the Damage Repair Threshold, Buyer may elect to terminate this Agreement by written notice to Seller and Escrow Holder no later than fifteen (15) calendar days following the delivery of the Estimate (the "***Damage Termination Notice***"). If Buyer fails to deliver the Damage Termination Notice to Seller and Escrow Holder within such fifteen (15) day period, Buyer shall be deemed to have waived its right to terminate this Agreement pursuant to this Section. If Buyer does not terminate this Agreement pursuant to this Section 11.2.2(c), Buyer shall be entitled to receive at Closing (A) an assignment by Seller of any rights and proceeds under any casualty insurance policy maintained by Seller covering such damage or loss to the Property, and (B) a credit against the Purchase Price in the amount of any deductible under such casualty insurance policy.

11.2.3   In the event the casualty is not covered by insurance, then Seller may, at its option terminate this Agreement.

11.3     Termination. In the event that this Agreement is terminated pursuant to this Article XI, then: (a) this Agreement shall terminate as of the date of the termination of this Agreement under Section 11.1.2 , the delivery of the Condemnation Termination Notice or Damage Information Notice, or the delivery of a notice that the casualty is not covered by insurance, as applicable; (b) Escrow shall be cancelled; (c) neither Seller nor Buyer shall thereafter have any rights or obligations under this Agreement; (d) the Deposit, less the Independent Consideration, shall be returned to Buyer by Escrow Holder, together with any interest earned or accrued thereon; and (e) the Independent Consideration shall be delivered to Seller. Seller and Buyer agree to promptly execute any documents reasonably requested by the other Party or Escrow Holder to evidence the termination of this Agreement, the cancellation of Escrow and the return of the Deposit.

## ARTICLE XII
## COMMISSIONS

Buyer and Seller agree that payment of the 1.75% commission to Hilco Real Estate, LLC ("Hilco") and 1.75% commission to Onyx Asset Advisors, LLC ("Onyx") described in the Application by Trustee to Jointly Employ Onyx and Hilco [Dkt. No. 140] (the "Commission") shall be the sole responsibility of the Seller, which Commission shall be (a) reflected in the Closing Statement, and (b) paid directly from Escrow to Onyx and Hilco, respectively, by the Escrow Holder at Closing. Other than Hilco and Onyx and commissions specifically described above the parties represent that no broker, salesman or finder has been engaged by it in connection with any of the transactions contemplated by this Agreement or, to their knowledge, is in any way connected with any of such transactions. In the event of any other claim for broker's, consultant's or finder's fees or commissions in connection with the negotiation, execution or consummation of this Agreement, Buyer shall indemnify, save harmless and defend Seller from and against such claim if it shall be based upon any statement, representation or

24

agreement made by Buyer; and Seller shall indemnify, save harmless and defend Buyer from and against such claim if it shall be based upon any statement, representation or agreement made by Seller.

**ARTICLE XIII**
**REMEDIES**

13.1    <u>Seller's Remedy</u>. IN THE EVENT THAT THE CLOSING SHALL NOT OCCUR AS A RESULT OF A DEFAULT BY BUYER IN THE PERFORMANCE OF ITS OBLIGATIONS HEREUNDER THAT IS NOT CURED WITHIN TEN (10) CALENDAR DAYS FOLLOWING WRITTEN NOTICE TO BUYER, THEN SELLER, AS ITS SOLE AND EXCLUSIVE REMEDY, MAY TERMINATE THIS AGREEMENT BY NOTIFYING BUYER THEREOF AND RECEIVE OR RETAIN THE DEPOSIT AS LIQUIDATED DAMAGES. THE PARTIES AGREE THAT SELLER WILL SUFFER DAMAGES IN THE EVENT OF BUYER'S DEFAULT ON ITS OBLIGATIONS UNDER THIS AGREEMENT. ALTHOUGH THE AMOUNT OF SUCH DAMAGES IS DIFFICULT OR IMPOSSIBLE TO DETERMINE, THE PARTIES AGREE THAT THE AMOUNT OF THE DEPOSIT IS A REASONABLE ESTIMATE OF SELLER'S LOSS IN THE EVENT OF BUYER'S DEFAULT. ACCORDINGLY, SELLER SHALL ACCEPT AND RETAIN THE DEPOSIT AS ITS LIQUIDATED DAMAGES, AND SUCH LIQUIDATED DAMAGES SHALL CONSTITUTE SELLER'S SOLE AND EXCLUSIVE REMEDY. IN CONSIDERATION OF SELLER RECEIVING THE LIQUIDATED DAMAGES, SELLER WILL BE DEEMED TO HAVE WAIVED ALL OF ITS CLAIMS AGAINST BUYER FOR DAMAGES.

This is inclusive of Seller's costs, fees and attorneys' fees incurred in preparing this Agreement, seeking this Agreement's approval along with the Bidding Procedures.

SELLER AND BUYER ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE PROVISIONS OF THIS <u>SECTION 13.1</u> AND BY THEIR SIGNATURES IMMEDIATELY BELOW AGREE TO BE BOUND BY ITS TERMS.

_____          *(Please see next page for initials)*
Seller's Initials                          Buyer's Initials

It is expressly understood and agreed that the above liquidated damages do not limit Seller's indemnity rights under section 3.3 of this Agreement.

13.2    <u>Buyer's Remedy</u>. In the event that the Closing shall not occur as a result of a default by Seller in the performance of their obligations under this Agreement that is not cured within ten (10) Calendar Days following written notice to Seller, Buyer's sole remedy shall be the termination of this Agreement upon written notice to Seller, in which case: (a) this Agreement shall be terminated as of the date of delivery of the termination notice to Seller; (b) neither Seller nor Buyer shall thereafter have any rights or obligations under this Agreement; (c) Escrow shall be cancelled; (d) the Deposit, less the Independent Consideration, shall be returned to Buyer, together with any interest earned or accrued thereon; (e) the Independent Consideration shall be delivered to Seller. Seller and Buyer

4818-3374-2076,v.2

EXHIBIT 1, PAGE 77

agreement made by Buyer; and Seller shall indemnify, save harmless and defend Buyer from and against such claim if it shall be based upon any statement, representation or agreement made by Seller.

## ARTICLE XIII
## REMEDIES

13.1    Seller's Remedy. IN THE EVENT THAT THE CLOSING SHALL NOT OCCUR AS A RESULT OF A DEFAULT BY BUYER IN THE PERFORMANCE OF ITS OBLIGATIONS HEREUNDER THAT IS NOT CURED WITHIN TEN (10) CALENDAR DAYS FOLLOWING WRITTEN NOTICE TO BUYER, THEN SELLER, AS ITS SOLE AND EXCLUSIVE REMEDY, MAY TERMINATE THIS AGREEMENT BY NOTIFYING BUYER THEREOF AND RECEIVE OR RETAIN THE DEPOSIT AS LIQUIDATED DAMAGES. THE PARTIES AGREE THAT SELLER WILL SUFFER DAMAGES IN THE EVENT OF BUYER'S DEFAULT ON ITS OBLIGATIONS UNDER THIS AGREEMENT. ALTHOUGH THE AMOUNT OF SUCH DAMAGES IS DIFFICULT OR IMPOSSIBLE TO DETERMINE, THE PARTIES AGREE THAT THE AMOUNT OF THE DEPOSIT IS A REASONABLE ESTIMATE OF SELLER'S LOSS IN THE EVENT OF BUYER'S DEFAULT. ACCORDINGLY, SELLER SHALL ACCEPT AND RETAIN THE DEPOSIT AS ITS LIQUIDATED DAMAGES, AND SUCH LIQUIDATED DAMAGES SHALL CONSTITUTE SELLER'S SOLE AND EXCLUSIVE REMEDY. IN CONSIDERATION OF SELLER RECEIVING THE LIQUIDATED DAMAGES, SELLER WILL BE DEEMED TO HAVE WAIVED ALL OF ITS CLAIMS AGAINST BUYER FOR DAMAGES.

This is inclusive of Seller's costs, fees and attorneys' fees incurred in preparing this Agreement, seeking this Agreement's approval along with the Bidding Procedures.

SELLER AND BUYER ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE PROVISIONS OF THIS SECTION 13.1 AND BY THEIR SIGNATURES IMMEDIATELY BELOW AGREE TO BE BOUND BY ITS TERMS.

*(Please see previous page for initials)*

_____         _____
Seller's Initials                              Buyer's Initials

It is expressly understood and agreed that the above liquidated damages do not limit Seller's indemnity rights under section 3.3 of this Agreement.

13.2    Buyer's Remedy. In the event that the Closing shall not occur as a result of a default by Seller in the performance of their obligations under this Agreement that is not cured within ten (10) Calendar Days following written notice to Seller, Buyer's sole remedy shall be the termination of this Agreement upon written notice to Seller, in which case: (a) this Agreement shall be terminated as of the date of delivery of the termination notice to Seller; (b) neither Seller nor Buyer shall thereafter have any rights or obligations under this Agreement; (c) Escrow shall be cancelled; (d) the Deposit, less the Independent Consideration, shall be returned to Buyer, together with any interest earned or accrued thereon; (e) the Independent Consideration shall be delivered to Seller. Seller and Buyer

25

agree to promptly execute any documents reasonably requested by the other party or Escrow Holder to evidence the termination of this Agreement and the cancellation of Escrow and the return of the Deposit to Buyer.

This is inclusive of Buyer's costs, fees and attorneys' fees incurred in preparing this Agreement, its Due Diligence costs, including the Drilling and Water Investigation, supporting this Agreement's approval along with the Bidding Procedures.

## ARTICLE XIV
## JURISDICTION; JURY WAIVER; AND JUDICIAL REFERENCE

14.1    Governing Law, Jurisdiction, Venue. Seller and Buyer acknowledge and agree that: (a) this Agreement shall be construed in accordance with, and shall be governed by, the laws of the State of California as applied by the United States Bankruptcy Court for the Central District of California. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Santa Ana Division, shall be the exclusive forum to resolve such dispute.

14.2    Jury Waiver. As a material inducement to Seller, and Buyer entering into and being bound by this Agreement, Seller and Buyer each UNCONDITIONALLY WAIVE ITS RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED ON, ARISING FROM OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION of any type brought by Seller or Buyer against the other party, whether with respect to contract claims, tort claims or otherwise. This waiver shall apply to any future amendments, renewals, supplements or modifications to this Agreement. This section constitutes a written consent to waiver of trial by jury pursuant to the provisions of California Code of Civil Procedure section 631.

## ARTICLE XV
## GENERAL PROVISIONS

15.1    Notices.

15.1.1  All notices, statements, demands, consents and other communications (collectively, the "***Notices***") required or permitted to be given by any Party to another Party pursuant to this Agreement or pursuant to any applicable law or requirement of public authority shall be properly given only if the Notice is: (a) made in writing (whether or not so stated elsewhere in this Agreement); (b) given by one of the methods prescribed in Section 15.2; and (c) sent to the Party to which it is addressed at the address set forth below or at such other address as such Party may hereafter specify by at least five (5) calendar days' prior written notice:

**If to Seller:**

Richard Marshack, Trustee

4818-3374-2076,v.2

EXHIBIT 1, PAGE 79

Kristine Thagard, Esq.
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620
Ph: (949) 333-7777
Email:  rmarshack@marshackhays.com
kthagard@marshackhays.com

**If to Buyer**

Mr. Steven Riboli
Mr. Anthony Riboli
San Antonio Winery
737 Lamar Street
Los Angeles, CA 90031
Ph: (323) 330-8720
Email: steve.riboli@riboliwines.com
anthony@riboliwines.com

with a copy to:

Victor A. Sahn, Esq.
Sulmeyer Kupetz
333 South Grand Avenue, 34th Floor
Los Angeles, CA 90071
Ph: (213) 626 2311
Email: vsahn@sulmeyerlaw.com

**If to Real Estate Brokers:**

K. Kevin Otus
Onyx Asset Advisors, LLC
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Ph: (415) 799-3299
Email: kotus@thinkonyx.com

Hilco Real Estate, LLC
5 Revere Drive, Suite 320
Northbrook, Illinois 60062
Ph: (847) 418 2703
Email: Jazuse@hilcoglobal.com

Hilco Global
5 Revere Drive, Suite 206
Northbrook, Illinois 60062

27

EXHIBIT 1, PAGE 80

Ph: (847) 504-2462
Email: sbaker@hilcoglobal.com


**If to Title Company:**

Blake Uradomo
Fidelity National Title
1300 Dove Street, 3rd Floor
Ph: (949) 788-2800
Fax: (949) 341-0251
Email: lirot@firstam.com

**If to Escrow Holder**:

A & A Escrow Services, Inc
415 N. Crescent Drive, Suite 320,
Beverly Hills, CA 90210
Antonia Delgado
Ph: 310) 550-6055 X126
Email: antonia@aaescrow.com

15.2    Notices may be either: (a) delivered by hand; (b) delivered by a nationally recognized overnight courier which maintains evidence of receipt; or (c) sent by e mail or facsimile transmission with a confirmation. Notices shall be effective on the date of receipt. If any Notice is not received or cannot be delivered due to a change in address of the receiving Party, of which notice was not properly given to the sending Party, or due to a refusal to accept by the receiving Party, such Notice shall be effective on the date delivery is attempted.

15.3    Assignment. This Agreement is not assignable; however, in the event of any assignment (whether authorized or unauthorized), this Agreement shall be binding upon and inure to the benefit of the successors and assigns of Seller and Buyer.

15.4    Attorneys' Fees and Legal Expenses. Should any Party hereto institute any action or proceeding in court to enforce or appeal any decision, the prevailing Party shall be entitled to receive from the losing Party all reasonable attorneys' fees and costs in connection with said proceeding. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be calculated to fully reimburse all attorneys' fees reasonably incurred. This is subject to the provisions of paragraph 13.1 and 13.2 above. Additionally, in the event of a dispute over the liquidated damages' deposit, the attorneys' fees and costs shall be limited to not more than $25,000 for either side.

15.5    No Buyer Contingencies. Other than as specifically provided in this Agreement, Buyer has NO CONTINGENCIES in this transaction, including but not limited to the contingency of obtaining financing & appraisal, inspections, etc. Buyer is responsible

4818-3374-2076,v.2

EXHIBIT 1, PAGE 81

for conducting whatever inspections or appraisals, or obtaining whatever approvals it needs to complete the transaction, prior to entering into the Agreement, or prior to the expiration of the Due Diligence Period. Once the Due Diligence Period expires the Deposit is refundable only if the Bankruptcy Court accepts an overbid, or refuses to approve the Agreement for reasons not attributable to Buyer.

15.6    Reporting of Foreign Investment. Seller and Buyer agree: (a) to comply with any and all reporting requirements applicable to the transaction that is the subject of this Agreement which are set forth in any law, statute, ordinance, rule, regulation, order or determination of any Applicable Agency, including, but not limited to, the Foreign Investment in Real Property Tax Act of 1980, the Tax Reform Act of 1984 and California Revenue and Taxation Code section 18662; and (b) upon request of the other Party, to furnish that Party with evidence of such compliance.

15.7    Time Calculations. Should the calculation of any of the various time periods provided for herein result in an obligation becoming due on a Saturday, Sunday or legal holiday, then the due date of such obligation or scheduled time of occurrence of such event shall be delayed until the next Business Day.

15.8    Entire Agreement. This Agreement embodies the entire agreement between the Parties hereto and supersedes any prior understandings or written or oral agreements between the Parties concerning the Property.

15.9    Amendments. This Agreement may be varied, modified, amended or altered only by a written agreement signed by Seller and Buyer. No waiver by any Party of any term, covenant or provision of this Agreement, whether verbally or by course of conduct, shall be effective unless such waiver is in writing and signed by the Party waiving such term, covenant or provision.

15.10    Severability. If any portion of this Agreement is held to be unenforceable by a court of competent jurisdiction, the remainder of this Agreement shall remain in full force and effect.

15.11    Further Assurances. Seller and Buyer agree to execute all documents and instruments reasonably required in order to consummate the purchase and sale herein contemplated.

15.12    Counterpart Execution. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.

15.13    Electronic Signatures. The Parties agree that executed counterparts of this Agreement signed by one Party to this Agreement and sent by facsimile, email or other electronic transmission to the other Party to this Agreement: (a) shall have the same effect as an original signed counterpart of this Agreement; and (b) shall be conclusive proof, admissible in judicial proceedings, of such Party's execution of this Agreement.

4818-3374-2076,v.2

EXHIBIT 1, PAGE 82

15.14   _Gender and Number_. Within this Agreement, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural, unless the context otherwise requires.

15.15   _Section Headings_. The section headings contained in this Agreement are for convenience only and shall in no way enlarge or limit the scope or meaning of the various and several sections hereof.

15.16   _Exhibits and Schedules Incorporated by Reference_. All exhibits and schedules attached to this Agreement are incorporated into this Agreement by reference.

15.17   _Trustee's Capacity and Liability_. Buyer acknowledges that in selling the Property, Richard A. Marshack, the court appointed and acting Chapter 7 Trustee for the Estate, is acting in his official capacity only. No personal liability shall be sought or enforced against Trustee or any of his professionals (including Marshack Hays LLP, Onyx or Hilco) with regard to the Agreement, the sale of the Property, the physical condition of the Property, or any other matter. In the event that Seller fails or refuses to complete the transaction for any reason, the limit of Seller's liability is the return of the Deposit less the independent consideration. Prior to and after the Closing, the United States Bankruptcy Court shall have and retain the sole and exclusive jurisdiction over the Property and the Agreement, and all disputes arising before and after Closing shall be resolved in said Court. No fees shall be paid, and no costs shall be reimbursed unless and until ordered by the Bankruptcy Court under U.S.C. Section 330 and/or 331. Any and all such fees and costs shall be the sole and exclusive liability of and claim against the Estate, and the Trustee shall not have any personal liability.

*[SIGNATURES ARE ON THE FOLLOWING PAGE]*

4818-3374-2076,v.2

EXHIBIT 1, PAGE 83

IN WITNESS WHEREOF, Assignor and Assignee have executed this Agreement as of date first written above.

"Seller"                                                           "Buyer"

Northern Holding, LLC, a California limited          Riboli Paso Robles, LLC, a
liability company,                                              California limited liability
                                                                      company

By: _____                      By: _(Please see next page for signature)_
        Richard A. Marshack, in his
        capacity as Chapter 7 Trustee for         Its: _____
        the Bankruptcy Estate of
        NORTHERN HOLDING, LLC

SIGNATURE PAGE FOR
AGREEMENT OF PURCHASE
AND SALE
AND ESCROW INSTRUCTIONS

EXHIBIT 1, PAGE 84

IN WITNESS WHEREOF, Assignor and Assignee have executed this Agreement as of date first written above.

"Seller"                                          "Buyer"

Northern Holding, LLC, a California limited        Riboli Paso Robles, LLC, a
liability company,                                 California limited liability
                                                   company

By:  *(Please see previous page for signature)*    By:  _____
     Richard A. Marshack, in his
     capacity as Chapter 7 Trustee for             Its:  _____
     the Bankruptcy Estate of
     NORTHERN HOLDING, LLC

SIGNATURE PAGE FOR
AGREEMENT OF PURCHASE
AND SALE
AND ESCROW INSTRUCTIONS

## SCHEDULE 1.1.6

NO SERVICE CONTRACTS ARE BEING ASSIGNED

EXHIBIT 1, PAGE 86

**SCHEDULE 3.6**

| FILE | TYPE | FOLDER |
|------|------|--------|
| Appraisal-1172 San Marcos Road-Paso Robles CA 3 17 20 | PDF | Appraisal |
| Broker Opinion of Value 1172 San Marcos Road & 3280 Live Oak Road | PDF | Appraisal |
| Farm Credit Equipment Evaluation Release | PDF | Appraisal |
| NORTHEN HOLDINGS FARM CREDIT APPRAISAL Bankr.C.D.Cal._8-20-bk-13014 | PDF | Appraisal |
| Bio of Steven Jones | PDF | Bios |
| Northern Holdings_Rabbit Ridge Winery_Onyx Asset Advisors Offering | PDF | Brochure |
| NHC Balance Sheet 2021 | Excel | Financials |
| NHC Financials 2021 | Excel | Financials |
| Northern Holding Projected Cash Flows 2020 | Excel | Financials |
| RR Projections 10-2020 | Excel | Financials |
| Land Use | Excel | Land Use |
| Former Rabbit Ridge Tax Map | PDF | Tax Map |
| Live Oak Tax Map | PDF | Tax Map |
| Texas Road Winery Tax Map | PDF | Tax Map |
| Grape Varietal List - San Marcos | PDF | Varietals by Property |
| Grape Varietal List - Texas Road | PDF | Varietals by Property |
| Smoke Taint - Due Diligence | PDF | Vineyard - Bios |
| Vineyard Biography Russell Family  Vineyards Syrah Field 1 Block 19 East | PDF | Vineyard - Bios |
| Vineyard Biography Russell Family  Vineyards Syrah Field 1 Block 14 Top | PDF | Vineyard - Bios |
| Vineyard Biography Russell Family  Vineyards Syrah Field 1 Block 15 Top | PDF | Vineyard - Bios |
| Vineyard Biography Russell Family  Vineyards Syrah Field 1 Block 17 Top | PDF | Vineyard - Bios |
| Copy of Rabbit Ridge Winery Well  12-10-19 | PDF | Water & Well |
| Tank Chart 1172 San Marcos Rd | PDF | Water & Well |

# EXHIBIT A

## LEGAL
## DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PASO ROBLES, COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1A:

AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1B:

AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHWEST* 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2 INCH REBAR CAPPED RCE 14994 IN BOOK 1 PAGE 159 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°3020" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.
APN: 026-342-039

## END OF LEGAL DESCRIPTION
*THERE IS AN ISSUE THAT THIS SHOULD BE NORTHEAST

EXHIBIT A TO
AGREEMENT OF PURCHASE
AND SALE
AND ESCROW INSTRUCTIONS

EXHIBIT A TO

EXHIBIT 1, PAGE 89

# EXHIBIT B

FORM OF GRANT DEED

EXHIBIT 1, PAGE 90

FORM OF GRANT DEED

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

MAIL TAX STATEMENTS TO:

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

The undersigned Grantor declares that the **DOCUMENTARY TRANSFER TAX IS**:
$_____ **City** $_____ **County**
_____ computed on the full value of the interest of property conveyed, or
_____ computed on the full value less the value of liens or encumbrances remaining thereon at
the time of sale.

____ OR transfer is EXEMPT from tax for the following reason:

_____        _____
Signature of declarant or agent determining tax        Firm Name

## GRANT DEED

FOR A VALUABLE CONSIDERATION, RECEIPT OF WHICH IS HEREBY
ACKNOWLEDGED, RICHARD A. MARSHACK, in his capacity as Chapter 7 Trustee for the
Bankruptcy Estate of NORTHERN HOLDING, LLC, bankruptcy case number No. 8:20-bk-
13014-MW, currently pending in the United States Bankruptcy Court for the Central District of
California, Santa Ana Division (**"Grantor"**) hereby GRANTS to Riboli Paso Robles, LLC, a
California limited liability company, the real property located in the in the unincorporated area of
the County of San Luis Obispo, State of California, commonly known by the street address of
2380 Live Oak Road, Paso Robles, CA.

This Grant Deed is made and delivered, and title to the aforesaid real property is conveyed
(i) subject to all matters of which the Grantee has notice, whether actual or constructive, and
(ii) without warranty or covenants of any kind whatsoever, whether express or implied,
contractual or statutory.

*[SIGNATURES ARE ON THE NEXT PAGE]*

2

**EXHIBIT 1, PAGE 91**

NORTHERN HOLDING, LLC

By: _____

Richard A. Marshack, Chapter 7
Trustee for the Bankruptcy Estate of
Northern Holding, LLC

3

EXHIBIT 1, PAGE 92

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss.
COUNTY OF _____ )

On _____, 2021, before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____  (Seal of Notary)_____

4

EXHIBIT 1, PAGE 93

**Attachment 1**

## LEGAL
## DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PASO ROBLES, COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1A:

AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1B:

AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2 INCH REBAR CAPPED RCE 14994 IN BOOK 1 PAGE 159 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°3020" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.
APN: 026-342-039

**END OF LEGAL DESCRIPTION**

THERE IS AN ISSUE THAT THIS SHOULD BE NORTHEAST

4818-3374-2076,v.2

EXHIBIT 1, PAGE 94

# EXHIBIT C

FORM OF BILL OF SALE

EXHIBIT 1, PAGE 95

BILL OF SALE

This Bill of Sale (the "**Bill of Sale**") is executed on this ___ day of _____, 2021, by Richard A. Marshack, as Chapter 7 Trustee ("Trustee") for the Estate of Northern Holding, LLC ("Estate,") bankruptcy case number No. 8:20-bk-13014-MW ("Bankruptcy Case"), currently pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("**Seller**"), with reference to the following facts:

## R E C I T A L S

A.      Seller and Riboli Paso Robles, LLC, a California limited liability company, as the buyer (the "Buyer") are parties to a written Agreement of Purchase and Sale and Escrow Instructions, dated as of _____, 2021 (the "**Purchase Agreement**"), for the purchase and sale of the real property and improvements located in the unincorporated area of the County of San Luis Obispo, State of California, commonly known by the street address of 2380 Live Oak Road, Paso Robles, CA (the "**Real Property**").

B.      Pursuant to Sections 6.1.1(b) of the Purchase Agreement, Seller is required to execute and deliver this Bill of Sale at Closing, by which Seller assigns and transfers to Buyer all right, title and interest of Seller, if any, and without any warranty, in and to any included Tangible Personal Property (as defined in the Purchase Agreement) as of the Closing Date (as defined in Section 5.4 of the Purchase Agreement).

NOW, THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the adequacy, receipt and sufficiency of which is hereby acknowledged, Seller hereby agrees as follows:

## A G R E E M E N T

1.      Recitals. Each and all of the foregoing recitals of background facts are incorporated herein by this reference as though set forth herein verbatim.

2.      Definition of Terms Used Herein. The capitalized terms in this Bill of Sale shall have the meanings set forth in the Purchase Agreement unless otherwise expressly indicated herein.

3.      Sale and Assignment. Seller hereby sells, assigns, transfers and conveys to Buyer, all right, title and interest of Seller, if any, and without any warranty, in and to the included Tangible Personal Property set forth on **Schedule I** attached hereto.

4.      Contingent Upon Recordation of Deed. Notwithstanding anything to the contrary contained herein, this Bill of Sale shall be effective only upon the recordation in the Official Records of San Luis Obispo County of the Grant Deed transferring title to the Real Property from Seller to Buyer.

5.      Successors and Assigns. This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

BILL OF SALE
2

6.      Applicable Law. Seller and Buyer acknowledge and agree that: (a) this Bill of Sale shall be construed in accordance with, and shall be governed by, the laws of the State of California as applied by the United States Bankruptcy Court for the Central District of California. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Santa Ana Division, shall be the exclusive forum to resolve such dispute.

[SIGNATURES ARE ON THE FOLLOWING PAGE]

EXHIBIT 1, PAGE 97

IN WITNESS WHEREOF, Seller has executed this Bill of Sale as of date first written above.

"Seller"

NORTHERN HOLDING, LLC

By:   _____
     Richard A. Marshack, Chapter 7
     Trustee for the Bankruptcy Estate of
     Northern Holding, LLC

SIGNATURE PAGE TO
BILL OF SALE

EXHIBIT 1, PAGE 98

## SCHEDULE I

NORTHERN HOLDINGS, LLC

PERSONAL PROPERTY ON-SITE

9-6-21

NONE

THE CROPS CURRENTLY ON THE VINE WILL BE HARVESTED BEFORE CLOSING
AND ARE AND WILL REMAIN THE PROPERTY OF SELLER

EXHIBIT C TO
AGREEMENT OF PURCHASE
AND SALE
AND ESCROW INSTRUCTIONS

EXHIBIT 1, PAGE 99

# EXHIBIT D

FORM OF INTANGIBLE ASSIGNMENT

## ASSIGNMENT AGREEMENT

This Assignment Agreement (the "**Agreement**") is entered into this __ day of _____, 2021, by and between Richard A. Marshack, as Chapter 7 Trustee ("Trustee") for the Estate of Northern Holding, LLC, bankruptcy case number . 8:20-bk-13014-MW, currently pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("**Assignor**") and Riboli Paso Robles, LLC, a California limited liability company, ("**Assignee**"), with reference to the following facts:

## R E C I T A L S

A.      Assignor, as the Seller and Assignee, as the Buyer, are parties to a written Agreement for Purchase and Sale and Escrow Instructions, dated as of _____, 2021 (the "**Purchase Agreement**"), for the purchase and sale of the real property and improvements located in the unincorporated area of the County of San Luis Obispo, State of California, commonly known by the street address of 2380 Live Oak Road, Paso Robles, CA (the "**Real Property**").

B.      Pursuant to Sections 6.1.1(c) and 6.1.2(a) of the Purchase Agreement, Assignor and Assignee desire to enter into an agreement for the assignment by Assignor of all rights, title and interest of Assignor, if any, and without any warranty, in and rights to the: (i) included Intangible Property and (ii) included Service Contracts pertaining to the Real Property and Tangible Personal Property.

NOW, THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the adequacy, receipt and sufficiency of which is hereby acknowledged, Assignor and Assignee do hereby agree as follows:

## A G R E E M E N T

1.      Recitals. Each and all of the foregoing recitals of background facts are incorporated herein by this reference as though set forth herein verbatim.

2.      Definition of Terms Used Herein. The capitalized terms in this Agreement shall have the meanings set forth in the Purchase Agreement unless otherwise expressly indicated herein.

3.      Assignment. Assignor hereby assigns, transfers and conveys to Assignee, as of the Closing Date, all rights, title and interest of Assignor, if any, and without any warranty, in and to:(i) included Intangible Property and (iii) included Service Contracts pertaining to the Real Property and Tangible Personal Property, if any.

4.      Contingent Upon Recordation of Deed. Notwithstanding anything to the contrary contained herein, this Agreement shall be effective only upon recordation in the Official Records of San Luis Obispo County of the Grant Deed transferring title to the Real Property from Assignor to Assignee.

EXHIBIT 1, PAGE 101

5.     No Waiver. This Agreement is entered into without waiver or modification of the respective rights and obligations of Assignee and Assignor under the Purchase Agreement.

6.     Counterpart Execution. To facilitate execution, this Agreement may be executed in as many counterparts as may be required. It shall not be necessary that signatures of all Persons (as defined in the Purchase Agreement) required to bind any Party (as defined in the Purchase Agreement) appear in each counterpart, but it shall be sufficient that the signature of all Persons required to bind any Party appear on one or more of such counterparts. All counterparts shall collectively constitute a single agreement.

7.     Electronic Signatures. The Parties agree that executed counterparts of this Agreement signed by one Party to this Agreement and sent by facsimile, email or other electronic transmission to the other Party to this Agreement: (a) shall have the same effect as an original signed counterpart of this Agreement; and (b) shall be conclusive proof, admissible in judicial proceedings, of such Party's execution of this Agreement.

8.     Successors and Assigns. This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

9.     Applicable Law. Assignor and Assignee acknowledge and agree that: (a) this Assignment Agreement shall be construed in accordance with, and shall be governed by, the laws of the State of California as applied by the United States Bankruptcy Court for the Central District of California. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Santa Ana Division, shall be the exclusive forum to resolve such dispute.

[SIGNATURES ARE ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, Assignor and Assignee have executed this Agreement as of date first written above.

"Assignor"                                              "Assignee"

Northern Holding, LLC, a California limited          Riboli Paso Robles, LLC, a
liability company,                                   California limited liability
                                                     company

_____          By: _____

Richard A. Marshack, in his                Its: _____
capacity as Chapter 7 Trustee for
the Bankruptcy Estate of
NORTHERN HOLDING, LLC

2

4818-3374-2076,v.2

**EXHIBIT 2**

# FIRST AMENDMENT TO AGREEMENT OF PURCHASE AND SALE

## AND ESCROW INSTRUCTIONS

### Among

### Richard A. Marshack, as Chapter 7 Trustee for the Estate of Northern Holding, LLC, as Seller

### And

### Riboli Paso Robles, LLC as Buyer

### Dated for reference purposes only: October 22, 2021

EXHIBIT 2, PAGE 104

## AMENDMENT TO AGREEMENT OF PURCHASE AND SALE
## AND ESCROW INSTRUCTIONS

THIS FIRST AMENDMENT TO AGREEMENT OF PURCHASE AND SALE AND ESCROW INSTRUCTIONS, dated October 22, 2021 (this "***Amendment***") to the Agreement of Purchase and Sale and Escrow Instructions, dated for reference purposes only September 28, 2021 (the "***Purchase Agreement***"), is made, executed and entered into by and among Richard A. Marshack, as Chapter 7 Trustee ("Trustee") for the Estate of Northern Holding, LLC ("Estate"), bankruptcy case number No. 8:20-bk-13014-MW ("Bankruptcy Case") currently pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court"), as the seller (the "Seller"), and Riboli Paso Robles, LLC, a California limited liability company, as the buyer (the "Buyer"). Seller and Buyer are sometimes referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, subject to the terms and conditions set forth in this Amendment, and pursuant to the Purchase Agreement, the Parties desire to amend certain terms of the Purchase Agreement by entering into this Amendment.

NOW, THEREFORE, in consideration of the aforesaid premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, the Parties hereby agree as set forth below:

1.1     Definitions.  Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Purchase Agreement unless otherwise indicated.

1.2     Purchase Agreement Section Numbering Issue and Clarification.  It is acknowledged that in the preparation of the final execution copy of the Purchase Agreement there was an incorrect renumbering of the Section headings in Article III necessitating the amendments provided in Sections 1.3 and 1.4 of this Amendment below. The final executed Purchase Agreement contains two Section 3.5's. Additionally another Section heading was eliminated. The result of this incorrect renumbering was certain Section references being incorrect.

1.3     Clarification of Sections 3.5:

Section 3.5 of the Purchase Agreement entitled "Statutory Disclosure Requirements" commencing on page 6 shall be known as Section 3.5a.

Section 3.5 of the Purchase Agreement entitled "AS- IS" commencing on page 7 shall be known as Section 3.5b.

1.4     Correction of References:

The reference in the second line of the first sentence of Section 3.6 "Buyers Acknowledgment" shall be to Section 3.5b (not 3.7). Therefore, the first sentence of Section 3.6 shall commence "Without in any way limiting the generality of the provisions of Section 3.5b…"

2

EXHIBIT 2, PAGE 105

The references in last line of Section 3.8 "Intangibles" shall be to Sections 3.5b, 3.6, 3.7 and 3.8 (not 3.7, 3.8, 3.9 and 3.10). Therefore, the last line of Section 3.8 shall read: The provisions of Sections 3.5b, 3.6, 3.7 and 3.8 shall survive the Closing Date.

1.5     Maintenance of Land ("Land Maintenance").    Trustee is informed and believes Lender is retaining an agricultural manager to maintain the Property. Trustee shall use his best efforts to encourage Lender to work with Buyer to determine the best procedure to maintain the Property until Closing.

1.6     Title. The Title Company may be changed to First American Title Insurance Company, Lawyers Title Company or Stewart Title Company at the election of Seller. The Parties may also mutually agree to use another title company.

1.7     Outside Closing Date.  The Outside Closing Date in Section 5.5 is extended to March 15, 2022. The Parties acknowledge that Lender intends to foreclose thereafter if the sale has not closed on or before March 15, 2022.

1.8     Entire Agreement.  This Amendment embodies the entire amendment between the Parties hereto and supersedes any prior understandings or written or oral agreements between the Parties concerning the Amendment of the Purchase Agreement.

1.9     Amendments.  This Amendment may be varied, modified, amended or altered only by a written agreement signed by Seller and Buyer.  No waiver by any Party of any term, covenant or provision of this Amendment, whether verbally or by course of conduct, shall be effective unless such waiver is in writing and signed by the Party waiving such term, covenant or provision.

1.10     Severability.  If any portion of this Amendment is held to be unenforceable by a court of competent jurisdiction, the remainder of this Amendment shall remain in full force and effect.

1.11     Further Assurances.  Seller and Buyer agree to execute all documents and instruments reasonably required in order to consummate the purchase and sale herein contemplated.

1.12     Counterpart Execution.  This Amendment may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.

1.13     Electronic Signatures.   The Parties agree that executed counterparts of this Amendment signed by one Party to this Amendment and sent by facsimile, email or other electronic transmission to the other Party to this Amendment:  (a) shall have the same effect as an original signed counterpart of this Amendment; and (b) shall be conclusive proof, admissible in judicial proceedings, of such Party's execution of this Amendment.

/ / /

/ / /

3

EXHIBIT 2, PAGE 106

1.14    <u>Trustee's Capacity and Liability</u>. Buyer acknowledges that in selling the Property, Richard A. Marshack, the court appointed and acting Chapter 7 Trustee for the Estate, is acting in his official capacity only. No personal liability shall be sought or enforced against Trustee or any of his professionals (including Marshack Hays LLP, Onyx or Hilco) with regard to this Amendment, or any other matter.

IN WITNESS WHEREOF, Buyer and Seller have executed this Amendment as of date first written above.

"Seller"                                                                    "Buyer"

Northern Holding, LLC, a California limited                Riboli Paso Robles, LLC, a
liability company,                                                   California limited liability
                                                                            company

By:  _____          By: _____

     Richard A. Marshack, in his                         Its: _____
     capacity as Chapter 7 Trustee for
     the Bankruptcy Estate of
     NORTHERN HOLDING, LLC

4

**EXHIBIT 3**

**Fidelity National Title Company**
1300 Dove Street, 3rd Floor, Newport Beach, CA 92660
Phone: (949) 788-2800  •  Fax: (949) 341-0251

Issuing Policies of Fidelity National Title Insurance Company

---

Title Officer: **Blake Uradomo**                    ORDER NO.: **00354793-997-OC1-245**
Phone: **(949) 788-2855**
Fax: **(949) 341-0251**                              LOAN NO.:
Email: **Blake.Uradomo@fnf.com**

Marshack Hays LLP
..., ...
..., CA 00000

ATTN:        Pam Kraus
YOUR REF:

PROPERTY:    **2380 Live Oak, , CA**

---

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, **Fidelity National Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a Florida Corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Countersigned by:

Authorized Signature

---

EXHIBIT 3, PAGE 108

**Fidelity National Title Company**
1300 Dove Street, 3rd Floor, Newport Beach, CA 92660
Phone: (949) 788-2800  ●  Fax: (949) 341-0251

# PRELIMINARY REPORT

---

**EFFECTIVE DATE:**          **October 15, 2021 at 7:30 a.m.**

**ORDER NO.: 00354793-997-OC1-245**

The form of policy or policies of title insurance contemplated by this report is:

**ALTA Homeowner's Policy of Title Insurance (12-2-13)**
**ALTA Extended Loan Policy (6-17-06)**

1.     THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED
BY THIS REPORT IS:

     **A Fee as to Parcel(s) 1; Easement(s) more fully described below as to Parcel(s) 1A and 1B**

2.     TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

     **Northern Holding, LLC, subject to proceedings pending in the bankruptcy court where a petition for relief
was filed.**

| | |
|---|---|
| **Name of Debtor:** | **Northern Holding, LLC** |
| **Date of Filing:** | **10/28/2020** |
| **U.S. District Court:** | **Central District of California** |
| **Case No:** | **8:20-bk-13014-MW** |

     **Also subject to Item No. 13, as shown on schedule "B" herein**

3.     THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

     **See Exhibit A attached hereto and made a part hereof.**

EXHIBIT 3, PAGE 109

PRELIMINARY REPORT                                                    Fidelity National Title Company
YOUR REFERENCE:                                                    ORDER NO.:  00354793-997-OC1-245

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1A:

AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1B:

AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHEAST ¼ AND THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2 INCH REBAR CAPPED RCE 14994 IN BOOK 1 PAGE 159 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°30'20" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

APN:  **026-342-039**

PRELIMINARY REPORT                                                    Fidelity National Title Company
YOUR REFERENCE:                                            ORDER NO.:  00354793-997-OC1-245

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1. Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

   | | |
   |---|---|
   | Code Area: | 104-009 |
   | Tax Identification No.: | 026-342-039 |
   | Fiscal Year: | 2021-2022 |
   | 1st Installment: | $18,755.63, Open |
   | 2nd Installment: | $18,755.63, Open |
   | Exemption: | $0.00 |
   | Land: | $739,755.00 |
   | Improvements: | $2,721,716.00 |
   | Personal Property: | $0.00 |

2. Supplemental assessment for 2020-2021:

   | | |
   |---|---|
   | 1st Installment | $2,828.58, Open |
   | Must be Paid By: | December 10, 2021 |
   | 2nd Installment | $2,828.58, Open |
   | Must be Paid By: | April 11, 2022 |

3. Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2020.

   | | |
   |---|---|
   | APN No.: | 026-342-039 |
   | Default No. | F4108 |
   | Default Date: | June 30, 2021 |

   Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

   | | |
   |---|---|
   | Amount: | $31,646.94, by October 31, 2021 |
   | Amount: | $32,055.71, by November 30, 2021 |

4. The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

5. An instrument entitled Covenant and Agreement

   | | |
   |---|---|
   | Executed by: | Robert S. Dahl and Carol J. Dahl |
   | In favor of: | County of San Luis Obispo |
   | Recording Date: | October 15, 1986 |
   | Recording No: | 1986-67132, Official Records |

   Which among other things provides: As provided therein

   Reference is hereby made to said document for full particulars.

   This covenant and agreement provides that it shall be binding upon any future owners, encumbrancers, their successors or assigns, and shall continue in effect until the advisory agency approves termination.

PRELIMINARY REPORT                                                                        Fidelity National Title Company
YOUR REFERENCE:                                                              ORDER NO.:  00354793-997-OC1-245

## EXCEPTIONS
### (Continued)

6.      Matters contained in that certain document

|  |  |
|---|---|
| Entitled: | Covenants and Restrictions |
| Dated: | February 24, 1987 |
| Executed by: | Robert S. Dahl and Carol J. Dahl |
| Recording Date: | February 26, 1987 |
| Recording No: | 1987-13401, Official Records |

Reference is hereby made to said document for full particulars.

7.      An instrument entitled Covenant and Agreement

|  |  |
|---|---|
| Executed by: | Joanne Russell |
| In favor of: | County of San Luis Obispo |
| Recording Date: | October 31, 2002 |
| Recording No: | 2002-93335, Official Records |

Which among other things provides: As provided therein

Reference is hereby made to said document for full particulars.

This covenant and agreement provides that it shall be binding upon any future owners, encumbrancers, their successors or assigns, and shall continue in effect until the advisory agency approves termination.

8.      A deed of trust to secure an indebtedness in the amount shown below,

|  |  |
|---|---|
| Amount: | $17,500,000.00 |
| Dated: | March 5, 2007 |
| Trustor/Grantor | Erich Russell, also known as Erich L. Russell, a married man, as his sole and separate property |
| Trustee: | Farm Credit West, FLCA |
| Beneficiary: | Farm Credit West, FLCA |
| Loan No.: | 8278571 |
| Recording Date: | March 23, 2007 |
| Recording No: | 2007-19418, Official Records |

|  |  |
|---|---|
| Affects: | The herein described Land and other land. |

An Agreement and Declaration of Subordination was Recorded December 31, 2008, Instrument No. 2008-63934, Official Records

An additional advance to be secured by said deed of trust, as disclosed by an instrument:

|  |  |
|---|---|
| Amount: | $3,525,000.00 |
| Recording Date: | February 6, 2009 |
| Recording No: | 2009-5727, Official Records |

EXHIBIT 3, PAGE 112

## EXCEPTIONS
### (Continued)

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | Farm Credit West, FLCA, as Trustee |
| Recording Date: | May 12, 2017 |
| Recording No: | 2017-025611 Official Records |

A notice of trustee's sale under said deed of trust

| | |
|---|---|
| Executed by: | Mortgage Lender Services, Inc., as agent for Farm Credit West, FLCA, as Trustee |
| Date, Time and Place of Sale: | 08/10/2021 at 11:00 AM at the breezeway adjacent to the County General Services Building, 1087 Santa Rosa Street, San Luis Obispo, CA 93408 |
| Recording Date: | July 06, 2021 |
| Recording No: | 2021-47399 Official Records |

Said deed of trust has been partially reconveyed/released by instrument

| | |
|---|---|
| Recording Date: | September 7, 2017 |
| Recording No: | 2017-40151, Official Records |

The land described in said partial reconveyance/release is as follows:

Reference is hereby made to said document for full particulars.

9.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $300,000.00 |
| Dated: | February 26, 2010 |
| Trustor/Grantor | Erich L. Russell, a married man as his sole and separate property and Robert G. Pierce, III, a married man as sis sole and separate property |
| Trustee: | Farm Credit West, FLCA |
| Beneficiary: | Farm Credit West, FLCA |
| Loan No.: | None Shown |
| Recording Date: | March 16, 2010 |
| Recording No: | 2010-11915, Official Records |

Affects:  The herein described Land and other land

The Deed of Trust set forth above is purported to be a "Credit Line" Deed of Trust.  Under California Civil Code §2943.1 it is a requirement that the Trustor/Grantor of said Deed of Trust either immediately provide the beneficiary with the "Borrower's instruction to Suspend and Close Equity Line of Credit" or provide a satisfactory subordination of this Deed of Trust to the proposed Deed of Trust to be recorded at closing.

If the above credit line is being paid off, this Company will require that Escrow obtain written confirmation from the current Beneficiary that the account has been frozen prior to recording. Failure to do so will result in this Company holding funds at the close of Escrow until such confirmation is obtained from the Beneficiary.

EXHIBIT 3, PAGE 113

PRELIMINARY REPORT
YOUR REFERENCE:

Fidelity National Title Company
ORDER NO.: 00354793-997-OC1-245

## EXCEPTIONS
### (Continued)

This mortgage appears to be an equity line mortgage. A full satisfaction of same must be obtained and all credit cards and/or the balance of verified unused account checks must be sent to the lender together with a "Cancellation of Equity Line Affidavit' from the mortgagor instructing the lender to close the account.

An additional advance to be secured by said deed of trust, as disclosed by an instrument:

| | |
|---|---|
| Amount of Advance: | $650,000.00 |
| Recording Date: | December 28, 2010 |
| Recording No: | 2010-66312, Official Records |

10.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | Agreement To Purchase and Sell a Corporation and Real Estate |
| Dated: | October 27, 2020 |
| Executed by: | Northern Holding, LLC and Russell Family Vineyards/Rabbit Ridge Wine Sales ? Erich Russell, an individual |
| Recording Date: | October 28, 2020 |
| Recording No: | 2020-61134, Official Records |

Reference is hereby made to said document for full particulars.

11.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | Assumption and Assignment Agreement |
| Dated: | October 27, 2020 |
| Executed by: | Northern Holding, LLC., a Minnesota Limited Liability Company and Farm Credit, FLCA Corporation |
| Recording Date: | October 28, 2020 |
| Recording No: | 2020-61135, Official Records |

Reference is hereby made to said document for full particulars.

12.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | Assumption and Assignment Agreement |
| Dated: | October 27, 2020 |
| Executed by: | Northern Holding, LLC., a Minnesota Limited Liability Company and Farm Credit, FLCA Corporation |
| Recording Date: | October 28, 2020 |
| Recording No: | 2020-61136, Official Records |

Reference is hereby made to said document for full particulars

EXHIBIT 3, PAGE 114

## EXCEPTIONS
### (Continued)

13.    A Deed:

| | |
|---|---|
| From: | Erich Russell |
| To: | Northern Holding, LLC |
| Dated: | October 27, 2020 |
| Recording Date: | October 28, 2020 |
| Recording No: | 2020-61138, Official Records |

For insurance purposes, the Company is not willing to divest the interest of the following party(ies):

Party(ies):            Erich Russell

In order to complete this report the Company requires the following:

Information requested:    Completed Statement of Information and an Affidavit for an Uninsured Deed, (signed and Notarized by a Notary Public different from the one who notarized the deed shown above)

Party(s):            Erich Russell

The Company reserves the right to make additional requirements or add additional items or exceptions after review of the requested documentation.

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

**END OF EXCEPTIONS**

EXHIBIT 3, PAGE 115

# REQUIREMENTS SECTION

1.    In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

Party(s):                    All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

2.    The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

Limited Liability Company:        Northern Holding, LLC

a)    A copy of its operating agreement, if any, and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

b)    If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps.

c)    If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member.

d)    A current dated certificate of good standing from the proper governmental authority of the state in which the entity is currently domiciled.

e)    If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

f)    If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

g)    Each member and manager of the LLC without an Operating Agreement must execute in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

---

**END OF REQUIREMENTS**

---

PRELIMINARY REPORT                                                     Fidelity National Title Company
YOUR REFERENCE:                                                        ORDER NO.: 00354793-997-OC1-245

## INFORMATIONAL NOTES SECTION

1.   Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

2.   None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an Extended Coverage Loan Policy, when issued.

3.   Note:  The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Single Family Dwelling, known as 2380 Live Oak, , CA 93446, to an Extended Coverage Loan Policy.

4.   Note:  The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

5.   Note:  The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

     Grantor:                Erich Russell
     Grantee:                Northern Holding, LLC
     Recording Date:         October 28, 2020
     Recording No:           2020-61138, Official Records

6.   Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

7.   Due to the special requirements of SB 50 (California Public Resources Code Section 8560 et seq.), any transaction that includes the conveyance of title by an agency of the United States must be approved in advance by the Company's State Counsel, Regional Counsel, or one of their designees.

8.   Note:  If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

9.   Note: Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of a Company agent, an authorized employee of the insured lender, or by using Bancserv or other Company-approved third-party service. If the above requirement cannot be met, please call the Company at the number provided in this report.

EXHIBIT 3, PAGE 117

## INFORMATIONAL NOTES
### (Continued)

10.     NOTE: Amended Civil Code Section 2941, which becomes effective on January 1, 2002, sets the fee for the processing and recordation of the reconveyance of each Deed of Trust being paid off through this transaction at $45.00. The reconveyance fee must be clearly set forth in the Beneficiary's Payoff Demand Statement ("Demand"). In addition, an assignment or authorized release of that fee, from the Beneficiary to the Trustee of record, must be included. An example of the required language is as follows:

The Beneficiary identified above hereby assigns, releases or transfers to the Trustee of record, the sum of $45.00, included herein as 'Reconveyance Fees', for the processing and recordation of the Reconveyance of the Deed of Trust securing the indebtedness covered hereby, and the escrow company or title company processing this pay-off is authorized to deduct the Reconveyance Fee from this Demand and forward said fee to the Trustee of record or the successor Trustee under the Trust Deed to be paid off in full.

In the event that the reconveyance fee and the assignment, release or transfer are not included within the demand statement, then Fidelity National Title Insurance Company and its Underwritten Agent may decline to process the reconveyance and will be forced to return all documentation directly to the Beneficiary for compliance with the requirements of the revised statute.

11.     Note: Part of the RESPA Rule to simplify and Improve the Process of Obtaining Mortgages and Reduce Consumer Settlement Costs requires the settlement agent to disclose the agent and underwriter split of title premiums, including endorsements as follows:

Line 1107 is used to record the amount of the total title insurance premium, including endorsements, that is retained by the title agent. Fidelity National Title Company retains 88% of the total premium and endorsements.

Line 1108 used to record the amount of the total title insurance premium, including endorsements, that is retained by the title underwriter. Fidelity National Title Insurance Company retains 12% of the total premium and endorsements.

---

### END OF INFORMATIONAL NOTES

---

Blake Uradomo/sar

**WIRE SAFE** | Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*
*http://www.fbi.gov*

*Internet Crime Complaint Center:*
*http://www.ic3.gov*

*TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*

EXHIBIT 3, PAGE 119

**Fidelity National Title Company**
1300 Dove Street, 3rd Floor, Newport Beach, CA 92660
Phone: (949) 788-2800  •  Fax: (949) 341-0251

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.  As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Company** | **Underwritten by FNF Underwriters** |
| --- | --- |
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

## Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

## FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Effective January 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices.  If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics
Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites.  FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

### When Information Is Disclosed
We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;

Copyright © 2021. Fidelity National Financial, Inc. All Rights Reserved
Order No. 00354793-997-OC1-245

EXHIBIT 3, PAGE 121

- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

**Security of Your Information**
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

**Choices With Your Information**
If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

**Information From Children**
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

**International Users**
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

**FNF Website Services for Mortgage Loans**
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

EXHIBIT 3, PAGE 122

**Your Consent To This Privacy Notice; Notice Changes; Use of Comments or Feedback**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 934-3354 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

## ATTACHMENT ONE (Revised 05-06-16)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy; or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

   a. building;

   b. zoning;

   c. land use;

   d. improvements on the Land;

   e. land division; and

   f. environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:

   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;

   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

---

Attachment One – CA (Rev. 05-06-16)                                                                                                       Page 1

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

c.   that result in no loss to You; or
d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.   Failure to pay value for Your Title.
6.   Lack of a right:
    a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.   in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

### 2006 ALTA LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)   the occupancy, use, or enjoyment of the Land;
        (ii)   the character, dimensions, or location of any improvement erected on the Land;
        (iii)   the subdivision of land; or
        (iv)   environmental protection;
        or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
    (a)   created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)   resulting in no loss or damage to the Insured Claimant;
    (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
    (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)   a fraudulent conveyance or fraudulent transfer, or
    (b)   a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

{Except as provided in Schedule B - Part II,{ t{or T}his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

---

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

EXHIBIT 3, PAGE 125

## {PART I

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the Public Records.}

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:}

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses,  that arise by reason of:

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that  may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the Public Records. }

7. {Variable exceptions such as taxes, easements, CC&R's, etc. shown here.}

---

Attachment One – CA (Rev. 05-06-16)                                                                                                                    Page 3

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

EXHIBIT 3, PAGE 126

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

**© California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

EXHIBIT 3, PAGE 127



**EXHIBIT 4**

Branch :KNR,User :F111          Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO

Recording Requested by:
.**CUESTA TITLE COMPANY**

WHEN RECORDED MAIL TO:

Farm Credit West, FLCA
Attn: Loan Certification
P.O. Box 6070
Ventura, CA 93006

**JULIE RODEWALD**
San Luis Obispo County — Clerk/Recorder
Recorded at the request of
Cuesta Title Company

LO
3/23/2007
8:00 AM

DOC#:  **2007019418**

| Titles: 2 | Pages: | 18 |
|---|---|---|
| Fees | | 65.00 |
| Taxes | | 0.00 |
| Others | | 0.00 |
| PAID | | $65.00 |

B7100051 - SRS

Space Above This Line For Recorder's Use

Loan Number: 8278571

## DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST and ASSIGNMENT OF RENTS ("**Deed of Trust**"), made this 5th day of **March 2007,** between **Erich Russell, also known as Erich L. Russell, a married man, as his sole and separate property,** as "**Trustor**", and **Farm Credit West, FLCA,** as "**Trustee**" and "**Beneficiary**", a corporation organized and existing under the laws of the United States of America, with its office at **1948 Spring Street, P.O. Box 1557, Paso Robles, CA 93447.**

**1. GRANT IN TRUST.** Trustor IRREVOCABLY GRANTS, CONVEYS AND ASSIGNS to said Trustee, in trust for the benefit of Beneficiary, with power of sale together with right of entry and possession, the property described below in Sections 1.1 through 1.5 inclusive (collectively, the "**Property**").

**1.1** The real property (the "**Real Property**") situated in the State(s) and Counties, described as follows:

**For description of Real Property located in San Luis Obispo County, see Exhibit "A", attached hereto and made a part hereof; and**

**For Real Property located in Sonoma County, see Exhibit "B", attached hereto and made a part hereof.**

**THIS DEED OF TRUST AND ASSIGNMENT OF RENTS HAS BEEN DRAWN IN COUNTERPART TO ENCUMBER PROPERTY IN SAN LUIS OBISPO AND SONOMA COUNTIES, AND TAKEN TOGETHER, THE TWO COUNTERPARTS SHALL BE CONSTRUED AS ONE DEED OF TRUST AND ASSIGNMENT OF RENTS.**

**1.2. BUILDINGS, FIXTURES, AND OTHER IMPROVEMENTS.** All buildings, structures, equipment, goods that are or will become fixtures (including, but not limited to, trees, vines and shrubs) and improvements of every kind and description now or hereafter constructed or placed on the Real Property; all standing timber and timber to be cut located on the Real Property; and all pumping plants, electrical generators, wind machines, and fencing and storage tanks, now or hereafter used in connection with the Property, all of which are hereby declared to be fixtures. Without limiting the generality of the foregoing, a description of some fixtures may also be included with the description of the Real Property set forth above or in an exhibit hereto.

Form 1355 - Deed of Trust and Assignment of Rents                                           Page 1 of 13

\.

EXHIBIT 4, PAGE 129

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB   Comment:                Station Id :P1CO

1.3. **LEASES AND OTHER RIGHTS.** All existing and future leases, subleases, licenses, permits, agreements, permits and concessions relating to the use or enjoyment of the Real Property, including all grazing rights, leases, permits and licenses; all oil, gas, and mineral leases, permits and rights used with the Real Property; and all tenements, hereditaments, easements, rights-of-way and appurtenances to the Property.

1.4. **WATER ASSETS.** All right, title, and interest at any time of Trustor (or any of its bailees, agents, or instrumentalities), whether now existing or hereafter arising or acquired, whether direct or indirect, whether owned legally, of record, equitably or beneficially, whether constituting real or personal property (or subject to any other characterizations), whether created or authorized under existing or future laws or regulations, and however arising in, including without limitation, the water, water rights and other assets and items described below in Sections 1.4(a) through 1.4(i) inclusive, which shall collectively be called "**Water Assets**". References to "water" and "water rights" are used herein in the broadest and most comprehensive sense of the term(s). The term "**water**" includes water rights and rights to water or whatever rights to money, proceeds, property or other benefits are exchanged or received for or on account of any Water Assets or any conservation or other nonuse of water, including whatever rights are achieved by depositing one's share of any Water Assets in any water bank or with any water authority, or any other water reallocation rights. Without limiting the generality of the foregoing, a description of some Water Assets may also be included with the description of the Property set forth above or in an exhibit hereto.

(a)  All water (including any water inventory in storage), water rights and entitlements, other rights to water and other rights to receive water or water rights of every kind or nature whatsoever including: (a) the groundwater on, under, pumped from or otherwise available to the Property, whether as the result of groundwater rights, contractual rights or otherwise; (b) Trustor's right to remove and extract any such groundwater including any permits, rights or licenses granted by any governmental authority or agency or any rights granted or created by any use, easement, covenant, agreement, or contract with any person or entity; (c) any rights to which the Property is entitled with respect to surface water, whether such right is appropriative, riparian, prescriptive, decreed or otherwise and whether or not pursuant to permit or other governmental authorization, or the right to store any such water; (d) any water, water right, water allocation, distribution right, delivery right, water storage right, or other water-related entitlement appurtenant or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any district, agency, or other governmental entity or within the boundaries of any private water company, mutual water company, or other non-governmental entity; (e) all water and existing and future water rights, however evidenced, to the use of water for irrigation, livestock and domestic purposes, including irrigation and watering equipment and systems, ditches, laterals, conduits, and rights-of-way used to convey such water or to drain the Property, all of which rights are or are hereby made appurtenant to the Property.

(b)  All stock, interest or rights (including any water allocations, voting or decision rights) in any entity, together with any and all rights from any entity or other person to acquire, receive, exchange, sell, lease, or otherwise transfer any Water Assets, to store, deposit or otherwise create water credits in a water bank or similar or other arrangement for allocating water, to transport or deliver water, or otherwise to deal with any Water Asset.

(c)  All licenses, permits, approvals, contracts, decrees, rights and interests to acquire or appropriate any Water Assets, water bank or other credits evidencing any right to Water Assets, to store, carry, transport or deliver Water Assets, to sell, lease, exchange, or otherwise transfer any Water Asset, or to change the point for diversion of water, the location of any Water Asset, the place of use of any Water Asset, or the purpose of use of any Water Asset.

(d)  All rights, claims, causes of action, judgments, awards, and other judicial, arbiter or administrative relief in any way relating to any Water Asset.

Form 1355 - Deed of Trust and Assignment of Rents

Page 2 of 13

EXHIBIT 4, PAGE 130

Branch :KNR,User :F111                    Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

(e)  All storage and treatment rights for any Water Asset, whether on or off the Property or other property of Trustor, together with all storage tanks, and other equipment used or usable in connection with such storage and any water bank deposit credits, deposit accounts or other rights arising on account of the storage or nonuse of any Water Asset.

(f)  All rights to transport, carry, allocate or otherwise deliver Water Assets by any means wherever located.

(g)  All irrigation and watering equipment, including all pumps, pumping plants, storage tanks, pump motors, electrical generators (all of which are declared to be fixtures) and all systems, ditches, laterals, conduits, and rights-of-way used to convey such water or to drain the Property.

(h)  All guaranties, warranties, marketing, management or service contracts, indemnity agreements, and water right agreements, other water related contracts and water reallocation rights, all insurance policies regarding or relating to any Water Asset.

(i)  All rents, issues, profits, proceeds and other accounts, instruments, chattel paper, contract rights, general intangibles, deposit accounts, and other rights to payment arising from or on account of any use, nonuse, sale, lease, transfer or other disposition of any Water Asset.

**1.5. ADDITIONS AND PROCEEDS.**  All additions, accretions substitutions and replacements of any of the Property; all proceeds of the Property, including all proceeds of present and future insurance policies; and all condemnation awards or payments now or later made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any misrepresentation, damage or injury to, or defect in, the Property.

**2. ASSIGNMENT OF RENTS.**  TRUSTOR ABSOLUTELY AND UNCONDITIONALLY ASSIGNS, transfers, conveys and sets over to Beneficiary all the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use, non-use, enjoyment, sale, transfer or other disposition of all or any portion thereof, including those set forth in Paragraph 1.4(i) above, or from any lease, mineral lease, or agreement pertaining to the Property (collectively the "**Rents**"); whether now existing or hereafter arising and whether now due, past due or to become due; SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Trustor by Paragraph 19 hereof.  This assignment of the Rents shall be perfected automatically without appointment of a receiver or Beneficiary becoming a mortgagee in possession.

**3.  OBLIGATIONS SECURED.**  Trustor makes the grant, conveyance, and assignment of the Property as described above for purposes of securing the following indebtedness and other obligations (collectively, "**Indebtedness**") in any order of priority that Beneficiary may choose:

(a)  payment of the indebtedness and performance of the obligations of Trustor evidenced by the following promissory note(s) (collectively "**Note**") and/ or the following continuing guaranty(s) (collectively "**Guaranty**"), and any other documents executed by Trustor in conjunction with the Note or Guaranty:

☒  a Promissory Note and Loan Agreement dated as of **03/05/2007**, in the stated principal amount of **$17,500,000.00**.

☐  a Revolving Line of Credit Promissory Note or a Revolving Credit Supplement to a Master Loan Agreement dated as of _____, in the stated principal amount of _____.

☐  a continuing guaranty dated as of (date) _____, executed by Trustor in favor of Beneficiary, guaranteeing the indebtedness of the borrowers as defined in the Guaranty.

SAN LUIS OBISPO,CA                        Page 3 of 18                    Printed on 6/16/2021 1:10:13 PM
Document: TDD ASR 2007.19418

EXHIBIT 4, PAGE 131

Branch :KNR,User :F111          Order: 00354793  Title Officer: VRB  Comment:          Station Id :P1CO

(b)  the payment of such additional loans or advances , including advances under a revolving line of credit, with interest thereon, as hereafter may be made to or guaranteed by Trustor, or Trustor's successors or assigns, evidenced by a promissory note, guaranty, loan agreement or otherwise; PROVIDED HOWEVER, THAT, such additional loans or advances will be secured by this Deed of Trust only if the promissory note, guaranty, loan agreement or other document evidencing the obligations of Trustor relative to such loans or advances recites that it is to be secured by this Deed of Trust;

(c)  the payment and performance of the obligations set forth in any document evidencing an extension, renewal, modification, replacement, reamortization, conversion, or restatement of any Indebtedness secured by this Deed of Trust, including without limitation renewal and/or substitute notes, guarantys, and loan agreements.

(d)  the performance of every obligation and agreement of Trustor whether contained or incorporated by reference in this Deed of Trust, or contained in any loan agreement, loan document or guaranty executed by Trustor in favor of Beneficiary, with respect to any loan or advance secured by this Deed of Trust; and

(e)  the payment of all sums expended or advanced by Beneficiary under or pursuant to the terms of this Deed of Trust, together with interest thereon as herein provided.

The Notes referred to above are payable by Trustor and/or others to the Beneficiary at the times, in the manner and with interest as therein set forth. The Note and other documents evidencing the Indebtedness may contain variable or adjustable interest rate provisions and provisions evidencing revolving lines of credit.

The continuing validity and priority of this Deed of Trust as security for future loans or advances will not be impaired by the fact that at certain times hereafter there may be no outstanding loan or other indebtedness from Trustor to Beneficiary and/or no commitment to make loans or advances.

Notwithstanding the foregoing, this Deed of Trust does not secure any indebtedness or other obligation if the promissory note, guaranty, or any other document evidencing or pertaining to the indebtedness or obligation states that it is unsecured or not secured by real property.

**4. PERSONAL PROPERTY SECURITY AGREEMENT.** All of the Property will be considered to the fullest extent of the law to be real property for purposes of this Deed of Trust. To the extent that any of the Property, (including without limitation any Water Assets or fixtures), is deemed to constitute, is adjudicated to be, or declared to be personal property, this Deed of Trust shall also be deemed to be a security agreement. Trustor does hereby create and grant to Beneficiary a security interest in all such personal property described herein; and further, grants to Beneficiary all of the rights and remedies of a secured party under the Uniform Commercial Code and other applicable state law, which rights are cumulative.

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES TO EACH OF THE FOLLOWING:**

**5. USE OF PROCEEDS.** To use loan proceeds solely for the purposes set forth in the loan application(s) or as otherwise required by Beneficiary.

**6. CONDITION OF PROPERTY.** To keep the Property in good condition, working order and repair; to care for the Property in accordance with standards of good husbandry and to keep all trees, vines and crops on said land properly cultivated, irrigated, fertilized, sprayed, and fumigated; not to sell, transfer, assign, encumber or convey any water or water right from the Property, or to enter into an agreement for the nonuse of water, without the prior written consent of Beneficiary; not to remove, destroy or suffer the removal or destruction of any building, fence, canal, well or other improvements or fixtures thereon; not to remove, replace or alter any horticultural or viticultural tree, vine or shrub planted thereon without the prior written consent of Beneficiary, except in the ordinary course of business; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to comply with all laws, covenants and restrictions

Form 1355 - Deed of Trust and Assignment of Rents                                           Page 4 of 13

EXHIBIT 4, PAGE 132

Branch :KNR,User :F111    Order: 00354793   Title Officer: VRB   Comment:    Station Id :P1CO

affecting the Property; not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general; to observe and perform all obligations of Trustor under any lease of the Property.

**7. INSURANCE.** To provide, maintain and deliver to Beneficiary, fire, extended coverage, flood, and all other types of insurance, in terms and amounts as may be required by law or Beneficiary, with loss payable endorsements (including lender loss payable endorsements) solely in favor of Beneficiary. In the event of loss, the insurance proceeds, or any part thereof, may be applied by Beneficiary, at its option, to reduce the Indebtedness or restore or repair the property damaged. Failure to obtain, maintain or deliver to Beneficiary the insurance required shall constitute an event of default under this Deed of Trust.

At least thirty (30) days prior to the expiration of any such policy of insurance, Trustor will deliver a policy renewing or extending such expiring insurance and written evidence demonstrating payment of the premium for such insurance. If any such policy and evidence of payment (or copies of same, if originals cannot be delivered to Beneficiary) are not so delivered to Beneficiary, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, Beneficiary may (but is not obligated to), at Trustor's expense, obtain insurance in such types, on such terms and in such amounts as Beneficiary in its sole discretion shall decide, through or from any insurance agency or company acceptable to it. Any insurance obtained by Beneficiary shall be for its sole benefit and to protect the security of this Deed of Trust. The expense and cost of such insurance shall, at Beneficiary's sole option, be payable on demand or added to the Indebtedness as provided herein. Neither Trustee nor Beneficiary shall be chargeable with or responsible for the procurement or maintenance of any such insurance, the collection of any proceeds from such insurance, or the insolvency of any insurance company or underwriter.

**8. DEFENSE OF TITLE.** To appear in and litigate any action or proceeding purporting to affect the security hereof, the title to the Property, or the rights or powers of Beneficiary or Trustee. Beneficiary or Trustee may appear in and litigate any such action or proceedings, including any bankruptcy, partition or condemnation proceeding, affecting the Property, or Beneficiary's interest therein, in which event Trustor agrees to pay all costs and expenses thereof, including attorney's fees and costs of securing evidence of title.

**9. TAXES, LIENS AND ASSESSMENTS.** To pay on or before the due date all taxes and assessments affecting the Property, including all assessments upon water company stock, and all rents, assessments and charges for water appurtenant to or used in connection with the Property; to pay when due all encumbrances, charges, and liens on the Property, or any part thereof, which at any time appear to be prior or superior hereto.

**10. FEES AND COSTS.** In the event that Beneficiary or Trustee uses the services of attorneys, accountants, appraisers, consultants, or other professional or outside assistance, including the services of in-house counsel or any other attorney or professional who is an employee of Lender, the reasonable amount of fees, costs and expenses ("**Expenses**") incurred by Beneficiary or Trustee to use such persons in connection with any of the following shall be payable by Trustor on demand. Beneficiary or Trustee may, at its option, add the amount of such Expenses to any portion of the Indebtedness plus an appropriate amount of Beneficiary's stock or participation certificates required in connection with the loan (as required by federal law or regulation or Beneficiary's bylaws), and charge interest on such amount at the interest rate applicable to such portion of the Indebtedness. These Services include:

(a)   The preparation, modification or enforcement of this Deed of Trust, and any other agreement or document incident to the Indebtedness or to the Property;

(b)   Advising Beneficiary or Trustee concerning its legal rights and obligations with regard to this Deed of Trust and any other agreement or document incident to the Indebtedness, or to the Property, including advising Beneficiary or Trustee with regard to the extent of their rights, if any, under the provisions of the Farm Credit Act of 1971, as amended, ("**Act**"), Farm Credit Administration ("**FCA**") regulations, any policy or program of Beneficiary, or any other state or federal law;

Form 1355 - Deed of Trust and Assignment of Rents                                                      Page 5 of 13

EXHIBIT 4, PAGE 133

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                Station Id :P1CO

(c)  Any litigation, dispute, proceeding, or action (whether or not dismissed, reduced to judgment, or otherwise resolved), and whether instituted by Beneficiary, Trustee or Trustor or any other person, relating to the Indebtedness, the Property or Trustor's affairs;

(d)  The furtherance of Beneficiary's or Trustee's interest in any bankruptcy, insolvency, or reorganization case or proceeding instituted by or against Trustor, including any steps to (i) modify or terminate the automatic stay, (ii) prohibit or condition Trustor's use of cash collateral, (iii) object to any disclosure statement or plan, (iv) propose or confirm a plan, and (v) prosecute or defend adversary proceedings or contested matters, and take or defend examinations or discovery, whether or not related to any adversary proceeding or contested matter and whether or not dismissed, reduced to judgment, or otherwise resolved;

(e)  The inspection, verification, protection, collection, processing, sale, liquidation, or disposition of the Property; and

(f)  Any of the type of Expenses referred to in (a) through (e) above incurred by Beneficiary or Trustee in connection with any guaranty of the Indebtedness.

The Expenses described herein and elsewhere in this Deed of Trust shall be in addition to those set forth in any Security Instrument or any other written agreement between Beneficiary and Trustor.

**11. BENEFICIARY MAY ACT FOR TRUSTOR.** Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the Property, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; commence, appear in and litigate any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary or Trustee, including any bankruptcy proceeding affecting the Property; pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; pay such fees, charges, rents or other payments accruing under the grazing permits described in Section 14 below; and in exercising any such powers, incur any liability, expend whatever amounts in its absolute discretion it may deem necessary therefore, including attorney's, accountant's, and appraisal fees, environmental fees and costs of securing evidence of title, and all amounts so expended shall be obligations of Trustor secured by this Deed of Trust. Nothing contained herein shall prohibit Beneficiary from entering the Property, at a reasonable time and upon reasonable notice to Trustor, without incurring or assuming any obligations or liabilities whatsoever, for the sole purpose of inspecting the Property.

**12. SUMS EXPENDED BY BENEFICIARY.** To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof, with interest from date of expenditure at the same rate as is provided for in the note or notes secured by this Deed of Trust. All such sums shall be secured hereby.

**13. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.**
**13.1. DEFINITIONS.** Defined Terms as used in this Paragraph 13:

(a)  **"Environmental Laws"** shall mean all federal, state and local laws, ordinances, rules and regulations now or hereafter in force, as amended from time to time, in any way relating to or regulating human health or safety, industrial hygiene or protection of the environment.

(b)  **"Hazardous Substances"** shall mean any substance or material that is described, designated or regulated as a toxic or hazardous substance, waste or material or a pollutant or contaminant, or words of similar import, in any of the Environmental Laws.

(c)  **"Release"** shall mean any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment, including continuing migration, of

---

Form 1355 - Deed of Trust and Assignment of Rents                                    Page 6 of 13

EXHIBIT 4, PAGE 134

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB  Comment:                Station Id :P1CO

Hazardous Substances into, onto or through the soil, surface water or groundwater of the Property, whether or not caused by, contributed to, permitted by, acquiesced to or known to Trustor.

(d)  **"User"** means any person other than Trustor who occupies, uses or comes onto or has occupied, used or come onto the Property or any part thereof and any agent or contractor of such a person.

**13.2 TRUSTOR REPRESENTS AND WARRANTS.** Trustor represents and warrants to Beneficiary that, as of the date of this Deed of Trust and to the best of Trustor's knowledge, based on due inquiry and investigation:

(a)  Except as previously disclosed in writing by Trustor to Beneficiary: (i) no Hazardous Substances in excess of permitted levels or reportable quantities under applicable Environmental Laws are present in, on or under the Property or any nearby real property which could migrate to the Property; (ii) no Release or threatened Release exists or has occurred; (iii) neither Trustor nor any User has ever used the Property or any part thereof for the production, manufacture, generation, treatment, handling, storage, transportation or disposal of Hazardous Substances; (iv) no underground, surface or elevated storage tanks of any kind, wells (except domestic water wells), septic tanks, pits, ponds or other impoundments (**"Tanks"**) are or ever have been located in or on the Property; and (v) no investigation, claim, demand, action or proceeding of any kind relating to any Release or threatened Release or any past or present violation of any Environmental Laws relating to the Property has been made or commenced, or is pending, or is being threatened by any governmental authority or other person;

(b)  All operations and activities at, and the use and occupancy of, the Property comply with all applicable Environmental Laws;

(c)  Trustor and every User has, and is in strict compliance with, every permit, license and approval required by all applicable Environmental Laws for all activities and operations at, and the use and occupancy of, the Property;

(d)  Neither the Property, nor any portion thereof, nor any adjacent property or portion thereof, has been or is proposed to be listed under the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Section 9601, et seq.), or any analogous state law; and

(e)  Any written disclosure submitted by or on behalf of Trustor to Beneficiary at Beneficiary's request concerning any Release or threatened Release, past or present compliance by Trustor, User or any other person of any environmental Laws applicable to the Property, the past and present use and occupancy of the Property, any environmental concerns relating to the Property and the like was true and complete when submitted.

**13.3 TRUSTOR AGREES THAT:**

(a)  Except in the ordinary course of business, in a good and husbandlike manner and in strict compliance with all applicable Environmental Laws, Trustor promises that neither Trustor nor any User shall use, produce, manufacture, generate, treat, handle, store, transport, or dispose of any Hazardous Substances in, on or under the Property, or use the Property for any such purposes;

(b)  Trustor shall not cause, contribute to, permit or acquiesce to any Release or threatened Release;

(c)  Trustor shall comply fully, and shall cause every User to comply fully, with all Environmental Laws applicable to the Property, and all other laws, ordinances and regulations applicable to the use or occupancy thereof, or any operations or activities therein or thereon;

(d)  With respect to any Tanks disclosed in writing to Beneficiary, Trustor shall comply with all Environmental Laws and any requirements of city or county fire departments, applicable to the maintenance and use of such Tanks, including, without limitation, Title 40 of the Code of Federal Regulations part 112;

EXHIBIT 4, PAGE 135

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                        Station Id :P1CO

(e)  To facilitate performance of Trustor's obligations under Paragraph 13.3(a), (b), (c), (d) of this Deed of Trust, Trustor shall regularly inspect the Property, monitor the activities and operations of every User and confirm that every User has obtained and fully complies with all permits, licenses and approvals required by all applicable Environmental Laws;

(f)  Immediately after Trustor obtains any information indicating any Release or threatened Release, or that Hazardous Substances in, on or under any nearby property could migrate to the Property or a violation of any Environmental Laws may have occurred or could occur regarding the Property, Trustor shall give notice thereof to Beneficiary with a reasonably detailed description of the event, occurrence or condition in question;

(g)  If Beneficiary obtains any information that Beneficiary believes in good faith indicates a reasonable possibility of a Release or threatened Release, or that Hazardous Substances in, on or under any nearby real property could migrate to the Property or any violation of any Environmental Laws may have occurred or could occur regarding the Property, then Trustor shall, at the expense of Trustor, promptly after a request by Beneficiary, or Beneficiary may at Trustor's expense any time prior to completion of a judicial or nonjudicial foreclosure, engage a qualified environmental engineer to conduct a comprehensive environmental assessment of the Property and prepare and submit to Beneficiary a written report containing the findings and conclusions resulting from such investigation.  Trustor shall, on demand, pay to Beneficiary all sums expended by Beneficiary in connection with any such comprehensive environmental assessment, together with interest thereon after such demand at the interest rate as set forth in the applicable promissory note(s) evidencing the Indebtedness;

(h)  Trustor shall permit, or cause any User to permit, Beneficiary or its agents or independent contractors to enter and inspect the Property (including the taking of building materials, soil and groundwater samples) at any reasonable time and after reasonable notice, except in an emergency, whether or not a default has occurred under this Deed of Trust, and including after the commencement of judicial or nonjudicial foreclosure proceedings, for purposes of determining, as Beneficiary deems necessary or desirable: the existence, location or nature of any Hazardous Substances into, onto, or spread beneath or from the Property, that is located or has been spilled, disposed of, discharged or released on, under or about the Property.  Trustor acknowledges that all inspections and reviews undertaken by Beneficiary are solely for the benefit and protection of Beneficiary and agrees that Beneficiary shall have no duty to Trustor with respect to Hazardous Substances or Environmental Laws as a result of any such inspections, and such inspections shall not result in a waiver of any default by Trustor.  If Trustor or any User fails to comply fully with the terms of this section, Beneficiary may obtain affirmative injunctive relief to compel such compliance; and

(i)  If any Release or threatened Release exists or occurs before this Deed of Trust is reconveyed or foreclosed upon, or if Trustor is in breach of any of its representations, warranties or covenants as set forth in this Section 13, Trustor shall immediately give notice of the condition to Beneficiary, and Trustor shall at its own expense cause any Hazardous Substances to be cleaned up and removed from the Property, and the Property shall be restored, in compliance with all applicable Environmental Laws and other laws, ordinances, rules and regulations (the "**Remediation Work**').  If requested by Beneficiary, Trustor shall submit to Beneficiary, for Beneficiary's prior approval, complete plans and specifications for all Remediation Work to be done before any Remediation Work is performed, except in an emergency.  Alternatively, Beneficiary may cause such Remediation Work to be completed at Trustor's expense.

13.4  **NOTICE TO GOVERNMENTAL AUTHORITIES.**  Beneficiary shall have the right, but not the obligation, to advise appropriate governmental authorities of any environmental condition on or affecting the Property that constitutes or may constitute a breach of Trustor's obligations hereunder.

13.5  **INDEMNITY OF TRUSTEE AND BENEFICIARY.**  Trustor and its successors and assigns shall indemnify, defend, protect, and hold harmless Beneficiary, and/or Trustee, its directors, officers, employees, agents, shareholders, successors and assigns and their officers, employees or agents, from and against any and

Form 1355 - Deed of Trust and Assignment of Rents                                                                    Page 8 of 13

EXHIBIT 4, PAGE 136

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                Station Id :P1CO

all claims, suits, damages, foreseeable and unforeseeable consequential damages, liens, losses, liabilities, interest, judgments, cleanup costs, demands, actions, causes of action, injuries, administrative proceedings and orders, consent agreements and orders, penalties, costs and expenses (including any fees and expenses incurred in enforcing this indemnity, any out-of-pocket litigation costs, sums paid in settlement of claims, and all consultant, expert and the reasonable fees and expenses of counsel, including in-house legal services) of any kind whatsoever ("**Claims**") paid, incurred or suffered by, or asserted against Beneficiary and/or Trustee, including but not limited to Claims arising out of loss of life, injury to persons, trespass or damage to or contamination of property or natural resources, or injury to business, in connection with or arising out of the activities of Trustor on the Property, Trustor's predecessors in interest, third parties who have been invited, permitted or trespassed on the Property, or parties in a contractual relationship with Trustor, or any of them, or which directly or indirectly arise out of or result from or in any way connected with the Property, whether or not caused by Trustor or within the control of Trustor, including without limitation: (a) the presence, use, generation, treatment, storage, disposal, Release, threatened Release, or discharge of any Hazardous Material or Contaminant at or from said Property and/or the cleanup of Hazardous Materials or Contaminants within, on or under said Property; (b) Trustor's breach of any of the representations, warranties and covenants contained herein; and (c) Trustor's violation or alleged violation of any applicable Environmental Law, regulation or ordinance.

**13.6  SURVIVAL.** NOTWITHSTANDING ANY OTHER PROVISION OF THIS DEED OF TRUST, THE NOTE OR ANY LOAN DOCUMENTS, TRUSTOR'S REPRESENTATIONS, WARRANTIES, COVENANTS AND INDEMNITIES CONTAINED IN THIS SECTION 13 SHALL SURVIVE THE OCCURRENCE OF ANY EVENT WHATSOEVER, INCLUDING WITHOUT LIMITATION THE PAYOFF OF THE PROMISSORY NOTE SECURED HEREBY, THE RECONVEYANCE OR FORECLOSURE OF THIS DEED OF TRUST, THE ACCEPTANCE BY TRUSTEE OF A DEED IN LIEU OF FORECLOSURE, OR ANY TRANSFER OR ABANDONMENT OF THE PROPERTY.

**14.  GRAZING RIGHTS.** If any portion of the Property described in this Deed of Trust is used by Trustor as the basis for obtaining grazing permits or other grazing rights issued by any governmental agency, including without limitation the Forest Service, U.S. Department of Agriculture or the Bureau of Land Management, U.S. Department of Interior, Trustor covenants and agrees as follows:

(a)  Said grazing permits or other rights are in good standing and have not been modified, reduced or limited in any other respect, except as fully disclosed in writing to Beneficiary;

(b)  Trustor will perform all obligations imposed as a requirement of exercise of said grazing permits or other rights and will comply with all laws, rules and regulations applicable thereto;

(c)  Trustor will take such timely action as may be required to cause the renewal or reissuance of said grazing permits or other rights from time to time as they expire during the term thereof Trustor agrees and acknowledges that the failure to renew or cause the reissuance of any said permits for any reason, whether the result of an act or omission of Trustor or for reasons beyond Trustor's control, is an event of default hereunder and Beneficiary shall have the right to exercise the rights set forth in this Deed of Trust; and

(d)  Trustor agrees to pay all fees, charges, rents or other payments accruing under said permits or any renewals thereof prior to delinquency. In the event Trustor fails to pay any such payment, the amount unpaid shall become a part of the Indebtedness and shall be immediately due and payable.

**15.  WATER TRANSFERS.** Trustor represents that Trustor is not in the business of transferring water and, therefore, any sale or transfer of any water or water rights is not a transfer of goods in the ordinary course of business. Trustor further agrees that in no event will any water or water rights be goods identified to a contract. Trustor hereby acknowledges that the availability of the water and the other Water Assets to the Property was a significant factor in Beneficiary's decision to extend credit to Trustor and any other persons obligated on the

Form 1355 - Deed of Trust and Assignment of Rents                                                     Page 9 of 13

EXHIBIT 4, PAGE 137

Branch :KNR,User :F111          Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

Indebtedness, and that any severance of water or water rights or any other Water Asset from the Property would materially harm the Property.

**16. FINANCIAL INFORMATION.** At Beneficiary's request, Trustor shall provide to Beneficiary financial information in a form acceptable to Beneficiary, including, when so required, a current balance sheet and profit and loss statement. In the case of multiple Trustors, financial information must be provided for each Trustor or otherwise as requested by Beneficiary. Financial information shall be provided at such times during the term of this Deed of Trust as Beneficiary may request.

**IT IS MUTUALLY AGREED THAT:**

**17. CONDEMNATION AWARDS.** Any award of damages in connection with any taking or condemnation or injury to the Property by reason of public use, or for damages resulting from private trespass or injury to the Property, is absolutely and unconditionally assigned and shall be paid to Beneficiary, under the terms and conditions of this Deed of Trust pertaining to Rents. Upon receipt of such money, Beneficiary may apply the same on the Indebtedness. Trustor agrees to execute such further documents as may be required to effect the assignments herein made as Beneficiary or Trustee may require.

**18. TRUSTEE ACTIONS.** At any time, without affecting the liability of any person for the payment of the Indebtedness, and without otherwise affecting the security hereof, Trustee may: (a) consent to or join in the making of any map or plat of the Property; (b) grant any easement or create any restriction thereof; (c) subordinate this Deed of Trust; (d) extend or modify the term of the loan or loans secured hereby; and (e) reconvey without warranty, all or any part of the Property. Trustor agrees to pay reasonable Trustee's fees for any of the foregoing services.

**19. COLLECTION OF RENTS.** Prior to any default by Trustor in the payment, observance, performance and discharge of any condition, obligation, covenant, or agreement of Trustor contained herein, Trustor may, as the agent and fiduciary representative of Beneficiary for collection and distribution purposes only, collect and receive the Rents as they come due and payable; the Rents are to be applied by Trustor to the payment of the principal and interest and all other sums due or payable on any promissory note or guaranty secured by this Deed of Trust and to the payment of all other sums payable under this Deed of Trust and, thereafter, so long as aforesaid has occurred, the balance shall be distributed to the account of Trustor. However, Beneficiary shall have the right before or after the occurrence of any default to notify any account debtor to pay all amounts owing with respect to Rents directly to Beneficiary. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Indebtedness, enter upon and take possession of the Property or any part thereof, in its own name, sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any Indebtedness, and in such order as Beneficiary may determine; also perform such acts of repair, cultivation, irrigation or protection, as may be necessary or proper to conserve the value of the Property; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, remove, and sell any crops that may be growing upon the Property, and apply the proceeds thereof upon the Indebtedness.

**20. TRUSTEE'S EXERCISE OF REMEDIES IS NO CURE OF DEFAULT.** The entering upon and taking possession of the Property, the collection of such Rents, or the proceeds of fire and other insurance policies, or compensation or awards for any taking of or damage to the Property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**21. REMEDIES.** Upon default by Trustor in payment of all or a portion of the Indebtedness or in performance of any agreement hereunder, all sums secured hereby shall immediately become due and payable at the option of the Beneficiary and in accordance with applicable state law. In the event of default, Beneficiary may employ counsel to enforce payment of the Indebtedness, may cause the Trustee to sell the Property in accordance with the power of

Form 1355 - Deed of Trust and Assignment of Rents                                                                  Page 10 of 13

EXHIBIT 4, PAGE 138

Branch :KNR,User :F111          Order: 00354793  Title Officer: VRB  Comment:          Station Id :P1CO

sale granted herein and the applicable state law, and may exercise such other rights and remedies granted under this Deed of Trust or by law and equity, including but not limited to California Code of Civil Procedure Sections 726.5 and 736 or similar laws of other jurisdictions, which rights and remedies shall be cumulative and not exclusive.

Trustee may sell the Property either as a whole or in separate parcels, and in such order as it may determine. The purchase price shall be payable in lawful money of the United States at the time of the sale. In exercising the power of sale contained herein, Trustee may hold one or more sales of all or any portion of the Property by public announcement at the time and place of sale set forth in the notice thereof, and from time to time thereafter may postpone such sale or sales of all or any portion of the Property to the same or separate days by public announcement at such time fixed by the preceding postponement. Any person, including Trustee or Beneficiary, may purchase at such sale. Beneficiary may credit bid at any such sale, and if Beneficiary is the successful purchaser, it may apply any of the outstanding Indebtedness in settlement of the purchase price.

Beneficiary may resort to and realize upon the security hereunder and any other real or personal property security now or hereafter held by Beneficiary for the obligations secured hereby in such order and manner as Beneficiary may, in its sole discretion, determine; or may resort to any or all such security may be taken concurrently or successively and in one or several consolidated or independent judicial actions or lawful nonjudicial proceedings, or both. If the Indebtedness is also secured by personal property, fixtures or crops, Beneficiary may enforce its security interest in the personal property, fixtures and crops and its lien under this Deed of Trust in any manner and in any order or sequence permitted by applicable law.

All remedies are cumulative and none are exclusive; no election by Beneficiary to pursue one remedy or item of collateral shall be deemed to be a release or waiver of any other item of collateral or a release or modification of the liability of Trustor or any guarantor to pay all Indebtedness or perform in full all obligations to Beneficiary. The procedures governing the enforcement by Beneficiary of its foreclosure and provisional remedies against Trustor shall be governed by the laws of the state in which the Property is located. Nothing contained herein shall be construed to provide that the substantive law of the state in which the Property is located shall apply to the Beneficiary's rights and the Trustor's obligations hereunder or under the promissory note(s), which are and shall continue to be governed by the substantive law of the state in which the promissory note was executed.

**22. NON-WAIVER.** The failure on the part of the Beneficiary to promptly enforce any right hereunder shall not operate as a waiver of such right, and the waiver by Beneficiary of any default shall not constitute a waiver of any other or subsequent defaults. Subsequent acceptance of any payment by the holder hereof shall not be deemed a waiver of any default by Trustor, or of Beneficiary's rights hereunder as the result of any sale, agreement to sell, conveyance, or alienation, regardless of holder's knowledge of such default, sale, agreement to sell, conveyance, or alienation at the time of acceptance of such payment.

**23. SUCCESSORS AND ASSIGNS.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the holder and owner of any note secured hereby; or, if the note has been pledged, the pledgee thereof. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**24. SUBSTITUTE TRUSTEE.** Beneficiary may, from time to time or at any time, substitute a Trustee or Trustees to execute the trust hereby created, and when any such substitution has been filed for record in the office of the Recorder of the county in which the Property herein described is situated, it shall be conclusive evidence of the appointment of such Trustee or Trustees, and such new Trustee or Trustees shall succeed to all of the powers and duties of the Trustee or Trustees named herein.

**25. DUE ON SALE OR TRANSFER.**
25.1 In the event the herein-described Property, (including any existing or subsequently acquired or created Water Asset), or any part thereof, or any interest therein, is transferred or agreed to be transferred, without

Form 1355 - Deed of Trust and Assignment of Rents                                              Page 11 of 13

EXHIBIT 4, PAGE 139

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO

Beneficiary's prior written consent, all Indebtedness, irrespective of the maturity dates, at the option of the holder hereof, and without demand or notice, shall immediately become due and payable. As used herein, "transferred" means sold, conveyed, alienated, exchanged, transferred by gift, further encumbered, pledged, hypothecated, made subject to an option to purchase, or otherwise disposed of, directly or indirectly, or in trust, voluntarily or involuntarily, by Trustor or by operation of law or otherwise. Failure to exercise such option shall not constitute a waiver of the right to exercise this option in the event of subsequent transfer or subsequent agreement to transfer.

25.2 If Trustor is an entity other than a natural person (such as a corporation or other organization), then all Indebtedness, irrespective of the maturity date, at the option of Beneficiary, and without demand or notice, shall become immediately due and payable if: (a) a beneficial interest in Trustor is transferred; (b) there is a withdrawal or removal of a general partner of a partnership or a manager of a limited liability company; (c) there is a transfer in the aggregate of more than 25% of the voting stock of Trustor if Trustor is a corporation, or there is a transfer in the aggregate of more than 25% of the partnership interests or membership interests if Trustor is a partnership, limited liability company or similar entity; or (d) Trustor is dissolved or its existence as a legal entity is terminated.

26. **SEVERABILITY.** In the event any one or more of the provisions contained in this Deed of Trust or in any promissory note, guaranty, or other document secured hereby shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Deed of Trust or said promissory note or guaranty, but this Deed of Trust and said promissory notes or guaranties shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

27. **NOTICES TO TRUSTOR.** The undersigned Trustor agrees that he/she is entitled only to those notices required by applicable law and requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth below.

28. **EXHIBITS.** All exhibits to this Deed of Trust are considered to be incorporated into and made a part of this Deed of Trust.

29. **JOINT AND SEVERAL LIABILITY AND LEGAL ENTITY WARRANTY AND CERTIFICATION.** If Trustor consists of more than one person, each will be jointly and severally liable for the faithful performance of all of Trustor's obligations under this Deed of Trust. If Trustor is a legal entity, Trustor (and any person signing this Deed of Trust in a representative capacity on behalf of Trustor) represents, warrants and certifies that Trustor is duly constituted under applicable laws and in good standing; that Trustor has the power, authority, and appropriate authorization to execute this Deed of Trust and enter into the transactions described herein and that, when executed, this Deed of Trust, and any document executed by Trustor in connection herewith, shall be valid and legally binding on Trustor. If Trustor is a trust, each trustee executing this Deed of Trust on behalf of the trust also represents, warrants and certifies that this Deed of Trust and any document executed in connection herewith is being executed by all the currently acting trustees of the trust and that the trust has not been revoked, modified, or amended in any manner which would cause any of the foregoing to be incorrect.

30. **NON-MERGER.** No merger will occur as a result of Beneficiary acquiring any other estate in or any other lien on the Property, unless Beneficiary consents to a merger in writing.

31. **MISCELLANEOUS.** As used herein, the word "including" means "including without limitation" and/or "including but not limited to". The captions used in this Deed of Trust are for convenience only and do not define or limit any terms or provisions. No listing of any specific collateral, items, instances or other matters in any way limits the scope or generality of any language of this Deed of Trust.

Form 1355 - Deed of Trust and Assignment of Rents                    Page 12 of 13

EXHIBIT 4, PAGE 140

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB   Comment:                    Station Id :P1CO

ADDRESSES WHERE NOTICES TO TRUSTOR ARE TO BE SENT:

Erich L. Russell, 2380 Live Oak Rd., Paso Robles, CA 93446

Signature(s):

Erich Russell, aka Erich L. Russell

Form 1355 - Deed of Trust and Assignment of Rents                                                    Page 13 of 13

EXHIBIT 4, PAGE 141

Branch :KNR,User :F111                    Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _San Luis Obispo_

On _03/22/07_ before me, _Sarah Kramer, Notary Public_
      Date                              Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Erich Russell_
                                      Name(s) of Signer(s)

☒ personally known to me

☐ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

SARAH KRAMER
Commission # 1662124
Notary Public - California
San Luis Obispo County
My Comm. Expires Apr 29, 2010

Place Notary Seal Above

———————————— OPTIONAL ————————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____          Signer's Name: _____
☐ Individual                                 ☐ Individual
☐ Corporate Officer — Title(s): _____      ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General              ☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact                           ☐ Attorney in Fact
☐ Trustee                                    ☐ Trustee
☐ Guardian or Conservator                    ☐ Guardian or Conservator
☐ Other: _____                     ☐ Other: _____

Signer Is Representing: _____              Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER / Top of thumb here

© 2006 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402        Item No. 5907      Reorder: Call Toll-Free 1-800-876-6827

EXHIBIT 4, PAGE 142

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB  Comment:                Station Id :P1CO

Erich L. Russell
Loan No. 8278571 / 0663489392
March 5, 2007
Page __1__ of __3__

Deed of Trust and Assignment
of Rents - Counterpart
Counties of **San Luis Obispo**
and **Sonoma**, California

### Exhibit "A"

**Description of Real Property located in San Luis Obispo County:**

PARCEL A: APN 026,342,039

The Northeast quarter of Section 12, in Township 27 South, Range 11 East, Mount Diablo Base and
Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the
Survey of said land approved by the Surveyor General.

PARCEL A-1:

An Easement for utility purposes beginning at Live Oak Road and extending North over the East 10 feet
on the Northeast quarter of the Southeast quarter of Section 12, Township 27, Range 11, Mount Diablo
Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat
of the Survey of said land approved by the Surveyor General.

PARCEL A-2:

An Easement to provide ingress, egress, public utilities and incidental purposes to the Southwest quarter
of the Northwest quarter of Section 12, Township 27 South, Range 11 East, Mount Diablo Base and
Meridian over, under and upon a strip of land 30 feet wide located in the Southeast quarter of Section 12,
Township 27 South, Range 11 East, Mount Diablo Base and Meridian, according to the Official Plat of
the Survey of said land approved by the Surveyor General, and lying equally on each side of the
following described centerline:

Commencing at the East quarter corner of said Section 12, said corner being shown as a ½" rebar capped
RCE 14994 in Book 1, Page 159 of Official Records;
Thence along the Northerly line of the Southeast quarter of said Section 12, South 89°29'51" West,
1,393.11 feet more or less to the Southwest corner of the Southeast quarter of the Northeast quarter of
said Section 12 and the True Point of Beginning;
Thence leaving said Northerly line South 20°22'08" West, 701.76 feet to a point which bears South
70°16' East, 17.00 feet from the center of a 48" live oak tree;
Thence South 10°30'20" West, 341.71 feet to a point which bears South 79°29' East, 15.00 feet from the
center of a cattle guard;
Thence South 79°29' East to the center of Live Oak Road (County Road No. M5262).

The side lines of the above mentioned 30 foot strip shall be lengthened and shortened to meet the
beginning and ending boundary lines.

EXHIBIT 4, PAGE 143

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB   Comment:                        Station Id :P1CO

Erich L. Russell                                                    Deed of Trust and Assignment
Loan No. 8278571 / 0663489392                                          of Rents - Counterpart
March 5, 2007                                                       Counties of **San Luis Obispo**
Page __2__ of __3__                                                    and **Sonoma**, California

### Exhibit "A"

**Description of Real Property located in San Luis Obispo County:**

PARCEL B: APN  026,021,070

The Southerly 40 acres of the North half of the Northwest quarter of Section 12, in Township 26 South, Range 11 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

EXCEPTING THEREFROM an undivided ½ interest in and to all oil, gas and other hydrocarbon substances and minerals in or under said land, but without right of surface entry as reserved by Clara M. Guthier, a widow, in Deed recorded March 27, 1961 in Book 1115, Page 246 of Official Records.

PARCEL C: APN: 027,145,022

Government Lots 3 and 4 and the East half of the Southwest quarter of Section 31, Township 25 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General, as described in Certificate of Compliance recorded September 13, 1985 as Instrument No. 052170 of Official Records.

EXCEPTING THEREFROM an undivided ½ interest in the land owners share of royalties from oil, gas, other hydrocarbons, or minerals actually produced on or from said land or any part thereof, as reserved by George Blechen and Marie Blechen, his wife and Elsie Loose, a widow in Deed dated May 16, 1958 and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

ALSO EXCEPTING 50% of grantors present interest in all oil, gas and other hydrocarbons and other minerals that are on or may be on or within said lands, together with 50% interest in and to all oil, gas and other hydrocarbons and other minerals as same may be increased upon expiration of royalty interests as reserved in Deed dated May 16, 1958 executed by George Blechen and Marie Blechen, his wife and by Elsie Loose, a widow and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

Such mineral reservations in favor of grantors herein are without any right of entry to the surface of said land and are without any right of entry to the first 500 feet adjacent to and lying beneath the surface of said land.

PARCEL C-1:

A 30 foot wide Easement for ingress, egress and incidental purposes over that portion of Lot 4 of "Home of the Almond", in the County of San Luis Obispo, State of California, according to map recorded in, Book 2, Page 17 of Maps, the centerline of which is more particularly described as follows:

Commencing at the Southeast corner of said Lot 4;
Thence along the Easterly line of Lot 4, North 0°30'00" West, 65.00 feet to the point of beginning;
Thence parallel to the South line of Lot 4, North 89°45'00" West, 203.81 feet;
Thence South 73°38'54" West, 138.47 feet;
Thence South 78°42'47" West, 52.18 feet to a point that lies 15.00 feet North of the South line of said Lot 4;
Thence 15 feet Northerly of and parallel to said South line of Lot 4, North 89°45'00" West, 559.74 feet to the Westerly line of Lot 4.

EXHIBIT 4, PAGE 144

Erich L. Russell
Loan No. 8278571 / 0663489392
March 5, 2007
Page _3_ of _3_

Deed of Trust and Assignment
of Rents - Counterpart
Counties of __San Luis Obispo__
and __Sonoma__, California

### Exhibit "A"

**Description of Real Property located in San Luis Obispo County:**

PARCEL D: APN: 026,104,001

Lot 4 of Section 5, Lots 1, 2, 3 and 4, the Southwest Quarter of the Northeast Quarter and the Southeast Quarter of the Northwest Quarter of Section 6, all in Township 26 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the official plate thereof.

EXCEPTING THEREFROM that portion lying South of San Marcos Road.

ALSO EXCEPTING THEREFROM ½ of the oil, gas, mineral and other hydrocarbon substances in and under said land as reserved by Robert L. Linnett, a married man and Henry C. Brigham, a married man in equal shares by deed recorded June 21, 1977 in Book 1988, Page 755 of Official Records.

PARCEL E: APN:. 014,311,014 .

The Northeast quarter of Section 23, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California.

PARCEL E-1:

A right of way for ingress to and egress from said Parcel 1, and for the installation and maintenance of utility pipe and pole lines, in, upon, along and under a strip of land 40 feet wide, containing 0.038 acres in the Southwest corner of the Southeast quarter of Section 14, Township 26 South, Range 10 East, and 0.638 acres in the Southwest quarter of said section, the centerline of which strip of land is described as follows:

Beginning at a point 28 feet East of the South ¼ corner of Section 14, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, and running thence North 45° West, 68.85 feet to a point 20 feet West of the Easterly boundary line of the Southwest quarter of Section 14;
Thence North and parallel to said Easterly boundary line, 343.9 feet to a point;
Thence North 42°0' West, 28.5 feet to a point;
Thence North 59°40' West, 293.5 feet more or less to the Southeasterly boundary line of the San Marcos-Adelaide County Road.

EXHIBIT 4, PAGE 145

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                        Station Id :P1CO

Erich L. Russell
Loan No. 8278571 / 0663489392
March 5, 2007
Page __1_ of __1__

Deed of Trust and Assignment
of Rents - Counterpart
Counties of **San Luis Obispo**
and **Sonoma**, California

**Exhibit "B"**

**Description of Real Property located in Sonoma County:**

Situated in the State of California, Unincorporated Area, County of Sonoma, and described as follows:

PARCEL ONE

BEGINNING on section line at a point 14.30 chains South from the northwest corner of Section 5,
Township 8 North, Range 9 West, M.D,B, & M., and running thence North 89° 45' East, 63 21 chains to
a station, thence North 69° East, 3.00 chains to an iron pin driven in the center of the county road
leading from Healdsburg to Guerneville; thence South 13° 45' East, 2.15 chains to an iron pin, thence
South 14° 30' East; 3 23 chains to an iron pin in the center of said road, thence North 77° 15' East, 1.91
chains; thence South 33° 40' East, 0.35 chains, thence South 74° 45' East, 0.30 chains; thence North 84°
30' East, 0.18 chains; thence North 62° 30' East, 0.39 chains; thence North 37° East, 0.62 chains to a
station; thence North 77° 15' East, 24.82 chains to a stake driven in the middle of a slough in the
division line between the lands herein described and the lands of John McClish; thence North 19° East,
2.71 chains; thence North 42° 30' East, 1.46 chains, thence North 32° East, 2.25 chains; thence North
24° 10' East, 0.65 chains to an iron pin at corner; thence South 78° 15' West, 32.85 chains to an iron pin
in the center of aforesaid county road; thence North 22° West, in the center of road, 2.49 chains to an
iron pin; thence South 89° 30' West, 65.00 chains to section line, and thence South on section line, 3.18
chains to the point of beginning.

EXCEPTING THEREFROM all that portion lying Easterly of the centerline of the Healdsburg —
Guerneville Road.

PARCEL TWO

BEGINNING at a point, 14.30 chains South from the northwest corner of Section 5, Township 8 North,
Range 9 West, M.D.B, & M,, and running thence, North 89° 45' East, 40.16 chains to a station in the
center of a small creek, thence South 5.77 chains to the land of John McClish; thence West on said
McClish's north line, 40.11 chains to section line; thence North on section line 5.54 chains to the point
of beginning.

(110-070-026-000)

**END OF DOCUMENT**

EXHIBIT 4, PAGE 146

**EXHIBIT 5**

Branch :KNR,User :F111          Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CC

158869
RECORDING REQUESTED BY
CUESTA TITLE COMPANY

Recording requested by and
when recorded mail to:

> Hamner, Jewell & Associates
> Government Real Estate Services
> 340 James Way, Suite 150
> Pismo Beach, CA 93449

**JULIE RODEWALD**
San Luis Obispo County – Clerk/Recorder
Recorded at the request of
**Cuesta Title Company**

AB
12/31/2008
11:34 AM

DOC#: **2008063934**

| Titles: 1 | Pages: 5 |
|---|---|
| Fees | 20.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $20.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE
No documentary transfer tax per Rev. & Tax. Code 11922
No fee per Gov. Code 6103

Project: Nacimiento Waterline
APN: 026-104-001; 027-145-022

## AGREEMENT AND DECLARATION OF SUBORDINATION

THIS DECLARATION is executed this __18th__ day of __December__, 2008 by Farm Credit West, FLCA.

WHEREAS, Farm Credit West, FLCA is the current owner and holder of the beneficial interest under that certain Deed of Trust and Assignment of Rents ("Deed of Trust") dated March 5, 2007, executed by Erich Russell, also known as Erich L. Russell, a married man, as his sole and separate property, securing an indebtedness in the original amount of $17,500,000.00, and recorded on March 23, 2007 as Instrument No. 2007019418 of Official Records of San Luis Obispo County. Said Deed of Trust encumbers the Real Property described as follows:

See Exhibit "1"

WHEREAS, a portion of said Real Property is encumbered by the San Luis Obispo County Flood Control and Water Conservation District by way of an Easement Deed executed by Erich Russell on October 16, 2008, in favor of the San Luis Obispo County Flood Control and Water Conservation District and ~~attached hereto as Exhibit "2."~~ recorded concurrently herewith

WHEREAS, it is the intent of Farm Credit West, FLCA, as owner and holder of the above-mentioned Deed of Trust, that said Deed of Trust be and remain a lien and charge upon the subject property second and subordinate to the burden and charge created by the above mentioned easement in favor of the San Luis Obispo Flood Control and Water Conservation District.

Page 1 of 2

EXHIBIT 5, PAGE 147

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB  Comment:                Station Id :P1CO

NOW, THEREFORE the undersigned, Farm Credit West, FLCA, in consideration of the benefits accruing and other valuable consideration, does hereby subordinate the lien of said Deed of Trust above mentioned to the burden and charge of the easement in favor of the San Luis Obispo Flood Control and Water Conservation District.

In all other respects the terms and conditions of said Deed of Trust are intended to remain unchanged and are not intended to be modified hereby.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the date first above written.

FARM CREDIT WEST, FLCA

By _____

Name:  Mark Pearce

Title:  Senior Vice President

State of California

County of San Luis Obispo

On 12/19/08 _____ before me, Sarah Kramer, Notary Public _____

Notary Public, personally appeared Mark Pearce

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Signature of Notary Public

SARAH KRAMER
Commission # 1662124
Notary Public - California
San Luis Obispo County
My Comm. Expires Apr 29, 2010

(Seal)

Page 2 of 2

EXHIBIT 5, PAGE 148

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO



Rabbit Ridge Wine Sales, Inc.
Erich L. Russell
Customer No. 0663487792
March 5, 2007
Page __1__ of __3__

Deed of Trust and Assignment
of Rents - Counterpart
Counties of **San Luis Obispo**
and **Sonoma**, California

**Description of Real Property located in San Luis Obispo County:**

PARCEL A: APN 026,342,039

The Northeast quarter of Section 12, in Township 27 South, Range 11 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

PARCEL A-1:

An Easement for utility purposes beginning at Live Oak Road and extending North over the East 10 feet on the Northeast quarter of the Southeast quarter of Section 12, Township 27, Range 11, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

PARCEL A-2:

An Easement to provide ingress, egress, public utilities and incidental purposes to the Southwest quarter of the Northwest quarter of Section 12, Township 27 South, Range 11 East, Mount Diablo Base and Meridian over, under and upon a strip of land 30 feet wide located in the Southeast quarter of Section 12, Township 27 South, Range 11 East, Mount Diablo Base and Meridian, according to the Official Plat of the Survey of said land approved by the Surveyor General, and lying equally on each side of the following described centerline:

Commencing at the East quarter corner of said Section 12, said corner being shown as a ½" rebar capped RCE 14994 in Book 1, Page 159 of Official Records;
Thence along the Northerly line of the Southeast quarter of said Section 12, South 89°29'51" West, 1,393.11 feet more or less to the Southwest corner of the Southeast quarter of the Northeast quarter of said Section 12 and the True Point of Beginning;
Thence leaving said Northerly line South 20°22'08" West, 701.76 feet to a point which bears South 70°16' East, 17.00 feet from the center of a 48" live oak tree;
Thence South 10°30'20" West, 341.71 feet to a point which bears South 79°29' East, 15.00 feet from the center of a cattle guard;
Thence South 79°29' East to the center of Live Oak Road (County Road No. M5262).

The side lines of the above mentioned 30 foot strip shall be lengthened and shortened to meet the beginning and ending boundary lines.

# EXHIBIT 1

EXHIBIT 5, PAGE 149

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB  Comment:                Station Id :P1CO

Rabbit Ridge Wine Sales, Inc.
Erich L. Russell
Customer No. 0663487792
March 5, 2007
Page __2__ of ___3___

Deed of Trust and Assignment
of Rents - Counterpart
Counties of **San Luis Obispo**
and **Sonoma**, California

**Description of Real Property located in San Luis Obispo County:**

PARCEL B: APN 026,021,070

The Southerly 40 acres of the North half of the Northwest quarter of Section 12, in Township 26 South, Range 11 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

EXCEPTING THEREFROM an undivided ½ interest in and to all oil, gas and other hydrocarbon substances and minerals in or under said land, but without right of surface entry as reserved by Clara M. Guthier, a widow, in Deed recorded March 27, 1961 in Book 1115, Page 246 of Official Records.

PARCEL C: APN: 027,145,022

Government Lots 3 and 4 and the East half of the Southwest quarter of Section 31, Township 25 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General, as described in Certificate of Compliance recorded September 13, 1985 as Instrument No. 052170 of Official Records.

EXCEPTING THEREFROM an undivided ½ interest in the land owners share of royalties from oil, gas, other hydrocarbons, or minerals actually produced on or from said land or any part thereof, as reserved by George Blechen and Marie Blechen, his wife and Elsie Loose, a widow in Deed dated May 16, 1958 and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

ALSO EXCEPTING 50% of grantors present interest in all oil, gas and other hydrocarbons and other minerals that are on or may be on or within said lands, together with 50% interest in and to all oil, gas and other hydrocarbons and other minerals as same may be increased upon expiration of royalty interests as reserved in Deed dated May 16, 1958 executed by George Blechen and Marie Blechen, his wife and by Elsie Loose, a widow and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

Such mineral reservations in favor of grantors herein are without any right of entry to the surface of said land and are without any right of entry to the first 500 feet adjacent to and lying beneath the surface of said land.

PARCEL C-1:

A 30 foot wide Easement for ingress, egress and incidental purposes over that portion of Lot 4 of "Home of the Almond", in the County of San Luis Obispo, State of California, according to map recorded in Book 2, Page 17 of Maps, the centerline of which is more particularly described as follows:

Commencing at the Southeast corner of said Lot 4;
Thence along the Easterly line of Lot 4, North 0°30'00" West, 65.00 feet to the point of beginning;
Thence parallel to the South line of Lot 4, North 89°45'00" West, 203.81 feet;
Thence South 73°38'54" West, 138.47 feet;
Thence South 78°42'47" West, 52.18 feet to a point that lies 15.00 feet North of the South line of said Lot 4;
Thence 15 feet Northerly of and parallel to said South line of Lot 4, North 89°45'00" West, 559.74 feet to the Westerly line of Lot 4.

# EXHIBIT 1

EXHIBIT 5, PAGE 150

Branch :KNR,User :F111          Order: 00354793   Title Officer: VRB   Comment:          Station Id :P1CO

Rabbit Ridge Wine Sales, Inc.
Erich L. Russell
Customer No. 0663487792
March 5, 2007
Page ___3___ of ___3___

Deed of Trust and Assignment
of Rents - Counterpart
Counties of <u>San Luis Obispo</u>
and <u>Sonoma</u>, California

**Description of Real Property located in San Luis Obispo County:**

PARCEL D: APN: 026,104,001

Lot 4 of Section 5, Lots 1, 2, 3 and 4, the Southwest Quarter of the Northeast Quarter and the Southeast Quarter of the Northwest Quarter of Section 6, all in Township 26 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the official plate thereof.

EXCEPTING THEREFROM that portion lying South of San Marcos Road.

ALSO EXCEPTING THEREFROM ½ of the oil, gas, mineral and other hydrocarbon substances in and under said land as reserved by Robert L. Linnett, a married man and Henry C. Brigham, a married man in equal shares by deed recorded June 21, 1977 in Book 1988, Page 755 of Official Records.

PARCEL E: APN:. 014,311,014

The Northeast quarter of Section 23, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California.

PARCEL E-1:

A right of way for ingress to and egress from said Parcel 1, and for the installation and maintenance of utility pipe and pole lines, in, upon, along and under a strip of land 40 feet wide, containing 0.038 acres in the Southwest corner of the Southeast quarter of Section 14, Township 26 South, Range 10 East, and 0.638 acres in the Southwest quarter of said section, the centerline of which strip of land is described as follows:

Beginning at a point 28 feet East of the South ¼ corner of Section 14, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, and running thence North 45° West, 68.85 feet to a point 20 feet West of the Easterly boundary line of the Southwest quarter of Section 14;
Thence North and parallel to said Easterly boundary line, 343.9 feet to a point;
Thence North 42°0' West, 28.5 feet to a point;
Thence North 59°40' West, 293.5 feet more or less to the Southeasterly boundary line of the San Marcos-Adelaide County Road.

# EXHIBIT 1

END OF DOCUMENT

EXHIBIT 5, PAGE 151

**EXHIBIT 6**

Branch :KNR,User :F111          Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

RECORDING REQUESTED BY
CHICAGO TITLE

**JULIE RODEWALD**
San Luis Obispo County — Clerk/Recorder
Recorded at the request of
**Chicago Title Company**

AB
2/06/2009
8:00 AM

Recording Requested by:

WHEN RECORDED MAIL TO:
Farm Credit West, FLCA
Attn: Loan Certification
P.O. Box 6070
Ventura, CA 93006
Advance Loan No. 8060924
Customer Number: 0663489392

DOC#: **2009005727**

| Titles: 1 | Pages: 2 |
|---|---|

| Fees | 11.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $11.00 |

Space Above This Line For Recorder's Use

### NOTICE OF ADVANCE UNDER DEED OF TRUST

THIS NOTICE OF ADVANCE UNDER DEED OF TRUST IS GIVEN WITH REFERENCE TO THE
FOLLOWING:

**WHEREAS,** Erich Russell, also known as Erich L. Russell, a married man and his sole and separate property, is named as grantor/trustor (hereinafter **"Grantor"**) in that certain deed of trust dated March 5, 2007, wherein Farm Credit West, FLCA, is named trustee and beneficiary; which instrument was recorded on March 23, 2007, as Document No. 2007019418, San Luis Obispo County, State of California;

**AND WHEREAS** the undersigned, Robert G. Pierce, III, has succeeded to a portion of the interest of Grantor above;

**AND WHEREAS** the said deed of trust was given to secure the payment of a promissory note of even date for the amount of $17,500,000.00, and other obligations of the grantor recited therein, and evidenced on the books of Farm Credit West, FLCA, as Loan/Customer No. 8278571 / 0663489392;

**AND WHEREAS** the referred to deed of trust provides that the same is also given to secure the payment of such additional sum or sums that may there after be advanced by said beneficiary to grantor;

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN** that Farm Credit West, FLCA, has advanced to grantor an additional $3,525,000.00; that the said amount is payable with interest as prescribed in a promissory note dated January 15, 2009; that the said advance is acknowledged by the undersigned to be secured by the herein above referred to deed of trust pursuant to the provisions recited therein.

**FURTHER NOTICE IS HEREBY GIVEN** that the sum of the balance owing on the initial promissory note secured by the herein above referred to deed of trust, plus all subsequent advances, outlays and interest accrued thereon to the date hereof totals $20,645,299.94.

Date:  January 15, 2009

Signatures of Grantor

_____                    _____
Erich Russell, aka Erich L. Russell              Robert G. Pierce, III

*ASN 1232 - (4-95) Notice of Advance Under Deed of Trust
                                                              Page 1 of 1

EXHIBIT 6, PAGE 152

Branch :KNR,User :F111          Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CC

## CALIFORNIA ALL-PURPOSE
## ACKNOWLEDGMENT

State of California          )
                             ) §.
County of San Luis Obispo    )

On 2/3/09 _____ before me, Lucinda C. Sweet, Notary Public, personally appeared
ERICH RUSSELL, & ROBERT G. PIERCE III
_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Lucinda C. Sweet, Notary Public
Commission #1820789
My commission expires Nov. 25, 2012

> LUCINDA C. SWEET
> Commission # 1820789
> Notary Public - California
> San Luis Obispo County
> My Comm. Expires Nov 25, 2012

---

OPTIONAL INFORMATION

Description of attached document:

Title or Type of Document: NOTICE OF ADVANCE UNDER
                           DEED OF TRUST
_____

Document Date: _____ 1-15-2009 _____
Signers other than named above: NONE _____

END OF DOCUMENT

EXHIBIT 6, PAGE 153

**EXHIBIT 7**

Branch :KNR,User :F111          Order: 00354793  Title Officer: VRB  Comment:          Station Id :P1CO

Recording Requested by:
**FIRST AMERICAN TITLE CO.**

WHEN RECORDED MAIL TO:

Farm Credit West, PCA
175 Cow Meadow Place
Paso Robles, CA 93446

3445570-MA

**JULIE RODEWALD**
San Luis Obispo County – Clerk/Recorder

Recorded at the request of
**First American Title Company**

| DOC#: | 2010011915 | Titles: 2 | Pages: | 17 |
|---|---|---|---|---|

| | | |
|---|---|---|
| Fees | | 76.00 |
| Taxes | | 0.00 |
| Others | | 3.00 |
| PAID | | $79.00 |

IN
3/18/2010
8:00 AM

Space Above This Line For Recorder's Use

## DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST and ASSIGNMENT OF RENTS ("**Deed of Trust**"), made this 26th day of **February 2010**, between **Erich L. Russell, a married man as his sole and separate property; and Robert G. Pierce, III, a married man as his sole and separate property**, as "**Trustor**", and **Farm Credit West, PCA**, as "**Trustee**" and "**Beneficiary**", a corporation organized and existing under the laws of the United States of America, with its office at **175 Cow Meadow Place, Paso Robles, CA 93446**.

**1. GRANT IN TRUST.** Trustor IRREVOCABLY GRANTS, CONVEYS AND ASSIGNS to said Trustee, in trust for the benefit of Beneficiary, with power of sale together with right of entry and possession, the property described below in Sections 1.1 through 1.5 inclusive (collectively, the "**Property**").

**1.1** The real property (the "**Real Property**") situated in the State(s) and Counties, described as follows: in Exhibit "A".

**1.2. BUILDINGS, FIXTURES, AND OTHER IMPROVEMENTS.** All buildings, structures, equipment, goods that are or will become fixtures (including, but not limited to, trees, vines and shrubs) and improvements of every kind and description now or hereafter constructed or placed on the Real Property; all standing timber and timber to be cut located on the Real Property; and all pumping plants, electrical generators, wind machines, and fencing and storage tanks, now or hereafter used in connection with the Property, all of which are hereby declared to be fixtures. Without limiting the generality of the foregoing, a description of some fixtures may also be included with the description of the Real Property set forth above or in an exhibit hereto.

**1.3. LEASES AND OTHER RIGHTS.** All existing and future leases, subleases, licenses, permits, agreements, permits and concessions relating to the use or enjoyment of the Real Property, including all grazing rights, leases, permits and licenses; all oil, gas, and mineral leases, permits and rights used with the Real Property; and all tenements, hereditaments, easements, rights-of-way and appurtenances to the Property.

**1.4. WATER ASSETS.** All right, title, and interest at any time of Trustor (or any of its bailees, agents, or instrumentalities), whether now existing or hereafter arising or acquired, whether direct or indirect, whether owned legally, of record, equitably or beneficially, whether constituting real or personal property (or subject to any other characterizations), whether created or authorized under existing or future laws or regulations, and however arising in, including without limitation, the water, water rights and other assets and items described below in Sections 1.4(a) through 1.4(i) inclusive, which shall collectively be called "**Water Assets**". References to "water" and "water rights" are used herein in the broadest and most comprehensive sense of the term(s). The term "**water**" includes water rights and rights to water or whatever rights to money, proceeds,

Form 1355 - Deed of Trust and Assignment of Rents                                    Page 1 of 12

EXHIBIT 7, PAGE 154

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                Station Id :P1CO

property or other benefits are exchanged or received for or on account of any Water Assets or any conservation or other nonuse of water, including whatever rights are achieved by depositing one's share of any Water Assets in any water bank or with any water authority, or any other water reallocation rights.  Without limiting the generality of the foregoing, a description of some Water Assets may also be included with the description of the Property set forth above or in an exhibit hereto.

(a)   All water (including any water inventory in storage), water rights and entitlements, other rights to water and other rights to receive water or water rights of every kind or nature whatsoever including: (a) the groundwater on, under, pumped from or otherwise available to the Property, whether as the result of groundwater rights, contractual rights or otherwise; (b) Trustor's right to remove and extract any such groundwater including any permits, rights or licenses granted by any governmental authority or agency or any rights granted or created by any use, easement, covenant, agreement, or contract with any person or entity; (c) any rights to which the Property is entitled with respect to surface water, whether such right is appropriative, riparian, prescriptive, decreed or otherwise and whether or not pursuant to permit or other governmental authorization, or the right to store any such water; (d) any water, water right, water allocation, distribution right, delivery right, water storage right, or other water-related entitlement appurtenant or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any district, agency, or other governmental entity or within the boundaries of any private water company, mutual water company, or other non-governmental entity; (e) all water and existing and future water rights, however evidenced, to the use of water for irrigation, livestock and domestic purposes, including irrigation and watering equipment and systems, ditches, laterals, conduits, and rights-of-way used to convey such water or to drain the Property, all of which rights are or are hereby made appurtenant to the Property.

(b)   All stock, interest or rights (including any water allocations, voting or decision rights) in any entity, together with any and all rights from any entity or other person to acquire, receive, exchange, sell, lease, or otherwise transfer any Water Assets, to store, deposit or otherwise create water credits in a water bank or similar or other arrangement for allocating water, to transport or deliver water, or otherwise to deal with any Water Asset.

(c)   All licenses, permits, approvals, contracts, decrees, rights and interests to acquire or appropriate any Water Assets, water bank or other credits evidencing any right to Water Assets, to store, carry, transport or deliver Water Assets, to sell, lease, exchange, or otherwise transfer any Water Asset, or to change the point for diversion of water, the location of any Water Asset, the place of use of any Water Asset, or the purpose of the use of any Water Asset.

(d)   All rights, claims, causes of action, judgments, awards, and other judicial, arbiter or administrative relief in any way relating to any Water Asset.

(e)   All storage and treatment rights for any Water Asset, whether on or off the Property or other property of Trustor, together with all storage tanks, and other equipment used or usable in connection with such storage and any water bank deposit credits, deposit accounts or other rights arising on account of the storage or nonuse of any Water Asset.

(f)   All rights to transport, carry, allocate or otherwise deliver Water Assets by any means wherever located.

(g)   All irrigation and watering equipment, including all pumps, pumping plants, storage tanks, pump motors, electrical generators (all of which are declared to be fixtures) and all systems, ditches, laterals, conduits, and rights-of-way used to convey such water or to drain the Property.

(h)   All guaranties, warranties, marketing, management or service contracts, indemnity agreements, and water right agreements, other water related contracts and water reallocation rights, all insurance policies regarding or relating to any Water Asset.

---

Form 1355 - Deed of Trust and Assignment of Rents                                                           Page 2 of 12

EXHIBIT 7, PAGE 155

Branch :KNR,User :F111                    Order: 00354793    Title Officer: VRB    Comment:                    Station Id :P1CO

(i)    All rents, issues, profits, proceeds and other accounts, instruments, chattel paper, contract rights, general intangibles, deposit accounts, and other rights to payment arising from or on account of any use, nonuse, sale, lease, transfer or other disposition of any Water Asset.

**1.5.  ADDITIONS AND PROCEEDS.**  All additions, accretions substitutions and replacements of any of the Property; all proceeds of the Property, including all proceeds of present and future insurance policies; and all condemnation awards or payments now or later made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any misrepresentation, damage or injury to, or defect in, the Property.

**2.  ASSIGNMENT OF RENTS.**  TRUSTOR ABSOLUTELY AND UNCONDITIONALLY ASSIGNS, transfers, conveys and sets over to Beneficiary all the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use, non-use, enjoyment, sale, transfer or other disposition of all or any portion thereof, including those set forth in Paragraph 1.4(i) above, or from any lease, mineral lease, or agreement pertaining to the Property (collectively the "Rents"); whether now existing or hereafter arising and whether now due, past due or to become due; SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Trustor by Paragraph 19 hereof.  This assignment of the Rents shall be perfected automatically without appointment of a receiver or Beneficiary becoming a mortgagee in possession.

**3.  OBLIGATIONS SECURED.**  Trustor makes the grant, conveyance, and assignment of the Property as described above for purposes of securing the following indebtedness and other obligations (collectively, "**Indebtedness**") in any order of priority that Beneficiary may choose:

(a)    payment of the indebtedness and performance of the obligations of Trustor evidenced by the following promissory note(s) (collectively "**Note**") and/ or the following continuing guaranty(s) (collectively "**Guaranty**"), and any other documents executed by Trustor in conjunction with the Note or Guaranty:

☐    a Promissory Note or a Supplement to Master Loan Agreement dated as of _____, in the stated principal amount of _____.

☒    a Revolving Line of Credit Promissory Note or a Revolving Credit Supplement to a Master Loan Agreement dated as of **02/26/2010**, in the stated principal amount of **$300,000.00**.

☒    a continuing guaranty dated as of **02/26/2010**, executed by Trustor in favor of Beneficiary, guaranteeing the indebtedness of the borrowers as defined in the Guaranty.

(b)    the payment of such additional loans or advances , including advances under a revolving line of credit, with interest thereon, as hereafter may be made to or guaranteed by Trustor, or Trustor's successors or assigns, evidenced by a promissory note, guaranty, loan agreement or otherwise; PROVIDED HOWEVER, THAT, such additional loans or advances will be secured by this Deed of Trust only if the promissory note, guaranty, loan agreement or other document evidencing the obligations of Trustor relative to such loans or advances recites that it is to be secured by this Deed of Trust;

(c)    the payment and performance of the obligations set forth in any document evidencing an extension, renewal, modification, replacement, reamortization, conversion, or restatement of any Indebtedness secured by this Deed of Trust, including without limitation renewal and/or substitute notes, guarantys, and loan agreements.

(d)    the performance of every obligation and agreement of Trustor whether contained or incorporated by reference in this Deed of Trust, or contained in any loan agreement, loan document or guaranty executed by Trustor in favor of Beneficiary, with respect to any loan or advance secured by this Deed of Trust; and

(e)    the payment of all sums expended or advanced by Beneficiary under or pursuant to the terms of this Deed of Trust, together with interest thereon as herein provided.

---

Form 1355 - Deed of Trust and Assignment of Rents                                                      Page 3 of 12

EXHIBIT 7, PAGE 156

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB   Comment:                    Station Id :P1CO

The Notes referred to above are payable by Trustor and/or others to the Beneficiary at the times, in the manner and with interest as therein set forth. The Note and other documents evidencing the Indebtedness may contain variable or adjustable interest rate provisions and provisions evidencing revolving lines of credit.

The continuing validity and priority of this Deed of Trust as security for future loans or advances will not be impaired by the fact that at certain times hereafter there may be no outstanding loan or other indebtedness from Trustor to Beneficiary and/or no commitment to make loans or advances.

Notwithstanding the foregoing, this Deed of Trust does not secure any indebtedness or other obligation if the promissory note, guaranty, or any other document evidencing or pertaining to the indebtedness or obligation states that it is unsecured or not secured by real property.

**4. PERSONAL PROPERTY SECURITY AGREEMENT.** All of the Property will be considered to the fullest extent of the law to be real property for purposes of this Deed of Trust. To the extent that any of the Property, (including without limitation any Water Assets or fixtures), is deemed to constitute, is adjudicated to be, or declared to be personal property, this Deed of Trust shall also be deemed to be a security agreement. Trustor does hereby create and grant to Beneficiary a security interest in all such personal property described herein; and further, grants to Beneficiary all of the rights and remedies of a secured party under the Uniform Commercial Code and other applicable state law, which rights are cumulative.

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES TO EACH OF THE FOLLOWING:**

**5. USE OF PROCEEDS.** To use loan proceeds solely for the purposes set forth in the loan application(s) or as otherwise required by Beneficiary.

**6. CONDITION OF PROPERTY.** To keep the Property in good condition, working order and repair; to care for the Property in accordance with standards of good husbandry and to keep all trees, vines and crops on said land properly cultivated, irrigated, fertilized, sprayed, and fumigated; not to sell, transfer, assign, encumber or convey any water or water right from the Property, or to enter into an agreement for the nonuse of water, without the prior written consent of Beneficiary; not to remove, destroy or suffer the removal or destruction of any building, fence, canal, well or other improvements or fixtures thereon; not to remove, replace or alter any horticultural or viticultural tree, vine or shrub planted thereon without the prior written consent of Beneficiary, except in the ordinary course of business; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to comply with all laws, covenants and restrictions affecting the Property; not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general; to observe and perform all obligations of Trustor under any lease of the Property.

**7. INSURANCE.** To provide, maintain and deliver to Beneficiary, fire, extended coverage, flood, and all other types of insurance, in terms and amounts as may be required by law or Beneficiary, with loss payable endorsements (including lender loss payable endorsements) solely in favor of Beneficiary. In the event of loss, the insurance proceeds, or any part thereof, may be applied by Beneficiary, at its option, to reduce the Indebtedness or restore or repair the property damaged. Failure to obtain, maintain or deliver to Beneficiary the insurance required shall constitute an event of default under this Deed of Trust.

At least thirty (30) days prior to the expiration of any such policy of insurance, Trustor will deliver a policy renewing or extending such expiring insurance and written evidence demonstrating payment of the premium for such insurance. If any such policy and evidence of payment (or copies of same, if originals cannot be delivered to Beneficiary) are not so delivered to Beneficiary, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, Beneficiary may (but is not obligated to), at Trustor's expense, obtain insurance in such types, on such terms and in such amounts as Beneficiary in its sole discretion shall decide, through or from any insurance agency or company acceptable to it. Any insurance obtained by Beneficiary shall be

Form 1355 - Deed of Trust and Assignment of Rents                                          Page 4 of 12

EXHIBIT 7, PAGE 157

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB   Comment:                Station Id :P1CO

for its sole benefit and to protect the security of this Deed of Trust. The expense and cost of such insurance shall, at Beneficiary's sole option, be payable on demand or added to the Indebtedness as provided herein. Neither Trustee nor Beneficiary shall be chargeable with or responsible for the procurement or maintenance of any such insurance, the collection of any proceeds from such insurance, or the insolvency of any insurance company or underwriter.

**8. DEFENSE OF TITLE.** To appear in and litigate any action or proceeding purporting to affect the security hereof, the title to the Property, or the rights or powers of Beneficiary or Trustee. Beneficiary or Trustee may appear in and litigate any such action or proceedings, including any bankruptcy, partition or condemnation proceeding, affecting the Property, or Beneficiary's interest therein, in which event Trustor agrees to pay all costs and expenses thereof, including attorney's fees and costs of securing evidence of title.

**9. TAXES, LIENS AND ASSESSMENTS.** To pay on or before the due date all taxes and assessments affecting the Property, including all assessments upon water company stock, and all rents, assessments and charges for water appurtenant to or used in connection with the Property; to pay when due all encumbrances, charges, and liens on the Property, or any part thereof, which at any time appear to be prior or superior hereto.

**10. FEES AND COSTS.** In the event that Beneficiary or Trustee uses the services of attorneys, accountants, appraisers, consultants, or other professional or outside assistance, including the services of in-house counsel or any other attorney or professional who is an employee of Lender, the reasonable amount of fees, costs and expenses ("**Expenses**") incurred by Beneficiary or Trustee to use such persons in connection with any of the following shall be payable by Trustor on demand. Beneficiary or Trustee may, at its option, add the amount of such Expenses to any portion of the Indebtedness plus an appropriate amount of Beneficiary's stock or participation certificates required in connection with the loan (as required by federal law or regulation or Beneficiary's bylaws), and charge interest on such amount at the interest rate applicable to such portion of the Indebtedness. These Services include:

(a)  The preparation, modification or enforcement of this Deed of Trust, and any other agreement or document incident to the Indebtedness or to the Property;

(b)  Advising Beneficiary or Trustee concerning its legal rights and obligations with regard to this Deed of Trust and any other agreement or document incident to the Indebtedness, or to the Property, including advising Beneficiary or Trustee with regard to the extent of their rights, if any, under the provisions of the Farm Credit Act of 1971, as amended, ("**Act**"), Farm Credit Administration ("**FCA**") regulations, any policy or program of Beneficiary, or any other state or federal law;

(c)  Any litigation, dispute, proceeding, or action (whether or not dismissed, reduced to judgment, or otherwise resolved), and whether instituted by Beneficiary, Trustee or Trustor or any other person, relating to the Indebtedness, the Property or Trustor's affairs;

(d)  The furtherance of Beneficiary's or Trustee's interest in any bankruptcy, insolvency, or reorganization case or proceeding instituted by or against Trustor, including any steps to (i) modify or terminate the automatic stay, (ii) prohibit or condition Trustor's use of cash collateral, (iii) object to any disclosure statement or plan, (iv) propose or confirm a plan, and (v) prosecute or defend adversary proceedings or contested matters, and take or defend examinations or discovery, whether or not related to any adversary proceeding or contested matter and whether or not dismissed, reduced to judgment, or otherwise resolved;

(e)  The inspection, verification, protection, collection, processing, sale, liquidation, or disposition of the Property; and

(f)  Any of the type of Expenses referred to in (a) through (e) above incurred by Beneficiary or Trustee in connection with any guaranty of the Indebtedness.

The Expenses described herein and elsewhere in this Deed of Trust shall be in addition to those set forth in any Security Instrument or any other written agreement between Beneficiary and Trustor.

---

EXHIBIT 7, PAGE 158

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB   Comment:                Station Id :P1CO

**11. BENEFICIARY MAY ACT FOR TRUSTOR.** Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the Property, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; commence, appear in and litigate any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary or Trustee, including any bankruptcy proceeding affecting the Property; pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; pay such fees, charges, rents or other payments accruing under the grazing permits described in Section 14 below; and in exercising any such powers, incur any liability, expend whatever amounts in its absolute discretion it may deem necessary therefore, including attorney's, accountant's, and appraisal fees, environmental fees and costs of securing evidence of title, and all amounts so expended shall be obligations of Trustor secured by this Deed of Trust. Nothing contained herein shall prohibit Beneficiary from entering the Property, at a reasonable time and upon reasonable notice to Trustor, without incurring or assuming any obligations or liabilities whatsoever, for the sole purpose of inspecting the Property.

**12. SUMS EXPENDED BY BENEFICIARY.** To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof, with interest from date of expenditure at the same rate as is provided for in the note or notes secured by this Deed of Trust.   All such sums shall be secured hereby.

**13. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.**
**13.1. DEFINITIONS.** Defined Terms as used in this Paragraph 13:

(a)  **"Environmental Laws"** shall mean all federal, state and local laws, ordinances, rules and regulations now or hereafter in force, as amended from time to time, in any way relating to or regulating human health or safety, industrial hygiene or protection of the environment.

(b)  **"Hazardous Substances"** shall mean any substance or material that is described, designated or regulated as a toxic or hazardous substance, waste or material or a pollutant or contaminant, or words of similar import, in any of the Environmental Laws.

(c)  **"Release"** shall mean any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment, including continuing migration, of Hazardous Substances into, onto or through the soil, surface water or groundwater of the Property, whether or not caused by, contributed to, permitted by, acquiesced to or known to Trustor.

(d)  **"User"** means any person other than Trustor who occupies, uses or comes onto or has occupied, used or come onto the Property or any part thereof and any agent or contractor of such a person.

**13.2 TRUSTOR REPRESENTS AND WARRANTS.** Trustor represents and warrants to Beneficiary that, as of the date of this Deed of Trust and to the best of Trustor's knowledge, based on due inquiry and investigation:

(a)  Except as previously disclosed in writing by Trustor to Beneficiary: (i) no Hazardous Substances in excess of permitted levels or reportable quantities under applicable Environmental Laws are present in, on or under the Property or any nearby real property which could migrate to the Property; (ii) no Release or threatened Release exists or has occurred; (iii) neither Trustor nor any User has ever used the Property or any part thereof for the production, manufacture, generation, treatment, handling, storage, transportation or disposal of Hazardous Substances; (iv) no underground, surface or elevated storage tanks of any kind, wells (except domestic water wells), septic tanks, pits, ponds or other impoundments (**"Tanks"**) are or ever have been located in or on the Property; and (v) no investigation, claim, demand, action or proceeding of any kind relating to any Release or threatened Release or any past or present violation of any Environmental Laws relating to the Property has been made or commenced, or is pending, or is being threatened by any governmental authority or other person;

(b)  All operations and activities at, and the use and occupancy of, the Property comply with all applicable Environmental Laws;

Form 1355 - Deed of Trust and Assignment of Rents                                                        Page 6 of 12

EXHIBIT 7, PAGE 159

Branch :KNR,User :F111          Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

(c)   Trustor and every User has, and is in strict compliance with, every permit, license and approval required by all applicable Environmental Laws for all activities and operations at, and the use and occupancy of, the Property;

(d)   Neither the Property, nor any portion thereof, nor any adjacent property or portion thereof, has been or is proposed to be listed under the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Section 9601, et seq.), or any analogous state law; and

(e)   Any written disclosure submitted by or on behalf of Trustor to Beneficiary at Beneficiary's request concerning any Release or threatened Release, past or present compliance by Trustor, User or any other person of any environmental Laws applicable to the Property, the past and present use and occupancy of the Property, any environmental concerns relating to the Property and the like was true and complete when submitted.

**13.3  TRUSTOR AGREES THAT:**

(a)   Except in the ordinary course of business, in a good and husbandlike manner and in strict compliance with all applicable Environmental Laws, Trustor promises that neither Trustor nor any User shall use, produce, manufacture, generate, treat, handle, store, transport, or dispose of any Hazardous Substances in, on or under the Property, or use the Property for any such purposes;

(b)   Trustor shall not cause, contribute to, permit or acquiesce to any Release or threatened Release;

(c)   Trustor shall comply fully, and shall cause every User to comply fully, with all Environmental Laws applicable to the Property, and all other laws, ordinances and regulations applicable to the use or occupancy thereof, or any operations or activities therein or thereon;

(d)   With respect to any Tanks disclosed in writing to Beneficiary, Trustor shall comply with all Environmental Laws and any requirements of city or county fire departments, applicable to the maintenance and use of such Tanks, including, without limitation, Title 40 of the Code of Federal Regulations part 112;

(e)   To facilitate performance of Trustor's obligations under Paragraph 13.3(a), (b), (c), (d) of this Deed of Trust, Trustor shall regularly inspect the Property, monitor the activities and operations of every User and confirm that every User has obtained and fully complies with all permits, licenses and approvals required by all applicable Environmental Laws;

(f)   Immediately after Trustor obtains any information indicating any Release or threatened Release, or that Hazardous Substances in, on or under any nearby property could migrate to the Property or a violation of any Environmental Laws may have occurred or could occur regarding the Property, Trustor shall give notice thereof to Beneficiary with a reasonably detailed description of the event, occurrence or condition in question;

(g)   If Beneficiary obtains any information that Beneficiary believes in good faith indicates a reasonable possibility of a Release or threatened Release, or that Hazardous Substances in, on or under any nearby real property could migrate to the Property or any violation of any Environmental Laws may have occurred or could occur regarding the Property, then Trustor shall, at the expense of Trustor, promptly after a request by Beneficiary, or Beneficiary may at Trustor's expense any time prior to completion of a judicial or nonjudicial foreclosure, engage a qualified environmental engineer to conduct a comprehensive environmental assessment of the Property and prepare and submit to Beneficiary a written report containing the findings and conclusions resulting from such investigation.  Trustor shall, on demand, pay to Beneficiary all sums expended by Beneficiary in connection with any such comprehensive environmental assessment, together with interest thereon after such demand at the interest rate as set forth in the applicable promissory note(s) evidencing the Indebtedness;

(h)   Trustor shall permit, or cause any User to permit, Beneficiary or its agents or independent contractors to enter and inspect the Property (including the taking of building materials, soil and groundwater samples) at any

Form 1355 - Deed of Trust and Assignment of Rents                                                    Page 7 of 12

EXHIBIT 7, PAGE 160

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                Station Id :P1CO

reasonable time and after reasonable notice, except in an emergency, whether or not a default has occurred under this Deed of Trust, and including after the commencement of judicial or nonjudicial foreclosure proceedings, for purposes of determining, as Beneficiary deems necessary or desirable: the existence, location or nature of any Hazardous Substances into, onto, or spread beneath or from the Property, that is located or has been spilled, disposed of, discharged or released on, under or about the Property. Trustor acknowledges that all inspections and reviews undertaken by Beneficiary are solely for the benefit and protection of Beneficiary and agrees that Beneficiary shall have no duty to Trustor with respect to Hazardous Substances or Environmental Laws as a result of any such inspections, and such inspections shall not result in a waiver of any default by Trustor. If Trustor or any User fails to comply fully with the terms of this section, Beneficiary may obtain affirmative injunctive relief to compel such compliance; and

(i)  If any Release or threatened Release exists or occurs before this Deed of Trust is reconveyed or foreclosed upon, or if Trustor is in breach of any of its representations, warranties or covenants as set forth in this Section 13, Trustor shall immediately give notice of the condition to Beneficiary, and Trustor shall at its own expense cause any Hazardous Substances to be cleaned up and removed from the Property, and the Property shall be restored, in compliance with all applicable Environmental Laws and other laws, ordinances, rules and regulations (the "**Remediation Work**'). If requested by Beneficiary, Trustor shall submit to Beneficiary, for Beneficiary's prior approval, complete plans and specifications for all Remediation Work to be done before any Remediation Work is performed, except in an emergency.  Alternatively, Beneficiary may cause such Remediation Work to be completed at Trustor's expense.

**13.4 NOTICE TO GOVERNMENTAL AUTHORITIES.**  Beneficiary shall have the right, but not the obligation, to advise appropriate governmental authorities of any environmental condition on or affecting the Property that constitutes or may constitute a breach of Trustor's obligations hereunder.

**13.5 INDEMNITY OF TRUSTEE AND BENEFICIARY.**  Trustor and its successors and assigns shall indemnify, defend, protect, and hold harmless Beneficiary, and/or Trustee, its directors, officers, employees, agents, shareholders, successors and assigns and their officers, employees or agents, from and against any and all claims, suits, damages, foreseeable and unforeseeable consequential damages, liens, losses, liabilities, interest, judgments, cleanup costs, demands, actions, causes of action, injuries, administrative proceedings and orders, consent agreements and orders, penalties, costs and expenses (including any fees and expenses incurred in enforcing this indemnity, any out-of-pocket litigation costs, sums paid in settlement of claims, and all consultant, expert and the reasonable fees and expenses of counsel, including in-house legal services) of any kind whatsoever ("**Claims**") paid, incurred or suffered by, or asserted against Beneficiary and/or Trustee, including but not limited to Claims arising out of loss of life, injury to persons, trespass or damage to or contamination of property or natural resources, or injury to business, in connection with or arising out of the activities of Trustor on the Property, Trustor's predecessors in interest, third parties who have been invited, permitted or trespassed on the Property, or parties in a contractual relationship with Trustor, or any of them, or which directly or indirectly arise out of or result from or in any way connected with the Property, whether or not caused by Trustor or within the control of Trustor, including without limitation: (a) the presence, use, generation, treatment, storage, disposal, Release, threatened Release, or discharge of any Hazardous Material or Contaminant at or from said Property and/or the cleanup of Hazardous Materials or Contaminants within, on or under said Property; (b) Trustor's breach of any of the representations, warranties and covenants contained herein; and (c) Trustor's violation or alleged violation of any applicable Environmental Law, regulation or ordinance.

**13.6  SURVIVAL.**  NOTWITHSTANDING ANY OTHER PROVISION OF THIS DEED OF TRUST, THE NOTE OR ANY LOAN DOCUMENTS, TRUSTOR'S REPRESENTATIONS, WARRANTIES, COVENANTS AND INDEMNITIES CONTAINED IN THIS SECTION 13 SHALL SURVIVE THE OCCURRENCE OF ANY EVENT WHATSOEVER, INCLUDING WITHOUT LIMITATION THE PAYOFF OF THE PROMISSORY NOTE SECURED HEREBY, THE RECONVEYANCE OR FORECLOSURE OF THIS DEED OF TRUST, THE ACCEPTANCE BY TRUSTEE OF A DEED IN LIEU OF FORECLOSURE, OR ANY TRANSFER OR ABANDONMENT OF THE PROPERTY.

SAN LUIS OBISPO,CA                        Page 8 of 17                Printed on 6/16/2021 1:10:32 PM
Document: TDD 2010.11915

EXHIBIT 7, PAGE 161

Branch :KNR,User :F111          Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO

**14.  GRAZING RIGHTS.**  If any portion of the Property described in this Deed of Trust is used by Trustor as the basis for obtaining grazing permits or other grazing rights issued by any governmental agency, including without limitation the Forest Service, U.S. Department of Agriculture or the Bureau of Land Management, U.S. Department of Interior, Trustor covenants and agrees as follows:

(a)  Said grazing permits or other rights are in good standing and have not been modified, reduced or limited in any other respect, except as fully disclosed in writing to Beneficiary;

(b)  Trustor will perform all obligations imposed as a requirement of exercise of said grazing permits or other rights and will comply with all laws, rules and regulations applicable thereto;

(c)  Trustor will take such timely action as may be required to cause the renewal or reissuance of said grazing permits or other rights from time to time as they expire during the term thereof Trustor agrees and acknowledges that the failure to renew or cause the reissuance of any said permits for any reason, whether the result of an act or omission of Trustor or for reasons beyond Trustor's control, is an event of default hereunder and Beneficiary shall have the right to exercise the rights set forth in this Deed of Trust; and

(d)  Trustor agrees to pay all fees, charges, rents or other payments accruing under said permits or any renewals thereof prior to delinquency.  In the event Trustor fails to pay any such payment, the amount unpaid shall become a part of the Indebtedness and shall be immediately due and payable.

**15.  WATER TRANSFERS.**  Trustor represents that Trustor is not in the business of transferring water and, therefore, any sale or transfer of any water or water rights is not a transfer of goods in the ordinary course of business.  Trustor further agrees that in no event will any water or water rights be goods identified to a contract. Trustor hereby acknowledges that the availability of the water and the other Water Assets to the Property was a significant factor in Beneficiary's decision to extend credit to Trustor and any other persons obligated on the Indebtedness, and that any severance of water or water rights or any other Water Asset from the Property would materially harm the Property.

**16.  FINANCIAL INFORMATION.**  At Beneficiary's request, Trustor shall provide to Beneficiary financial information in a form acceptable to Beneficiary, including, when so required, a current balance sheet and profit and loss statement.  In the case of multiple Trustors, financial information must be provided for each Trustor or otherwise as requested by Beneficiary.  Financial information shall be provided at such times during the term of this Deed of Trust as Beneficiary may request.

**IT IS MUTUALLY AGREED THAT:**

**17.  CONDEMNATION AWARDS.**  Any award of damages in connection with any taking or condemnation or injury to the Property by reason of public use, or for damages resulting from private trespass or injury to the Property, is absolutely and unconditionally assigned and shall be paid to Beneficiary, under the terms and conditions of this Deed of Trust pertaining to Rents.  Upon receipt of such money, Beneficiary may apply the same on the Indebtedness.  Trustor agrees to execute such further documents as may be required to effect the assignments herein made as Beneficiary or Trustee may require.

**18.  TRUSTEE ACTIONS.**  At any time, without affecting the liability of any person for the payment of the Indebtedness, and without otherwise affecting the security hereof, Trustee may: (a) consent to or join in the making of any map or plat of the Property; (b) grant any easement or create any restriction thereof; (c) subordinate this Deed of Trust; (d) extend or modify the term of the loan or loans secured hereby; and (e) reconvey without warranty, all or any part of the Property.  Trustor agrees to pay reasonable Trustee's fees for any of the foregoing services.

**19.  COLLECTION OF RENTS.**  Prior to any default by Trustor in the payment, observance, performance and discharge of any condition, obligation, covenant, or agreement of Trustor contained herein, Trustor may, as the agent and fiduciary representative of Beneficiary for collection and distribution purposes only, collect and receive the Rents as they come due and payable; the Rents are to be applied by Trustor to the payment of the principal and

Form 1355 - Deed of Trust and Assignment of Rents                                                    Page 9 of 12

EXHIBIT 7, PAGE 162

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

interest and all other sums due or payable on any promissory note or guaranty secured by this Deed of Trust and to the payment of all other sums payable under this Deed of Trust and, thereafter, so long as aforesaid has occurred, the balance shall be distributed to the account of Trustor. However, Beneficiary shall have the right before or after the occurrence of any default to notify any account debtor to pay all amounts owing with respect to Rents directly to Beneficiary. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Indebtedness, enter upon and take possession of the Property or any part thereof, in its own name, sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any Indebtedness, and in such order as Beneficiary may determine; also perform such acts of repair, cultivation, irrigation or protection, as may be necessary or proper to conserve the value of the Property; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, remove, and sell any crops that may be growing upon the Property, and apply the proceeds thereof upon the Indebtedness.

**20. TRUSTEE'S EXERCISE OF REMEDIES IS NO CURE OF DEFAULT.** The entering upon and taking possession of the Property, the collection of such Rents, or the proceeds of fire and other insurance policies, or compensation or awards for any taking of or damage to the Property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**21. REMEDIES.** Upon default by Trustor in payment of all or a portion of the Indebtedness or in performance of any agreement hereunder, all sums secured hereby shall immediately become due and payable at the option of the Beneficiary and in accordance with applicable state law. In the event of default, Beneficiary may employ counsel to enforce payment of the Indebtedness, may cause the Trustee to sell the Property in accordance with the power of sale granted herein and the applicable state law, and may exercise such other rights and remedies granted under this Deed of Trust or by law and equity, including but not limited to California Code of Civil Procedure Sections 726.5 and 736 or similar laws of other jurisdictions, which rights and remedies shall be cumulative and not exclusive.

Trustee may sell the Property either as a whole or in separate parcels, and in such order as it may determine. The purchase price shall be payable in lawful money of the United States at the time of the sale. In exercising the power of sale contained herein, Trustee may hold one or more sales of all or any portion of the Property by public announcement at the time and place of sale set forth in the notice thereof, and from time to time thereafter may postpone such sale or sales of all or any portion of the Property to the same or separate days by public announcement at such time fixed by the preceding postponement. Any person, including Trustee or Beneficiary, may purchase at such sale. Beneficiary may credit bid at any such sale, and if Beneficiary is the successful purchaser, it may apply any of the outstanding Indebtedness in settlement of the purchase price.

Beneficiary may resort to and realize upon the security hereunder and any other real or personal property security now or hereafter held by Beneficiary for the obligations secured hereby in such order and manner as Beneficiary may, in its sole discretion, determine; or may resort to any or all such security may be taken concurrently or successively and in one or several consolidated or independent judicial actions or lawful nonjudicial proceedings, or both. If the Indebtedness is also secured by personal property, fixtures or crops, Beneficiary may enforce its security interest in the personal property, fixtures and crops and its lien under this Deed of Trust in any manner and in any order or sequence permitted by applicable law.

All remedies are cumulative and none are exclusive; no election by Beneficiary to pursue one remedy or item of collateral shall be deemed to be a release or waiver of any other item of collateral or a release or modification of the liability of Trustor or any guarantor to pay all Indebtedness or perform in full all obligations to Beneficiary. The procedures governing the enforcement by Beneficiary of its foreclosure and provisional remedies against Trustor shall be governed by the laws of the state in which the Property is located. Nothing contained herein shall be construed to provide that the substantive law of the state in which the Property is located shall apply to the Beneficiary's rights and the Trustor's obligations hereunder or under the promissory note(s), which are and shall continue to be governed by the substantive law of the state in which the promissory note was executed.

Form 1355 - Deed of Trust and Assignment of Rents                                                Page 10 of 12

EXHIBIT 7, PAGE 163

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB   Comment:                Station Id :P1CO

**22. NON-WAIVER.** The failure on the part of the Beneficiary to promptly enforce any right hereunder shall not operate as a waiver of such right, and the waiver by Beneficiary of any default shall not constitute a waiver of any other or subsequent defaults. Subsequent acceptance of any payment by the holder hereof shall not be deemed a waiver of any default by Trustor, or of Beneficiary's rights hereunder as the result of any sale, agreement to sell, conveyance, or alienation, regardless of holder's knowledge of such default, sale, agreement to sell, conveyance, or alienation at the time of acceptance of such payment.

**23. SUCCESSORS AND ASSIGNS.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the holder and owner of any note secured hereby; or, if the note has been pledged, the pledgee thereof. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**24. SUBSTITUTE TRUSTEE.** Beneficiary may, from time to time or at any time, substitute a Trustee or Trustees to execute the trust hereby created, and when any such substitution has been filed for record in the office of the Recorder of the county in which the Property herein described is situated, it shall be conclusive evidence of the appointment of such Trustee or Trustees, and such new Trustee or Trustees shall succeed to all of the powers and duties of the Trustee or Trustees named herein.

**25. DUE ON SALE OR TRANSFER.**
**25.1** In the event the herein-described Property, (including any existing or subsequently acquired or created Water Asset), or any part thereof, or any interest therein, is transferred or agreed to be transferred, without Beneficiary's prior written consent, all Indebtedness, irrespective of the maturity dates, at the option of the holder hereof, and without demand or notice, shall immediately become due and payable. As used herein, **"transferred"** means sold, conveyed, alienated, exchanged, transferred by gift, further encumbered, pledged, hypothecated, made subject to an option to purchase, or otherwise disposed of, directly or indirectly, or in trust, voluntarily or involuntarily, by Trustor or by operation of law or otherwise. Failure to exercise such option shall not constitute a waiver of the right to exercise this option in the event of subsequent transfer or subsequent agreement to transfer.

**25.2** If Trustor is an entity other than a natural person (such as a corporation or other organization), then all Indebtedness, irrespective of the maturity date, at the option of Beneficiary, and without demand or notice, shall become immediately due and payable if: (a) a beneficial interest in Trustor is transferred; (b) there is a withdrawal or removal of a general partner of a partnership or a manager of a limited liability company; (c) there is a transfer in the aggregate of more than 25% of the voting stock of Trustor if Trustor is a corporation, or there is a transfer in the aggregate of more than 25% of the partnership interests or membership interests if Trustor is a partnership, limited liability company or similar entity; or (d) Trustor is dissolved or its existence as a legal entity is terminated.

**26. SEVERABILITY.** In the event any one or more of the provisions contained in this Deed of Trust or in any promissory note, guaranty, or other document secured hereby shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Deed of Trust or said promissory note or guaranty, but this Deed of Trust and said promissory notes or guaranties shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

**27. NOTICES TO TRUSTOR.** The undersigned Trustor agrees that he/she is entitled only to those notices required by applicable law and requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth below.

**28. EXHIBITS.** All exhibits to this Deed of Trust are considered to be incorporated into and made a part of this Deed of Trust.

**29. JOINT AND SEVERAL LIABILITY AND LEGAL ENTITY WARRANTY AND CERTIFICATION.** If Trustor consists of more than one person, each will be jointly and severally liable for the faithful performance of all

Form 1355 - Deed of Trust and Assignment of Rents                                                        Page 11 of 12

EXHIBIT 7, PAGE 164

Branch :KNR,User :F111          Order: 00354793   Title Officer: VRB   Comment:          Station Id :P1CO

of Trustor's obligations under this Deed of Trust.  If Trustor is a legal entity, Trustor (and any person signing this Deed of Trust in a representative capacity on behalf of Trustor) represents, warrants and certifies that Trustor is duly constituted under applicable laws and in good standing; that Trustor has the power, authority, and appropriate authorization to execute this Deed of Trust and enter into the transactions described herein and that, when executed, this Deed of Trust, and any document executed by Trustor in connection herewith, shall be valid and legally binding on Trustor.  If Trustor is a trust, each trustee executing this Deed of Trust on behalf of the trust also represents, warrants and certifies that this Deed of Trust and any document executed in connection herewith is being executed by all the currently acting trustees of the trust and that the trust has not been revoked, modified, or amended in any manner which would cause any of the foregoing to be incorrect.

**30. NON-MERGER.**  No merger will occur as a result of Beneficiary acquiring any other estate in or any other lien on the Property, unless Beneficiary consents to a merger in writing.

**31. MISCELLANEOUS.**  As used herein, the word **"including"** means "including without limitation" and/or "including but not limited to".  The captions used in this Deed of Trust are for convenience only and do not define or limit any terms or provisions.  No listing of any specific collateral, items, instances or other matters in any way limits the scope or generality of any language of this Deed of Trust.

ADDRESSES WHERE NOTICES TO TRUSTOR ARE TO BE SENT:

**Erich L. Russell, 2380 Live Oak Rd., Paso Robles, CA 93446**

**Robert G. Pierce, III, P.O. Box 4250, Paso Robles, CA 93447**

Signature(s):

Erich L. Russell                                    Robert G. Pierce, III

---

Form 1355 - Deed of Trust and Assignment of Rents                          Page 12 of 12

EXHIBIT 7, PAGE 165

Branch :KNR,User :F111              Order: 00354793  Title Officer: VRB  Comment:              Station Id :P1CO

Erich L. Russell
Customer No. 0663489392
February 26, 2010
Page 1 of 3

Deed of Trust and Assignment
of Rents
County of San Luis Obispo
Description of Real Property

Exhibit "A"

Real property in the unincorporated area of the County of San Luis Obispo, State of California, described as follows:

PARCEL 1:

THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1A:

AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1B:

AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

COMMENCING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2 REBAR CAPPED RCE 14994 IN BOOK 1 PAGE 159 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°30'20" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

PARCEL 2:

THE SOUTHERLY 40.00 ACRES OF THE NORTH 1/2 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 26 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM AN UNDIVIDED 1/2 INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND MINERALS IN OR UNDER SAID LAND, BUT WITHOUT RIGHT

EXHIBIT 7, PAGE 166

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO

Erich L. Russell
Customer No. 0663489392
February 26, 2010
Page 2 of 3

Deed of Trust and Assignment
 of Rents
County of San Luis Obispo
Description of Real Property

Exhibit "A"

OF SURFACE ENTRY AS RESERVED BY CLARA M. GUTHIER, A WIDOW, IN DEED RECORDED
MARCH 27, 1961 IN BOOK 1115 PAGE 246 OF OFFICIAL RECORDS.

PARCEL 3:

GOVERNMENT LOTS 3 AND 4 AND THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 31,
TOWNSHIP 25 SOUTH, RANGE 12 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY
OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL THEREOF.

EXCEPTING THEREFROM AN UNDIVIDED 1/2 INTEREST IN THE LAND OWNERS SHARE OF
ROYALTIES FROM OIL, GAS, OTHER HYDROCARBONS, OR MINERALS ACTUALLY PRODUCED ON
OR FROM SAID LAND OR ANY PART THEREOF, AS RESERVED BY GEORGE BLECHEN AND MARIE
BLECHEN, HIS WIFE AND ELSIE LOOSE, A WIDOW IN DEED RECORDED JUNE 10, 1958 IN BOOK
943 PAGE 507 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM AN UNDIVIDED 50% INTEREST IN AND TO GRANTORS PRESENT
INTEREST IN ALL OIL, GAS AND OTHER HYDROCARBONS AND OTHER MINERALS THAT ARE OR
MAY BE ON OR WITHIN THE LANDS, TOGETHER WITH 50% INTEREST IN AND TO ALL OIL, GAS
AND OTHER HYDROCARBONS AND OTHER MINERALS AS SAME MAY BE INCREASED UPON
EXPIRATION OF ROYALTY INTERESTS AS RESERVED IN DEED EXECUTED BY GEORGE BLECHEN
AND MARIE BLECHEN, HIS WIFE AND BY ELSIE LOOSE, A WIDOW AND RECORDED JUNE 10,
1958 IN BOOK 943 PAGE 507 OF OFFICIAL RECORDS.

SUCH MINERAL RESERVATIONS IN FAVOR OF GRANTORS HEREIN ARE WITHOUT ANY RIGHT
OF ENTRY TO THE SURFACE OF SAID LAND AND ARE WITHOUT ANY RIGHT OF ENTRY TO THE
FIRST FIVE HUNDRED (500 FEET ADJACENT TO AND LYING BENEATH THE SURFACE OF SAID
LAND.

PARCEL 3A:

A 30.00 FOOT WIDE EASEMENT FOR INGRESS, EGRESS AND INCIDENTAL PURPOSES OVER
THAT PORTION OF LOT 4 OF "HOME OF THE ALMOND", IN THE COUNTY OF SAN LUIS OBISPO,
STATE OF CALIFORNIA, ACCORDING TO MAP RECORDED IN BOOK 2 PAGE 17 OF MAPS, THE
CENTERLINE OF WHICH IS MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEAST CORNER OF SAID LOT 4; THENCE ALONG THE EASTERLY
LINE OF LOT 4, NORTH 00°30'00" WEST, 65.00 FEET TO THE POINT OF BEGINNING; THENCE
PARALLEL TO THE SOUTH LINE OF LOT 4, NORTH 89°45'00" WEST, 203,81 FEET; THENCE
SOUTH 73°38'54" WEST, 138.47 FEET; THENCE SOUTH 78°42'47" WEST, 52.18 FEET TO A
POINT THAT LIES 15.00 FEET NORTH OF THE SOUTH LINE OF SAID LOT 4; THENCE 15.00 FEET
NORTHERLY OF AND PARALLEL TO SAID SOUTH LINE OF LOT 4, NORTH 89°45'00" WEST,
559.74 FEET TO THE WESTERLY LINE OF LOT 4

EXHIBIT 7, PAGE 167

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB   Comment:                    Station Id :P1CO

Erich L. Russell
Customer No. 0663489392
February 26, 2010
Page 3 of 3

Deed of Trust and Assignment
 of Rents
County of San Luis Obispo
Description of Real Property

Exhibit "A"

PARCEL 4:

LOT 4 OF SECTION 5, LOTS 1, 2, 3 AND 4, THE SOUTHWEST 1/4 OF THE NORTHEAST 1/4 AND
THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4OF SECTION 6, ALL IN TOWNSHIP 26 SOUTH,
RANGE 12 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO,
STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION LYING SOUTH OF SAN MARCOS ROAD.

ALSO EXCEPTING THEREFROM AN UNDIVIDED 1/2 INTEREST IN AND TO ALL OIL, GAS,

MINERAL AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND AS RESERVED
BY ROBERT L. LINNETT, A MARRIED MAN AND HENRY C. BRIGHAM, A MARRIED MAN IN EQUAL
SHARES BY DEED RECORDED JUNE 21, 1977 IN BOOK 1988 PAGE 755 OF OFFICIAL RECORDS.

PARCEL 5:

THE NORTHEAST 1/4 OF SECTION 23, TOWNSHIP 26 SOUTH, RANGE 10 EAST, MOUNT DIABLO
BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA,
ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 5A:

A RIGHT OF WAY FOR INGRESS TO AND EGRESS FOR THE INSTALLATION AND MAINTENANCE
OF UTILITY PIPE AND POLE LINES, IN, UPON, ALONG AND UNDER A STRIP OF LAND 40.00
FEET WIDE, (CONTAINING 0.038 ACRES) IN THE SOUTHWEST CORNER OF THE SOUTHEAST
1/4 OF SECTION 14, TOWNSHIP 26 SOUTH, RANGE 10 EAST, AND (0.638 ACRES) IN THE
SOUTHWEST 1/4 OF SAID SECTION 14, THE CENTERLINE OF WHICH STRIP OF LAND IS
DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT 28.00 FEET EAST OF THE SOUTH 1/4 CORNER OF SECTION 14,
TOWNSHIP 26 SOUTH, RANGE 10 EAST, MOUNT DIABLO BASE AND MERIDIAN, THENCE NORTH
45° WEST, 68.85 FEET TO A POINT 20.00 FEET WEST OF THE EASTERLY BOUNDARY LINE OF
THE SOUTHWEST 1/4 OF SECTION 14; THENCE NORTH AND PARALLEL TO SAID EASTERLY
BOUNDARY LINE, 343.9 FEET TO A POINT; THENCE NORTH 42°40' WEST, 28.50 FEET TO A
POINT; THENCE NORTH 59°40' WEST, 293.50 FEET, MORE OR LESS, TO THE SOUTHEASTERLY
BOUNDARY LINE OF THE SAN MARCOS ADELAIDE COUNTY ROAD.

APN: 014-311-014; 036-021-070; 026-104-001; 026-342-039 and 027-145-022

EXHIBIT 7, PAGE 168

Branch :KNR,User :F111          Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of San Luis Obispo

On 3-10-10 before me, — Kimberly Pedersen Notary Public —

personally appeared — Erich L. Russell —

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

KIMBERLY PEDERSEN
Commission # 1813135
Notary Public - California
San Luis Obispo County
My Comm. Expires Sep 13, 2012

Place Notary Seal and/or Stamp Above

— OPTIONAL —

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: Deed of Trust & Assignment of Rents

Document Date: 2-26-10                    Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
- ☐ Corporate Officer — Title(s): _____
- ☐ Individual
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____

Signer's Name: _____
- ☐ Corporate Officer — Title(s): _____
- ☐ Individual
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____

© 2008 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org     Item #5907   Reorder: Call Toll-Free 1-800-876-6827

EXHIBIT 7, PAGE 169

Branch :KNR,User :F111          Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _San Luis Obispo_

On _3 -12 - 1 0_ before me, _Doreen Lee Gretter, Notary Public_
Date                              Here Insert Name and Title of the Officer

personally appeared _Robert G. Pierce III_
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Doreen Lee Gretter_
Signature of Notary Public

Place Notary Seal and/or Stamp Above

DOREEN LEE GRETTER
Commission # 1841917
Notary Public - California
San Luis Obispo County
My Comm. Expires Mar 29, 2013

— OPTIONAL —
Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**
Title or Type of Document: _Deed of Trust & Assignment of Rents_

Document Date: _2 - 26 - 10_          Number of Pages: _15_

Signer(s) Other Than Named Above: _Erich L. Russell_

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

©2008 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org          Item #5907   Reorder: Call Toll-Free 1-800-876-6827

END OF DOCUMENT

EXHIBIT 7, PAGE 170

**EXHIBIT 8**

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB   Comment:                                Station Id :P1CO

**JULIE RODEWALD**
San Luis Obispo County – Clerk/Recorder
Recorded at the request of
Public

PAMNC
12/28/2010
8:21 AM

Recording Requested by:

DOC#:   **2010066312**

Titles:  1    Pages:    **2**

WHEN RECORDED MAIL TO:
Farm Credit West, PCA
P.O. Box 1449
Templeton, CA 93465
Advance Loan No. 8074852

| Fees | 17.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $17.00 |

Customer Number: 0663489392

Space Above This Line For Recorder's Use

### NOTICE OF ADVANCE UNDER DEED OF TRUST

**THIS NOTICE OF ADVANCE UNDER DEED OF TRUST IS GIVEN WITH REFERENCE TO THE FOLLOWING:**

**WHEREAS** Erich L. Russell, a married man as his sole and separate property; and Robert G. Pierce, III, a married man as his sole and separate property, is named as grantor/trustor (hereinafter "Grantor") in that certain deed of trust dated **February 26, 2010,** wherein Farm Credit West, PCA, is named trustee and beneficiary; which instrument was recorded on **March 16, 2010,** as DOC#**2010011915,** San Luis Obispo County, State of **California;**

**AND WHEREAS** the said deed of trust was given to secure the payment of a promissory note in the amount of $300,000.00, dated February 26, 2010, and other obligations of the grantor recited therein, and evidenced on the books Farm Credit West, PCA, as Loan/Customer No. 8073805/0663489392;

**AND WHEREAS** the referred to deed of trust provides that the same is also given to secure the payment of such additional sum or sums that may there after be advanced by said beneficiary to Grantor;

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN** that Farm Credit West, PCA, has advanced to Grantor an additional $650,000.00; that the said amount is payable with interest as prescribed in a promissory note dated December 23, 2010 that the said advance is acknowledged by the undersigned to be secured by the herein above referred to deed of trust pursuant to the provisions recited therein.

**FURTHER NOTICE IS HEREBY GIVEN** that the sum of the balance owing on the initial promissory note secured by the herein above referred to deed of trust, plus all subsequent advances, outlays and interest accrued thereon to the date hereof totals $950,000.00.

Dated: **December 23, 2010**

Signatures of Grantor

Erich L. Russell                    Robert G. Pierce, III

*ASN 1232 - (4-95) Notice of Advance Under Deed of Trust

Page 1 of 1

EXHIBIT 8, PAGE 171

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of San Luis Obispo

On 12/27/2010 before me, Linda L. Lazzaroni, Notary Public,
personally appeared Erich L. Russell and Robert G. Pierce, III

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: Linda L. Lazzaroni

Place Notary Seal and/or Stamp Above          Signature of Notary Public

─────────── **OPTIONAL** ───────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: Notice of Advance Under Deed of Trust
Document Date: 12/23/2010                    Number of Pages: 1
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☒ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER — Top of thumb here

©2008 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org          Item #5907  Reorder: Call Toll-Free 1-800-876-6827

**END OF DOCUMENT**

EXHIBIT 8, PAGE 172

**EXHIBIT 9**

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                Station Id :P1CO

**2020061134**

Tommy Gong
San Luis Obispo - County Clerk-Recorder
10/28/2020 10:07 AM
Recorded at the request of:
PUBLIC

Titles: 1      Pages: 10

Fees: $41.00
Taxes: $0.00
Total: $41.00

LEAVE BLANK

Recording Requested By

and When Recorded Mail to:

Northern Holding LLC
Rabbit Ridge Wine Sales

13217 Jamboree Rd #429
Tustin, Ca 92782

Agreement to Purchase and Sell
a Corp $        (Document Title)   Real Estate

The undersigned declares exemption under the following:

☐   Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a
transfer of real property that is:
  ☐   Subject to the imposition of documentary transfer tax", **or**
  ☐   A residential dwelling to an owner-occupier", **or**
☐   Exempt from fee per GC 27388.1 (a)(1); fee cap of $225 reached (list recording references)
☐   Exempt from the fee per GC 27388.1 (a) (1) Not related to real property"

Signature: _____

EXHIBIT 9, PAGE 173

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB  Comment:                Station Id :P1CO

DOC #2020061134  Page 2 of 10

### AGREEMENT TO PURCHASE AND SELL A CORPORATION AND REAL ESTATE
as of 10/23/2020

This serves as a purchase and sale agreement ("PSA") between the Parties identified below ("Buyer" and "Seller") for the purpose of defining and executing a definitive Purchase and Sale Agreement ("PSA") of real estate, a corporation, its assets and wine inventory.

Northern Holding, LLC ("Buyer") wishes to acquire, and Russell Family Vineyards / Rabbit Ridge Wine Sales/ Erich Russell, an individual, ("RFV/ RRWS"), ("Seller") wishes to sell the corporation and its assets including APNs, 026-104-001, 027-145-022 and 026-342-039, located in the county of San Luis Obispo, Paso Robles, California ("RFV/ RRWS"), which own the real property, assets, and intellectual property related to Rabbit Ridge Wine Sales & Russell Family Vineyards. The following terms shall apply to the sale of RFV/ RRWS:

**Purchase Price:** Thirty million, five hundred thousand USD ($30,500,000) for Seller's right, title and interest in RFV/ RRWS. Plus, Wine Inventory, both cased goods and bulk, subject to review of current wine inventory list, IP, all brands, bank accounts, equipment, tasting room lease and customer lists.

The assets to convey include the land, wine inventory, Rabbit Ridge, Russell and all brands, the bonds, entitlements that are transferable, customer lists, trademarks, winery and farming equipment, bank accounts, all improvements on the lands, tasting room lease, and rights and encumbrances detailed in the Title Report.

Seller shall assign its Farm Credit West Notes, property tax, EDIL and payables at close. As well receivables shall be assigned. In addition a cash amount of $163,050.00 shall be left in company to cover short term operating expenses.

RFV/ RRWS and its assets are being sold As-Is. Seller shall leave $163,050.00 cash in at close. Buyer will issue Seller a 90-day note at 5.5% annual interest compounded monthly.

**Seller Notes:** Northern Holding, LLC entity will have notes due Seller as follows:
1) In the amount of $6,440,000 for the balance of purchase price on top of liabilities assumes. The note will accrue 4.5% interest annually. Principal and interest are due in a balloon payment at 5 years.
2) In the amount of $163,050.00 for cash in at close. Buyer will issue Seller a 90-day note at 5.5% annual interest compounded monthly.
3) In the amount of $200,000 for extension from July 2020. Buyer will issue Seller a 180-day note at 5.5% annual interest compounded monthly.

These will become effective at close.

**Lease Agreement:** Buyer will execute a lease on the principal Live Oak Road on residence on APN 026-342-039, with seller as lessee. The value assigned to this is $12,000/ month. Lease will be effective at close.

Branch :KNR,User :F111                    Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

DOC #2020061134  Page 3 of 10

**Purchase Funds:** Buyer states that all purchase funds are in the form of debt assumptions and seller note.

**Timing & Due Diligence:**
Due Diligence: Buyer removes all contingencies upon mutual execution of PSA. However, Buyer may continue to perform inspections and tests as required by Buyer (provided that Buyer may not conduct invasive tests without the prior consent of Seller, which consent may be granted or withheld by Seller in its sole discretion), in all cases at Buyer's sole cost.
Close shall occur 10/27/2020 upon mutual execution of PSA, unless amended. Buyer to specify title company.

**Agent:** Seller shall address agency fee on San Marcos and Texas Road parcels with Jon Ohlgren, Radius Group, a licensed real estate broker.

**2020 Crop:** Buyer is responsible for 2020 intake.

**Seller's Documents:** Seller shall provide to Buyer, as reasonably available after Opening of Escrow, any and all due diligence materials as are reasonably requested by Buyer and which are in the possession of Seller.

**Confidentiality:** Buyer and Seller agree that all terms of this PSA and the PSA shall remain confidential and shall not be disclosed to third parties, except legal and financial advisors of Buyer and Seller, staff personnel, and those parties necessary to arrange and fund the acquisition and development financing.

**Disclaimer and Indemnification:** All statements and terms contained in this Agreement are based on Owner's current assumptions and knowledge as of the date of its presentation. Seller and Seller's Agent offer no warranty, and advise Buyer to rely solely on Buyer's discovery. Seller holds Buyer harmless and indemnifies Buyer from liability resulting from this transaction.

Accepted and Agreed to:

Seller: _____   Date: 10-27-2020
Erich Lee Russell
Russell Family Vineyards
Rabbit Ridge Wine Sales, Inc.

Buyer: _____   Date: 10/27/2020
Lee Codding
Northern Holding, LLC
AKA Leroy codding

cc: Kari Ley, Steven Jones

EXHIBIT 9, PAGE 175

DOC #2020061134  Page 4 of 10

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )
County of _San Luis Obispo_            )

On _Oct 27, 2020_ before me, _Christine M. Voshal, Notary public_,
     Date                              Here Insert Name and Title of the Officer
personally appeared _Erich Lee Russell and LeRoy Codding_
                                       Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

CHRISTINE M. VOSHAL
Notary Public – California
San Luis Obispo County
Commission # 2203267
My Comm. Expires Jul 27, 2021

Signature _____
             Signature of Notary Public

_____ Place Notary Seal Above _____

──────────────────── OPTIONAL ────────────────────
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _Agreement to purchase and sell a corporation_
Document Date: _10/27/2020_ _____ Number of Pages: _Two_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____        Signer's Name: _____
☐ Corporate Officer — Title(s): _____      ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General               ☐ Partner — ☐ Limited ☐ General
☐ Individual       ☐ Attorney in Fact          ☐ Individual       ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator         ☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____               ☐ Other: _____
Signer Is Representing: _____       Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)  Item #5907

EXHIBIT 9, PAGE 176

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB   Comment:                                    Station Id :P1CO

DOC #2020061134  Page 5 of 10

Addendum I

Bank Accounts to include:
1) Bank of America RRWSI ending in 3878 (main corporate checking account/ payroll)

2) Bank of America RRWSI ending in 3881

3) Coast Hills federal Credit Union RRWSI ending in 1691 (corporate checking account)

4) Coast Hills Federal Credit Union Savings

EXHIBIT 9, PAGE 177

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB   Comment:                    Station Id :P1CO

DOC #2020061134  Page 6 of 10

## Addendum II

Inventory covered in the PSA does not include client-owned wine including:

1. Cordelia Winery (Caymus)

2. Oneil wine company

3. Miller Wine Company

4. Tacket Family Winery

5. Serrano

6. Passione Divina

7. Olive Diva

8. Vahali

EXHIBIT 9, PAGE 178

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                Station Id :P1CO

DOC #2020061134  Page 7 of 10

## LEGAL DESCRIPTION

The Land referred to herein below is situated in the unincorporated area of the County of San Luis Obispo, State of California, and is described as follows:

PARCEL 2: APN# 027-145-022

GOVERNMENT LOTS 3 AND 4 AND THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 31, TOWNSHIP 25 SOUTH, RANGE 12 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL THEREOF.

EXCEPTING THEREFROM AN UNDIVIDED 1/2 INTEREST IN THE LAND OWNERS SHARE OF ROYALTIES FROM OIL, GAS, OTHER HYDROCARBONS, OR MINERALS ACTUALLY PRODUCED ON OR FROM SAID LAND OR ANY PART THEREOF, AS RESERVED BY GEORGE BLECHEN AND MARIE BLECHEN, HIS WIFE AND ELSIE LOOSE, A WIDOW IN DEED RECORDED JUNE 10, 1958 IN BOOK 943 PAGE 507 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM AN UNDIVIDED 50% INTEREST IN AND TO GRANTORS PRESENT INTEREST IN ALL OIL, GAS AND OTHER HYDROCARBONS AND OTHER MINERALS THAT ARE OR MAY BE ON OR WITHIN THE LANDS, TOGETHER WITH 50% INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND OTHER MINERALS AS SAME MAY BE INCREASED UPON EXPIRATION OF ROYALTY INTERESTS AS  RESERVED IN DEED EXECUTED BY GEORGE BLECHEN AND MARIE  BLECHEN, HIS WIFE AND BY ELSIE LOOSE, A WIDOW AND RECORDED JUNE 10, 1958 IN BOOK 943 PAGE 507 OF OFFICIAL RECORDS.

SUCH MINERAL RESERVATIONS IN FAVOR OF GRANTORS HEREIN ARE WITHOUT ANY RIGHT OF ENTRY TO THE SURFACE OF SAID LAND AND ARE WITHOUT ANY RIGHT OF ENTRY TO THE FIRST FIVE HUNDRED (500 FEET ADJACENT TO AND LYING BENEATH THE SURFACE OF SAID LAND.

PARCEL 2A:
A 30.00 FOOT WIDE EASEMENT FOR INGRESS, EGRESS AND INCIDENTAL PURPOSES OVER THAT PORTION OF LOT 4 OF "HOME OF THE ALMOND", IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO MAP RECORDED IN BOOK 2 PAGE 17 OF MAPS, THE CENTERLINE OF WHICH IS MORE PARTICULARLY DESCRIBED AS FOLLOWS:

EXHIBIT 9, PAGE 179

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB   Comment:                    Station Id :P1CO

DOC #2020061134  Page 8 of 10

COMMENCING AT THE SOUTHEAST CORNER OF SAID LOT 4; THENCE ALONG THE EASTERLY LINE OF LOT 4, NORTH 00°30'00" WEST, 65.00 FEET TO THE POINT OF BEGINNING; THENCE PARALLEL TO THE SOUTH LINE OF LOT 4, NORTH 89°45'00" WEST, 203.81 FEET; THENCE SOUTH 73°38'54" WEST, 138.47 FEET; THENCE SOUTH 78°42'47" WEST, 52.18 FEET TO A POINT THAT LIES 15.00 FEET NORTH OF THE SOUTH LINE OF SAID LOT 4; THENCE 15.00 FEET NORTHERLY OF AND PARALLEL TO SAID SOUTH LINE OF LOT 4,  NORTH 89°45'00" WEST, 559.74 FEET TO THE WESTERLY LINE OF LOT 4.

For conveyancing purposes only: APN 027-145-022 (Affects Parcel 2)

EXHIBIT 9, PAGE 180

Branch :KNR,User :F111              Order: 00354793  Title Officer: VRB   Comment:                Station Id :P1CO

DOC #2020061134  Page 9 of 10

## LEGAL DESCRIPTION

The Land referred to herein below is situated in the unincorporated area of the County of San Luis Obispo, State of California, and is described as follows:

### PARCEL 1: APN# 026-342-039
THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

### PARCEL 1A:
AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

### PARCEL 1B:
AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN,  ACCORDING TO THE OFFICIAL PLAT THEREOF, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

COMMENCING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2 INCH REBAR CAPPED RCE 14994 IN  BOOK 1 PAGE 159 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET, MORE OR LESS, TO THE  SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°30'20" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

For conveyancing purposes only:  APN 026-342-039 (Affects Parcel 1)

EXHIBIT 9, PAGE 181

Branch :KNR,User :F111                    Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

DOC #2020061134 Page 10 of 10

## LEGAL DESCRIPTION

The Land referred to herein below is situated in the unincorporated area of the County of San Luis Obispo, State of California, and is described as follows:

PARCEL 3: APN# 026-104-001

LOT 4 OF SECTION 5; LOTS 1, 2, 3 AND 4, THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER AND THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 6, ALL IN TOWNSHIP 26 SOUTH, RANGE 12 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UN-INCORPORATED AREA OF THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION LYING SOUTH OF SAN MARCOS ROAD.

ALSO EXCEPTING ONE-HALF OF THE OIL, GAS, MINERAL AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND AS RESERVED BY ROBERT D. LINNETT, A MARRIED MAN AND HENRY C. BRIGHAM, A MARRIED MAN, IN EQUAL SHARES BY DEED RECORDED JUNE 21, 1977 IN BOOK 1988, PAGE 755 OF OFFICIAL RECORDS.

For conveyancing purposes only: APN 026-104-001 (Affects Parcel 3)

END OF DOCUMENT

EXHIBIT 9, PAGE 182

**EXHIBIT 10**

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB  Comment:                     Station Id :P1CO

**2020061135**

Tommy Gong
San Luis Obispo - County Clerk-Recorder
10/28/2020 10:07 AM
Recorded at the request of:
PUBLIC

Recording Requested By

Titles: 1      Pages: 6

Fees: $29.00
Taxes: $0.00
Total: $29.00

and When Recorded Mail to:
Northern Holding LLC
Rabbit Ridge wine Sales
132 Jamboree Rd #429
Tustin, CA 92782

Assumption and Assignment Agreement

(Document Title)

The undersigned declares exemption under the following:

☑ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a
transfer of real property that is:
   ☐ Subject to the imposition of documentary transfer tax", **or**
   ☐ A residential dwelling to an owner-occupier", **or**
☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225 reached (list recording references)
☐ Exempt from the fee per GC 27388.1 (a) (1) Not related to real property"

Signature: _____

EXHIBIT 10, PAGE 183

Branch :KNR,User :F111                  Order: 00354793   Title Officer: VRB   Comment:                  Station Id :P1CO

DOC #2020061135  Page 2 of 6

## _Assumption and Assignment Agreement_

### _ASSUMPTION AND ASSIGNMENT AGREEMENT_

This _Agreement_ is made among Joanne Russell, a married woman hereafter called "Guarantor," Northern Holding, LLC a Minnesota Limited Liability Company, hereafter called "Purchaser," and Farm Credit West, FLCA a corporation organized and existing under the laws of the United States of America, hereafter called "Lender."

RECITALS

**A.**

WHEREAS, Guarantor is presently a guarantor for the promissory notes on the property (hereafter called the "Property") described in a Deed of Trust dated on or about March 5, 2007 in which Lender is named as Beneficiary and recorded on March 23, 2007, as Instrument No. 2007019418 in the Official Records of San Luis Obispo County, California (hereafter called the "Deed of Trust"), which Deed of Trust is security for a promissory note (Loan 1) dated on about March 5, 2007, executed by Seller as Maker, payable to Lender, in the principal sum of $17,500,000.00 ; and is security for a promissory note (Loan 2) dated on or about January 15, 2009, executed by Seller as Maker, payable to Lender in the principal sum of $3,525,000.00 recorded as Notice of Advance on or about February 6, 2009 in the San Luis Obispo County Recorder's Office, assigned document number 2009-005727(hereafter called the "Promissory Note");

**B.**

WHEREAS, Guarantor and Purchaser have entered into an _agreement_ under which Purchaser has agreed to purchase the Property and to assume the role of guarantor of the Promissory Notes and Deed of Trust as part of the purchase price for the Property to be paid by Purchaser subject to the conditions stated in this Agreement.

**C.**

WHEREAS, Purchaser's obligation to assume the Promissory Note is conditioned on Lender's _agreement_ not to exercise its option under the terms of the Promissory Note and Deed of Trust to accelerate the unpaid balance of the Promissory Note as a result of the above transfer.

EXHIBIT 10, PAGE 184

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                Station Id :P1CO

DOC #2020061135 Page 3 of 6

THE PARTIES HEREBY AGREE AS FOLLOWS:

### Unpaid Balance of Note

1.

The total unpaid principal balance plus interest and penalties on the Promissory Notes is $19,836,032.00.

### _Assumption_ of Liability

2.

Purchaser hereby assumes and agrees to pay the obligation represented by the Promissory Note; acknowledges that the Real Property described in the Deed of Trust shall remain subject to the Deed of Trust; acknowledges that nothing in this _Agreement_ shall affect the priority of the lien of the Deed of Trust over other liens and encumbrances against the Real Property; and agrees to be bound by all of the conditions and covenants contained in the Promissory Note and Deed of Trust. Purchaser also agrees that the Deed of Trust shall secure all other sums that Purchaser may borrow in the future from Lender when such sums are evidenced by another note or notes stating that they are so secured.

### _Assignment_ by Guarantor

3.

Guarantor hereby transfers and assigns to Purchaser all of its right, title, and interest in and to any and all refunds and credits that may at any time accrue under the Deed of Trust or under the contract of insurance on the Deed of Trust by the Federal Housing Administration.

### Governing Law

4.

All questions about the construction of this _Agreement_, and the right and liabilities of the parties to this _Agreement_, shall be governed by the laws of the State of California.

### Binding on Successors

5.

This _Agreement_ shall inure to the benefit of, and shall be binding on, the assigns, successors in interest, personal representatives, estates, heirs, and legatees of each of the parties.

EXHIBIT 10, PAGE 185

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO

DOC #2020061135 Page 4 of 6

## Entire *Agreement*

6.

This *Agreement* contains the entire *agreement* of the parties, and supersedes any prior written or oral *agreements* between them concerning the subject matter of this *Agreement*. There are no representations, *agreements*, arrangements, or understandings, oral or written, among the parties, relating to the subject matter of this *Agreement*, that are not fully expressed in this *Agreement*.

Executed on October 27, 2020, at Paso Robles, California.

GUARANTOR

*[signature]* _____ [signature of guarantor]

Joanne Russell

PURCHASER,

_____ [signature of purchaser]

Northern Holding, LLC – Lee Codding, Managing Member
a.k.a. Leroy Codding

STATE OF CALIFORNIA                              }
COUNTY OF_____          }
On _____ before me, _____.
Notary Public, personally appeared _____ who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/their/her authorized capacity(ies), and that by
his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ See attached _____

EXHIBIT 10, PAGE 186

Branch :KNR,User :F111          Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO

DOC #2020061135, Page 5 of 6

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                      CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of _San Luis Obispo_

On _Oct 27, 2020_ before me, _Christine M. Voshal, notary public_,
　　　Date　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Joanne Russell_
　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

CHRISTINE M. VOSHAL
Notary Public – California
San Luis Obispo County
Commission # 2203267
My Comm. Expires Jul 27, 2021

Signature _____
　　　　　　　Signature of Notary Public

Place Notary Seal Above

————— **OPTIONAL** —————

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Assumption and Assignment Agreement_
Document Date: _10/27/2020_　　　　　　Number of Pages: _Three_
Signer(s) Other Than Named Above: _Lee Codding_

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

EXHIBIT 10, PAGE 187

Branch :KNR,User :F111                Order: 00354793   Title Officer: VRB   Comment:                          Station Id :P1CO

DOC #2020061135  Page 6 of 6

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                              **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )
County of _San Luis Obispo_            )
On _October 28, 2020_ before me, _Megan O'Dwyer, Notary Public_
     *Date*                                  *Here Insert Name and Title of the Officer*
personally appeared _Leroy Codding_
    _N / A_                                  *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

MEGAN O'DWYER
Commission # 2322499
Notary Public - California
San Luis Obispo County
My Comm. Expires March 11, 2024

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
    *Signature of Notary Public*

*Place Notary Seal Above*
―――――――――――― **OPTIONAL** ――――――――――――
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Assumption + Assignment Agreement_
Document Date: _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____        Signer's Name: _____
☐ Corporate Officer — Title(s): _____    ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General              ☐ Partner — ☐ Limited  ☐ General
☐ Individual    ☐ Attorney in Fact            ☐ Individual    ☐ Attorney in Fact
☐ Trustee      ☐ Guardian or Conservator     ☐ Trustee      ☐ Guardian or Conservator
☐ Other: _____              ☐ Other: _____
Signer Is Representing: _____       Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

END OF DOCUMENT

EXHIBIT 10, PAGE 188

# EXHIBIT 11

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB  Comment:                Station Id :P1CO

Recording Requested By

and When Recorded Mail to:
Northern Holding LLC
Rabbit Ridge wine sales
13217 Jamboree Rel #429
Tustin, CA 92782

**2020061136**

Tommy Gong
San Luis Obispo - County Clerk-Recorder
10/28/2020 10:07 AM

Recorded at the request of:
PUBLIC

Titles: 1        Pages: 6

Fees: $29.00
Taxes: $0.00
Total: $29.00

Assumption and Assignment Agreement

(Document Title)

The undersigned declares exemption under the following:

☐  Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a
transfer of real property that is:
   ☐  Subject to the imposition of documentary transfer tax", **or**
   ☐  A residential dwelling to an owner-occupier", **or**
☐  Exempt from fee per GC 27388.1 (a) (1); fee cap of $225 reached (list recording references)
☐  Exempt from the fee per GC 27388.1 (a) (1) Not related to real property"

Signature: _____

EXHIBIT 11, PAGE 189

Branch :KNR,User :F111              Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

DOC #2020061136 Page 2 of 6

## *Assumption and Assignment Agreement*

### ASSUMPTION AND ASSIGNMENT AGREEMENT

This **Agreement** is made among Erich Russell, a married man hereafter called "Seller," Northern Holding, LLC a Minnesota Limited Liability Company, hereafter called "Purchaser," and Farm Credit West, FLCA a corporation organized and existing under the laws of the United States of America, hereafter called "Lender."

RECITALS

**A.**

WHEREAS, Seller is presently the owner of the property (hereafter called the "Property") described in a Deed of Trust dated on or about March 5, 2007 in which Lender is named as Beneficiary and recorded on March 23, 2007, as Instrument No. 2007019418 in the Official Records of San Luis Obispo County, California (hereafter called the "Deed of Trust"), which Deed of Trust is security for a promissory note (Loan 1) dated on about March 5, 2007, executed by Seller as Maker, payable to Lender, in the principal sum of $17,500,000.00 ; and is security for a promissory note (Loan 2) dated on or about January 15, 2009, executed by Seller as Maker, payable to Lender in the principal sum of $3,525,000.00 recorded as Notice of Advance on or about February 6, 2009 in the San Luis Obispo County Recorder's Office, assigned document number 2009-005727(hereafter called the "Promissory Note");

**B.**

WHEREAS, Seller and Purchaser have entered into a real property sales **agreement** under which Purchaser has agreed to purchase the Property and to assume the Promissory Notes and Deed of Trust as part of the purchase price for the Property to be paid by Purchaser to Seller subject to the conditions stated in this Agreement.

**C.**

WHEREAS, Purchaser's obligation to assume the Promissory Note is conditioned on Lender's **agreement** not to exercise its option under the terms of the Promissory Note and Deed of Trust to accelerate the unpaid balance of the Promissory Note as a result of the above transfer.

EXHIBIT 11, PAGE 190

Branch :KNR,User :F111          Order: 00354793  Title Officer: VRB  Comment:          Station Id :P1CO

DOC #2020061136 Page 3 of 6

THE PARTIES HEREBY AGREE AS FOLLOWS:

**Unpaid Balance of Note**

**1.**

The total unpaid principal balance plus interest and penalties on the Promissory Notes is $19,836,032.00.

**_Assumption_ of Liability**

**2.**

Purchaser hereby assumes and agrees to pay the obligation represented by the Promissory Note; acknowledges that the Real Property described in the Deed of Trust shall remain subject to the Deed of Trust; acknowledges that nothing in this **_Agreement_** shall affect the priority of the lien of the Deed of Trust over other liens and encumbrances against the Real Property; and agrees to be bound by all of the conditions and covenants contained in the Promissory Note and Deed of Trust. Purchaser also agrees that the Deed of Trust shall secure all other sums that Purchaser may borrow in the future from Lender when such sums are evidenced by another note or notes stating that they are so secured.

**_Assignment_ by Seller**

**3.**

Seller hereby transfers and assigns to Purchaser all of its right, title, and interest in and to any and all refunds and credits that may at any time accrue under the Deed of Trust or under the contract of insurance on the Deed of Trust by the Federal Housing Administration.

**Governing Law**

**4.**

All questions about the construction of this **_Agreement_**, and the right and liabilities of the parties to this **_Agreement_**, shall be governed by the laws of the State of California.

**Binding on Successors**

**5.**

This **_Agreement_** shall inure to the benefit of, and shall be binding on, the assigns, successors in interest, personal representatives, estates, heirs, and legatees of each of the parties.

EXHIBIT 11, PAGE 191

Branch :KNR,User :F111                    Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

DOC #2020061136 Page 4 of 6

### Entire *Agreement*

6.

This *Agreement* contains the entire *agreement* of the parties, and supersedes any prior written or oral *agreements* between them concerning the subject matter of this *Agreement*. There are no representations, *agreements*, arrangements, or understandings, oral or written, among the parties, relating to the subject matter of this *Agreement*, that are not fully expressed in this *Agreement*.

Executed on October 27, 2020, at Paso Robles, California.

SELLER

_____ [*signature of seller*]

Erich Russell

PURCHASER

_____ [*signature of purchaser*]

Northern Holding, LLC – Lee Codding, Managing Member
a.k.a. Leroy Codding

STATE OF CALIFORNIA                              }
COUNTY OF_____        }
On _____ before me, _____,
Notary Public, personally appeared _____who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/their/her authorized capacity(ies), and that by
his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.
WITNESS my hand and official seal.

*Signature* _____See attached_____

EXHIBIT 11, PAGE 192

Branch :KNR,User :F111                    Order: 00354793   Title Officer: VRB   Comment:                    Station Id :P1CO

DOC #2020061136  Page 5 of 6

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )
County of San Luis Obispo             )
On Oct 27, 2020        before me, Christine M. Voshal  notary public,
　　　Date                                        Here Insert Name and Title of the Officer
personally appeared Erich Russell
　　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CHRISTINE M. VOSHAL
Notary Public - California
San Luis Obispo County
Commission # 2203267
My Comm. Expires Jul 27, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　　Signature of Notary Public

Place Notary Seal Above
──────────── **OPTIONAL** ────────────
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: Assumption and Assignment Agreement
Document Date: 10/27/2020                    Number of Pages: Three
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): ____ | ☐ Corporate Officer — Title(s): ____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

EXHIBIT 11, PAGE 193

Branch :KNR,User :F111                    Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO

DOC #2020061136 Page 6 of 6

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of San Luis Obispo )
On October 28, 2020 before me, Megan O'Dwyer Notary Public
          *Date*                                    *Here Insert Name and Title of the Officer*

personally appeared      Leroy  Codding
          *Name(s) of Signer(s)*
                   N/A

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> MEGAN O'DWYER
> Commission # 2322499
> Notary Public - California
> San Luis Obispo County
> My Comm. Expires March 11, 2024

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
          *Signature of Notary Public*

_____ *Place Notary Seal Above* _____

_____ **OPTIONAL** _____
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Assumption & Assignment Agreement
Document Date: _____    Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited  ☐ General | ☐ Partner — ☐ Limited  ☐ General |
| ☐ Individual     ☐ Attorney in Fact | ☐ Individual     ☐ Attorney in Fact |
| ☐ Trustee     ☐ Guardian or Conservator | ☐ Trustee     ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

END OF DOCUMENT

EXHIBIT 11, PAGE 194

**EXHIBIT 12**

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB   Comment:                          Station Id :P1CO

**2020061138**

Tommy Gong
San Luis Obispo - County Clerk-Recorder
10/28/2020 10:07 AM

Recorded at the request of:
PUBLIC

Titles: 1        Pages: 3

Fees: $20.00
Taxes: $10670.00
Total: $10690.00

Recording Requested By

and When Recorded Mail to:
Northern Holdings LLC
Rabbit Ridge Wine Sales
13217 Jamboree Rd #429
Tustin, CA 92782

FEE PAID EXEMPT

Quit Claim

(Document Title)

The undersigned declares exemption under the following:

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a
   transfer of real property that is:
   ☐ Subject to the imposition of documentary transfer tax", **or**
   ☐ A residential dwelling to an owner-occupier", **or**
☐ Exempt from fee per GC 27388.1 (a) (1), fee cap of $225 reached (list recording references)
☐ Exempt from the fee per GC 27388.1 (a) (1) Not related to real property"

Signature: _____

EXHIBIT 12, PAGE 195

Branch :KNR,User :F111                Order: 00354793  Title Officer: VRB  Comment:                Station Id :P1CO

DOC #2020061138  Page 2 of 3

Recording Requested By:

Northern Holding, LLC

When recorded mail document to:

Northern Holding, LLC

13217 Jamboree Road Suite 429

Tustin, Ca 92782

APN: 026-342-039

Above Space for Recorder's Use Only

## QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $ __10,670.00__

☑ computed on full value of property conveyed, or
☐ computed on full value of items or encumbrances remaining at time of sale,
☐ Unincorporated area ☑ City of __Paso Robles__

FOR A FULL VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, _____

Erich Russell

do (does) hereby remise, release and forever quitclaim to  Northern Holding, LLC

_____ the following

described real property in the County of  San Luis Obispo _____, State of California.

"See Legal Description Attached"

Dated:  October 27, 2020

Erich Russell

Printed Name(s) of Grantor(s)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this
certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        }
COUNTY OF _San Luis Obispo_  }
On _10/27/2020_ _____ before me, _Chrythn M Voshal_
_____, Notary Public, personally appeared __Erich Russell__ who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

Signature _____

CHRISTINE M. VOSHAL
Notary Public – California
San Luis Obispo County
Commission # 2203267
My Comm. Expires Jul 27, 2021

MAIL TAX STATEMENTS TO PARTY SHOWN ON THE FOLLOWING LINE:    IF NO PARTY SO SHOWN, MAIL AS DIRECTED ABOVE.

_____          _____          _____
Name                                    Street Address                              City State & Zip

EXHIBIT 12, PAGE 196

Branch :KNR,User :F111            Order: 00354793  Title Officer: VRB  Comment:                    Station Id :P1CO

DOC #2020061138  Page 3 of 3

## LEGAL DESCRIPTION

The Land referred to herein below is situated in the unincorporated area of the County of San Luis Obispo, State of California, and is described as follows:

PARCEL 1: APN# 026-342-039
THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1A:
AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1B:
AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

COMMENCING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2 INCH REBAR CAPPED RCE 14994 IN BOOK 1 PAGE 159 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°30'20" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

For conveyancing purposes only:  APN 026-342-039 (Affects Parcel 1)

END OF DOCUMENT

EXHIBIT 12, PAGE 197

**EXHIBIT 13**

1    KRISTINE A. THAGARD, #94401
     kthagard@marshackhays.com
2    TINHO MANG, #322146
     tmang@marshackhays.com
3    MARSHACK HAYS LLP
     870 Roosevelt
4    Irvine, California 92620
     Telephone: (949) 333-7777
5    Facsimile: (949) 333-7778

6    Attorneys for Chapter 7 Trustee,
     RICHARD A. MARSHACK

7

8                UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     SANTA ANA DIVISION

11

12   In re                          Case No. 8:20-bk-13014-MW

13   NORTHERN HOLDING, LLC,          Chapter 7

14        Debtor.                    ORDER APPROVING OVERBID
                                     PROCEDURES FOR THE SALE OF
15                                   PROPERTY COMMONLY KNOWN AS
                                     2380 LIVE OAK ROAD, PASO ROBLES,
16                                   CA

17                                   [LBR 6004-1(b)]

18                                   Hearing:
                                     Date:     October 18, 2021
19                                   Time:     2:00 p.m.
                                     Ctrm:     6C
20                                   Location: United States Bankruptcy Court
                                               411 West Fourth Street
21                                               Santa Ana, CA 92701-4593

22

23          On October 18, 2021, at 2:00 p.m., the Court conducted a hearing on the Chapter 7 Trustee's

24   Motion for Order Approving Overbid Procedures for the Sale of Property, filed as docket no. 232

25   ("Motion"). At the hearing, Kristine A. Thagard appeared on behalf of the Richard A. Marshack

26   ("Trustee"). Victor Sahn appeared on behalf of the proposed stalking horse buyer, Riboli Paso

27   Robles, LLC ("Buyer"). Reed S. Waddell appeared on behalf of Farm Credit West, FLCA. Richard

28

                                        1

FILED & ENTERED

OCT 20 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle        DEPUTY CLERK

EXHIBIT 13, PAGE 198

A. Marshack, Chapter 7 Trustee appeared at the hearing. All other appearances were as noted on the record.

The Court has reviewed the Motion, the notice of the Motion, the declaration of Anthony Riboli filed as Docket No. 235 in support of the Motion and finds that notice of the Motion was proper and adequate, and that no opposition to the Motion was received. Accordingly, the Court finds good cause to grant the Motion, and ORDERS as follows:

1.      The overbid procedures set forth in the Motion and the attached purchase and sale agreement ("PSA") are approved in their entirety, for the sale of the property commonly known as 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property").

2.      After consideration of the circumstances of the case, the Breakup Fee and Buyer's Due Diligence are approved as reasonable and may be paid by the Trustee pursuant to the terms of the PSA, if Buyer is not the successful bidder for the Live Oak Property.

3.      A hearing for the sale of the Live Oak Property shall be set for December 13, 2021 at 2:00 p.m.

4.      Trustee shall file his sale motion for the Live Oak Property no later than November 22, 2021.

####

Date: October 20, 2021

Mark S. Wallace
United States Bankruptcy Judge

2

ORDER APPROVING OVERBID PROCEDURES FOR THE SALE OF PROPERTY (LIVE OAK)
4833-0726-0118,v.1

EXHIBIT 13, PAGE 199

**EXHIBIT 14**

1  KRISTINE A. THAGARD, #94401
   kthagard@marshackhays.com
2  TINHO MANG, #322146
   tmang@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   RICHARD A. MARSHACK
7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10 In re                              Case No. 8:20-bk-13014-MW

11 NORTHERN HOLDING, LLC,             Chapter 7

12         Debtor.                    CHAPTER 7 TRUSTEE'S MOTION TO
                                      APPROVE COMPROMISE AND
13                                    SUBORDINATION AGREEMENT WITH
                                      FARM CREDIT WEST, FCLA, RE:
14                                    DISTRIBUTION OF PROCEEDS FOR
                                      SALE OF REAL PROPERTY
15                                    COLLATERAL, WAIVER OF
                                      SURCHARGE CLAIMS FOR
16                                    CONSIDERATION; MEMORANDUM OF
                                      POINTS AND AUTHORITIES;
17                                    DECLARATION OF RICHARD A.
                                      MARSHACK IN SUPPORT
18
19                                    Date:      January 10, 2022
                                      Time:      2:00 p.m.
20                                    Ctrm:      6C
                                      Location:  United States Bankruptcy Court
21                                               411 West Fourth Street
                                                 Santa Ana, CA 92701-4593
22

23 TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE

24 OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES, ALL

25 CREDITORS, AND/OR THEIR ATTORNEYS OF RECORD:

26        Richard A. Marshack, the duly appointed and acting chapter 7 trustee ("Trustee") for the

27 bankruptcy estate ("Estate") of Northern Holding, LLC ("Debtor"), has entered into a proposed

28

                                    1

1 stipulation for subordination ("Agreement") with Secured Creditor, Farm Credit West, FCLA

2 ("FCW") (Trustee and FCW are collectively referred to as the "Parties"). Trustee seeks court

3 approval of the Agreement as being in the best interest of the estate. Pursuant to the Agreement,

4 FCW is subordinating its lien on the Live Oak Property, Texas Road Property, and San Marcos

5 Property (collectively "Properties") solely with regard to a limited portion of its interest in the

6 proceeds of the sale thereof (and not on any real property itself). Also, the Trustee exchanged

7 consideration for a waiver of various claims including surcharge claims with FCW.

8 **1.      Summary of Argument**

9       A bankruptcy court can approve settlements that are fair and equitable and in the best

10 interests of the estate. In this case, substantially all property of the Estate appears to be encumbered

11 by FCW's security interest, and no sale is possible by the Trustee absent consent from FCW. After

12 months of negotiations, FCW and the Trustee signed a stipulation containing terms for the consent of

13 FCW to the sale of at least the Live Oak Property. Also, in order to simplify future potential

14 situations, Trustee and FCW entered into a settlement regarding distributions and payments in the

15 event that FCW forecloses on some or all of the real properties.

16       Approval of the Agreement will provide a benefit to creditors from administration of the

17 Property where none would otherwise exist. This Court must decide whether to approve the

18 Agreement a true and correct copy of which is attached to the Declaration of Richard A. Marshack

19 ("Marshack Declaration") as **Exhibit 1**.

20 **2.      Factual Background**

21       **A.      Pre-Petition**

22       Erich Russell was the former owner and operator of Rabbit Ridge Wine Sales, Inc. ("Rabbit

23 Ridge"), which was as of October 2020 located at 1172 San Marcos Road, Paso Robles, CA ("San

24 Marcos Property"). To finance his business operations, Mr. Russell borrowed substantial sums of

25 money from Farm Credit West, FLCA ("FCW"), which were secured certain assets including

26 substantially all assets of Rabbit Ridge and Properties.

27

28

EXHIBIT 14, PAGE 201

On March 23, 2007, as document no. 2007-19418 in the County of San Luis Obispo, FCW recorded a deed of trust in the principal amount of $17,500,000 against various properties owned by Erich Russell, including the San Marcos Property, adjacent farmland commonly known as the Texas Road Property, and residential real property located at 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property").

Over time, Rabbit Ridge became less successful and Mr. Russell eventually filed an individual bankruptcy petition under Chapter 11, case number 9:20-bk-10035-DS. This bankruptcy case was dismissed for cause on June 4, 2020, pursuant to motion by the United States Trustee. The dismissal order included a 180-day bar to refiling.

A subsequent foreclosure sale for the Properties was scheduled by FCW for October 29, 2020. Prior to the foreclosure date, Mr. Russell and FCW continued to discuss a possible forbearance and an extension of the foreclosure date.

On or about October 28, 2020, Mr. Russell signed quitclaim deeds transferring the Properties to Debtor. These quitclaim deeds were recorded on the same date. Additionally, ownership and control of Rabbit Ridge passed to LeRoy Codding, who operated as a *de facto* chief restructuring officer. The new chief financial officer of Rabbit Ridge was Mr. Codding's associate Steve Jones.

## B.    Statement of Facts

On October 28, 2020 ("Petition Date"), Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code.

On October 29, 2020, as Dk. No. 5, FCW filed a notice of continuation of perfection of security interest and demand to sequester cash collateral. No motion to use cash collateral was ever filed.

On November 6, 2020, as Dk. No. 11, FCW filed a motion for relief from the automatic stay regarding the Live Oak Property and Debtor's other two properties (not relevant for this motion). In short, FCW has a blanket lien in the approximate amount of $19-20 million over all assets of Debtor including the Live Oak Property, while the estimated value of the Debtor's assets is well short of that amount. Additionally, the Trustee is informed that there may be a secured tax claim of

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 14, PAGE 202

1  approximately $3.5 million secured by the San Marcos Property. As such, FCW may be an

2  undersecured creditor.

3        On June 15, 2021, the case was converted to Chapter 7. Richard A. Marshack was appointed

4  as the Chapter 7 trustee. On July 16, 2021, as Dk. No. 140, the Trustee filed an application to

5  employ Onyx Asset Advisors, LLC ("Onyx") jointly with Hilco Real Estate, LLC ("Hilco") on

6  modified employment terms to market and sell the Properties on behalf of the Estate ("Broker

7  Employment Application"). On September 7, 2021, as Dk. No. 209, the Court entered an order

8  approving the Broker Employment Application, except that the payment of compensation was not

9  approved absent consent from FCW.

10       On August 9, 2021, as Dk. No. 186, the Trustee filed a motion seeking limited authority to

11  operate the Properties for the sole purpose of completing the harvest for fall 2021, with Mr. Codding

12  serving individually as the farm operator.

13       On August 26, 2021, as Dk. No. 201, Trustee and FCW filed a stipulation providing for

14  certain terms for relief from the automatic stay.

15       On September 7, 2021, as Dk. No. 210, the Court entered an order granting relief from stay

16  to FCW pursuant to the stipulated terms agreed to by Trustee and FCW. Importantly, the stipulated

17  terms provided that no enforcement action would be taken against the Live Oak Property before

18  December 1, 2021.

19       Also on September 7, 2021, as Dk. No. 211, the Court entered an order authorizing the

20  Trustee to operate for a limited purpose ("Operate Order").

21       On September 13, 2021, as Dk. No. 218, the Court entered an order compelling various

22  parties (including Rabbit Ridge and the Russells, among others) to turn the Properties over to the

23  sole control of the Trustee.

24       On September 28, 2021, Trustee and Buyer executed a purchase and sale agreement ("PSA")

25  for those specified assets listed and described in Article I of the PSA (which includes, essentially, the

26  Live Oak Property). Under the PSA, Buyer would continue conducting its due diligence which

27  includes drilling exploratory water wells to determine the level of water at the Live Oak Property for

28

4

EXHIBIT 14, PAGE 203

1  future agricultural use. Under the PSA, Buyer submitted an initial bid (contingent on ongoing due

2  diligence) to purchase the Live Oak Property for $9,100,000, subject to overbid. Trustee filed a

3  motion seeking approval of the bid procedures, which was approved in its entirety. On October 20,

4  2021, as Dk. No. 238, the Court entered an order approving the overbid procedures in their entirety

5  and setting a hearing for a sale of the Live Oak Property on December 13, 2021. Due to unforeseen

6  logistical difficulties with the drilling company (discussed below), the timeline for sale was delayed

7  to an anticipated January 2022 date instead of December 13.

8      On October 4, 2021, as Dk. No. 227, the Trustee filed a motion seeking authority to permit

9  Miller Drilling Company to assist Buyer with its due diligence by drilling water wells on the Live

10  Oak Property.

11     On October 31, 2021, Trustee's authorization to operate under the Court's Operate Order

12  expired. After this date, no operations, including farming and wine processing (which was never

13  authorized in the first place) were allowed at the Properties.

14     On November 1, 2021, as Dk. No. 242, the Court entered an order authorizing the water

15  wells to be drilled. Subsequently, Miller Drilling informed the Buyer and the Trustee that due to

16  prior commitments and a full schedule, it would be unable to commence drilling until late December

17  or early January at the latest.

18     On December 9-10, 2021, Trustee's agent Lori Ensley visited the Properties and, with the

19  assistance of FCW's representatives and a locksmith, fully re-keyed the Properties to prevent

20  unauthorized entities or individuals from accessing the Properties. On those dates, Ms. Ensley

21  discovered a crew of workers for Rabbit Ridge apparently using the San Marcos Property for

22  unauthorized purposes. Trustee's investigation continues.

23     On December 10, 2021, FCW's representative signed a stipulation with the Trustee regarding

24  the partial subordination of its lien pursuant to the terms set forth in the stipulation (previously

25  defined as "Agreement"). A true and correct copy of the executed Agreement is attached to the

26  Marshack Declaration as **Exhibit 1.**

27     Also on December 10, 2021, the Trustee transmitted a letter agreement to FCW regarding the

28

EXHIBIT 14, PAGE 204

clarification of certain terms. FCW's representative countersigned the letter agreement. A true and correct copy of the letter agreement is attached to the Marshack Declaration as **Exhibit 2.**

**3.    Details of Compromise/Subordination Agreement**

FCW consents to the sale of the Live Oak Property consistent with the terms set forth in the Agreement, and consents to the sale of the Live Oak Property **only**, free and clear of its lien pursuant to 11 U.S.C. § 363(f)(2), provided that the Agreement is approved in its entirety (or, in the event of any modification by the Court, FCW accepts such modifications).

The following is a summary of the substantive terms of the Agreement.[1]

Generally, FCW consented to the Trustee's marketing of the Properties and consented to the Trustee's sale of the Live Oak Property provided that it would receive at least $8,250,000 in proceeds from sale. FCW also agreed to the payment of various line items out of escrow to the Trustee, his professionals, and to pay various other expenses and claims of the Estate.

FCW consented in principle to the payment of certain line items out of escrow if the Trustee presented an acceptable offer for the sale of either the San Marcos Property or the Texas Road Property. However, FCW has not consented to the sale of either property.

Finally, the Trustee agreed, subject to approval of the Court, to provide a waiver of claims regarding the validity, priority, and extent of FCW's secured claim and also to waive any claim for surcharge against FCW. In exchange, FCW provided the partial subordination described in the Agreement and further agreed to provide a certain reimbursement of costs even if only some of the Properties were foreclosed by FCW. For example, paragraph 9 of the Agreement provides a structure of line item and lump sum payments to the Estate in the event that all three Properties are foreclosed by FCW and no sale occurs. On the other hand, paragraph 10 of the Agreement provides that in the event that some but not all of the Properties are sold by the Trustee, and FCW ultimately forecloses on the remaining Properties, the Estate will receive an allocation of $30,000 per foreclosed property

---

[1] All interested parties are advised to consult the Agreement for all terms and conditions. The statements contained herein are a summary of the material terms and conditions only.

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 14, PAGE 205

1  as a settlement of the surcharge issues (in addition to any disbursements out of escrow). As such, the

2  Agreement provides a benefit to the Estate and avoids further litigation costs and uncertainties.

3  **4.    Legal Argument**

4    "A subordination agreement is enforceable in a case under this title to the same extent that

5  such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

6    **A.    Approval of the Agreement is in the best interest of the Estate.**

7    Under Rule 9019, the court may approve a compromise or settlement on motion by the

8  trustee. Fed. R. Bankr. Proc. 9019. It is well-established that a compromise should be approved if it

9  is "in the best interest of the estate . . . and is fair and equitable for the creditors." *Schmitt v. Ulrich*

10 *(In re Schmitt)*, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997); *ATKN Company v. Guy F. Atkinson*

11 *Company of California (In re Guy F. Atkinson Company)*, 242 B.R 497, 502 (B.A.P. 9th Cir. 1999)

12 ("At its base, the approval of a settlement turns on the question of whether the compromise is in the

13 best interest of the estate.") The standards to be applied to the approval of a settlement include:

14    1)    the probability of success of the litigation on its merits;

15    2)    the difficulties in collection on a judgment;

16    3)    the complexity of the litigation involved; and

17    4)    the expense, inconvenience or delay occasioned by the litigation, and the interest of

18        creditors.

19 *United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (quoting *In re A & C Properties*,

20 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854

21 (1989)).

22    In this case, all of the *A&C* factors weigh in favor of approving the compromise. Under the

23 Agreement, Trustee can resolve the dispute between the Parties, obtain a definite recovery for the

24 Estate, eliminate administrative and litigation costs, and can move forward to administer the Estate's

25 assets for the benefit of the Debtor's creditors. The only claims being compromised pursuant to the

26 Agreement are claims regarding the validity of FCW's secured claim and surcharge.

27

28

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 14, PAGE 206

### i.      Probability of success

"The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c). To prevail on surcharge, the trustee must show that his "expenses were reasonable, necessary, and provided a quantifiable benefit to the secured creditor." *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1068 (9th Cir. 2001). The trustee bears the burden of proof, and the analysis is not simple. *See USDA v. Hopper (In re Colusa Regional Medical Center)*, 604 B.R. 839, 853-58 (B.A.P. 9th Cir. 2019).

Regarding the validity of FCW's secured claim, the probability of success is low. Trustee knows of no dispute regarding the validity and perfection of FCW's secured claim, which was recorded over 10 years ago. Also, regarding surcharge claims under 11 U.S.C. § 506(c), as cited above, the analysis is not simplistic to obtain surcharge. While the Trustee believes that substantially all of his administration of the Properties has directly benefited FCW, and all actions he has taken were to preserve and maintain the Properties constituting FCW's collateral to the best of his ability, neither of the Parties wishes to litigate over the surcharge issues. The probability of success for the surcharge issues is highly uncertain, and this factor weighs strongly in favor of settlement rather than litigation.

### ii.      Difficulties in collection

The Trustee is informed that FCW is solvent and, in the event of litigation, there would not be a difficulty in collecting a money award against FCW. However, given the greatly uncertain likelihood of success and continued expense, convenience, and delay of further litigation, settlement is appropriate.

### iii.      Complexity

As discussed above, the only issue that might be litigated is the issue of surcharge. However, to obtain a full judicial determination of the issues surrounding surcharge, without the agreement by

8

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT

4833-0726-0118,v.1

1   FCW that there was any benefit to FCW, the analysis would be unduly complex especially with

2   regard to quantifying any benefit to FCW. Debtor apparently kept poor written records and to sort

3   out the factual issues related to benefit would be complicated, and may involve reconstructing the

4   history of the Properties at great expense to the Estate (and FCW). Rather than to litigate these

5   issues, and sort out the complex question of quantifying the benefit to FCW by the Trustee's

6   administration, the Parties agreed to settle.

### iv.   Expense, inconvenience or delay

8        Absent consent by FCW to the sale of any of the Properties, the Trustee could not sell any of

9   the Properties, and would be forced to litigate just the issues of possible surcharge upon

10  abandonment. *See In re KVN Corp.*, 514 B.R. 1, 6 (B.A.P. 9th Cir. 2014) ("sales of fully

11  encumbered assets are generally improper… the trustee's proper function is to abandon the property,

12  not administer it…"). And, in the event of litigation over the surcharge issues, there would be great

13  administrative expense and delay in the administration of the case.

### B.   The Subordination Provisions of the Agreement Provide Substantial Benefits to the Estate

16       Trustee does not believe that the subordination provision set forth in the Agreement

17  constitutes a "carve-out." Instead, the Agreement between the Parties effectuates a partial voluntary

18  subordination of FCW's secured claim pursuant to the terms stated in the Agreement. To the extent

19  the Court, however, determines that the subordination provisions of the agreement constitute a

20  carve-out, the requirements for approval of such a carve-out are met here. The requirements for

21  approval of a carve-out are: (1) whether the trustee "fulfilled his or her basic duties;" (2) whether

22  there is "a benefit to the estate, i.e., prospects for a meaningful distribution to unsecured creditors;"

23  (3) whether "the terms of the carve-out agreement been fully disclosed to the bankruptcy court." *See*

24  *In re KVN Corp.*, 514 B.R. at 8.

25       First, the Trustee has fulfilled his basic duties. The Trustee's basic duty is to administer

26  assets of the Estate, including maintaining the value of collateral and to liquidate any value available

27  for the benefit of creditors utilizing the Bankruptcy Code. By entering into the Agreement, the

28

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 14, PAGE 208

1  Trustee is generating a significant return for unsecured creditors, including specific separate

2  provisions for attorneys' fees, reduced professional fees in terms of broker and Trustee

3  compensation, and a separate sum for the benefit of unsecured creditors.

4       Second, there is a benefit to the Estate by approval of the Agreement. The Estate will realize

5  benefit primarily from the sale of the Properties and the collection of proceeds from the sale of

6  grapes from the fall 2021 harvest, which are estimated to be a gross collection of approximately

7  $300,000 to $400,000, with expenses to be determined. After payment of direct harvest expenses,

8  the Trustee anticipates that there will be a substantial sum to be divided between the Estate and FCW

9  pursuant to previously-approved terms for the division of such proceeds. By approval of the

10 Agreement, the Estate will further realize a benefit from the sale of the Properties.

11      Finally, the full agreement has been attached to the Marshack Declaration. The terms have

12 been fully disclosed to the Court.

13 **5.      Conclusion**

14      Because approval of the Agreement provides a sure benefit to the Estate when none would

15 otherwise likely not exist, Trustee respectfully requests that this Court enter an order:

16     1.      Granting the Motion;

17     2.      Approving the Agreement attached as **Exhibit 1** to the Marshack Declaration;

18     3.      Approving the letter agreement attached as **Exhibit 2** to the Marshack Declaration;

19     4.      Authorizing the Trustee to execute the Agreement and implement its terms, including

20 to distribute funds from a future sale of any of the Properties in accordance with the terms of the

21 Agreement; and

22     5.      For such other relief as the Court deems just and proper.

23 DATED: December 20, 2021                MARSHACK HAYS LLP

24

25                                         /s/ Tinho Mang
                                 By: _____
26                                   KRISTINE A. THAGARD
                                     TINHO MANG
27                                   Attorneys for Chapter 7 Trustee,
                                     RICHARD A. MARSHACK
28

EXHIBIT 14, PAGE 209

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare as follows:

1.    I am an individual over 18 years of age and competent to make this Declaration.

2.    If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.    I am the duly appointed and acting chapter 7 trustee ("Trustee") for the bankruptcy estates ("Estate") of Northern Holding, LLC ("Debtor"), the title owner of real property commonly known as 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property").

4.    Since my appointment, I have been negotiating with Farm Credit West, FCLA ("FCW") regarding a consensual sale of the Debtor's real properties. It was only on December 10, 2021 that FCW's representative signed the settlement and subordination agreement, which went through months of revisions, including probably over one dozen versions of the agreement. Each term of the agreement was extensively negotiated.

5.    A true and correct copy of the executed settlement and subordination agreement ("Agreement") is attached here as **Exhibit 1.**

6.    I prepared a letter agreement on December 10, 2021 setting forth certain clarifications to the Agreement and explaining the factual developments subsequent to the drafting of the Agreement. FCW's representative countersigned the letter agreement, which is attached as **Exhibit 2.**

7.    I have consulted with my counsel and considered the probability of success, the difficulties in collection, the complexity of any litigation, and the expense, inconvenience or delay occasioned with any litigation regarding the validity of FCW's secured claim and the issues regarding surcharge. Based on my investigation and familiarity with the issues, and the many hours I have spent attempting to negotiate this agreement, I believe in my business judgment that it is in the best interest of creditors for the Court to approve the Agreement and the letter agreement.

---

11

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT

4833-0726-0118,v.1

8.     I do not believe that the subordination provision set forth in the Agreement constitutes a "carve-out." However, to the extent the Court determines the provisions of the Agreement may be construed as a carve-out, the requirements for approval of a carve-out are met here, as set forth in the Motion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 20, 2021.

_____

RICHARD A. MARSHACK

12

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT

4833-0726-0118,v.1

# EXHIBIT 1

EXHIBIT 14, PAGE 212

D. EDWARD HAYS, #162507
ehays@marshackhays.com
DAVID A. WOOD, #272406
dwood@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt Avenue
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| In re | Case No. 8:20-bk-13014-MW |
|---|---|
| NORTHERN HOLDING, LLC, | Chapter 7 |
| Debtor. | STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND SECURED CREDITOR FARM CREDIT WEST, FCLA RE: VOLUNTARY SUBORDINATION OF LIEN FOR SALE OF 2380 LIVE OAK ROAD, PASO ROBLES, CA |
| | [HEARING TO BE SET] |

TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

This stipulation is entered into between Richard A. Marshack, in his capacity as Chapter 7

Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), on

one hand, and Farm Credit West, FCLA ("FCW"), on the other hand, with regard to the voluntary

subordination of certain aspects of FCW's lien to the extent and only under the conditions stated

below. Collectively, the Trustee and FCW will be referred to as the "Parties."

EXHIBIT 1, PAGE 13
EXHIBIT 14, PAGE 213

# Recitals

A.     On March 23, 2007, as document no. 2007-19418 in the County of San Luis Obispo, FCW recorded a deed of trust in the principal amount of $17,500,000 against various properties owned by Erich Russell, including the Live Oak Property (defined below).

B.     On October 28, 2020, Debtor filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the United States Code, initiating the above-captioned bankruptcy case. FCW is the senior secured lender holding a lien on substantially all assets of the Debtor.

C.     On June 15, 2021, the case was converted to Chapter 7 and the Trustee was appointed as the Chapter 7 trustee for the Estate.

D.     On August 26, 2021, as Dk. No. 201, Trustee filed a stipulation between him and FCW regarding stipulated relief from stay as to the Debtor's real properties effective as of December 1, 2021 ("Enforcement Date").

E.     On September 7, 2021, as Dk. No. 210, the Court entered an order approving the stipulated terms for relief from stay as between Trustee and FCW ("Stay Relief Order"). The execution of this stipulation does not in and of itself satisfy the condition in paragraph 4 of the Stay Relief Order extending the Enforcement Date.

F.     On September 28, 2021, Trustee signed a purchase and sale agreement ("PSA") with Riboli Paso Robles, LLC ("Buyer") regarding real property commonly known as 2380 Live Oak Road, Paso Robles, CA, and only to the extent of the rights being sold pursuant to the paragraph 1.1 of the PSA ("Live Oak Property").

G.     Under the PSA, Buyer submitted an initial bid (contingent on ongoing due diligence) to purchase the Live Oak Property for $9,100,000, subject to overbid. Trustee filed a motion seeking approval of the bid procedures, which was approved in its entirety. On October 20, 2021, as Dk. No. 238, the Court entered an order approving the overbid procedures in their entirety and setting a hearing for a sale of the Live Oak Property on December 13, 2021.

H.     Trustee acknowledges that the Live Oak Property appears to be fully encumbered by FCW's deed of trust and has entered into this stipulation with FCW for the voluntary subordination of FCW's lien solely to the extent stated below. FCW enters into this stipulation to facilitate the sale

EXHIBIT 1, PAGE 14
EXHIBIT 14, PAGE 214

of the Live Oak Property and to avoid further litigation over the distribution of proceeds including

any right of the Trustee pursuant to 11 U.S.C. § 506(c), regarding the other properties. This

Stipulation shall not extend to any other property of the Estate other than that which is specifically

identified herein.

The Parties agree and STIPULATE as follows:

1.      FCW consents to the sale of the Live Oak Property consistent with the terms set forth

below, and consents to the sale of the Live Oak Property **only**, free and clear of its lien pursuant to

11 U.S.C. § 363(f)(2), provided that this Stipulation is approved in its entirety (or, in the event of

any modification by the Court, FCW accepts such modifications). The approved legal description of

the Live Oak Property for which FCW consents to sale is appended to this Stipulation as **Exhibit**

**"1"** and incorporated by reference. By signing this stipulation, FCW does not consent to the sale of

any other property.

2.      Subject to its consent to sale, FCW agrees to voluntarily subordinate its lien on the

Live Oak Property, Texas Road Property, and San Marcos Property (collectively "All Properties" or

"the Properties" and as to the Texas Road Property and San Marcos Property (collectively "TS

Adjoining Properties") **solely with regard to a limited portion of its interest in the proceeds of**

**the sale thereof** (and not on any real property itself), and solely to pay the following line items,

unless otherwise noted:

    a.      As to Live Oak Property from the Live Oak Property sale proceeds:   All

        reasonable closing costs for the sale of the Live Oak Property, which include

        and are estimated as follows: settlement fee (est. $500), title search fees (est.

        $250), escrow fees (est. $9,000), title insurance (est. $20,000), and county

        transfer taxes (calculated at $1.10 per $1000 of gross purchase price), which

        shall be pro-rated and allocated between buyer and seller pursuant to

        paragraph 7.6 of the PSA, and otherwise as customary between buyer and

        seller.

    b.      [Reserved].

c.      As to All Properties from the Live Oak Property sale proceeds: All reasonable
and actually expended costs of maintaining insurance for assets of the Estate
up through the close of escrow or when the assets/properties cease to be
property of the Estate, including the $6,770.68 advanced and expended by
Trustee for commercial liability insurance, approximately $6,800 advanced by
Lee Codding through October 2021 to maintain insurance on the Live Oak
Property (and at the ongoing rate of $1,700 per month for four months since
June 2021), and an additional reserve to maintain future insurance in the
amount of $15,000, which shall be held by Trustee in a segregated account
and, in the event of any unused portion, shall be returned to FCW without
need for further order of the Court.

d.      As to Live Oak Property from the Live Oak Property sale proceeds:  The sum
of $100,000 for the Trustee's attorneys' fees for the Estate through the date of
closing escrow on the Live Oak Property, which amount shall be held in a
segregated account by the Trustee pending Court approval of Trustee's
attorneys' fees (for informational purposes as of November 30, 2021, the
outstanding balance for attorneys' fees for the Trustee exceeds $170,000).

e.      As to the San Marcos Property from the San Marcos Property sale proceeds:
The sum of $60,000 for the Trustee's attorneys' fees for the Estate through the
date of closing escrow on the San Marcos Property, which amount shall be
held in a segregated account by the Trustee pending Court approval of such
fees.

f.      As to the Texas Road Property from the Texas Road Property sale proceeds:
The sum of $30,000 for the Trustee's attorneys' fees for the Estate through the
date of closing escrow on the Texas Road Property, which amount shall be
held in a segregated account by the Trustee pending Court approval of such
fees.

EXHIBIT 1, PAGE 16
EXHIBIT 14, PAGE 216

g.   As to the Live Oak Property, from the Live Oak Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Hilco Real Estate, LLC
("Hilco") in the amount of 1.75% of the gross sale price of the Live Oak
Property, which shall be paid directly out of escrow.

h.   As to the Texas Road Property from the Texas Road Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Hilco in the amount of
1.75% of the gross sale price of the Texas Road Property, which shall be paid
directly out of escrow.

i.   As to the San Marcos Property from the San Marcos Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Hilco in the amount of
1.75% of the gross sale price of the San Marcos Property, which shall be paid
directly out of escrow.

j.   As to the Live Oak Property, from the Live Oak Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Onyx Asset Advisors,
LLC ("Onyx") in the amount of 1.75% of the gross sale price of the Live Oak
Property, which shall be paid directly out of escrow.

k.   As to the Texas Road Property from the Texas Road Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Onyx in the amount of
1.75% of the gross sale price of the Texas Road Property, which shall be paid
directly out of escrow.

l.   As to the San Marcos Property from the San Marcos Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Onyx in the amount of
1.75% of the gross sale price of the San Marcos Property, which shall be paid
directly out of escrow.

m.   As to the Live Oak Property, from the Live Oak Property sale proceeds:
Compensation for the Trustee in an amount equal to 2.25% of the gross
purchase price of each of the Live Oak Property, which amount shall be held

EXHIBIT 1, PAGE 17
EXHIBIT 14, PAGE 217

1           in a segregated account by the Trustee pending Court approval of Trustee's

2           compensation under 11 U.S.C. § 326.

3      n.    As to the Texas Road Property, from the Texas Road Property sale proceeds:

4           Compensation for the Trustee in an amount equal to 2.25% of the gross

5           purchase price of each of the Texas Road Property, which amount shall be

6           held in a segregated account by the Trustee pending Court approval of

7           Trustee's compensation under 11 U.S.C. § 326.

8      o.    As to the San Marcos Property from the San Marcos Property sale proceeds:

9           Compensation for the Trustee in an amount equal to 2.25% of the gross

10          purchase price of each of the San Marco Property, which amount shall be held

11          in a segregated account by the Trustee pending Court approval of Trustee's

12          compensation under 11 U.S.C. § 326.

13     p.    As to All Properties:  An additional $30,000 per closed sale transaction to be

14          paid solely from the proceeds of that sale which the Trustee consummates for

15          miscellaneous contribution for the benefit of the Estate to pay other

16          administrative expenses and other creditor claims.  This subparagraph shall

17          not apply for any sale transaction that does not close.

18     q.    As to Live Oak Property as noted and as to TS Adjoining Properties as noted:

19          The sum of $12,000 for the Trustee's field agent Lori Ensley of Bicher &

20          Associates and other professionals, including accountants and agents, or any

21          other permitted administrative expense, which shall be held by the Trustee and

22          paid according to the approved procedures set forth in the field agent's

23          employment application. As to TS Adjoining Properties, the actual amount for

24          services invoiced by Trustee's field agent or other permitted administrative

25          expenses not to exceed $12,000 per property.

26     r.    As to All Properties:  To the extent not paid directly by FCW, actual and

27          reasonable costs of securing and maintaining the properties including cost of

28

EXHIBIT 1, PAGE 18
EXHIBIT 14, PAGE 218

1                        utilities and costs to secure the property and to change locks.  Trustee shall do

2                        his best to notify FCW in advance of any expenses before they are incurred.

3            s.      For purposes of convenience only, preliminary estimates of 2.a. through 2.r.

4                        are set forth in **Exhibit "2"**.

5    3.      Any line items which are not paid or used in full according to the descriptions above

6 shall be returned to FCW upon entry of further Court order, or the closing of the bankruptcy case,

7 whichever comes first.

8    4.      All funds not otherwise provided for above shall be paid immediately (i.e. no later

9 than the closing date) to FCW from escrow on a sale of the Live Oak Property, Texas Road Property,

10 and San Marcos Property in accordance with transfer instructions provided by FCW to the Trustee or

11 his escrow agent. All payments shall be made in good funds. Through this stipulation, FCW does not

12 consent to receiving any less than $8,250,000 through a sale of the Live Oak Property at the initial

13 bid price of $9,100,000, and its consent to sale under 11 U.S.C. § 363(f)(2) is expressly conditioned

14 on its receipt of no less than $8,250,000 through escrow from the Live Oak Property.  Further, FCW

15 has no obligation to consent to a sale or release their lien on TS Adjoining Properties, and FCW has

16 specifically advised the Trustee that it will not consent to the sale of any of the Properties that

17 includes a provision that FCW is required to carry any debt owed by the purchaser of any such

18 property at either a senior-most or junior priority level after the transaction closes.

19    5.      As to Live Oak Property:  Provided that the Court approves the bid procedures set

20 forth in the Live Oak  PSA, and a qualifying overbid is received and accepted by the Trustee, FCW

21 consents to the voluntary subordination of its deed of trust solely on the proceeds of a consummated

22 sale of the Live Oak Property to pay the break-up fee and due diligence costs to Buyer if it is the

23 unsuccessful bidder, pursuant to the terms of the PSA.

24    6.      As to Live Oak Property:  As previously agreed, if the gross purchase price of the

25 Live Oak Property exceeds $10,000,000, FCW agrees to an additional subordination of its lien (and,

26 as stated in paragraph 2 above, solely with regard to the Live Oak Property proceeds of sale out of

27 escrow, pursuant to the terms of this stipulation) in an amount equal to an additional 2.5% of the

28 gross purchase price of the Property which is in excess of $10,000,000 (i.e. if the purchase price is

EXHIBIT 1, PAGE 19
EXHIBIT 14, PAGE 219

1   $10,100,000, the Estate shall receive an additional 2.5% of $100,000, or $2,500.00) for the benefit of

2   the Estate to be allocated according to the Trustee's business discretion.

3          7.      The Parties acknowledge that FCW is under no compulsion or obligation to extend

4   the Enforcement Date. Due to unanticipated delays which cannot be attributed to either Buyer, FCW,

5   or Trustee, the anticipated closing date of the Live Oak sale has been postponed to early 2022. Upon

6   the execution of this Stipulation, FCW consents to the one-time extension and modification of the

7   Enforcement Date as follows: the Enforcement Date shall be extended from December 1, 2021 to

8   January 28, 2022. If, prior to the Enforcement Date, the Trustee has filed a motion with the Court

9   seeking approval of a sale of one or more of the real property parcels over which FCW asserts a

10  secured claim, then the Enforcement Date shall be extended to March 15, 2022. Nothing in this

11  Stipulation affects the ability of Trustee to seek abandonment of some or all of the Properties after

12  the Enforcement Date or FCW to foreclose on some or all of the Properties after the Enforcement

13  Date. The Parties agree to the entry of an amended order granting relief from the automatic stay to

14  memorialize the terms of this Stipulation and the extension of the Enforcement Date in substantially

15  the form of the order attached as **Exhibit "4."**

16         8.      As to All Properties:  Trustee on behalf of the Estate, stipulates and agrees to the

17  validity, extent, and priority of FCW's secured claim and liens, and, effective as of the Bankruptcy

18  Court's entry of an order approving this Stipulation, and, subject to the terms of this agreement,

19  releases FCW from all known or unknown claims held by the Trustee or the Estate, including any

20  claims under 11 U.S.C. § 506(c) regarding the Live Oak Property, San Marcos Property, the Texas

21  Road Property, and any other collateral of FCW. This provision and all other terms of this agreement

22  are not effective unless specifically approved by the Bankruptcy Court, after notice and a hearing.

23         9.      As additional consideration for the Trustee's waiver of the claims for surcharge

24  pursuant to 11 U.S.C. § 506(c) regarding the Properties and FCW's other collateral, the Parties agree

25  that, provided that the Court approves the Trustee's waiver of claims including the claims for

26  surcharge, in the event that FCW forecloses on or causes the disposition of all three of the

27  Properties, the following line items shall be reimbursed to the Estate and its professionals as follows:

28               a.      $50,000 for the Trustee's attorneys' fees.

EXHIBIT 1, PAGE 20
EXHIBIT 14, PAGE 220

b.  Fees and expenses for Trustee's field agent Lori Ensley not to exceed $15,000.

c.  All actually expended, reasonable administrative expenses (i.e. costs, and not fees) related to the professional fees stated above, not to exceed $5,000.

d.  All insurance premiums actually paid by Trustee for coverage necessary to maintain the administration of any property of the Estate over which FCW asserts a secured claim.

e.  All post-petition *ad valorem* property taxes (if any) charged to the Estate over the course of the Trustee's administration. Alternatively, at FCW's discretion, FCW may choose to pay the outstanding property taxes such that no taxes are charged to the Estate.  FCW may dispute the amount of such taxes and pay the County of San Luis Obispo directly when FCW's dispute is resolved, and the Trustee is not entitled to compensation under 11 U.S.C. § 326 for any such payment(s) made by FCW directly to the County.

f.  The lump sum of $80,000 as a miscellaneous settlement payment for the surcharge issues.

g.  For purposes of convenience only, preliminary estimates of 9.a. through 9.f. are set forth in **Exhibit "3"**.

h.  The amounts set forth in this paragraph 9 shall only be earned by and paid to the Trustee if the Trustee delivers full possession of the Properties, without any unauthorized occupants or tenants, and the other remaining collateral of FCW *(e.g.,* equipment and inventory) to FCW upon abandonment of the ᴧowned by Northern Ram Properties and the other FCW collateral by the Trustee, or prior to the foreclosure of such Properties by FCW. ᴧowned by Northern Ram

10.  As additional consideration for the Trustee's waiver of the claims for surcharge pursuant to 11 U.S.C. § 506(c) regarding the Properties and FCW's other collateral, to the extent FCW forecloses on one or more of the Properties, it shall be responsible for either all post-petition *ad valorem* property taxes (if any) charged to the Estate over the course of the Trustee's

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 21
EXHIBIT 14, PAGE 221

administration for the property foreclosed upon, or, alternatively, at FCW's discretion, FCW shall

pay the outstanding property taxes such that no taxes are charged to the Estate with respect to the

property foreclosed upon. FCW may dispute the amount of such taxes with the County of San Luis

Obispo. FCW may also pay the County of San Luis Obispo directly for the taxes addressed in this

paragraph either before or after the resolution of any dispute over such taxes, and the Trustee is not

entitled to compensation under 11 U.S.C. § 326 for such payment(s) made by FCW directly to the

County. Additionally, should the Trustee complete the sale of the Live Oak Property and FCW

thereafter proceeds to foreclose on the remaining TS Adjoining Properties, provided that the Trustee

delivers full possession of the remaining Properties, without any unauthorized occupants or tenants,

and possession the other remaining collateral of FCW (*e.g.*, equipment and inventory) to FCW upon
[owned by Northern RM]

abandonment of the Properties and the other FCW collateral by the Trustee, or prior to the
[owned by Northern RM]

foreclosure or disposition of such Properties by FCW, the, the Trustee shall be entitled to receive a lump

sum payment from FCW of $30,000 *per property* as consideration for the waiver of claims under 11

U.S.C. § 506(c), which is in addition to the any allocations stated in paragraph 2.

     11.    Concurrently with the waivers described above, upon the Trustee's delivery of full

possession of FCW's collateral in accordance with this Stipulation, except for its allowed claim

against the Estate, FCW waives any and all other claims against the Estate, and any and all claims

against the Trustee and his agents and professionals acting in their capacities as agents for the Estate,

and any and all claims against the Trustee in his individual capacity related to the administration of

this case.

     12.    FCW shall immediately recommend to the Trustee one or more qualified security

agents and/or property managers to supervise and control the access to and use of all three properties

and all collateral of FCW, and shall consult with the Trustee to recommend necessary steps and

necessary agreements for the maintenance and preservation of the three properties and FCW's

collateral. The security agents/property managers shall be employed on behalf of the Estate by the

Trustee, if possible, and FCW shall directly advance and pay all costs and fees of and incurred by the

security agents/property managers. Security agents and/or property managers shall be employed as

necessary as determined by FCW with the consent of the Trustee; provided, however, there is no

1  obligation to employ security agents and/or property managers absent such a need, as determined by

2  FCW – Trustee shall have no obligation to recommend collateral preservation procedures to FCW

3  and shall not be held responsible in the event of any damage or deterioration to collateral after FCW

4  assumes possession and control of the Properties.  The security agents/property managers shall not

5  take any action and not incur any fees or expenses outside of what is in its or their contracts without

6  the prior consent of the Trustee and FCW.  The security agents/property managers shall provide

7  reasonable access to the properties to both FCW and the Trustee, and to those agents or

8  representatives of FCW and the Trustee that are approved by both FCW and the Trustee. To the

9  extent that the mutually approved security agents/property managers seek any recovery from the

10  Estate including but not limited to recoveries on account of services performed for maintenance,

11  access control, supervision, or preservation of FCW's collateral, FCW shall be directly liable for

12  such expenses and FCW fully indemnifies the Estate for any such costs and shall immediately pay

13  all such costs, and shall undertake to defend the Estate against adverse claims arising from the

14  services performed by the security agents/property managers. The Trustee shall prepare and file a

15  motion to employ the security agents/property manager on behalf of the Estate, if necessary, and the

16  specific terms for management and control of the properties shall be memorialized in a separate

17  agreement.

18      13.    This stipulation, after it has been approved by the Court, will fully meet and satisfy

19  the requirements of Section 6.5 of the Live Oak PSA requiring an "acceptable carve out agreement"

20  between the Trustee, the Estate, and FCW. This stipulation constitutes the entire agreement between

21  the Parties.

22      14.    This stipulation is subject to approval by the Bankruptcy Court. No provision of this

23  stipulation is effective or binding on any Party, unless the Court enters an order approving these

24  provisions. Any disputes over the interpretation or enforcement of this stipulation shall be resolved

25  solely by the United States Bankruptcy Court for the Central District of California, Santa Ana

26  Division.

27

28

EXHIBIT 1, PAGE 23
EXHIBIT 14, PAGE 223

1  15.  Once this stipulation is approved by the Bankruptcy Court, no further material

2 modification or material amendment shall be effective unless: (1) such amendment or modification

3 is in writing, and (2) the amendment or modification is approved by the Bankruptcy Court.

4  16.  This stipulation may be executed in one or more counterparts and facsimile or

5 electronic signatures may be used in filing this document with the Court.

6

7 Dated: December _10_, 2021    FARM CREDIT WEST, FCLA

8

9          By: _____

10           KEVIN RALPH

11           Position: _Executive Vice President_

12 Dated: December _6_, 2021

13          By: _____

14           RICHARD A. MARSHACK
            Chapter 7 Trustee for Debtor,
            NORTHERN HOLDING, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4439817v1 | 100967-0004       12

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

1 | EXHIBIT 1

2 |
**LEGAL DESCRIPTION**

3 |
4 | THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF **CALIFORNIA**, COUNTY OF **SAN LUIS OBISPO**, AND IS DESCRIBED AS FOLLOWS:

5 | **PARCEL A: APN 026,342,039**

6 | THE NORTHEAST QUARTER OF SECTION 12, IN TOWNSHIP 27 SOUTH, RANGE 11 EAST MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL FLAT OF THE SURVEY OF SAID LAND APPROVED BY THE SURVEYOR GENERAL.

7 | **PARCEL A-1:**

8 | AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10 FEET ON THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 27, RANGE 11, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND APPROVED BY THE SURVEYOR GENERAL.

9 |
10 | **PARCEL A-2:**

11 | AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN OVER, UNDER AND UPON A STRIP OF LAND 30 FEET WIDE LOCATED IN THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND APPROVED BY THE SURVEYOR GENERAL, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

12 |
13 |
14 | COMMENCING AT THE EAST QUARTER CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2" REBAR CAPPED RCE 14994 IN BOOK 1, PAGE 159 OF OFFICIAL RECORDS;

15 | THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 12, SOUTH 89°29'51" WEST 1,393.11 FEET MORE OR LESS TO THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING;

16 | THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48" LIVE OAK TREE;

17 | THENCE SOUTH 10°30'20" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD;
THENCE SOUTH 79°29' EAST TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO. M5262).

18 |
19 | THE SIDE LINES OF THE ABOVE MENTIONED 30 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

EXHIBIT 1, PAGE 25
EXHIBIT 14, PAGE 225

**EXHIBIT 2**

Estimates as to Live Oak Property proceeds:

| Item | Amount |
|---|---|
| Closing costs: settlement fee | $500 |
| Closing costs: title search fee | $250 |
| Closing costs: escrow fee | $9,000 |
| Closing costs: title insurance | $20,000 |
| County transfer tax | $1.10 per $1,000 |
| Commercial liability insurance @ $3,946.50 for San Marcos (8/21 – 8/22) @ $2,824.18 for Live Oak (10/21 – 10/22) | $6,770.68 +$15,000 reserve |
| Insurance (Live Oak) (Monthly) | $1,700/mo. since June 2021 |
| Trustee's attorneys' fees | $100,000 |
| Broker's fee (Hilco) | 1.75% of gross |
| Broker's fee (Onyx) | 1.75% of gross |
| Trustee's compensation (reduced) | 2.25% of gross |
| Miscellaneous payment | $30,000 |
| Trustee's field agent Lori Ensley | $12,000 |
| All other actual costs of securing and maintaining property such as utilities | TBD |

Estimates as to San Marcos Property proceeds:

| Item | Amount |
|---|---|
| Closing costs | TBD |
| County transfer tax | $1.10 per $1,000 |
| Trustee's attorneys' fees | $60,000 |
| Broker's fee (Hilco) | 1.75% of gross |
| Broker's fee (Onyx) | 1.75% of gross |
| Trustee's compensation (reduced) | 2.25% of gross |
| Miscellaneous payment | $30,000 |
| Trustee's field agent Lori Ensley | $12,000 |
| All other actual costs of securing and maintaining property such as utilities | TBD |

Estimates as to Texas Road Property proceeds:

| Item | Amount |
|---|---|
| Closing costs | TBD |
| County transfer tax | $1.10 per $1,000 |
| Trustee's attorneys' fees | $30,000 |
| Broker's fee (Hilco) | 1.75% of gross |
| Broker's fee (Onyx) | 1.75% of gross |
| Trustee's compensation (reduced) | 2.25% of gross |
| Miscellaneous payment | $30,000 |
| Trustee's field agent Lori Ensley | $12,000 |
| All other actual costs of securing and maintaining property such as utilities | TBD |

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 26
EXHIBIT 14, PAGE 226

**EXHIBIT 3**

Estimates for consideration for surcharge waiver (all properties foreclosed):

| Item | Amount |
|---|---|
| Attorneys' fees without regard to category | $50,000 |
| Fees for field agent Lori Ensley | $15,000 |
| Administrative costs for professionals | $5,000 |
| Insurance premiums | $6,770.68 + $1,700 monthly since June 2021 |
| Postpetition property taxes | TBD – paid directly by FCW |
| Miscellaneous payment | $80,000 |

Estimates for consideration for surcharge waiver (Live Oak sold, others foreclosed):

| Item | Amount |
|---|---|
| Attorneys' fees without regard to category | already paid per ¶ 2 |
| Fees for field agent Lori Ensley | already paid per ¶ 2 |
| Administrative costs for professionals | already paid per ¶ 2 |
| Insurance premiums | already paid per ¶ 2 |
| Postpetition property taxes | TBD – paid directly by FCW |
| Miscellaneous payment for San Marcos | $30,000 |
| Miscellaneous payment for Texas Road | $30,000 |
| Trustee's attorneys' fees for negotiating taxes | TBD – subject to separate stipulation if any |

4439817v1 | 100967-0004

15

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 27
EXHIBIT 14, PAGE 227

1

**EXHIBIT 4**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 28
EXHIBIT 14, PAGE 228

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Michael J. Gomez (State Bar No. 251571)<br> mgomez@frandzel.com<br>Reed S. Waddell (State Bar No. 106644)<br>rwaddell@frandzel.com<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>1000 Wilshire Boulevard, Nineteenth Floor<br>Los Angeles, California 90017-2427<br>Telephone: (323) 852-1000<br>Facsimile: (323) 651-2577<br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – *SANTA ANA* DIVISION**

| In re:<br><br>NORTHERN HOLDINGS, LLC,<br><br><br><br><br><br><br><br>                                          Debtor(s). | CASE NO.: 8:20-bk-13014-MW |
|---|---|
| | CHAPTER: 11 |
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)** |
| | DATE: August 30, 2021<br>TIME: 2:00 p.m.<br>COURTROOM: 6C<br>PLACE: 411 West Fourth Street<br>           Santa Ana, CA 92701 |

**Movant:**  Farm Credit West, FLCA

1.  The Motion was:     ☒ Opposed     ☐ Unopposed     ☒ Settled by stipulation

2.  The Motion affects the following real property and the personal property described in item no. 17 below (collectively, the "Property"):

*Street address*:     <u>2380 Live Oak Rd</u>
*Unit/suite number*:
*City, state, zip code*:   <u>Paso Robles, CA 93446</u>
Legal description or document recording number (including county of recording):

☒ See attached page and item no. 17 below.

---

4439709v1 | 100967-0004 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT 1, PAGE 29
EXHIBIT 14, PAGE 229

The Motion is granted under:

    a. ☒ 11 U.S.C. § 362(d)(1)

    b. ☒ 11 U.S.C. § 362(d)(2)

    c. ☐ 11 U.S.C. § 362(d)(3)

    d. ☒ 11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

        (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

        (2) ☒ Multiple bankruptcy cases affecting the Property.

        (3) ☒ The court ☒ makes  ☐ does not make  ☐ cannot make a finding that the Debtor was involved in this scheme.

        (4) If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing.

3. ☒ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

    a. ☒ Terminated as to the Debtor and the Debtor's bankruptcy estate.

    b. ☐ Modified or conditioned as set forth in Exhibit _____ to this order.

    c. ☐ Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

4. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

5. ☐ Movant must not conduct a foreclosure sale of the Property before (*date*) _____.

6. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

7. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

8. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

9. ☒ The 14-day stay as provided in FRBP 4001(a)(3) is waived.

10. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

11. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

4439709v1 | 100967-0004 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 2                    **F 4001-1.RFS.RP.ORDER**

EXHIBIT 1, PAGE 30
EXHIBIT 14, PAGE 230

12. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒  A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the entry of this Order:

    (a) ☒  without further notice.

    (b) ☒  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

14. ☐  This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

15. ☒  This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from entry of this Order:

    (a) ☒  without further notice.

    (b) ☒  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

16. ☒  This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

    (a) ☒  without further notice.

    (b) ☒  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☒  Other (*specify*): Relief from the automatic stay is further granted under the grounds provided for above in item nos. 2.a., 2.b., 2.d., 3, 4, 9, 10, 15, and 16 as to the personal property described in the Security Agreement attached to the Motion as Exhibit 3 (Dkt. 11).

The Enforcement Date as defined and set forth in the Order Granting Relief from Stay (Dkt. 210), which affects the real properties, is being continued by separate stipulation and order.  This Order does not affect that Enforcement Date.

### 

4439709v1 | 100967-0004 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   Page 3                                   **F 4001-1.RFS.RP.ORDER**

**EXHIBIT 1, PAGE 31**
**EXHIBIT 14, PAGE 231**

(This attachment is the continuation page for paragraph 2 of this order.)

2.    The Motion affects the following real property:

| Property Name | APN | Property Address / Location |
|---|---|---|
| Rabbit Ridge Winery | 026-104-001 | 1172 San Marcos Road, Paso Robles, CA, 93446. |
| Texas Road Vineyard | 027-145-022 | Located along the north side of Texas Road, just north of San Marcos Road and ~1.5 miles west of Highway 101, being ~4 miles northwest of Paso Robles, in rural San Luis Obispo County. |
| Live Oak Vineyard | 026-342-039 | 2380 Live Oak Road, Paso Robles, CA 93446. Located ~0.2 mile north of Live Oak Road and ~0.8 mile west of Arbor Road, being ~2.5 miles southwest of Paso Robles, in rural San Luis Obispo County. |

Legal description or document recording number (including county of recording):

PARCEL A: APN 026,342,039

The Northeast quarter of Section 12, in Township 27 South, Range 11 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

PARCEL A-1:

An Easement for utility purposes beginning at Live Oak Road and extending North over the East 10 feet on the Northeast quarter of the Southeast quarter of Section 12, Township 27, Range 11, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

PARCEL A-2:

An Easement to provide ingress, egress, public utilities and incidental purposes to the Southwest quarter of the Northwest quarter of Section 12, Township 27 South, Range 11 East, Mount Diablo Base and Meridian over, under and upon a strip of land 30 feet wide located in the Southeast quarter of Section 12, Township 27 South, Range 11 East, Mount Diablo Base and Meridian, according to the Official Plat of the Survey of said land approved by the Surveyor General, and lying equally on each side of the following described centerline:

Commencing at the East quarter corner of said Section 12, said corner being shown as a ½" rebar capped RCE 14994 in Book 1, Page 159 of Official Records;
Thence along the Northerly line of the Southeast quarter of said Section 12, South 89°29'51" West, 1,393.11 feet more or less to the Southwest corner of the Southeast quarter of the Northeast quarter of said Section 12 and the True Point of Beginning;
Thence leaving said Northerly line South 20°22'08" West, 701.76 feet to a point which bears South 70°16' East, 17.00 feet from the center of a 48" live oak tree;
Thence South 10°30'20" West, 341.71 feet to a point which bears South 79°29' East, 15.00 feet from the center of a cattle guard;
Thence South 79°29' East to the center of Live Oak Road (County Road No. M5262).

The side lines of the above mentioned 30 foot strip shall be lengthened and shortened to meet the beginning and ending boundary lines.

PARCEL B: APN 026,021,070

The Southerly 40 acres of the North half of the Northwest quarter of Section 12, in Township 26 South, Range 11 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

EXCEPTING THEREFROM an undivided ½ interest in and to all oil, gas and other hydrocarbon substances and minerals in or under said land, but without right of surface entry as reserved by Clara M. Guthier, a widow, in Deed recorded March 27, 1961 in Book 1115, Page 246 of Official Records.

PARCEL C: APN: 027,145,022

Government Lots 3 and 4 and the East half of the Southwest quarter of Section 31, Township 25 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General, as described in Certificate of Compliance recorded September 13, 1985 as Instrument No. 052170 of Official Records.

EXCEPTING THEREFROM an undivided ½ interest in the land owners share of royalties from oil, gas, other hydrocarbons, or minerals actually produced on or from said land or any part thereof, as reserved by George Blechen and Marie Blechen, his wife and Elsie Loose, a widow in Deed dated May 16, 1958 and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

ALSO EXCEPTING 50% of grantors present interest in all oil, gas and other hydrocarbons and other minerals that are on or may be on or within said lands, together with 50% interest in and to all oil, gas and other hydrocarbons and other minerals as same may be increased upon expiration of royalty interests as reserved in Deed dated May 16, 1958 executed by George Blechen and Marie Blechen, his wife and by Elsie Loose, a widow and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

Such mineral reservations in favor of grantors herein are without any right of entry to the surface of said land and are without any right of entry to the first 500 feet adjacent to and lying beneath the surface of said land.

PARCEL C-1:

A 30 foot wide Easement for ingress, egress and incidental purposes over that portion of Lot 4 of "Home of the Almond", in the County of San Luis Obispo, State of California, according to map recorded in, Book 2, Page 17 of Maps, the centerline of which is more particularly described as follows:

Commencing at the Southeast corner of said Lot 4;
Thence along the Easterly line of Lot 4, North 0°30'00" West, 65.00 feet to the point of beginning;
Thence parallel to the South line of Lot 4, North 89°45'00" West, 203.81 feet;
Thence South 73°38'54" West, 138.47 feet;
Thence South 78°42'47" West, 52.18 feet to a point that lies 15.00 feet North of the South line of said Lot 4;
Thence 15 feet Northerly of and parallel to said South line of Lot 4, North 89°45'00" West, 559.74 feet to the Westerly line of Lot 4.

PARCEL D: APN: 026,104,001

Lot 4 of Section 5, Lots 1, 2, 3 and 4, the Southwest Quarter of the Northeast Quarter and the Southeast Quarter of the Northwest Quarter of Section 6, all in Township 26 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the official plate thereof.

EXCEPTING THEREFROM that portion lying South of San Marcos Road.

ALSO EXCEPTING THEREFROM ½ of the oil, gas, mineral and other hydrocarbon substances in and under said land as reserved by Robert L. Linnett, a married man and Henry C. Brigham, a married man in equal shares by deed recorded June 21, 1977 in Book 1988, Page 755 of Official Records.

PARCEL E: APN:. 014,311,014 .

The Northeast quarter of Section 23, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California.

PARCEL E-1:

A right of way for ingress to and egress from said Parcel 1, and for the installation and maintenance of utility pipe and pole lines, in, upon, along and under a strip of land 40 feet wide, containing 0.038 acres in the Southwest corner of the Southeast quarter of Section 14, Township 26 South, Range 10 East, and 0.638 acres in the Southwest quarter of said section, the centerline of which strip of land is described as follows:

Beginning at a point 28 feet East of the South ¼ corner of Section 14, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, and running thence North 45° West, 68.85 feet to a point 20 feet West of the Easterly boundary line of the Southwest quarter of Section 14;
Thence North and parallel to said Easterly boundary line, 343.9 feet to a point;
Thence North 42°0' West, 28.5 feet to a point;
Thence North 59°40' West, 293.5 feet more or less to the Southeasterly boundary line of the San Marcos-Adelaide County Road.

Situated in the State of California, Unincorporated Area, County of Sonoma, and described as follows:

PARCEL ONE

BEGINNING on section line at a point 14.30 chains South from the northwest corner of Section 5, Township 8 North, Range 9 West, M.D,B, & M., and running thence North 89° 45' East, 63 21 chains to a station, thence North 69° East, 3.00 chains to an iron pin driven in the center of the county road leading from Healdsburg to Guerneville; thence South 13° 45' East, 2.15 chains to an iron pin, thence South 14° 30' East, 3 23 chains to an iron pin in the center of said road, thence North 77° 15' East, 1.91 chains; thence South 33° 40' East, 0.35 chains, thence South 74° 45' East, 0.30 chains; thence North 84° 30' East, 0.18 chains; thence North 62° 30' East, 0.39 chains; thence North 37° East, 0.62 chains to a station; thence North 77° 15' East, 24.82 chains to a stake driven in the middle of a slough in the division line between the lands herein described and the lands of John McClish; thence North 19° East, 2.71 chains; thence North 42° 30' East, 1.46 chains, thence North 32° East, 2.25 chains; thence North 24° 10' East, 0.65 chains to an iron pin at corner; thence South 78° 15' West, 32.85 chains to an iron pin in the center of aforesaid county road; thence North 22° West, in the center of road, 2.49 chains to an iron pin; thence South 89° 30' West, 65.00 chains to section line, and thence South on section line, 3.18 chains to the point of beginning.

EXCEPTING THEREFROM all that portion lying Easterly of the centerline of the Healdsburg — Guerneville Road.

PARCEL TWO

BEGINNING at a point, 14.30 chains South from the northwest corner of Section 5, Township 8 North, Range 9 West, M.D.B, & M,, and running thence, North 89° 45' East, 40.16 chains to a station in the center of a small creek, thence South 5.77 chains to the land of John McClish; thence West on said McClish's north line, 40.11 chains to section line; thence North on section line 5.54 chains to the point of beginning.

(110-070-026-000)

EXHIBIT 1, PAGE 36
EXHIBIT 14, PAGE 236

# EXHIBIT 2

EXHIBIT 14, PAGE 237

# M A R S H A C K   H A Y S LLP

**ATTORNEYS AT LAW | LITIGATION | REORGANIZATION | BANKRUPTCY**

Richard A. Marshack
D. Edward Hays
Chad V. Haes
David A. Wood
Judith E. Marshack
Laila Masud
Tinho Mang
Bradford N. Barnhardt
_____
*Of Counsel*
Kristine A. Thagard
Matthew W. Grimshaw

Reference No. 1015-146
Sender: Tinho Mang on behalf of Richard A.
Marshack

December 10, 2021

*VIA E-MAIL AND OVERNIGHT MAIL ONLY*

Reed Waddell, Esq.
Michael Gomez, Esq.
Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, CA 90017
rwaddell@frandzel.com

Re:    *In re Northern Holding, LLC*
       Case No. 8:20-bk-13014-MW
       **Letter Agreement re: Access to Paso Robles Properties and
       Maintenance of Collateral**

To Whom It May Concern:

     I am the duly-appointed and acting Chapter 7 Trustee (the "Trustee") for the
Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), which is the owner
of record of the real properties commonly known as (1) 2380 Live Oak Road, Paso
Robles, CA ("Live Oak Property"); (2) 1172 San Marcos Road, Paso Robles, CA ("San
Marcos Property"); and (3) adjacent real property commonly known as the "Texas Road"
property. Together, these three real properties shall be referred to as the "Properties."

     On November 22, 2021, I transmitted a letter to Farm Credit West, FLCA
("FCW") regarding my immediate authorization to FCW to take all actions to secure the
Properties, including re-keying all access doors, at FCW's sole expense, pursuant to and
subject to my ability to, on behalf of the Estate, assume possession and control of the
Properties at any time.

**M A R S H A C K   H A Y S** LLP **| www.marshackhays.com**
870 Roosevelt | Irvine, CA 92620 | 949.333.7777 | Fax 949.333.7778

EXHIBIT 2, PAGE 37
EXHIBIT 14, PAGE 238

December 10, 2021
Page 2

On November 29, 2021, my field agent Lori Ensley met with FCW's authorized representative Jacob Bingham and conducted a joint inspection of the Properties. No significant issues were identified as a result of this joint inspection, other than that FCW requested that I immediately remove all personnel from the Properties. As for collateral on the Properties, FCW did not identify any item of collateral which was not present during the inspection on November 29, 2021.

On December 6, 2021, I signed a Subordination Stipulation with Farm Credit West, FCLA ("FCW"), which includes provisions stating that I am required to deliver "full possession" of the Properties and "other remaining collateral of FCW (*e.g.*, equipment and inventory)" to FCW as a precondition to certain terms of the stipulation.

On December 7, 2021, a letter agreement was transmitted to counsel for FCW regarding the Trustee's intention relating to the possession of the Properties. Subsequently, FCW requested that access to the Properties be transferred to FCW starting on December 9, 2021 at 1:00 p.m., and arrangements were made.

On December 9-10, 2021, my field agent Lori Ensley accompanied FCW's authorized representatives and a locksmith at the Properties, where all occupants or persons on the Properties were instructed to voluntarily leave, and full control of all access doors and gates was assumed by FCW as of 12:34 p.m. on December 10, 2021, with no current occupants at any Properties.

As defined in the Subordination Stipulation, "full possession" of the Properties has been delivered by me and control of the Properties has been assumed by FCW, subject to my ability and authority to retake possession and control of the Properties at any time. All personal property of Northern Holding, LLC located on the Properties at the time of transferring access to FCW's representative is now deemed delivered to FCW as other remaining collateral, subject to my ability to retake possession and control of any and all Estate property at any time. On the other hand, any personal property or assets which are not the property of the Estate (such as, for example, any personal effects of any prior occupant of the Properties or personal effects of any workers on the Properties) should be released to the possession of such persons upon request, except where FCW claims a valid, perfected security interest in such assets. FCW shall not unreasonably withhold access to the Properties solely for the purpose of allowing third parties to retrieve their personal effects from the Properties under supervision by FCW's designated representative(s) and/or the Trustee's representative, if necessary.

December 10, 2021
Page 3


     All property located on the Properties as of 12:34 p.m. on December 10, 2021 is now deemed the management and financial responsibility of FCW, including any necessary and advisable measures to preserve, maintain, manage, and secure the real properties or personal property located thereon, subject to my authority to retake possession and control of the Properties at any time. This includes any preservation or maintenance requested by Anthony Riboli, whose purchase of the Live Oak Property benefits principally FCW. Mr. Riboli has been encouraged to directly contact FCW's representatives to discuss any property maintenance procedures which he requests or requires in order to proceed with his purchase of the Live Oak Property. No acts outside the ordinary course of business shall be permitted absent prior written notice to myself, with a copy to my counsel. As previously stated, no breach of the peace shall be caused by FCW's supervision of the Properties and no use of force is authorized on the Properties.

     FCW agrees that Trustee, Trustee's real estate agents or designee, and field agent Lori Ensley or her designee shall have full, reasonable access to the Properties and a full set of keys, passcodes, and combinations. LeRoy Codding and his business associates and affiliates are expressly forbidden from obtaining any method of access to the Properties except solely as necessary to retrieve any personal effects from the Properties under the supervision of either FCW or the Trustee's representatives. Trustee shall seek approval of this agreement concurrent with seeking approval of the Subordination Stipulation.

     If you have any questions or concerns, please contact trustee's counsel Tinho Mang at 949-333-7777.

Very truly yours,

RICHARD A. MARSHACK
Chapter 7 Trustee

SO AGREED TO THE ABOVE – FCW ACKNOWLEDGES THAT FULL ACCESS
(SUBJECT TO TRUSTEE'S ABILITY TO RETAKE POSSESSION AND CONTROL)
HAS BEEN DELIVERED TO FCW IN ACCORDANCE WITH THE TERMS OF THE
SUBORDINATION STIPULATION:

By:

KEVIN RALPH
Authorized Representative for Farm Credit West, FCLA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT WITH FARM CREDIT WEST, FCLA, RE: DISTRIBUTION OF PROCEEDS FOR SALE OF REAL PROPERTY COLLATERAL, WAIVER OF SURCHARGE CLAIMS FOR CONSIDERATION; MEMORANDUMOF POINTS AND AUTHORITIES; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT; AND REQUEST FOR JUDICIAL NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 20, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **December 20, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
NORTHERN HOLDING, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT,
OR TO ANY OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE SERVICE
13217 JAMBOREE RD #429
TUSTIN, CA 92782

**U.S. TRUSTEE**
UNITED STATES TRUSTEE (SA)
411 W FOURTH ST., SUITE 7160
SANTA ANA, CA 92701-4593

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 20, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE MARK S. WALLACE
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 20, 2021 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 14, PAGE 241

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **INTERESTED PARTY COURTESY NEF:** William H Brownstein Brownsteinlaw.bill@gmail.com
   - **INTERESTED PARTY COURTESY NEF:** Steve Burnell sburnell@sulmeyerlaw.com, sburnell@ecf.courtdrive.com; sburnell@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com
   - **ATTORNEY FOR U.S. TRUSTEE (SA):** Nancy S Goldenberg nancy.goldenberg@usdoj.gov
   - **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR RESPONDENTS ERICH RUSSELL AND JOANNE RUSSELL:** Kari L Ley Ley1238@att.net
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
   - **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
   - **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE:** Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
   - **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
   - **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.:** Paul F Ready tamara@farmerandready.com
   - **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
   - **ATTORNEY FOR INTERESTED PARTY RIBOLI PASO ROBLES, LLC:** Victor A Sahn vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com; pdillamar@ecf.inforuptcy.com; vsahn@ecf.inforuptcy.com; cblair@sulmeyerlaw.com; cblair@ecf.inforuptcy.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Kristine A Thagard kthagard@marshackhays.com, kthagard@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
   - **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
   - **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
   - **INTERESTED PARTY COURTESY NEF:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**: CONTINUED:

| SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR |
|---|---|---|
| ELRICH RUSSELL<br>C/O KARI L. LEY, ATTORNEY AT LAW<br>264 CLOVIS AVENUE, SUITE 208<br>CLOVIS, CA 93612 | ERICH RUSSELL<br>2380 LIVE OAK ROAD<br>PASO ROBLES, CA 93446-9693 | FARM CREDIT WEST<br>ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE<br>3755 ATHERTON RD<br>11707 FAIR OAKS BLVD<br>ROCKLIN, CA 95765 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 14, PAGE 242

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
C/O MICHAEL J. GOMEZ
FRANDZEL ROBINS BLOOM &
CSATO, L.C.
1000 WILSHIRE BOULEVARD,
19TH FLOOR
LOS ANGELES, CA 90017-2457

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
ATTN: KEVIN E. RALPH
3755 ATHERTON DRIVE
ROCKLIN CA 95765-3701

**SECURED CREDITOR / POC ADDRESS**
JAMES W. HAMILTON ACTTC
SAN LUIS OBISPO TAX COLLECTOR
1055 MONTEREY STREET
SUITE D-290
SAN LUIS OBISPO CA 93408-1003

**SECURED CREDITOR**
MORTGAGE LENDER SERVICES
AS AGENT
FARM CREDIT WEST, FLCA, AS
TRUSTEE
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
11707 FAIR OAKS BLVD
FAIR OAKS, CA 95628-2816

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 14, PAGE 243

1  KRISTINE A. THAGARD, #94401
   kthagard@marshackhays.com
2  TINHO MANG, #322146
   tmang@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   RICHARD A. MARSHACK
7

8              UNITED STATES BANKRUPTCY COURT

9       CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10 | In re                          | Case No. 8:20-bk-13014-MW
11 | NORTHERN HOLDING, LLC,         | Chapter 7
12 |            Debtor.             | CHAPTER 7 TRUSTEE'S MOTION TO
                                      APPROVE COMPROMISE AND
13                                    SUBORDINATION AGREEMENT WITH
                                      FARM CREDIT WEST, FCLA, RE:
14                                    DISTRIBUTION OF PROCEEDS FOR
                                      SALE OF REAL PROPERTY
15                                    COLLATERAL, WAIVER OF
                                      SURCHARGE CLAIMS FOR
16                                    CONSIDERATION; MEMORANDUM OF
                                      POINTS AND AUTHORITIES;
17                                    DECLARATION OF RICHARD A.
                                      MARSHACK IN SUPPORT
18

19                                    Date:      January 10, 2022
                                      Time:      2:00 p.m.
20                                    Ctrm:      6C
                                      Location:  United States Bankruptcy Court
21                                               411 West Fourth Street
                                               Santa Ana, CA 92701-4593
22

23 TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE

24 OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES, ALL

25 CREDITORS, AND/OR THEIR ATTORNEYS OF RECORD:

26        Richard A. Marshack, the duly appointed and acting chapter 7 trustee ("Trustee") for the

27 bankruptcy estate ("Estate") of Northern Holding, LLC ("Debtor"), has entered into a proposed

28

                                    1
           MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

stipulation for subordination ("Agreement") with Secured Creditor, Farm Credit West, FCLA ("FCW") (Trustee and FCW are collectively referred to as the "Parties"). Trustee seeks court approval of the Agreement as being in the best interest of the estate. Pursuant to the Agreement, FCW is subordinating its lien on the Live Oak Property, Texas Road Property, and San Marcos Property (collectively "Properties") solely with regard to a limited portion of its interest in the proceeds of the sale thereof (and not on any real property itself). Also, the Trustee exchanged consideration for a waiver of various claims including surcharge claims with FCW.

## 1.    Summary of Argument

A bankruptcy court can approve settlements that are fair and equitable and in the best interests of the estate. In this case, substantially all property of the Estate appears to be encumbered by FCW's security interest, and no sale is possible by the Trustee absent consent from FCW. After months of negotiations, FCW and the Trustee signed a stipulation containing terms for the consent of FCW to the sale of at least the Live Oak Property. Also, in order to simplify future potential situations, Trustee and FCW entered into a settlement regarding distributions and payments in the event that FCW forecloses on some or all of the real properties.

Approval of the Agreement will provide a benefit to creditors from administration of the Property where none would otherwise exist. This Court must decide whether to approve the Agreement a true and correct copy of which is attached to the Declaration of Richard A. Marshack ("Marshack Declaration") as **Exhibit 1**.

## 2.    Factual Background

### A.    Pre-Petition

Erich Russell was the former owner and operator of Rabbit Ridge Wine Sales, Inc. ("Rabbit Ridge"), which was as of October 2020 located at 1172 San Marcos Road, Paso Robles, CA ("San Marcos Property"). To finance his business operations, Mr. Russell borrowed substantial sums of money from Farm Credit West, FLCA ("FCW"), which were secured certain assets including substantially all assets of Rabbit Ridge and Properties.

---

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 14, PAGE 245

On March 23, 2007, as document no. 2007-19418 in the County of San Luis Obispo, FCW recorded a deed of trust in the principal amount of $17,500,000 against various properties owned by Erich Russell, including the San Marcos Property, adjacent farmland commonly known as the Texas Road Property, and residential real property located at 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property").

Over time, Rabbit Ridge became less successful and Mr. Russell eventually filed an individual bankruptcy petition under Chapter 11, case number 9:20-bk-10035-DS. This bankruptcy case was dismissed for cause on June 4, 2020, pursuant to motion by the United States Trustee. The dismissal order included a 180-day bar to refiling.

A subsequent foreclosure sale for the Properties was scheduled by FCW for October 29, 2020. Prior to the foreclosure date, Mr. Russell and FCW continued to discuss a possible forbearance and an extension of the foreclosure date.

On or about October 28, 2020, Mr. Russell signed quitclaim deeds transferring the Properties to Debtor. These quitclaim deeds were recorded on the same date. Additionally, ownership and control of Rabbit Ridge passed to LeRoy Codding, who operated as a *de facto* chief restructuring officer. The new chief financial officer of Rabbit Ridge was Mr. Codding's associate Steve Jones.

## B.    Statement of Facts

On October 28, 2020 ("Petition Date"), Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code.

On October 29, 2020, as Dk. No. 5, FCW filed a notice of continuation of perfection of security interest and demand to sequester cash collateral. No motion to use cash collateral was ever filed.

On November 6, 2020, as Dk. No. 11, FCW filed a motion for relief from the automatic stay regarding the Live Oak Property and Debtor's other two properties (not relevant for this motion). In short, FCW has a blanket lien in the approximate amount of $19-20 million over all assets of Debtor including the Live Oak Property, while the estimated value of the Debtor's assets is well short of that amount. Additionally, the Trustee is informed that there may be a secured tax claim of

---

3

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT

4833-0726-0118,v.1

EXHIBIT 14, PAGE 246

1  approximately $3.5 million secured by the San Marcos Property. As such, FCW may be an

2  undersecured creditor.

3      On June 15, 2021, the case was converted to Chapter 7. Richard A. Marshack was appointed

4  as the Chapter 7 trustee. On July 16, 2021, as Dk. No. 140, the Trustee filed an application to

5  employ Onyx Asset Advisors, LLC ("Onyx") jointly with Hilco Real Estate, LLC ("Hilco") on

6  modified employment terms to market and sell the Properties on behalf of the Estate ("Broker

7  Employment Application"). On September 7, 2021, as Dk. No. 209, the Court entered an order

8  approving the Broker Employment Application, except that the payment of compensation was not

9  approved absent consent from FCW.

10      On August 9, 2021, as Dk. No. 186, the Trustee filed a motion seeking limited authority to

11  operate the Properties for the sole purpose of completing the harvest for fall 2021, with Mr. Codding

12  serving individually as the farm operator.

13      On August 26, 2021, as Dk. No. 201, Trustee and FCW filed a stipulation providing for

14  certain terms for relief from the automatic stay.

15      On September 7, 2021, as Dk. No. 210, the Court entered an order granting relief from stay

16  to FCW pursuant to the stipulated terms agreed to by Trustee and FCW. Importantly, the stipulated

17  terms provided that no enforcement action would be taken against the Live Oak Property before

18  December 1, 2021.

19      Also on September 7, 2021, as Dk. No. 211, the Court entered an order authorizing the

20  Trustee to operate for a limited purpose ("Operate Order").

21      On September 13, 2021, as Dk. No. 218, the Court entered an order compelling various

22  parties (including Rabbit Ridge and the Russells, among others) to turn the Properties over to the

23  sole control of the Trustee.

24      On September 28, 2021, Trustee and Buyer executed a purchase and sale agreement ("PSA")

25  for those specified assets listed and described in Article I of the PSA (which includes, essentially, the

26  Live Oak Property). Under the PSA, Buyer would continue conducting its due diligence which

27  includes drilling exploratory water wells to determine the level of water at the Live Oak Property for

28

4

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 14, PAGE 247

1    future agricultural use. Under the PSA, Buyer submitted an initial bid (contingent on ongoing due

2    diligence) to purchase the Live Oak Property for $9,100,000, subject to overbid. Trustee filed a

3    motion seeking approval of the bid procedures, which was approved in its entirety. On October 20,

4    2021, as Dk. No. 238, the Court entered an order approving the overbid procedures in their entirety

5    and setting a hearing for a sale of the Live Oak Property on December 13, 2021. Due to unforeseen

6    logistical difficulties with the drilling company (discussed below), the timeline for sale was delayed

7    to an anticipated January 2022 date instead of December 13.

8        On October 4, 2021, as Dk. No. 227, the Trustee filed a motion seeking authority to permit

9    Miller Drilling Company to assist Buyer with its due diligence by drilling water wells on the Live

10    Oak Property.

11        On October 31, 2021, Trustee's authorization to operate under the Court's Operate Order

12    expired. After this date, no operations, including farming and wine processing (which was never

13    authorized in the first place) were allowed at the Properties.

14        On November 1, 2021, as Dk. No. 242, the Court entered an order authorizing the water

15    wells to be drilled. Subsequently, Miller Drilling informed the Buyer and the Trustee that due to

16    prior commitments and a full schedule, it would be unable to commence drilling until late December

17    or early January at the latest.

18        On December 9-10, 2021, Trustee's agent Lori Ensley visited the Properties and, with the

19    assistance of FCW's representatives and a locksmith, fully re-keyed the Properties to prevent

20    unauthorized entities or individuals from accessing the Properties. On those dates, Ms. Ensley

21    discovered a crew of workers for Rabbit Ridge apparently using the San Marcos Property for

22    unauthorized purposes. Trustee's investigation continues.

23        On December 10, 2021, FCW's representative signed a stipulation with the Trustee regarding

24    the partial subordination of its lien pursuant to the terms set forth in the stipulation (previously

25    defined as "Agreement"). A true and correct copy of the executed Agreement is attached to the

26    Marshack Declaration as **Exhibit 1.**

27        Also on December 10, 2021, the Trustee transmitted a letter agreement to FCW regarding the

28

EXHIBIT 14, PAGE 248

clarification of certain terms. FCW's representative countersigned the letter agreement. A true and correct copy of the letter agreement is attached to the Marshack Declaration as **Exhibit 2.**

## 3.    Details of Compromise/Subordination Agreement

FCW consents to the sale of the Live Oak Property consistent with the terms set forth in the Agreement, and consents to the sale of the Live Oak Property **only**, free and clear of its lien pursuant to 11 U.S.C. § 363(f)(2), provided that the Agreement is approved in its entirety (or, in the event of any modification by the Court, FCW accepts such modifications).

The following is a summary of the substantive terms of the Agreement.[1]

Generally, FCW consented to the Trustee's marketing of the Properties and consented to the Trustee's sale of the Live Oak Property provided that it would receive at least $8,250,000 in proceeds from sale. FCW also agreed to the payment of various line items out of escrow to the Trustee, his professionals, and to pay various other expenses and claims of the Estate.

FCW consented in principle to the payment of certain line items out of escrow if the Trustee presented an acceptable offer for the sale of either the San Marcos Property or the Texas Road Property. However, FCW has not consented to the sale of either property.

Finally, the Trustee agreed, subject to approval of the Court, to provide a waiver of claims regarding the validity, priority, and extent of FCW's secured claim and also to waive any claim for surcharge against FCW. In exchange, FCW provided the partial subordination described in the Agreement and further agreed to provide a certain reimbursement of costs even if only some of the Properties were foreclosed by FCW. For example, paragraph 9 of the Agreement provides a structure of line item and lump sum payments to the Estate in the event that all three Properties are foreclosed by FCW and no sale occurs. On the other hand, paragraph 10 of the Agreement provides that in the event that some but not all of the Properties are sold by the Trustee, and FCW ultimately forecloses on the remaining Properties, the Estate will receive an allocation of $30,000 per foreclosed property

---

[1] All interested parties are advised to consult the Agreement for all terms and conditions. The statements contained herein are a summary of the material terms and conditions only.

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 14, PAGE 249

1   as a settlement of the surcharge issues (in addition to any disbursements out of escrow). As such, the

2   Agreement provides a benefit to the Estate and avoids further litigation costs and uncertainties.

3   **4.      Legal Argument**

4        "A subordination agreement is enforceable in a case under this title to the same extent that

5   such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

6        **A.      Approval of the Agreement is in the best interest of the Estate.**

7        Under Rule 9019, the court may approve a compromise or settlement on motion by the

8   trustee. Fed. R. Bankr. Proc. 9019. It is well-established that a compromise should be approved if it

9   is "in the best interest of the estate . . . and is fair and equitable for the creditors." *Schmitt v. Ulrich*

10  *(In re Schmitt)*, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997); *ATKN Company v. Guy F. Atkinson*

11  *Company of California (In re Guy F. Atkinson Company)*, 242 B.R 497, 502 (B.A.P. 9th Cir. 1999)

12  ("At its base, the approval of a settlement turns on the question of whether the compromise is in the

13  best interest of the estate.") The standards to be applied to the approval of a settlement include:

14        1)     the probability of success of the litigation on its merits;

15        2)     the difficulties in collection on a judgment;

16        3)     the complexity of the litigation involved; and

17        4)     the expense, inconvenience or delay occasioned by the litigation, and the interest of

18             creditors.

19  *United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (quoting *In re A & C Properties*,

20  784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854

21  (1989)).

22        In this case, all of the *A&C* factors weigh in favor of approving the compromise. Under the

23  Agreement, Trustee can resolve the dispute between the Parties, obtain a definite recovery for the

24  Estate, eliminate administrative and litigation costs, and can move forward to administer the Estate's

25  assets for the benefit of the Debtor's creditors. The only claims being compromised pursuant to the

26  Agreement are claims regarding the validity of FCW's secured claim and surcharge.

27

28

EXHIBIT 14, PAGE 250

### i.  Probability of success

"The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c). To prevail on surcharge, the trustee must show that his "expenses were reasonable, necessary, and provided a quantifiable benefit to the secured creditor." *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1068 (9th Cir. 2001). The trustee bears the burden of proof, and the analysis is not simple. *See USDA v. Hopper (In re Colusa Regional Medical Center)*, 604 B.R. 839, 853-58 (B.A.P. 9th Cir. 2019).

Regarding the validity of FCW's secured claim, the probability of success is low. Trustee knows of no dispute regarding the validity and perfection of FCW's secured claim, which was recorded over 10 years ago. Also, regarding surcharge claims under 11 U.S.C. § 506(c), as cited above, the analysis is not simplistic to obtain surcharge. While the Trustee believes that substantially all of his administration of the Properties has directly benefited FCW, and all actions he has taken were to preserve and maintain the Properties constituting FCW's collateral to the best of his ability, neither of the Parties wishes to litigate over the surcharge issues. The probability of success for the surcharge issues is highly uncertain, and this factor weighs strongly in favor of settlement rather than litigation.

### ii.  Difficulties in collection

The Trustee is informed that FCW is solvent and, in the event of litigation, there would not be a difficulty in collecting a money award against FCW. However, given the greatly uncertain likelihood of success and continued expense, convenience, and delay of further litigation, settlement is appropriate.

### iii.  Complexity

As discussed above, the only issue that might be litigated is the issue of surcharge. However, to obtain a full judicial determination of the issues surrounding surcharge, without the agreement by

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

1  FCW that there was any benefit to FCW, the analysis would be unduly complex especially with

2  regard to quantifying any benefit to FCW. Debtor apparently kept poor written records and to sort

3  out the factual issues related to benefit would be complicated, and may involve reconstructing the

4  history of the Properties at great expense to the Estate (and FCW). Rather than to litigate these

5  issues, and sort out the complex question of quantifying the benefit to FCW by the Trustee's

6  administration, the Parties agreed to settle.

7  ### iv.    Expense, inconvenience or delay

8  Absent consent by FCW to the sale of any of the Properties, the Trustee could not sell any of

9  the Properties, and would be forced to litigate just the issues of possible surcharge upon

10  abandonment. *See In re KVN Corp.*, 514 B.R. 1, 6 (B.A.P. 9th Cir. 2014) ("sales of fully

11  encumbered assets are generally improper… the trustee's proper function is to abandon the property,

12  not administer it…"). And, in the event of litigation over the surcharge issues, there would be great

13  administrative expense and delay in the administration of the case.

14  ### B.    The Subordination Provisions of the Agreement Provide Substantial

15  ### Benefits to the Estate

16  Trustee does not believe that the subordination provision set forth in the Agreement

17  constitutes a "carve-out." Instead, the Agreement between the Parties effectuates a partial voluntary

18  subordination of FCW's secured claim pursuant to the terms stated in the Agreement. To the extent

19  the Court, however, determines that the subordination provisions of the agreement constitute a

20  carve-out, the requirements for approval of such a carve-out are met here. The requirements for

21  approval of a carve-out are: (1) whether the trustee "fulfilled his or her basic duties;" (2) whether

22  there is "a benefit to the estate, i.e., prospects for a meaningful distribution to unsecured creditors;"

23  (3) whether "the terms of the carve-out agreement been fully disclosed to the bankruptcy court." *See*

24  *In re KVN Corp.*, 514 B.R. at 8.

25  First, the Trustee has fulfilled his basic duties. The Trustee's basic duty is to administer

26  assets of the Estate, including maintaining the value of collateral and to liquidate any value available

27  for the benefit of creditors utilizing the Bankruptcy Code. By entering into the Agreement, the

28

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 14, PAGE 252

1  Trustee is generating a significant return for unsecured creditors, including specific separate

2  provisions for attorneys' fees, reduced professional fees in terms of broker and Trustee

3  compensation, and a separate sum for the benefit of unsecured creditors.

4       Second, there is a benefit to the Estate by approval of the Agreement. The Estate will realize

5  benefit primarily from the sale of the Properties and the collection of proceeds from the sale of

6  grapes from the fall 2021 harvest, which are estimated to be a gross collection of approximately

7  $300,000 to $400,000, with expenses to be determined. After payment of direct harvest expenses,

8  the Trustee anticipates that there will be a substantial sum to be divided between the Estate and FCW

9  pursuant to previously-approved terms for the division of such proceeds. By approval of the

10  Agreement, the Estate will further realize a benefit from the sale of the Properties.

11       Finally, the full agreement has been attached to the Marshack Declaration. The terms have

12  been fully disclosed to the Court.

13  **5.    Conclusion**

14       Because approval of the Agreement provides a sure benefit to the Estate when none would

15  otherwise likely not exist, Trustee respectfully requests that this Court enter an order:

16       1.    Granting the Motion;

17       2.    Approving the Agreement attached as **Exhibit 1** to the Marshack Declaration;

18       3.    Approving the letter agreement attached as **Exhibit 2** to the Marshack Declaration;

19       4.    Authorizing the Trustee to execute the Agreement and implement its terms, including

20  to distribute funds from a future sale of any of the Properties in accordance with the terms of the

21  Agreement; and

22       5.    For such other relief as the Court deems just and proper.

23  DATED: December 20, 2021                    MARSHACK HAYS LLP

24

25                                        /s/ Tinho Mang
                                    By: _____
26                                        KRISTINE A. THAGARD
                                         TINHO MANG
27                                        Attorneys for Chapter 7 Trustee,
                                         RICHARD A. MARSHACK
28

EXHIBIT 14, PAGE 253

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare as follows:

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.     I am the duly appointed and acting chapter 7 trustee ("Trustee") for the bankruptcy estates ("Estate") of Northern Holding, LLC ("Debtor"), the title owner of real property commonly known as 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property").

4.     Since my appointment, I have been negotiating with Farm Credit West, FCLA ("FCW") regarding a consensual sale of the Debtor's real properties. It was only on December 10, 2021 that FCW's representative signed the settlement and subordination agreement, which went through months of revisions, including probably over one dozen versions of the agreement. Each term of the agreement was extensively negotiated.

5.     A true and correct copy of the executed settlement and subordination agreement ("Agreement") is attached here as **Exhibit 1.**

6.     I prepared a letter agreement on December 10, 2021 setting forth certain clarifications to the Agreement and explaining the factual developments subsequent to the drafting of the Agreement. FCW's representative countersigned the letter agreement, which is attached as **Exhibit 2.**

7.     I have consulted with my counsel and considered the probability of success, the difficulties in collection, the complexity of any litigation, and the expense, inconvenience or delay occasioned with any litigation regarding the validity of FCW's secured claim and the issues regarding surcharge. Based on my investigation and familiarity with the issues, and the many hours I have spent attempting to negotiate this agreement, I believe in my business judgment that it is in the best interest of creditors for the Court to approve the Agreement and the letter agreement.

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 14, PAGE 254

8.    I do not believe that the subordination provision set forth in the Agreement constitutes a "carve-out." However, to the extent the Court determines the provisions of the Agreement may be construed as a carve-out, the requirements for approval of a carve-out are met here, as set forth in the Motion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 20, 2021.

_____
RICHARD A. MARSHACK

12

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT

4833-0726-0118,v.1

**EXHIBIT 1**

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  DAVID A. WOOD, #272406
   dwood@marshackhays.com
3  TINHO MANG, #322146
   tmang@marshackhays.com
4  MARSHACK HAYS LLP
   870 Roosevelt Avenue
5  Irvine, CA 92620
   Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7  Attorneys for Chapter 7 Trustee,
   RICHARD A. MARSHACK
8

9                    UNITED STATES BANKRUPTCY COURT

10         CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

11

12  In re                              Case No. 8:20-bk-13014-MW

13  NORTHERN HOLDING, LLC,             Chapter 7

14            Debtor.                  STIPULATION BETWEEN CHAPTER 7
                                       TRUSTEE AND SECURED CREDITOR
15                                     FARM CREDIT WEST, FCLA RE:
                                       VOLUNTARY SUBORDINATION OF
16                                     LIEN FOR SALE OF 2380 LIVE OAK
                                       ROAD, PASO ROBLES, CA
17
                                       [HEARING TO BE SET]
18

19

20

21  TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE

22  OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

23         This stipulation is entered into between Richard A. Marshack, in his capacity as Chapter 7

24  Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), on

25  one hand, and Farm Credit West, FCLA ("FCW"), on the other hand, with regard to the voluntary

26  subordination of certain aspects of FCW's lien to the extent and only under the conditions stated

27  below. Collectively, the Trustee and FCW will be referred to as the "Parties."

28

EXHIBIT 1, PAGE 13
EXHIBIT 14, PAGE 257

# Recitals

A.     On March 23, 2007, as document no. 2007-19418 in the County of San Luis Obispo, FCW recorded a deed of trust in the principal amount of $17,500,000 against various properties owned by Erich Russell, including the Live Oak Property (defined below).

B.     On October 28, 2020, Debtor filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the United States Code, initiating the above-captioned bankruptcy case. FCW is the senior secured lender holding a lien on substantially all assets of the Debtor.

C.     On June 15, 2021, the case was converted to Chapter 7 and the Trustee was appointed as the Chapter 7 trustee for the Estate.

D.     On August 26, 2021, as Dk. No. 201, Trustee filed a stipulation between him and FCW regarding stipulated relief from stay as to the Debtor's real properties effective as of December 1, 2021 ("Enforcement Date").

E.     On September 7, 2021, as Dk. No. 210, the Court entered an order approving the stipulated terms for relief from stay as between Trustee and FCW ("Stay Relief Order"). The execution of this stipulation does not in and of itself satisfy the condition in paragraph 4 of the Stay Relief Order extending the Enforcement Date.

F.     On September 28, 2021, Trustee signed a purchase and sale agreement ("PSA") with Riboli Paso Robles, LLC ("Buyer") regarding real property commonly known as 2380 Live Oak Road, Paso Robles, CA, and only to the extent of the rights being sold pursuant to the paragraph 1.1 of the PSA ("Live Oak Property").

G.     Under the PSA, Buyer submitted an initial bid (contingent on ongoing due diligence) to purchase the Live Oak Property for $9,100,000, subject to overbid. Trustee filed a motion seeking approval of the bid procedures, which was approved in its entirety. On October 20, 2021, as Dk. No. 238, the Court entered an order approving the overbid procedures in their entirety and setting a hearing for a sale of the Live Oak Property on December 13, 2021.

H.     Trustee acknowledges that the Live Oak Property appears to be fully encumbered by FCW's deed of trust and has entered into this stipulation with FCW for the voluntary subordination of FCW's lien solely to the extent stated below. FCW enters into this stipulation to facilitate the sale

EXHIBIT 1, PAGE 14
EXHIBIT 14, PAGE 258

1  of the Live Oak Property and to avoid further litigation over the distribution of proceeds including

2  any right of the Trustee pursuant to 11 U.S.C. § 506(c), regarding the other properties. This

3  Stipulation shall not extend to any other property of the Estate other than that which is specifically

4  identified herein.

5       The Parties agree and STIPULATE as follows:

6       1.    FCW consents to the sale of the Live Oak Property consistent with the terms set forth

7  below, and consents to the sale of the Live Oak Property **only**, free and clear of its lien pursuant to

8  11 U.S.C. § 363(f)(2), provided that this Stipulation is approved in its entirety (or, in the event of

9  any modification by the Court, FCW accepts such modifications). The approved legal description of

10  the Live Oak Property for which FCW consents to sale is appended to this Stipulation as **Exhibit**

11  **"1"** and incorporated by reference. By signing this stipulation, FCW does not consent to the sale of

12  any other property.

13       2.    Subject to its consent to sale, FCW agrees to voluntarily subordinate its lien on the

14  Live Oak Property, Texas Road Property, and San Marcos Property (collectively "All Properties" or

15  "the Properties" and as to the Texas Road Property and San Marcos Property (collectively "TS

16  Adjoining Properties") **solely with regard to a limited portion of its interest in the proceeds of**

17  **the sale thereof** (and not on any real property itself), and solely to pay the following line items,

18  unless otherwise noted:

19            a.    As to Live Oak Property from the Live Oak Property sale proceeds:   All

20                   reasonable closing costs for the sale of the Live Oak Property, which include

21                   and are estimated as follows: settlement fee (est. $500), title search fees (est.

22                   $250), escrow fees (est. $9,000), title insurance (est. $20,000), and county

23                   transfer taxes (calculated at $1.10 per $1000 of gross purchase price), which

24                   shall be pro-rated and allocated between buyer and seller pursuant to

25                   paragraph 7.6 of the PSA, and otherwise as customary between buyer and

26                   seller.

27            b.    [Reserved].

28

EXHIBIT 1, PAGE 15
EXHIBIT 14, PAGE 259

1        c.    As to All Properties from the Live Oak Property sale proceeds: All reasonable

2      and actually expended costs of maintaining insurance for assets of the Estate

3      up through the close of escrow or when the assets/properties cease to be

4      property of the Estate, including the $6,770.68 advanced and expended by

5      Trustee for commercial liability insurance, approximately $6,800 advanced by

6      Lee Codding through October 2021 to maintain insurance on the Live Oak

7      Property (and at the ongoing rate of $1,700 per month for four months since

8      June 2021), and an additional reserve to maintain future insurance in the

9      amount of $15,000, which shall be held by Trustee in a segregated account

10     and, in the event of any unused portion, shall be returned to FCW without

11     need for further order of the Court.

12     d.    As to Live Oak Property from the Live Oak Property sale proceeds:  The sum

13     of $100,000 for the Trustee's attorneys' fees for the Estate through the date of

14     closing escrow on the Live Oak Property, which amount shall be held in a

15     segregated account by the Trustee pending Court approval of Trustee's

16     attorneys' fees (for informational purposes as of November 30, 2021, the

17     outstanding balance for attorneys' fees for the Trustee exceeds $170,000).

18     e.    As to the San Marcos Property from the San Marcos Property sale proceeds:

19     The sum of $60,000 for the Trustee's attorneys' fees for the Estate through the

20     date of closing escrow on the San Marcos Property, which amount shall be

21     held in a segregated account by the Trustee pending Court approval of such

22     fees.

23     f.    As to the Texas Road Property from the Texas Road Property sale proceeds:

24     The sum of $30,000 for the Trustee's attorneys' fees for the Estate through the

25     date of closing escrow on the Texas Road Property, which amount shall be

26     held in a segregated account by the Trustee pending Court approval of such

27     fees.

28

EXHIBIT 1, PAGE 16
EXHIBIT 14, PAGE 260

g.    As to the Live Oak Property, from the Live Oak Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Hilco Real Estate, LLC
("Hilco") in the amount of 1.75% of the gross sale price of the Live Oak
Property, which shall be paid directly out of escrow.

h.    As to the Texas Road Property from the Texas Road Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Hilco in the amount of
1.75% of the gross sale price of the Texas Road Property, which shall be paid
directly out of escrow.

i.    As to the San Marcos Property from the San Marcos Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Hilco in the amount of
1.75% of the gross sale price of the San Marcos Property, which shall be paid
directly out of escrow.

j.    As to the Live Oak Property, from the Live Oak Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Onyx Asset Advisors,
LLC ("Onyx") in the amount of 1.75% of the gross sale price of the Live Oak
Property, which shall be paid directly out of escrow.

k.    As to the Texas Road Property from the Texas Road Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Onyx in the amount of
1.75% of the gross sale price of the Texas Road Property, which shall be paid
directly out of escrow.

l.    As to the San Marcos Property from the San Marcos Property sale proceeds:
Broker's fees for the Estate's jointly employed broker Onyx in the amount of
1.75% of the gross sale price of the San Marcos Property, which shall be paid
directly out of escrow.

m.    As to the Live Oak Property, from the Live Oak Property sale proceeds:
Compensation for the Trustee in an amount equal to 2.25% of the gross
purchase price of each of the Live Oak Property, which amount shall be held

EXHIBIT 1, PAGE 17
EXHIBIT 14, PAGE 261

1  in a segregated account by the Trustee pending Court approval of Trustee's

2  compensation under 11 U.S.C. § 326.

3  n.  As to the Texas Road Property, from the Texas Road Property sale proceeds:

4  Compensation for the Trustee in an amount equal to 2.25% of the gross

5  purchase price of each of the Texas Road Property, which amount shall be

6  held in a segregated account by the Trustee pending Court approval of

7  Trustee's compensation under 11 U.S.C. § 326.

8  o.  As to the San Marcos Property from the San Marcos Property sale proceeds:

9  Compensation for the Trustee in an amount equal to 2.25% of the gross

10  purchase price of each of the San Marco Property, which amount shall be held

11  in a segregated account by the Trustee pending Court approval of Trustee's

12  compensation under 11 U.S.C. § 326.

13  p.  As to All Properties:  An additional $30,000 per closed sale transaction to be

14  paid solely from the proceeds of that sale which the Trustee consummates for

15  miscellaneous contribution for the benefit of the Estate to pay other

16  administrative expenses and other creditor claims.  This subparagraph shall

17  not apply for any sale transaction that does not close.

18  q.  As to Live Oak Property as noted as and as to TS Adjoining Properties as noted:

19  The sum of $12,000 for the Trustee's field agent Lori Ensley of Bicher &

20  Associates and other professionals, including accountants and agents, or any

21  other permitted administrative expense, which shall be held by the Trustee and

22  paid according to the approved procedures set forth in the field agent's

23  employment application. As to TS Adjoining Properties, the actual amount for

24  services invoiced by Trustee's field agent or other permitted administrative

25  expenses not to exceed $12,000 per property.

26  r.  As to All Properties:  To the extent not paid directly by FCW, actual and

27  reasonable costs of securing and maintaining the properties including cost of

28

4439817v1 | 100967-0004
6
STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

1  utilities and costs to secure the property and to change locks.  Trustee shall do

2  his best to notify FCW in advance of any expenses before they are incurred.

3      s.    For purposes of convenience only, preliminary estimates of 2.a. through 2.r.

4  are set forth in **Exhibit "2"**.

5      3.    Any line items which are not paid or used in full according to the descriptions above

6  shall be returned to FCW upon entry of further Court order, or the closing of the bankruptcy case,

7  whichever comes first.

8      4.    All funds not otherwise provided for above shall be paid immediately (i.e. no later

9  than the closing date) to FCW from escrow on a sale of the Live Oak Property, Texas Road Property,

10  and San Marcos Property in accordance with transfer instructions provided by FCW to the Trustee or

11  his escrow agent. All payments shall be made in good funds. Through this stipulation, FCW does not

12  consent to receiving any less than $8,250,000 through a sale of the Live Oak Property at the initial

13  bid price of $9,100,000, and its consent to sale under 11 U.S.C. § 363(f)(2) is expressly conditioned

14  on its receipt of no less than $8,250,000 through escrow from the Live Oak Property.  Further, FCW

15  has no obligation to consent to a sale or release their lien on TS Adjoining Properties, and FCW has

16  specifically advised the Trustee that it will not consent to the sale of any of the Properties that

17  includes a provision that FCW is required to carry any debt owed by the purchaser of any such

18  property at either a senior-most or junior priority level after the transaction closes.

19      5.    As to Live Oak Property:  Provided that the Court approves the bid procedures set

20  forth in the Live Oak  PSA, and a qualifying overbid is received and accepted by the Trustee, FCW

21  consents to the voluntary subordination of its deed of trust solely on the proceeds of a consummated

22  sale of the Live Oak Property to pay the break-up fee and due diligence costs to Buyer if it is the

23  unsuccessful bidder, pursuant to the terms of the PSA.

24      6.    As to Live Oak Property:  As previously agreed, if the gross purchase price of the

25  Live Oak Property exceeds $10,000,000, FCW agrees to an additional subordination of its lien (and,

26  as stated in paragraph 2 above, solely with regard to the Live Oak Property proceeds of sale out of

27  escrow, pursuant to the terms of this stipulation) in an amount equal to an additional 2.5% of the

28  gross purchase price of the Property which is in excess of $10,000,000 (i.e. if the purchase price is

EXHIBIT 1, PAGE 19
EXHIBIT 14, PAGE 263

1    $10,100,000, the Estate shall receive an additional 2.5% of $100,000, or $2,500.00) for the benefit of

2    the Estate to be allocated according to the Trustee's business discretion.

3        7.    The Parties acknowledge that FCW is under no compulsion or obligation to extend

4    the Enforcement Date. Due to unanticipated delays which cannot be attributed to either Buyer, FCW,

5    or Trustee, the anticipated closing date of the Live Oak sale has been postponed to early 2022. Upon

6    the execution of this Stipulation, FCW consents to the one-time extension and modification of the

7    Enforcement Date as follows: the Enforcement Date shall be extended from December 1, 2021 to

8    January 28, 2022. If, prior to the Enforcement Date, the Trustee has filed a motion with the Court

9    seeking approval of a sale of one or more of the real property parcels over which FCW asserts a

10   secured claim, then the Enforcement Date shall be extended to March 15, 2022. Nothing in this

11   Stipulation affects the ability of Trustee to seek abandonment of some or all of the Properties after

12   the Enforcement Date or FCW to foreclose on some or all of the Properties after the Enforcement

13   Date. The Parties agree to the entry of an amended order granting relief from the automatic stay to

14   memorialize the terms of this Stipulation and the extension of the Enforcement Date in substantially

15   the form of the order attached as **Exhibit "4."**

16       8.    As to All Properties:  Trustee on behalf of the Estate, stipulates and agrees to the

17   validity, extent, and priority of FCW's secured claim and liens, and, effective as of the Bankruptcy

18   Court's entry of an order approving this Stipulation, and, subject to the terms of this agreement,

19   releases FCW from all known or unknown claims held by the Trustee or the Estate, including any

20   claims under 11 U.S.C. § 506(c) regarding the Live Oak Property, San Marcos Property, the Texas

21   Road Property, and any other collateral of FCW. This provision and all other terms of this agreement

22   are not effective unless specifically approved by the Bankruptcy Court, after notice and a hearing.

23       9.    As additional consideration for the Trustee's waiver of the claims for surcharge

24   pursuant to 11 U.S.C. § 506(c) regarding the Properties and FCW's other collateral, the Parties agree

25   that, provided that the Court approves the Trustee's waiver of claims including the claims for

26   surcharge, in the event that FCW forecloses on or causes the disposition of all three of the

27   Properties, the following line items shall be reimbursed to the Estate and its professionals as follows:

28           a.    $50,000 for the Trustee's attorneys' fees.

EXHIBIT 1, PAGE 20
EXHIBIT 14, PAGE 264

b.    Fees and expenses for Trustee's field agent Lori Ensley not to exceed $15,000.

c.    All actually expended, reasonable administrative expenses (i.e. costs, and not fees) related to the professional fees stated above, not to exceed $5,000.

d.    All insurance premiums actually paid by Trustee for coverage necessary to maintain the administration of any property of the Estate over which FCW asserts a secured claim.

e.    All post-petition *ad valorem* property taxes (if any) charged to the Estate over the course of the Trustee's administration. Alternatively, at FCW's discretion, FCW may choose to pay the outstanding property taxes such that no taxes are charged to the Estate.  FCW may dispute the amount of such taxes and pay the County of San Luis Obispo directly when FCW's dispute is resolved, and the Trustee is not entitled to compensation under 11 U.S.C. § 326 for any such payment(s) made by FCW directly to the County.

f.    The lump sum of $80,000 as a miscellaneous settlement payment for the surcharge issues.

g.    For purposes of convenience only, preliminary estimates of 9.a. through 9.f. are set forth in **Exhibit "3"**.

h.    The amounts set forth in this paragraph 9 shall only be earned by and paid to the Trustee if the Trustee delivers full possession of the Properties, without any unauthorized occupants or tenants, and the other remaining collateral of FCW *owned by Northern RAM* (*e.g.,* equipment and inventory) to FCW upon abandonment of the Properties and the other FCW collateral by the Trustee, or prior to the foreclosure of such Properties by FCW *owned by Northern RAM*.

10.    As additional consideration for the Trustee's waiver of the claims for surcharge pursuant to 11 U.S.C. § 506(c) regarding the Properties and FCW's other collateral, to the extent FCW forecloses on one or more of the Properties, it shall be responsible for either all post-petition *ad valorem* property taxes (if any) charged to the Estate over the course of the Trustee's

EXHIBIT 1, PAGE 21
EXHIBIT 14, PAGE 265

1  administration for the property foreclosed upon, or, alternatively, at FCW's discretion, FCW shall

2  pay the outstanding property taxes such that no taxes are charged to the Estate with respect to the

3  property foreclosed upon.  FCW may dispute the amount of such taxes with the County of San Luis

4  Obispo.  FCW may also pay the County of San Luis Obispo directly for the taxes addressed in this

5  paragraph either before or after the resolution of any dispute over such taxes, and the Trustee is not

6  entitled to compensation under 11 U.S.C. § 326 for such payment(s) made by FCW directly to the

7  County.  Additionally, should the Trustee complete the sale of the Live Oak Property and FCW

8  thereafter proceeds to foreclose on the remaining TS Adjoining Properties, provided that the Trustee

9  delivers full possession of the remaining Properties, without any unauthorized occupants or tenants,

10  and possession the other remaining collateral of FCW (*e.g.*, equipment and inventory) to FCW upon

11  abandonment of the Properties and the other FCW collateral by the Trustee, or prior to the

12  foreclosure or disposition of such Properties by FCW, the, the Trustee shall be entitled to receive a lump

13  sum payment from FCW of $30,000 *per property* as consideration for the waiver of claims under 11

14  U.S.C. § 506(c), which is in addition to the any allocations stated in paragraph 2.

15      11.     Concurrently with the waivers described above, upon the Trustee's delivery of full

16  possession of FCW's collateral in accordance with this Stipulation, except for its allowed claim

17  against the Estate, FCW waives any and all other claims against the Estate, and any and all claims

18  against the Trustee and his agents and professionals acting in their capacities as agents for the Estate,

19  and any and all claims against the Trustee in his individual capacity related to the administration of

20  this case.

21      12.     FCW shall immediately recommend to the Trustee one or more qualified security

22  agents and/or property managers to supervise and control the access to and use of all three properties

23  and all collateral of FCW, and shall consult with the Trustee to recommend necessary steps and

24  necessary agreements for the maintenance and preservation of the three properties and FCW's

25  collateral. The security agents/property managers shall be employed on behalf of the Estate by the

26  Trustee, if possible, and FCW shall directly advance and pay all costs and fees of and incurred by the

27  security agents/property managers. Security agents and/or property managers shall be employed as

28  necessary as determined by FCW with the consent of the Trustee; provided, however, there is no

1    obligation to employ security agents and/or property managers absent such a need, as determined by

2    FCW – Trustee shall have no obligation to recommend collateral preservation procedures to FCW

3    and shall not be held responsible in the event of any damage or deterioration to collateral after FCW

4    assumes possession and control of the Properties.   The security agents/property managers shall not

5    take any action and not incur any fees or expenses outside of what is in its or their contracts without

6    the prior consent of the Trustee and FCW.   The security agents/property managers shall provide

7    reasonable access to the properties to both FCW and the Trustee, and to those agents or

8    representatives of FCW and the Trustee that are approved by both FCW and the Trustee. To the

9    extent that the mutually approved security agents/property managers seek any recovery from the

10   Estate including but not limited to recoveries on account of services performed for maintenance,

11   access control, supervision, or preservation of FCW's collateral, FCW shall be directly liable for

12   such expenses and FCW fully indemnifies the Estate for any such costs and shall immediately pay

13   all such costs, and shall undertake to defend the Estate against adverse claims arising from the

14   services performed by the security agents/property managers. The Trustee shall prepare and file a

15   motion to employ the security agents/property manager on behalf of the Estate, if necessary, and the

16   specific terms for management and control of the properties shall be memorialized in a separate

17   agreement.

18          13.     This stipulation, after it has been approved by the Court, will fully meet and satisfy

19   the requirements of Section 6.5 of the Live Oak PSA requiring an "acceptable carve out agreement"

20   between the Trustee, the Estate, and FCW. This stipulation constitutes the entire agreement between

21   the Parties.

22          14.     This stipulation is subject to approval by the Bankruptcy Court. No provision of this

23   stipulation is effective or binding on any Party, unless the Court enters an order approving these

24   provisions. Any disputes over the interpretation or enforcement of this stipulation shall be resolved

25   solely by the United States Bankruptcy Court for the Central District of California, Santa Ana

26   Division.

27

28

EXHIBIT 1, PAGE 23
EXHIBIT 14, PAGE 267

1        15.    Once this stipulation is approved by the Bankruptcy Court, no further material

2    modification or material amendment shall be effective unless: (1) such amendment or modification

3    is in writing, and (2) the amendment or modification is approved by the Bankruptcy Court.

4        16.    This stipulation may be executed in one or more counterparts and facsimile or

5    electronic signatures may be used in filing this document with the Court.

6

7    Dated: December _10_, 2021          FARM CREDIT WEST, FCLA

8

9                        By:_____

10                         KEVIN RALPH

11                       Position: _Executive Vice President_

12   Dated: December _6_, 2021

13                       By:_____

14                       RICHARD A. MARSHACK
                      Chapter 7 Trustee for Debtor,

15                       NORTHERN HOLDING, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1, PAGE 24
EXHIBIT 14, PAGE 268

EXHIBIT 1

**LEGAL DESCRIPTION**

THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF **CALIFORNIA**, COUNTY OF **SAN LUIS OBISPO**, AND IS DESCRIBED AS FOLLOWS:

**PARCEL A: APN 026,342,039**

THE NORTHEAST QUARTER OF SECTION 12, IN TOWNSHIP 27 SOUTH, RANGE 11 EAST MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL FLAT OF THE SURVEY OF SAID LAND APPROVED BY THE SURVEYOR GENERAL.

**PARCEL A-1:**

AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10 FEET ON THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 27, RANGE 11, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND APPROVED BY THE SURVEYOR GENERAL.

**PARCEL A-2:**

AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN OVER, UNDER AND UPON A STRIP OF LAND 30 FEET WIDE LOCATED IN THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND APPROVED BY THE SURVEYOR GENERAL, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

COMMENCING AT THE EAST QUARTER CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2" REBAR CAPPED RCE 14994 IN BOOK 1, PAGE 159 OF OFFICIAL RECORDS;
THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 12, SOUTH 89°29'51" WEST 1,393.11 FEET MORE OR LESS TO THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING;
THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48" LIVE OAK TREE;
THENCE SOUTH 10°30'20" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD;
THENCE SOUTH 79°29' EAST TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO. M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

EXHIBIT 1, PAGE 25
EXHIBIT 14, PAGE 269

**EXHIBIT 2**

Estimates as to Live Oak Property proceeds:

| Item | Amount |
|---|---|
| Closing costs: settlement fee | $500 |
| Closing costs: title search fee | $250 |
| Closing costs: escrow fee | $9,000 |
| Closing costs: title insurance | $20,000 |
| County transfer tax | $1.10 per $1,000 |
| Commercial liability insurance @ $3,946.50 for San Marcos (8/21 – 8/22) @ $2,824.18 for Live Oak (10/21 – 10/22) | $6,770.68 +$15,000 reserve |
| Insurance (Live Oak) (Monthly) | $1,700/mo. since June 2021 |
| Trustee's attorneys' fees | $100,000 |
| Broker's fee (Hilco) | 1.75% of gross |
| Broker's fee (Onyx) | 1.75% of gross |
| Trustee's compensation (reduced) | 2.25% of gross |
| Miscellaneous payment | $30,000 |
| Trustee's field agent Lori Ensley | $12,000 |
| All other actual costs of securing and maintaining property such as utilities | TBD |

Estimates as to San Marcos Property proceeds:

| Item | Amount |
|---|---|
| Closing costs | TBD |
| County transfer tax | $1.10 per $1,000 |
| Trustee's attorneys' fees | $60,000 |
| Broker's fee (Hilco) | 1.75% of gross |
| Broker's fee (Onyx) | 1.75% of gross |
| Trustee's compensation (reduced) | 2.25% of gross |
| Miscellaneous payment | $30,000 |
| Trustee's field agent Lori Ensley | $12,000 |
| All other actual costs of securing and maintaining property such as utilities | TBD |

Estimates as to Texas Road Property proceeds:

| Item | Amount |
|---|---|
| Closing costs | TBD |
| County transfer tax | $1.10 per $1,000 |
| Trustee's attorneys' fees | $30,000 |
| Broker's fee (Hilco) | 1.75% of gross |
| Broker's fee (Onyx) | 1.75% of gross |
| Trustee's compensation (reduced) | 2.25% of gross |
| Miscellaneous payment | $30,000 |
| Trustee's field agent Lori Ensley | $12,000 |
| All other actual costs of securing and maintaining property such as utilities | TBD |

EXHIBIT 1, PAGE 26
EXHIBIT 14, PAGE 270

**EXHIBIT 3**

Estimates for consideration for surcharge waiver (all properties foreclosed):

| Item | Amount |
|---|---|
| Attorneys' fees without regard to category | $50,000 |
| Fees for field agent Lori Ensley | $15,000 |
| Administrative costs for professionals | $5,000 |
| Insurance premiums | $6,770.68<br>+ $1,700 monthly since June 2021 |
| Postpetition property taxes | TBD – paid directly by FCW |
| Miscellaneous payment | $80,000 |

Estimates for consideration for surcharge waiver (Live Oak sold, others foreclosed):

| Item | Amount |
|---|---|
| Attorneys' fees without regard to category | already paid per ¶ 2 |
| Fees for field agent Lori Ensley | already paid per ¶ 2 |
| Administrative costs for professionals | already paid per ¶ 2 |
| Insurance premiums | already paid per ¶ 2 |
| Postpetition property taxes | TBD – paid directly by FCW |
| Miscellaneous payment for San Marcos | $30,000 |
| Miscellaneous payment for Texas Road | $30,000 |
| Trustee's attorneys' fees for negotiating taxes | TBD – subject to separate stipulation if any |

EXHIBIT 1, PAGE 27
EXHIBIT 14, PAGE 271

1

**EXHIBIT 4**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4439817v1 | 100967-0004                               16

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 28
EXHIBIT 14, PAGE 272

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Michael J. Gomez (State Bar No. 251571)<br>  mgomez@frandzel.com<br>Reed S. Waddell (State Bar No. 106644)<br>rwaddell@frandzel.com<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>1000 Wilshire Boulevard, Nineteenth Floor<br>Los Angeles, California 90017-2427<br>Telephone: (323) 852-1000<br>Facsimile: (323) 651-2577<br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – *SANTA ANA* DIVISION**

| In re:<br><br>NORTHERN HOLDINGS, LLC,<br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 8:20-bk-13014-MW<br><br>CHAPTER: 11<br><br>**ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)**<br><br>DATE: August 30, 2021<br>TIME: 2:00 p.m.<br>COURTROOM: 6C<br>PLACE: 411 West Fourth Street<br>         Santa Ana, CA 92701 |
|---|---|

**Movant:**  Farm Credit West, FLCA

1.  The Motion was:    ☒ Opposed    ☐ Unopposed    ☒ Settled by stipulation

2.  The Motion affects the following real property and the personal property described in item no. 17 below (collectively, the "Property"):

> *Street address*:    <u>2380 Live Oak Rd</u>
> *Unit/suite number*:
> *City, state, zip code*:    <u>Paso Robles, CA 93446</u>
> Legal description or document recording number (including county of recording):

☒ See attached page and item no. 17 below.

---

4439709v1 | 100967-0004 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                Page 1                                **F 4001-1.RFS.RP.ORDER**

**EXHIBIT 1, PAGE 29**
**EXHIBIT 14, PAGE 273**

The Motion is granted under:

a. ☒ 11 U.S.C. § 362(d)(1)

b. ☒ 11 U.S.C. § 362(d)(2)

c. ☐ 11 U.S.C. § 362(d)(3)

d. ☒ 11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

(1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

(2) ☒ Multiple bankruptcy cases affecting the Property.

(3) ☒ The court ☒ makes ☐ does not make ☐ cannot make a finding that the Debtor was involved in this scheme.

(4) If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing.

3. ☒ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

a. ☒ Terminated as to the Debtor and the Debtor's bankruptcy estate.

b. ☐ Modified or conditioned as set forth in Exhibit _____ to this order.

c. ☐ Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

4. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

5. ☐ Movant must not conduct a foreclosure sale of the Property before (*date*) _____.

6. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

7. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

8. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

9. ☒ The 14-day stay as provided in FRBP 4001(a)(3) is waived.

10. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

11. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

4439709v1 | 100967-0004 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                    Page 2                    **F 4001-1.RFS.RP.ORDER**

**EXHIBIT 1, PAGE 30**
**EXHIBIT 14, PAGE 274**

12. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the entry of this Order:

    (a) ☒ without further notice.

    (b) ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

14. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

15. ☒ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from entry of this Order:

    (a) ☒ without further notice.

    (b) ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

16. ☒ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

    (a) ☒ without further notice.

    (b) ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☒ Other (*specify*): Relief from the automatic stay is further granted under the grounds provided for above in item nos. 2.a., 2.b., 2.d., 3, 4, 9, 10, 15, and 16 as to the personal property described in the Security Agreement attached to the Motion as Exhibit 3 (Dkt. 11).

The Enforcement Date as defined and set forth in the Order Granting Relief from Stay (Dkt. 210), which affects the real properties, is being continued by separate stipulation and order.  This Order does not affect that Enforcement Date.

### 

4439709v1 | 100967-0004 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 3                                    **F 4001-1.RFS.RP.ORDER**

**EXHIBIT 1, PAGE 31**
**EXHIBIT 14, PAGE 275**

(This attachment is the continuation page for paragraph 2 of this order.)

2.    The Motion affects the following real property:

| Property Name | APN | Property Address / Location |
|---|---|---|
| Rabbit Ridge Winery | 026-104-001 | 1172 San Marcos Road, Paso Robles, CA, 93446. |
| Texas Road Vineyard | 027-145-022 | Located along the north side of Texas Road, just north of San Marcos Road and ~1.5 miles west of Highway 101, being ~4 miles northwest of Paso Robles, in rural San Luis Obispo County. |
| Live Oak Vineyard | 026-342-039 | 2380 Live Oak Road, Paso Robles, CA 93446. Located ~0.2 mile north of Live Oak Road and ~0.8 mile west of Arbor Road, being ~2.5 miles southwest of Paso Robles, in rural San Luis Obispo County. |

Legal description or document recording number (including county of recording):

PARCEL A: APN 026,342,039

The Northeast quarter of Section 12, in Township 27 South, Range 11 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

PARCEL A-1:

An Easement for utility purposes beginning at Live Oak Road and extending North over the East 10 feet on the Northeast quarter of the Southeast quarter of Section 12, Township 27, Range 11, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

PARCEL A-2:

An Easement to provide ingress, egress, public utilities and incidental purposes to the Southwest quarter of the Northwest quarter of Section 12, Township 27 South, Range 11 East, Mount Diablo Base and Meridian over, under and upon a strip of land 30 feet wide located in the Southeast quarter of Section 12, Township 27 South, Range 11 East, Mount Diablo Base and Meridian, according to the Official Plat of the Survey of said land approved by the Surveyor General, and lying equally on each side of the following described centerline:

Commencing at the East quarter corner of said Section 12, said corner being shown as a ½" rebar capped RCE 14994 in Book 1, Page 159 of Official Records;
Thence along the Northerly line of the Southeast quarter of said Section 12, South 89°29'51" West, 1,393.11 feet more or less to the Southwest corner of the Southeast quarter of the Northeast quarter of said Section 12 and the True Point of Beginning;
Thence leaving said Northerly line South 20°22'08" West, 701.76 feet to a point which bears South 70°16' East, 17.00 feet from the center of a 48" live oak tree;
Thence South 10°30'20" West, 341.71 feet to a point which bears South 79°29' East, 15.00 feet from the center of a cattle guard;
Thence South 79°29' East to the center of Live Oak Road (County Road No. M5262).

The side lines of the above mentioned 30 foot strip shall be lengthened and shortened to meet the beginning and ending boundary lines.

PARCEL B: APN 026,021,070

The Southerly 40 acres of the North half of the Northwest quarter of Section 12, in Township 26 South, Range 11 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

EXCEPTING THEREFROM an undivided ½ interest in and to all oil, gas and other hydrocarbon substances and minerals in or under said land, but without right of surface entry as reserved by Clara M. Guthier, a widow, in Deed recorded March 27, 1961 in Book 1115, Page 246 of Official Records.

PARCEL C: APN: 027,145,022

Government Lots 3 and 4 and the East half of the Southwest quarter of Section 31, Township 25 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General, as described in Certificate of Compliance recorded September 13, 1985 as Instrument No. 052170 of Official Records.

EXCEPTING THEREFROM an undivided ½ interest in the land owners share of royalties from oil, gas, other hydrocarbons, or minerals actually produced on or from said land or any part thereof, as reserved by George Blechen and Marie Blechen, his wife and Elsie Loose, a widow in Deed dated May 16, 1958 and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

ALSO EXCEPTING 50% of grantors present interest in all oil, gas and other hydrocarbons and other minerals that are on or may be on or within said lands, together with 50% interest in and to all oil, gas and other hydrocarbons and other minerals as same may be increased upon expiration of royalty interests as reserved in Deed dated May 16, 1958 executed by George Blechen and Marie Blechen, his wife and by Elsie Loose, a widow and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

Such mineral reservations in favor of grantors herein are without any right of entry to the surface of said land and are without any right of entry to the first 500 feet adjacent to and lying beneath the surface of said land.

PARCEL C-1:

A 30 foot wide Easement for ingress, egress and incidental purposes over that portion of Lot 4 of "Home of the Almond", in the County of San Luis Obispo, State of California, according to map recorded in, Book 2, Page 17 of Maps, the centerline of which is more particularly described as follows:

Commencing at the Southeast corner of said Lot 4;
Thence along the Easterly line of Lot 4, North 0°30'00" West, 65.00 feet to the point of beginning;
Thence parallel to the South line of Lot 4, North 89°45'00" West, 203.81 feet;
Thence South 73°38'54" West, 138.47 feet;
Thence South 78°42'47" West, 52.18 feet to a point that lies 15.00 feet North of the South line of said Lot 4;
Thence 15 feet Northerly of and parallel to said South line of Lot 4, North 89°45'00" West, 559.74 feet to the Westerly line of Lot 4.

PARCEL D: APN: 026,104,001

Lot 4 of Section 5, Lots 1, 2, 3 and 4, the Southwest Quarter of the Northeast Quarter and the Southeast Quarter of the Northwest Quarter of Section 6, all in Township 26 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the official plate thereof.

EXCEPTING THEREFROM that portion lying South of San Marcos Road.

ALSO EXCEPTING THEREFROM ½ of the oil, gas, mineral and other hydrocarbon substances in and under said land as reserved by Robert L. Linnett, a married man and Henry C. Brigham, a married man in equal shares by deed recorded June 21, 1977 in Book 1988, Page 755 of Official Records.


PARCEL E: APN:. 014,311,014 .

The Northeast quarter of Section 23, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California.

PARCEL E-1:

A right of way for ingress to and egress from said Parcel 1, and for the installation and maintenance of utility pipe and pole lines, in, upon, along and under a strip of land 40 feet wide, containing 0.038 acres in the Southwest corner of the Southeast quarter of Section 14, Township 26 South, Range 10 East, and 0.638 acres in the Southwest quarter of said section, the centerline of which strip of land is described as follows:

Beginning at a point 28 feet East of the South ¼ corner of Section 14, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, and running thence North 45° West, 68.85 feet to a point 20 feet West of the Easterly boundary line of the Southwest quarter of Section 14;
Thence North and parallel to said Easterly boundary line, 343.9 feet to a point;
Thence North 42°0' West, 28.5 feet to a point;
Thence North 59°40' West, 293.5 feet more or less to the Southeasterly boundary line of the San Marcos-Adelaide County Road.

EXHIBIT 1, PAGE 35
EXHIBIT 14, PAGE 279

Situated in the State of California, Unincorporated Area, County of Sonoma, and described as follows:

PARCEL ONE

BEGINNING on section line at a point 14.30 chains South from the northwest corner of Section 5, Township 8 North, Range 9 West, M.D,B, & M., and running thence North 89° 45' East, 63 21 chains to a station, thence North 69° East, 3.00 chains to an iron pin driven in the center of the county road leading from Healdsburg to Guerneville; thence South 13° 45' East, 2.15 chains to an iron pin, thence South 14° 30' East, 3 23 chains to an iron pin in the center of said road, thence North 77° 15' East, 1.91 chains; thence South 33° 40' East, 0.35 chains, thence South 74° 45' East, 0.30 chains; thence North 84° 30' East, 0.18 chains; thence North 62° 30' East, 0.39 chains; thence North 37° East, 0.62 chains to a station; thence North 77° 15' East, 24.82 chains to a stake driven in the middle of a slough in the division line between the lands herein described and the lands of John McClish; thence North 19° East, 2.71 chains; thence North 42° 30' East, 1.46 chains, thence North 32° East, 2.25 chains; thence North 24° 10' East, 0.65 chains to an iron pin at corner; thence South 78° 15' West, 32.85 chains to an iron pin in the center of aforesaid county road; thence North 22° West, in the center of road, 2.49 chains to an iron pin; thence South 89° 30' West, 65.00 chains to section line, and thence South on section line, 3.18 chains to the point of beginning.

EXCEPTING THEREFROM all that portion lying Easterly of the centerline of the Healdsburg —
Guerneville Road.

PARCEL TWO

BEGINNING at a point, 14.30 chains South from the northwest corner of Section 5, Township 8 North, Range 9 West, M.D.B, & M,, and running thence, North 89° 45' East, 40.16 chains to a station in the center of a small creek, thence South 5.77 chains to the land of John McClish; thence West on said McClish's north line, 40.11 chains to section line; thence North on section line 5.54 chains to the point of beginning.

(110-070-026-000)

**EXHIBIT 2**

EXHIBIT 14, PAGE 281

# M A R S H A C K   H A Y S LLP

**ATTORNEYS AT LAW | LITIGATION | REORGANIZATION | BANKRUPTCY**

Richard A. Marshack
D. Edward Hays
Chad V. Haes
David A. Wood
Judith E. Marshack
Laila Masud
Tinho Mang
Bradford N. Barnhardt

*Of Counsel*
Kristine A. Thagard
Matthew W. Grimshaw

Reference No. 1015-146
Sender: Tinho Mang on behalf of Richard A.
Marshack

December 10, 2021

*VIA E-MAIL AND OVERNIGHT MAIL ONLY*

Reed Waddell, Esq.
Michael Gomez, Esq.
Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, CA 90017
rwaddell@frandzel.com

Re:    *In re Northern Holding, LLC*
        Case No. 8:20-bk-13014-MW
        **Letter Agreement re: Access to Paso Robles Properties and
        Maintenance of Collateral**

To Whom It May Concern:

I am the duly-appointed and acting Chapter 7 Trustee (the "Trustee") for the
Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), which is the owner
of record of the real properties commonly known as (1) 2380 Live Oak Road, Paso
Robles, CA ("Live Oak Property"); (2) 1172 San Marcos Road, Paso Robles, CA ("San
Marcos Property"); and (3) adjacent real property commonly known as the "Texas Road"
property. Together, these three real properties shall be referred to as the "Properties."

On November 22, 2021, I transmitted a letter to Farm Credit West, FLCA
("FCW") regarding my immediate authorization to FCW to take all actions to secure the
Properties, including re-keying all access doors, at FCW's sole expense, pursuant to and
subject to my ability to, on behalf of the Estate, assume possession and control of the
Properties at any time.

**M A R S H A C K   H A Y S** LLP | www.marshackhays.com
870 Roosevelt | Irvine, CA 92620 | 949.333.7777 | Fax 949.333.7778

EXHIBIT 2, PAGE 37
EXHIBIT 14, PAGE 282

December 10, 2021
Page 2

On November 29, 2021, my field agent Lori Ensley met with FCW's authorized representative Jacob Bingham and conducted a joint inspection of the Properties. No significant issues were identified as a result of this joint inspection, other than that FCW requested that I immediately remove all personnel from the Properties. As for collateral on the Properties, FCW did not identify any item of collateral which was not present during the inspection on November 29, 2021.

On December 6, 2021, I signed a Subordination Stipulation with Farm Credit West, FCLA ("FCW"), which includes provisions stating that I am required to deliver "full possession" of the Properties and "other remaining collateral of FCW (*e.g.*, equipment and inventory)" to FCW as a precondition to certain terms of the stipulation.

On December 7, 2021, a letter agreement was transmitted to counsel for FCW regarding the Trustee's intention relating to the possession of the Properties. Subsequently, FCW requested that access to the Properties be transferred to FCW starting on December 9, 2021 at 1:00 p.m., and arrangements were made.

On December 9-10, 2021, my field agent Lori Ensley accompanied FCW's authorized representatives and a locksmith at the Properties, where all occupants or persons on the Properties were instructed to voluntarily leave, and full control of all access doors and gates was assumed by FCW as of 12:34 p.m. on December 10, 2021, with no current occupants at any Properties.

As defined in the Subordination Stipulation, "full possession" of the Properties has been delivered by me and control of the Properties has been assumed by FCW, subject to my ability and authority to retake possession and control of the Properties at any time. All personal property of Northern Holding, LLC located on the Properties at the time of transferring access to FCW's representative is now deemed delivered to FCW as other remaining collateral, subject to my ability to retake possession and control of any and all Estate property at any time. On the other hand, any personal property or assets which are not the property of the Estate (such as, for example, any personal effects of any prior occupant of the Properties or personal effects of any workers on the Properties) should be released to the possession of such persons upon request, except where FCW claims a valid, perfected security interest in such assets. FCW shall not unreasonably withhold access to the Properties solely for the purpose of allowing third parties to retrieve their personal effects from the Properties under supervision by FCW's designated representative(s) and/or the Trustee's representative, if necessary.

EXHIBIT 2, PAGE 38
EXHIBIT 14, PAGE 283

December 10, 2021
Page 3


     All property located on the Properties as of 12:34 p.m. on December 10, 2021 is now deemed the management and financial responsibility of FCW, including any necessary and advisable measures to preserve, maintain, manage, and secure the real properties or personal property located thereon, subject to my authority to retake possession and control of the Properties at any time. This includes any preservation or maintenance requested by Anthony Riboli, whose purchase of the Live Oak Property benefits principally FCW. Mr. Riboli has been encouraged to directly contact FCW's representatives to discuss any property maintenance procedures which he requests or requires in order to proceed with his purchase of the Live Oak Property. No acts outside the ordinary course of business shall be permitted absent prior written notice to myself, with a copy to my counsel. As previously stated, no breach of the peace shall be caused by FCW's supervision of the Properties and no use of force is authorized on the Properties.

     FCW agrees that Trustee, Trustee's real estate agents or designee, and field agent Lori Ensley or her designee shall have full, reasonable access to the Properties and a full set of keys, passcodes, and combinations. LeRoy Codding and his business associates and affiliates are expressly forbidden from obtaining any method of access to the Properties except solely as necessary to retrieve any personal effects from the Properties under the supervision of either FCW or the Trustee's representatives. Trustee shall seek approval of this agreement concurrent with seeking approval of the Subordination Stipulation.

     If you have any questions or concerns, please contact trustee's counsel Tinho Mang at 949-333-7777.

Very truly yours,

RICHARD A. MARSHACK
Chapter 7 Trustee

SO AGREED TO THE ABOVE – FCW ACKNOWLEDGES THAT FULL ACCESS (SUBJECT TO TRUSTEE'S ABILITY TO RETAKE POSSESSION AND CONTROL) HAS BEEN DELIVERED TO FCW IN ACCORDANCE WITH THE TERMS OF THE SUBORDINATION STIPULATION:

By:
KEVIN RALPH
Authorized Representative for Farm Credit West, FCLA

EXHIBIT 2, PAGE 39
EXHIBIT 14, PAGE 284

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT WITH FARM CREDIT WEST, FCLA, RE: DISTRIBUTION OF PROCEEDS FOR SALE OF REAL PROPERTY COLLATERAL, WAIVER OF SURCHARGE CLAIMS FOR CONSIDERATION; MEMORANDUMOF POINTS AND AUTHORITIES; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT; AND REQUEST FOR JUDICIAL NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 20, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **December 20, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR**
NORTHERN HOLDING, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT,
OR TO ANY OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE SERVICE
13217 JAMBOREE RD #429
TUSTIN, CA 92782

**U.S. TRUSTEE**
UNITED STATES TRUSTEE (SA)
411 W FOURTH ST., SUITE 7160
SANTA ANA, CA 92701-4593

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 20, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE MARK S. WALLACE
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 20, 2021 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
- **INTERESTED PARTY COURTESY NEF:** William H Brownstein Brownsteinlaw.bill@gmail.com
- **INTERESTED PARTY COURTESY NEF:** Steve Burnell sburnell@sulmeyerlaw.com, sburnell@ecf.courtdrive.com; sburnell@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com
- **ATTORNEY FOR U.S. TRUSTEE (SA):** Nancy S Goldenberg nancy.goldenberg@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR RESPONDENTS ERICH RUSSELL AND JOANNE RUSSELL:** Kari L Ley Ley1238@att.net
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE:** Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.:** Paul F Ready tamara@farmerandready.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR INTERESTED PARTY RIBOLI PASO ROBLES, LLC:** Victor A Sahn vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com; pdillamar@ecf.inforuptcy.com; vsahn@ecf.inforuptcy.com; cblair@sulmeyerlaw.com; cblair@ecf.inforuptcy.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Kristine A Thagard kthagard@marshackhays.com, kthagard@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
- **INTERESTED PARTY COURTESY NEF:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**: CONTINUED:

| SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR |
|---|---|---|
| ELRICH RUSSELL C/O KARI L. LEY, ATTORNEY AT LAW 264 CLOVIS AVENUE, SUITE 208 CLOVIS, CA 93612 | ERICH RUSSELL 2380 LIVE OAK ROAD PASO ROBLES, CA 93446-9693 | FARM CREDIT WEST ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE 3755 ATHERTON RD 11707 FAIR OAKS BLVD ROCKLIN, CA 95765 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 14, PAGE 286

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
C/O MICHAEL J. GOMEZ
FRANDZEL ROBINS BLOOM &
CSATO, L.C.
1000 WILSHIRE BOULEVARD,
19TH FLOOR
LOS ANGELES, CA 90017-2457

**SECURED CREDITOR**
MORTGAGE LENDER SERVICES
AS AGENT
FARM CREDIT WEST, FLCA, AS
TRUSTEE
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
11707 FAIR OAKS BLVD
FAIR OAKS, CA 95628-2816

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
ATTN: KEVIN E. RALPH
3755 ATHERTON DRIVE
ROCKLIN CA 95765-3701

**SECURED CREDITOR / POC ADDRESS**
JAMES W. HAMILTON ACTTC
SAN LUIS OBISPO TAX COLLECTOR
1055 MONTEREY STREET
SUITE D-290
SAN LUIS OBISPO CA 93408-1003

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 14, PAGE 287

**EXHIBIT 15**

**Fill in this information to identify the case:**

Debtor 1    Northern Holdings, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   8:20-bk-13014-MW

---

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. Who is the current creditor? | Erich Russell | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor  Erich L. Russell, Erich Leroy Russell | |
| 2. Has this claim been acquired from someone else? | ☐ No | |
| | ☐ Yes.  From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent? (if different)** |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Kari L. Ley, Attorney at Law | Kari L. Ley, Attorney at Law |
| | Name | Name |
| | 264 Clovis Avenue, Suite 208 | 264 Clovis Avenue, Suite 208 |
| | Number     Street | Number     Street |
| | Clovis          CA          93612 | Clovis          CA          93612 |
| | City          State          ZIP Code | City          State          ZIP Code |
| | Contact phone  (559)324-6545 | Contact phone  (559)324-6545 |
| | Contact email  Ley1238@att.net | Contact email  Ley1238@att.net |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |
| 4. Does this claim amend one already filed? | ☑ No | |
| | ☐ Yes.  Claim number on court claims registry (if known) _____     Filed on  ___ / ___ / _____ MM / DD / YYYY | |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No | |
| | ☐ Yes.  Who made the earlier filing? _____ | |

---

Official Form 410                                   Proof of Claim                                   page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
| --- | --- |

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?** $_____6,803,000.00  **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Secured sale of real property

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**  Recorded Agreement to Purchase and Sell Real Estate

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $  32,000,000.00

**Amount of the claim that is secured:**  $  7,000,000.00

**Amount of the claim that is unsecured:** $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $  7,000,000.00

**Annual Interest Rate** (when case was filed) 5.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**EXHIBIT 15, PAGE 289**

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

| **Part 3:** | **Sign Below** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   03/31/2021
                  MM / DD / YYYY

Kari L. Ley
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Kari L. Ley | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney for Creditor Erich Russell | | |
| Company | The Law Offices of Kari L. Ley | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 264 Clovis Avenue, Suite 208 | | |
| | Number       Street | | |
| | Clovis | CA | 93612 |
| | City | State | ZIP Code |
| Contact phone | (559)324-6545 | Email | Ley1238@att.net |

EXHIBIT 15, PAGE 290

**2020061134**

Tommy Gong
San Luis Obispo - County Clerk-Recorder
10/28/2020 10:07 AM

## CONFORMED COPY

Copy of document recorded.
Has not been compared with original.

Recording Requested By

and When Recorded Mail to:

Northern Holding LLC
Rabbit Ridge Wine Sales
13217 Jamboree Rd #429
Tustin, Ca 92782

Agreement to Purchase and Sell
a corp $        (Document Title)    Real Estate

The undersigned declares exemption under the following:

☐  Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a
    transfer of real property that is:
    ☐  Subject to the imposition of documentary transfer tax", **or**
    ☐  A residential dwelling to an owner-occupier", **or**
☐  Exempt from fee per GC 27388.1 (a) (1); fee cap of $225 reached (list recording references)
☐  Exempt from the fee per GC 27388.1 (a) (1) Not related to real property"

Signature: _____

## AGREEMENT TO PURCHASE AND SELL A CORPORATION AND REAL ESTATE
### as of 10/23/2020

This serves as a purchase and sale agreement ("PSA") between the Parties identified below ("Buyer" and "Seller") for the purpose of defining and executing a definitive Purchase and Sale Agreement ("PSA") of real estate, a corporation, its assets and wine inventory.

Northern Holding, LLC ("Buyer") wishes to acquire, and Russell Family Vineyards / Rabbit Ridge Wine Sales/ Erich Russell, an individual, ("RFV/ RRWS"), ("Seller") wishes to sell the corporation and its assets including APNs, 026-104-001, 027-145-022 and 026-342-039, located in the county of San Luis Obispo, Paso Robles, California ("RFV/ RRWS"), which own the real property, assets, and intellectual property related to Rabbit Ridge Wine Sales & Russell Family Vineyards. The following terms shall apply to the sale of RFV/ RRWS:

**Purchase Price:** Thirty million, five hundred thousand USD ($30,500,000) for Seller's right, title and interest in RFV/ RRWS. Plus, Wine Inventory, both cased goods and bulk, subject to review of current wine inventory list, IP, all brands, bank accounts, equipment, tasting room lease and customer lists.

The assets to convey include the land, wine inventory, Rabbit Ridge, Russell and all brands, the bonds, entitlements that are transferable, customer lists, trademarks, winery and farming equipment, bank accounts, all improvements on the lands, tasting room lease, and rights and encumbrances detailed in the Title Report.

Seller shall assign its Farm Credit West Notes, property tax, EDIL and payables at close. As well receivables shall be assigned. In addition a cash amount of $163,050.00 shall be left in company to cover short term operating expenses.

RFV/ RRWS and its assets are being sold As-Is. Seller shall leave $163,050.00 cash in at close. Buyer will issue Seller a 90-day note at 5.5% annual interest compounded monthly.

**Seller Notes:** Northern Holding, LLC entity will have notes due Seller as follows:
1) In the amount of $6,440,000 for the balance of purchase price on top of liabilities assumes. The note will accrue 4.5% interest annually. Principal and interest are due in a balloon payment at 5 years.
2) In the amount of $163,050.00 for cash in at close. Buyer will issue Seller a 90-day note at 5.5% annual interest compounded monthly.
3) In the amount of $200,000 for extension from July 2020. Buyer will issue Seller a 180-day note at 5.5% annual interest compounded monthly.

These will become effective at close.

**Lease Agreement:** Buyer will execute a lease on the principal Live Oak Road on residence on APN 026-342-039, with seller as lessee. The value assigned to this is $12,000/ month. Lease will be effective at close.

**Purchase Funds:** Buyer states that all purchase funds are in the form of debt assumptions and seller note.

**Timing & Due Diligence:**
Due Diligence: Buyer removes all contingencies upon mutual execution of PSA. However, Buyer may continue to perform inspections and tests as required by Buyer (provided that Buyer may not conduct invasive tests without the prior consent of Seller, which consent may be granted or withheld by Seller in its sole discretion), in all cases at Buyer's sole cost.
Close shall occur 10/27/2020 upon mutual execution of PSA, unless amended. Buyer to specify title company.

**Agent:** Seller shall address agency fee on San Marcos and Texas Road parcels with Jon Ohlgren, Radius Group, a licensed real estate broker.

**2020 Crop:** Buyer is responsible for 2020 intake.

**Seller's Documents:** Seller shall provide to Buyer, as reasonably available after Opening of Escrow, any and all due diligence materials as are reasonably requested by Buyer and which are in the possession of Seller.

**Confidentiality:** Buyer and Seller agree that all terms of this PSA and the PSA shall remain confidential and shall not be disclosed to third parties, except legal and financial advisors of Buyer and Seller, staff personnel, and those parties necessary to arrange and fund the acquisition and development financing.

**Disclaimer and Indemnification:** All statements and terms contained in this Agreement are based on Owner's current assumptions and knowledge as of the date of its presentation. Seller and Seller's Agent offer no warranty, and advise Buyer to rely solely on Buyer's discovery. Seller holds Buyer harmless and indemnifies Buyer from liability resulting from this transaction.

Accepted and Agreed to:

Seller: _____  Date: 10-27-2020
Erich Lee Russell
Russell Family Vineyards
Rabbit Ridge Wine Sales, Inc.

Buyer: _____  Date: 10/27/2020
Lee Codding
Northern Holding, LLC
AKA Leroy codding

cc: Kari Ley, Steven Jones

## AGREEMENT TO PURCHASE AND SELL A CORPORATION AND ASSETS
as of 10/27/2020

This serves as a purchase and sale agreement ("PSA") between the Parties identified below ("Buyer" and "Seller") for the purpose of defining and executing a definitive Purchase and Sale Agreement ("PSA") of a corporation, its assets and wine inventory.

Fluid Wine Fund I, LLC  ("Buyer") wishes to acquire, and Northern Holding, LLC, ("Seller") wishes to sell the corporation and its assets including inventory, brands, and intellectual property related to Rabbit Ridge Wine Sales, Inc. The following terms shall apply to the sale of RFV/ RRWS:

**Purchase Price:**  Two point five million ($2,500,000) for Seller's right, title and interest in RRWS. Plus, Wine Inventory, both cased goods and bulk, subject to review of current wine inventory list, IP, all brands, bank accounts, equipment, tasting room lease and customer lists.

Seller shall assign EDIL and payables at close. As well receivables shall be assigned. In addition a cash amount of $163,050.00 shall be left in company to cover short term operating expenses. RRWS and its assets are being sold As-Is.

**Seller Notes:** Fluid Wine Fund, LLC  entity will have notes due Seller as follows:
1) In the amount of $2,500,000 for the balance of purchase price The note will accrue 4.5% interest annually. Principal and interest are due in a balloon payment at 5 years. Seller shall leave $163,050.00 cash in at close.
2) Buyer will issue Seller a 90-day note at 5.5% annual interest compounded monthly for the $163,050.00 cash at close. This amount can be pre-paid without penalty to cover lease payments and other obligations.

**Purchase Funds:** Buyer states that all purchase funds are in the form of debt assumptions and seller note.

**Timing & Due Diligence:**
Due Diligence: Buyer removes all contingencies upon mutual execution of PSA. However, Buyer may continue to perform inspections and tests as required by Buyer (provided that Buyer may not conduct invasive tests without the prior consent of Seller, which consent may be granted or withheld by Seller in its sole discretion), in all cases at Buyer's sole cost.
Close shall occur 10/27/2020 upon mutual execution of PSA, unless amended.

**2020 Crop:** Buyer is responsible for 2020 intake.

**Seller's Documents:** Seller shall provide to Buyer, as reasonably available after Opening of Escrow, any and all due diligence materials as are reasonably requested by Buyer and which are in the possession of Seller.

**Confidentiality:** Buyer and Seller agree that all terms of this PSA and the PSA shall remain confidential and shall not be disclosed to third parties, except legal and financial advisors of

1 of 2

EXHIBIT 15, PAGE 294

Buyer and Seller, staff personnel, and those parties necessary to arrange and fund the acquisition and development financing.

**Disclaimer and Indemnification:** All statements and terms contained in this Agreement are based on Owner's current assumptions and knowledge as of the date of its presentation. Seller and Seller's Agent offer no warranty, and advise Buyer to rely solely on Buyer's discovery. Seller holds Buyer harmless and indemnifies Buyer from liability resulting from this transaction.

Accepted and Agreed to:

Seller: _____ Date: 10/27/2020
  Lee Codding
  Northern Holding, LLC

Buyer: _____ Date: 10/27/2020
  Lee Codding
  Fluid Wine Fund I, LLC

See Attached for
Notary Certificate

cc: Steven Jones

2 of 2

EXHIBIT 15, PAGE 295

# California Jurat Certificate

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California**

**County of** _San Luis Obispo_ } **s.s.**

Subscribed and sworn to (or affirmed) before me on this ___5th___ day of ___November___,

Month

20 _20_, by _____ _Lee Codding_ _____ and

Name of Signer (1)

_____ _N/A_ _____, proved to me on the basis of

Name of Signer (2)

satisfactory evidence to be the person(s) who appeared before me.

_[signature]_

Signature of Notary Public

_Megan O'Dwyer_

For other required information (Notary Name, Commission No. etc.)

MEGAN O'DWYER
Commission # 2322499
Notary Public - California
San Luis Obispo County
My Comm. Expires March 11, 2024

Seal

---

**OPTIONAL INFORMATION**

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this jurat to an unauthorized document and may prove useful to persons relying on the attached document.*

**Description of Attached Document**

The certificate is attached to a document titled/for the purpose of

_Agreement to Sell "no Purchase and_
_Sell a Corporation and Assets_

containing _2_ pages, and dated _10/27/2020_

**Additional Information**

Method of Affiant Identification

Proved to me on the basis of satisfactory evidence:
○ form(s) of identification ○ credible witness(es)

Notarial event is detailed in notary journal on:

Page # _____ Entry # _____

Notary contact: _____

Other

☐ Affiant(s) Thumbprint(s) ☐ Describe: _____

_____

© 2009-2015 Notary Learning Center - All Rights Reserved    You can purchase copies of this form from our web site at www.TheNotaryStore.com

END OF DOCUMENT

EXHIBIT 15, PAGE 296

**EXHIBIT 16**

D. EDWARD HAYS, #162507
ehays@marshackhays.com
DAVID A. WOOD, #272406
dwood@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt Avenue
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>NORTHERN HOLDING, LLC,<br><br>Debtor. | Case No. 8:20-bk-13014-MW<br><br>Chapter 7<br><br>STIPULATION FOR TURNOVER OF REAL PROPERTY LOCATED AT 1172 SAN MARCOS ROAD, PASO ROBLES, CA<br><br>[NO HEARING REQUIRED] |

TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

This stipulation is entered into between Richard A. Marshack, in his capacity as Chapter 7

Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), on

one hand, and Rabbit Ridge Wine Sales, Inc. ("Rabbit Ridge"), on the other hand, with regard to

turnover of real property commonly known as 1172 San Marcos Road, Paso Robles, CA, APN Nos.

026-104-001, 027-145-022 ("Property"). Collectively, Trustee and Rabbit Ridge shall be referred to

as the "Parties."

## Recitals

A.      On October 28, 2020, Debtor filed a voluntary petition for bankruptcy under Chapter

11 of Title 11 of the United States Code.

EXHIBIT 16, PAGE 297

1    B.    Rabbit Ridge asserts that it entered into a lease/rental agreement between Debtor and

2  Rabbit Ridge regarding the Property, which is dated October 27, 2020 ("San Marcos Lease").

3    C.    The San Marcos Lease states that Rabbit Ridge agreed to pay $15,000 per month to

4  Debtor and the term of the San Marcos Lease expired on January 1, 2022. Additionally, paragraph

5  30 of the San Marcos Lease states that "Tennant will pay 20% custom crush revenue to NHC on top

6  of basis rate – billed in arrears monthly."

7    D.    No cash payments have been made to Debtor by Rabbit Ridge on account of the San

8  Marcos Lease.

9    E.    On June 15, 2021, as Dk. No. 116, the Court entered an order converting the case to

10  Chapter 7. Richard A. Marshack is the duly-appointed and acting Chapter 7 trustee.

11    F.    The Trustee requires possession and control of the Property to administer for the

12  benefit of the Estate.

13    G.    The Trustee has requested, and Rabbit Ridge agrees to turnover of the Property to the

14  Trustee upon the terms stated below and Rabbit Ridge agrees, to the extent that the San Marcos

15  Lease may be valid, that the San Marcos Lease is terminated in its entirety.

16    The Parties agree and STIPULATE as follows:

17    1.    Rabbit Ridge agrees that the San Marcos Lease, to the extent that it is valid, shall be

18  voluntarily and mutually terminated and any and all interests of Rabbit Ridge in the San Marcos

19  Lease shall be terminated, including but not limited to any leasehold or possessory interest in the

20  Property and any right to use the production facilities at the Property. The termination of the San

21  Marcos Lease shall be effective upon mutual execution of this stipulation.

22    2.    Rabbit Ridge agrees that it will vacate and turn over possession of the Property and

23  all keys, gate openers, and all other methods of access to the Property to the Trustee on or before

24  midnight on July 31, 2021 ("Turnover Deadline").

25    3.    To the extent that any such rights exist, it is the intent of this Stipulation to extinguish

26  any occupancy, possessory, and rights of use of Rabbit Ridge at the Property.

27

28

EXHIBIT 16, PAGE 298

4. In the event Rabbit Ridge does not vacate and turn over possession of the Property by the Turnover Deadline, and upon Trustee's request, the Clerk may issue a writ of assistance authorizing the United States Marshals Service to remove and lock Rabbit Ridge out of the Property.

5. Trustee may seek all necessary and appropriate court orders to enforce the terms and purpose of this Stipulation.

6. In the course of vacating the Property and turnover to the Trustee, Rabbit Ridge shall not remove, destroy, disturb, or tamper with any of the following: furniture, fixtures including trade fixtures, inventory, agricultural assets such as crops, vines, seeds, and raw and unfinished products, wine barrels and casks, machinery and equipment (including but not limited to bottling and processing equipment), materials, and ingredients of any kind.

7. This stipulation may be executed in one or more counterparts and facsimile or electronic signatures may be used in filing this document with the Court.

Dated: July 27, 2021

By: _____
RICHARD A. MARSHACK
Chapter 7 Trustee for NORTHERN HOLDING LLC

Dated: July 27, 2021

By: _____
LEROY CODDING
Chief Executive Officer of RABBIT RIDGE WINE SALES, INC.

Presented by:      MARSHACK HAYS LLP

Dated: July 27, 2021

By: _____/s/ D. Edward Hays_____
D. EDWARD HAYS
TINHO MANG
Attorneys for RICHARD A. MARSHACK

3
STIPULATION FOR TURNOVER OF PROPERTY (SAN MARCOS)

EXHIBIT 16, PAGE 299

# oPROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **STIPULATION FOR TURNOVER OF REAL PROPERTY LOCATED AT 1172 SAN MARCOS ROAD, PASO ROBLES, CA** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 9, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **August 9, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR**
NORTHERN HOLDING, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY APPOINTMENT
OR LAW TO RECEIVE SERVICE
13217 JAMBOREE RD #429
TUSTIN, CA 92782

**INTERESTED PARTY**
LEE CODDING
13217 JAMBOREE RD #429
TUSTIN, CA 92782

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 9, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY: PRESIDING JUDGE'S COPY**
HONORABLE MARK S. WALLACE
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 9, 2021 | Layla Buchanan | */s/ Layla Buchanan* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **ATTORNEY FOR U.S. TRUSTEE (SA)**: Nancy S Goldenberg nancy.goldenberg@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA**: Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR)**: D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR)**: Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **TRUSTEE RICHARD A MARSHACK (TR)**: Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE**: Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC**: Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.**: Paul F Ready tamara@farmerandready.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC**: Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **UNITED STATES TRUSTEE (SA)**: United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA**: Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA**: Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
- **INTERESTED PARTY COURTESY NEF**: David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**: CONTINUED:

| SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR |
|---|---|---|
| ELRICH RUSSELL C/O KARI L. LEY, ATTORNEY AT LAW 264 CLOVIS AVENUE, SUITE 208 CLOVIS, CA 93612 | ERICH RUSSELL 2380 LIVE OAK ROAD PASO ROBLES, CA 93446-9693 | FARM CREDIT WEST 3755 ATHERTON RD 11707 FAIR OAKS BLVD ROCKLIN, CA 95765 |

| SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR / POC ADDRESS |
|---|---|---|
| FARM CREDIT WEST, FLCA C/O MICHAEL J. GOMEZ FRANDZEL ROBINS BLOOM & CSATO, L.C. 1000 WILSHIRE BOULEVARD, 19TH FLOOR LOS ANGELES, CA 90017-2457 | FARM CREDIT WEST, FLCA ATTN: KEVIN E. RALPH 3755 ATHERTON DRIVE ROCKLIN CA 95765-3701 | JAMES W. HAMILTON ACTTC SAN LUIS OBISPO TAX COLLECTOR 1055 MONTEREY STREET SUITE D-290 SAN LUIS OBISPO CA 93408-1003 |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 16, PAGE 301

**SECURED CREDITOR**
MORTGAGE LENDER SERVICES
AS AGENT
FARM CREDIT WEST, FLCA, AS
TRUSTEE
11707 FAIR OAKS BLVD
FAIR OAKS, CA 95628-2816

**CREDITOR**
ATTORNEY GENERAL
UNITED STATES DEPARTMENT OF
JUSTICE
BEN FRANKLIN STATION
P.O. BOX 683
WASHINGTON, DC 20044

**CREDITOR / POC ADDRESS**
ADLER BELMONT GROUP, INC.
C/O PAUL F. READY
FARMER & READY
1254 MARSH STREET
SAN LUIS OBISPO CA 93401

**CREDITOR**
BANK OF AMERICA
PO BOX 15019
WILMINGTON, DE 19850-5019

**CREDITOR**
CALIFORNIA DEPT OF TAX AND FEE
ADMI
SPECIAL OPS, MIC 29
PO BOX 942879
SACRAMENTO, CA 94279-0005

**CREDITOR**
CAPITAL ONE
P.O. BOX 60599
CITY OF INDUSTRY, CA 91716-0599

**CREDITOR**
CIVIL PROCESS CLERK
UNITED STATES ATTORNEY'S
OFFICE
FEDERAL BUILDING, ROOM 7516
300 NORTH LOS ANGELES
STREET
LOS ANGELES, CA 90012

**CREDITOR**
ELECTRO-STEAM GENERATOR CORP.
50 INDEL AVENUE
RANCOCAS, NJ 08073

**CREDITOR / POC ADDRESS**
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

**CREDITOR**
HILCO REAL ESTATE, LLC
5 REVERE DRIVE, SUITE 320
NORTHBROOK, IL 60062

**CREDITOR / POC ADDRESS**
INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

**CREDITOR**
PG&E
P.O. BOX 99700
SACRAMENTO, CA 95899-7300

**CREDITOR**
RABBIT RIDGE WINE SALES, INC.
179 NIBLICK RD, #406
PASO ROBLES, CA 93446-9693

**CREDITOR**
SUNBELT RENTALS
P.O. BOX 409211
ATLANTA, GA 30384-9211

**CREDITOR**
THOMAS K RACKERBY
C/O TOM PROUNTZOS
GOODMAN NEUMAN HAMILTON
LLP
ONE POST STREET, SUITE 2100
SAN FRANCISCO, CA 94104

**CREDITOR**
WEST COAST WINE PARTNERS
134 CHURCH STREET
SONOMA, CA 95476-6612

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 16, PAGE 302

# EXHIBIT 17

# Subject to Power of Sale

San Luis Obispo County Auditor ♦ Controller ♦ Treasurer ♦ Tax Collector                Monday, November 15, 2021

## Redemption Details

| Assessment Number | Default Date | Default Number | IP Type | IP Status | IP Start Date |
|---|---|---|---|---|---|
| 026-104-001 | 6/30/2009 | C4928 | None | None | |

| Assessee: | NORTHERN HOLDINGS LLC |
|---|---|

| Redemption Mailing Address: | 13217 JAMBOREE RD STE 429   TUSTIN CA 92782 |
|---|---|

| Situs: | 1172 SAN MARCOS RD RADEL | POS Recording Date: | 10/20/2020 |
|---|---|---|---|
| Legal: | T26S R12E PTN SECS 5 & 6 PAR 1 OR 2370/228 | POS Document Number: | 2020-058805 |

| If Paid in the Month of | Total Payoff Amount | Installment Amount |
|---|---|---|
| November 2021 | 3,448,697.53 | Action Pending |

Narratives

| Audit Amount | Redemption Penalty / Interest | Redemption Fee | Search and Recission Fee | Misc Fee (See below) | Less Installment Plan Credit | Total Payoff Amount |
|---|---|---|---|---|---|---|
| 1,622,697.67 | 1,825,799.86 | 15.00 | 185.00 | 0.00 | 0.00 | 3,448,697.53 |

### Tax Bill Details

| Penalty Year | Bill Number | Roll Year | 1st Paid | Tax + Penalty + Cost = Audit Amount | | | |
|---|---|---|---|---|---|---|---|
| | | | | Tax | Penalty | Cost | Audit Amount |
| 2009 | 2008/09 026-104-001 | 08-09 | Y | 72,549.70 | 7,254.97 | 10.00 | 79,814.67 |
| 2010 | 2009/10 026-104-001 | 09-10 | N | 146,737.66 | 14,673.76 | 10.00 | 161,421.42 |
| 2011 | 2010/11 952-000-587 | 04-05 | N | 10,456.30 | 0.00 | 0.00 | 10,456.30 |
| 2011 | 2010/11 952-000-581 | 05-06 | N | 6,985.78 | 0.00 | 0.00 | 6,985.78 |
| 2011 | 2010/11 952-000-582 | 06-07 | N | 626.02 | 0.00 | 0.00 | 626.02 |
| 2011 | 2010/11 952-000-583 | 07-08 | N | 69.76 | 0.00 | 0.00 | 69.76 |
| 2011 | 2010/11 026-104-001 | 10-11 | N | 143,990.42 | 14,399.04 | 10.00 | 158,399.46 |
| 2012 | 2011/12 026-104-001 | 11-12 | N | 142,370.38 | 14,237.02 | 10.00 | 156,617.40 |
| 2013 | 2012/13 951-000-004 | 11-12 | N | 1,069.06 | 103.78 | 20.00 | 1,192.84 |
| 2013 | 2012/13 026-104-001 | 12-13 | N | 143,342.70 | 14,334.26 | 20.00 | 157,696.96 |
| 2013 | 2012/13 951-000-006 | 09-10 | N | 1,415.14 | 116.94 | 20.00 | 1,552.08 |
| 2013 | 2012/13 951-000-007 | 08-09 | N | 1,698.52 | 130.64 | 20.00 | 1,849.16 |
| 2013 | 2012/13 951-000-005 | 10-11 | N | 1,217.16 | 108.66 | 20.00 | 1,345.82 |
| 2014 | 2013/14 026-104-001 | 13-14 | N | 142,513.72 | 14,251.36 | 20.00 | 156,785.08 |
| 2015 | 2014/15 026-104-001 | 14-15 | N | 142,012.94 | 14,201.28 | 20.00 | 156,234.22 |
| 2016 | 2015/16 026-104-001 | 15-16 | Y | 71,705.13 | 7,170.51 | 20.00 | 78,895.64 |
| 2017 | 2016/17 026-104-001 | 16-17 | N | 150,432.62 | 15,043.26 | 20.00 | 165,495.88 |
| 2018 | 2017/18 026-104-001 | 17-18 | Y | 74,609.44 | 7,460.94 | 20.00 | 82,090.38 |
| 2020 | 2019/20 950-000-901 | 19-20 | N | 112,699.58 | 11,269.94 | 20.00 | 123,989.52 |
| 2021 | 2020/21 026-104-001 | 20-21 | N | 110,144.80 | 11,014.48 | 20.00 | 121,179.28 |
| | | | Totals | 1,476,646.83 | 145,770.84 | 280.00 | 1,622,697.67 |

EXHIBIT 17, PAGE 303

# EXHIBIT 18

October 4, 2021

Buyer                                    Seller
San Antonio Winery, Inc.                 Rabbit Ridge Winery          *Peter* *DVC*
Attn: Anthony Riboli                     Attn: Lee Codding            As Agent for Northern
737 Lamar Street                         2380 Live Oak Road           Holdings LLC under the
Los Angeles, CA 90031                    Paso Robles, CA 93446
323-223-1401, Fax 323-221-7261           952-220-8216

Payee is US Trustee Richard Marshack for Northern Holding Estate -

**Cabernet Franc**        **Approx. 5 tons**     Payment to be made payable as
**Cabernet Sauvignon**    **Approx. 5 tons**     follows:

Pricing Terms                                    Richard Marshack, Bankruptcy Trustee
                                                 of Northern Holdings LLC
- Price per ton:                                 Payment to be sent to Richard Marshack
  - $3,350 in 2021      *DVC* *Peter*            @ 870 Roosevelt, Irvine, Ca 92620

- Any controversy, dispute, or claim arising out of or relating to this agreement, or the
  breach thereof, shall be settled by ~~arbitration in accordance with the Commercial~~
  ~~Arbitration Rules of the American Arbitration Association. The award rendered by the~~
  ~~arbitrators shall be final and binding and judgement on said award may be entered in any~~
  ~~court having jurisdiction thereof. Arbitration process to be completed in 90 days.~~
  United State Bankruptcy Court for the Central Dist. of California

Duration
The duration of this contract is one (1) year beginning with crop year 2021. After contract
expires, Buyer has first right to sign a new contract.

County
San Luis Obispo.

Payment Terms
100% within 30 days of harvest.

✳ All Parties agree that Northern Holdings LLC and Richard
Marshack as its Bankruptcy Trustee is a party to this
agreement. No liability shall be sought or obtained against
Richard Marshack in his personal capacity.          P. 2

                                                    *Peter* *DVC*

EXHIBIT 18, PAGE 304

<u>Conditions</u>

1. Crop Level
   Target crop level is 3 tons/acre.

2. Sugar
   Brix levels 25-26.5 degrees.
   Target Brix: 25.5 degrees.

   Seller will make every effort to achieve the Target Brix. The high and low of the inclusive range degrees Brix are listed only for impending weather conditions, and must be discussed with winery in any given year.

3. Consulting: Lee Alegre will consult with Seller for the duration of the contract. Any termination of Lee Alegre will be discussed with Buyer prior to completion.

4. Seller will install bird nets only after prior approval of the Buyer.

5. Hand Harvesting: Buyer requires hand harvesting.

6. Mildew, molds, rot, and/or MOG: must be less than 1.5% by weight or else buyer can reject.

7. Required cultural Practices for all San Antonio Winery vineyards:

   Vines will be "crown suckered." This is the removal of all shoots not from the spur positions.

   Double shoots will be removed. If a bud pushes two shoots, one will be removed. This can be done early or after set, at the grower's discretion.

   All second (and third) crop will be removed to insure evenness of ripening of the fruit.

P. 3

EXHIBIT 18, PAGE 305

Green and mostly green clusters will be removed at 90% veraison to insure an even ripening.

Leaf pulling around the clusters will be performed to aid color development and air circulation.

Crop may be removed if it appears that there is too large a crop for the vines to support and ripen.

8.  Seller's Duties and Responsibilities:

• Buyer determines the harvest date(s).  Seller must harvest within 48 hours of the time set.

• Seller must furnish Buyer with pesticide reports before each harvest.  Buyer may refuse grapes treated with chemicals not approved by state or federal regulators.

• Seller must warrant that Seller has full and unencumbered title to the grapes delivered. Seller may not assign this contract without Buyer's written consent.

• Seller must also warrant that the grapes provided under this contract are strictly first crop grapes.

• The prices set out above are F.O.B. winery: Seller assumes all responsibility for delivery.

• Term is for 1 year beginning with 2021 harvest.   Contract is binding on all heirs and successors.

_____        _____10/4/21_____
San Antonio Winery, Inc.                Date
By: Anthony Riboli

_____        _____10/4/2021_____
Rabbit Ridge Winery                     Date
By: Lee Codding

### ADDENDUM TO GRAPE PURCHASE AGREEMENT DATED October 4, 2021

1.      Assignment.  This agreement shall be binding on and inure to the benefit of the parties' successors and assigns.   However, Seller shall not assign this agreement nor delegate any obligations hereunder (whether to a prospective purchaser of Seller's vineyard property or otherwise) without Buyer's

*Rim — In no event may Buyers damages and right to claim costs and attorneys fee exceed 25% of the contract amount*

advance written approval in Buyer's reasonable discretion, which may be conditioned on, among other things, the assignee having the experience and resources needed to perform Seller's obligations. Seller shall give Buyer at least 45 days' advance notice of any proposed assignment or delegation and shall promptly provide to Buyer any information Buyer reasonably requests regarding the assignee's ability to perform Seller's obligations. If Buyer approves such assignment or delegation, such approval shall be deemed conditioned on the assignee assuming the Seller's obligations in a writing reasonably approved by Buyer, and Seller agrees to require any purchaser of the vineyard or other assignee to provide such a written assumption. Buyer's approval under this paragraph shall not be deemed to release Seller from liability for Seller's obligations if they are not performed in a timely manner.

2. <u>Buyer's Remedies</u>. Without limiting any other remedies available to Buyer under this agreement or applicable law, if Seller defaults in any obligations (including but not limited to obligations to plant, harvest and deliver the grapes), Buyer shall have the right (but not the obligation) (a) to advance funds to Seller for the performance of such obligations, and/or (b) to the extent permitted by applicable law and licensing requirements, to directly retain and/or pay appropriate personnel (and to take such other actions) as needed in Buyer's judgment to perform such obligations. Buyer shall have the right to deduct from the purchase price owed to Seller any funds so advanced or any costs so incurred by Buyer, together with interest at 10% per annum. Seller hereby agrees to provide access to Buyer and any personnel retained by Buyer for this purpose to enter Seller's vineyard property to perform such obligations of Seller that are in default. Seller hereby waives, and agrees to indemnify, defend and hold Buyer harmless against, any claims, demands, actions, losses, liabilities and expenses (including but not limited to reasonable attorney fees) arising out of Buyer's exercise of its rights in this paragraph. Seller warrants to Buyer that the remedies in this paragraph do not and will not conflict with the rights of any lenders or other third parties.

*Rim — United States Bankruptcy Court presiding over the Northern Holdings Case*

3. <u>Disputes Resolution; Venue; Attorney Fees</u>. To the greatest extent permitted by law, any controversy, dispute or claim arising out of or relating to this agreement, or the breach thereof, shall be determined by the ~~Superior Court in Los Angeles County, California (or other court with proper jurisdiction in Los Angeles County)~~, and both parties agree to submit to the jurisdiction of that court for this purpose. In the event of any lawsuit or other legal action or proceeding between the parties arising out of or relating to this agreement, the prevailing party shall be entitled to an award against the other party for the prevailing party's reasonable attorney fees and costs incurred in or relating to such suit, action or proceeding.

4. <u>Miscellaneous</u>. This agreement shall be governed by and construed in accordance with California law. This agreement constitutes the entire agreement of the parties relating to its subject matter, and any changes or amendments to the agreement must be in writing and signed by the parties. Similarly, any waiver of rights under this agreement must be in writing and signed by the party giving the waiver. If any provision of this contract is determined to be invalid, the balance of the contract shall be enforced to the extent permitted by applicable law. The parties may sign this agreement in counterparts which, taken together, shall constitute one agreement. Similarly, the parties may bind themselves to this agreement or any amendment by faxed (or scanned and emailed) signatures in the same manner as by original signatures. However, for convenience and record-keeping purposes, any party becoming bound by faxed (or scanned and emailed) signatures shall provide to the other party an ink-signed original of the agreement for the other party's records within ten days thereafter.

BUYER

- San Antonio Winery, Inc.
- By: Anthony Riboli
- Title: *Vice President*
- Date: 10/4/21

SELLER

- Rabbit Ridge Winery
- By: Lee Codding
- Title: President
- Date: 10/4/2021

*Buyer acknowledges that Richard Marshack is operating as a Bankruptcy Trustee and there shall be no claims or liability against Richard Marshack in his personal capacity*

*Rim    Richard Marshack*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 2380 LIVE OAK ROAD, PASO ROBLES, CA: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); AND (2) AUTHORIZING AMENDMENT TO PURCHASE AND SALE AGREEMENT; MEMORANDUM OF POINTS OF AUTHORITIES; DECLARATIONS OF RICHARD A. MARSHACK, K. KEVIN OTUS, AND JEFF AZUSE IN SUPPORT; AND REQUEST FOR JUDICIAL NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 19, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **January 19, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 19, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE MARK S. WALLACE
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

**VIA EMAIL:**
**INTERESTED PARTY,** LEEROY CODDING, LECODDINGIV@ICLOUD.COM

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 19, 2022 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **INTERESTED PARTY COURTESY NEF:** William H Brownstein Brownsteinlaw.bill@gmail.com
   - **INTERESTED PARTY COURTESY NEF:** Steve Burnell sburnell@sulmeyerlaw.com, sburnell@ecf.courtdrive.com; sburnell@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com
   - **ATTORNEY FOR U.S. TRUSTEE (SA):** Nancy S Goldenberg nancy.goldenberg@usdoj.gov
   - **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR RESPONDENTS ERICH RUSSELL AND JOANNE RUSSELL:** Kari L Ley Ley1238@att.net
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
   - **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
   - **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE:** Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
   - **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
   - **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.:** Paul F Ready tamara@farmerandready.com
   - **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
   - **ATTORNEY FOR INTERESTED PARTY RIBOLI PASO ROBLES, LLC:** Victor A Sahn vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com; pdillamar@ecf.inforuptcy.com; vsahn@ecf.inforuptcy.com; cblair@sulmeyerlaw.com; cblair@ecf.inforuptcy.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Kristine A Thagard kthagard@marshackhays.com, kthagard@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
   - **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
   - **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
   - **INTERESTED PARTY COURTESY NEF:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**: CONTINUED:

**DEBTOR**
NORTHERN HOLDING, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT,
OR TO ANY OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE SERVICE
13217 JAMBOREE RD #429
TUSTIN, CA 92782

**U.S. TRUSTEE**
UNITED STATES TRUSTEE (SA)
411 W FOURTH ST., SUITE 7160
SANTA ANA, CA 92701-4593

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                     **F 9013-3.1.PROOF.SERVICE**

**SECURED CREDITOR & INTERESTED PARTY / POC ADDRESS**
ERICH RUSSELL
C/O KARI L. LEY, ATTORNEY AT LAW
264 CLOVIS AVENUE, SUITE 208
CLOVIS, CA 93612

**SECURED CREDITOR & INTERESTED PARTY / POC ADDRESS**
ERICH RUSSELL
2380 LIVE OAK ROAD
PASO ROBLES, CA 93446-9693

**SECURED CREDITOR**
FARM CREDIT WEST
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE
3755 ATHERTON RD
11707 FAIR OAKS BLVD
ROCKLIN, CA 95765

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
C/O MICHAEL J. GOMEZ
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, 19TH FLOOR
LOS ANGELES, CA 90017-2457

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
ATTN: KEVIN E. RALPH
3755 ATHERTON DRIVE
ROCKLIN CA 95765-3701

**SECURED CREDITOR / POC ADDRESS**
JAMES W. HAMILTON ACTTC
SAN LUIS OBISPO TAX COLLECTOR
1055 MONTEREY STREET
SUITE D-290
SAN LUIS OBISPO CA 93408-1003

**SECURED CREDITOR**
MORTGAGE LENDER SERVICES AS AGENT
FARM CREDIT WEST, FLCA, AS TRUSTEE
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE
11707 FAIR OAKS BLVD
FAIR OAKS, CA 95628-2816

**CREDITOR**
ATTORNEY GENERAL
UNITED STATES DEPARTMENT OF JUSTICE
BEN FRANKLIN STATION
P.O. BOX 683
WASHINGTON, DC 20044

**CREDITOR**
CALIFORNIA DEPT OF TAX AND FEE ADMI
SPECIAL OPS, MIC 29
PO BOX 942879
SACRAMENTO, CA 94279-0005

**CREDITOR**
CIVIL PROCESS CLERK
UNITED STATES ATTORNEY'S OFFICE
FEDERAL BUILDING, ROOM 7516
300 NORTH LOS ANGELES STREET
LOS ANGELES, CA 90012

**CREDITOR / POC ADDRESS**
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

**CREDITOR / POC ADDRESS**
INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**CREDITOR**
JOANNE RUSSELL
C/O KARI L. LEY, ATTORNEY AT
LAW
264 CLOVIS AVENUE, SUITE 208
CLOVIS, CA 93612

**CREDITOR**
JOANNE RUSSELL
2380 LIVE OAK ROAD
PASO ROBLES, CA 93446-9693

**CREDITOR**
RABBIT RIDGE WINE SALES, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
179 NIBLICK RD, #406
PASO ROBLES, CA 93446-9693

**INTERESTED PARTY**
LEROY CODDING
13217 JAMBOREE RD #429
TUSTIN, CA 92782

**INTERESTED PARTY**
STEVEN L JONES, JR.
179 NIBLICK ROAD, SUITE 326
PASO ROBLES, CA 93446-4845

**INTERESTED PARTY**
HUMANITY WINE COMPANY LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
2814 COTTAGE LANE
PASO ROBLES, CA 93446

**INTERESTED PARTY**
ANY AND ALL UNKNOWN
OCCUPANTS OF 2380 LIVE OAK
ROAD
2380 LIVE OAK ROAD
PASO ROBLES, CA 93446

**INTERESTED PARTY**
MILLER DRILLING COMPANY, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
329 NORTH MAIN STREET
TEMPLETON, CA 93465

**INTERESTED PARTY**
CAROL J. DAHL
3151 NW 44TH AVE, LOT 179
OCALA, FL 34482-7832

**INTERESTED PARTY**
ROBERT G. PIERCE, III
820 S BETHEL ROAD
TEMPLETON, CA 93465-4013

**INTERESTED PARTY & BROKER**
BILL TOLAR
VINO TINTO CONSULTING
1172 SAN MARCOS ROAD
PASO ROBLES, CA 93446

**INTERESTED PARTY**
MY FAVORITE NEIGHBOR, LLC
C/O C T CORPORATION SYSTEM,
AGENT FOR SERVICE OF PROCESS
330 N BRAND BLVD STE 700
GLENDALE, CA 91203

**INTERESTED PARTY**
MY FAVORITE NEIGHBOR, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
2644 ANDERSON ROAD
PASO ROBLES, CA 93446

**INTERESTED PARTY**
MY FAVORITE NEIGHBOR, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
207 HIGH POINT DRIVE, BLDG 100
VICTOR, NY 14564

**INTERESTED PARTY**
MY FAVORITE NEIGHBOR, LLC
C/O ERIC JENSEN, MANAGING
MEMBER
2640 ANDERSEN ROAD
PASO ROBLES, CA 93446

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**INTERESTED PARTY**
CORBETT VINEYARDS LLC
C/O JOHN A. RONCA, JR.
755 SANTA ROSA ST., SUITE 310
SAN LUIS OBISPO, CA 93401

**INTERESTED PARTY**
CORBETT VINEYARDS LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
2195 CORBETT CANYON RD
ARROYO GRANDE, CA 93420

**INTERESTED PARTY**
CENTER OF EFFORT
NATHAN R CARLSON, GENERAL
MANAGER
2195 CORBETT CANYON ROAD
ARROYO GRANDE, CA 93420

**INTERESTED PARTY**
CATHARTES AURA LLC
C/O CHRISTIAN TIETJE, AGENT
FOR SERVICE OF PROCESS
3310 RAMADA DRIVE, SUITE B
PASO ROBLES, CA 93446

**INTERESTED PARTY**
O'NEILL VINTNERS & DISTILLERS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
101 LARKSPUR LANDING CIRCLE,
SUITE 350
LARKSPUR, CA 94939

**INTERESTED PARTY**
JAM CELLARS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
1460 FIRST STREET
NAPA, CA 94559

**INTERESTED PARTY**
JAM CELLARS, INC.
C/O NICHOLAS E DONOVAN,
AGENT FOR SERVICE OF
PROCESS
1000 MAIN STREET, SUITE 300
NAPA, CA 94559

**INTERESTED PARTY**
JAM CELLARS, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
1300 FIRST STREET, SUITE 468
NAPA, CA 94559

**INTERESTED PARTY**
JAM CELLARS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
PO BOX 120
NAPA, CA 94559

**INTERESTED PARTY**
BRADY VINEYARD
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
2489 HARVEST MEADOW PLACE
PASO ROBLES, CA 93446

**INTERESTED PARTY**
SYCAMORE RANCH VINEYARD &
WINERY, LLC
C/O RICHARD KRUMWIEDE, AGENT
FOR SERVICE OF PROCESS
174 N DART CANYON RD
CRESTLINE, CA 92325

**INTERESTED PARTY**
SYCAMORE RANCH VINEYARD &
WINERY, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
PO BOX 1479
CRESTLINE, CA 92325

**INTERESTED PARTY**
PALI WINE COMPANY, L.P.
C/O TIMOTHY B PERR, AGENT
FOR SERVICE OF PROCESS
881 ALMA REAL DRIVE, STE 205
PACIFIC PALISADES, CA 90272

**INTERESTED PARTY**
PALI WINE COMPANY, L.P.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
401 WILSHIRE BLVD, STE 300
SANTA MONICA, CA 90401

**INTERESTED PARTY**
RIBOLI FAMILY WINES
C/O SANTO J RIBOLI, AGENT FOR
SERVICE OF PROCESS
737 LAMAR STREET
LOS ANGELES, CA 90031

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**INTERESTED PARTY**
WARROOM CELLARS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
22985 EL CAMINO REAL
SANTA MARGARITA, CA 93453

**INTERESTED PARTY**
WARROOM VENTURES, LLC
C/O COLE STEVENS, AGENT FOR
SERVICE OF PROCESS
694 SANTA ROSA
SAN LUIS OBISPO, CA 93401

**INTERESTED PARTY**
NICORA WINES
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
2945 LIMESTONE WAY
PASO ROBLES, CA 93446

**INTERESTED PARTY**
NICORA WINES
C/O THOMAS J MADDEN, AGENT
FOR SERVICE OF PROCESS
1948 SPRING ST
PASO ROBLES, CA 93446

**INTERESTED PARTY**
GRAVEYARD VINEYARDS
C/O PAULA CAMPBELL-TAYLOR,
AGENT FOR SERVICE OF PROCESS
6990 ESTRELLA ROAD
SAN MIGUEL, CA 93451

**INTERESTED PARTY**
DAOU VINEYARDS, LLC
C/O ROY E. OGDEN, AGENT FOR
SERVICE OF PROCESS
656 SANTA ROSA STREET, STE 2B
SAN LUIS OBISPO, CA 93401

**INTERESTED PARTY**
DAOU FAMILY ESTATES, LLC
ATTN: DANIEL J. DAOU
2777 HIDDEN MOUNTAIN ROAD
PASO ROBLES, CA 93446

**INTERESTED PARTY**
NAKEDWINES.COM
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
136 GASSER DRIVE, SUITE A
NAPA, CA 94559

**INTERESTED PARTY**
RANGELAND WINES
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
6996 PEACHY CANYON ROAD
PASO ROBLES, CA 93446

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                            **F 9013-3.1.PROOF.SERVICE**