1  KRISTINE A. THAGARD, #94401
   kthagard@marshackhays.com
2  TINHO MANG, #322146
   tmang@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   RICHARD A. MARSHACK
7

8              UNITED STATES BANKRUPTCY COURT

9         CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10 | In re                          | Case No. 8:20-bk-13014-ES
11 | NORTHERN HOLDING, LLC,         | Chapter 7
12 | Debtor.                        | **EXHIBIT A TO:**
13 |                                | FINDINGS OF FACT AND
14 |                                | CONCLUSIONS OF LAW RE: ORDER
   |                                | GRANTING CHAPTER 7 TRUSTEE'S
15 |                                | MOTION FOR ORDER (1)
   |                                | AUTHORIZING SALE OF REAL
16 |                                | PROPERTY LOCATED AT 2380 LIVE
   |                                | OAK ROAD, PASO ROBLES, CA: (A)
17 |                                | OUTSIDE THE ORDINARY COURSE OF
   |                                | BUSINESS; (B) FREE AND CLEAR OF
18 |                                | LIENS, CLAIMS, AND
   |                                | ENCUMBRANCES; (C) SUBJECT TO
19 |                                | OVERBID; (D) FOR DETERMINATION
   |                                | OF GOOD FAITH PURCHASER UNDER
20 |                                | 11 U.S.C. §363(M); AND (2)
   |                                | AUTHORIZING AMENDMENT TO
21 |                                | PURCHASE AND SALE AGREEMENT

22                                  Date:      February 9, 2022[1]
                                    Time:      2:00 p.m.
23                                  Ctrm:      6C
                                    Location:  United States Bankruptcy Court
24                                             411 West Fourth Street
                                               Santa Ana, CA 92701-4593
25

26

27 ──────────────────────
   [1] Hearing Date specially set with permission.
28

                              1
         EXHIBIT A TO FINDINGS OF FACT AND CONCLUSIONS OF LAW
   4833-0726-0118,v.1

# EXHIBIT A

Execution Copy

# AGREEMENT OF PURCHASE AND SALE

# AND ESCROW INSTRUCTIONS

## Among

## Richard A. Marshack, as Chapter 7 Trustee for the Estate of Northern Holding, LLC,

## Debtor

## And

## Riboli Paso Robles, LLC as Buyer

## Dated for reference purposes only: September ⚖, 2021

4818-3374-2076,v.2

## TABLE OF CONTENTS

**Page**

Article I PURCHASE AND SALE OF PROPERTY .....................................................................1

    1.1    Sale of the Property.....................................................................................................1

    1.2    Defined Terms .............................................................................................................2

    1.3    Conventions .................................................................................................................2

Article II PURCHASE PRICE.......................................................................................................3

    2.1    Purchase Price .............................................................................................................3

    2.2    Payment of Purchase Price..........................................................................................3

    2.3    Form of Payments .......................................................................................................4

    2.4    Treatment of Deposit, Closing Payment and Allocation of Purchase Price ...........4

Article III BUYER'S DUE DILIGENCE.......................................................................................4

    3.1    Due Diligence Materials .............................................................................................4

    3.2    Indemnity for Access to Real Property ......................................................................5

    3.3    Right to Terminate. .....................................................................................................5

    3.4    Natural Hazard Disclosure Requirement Compliance ...........................................6

    3.5    Statutory Disclosure Requirements.......................**Error! Bookmark not defined.**

    3.6    "AS-IS .........................................................................................................................7

    3.7    Buyer's Acknowledgment ..........................................................................................8

    3.8    Tangible Personal Property.......................................................................................10

    3.9    Intangibles.................................................................................................................10

    3.10    Buyer's Obligations ................................................................................................10

    3.11    Buyer's Pre-Closing Inspection .............................................................................10

Article IV TITLE ........................................................................................................................10

4818-3374-2076,v.2

**EXHIBIT A, PAGE 3**

| | | |
|---|---|---|
| 4.1 | Preliminary Title Report | 10 |
| 4.2 | Approval/Disapproval of Title | 10 |
| 4.3 | Condition of Title | 11 |
| 4.4 | Title Policy | 11 |
| 4.5 | Partial Release by Lender. | 12 |

Article V OPENING AND CLOSING OF ESCROW .................................................12

| | | |
|---|---|---|
| 5.1 | Establishment of Escrow | 12 |
| 5.2 | Opening of Escrow | 12 |
| 5.3 | Form Escrow Instructions | 12 |
| 5.4 | Closing Date | 12 |

Article VI CONSUMMATION OF SALE AND CONDITIONS TO CLOSING .........................13

| | | |
|---|---|---|
| 6.1 | Documents and Funds Delivered into Escrow or by Escrow Holder | 13 |
| 6.2 | Conditions to Close | 14 |
| 6.3 | Recordation and Transfer | 15 |
| 6.4 | Bankruptcy Court Approval | 16 |
| 6.5 | Lender Carve-out. | 18 |
| 6.6 | Termination Rights | 18 |

Article VII PRORATIONS AND COSTS .................................................18

| | | |
|---|---|---|
| 7.1 | Taxes and Assessments | 18 |
| 7.2 | Utilities | 19 |
| 7.3 | Service Contracts | 19 |
| 7.4 | Insurance | 19 |
| 7.5 | Other Income and Expenses | 19 |
| 7.6 | Closing Costs | 19 |

Article VIII REPRESENTATIONS OF SELLER .................................................20

4818-3374-2076,v.2

EXHIBIT A, PAGE 4

8.1     Execution and Delivery.............................................................................20

8.2     Legal and Binding Obligation...................................................................20

8.3     Not Foreign Person. ....................................................................................20

8.4     Anti-Terrorism ............................................................................................20

8.5     Survival ........................................................................................................21

Article IX REPRESENTATIONS OF BUYER ...................................................21

9.1     Execution and Delivery..............................................................................21

9.2     Legal and Binding Obligation...................................................................21

9.3     No Breach .....................................................................................................21

9.4     No Insolvency ...............................................................................................21

9.5     Litigation ......................................................................................................21

9.6     Financial Capability ...................................................................................22

9.7     Anti-Terrorism ............................................................................................22

Article X [INTENTIONALLY OMITTED].........................................................22

Article XI CONDEMNATION AND DESTRUCTION ......................................22

11.1    Condemnation .............................................................................................22

11.2    Damage or Destruction ..............................................................................23

11.3    Termination .................................................................................................24

Article XII COMMISSIONS ..................................................................................24

Article XIII REMEDIES..........................................................................................25

13.1    Seller's Remedy ...........................................................................................25

13.2    Buyer's Remedy ..........................................................................................25

Article XIV JURISDICTION; JURY WAIVER; AND JUDICIAL REFERENCE ....................26

14.1    Governing Law, Jurisdiction, Venue .......................................................26

14.2    Jury Waiver .................................................................................................26

4818-3374-2076,v.2

Article XV GENERAL PROVISIONS ........................................................................26

15.1    Notices ............................................................................................................26

15.2    Notices may be either: (a) delivered by hand; (b) delivered by a nationally recognized overnight courier which maintains evidence of receipt; or (c) sent by e mail or facsimile transmission with a confirmation. Notices shall be effective on the date of receipt. ...................................................................28

15.3    Assignment .....................................................................................................28

15.4    Attorneys' Fees and Legal Expenses .............................................................28

15.5    No Buyer Contingencies. ...............................................................................28

15.6    Reporting of Foreign Investment ...................................................................29

15.7    Time Calculations ..........................................................................................29

15.8    Entire Agreement ...........................................................................................29

15.9    Amendments ...................................................................................................29

15.10   Severability ....................................................................................................29

15.11   Further Assurances .........................................................................................29

15.12   Counterpart Execution ...................................................................................29

15.13   Electronic Signatures .....................................................................................29

15.14   Gender and Number ........................................................................................30

15.15   Section Headings ............................................................................................30

15.16   Exhibits and Schedules Incorporated by Reference ........................................30

15.17   Trustee's Capacity and Liability ....................................................................30

SCHEDULE 1.1.6 .............................................................................................................1

SCHEDULE 3.6 .................................................................................................................1

EXHIBIT A .......................................................................................................................1

**EXHIBIT B** .......................................................................................................................1

FORM OF GRANT DEED ................................................................................................2

4818-3374-2076,v.2

EXHIBIT A, PAGE 6

**Attachment 1** ...................................................................................................................5

**EXHIBIT C**.......................................................................................................................1

FORM OF BILL OF SALE .........................................................................................1

BILL OF SALE............................................................................................................2

**EXHIBIT D**.......................................................................................................................1

ASSGINMENT AGREEMENT ....................................................................................2

5

EXHIBIT A, PAGE 7

## AGREEMENT OF PURCHASE AND SALE
## AND ESCROW INSTRUCTIONS

THIS AGREEMENT OF PURCHASE AND SALE AND ESCROW INSTRUCTIONS (this "***Agreement***"), dated for reference purposes only September __ , 2021, is made, executed and entered into by and among **Richard A. Marshack, as Chapter 7 Trustee ("*Trustee*") for the Estate of Northern Holding, LLC ("*Estate*",)** bankruptcy case number No. 8:20-bk-13014-MW ("Bankruptcy Case") currently pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("***Bankruptcy Court***"), as the seller (the "***Seller***"), and **Riboli Paso Robles, LLC**, a California limited liability company, as the buyer (the "***Buyer***"). Seller and Buyer are sometimes referred to individually as a "***Party***" and collectively as the "***Parties***."

## ARTICLE I
## PURCHASE AND SALE OF PROPERTY

1.1     Sale of the Property. For the consideration hereinafter set forth and subject to and upon the terms, covenants and conditions of this Agreement, Seller hereby agrees to sell to Buyer, and Buyer hereby agrees to purchase from Seller, the following:

1.1.1    Fee simple title to those certain parcels of land located in the unincorporated area of the County of San Luis Obispo, State of California (the "***Land***"): (a) consisting of approximately 160+/- acres; (b) commonly known by the street address of 2380 Live Oak Road, Paso Robles, CA, on which is situated an approximately 7500+/- House; (c) identified by Assessor's Parcel Number 026-342-039; and (d) legally described on Exhibit A to this Agreement.

1.1.2    All buildings, structures and other improvements located on the Land and owned by Seller (collectively, the "***Improvements***"). The Improvements include but are not limited to: an approximately 7500+/- House.

1.1.3    All right, title and interest of Seller if any, and without any Seller's warranty, in and to any privileges, easements and appurtenances relating to the Land and Improvements, including all easements, rights-of-way, rights to utility connections and hook-ups, and other appurtenances used or connected with the beneficial use or enjoyment of the Land and Improvements, including (i) access to a public way, and (ii) rights to any land lying in the bed of any street, alley, road or avenue opened or proposed, appurtenant to, abutting, or adjoining the Land, to the center line thereof (collectively, the "***Appurtenances***").

1.1.4    Unless specifically provided for in the Bill of Sale, no right, title and interest of Seller, if any, in any Tangible Personal Property, defined below, is included with the sale of the Land or Improvements. If any Tangible Personal Property is included in the Bill of Sale, it is without any Seller's warranty. Tangible Personal Property is defined as machinery, fixtures and equipment located on the Land or in the Improvements that are: (a) owned by Seller; (b) attached to the Land or the Improvements as of both the Execution Date and Closing Date (as hereinafter defined) under this Agreement; and (c) used in connection with the operation, ownership,

1

RAM

EXHIBIT A, PAGE 8

maintenance, management, occupancy or improvement of the Land and Improvements (collectively, the "***Tangible Personal Property***").

1.1.5    Unless specifically provided for in the Intangible Assignment, no right, title and interest of Seller, if any, in any Intangible Property, defined below, is included with the sale of the Land or Improvements. If any Intangible Property is included in the Intangible Assignment, it is without any Seller's warranty. Intangible Property is defined as personal property used in connection with the ownership of the Land and Improvements, owned by Seller both as of the Execution Date and Closing Date (as hereinafter defined) under this Agreement including: (a) all existing permits, licenses, and any City, County, State, Federal, or other approvals for the Land and the Improvements, whether issued or applied for in the name of Seller or any prior owner of the Land and Improvements or any agent thereof; and (b) all assignable warranties and guaranties (express or implied), issued to Seller in connection with the Improvements and/or Tangible Personal Property, all of which are collectively referenced as the "***Intangible Property***".

1.1.6    Unless specifically provided for Schedule 1.1.6 no rights and interests of Seller or any obligations of Seller in any service agreements and amendments, exhibits, addenda and riders thereto pertaining to the operation, maintenance or management of the Land, Improvements, Appurtenances, and Tangible Personal Property are included in the sale of Property (collectively, the "***Service Contracts***").

1.1.7    The Land, Improvements and Appurtenances are hereinafter sometimes collectively referred to as the "***Real Property***." The Real Property, and included Tangible Personal Property, Intangible Property, and Service Contracts, if any, are hereinafter sometimes collectively referred to as the "***Property***."

1.2    <u>Defined Terms</u>. For purposes of this Agreement, the following terms shall have the meanings set forth below<u>:</u>

"***Business Day***" means any calendar day other than those days listed in California Civil Code section 7.1.

"***Execution Date***" means the date on which this Agreement is executed by Seller and Buyer and delivered to the Escrow Holder.

"***Related Entities***" collectively means with respect to each Party, the members, directors, officers, management, partners, employees, attorneys, consultants, representatives and agents of that Party.

1.3    <u>Conventions</u>. This Agreement incorporates the following conventions:

1.3.1    The words "***include***", "***includes***" and "***including***" will be deemed and construed to be immediately followed by the words "***without limitation***".

4818-3374-2076,v.2

EXHIBIT A, PAGE 9

1.3.2    The words "*will*", "*shall*" and "*must*" refer to a mandatory act or obligation, unless the context in which the word is used logically prohibits the application of this convention.

1.3.3    The word "*person*" includes humans, trusts, estates, receiverships, corporations, limited liability companies, partnerships, joint ventures, agencies, labor unions, and federal, state, county or municipal governmental authorities and agencies of competent jurisdiction.

1.3.4    The word "*Dollars*" and the symbol "*$*" refer to United States Dollars.

1.3.5    Words or phrases denoting the singular will include the plural, those denoting the plural will include the singular, and those denoting gender will include all genders unless applying this convention would be contrary to the obvious intent of this Agreement.

1.3.6    Unless otherwise expressly stated, all references to "*days*" will mean calendar days, and all references to "*years*" will mean calendar years.

## ARTICLE II
## PURCHASE PRICE

2.1    <u>Purchase Price</u>. The purchase price for the Property shall be NINE MILLION ONE HUNDRED THOUSAND DOLLARS ($9,100,000.00) (the "*Purchase Price*") to be paid as follows: (a) a TWO HUNDRED SEVENTY THREE THOUSAND DOLLARS ($273,000.00) deposit referenced in <u>Section 2.2.1</u>, and (b) an EIGHT MILLION EIGHT-HUNDRED TWENTY-SEVEN THOUSAND DOLLARS ($8,827,000) Closing Payment referenced in <u>Section 2.2.2</u>.

2.2    <u>Payment of Purchase Price</u>. The Purchase Price shall be paid by Buyer as follows:

2.2.1    <u>Deposit</u>. TWO HUNDRED SEVENTY THREE THOUSAND DOLLARS ($273,000.00) (the "*Deposit*"), shall be deposited by Buyer with Trustee no later than 5:00 p.m., Pacific time, on the third Business day following the Execution Date. If Buyer does not terminate, and is not otherwise deemed to have terminated this Agreement prior to 5:00 p.m., Pacific time on the last day of the period beginning with the Execution Date and ending five business days after Buyer receives the last report of the Water Inspection (the "*Due Diligence Period*"), the Deposit shall be non-refundable, unless Seller defaults or as otherwise provided in this Agreement.

2.2.2    <u>Balance of Purchase Price</u>. The balance of the Purchase Price (the "*Closing Payment*"), shall be deposited by Buyer with Escrow Holder no later than 12:00 noon, Pacific time, one (1) Business Day prior to the Closing Date or no later than 12:00 noon, Pacific time on the Closing Date, if permitted by Escrow Holder . The Closing Payment shall be subject to adjustment for any prorations required pursuant to Article VII.

4818-3374-2076,v.2

2.3    <u>Form of Payments</u>. The Deposit shall be made by check payable to Richard A. Marshack, Chapter 7 Trustee, and the Closing Payment shall be made by wire transfer of immediately available funds to Escrow Holder.

2.4    <u>Treatment of Deposit, Closing Payment and Allocation of Purchase Price</u>.

2.4.1    In the event that the Closing (as hereinafter defined) occurs pursuant to this Agreement, the Deposit and the Closing Payment shall be credited against the Purchase Price as provided in this Agreement.

2.4.2    Notwithstanding any provision herein to the contrary, in the event of any termination of this Agreement for any reason, in addition to any other amounts Seller is entitled to receive pursuant to this Agreement, Seller shall be entitled to receive a portion of the Deposit in the amount of ONE HUNDRED DOLLARS ($100.00) (the "***Independent Consideration***"), which amount Seller and Buyer agree has been bargained for as consideration for Seller's execution and delivery of this Agreement.

## ARTICLE III
## BUYER'S DUE DILIGENCE

3.1    <u>Due Diligence Materials</u>. Seller has or will provide Buyer access to a virtual data room containing copies of financial statements, appraisals, tax map, water well and vineyard information as all of the preceding relate to the Property and which are in Seller' possession (collectively, the "***Due Diligence Materials***"). Buyer acknowledges that Seller makes no representation or warranty regarding the truth, accuracy or completeness of any Due Diligence Materials received by Buyer from Seller. In the event this Agreement is terminated prior to the Closing Date, Buyer shall return all Due Diligence Materials, if any exist and have been provided to Buyer. Test Drilling (water). Buyer has requested, that it be allowed to perform drilling on the Real Property to determine the available water ("Drilling"). In order to perform the Drilling, it is necessary that Trustee apply for and be issued permits for the Drilling. Upon execution of this Agreement, Seller shall sign any documents necessary for the issuance of the permits for the Drilling, and Buyer shall immediately cause the permit application to be filed and pay the cost of the application for the Permits to the appropriate agency. Seller shall also file, within seven business (7) days of the execution of this Agreement, a motion with the Court to authorize the Drilling. Subject to Bankruptcy Court approval, and a deposit into Trustee's trust account of the amount for the Drilling, issuance of permits, and all other costs and expenses associated with the Drilling, Seller will allow and assist Buyer with the Drilling. The contractor performing the Drilling shall name Seller and Trustee as additional insureds on its general liability insurance policy prior to the commencement of the Drilling. The Drilling, and the reports generated from the Drilling, shall be referred to as the Water Inspection. Without regard to any other provision of this Agreement, the Water Inspection is an express contingency of Buyer's obligation to perform and close on the sale provided for in this Agreement. Buyer shall provide Seller copies of all reports from the Drilling and Water Inspection. If the Water Inspection and report(s) issued with respect to the Drilling are unacceptable to Buyer for any reason in Buyer's sole discretion, Buyer may unilaterally terminate this Agreement at which time the entirety of the Deposit shall immediately be returned to Buyer, less the Independent

4818-3374-2076,v.2

*RAM*

EXHIBIT A, PAGE 11

Consideration. Buyer shall not be obligated to commence the physical drilling until Seller and Lender have entered into the carve-out agreement provided for in section 6.5 below.

3.2    <u>Indemnity for Access to Real Property</u>. Buyer agrees to indemnify, defend and hold harmless Seller from any and all losses, damages, costs, liabilities and expenses, including attorneys' fees, disbursements and court costs reasonably and actually incurred by Seller, due to any act or omission of Buyer or its representatives, employees, contractors, subcontractors and agents ("***Buyer's Representatives***") during any of their entries on the Real Property either prior to or after the execution of this Agreement (expressly excluding any matters which are merely discovered by reason of Buyer's inspections). Buyer covenants and agrees, at its sole cost and expense, to protect, defend, indemnify, release and hold harmless Seller from and against any and all Losses (defined below) imposed upon or incurred by or asserted against Seller, including but on limited to, those relating to the Water Inspection and Drilling, and directly or indirectly arising out of or in any way relating to its entries on the Real Property, including, but not limited to, any one or more of the following: (a) any inspection or testing of the Real Property, including, but not limited to, the Drilling and Water Inspection; (b) the imposition, recording or filing or the threatened imposition, recording or filing of any lien encumbering any of the Property due to any activity by Buyer or Buyer's Representatives; (c) any administrative processes or proceedings or judicial proceedings arising out Buyer's inspection or testing of the Real Property; and (d ) any personal injury, wrongful death or damage to the Real Property, any personal property or any surrounding properties from any activity by Buyer or Buyer's Representatives. The foregoing indemnity by Buyer shall survive either (i) the Closing Date and shall not be deemed merged into the provisions of any Closing Documents, or (ii) any termination of this Agreement.

The term "***Losses***" includes any losses, damages, costs, fees, expenses, claims, suits, judgments, awards, liabilities (including but not limited to strict liabilities), obligations, debts, repair costs, diminutions in value, fines, penalties, charges, costs of Remediation (whether or not performed voluntarily), amounts paid in settlement, foreseeable and unforeseeable consequential damages, litigation costs, attorneys' fees, engineers' fees, environmental consultants' fees, and investigation costs by reason of damage caused by the Buyer which is not remedied by Buyer. Buyer shall also be responsible for taking whatever actions are necessary after the Drilling, including capping the test wells.

3.3    <u>Right to Terminate</u>. If Buyer is dissatisfied, in Buyer's sole and absolute discretion, with the results of any of Buyer's tests, inspections, studies, reviews of documents or the like relating to the Property or if Buyer otherwise decides in its sole and absolute discretion for any reason or no reason not to proceed under this Agreement, Buyer shall have the right to terminate this Agreement by delivering written notice to Seller and Escrow Holder (the "***Termination Notice***") on or before the expiration of the Due Diligence Period which shall be five business days after Buyer receives the last report(s) of the Water Inspection, in which event this Agreement and the Escrow created pursuant hereto shall be deemed cancelled, the Deposit, less the Independent Consideration, and any other portion of the Purchase Price which has been delivered to Trustee or Escrow Holder shall be returned to Buyer, and neither party shall have any further rights or obligations hereunder, except for any rights or obligations set forth in the provisions of this Agreement which specifically provide that they survive such termination. If Buyer has elected not to terminate this Agreement on or

4818-3374-2076,v.2

before the expiration of the Due Diligence Period pursuant to this Section, Buyer acknowledges and agrees that Buyer shall deliver a written notice to Seller and Escrow Holder (the "***Notice to Proceed***") indicating that Buyer wishes to proceed with the transaction. Buyer's failure to deliver a Notice to Proceed or Termination Notice to Seller and Escrow Holder on or before the expiration of the Due Diligence Period shall be deemed to be Buyer's election to proceed with the transaction. Buyer agrees to destroy or return promptly all the Due Diligence Materials to Seller following a termination of this Agreement, and such obligation shall survive any termination of this Agreement.

 3.4 <u>Natural Hazard Disclosure Requirement Compliance</u>. Buyer and Seller acknowledge that Seller is required to disclose if the Property lies within the following natural hazard areas or zones: (1) a special flood hazard area designated by the Federal Emergency Management Agency (Cal. Civ. Code § 1102.17); (2) an area of potential flooding (Cal. Gov. Code § 8589.4); (3) a very high fire hazard severity zone (Cal. Gov. Code § 51183.5); (4) a wild land area that may contain substantial forest fire risks and hazards (Pub. Resources Code § 4136); (5) an earthquake fault zone (Pub. Resources Code § 2621.9); (6) a seismic hazard zone (Pub. Resources Code § 2694), or (7) airport in vicinity (Cal. Civ. Code § 1103.4) . Seller agrees that Seller will employ the services of a company ("***NHDS Provider***"), and hereby instructs Escrow Holder to retain an NHDS Provider, to examine the maps and other information specifically made available to the public by government agencies for the purpose of enabling Seller to fulfill its disclosure obligations with respect to the natural hazards referred to in California Civil Code § 1102.6c(a) and to report the result of its examination, in writing, to Buyer and Seller using substantially the form of the "NATURAL HAZARD DISCLOSURE STATEMENT" set forth in California Civil Code § 1102.6c(b). The written report prepared by NHDS Provider regarding the results of its examination fully and completely discharges Seller from its disclosure obligations referred to herein, and, for the purpose of this Agreement, the provisions of Civil Code § 1102.4 regarding the non-liability of each of Seller for errors or omissions not within in its personal knowledge shall be deemed to apply and NHDS Provider shall be deemed to be an expert, dealing with matters within the scope of its expertise with respect to the examination and written report regarding the natural hazards referred to above. Buyer's approval of the Natural Hazard Disclosure Statement is an express condition of Buyer's obligation to perform under this Agreement.

 3.5 <u>Statutory Disclosure Requirements</u>. Buyer and Seller acknowledge that Seller, as the Seller of 1-4 residential units, is required to comply with certain statutory disclosure requirements, which will be prepared by Seller's Brokers, including: Agency Disclosure and Confirmation (Cal. Civ. Code §§ 2079.13 et seq.), Brokers Statutory Duty to Inspect Property (Cal. Civ. Code §§ 2079 et seq.), Common Interest Development Documents (if applicable) (Cal. Civ. Code §§ 4525, 4528,4530 and 4202), Flood Disaster Insurance Requirements (42 U.S.C. §5154a); Gas and Hazardous Liquid Transmission Pipeline Notice (Cal. Civ. Code § 2079.10.5.), Groundwater Basin Comprehensive Notice (if received) (Cal. Code of Civil Procedure § 836(f).), Lead-Based Paint Pamphlet and Form (if property built before 1987) (42 U.S.C.S. § 4852d; 40 CFR Part 745.), Megan's Law Disclosure (Registered Sex Offender Database)( Cal. Civ. Code § 2079.10a); Methlab Clean Up Order (Cal.Health & Safety Code § 25400.28 (disclosure); §§ 25400.11(q) and (r)), Smoke Detectors Compliance (Cal. Health & Safety Code §§ 13113.7, 13113.8, 18029.6), Water Conserving Fixture

4818-3374-2076,v.2

*Rm*

EXHIBIT A, PAGE 13

compliance/Disclosure (applies only to property built on or before January 1, 1994) (Cal. Civ. Code §§ 1101.4(b) (c), 1101.5(a) (d) (e), 1102.055.), Water Hearing Bracing Statement of Compliance (Cal. Health & Safety Code §§ 19211, 18031.7;25 Cal. Code Regs. §4102.). Buyer acknowledges that Seller is relying on third parties in the preparation of these document and Seller has no independent knowledge, nor is he an expert. If any of the items are of concern to Buyer, Buyer shall make its own independent investigation.

3.5    "AS-IS." BUYER DOES HEREBY ACKNOWLEDGE AND AGREE THAT BUYER IS PURCHASING THE PROPERTY IN AN "AS-IS, WHERE IS, WITH ALL FAULTS" CONDITION AS OF THE CLOSE OF ESCROW. EXCEPT AS SET FORTH IN THIS AGREEMENT, SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES REGARDING THE PROPERTY; AND BY THE CLOSE OF ESCROW, BUYER SHALL HAVE UNDERTAKEN ALL SUCH INSPECTIONS AND EXAMINATIONS IN CONNECTION WITH THE PROPERTY AS BUYER DEEMS NECESSARY OR APPROPRIATE UNDER THE CIRCUMSTANCES (INCLUDING THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE PROPERTY, THE AVAILABILITY OF WATER, THE ZONING OF THE PROPERTY, THE PROPERTY'S COMPLIANCE WITH APPLICABLE LAWS, THE CONDITION OF ANY IMPROVEMENTS ON THE PROPERTY, AND THE AVAILABILITY OR LACK THEREOF OF ENTITLEMENTS FOR THE DEVELOPMENT AND USE OF THE PROPERTY), AND THAT BASED UPON THE SAME, BUYER IS AND WILL BE RELYING STRICTLY AND SOLELY UPON SUCH INSPECTIONS AND EXAMINATIONS AND THE ADVICE OF ITS AGENTS, CONSULTANTS, CONTRACTORS, VENDORS AND REPRESENTATIVES. EXCEPT AS SET FORTH IN THIS AGREEMENT, NEITHER SELLER NOR ANY REPRESENTATIVE, MEMBER, AGENT, EMPLOYEE, PROPERTY MANAGER, BROKER, PRINCIPAL, PARTNER, AFFILIATE OR CONSULTANT OF SELLER IS MAKING OR HAS MADE ANY WARRANTY OR REPRESENTATION (EITHER EXPRESS OR IMPLIED) WITH RESPECT TO ALL OR ANY PART OF THE PROPERTY AS AN INDUCEMENT TO BUYER TO ENTER INTO THIS AGREEMENT AND THEREAFTER TO PURCHASE THE PROPERTY OR FOR ANY OTHER PURPOSE. BUYER HEREBY EXPRESSLY DISCLAIMS (ON BEHALF OF ITSELF AND ANY PARTY AFFILIATED WITH OR RELATED TO BUYER) ANY AND ALL SELLER REPRESENTATIONS AND WARRANTIES (EITHER EXPRESS OR IMPLIED), EXCEPT TO THE EXTENT EXPRESSLY PROVIDED FOR IN THIS AGREEMENT. BY REASON OF ALL OF THE FOREGOING, BUYER SHALL ASSUME THE FULL RISK OF ANY LOSS OR DAMAGE OCCASIONED BY ANY FACT, CIRCUMSTANCE, CONDITION, OR DEFECT IN CONNECTION WITH THE PROPERTY AND THE CONSUMMATION OF THE CLOSING SHALL CONCLUSIVELY EVIDENCE AND CONSTITUTE BUYER'S RELEASE OF SELLER FROM ALL LOSS, DAMAGE AND LIABILITY FOR CLAIMS THAT MAY ARISE AFTER THE CLOSING WITH RESPECT TO ACTS OR OMISSIONS THAT OCCURRED, OR CONDITIONS THAT EXISTED, AT OR PRIOR TO THE CLOSING. WITHOUT LIMITING THE FOREGOING, BUYER SPECIFICALLY RELEASES SELLER AND SELLER'S AFFILIATES FROM ANY CLAIMS BUYER MAY HAVE AGAINST SELLER AND/OR SELLER'S AFFILIATES NOW OR IN THE FUTURE ARISING FROM THE ENVIRONMENTAL CONDITION OF THE PROPERTY OR THE PRESENCE OF HAZARDOUS SUBSTANCES OR CONTAMINATION ON OR

7

EMANATING FROM THE PROPERTY. THE FOREGOING WAIVERS AND
RELEASES BY BUYER SHALL SURVIVE EITHER (I) THE CLOSING DATE AND
SHALL NOT BE DEEMED MERGED INTO THE PROVISIONS OF ANY CLOSING
DOCUMENTS, OR (II) ANY TERMINATION OF THIS AGREEMENT.

California Civil Code section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

By initialing this section, Buyer acknowledges that it has read, is familiar with, and waives the
provisions of California Civil Code section 1542 set forth above, and agrees to all of the
provisions of this Section.

_____        *(Please see next page for initials)*
Seller's Initials                              Buyer's Initials

    3.6    <u>Buyer's Acknowledgment</u>. Without in any way limiting the generality of the
provisions of <u>Section 3.7</u>, in entering into this Agreement and purchasing the Property, Buyer
hereby acknowledges and agrees that Seller has not made, does not hereby make and will not
hereafter make any representations or warranties, whether express or implied, with respect to
the Property, except as set forth in Article VIII, or the physical condition thereof, including:

    A.    THE SIZE, INCLUDING THE SQUARE FOOTAGE OF THE LAND
AND IMPROVEMENTS, QUALITY, NATURE, ADEQUACY AND PHYSICAL
CONDITION OF THE PROPERTY.

    B.    THE QUALITY, NATURE, ADEQUACY AND PHYSICAL
CONDITION OF SOILS, GEOLOGY AND GROUNDWATER.

    C.    THE EXISTENCE, QUALITY, NATURE, ADEQUACY AND
PHYSICAL CONDITION OF UTILITIES SERVICING THE PROPERTY.

    D.    THE DEVELOPMENT POTENTIAL OF THE PROPERTY, AND THE
PROPERTY'S USE, HABITABILITY, MERCHANTABILITY, FITNESS, SUITABILITY,
VALUE OR ADEQUACY FOR ANY PARTICULAR PURPOSE, OR THE ABILITY TO
CHANGE THE USE OF THE PROPERTY.

    E.    THE ZONING OR OTHER LEGAL STATUS OF THE PROPERTY OR
ANY OTHER PUBLIC OR PRIVATE RESTRICTIONS ON USE OF THE PROPERTY.

    F.    THE COMPLIANCE OF THE PROPERTY OR ITS OPERATION WITH
ANY APPLICABLE CODES AND LAWS OR WITH THE RESTRICTIONS OF ANY

4818-3374-2076,v.2

EMANATING FROM THE PROPERTY. THE FOREGOING WAIVERS AND RELEASES BY BUYER SHALL SURVIVE EITHER (I) THE CLOSING DATE AND SHALL NOT BE DEEMED MERGED INTO THE PROVISIONS OF ANY CLOSING DOCUMENTS, OR (II) ANY TERMINATION OF THIS AGREEMENT.

California Civil Code section 1542 provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

By initialing this section, Buyer acknowledges that it has read, is familiar with, and waives the provisions of California Civil Code section 1542 set forth above, and agrees to all of the provisions of this Section.

*(Please see previous page for initials)* _____

Seller's Initials          Buyer's Initials

3.6    Buyer's Acknowledgment. Without in any way limiting the generality of the provisions of Section 3.7, in entering into this Agreement and purchasing the Property, Buyer hereby acknowledges and agrees that Seller has not made, does not hereby make and will not hereafter make any representations or warranties, whether express or implied, with respect to the Property, except as set forth in Article VIII, or the physical condition thereof, including:

A.    THE SIZE, INCLUDING THE SQUARE FOOTAGE OF THE LAND AND IMPROVEMENTS, QUALITY, NATURE, ADEQUACY AND PHYSICAL CONDITION OF THE PROPERTY.

B.    THE QUALITY, NATURE, ADEQUACY AND PHYSICAL CONDITION OF SOILS, GEOLOGY AND GROUNDWATER.

C.    THE EXISTENCE, QUALITY, NATURE, ADEQUACY AND PHYSICAL CONDITION OF UTILITIES SERVICING THE PROPERTY.

D.    THE DEVELOPMENT POTENTIAL OF THE PROPERTY, AND THE PROPERTY'S USE, HABITABILITY, MERCHANTABILITY, FITNESS, SUITABILITY, VALUE OR ADEQUACY FOR ANY PARTICULAR PURPOSE, OR THE ABILITY TO CHANGE THE USE OF THE PROPERTY.

E.    THE ZONING OR OTHER LEGAL STATUS OF THE PROPERTY OR ANY OTHER PUBLIC OR PRIVATE RESTRICTIONS ON USE OF THE PROPERTY.

F.    THE COMPLIANCE OF THE PROPERTY OR ITS OPERATION WITH ANY APPLICABLE CODES AND LAWS OR WITH THE RESTRICTIONS OF ANY

4818-3374-2076,v.2

EXHIBIT A, PAGE 16

GOVERNMENTAL OR QUASIGOVERNMENTAL ENTITY OR OF ANY OTHER PERSON OR ENTITY.

G.       THE PRESENCE OF HAZARDOUS MATERIAL(S) ON, UNDER, IN OR ABOUT THE PROPERTY OR THE ADJOINING OR NEIGHBORING PROPERTIES OR THE EXISTENCE OF ANY UNDERGROUND TANKS, CONTAINERS OR CONDUITS ON, UNDER, IN OR ABOUT THE PROPERTY. THE TERMS "*HAZARDOUS MATERIAL*" AND "*HAZARDOUS MATERIALS*" SHALL MEAN AND REFER TO (I) ASBESTOS, RADON, UREA-FORMALDEHYDE, POLYCHLORINATED BIPHENYLS ("*PCBS*"), OR SUBSTANCES CONTAINING PCBS, NUCLEAR FUEL OR MATERIALS, RADIOACTIVE MATERIALS, EXPLOSIVES, KNOWN CARCINOGENS, PETROLEUM PRODUCTS AND BYPRODUCTS, AND ANY SUBSTANCE DEFINED AS HAZARDOUS OR TOXIC OR AS A CONTAMINANT OR POLLUTANT IN, OR THE RELEASE OR DISPOSAL OF WHICH IS REGULATED BY ANY ENVIRONMENTAL LAW; AND (II) FUNGI, BACTERIA, OTHER MICROORGANISMS AND MICROBIAL SUBSTANCES THAT ARE PRESENT AT LEVELS REGULATED BY ENVIRONMENTAL LAW OR THAT MAY BE HARMFUL TO HUMAN HEALTH AND SAFETY. THE TERM "*ENVIRONMENTAL LAW*" SHALL MEAN AND REFER TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980 ("*CERCLA*"), 42 U.S.C. §9601, ET SEQ.; THE FEDERAL RESOURCE CONSERVATION AND RECOVERY ACT OF 1976 ("*RCRA*"), 42 U.S.C. §6901, ET SEQ.; THE FEDERAL WATER POLLUTION CONTROL ACT, 33 U.S.C. §1251, ET SEQ.; THE CLEAN AIR ACT, 42 U.S.C. §7401, ET SEQ.; THE OCCUPATIONAL SAFETY AND HEALTH ACT, 29 U.S.C. § 651 ET SEQ.; ALL AS THE SAME MAY BE FROM TIME TO TIME AMENDED, AND ANY OTHER FEDERAL, STATE, COUNTY, MUNICIPAL, LOCAL OR OTHER STATUTE, LAW, ORDINANCE OR REGULATION WHICH RELATES TO OR DEALS WITH HUMAN HEALTH OR THE ENVIRONMENT, INCLUDING ALL REGULATIONS PROMULGATED BY A REGULATORY BODY PURSUANT TO ANY SUCH STATUTE, LAW, ORDINANCE OR REGULATION.

H.       ACCESS RIGHTS TO AND FROM THE PROPERTY.

I.       THE CONDITION OF TITLE OF THE PROPERTY.

J.       THE ECONOMICS OF THE OPERATION OF THE PROPERTY.

K.       THE QUALITY OF ANY LABOR AND MATERIALS USED IN ANY IMPROVEMENTS ON THE PROPERTY.

L.       CURRENT OR PAST LITIGATION CONCERNING THE PROPERTY AND ITS EFFECT ON THE PROPERTY.

M.       CURRENT OR PAST ALLEGED CODE VIOLATIONS.

Buyer further acknowledges that it has had access to documents in a data room maintained by Hilco Real Estate ("*Hilco*") and Onyx Asset Advisors, LLC ("*Onyx*"), a list of which is set forth in Schedule 3.6. Buyer also acknowledges that the Property is being sold

9

EXHIBIT A, PAGE 17

pursuant to fully noticed motion, subject to overbid, pursuant to 11 U.S.C. § 363, to be filed in the Bankruptcy Court.

     3.7   <u>Tangible Personal Property</u>. Seller makes no representation or warranty regarding any Tangible Personal Property on the Land, including any mobile home or storage shed. Specifically, Seller does not represent or warrant whether the Tangible Personal Property was installed with permits or correct licenses, or whether it is currently licensed or permitted. Buyer shall be solely responsible for the transfer of any title relating to the Tangible Personal Property to its name. In the event the Tangible Personal Property is unpermitted, not to code, or not properly licensed and any entity requires its removal from the Land after Closing, Buyer shall be solely responsible for the costs of removal.

     3.8   <u>Intangibles</u>. Seller makes no representation or warranty regarding the validity or existence of existing permits, licenses, and any City, County, State, Federal, or other approvals for the Land and the Improvements, whether issued or applied for in the name of Seller or any prior owner of the Land and Improvements or any agent thereof. Buyer shall be responsible for the transfer to its name of all Intangibles, if any, as of the Closing Date.

     The provisions of <u>Sections 3.7, 3.8, 3.9 and 3.10</u> shall survive the Closing Date.

     3.9   <u>Buyer's Obligations</u>. Buyer further acknowledges that it is responsible for providing the applicable governmental entities with any documentation and information for the transfer of the permits, if any, for the operation of the Property.

     3.10   <u>Buyer's Pre-Closing Inspection</u>. Buyer shall have the right to verify that the residence and any other structure on the property is vacant ten (10) days before Closing. Seller shall provide Buyer with evidence that the current occupant of the residence has been permanently removed from the Property ten (10) days before Closing.

**ARTICLE IV**
**<u>TITLE</u>**

     4.1   <u>Preliminary Title Report</u>. Seller has caused or will cause to be delivered to Buyer from Fidelity National Title Company ("***Title Company***"), a current preliminary title report pertaining to the Real Property containing such exceptions as the Title Company would specify in a ALTA Standard Owner Policy form of owner's policy of title insurance (the "***ALTA Form***") with links to legible copies of all documents relating to the title exceptions and other matters referred to in such preliminary title reports (collectively, the "***Preliminary Title Reports***").

     4.2   <u>Approval/Disapproval of Title</u>. Buyer shall have until on or prior to the expiration of the Due Diligence Period to notify Seller in writing of Buyer's approval or disapproval of any matters that are disclosed in the Preliminary Title Reports or would be disclosed by diligent inspection of the Property. In the event the Title Company issues any supplements to the Preliminary Title Reports after the expiration of the Due Diligence Period, Buyer shall have five (5) Business Days following delivery of the supplement to approve or disapprove in writing any exception contained therein not caused or created by

10

Buyer and not disclosed in the Preliminary Title Reports or prior supplement thereto. If Buyer fails to disapprove an exception in writing within the time period specified above, the exception or matter shall be deemed to be approved by Buyer. If Buyer disapproves an exception or matter as permitted above, Seller shall have the right, but is not obligated, within five (5) Business Days after receipt of Buyer's written disapproval to inform Buyer whether or not Seller will cause the disapproved exception(s) or matter(s) to be removed or will cause the Title Company to bond, insure or endorse over such disapproved exception or matter in a manner acceptable to Buyer, in Buyer's sole and absolute discretion, on or before the Closing Date. If Seller does not so inform Buyer that Seller will cause the removal of the disapproved exception(s) or matter(s) or to cause the Title Company to bond, insure or endorse over such disapproved exception or matters, Buyer shall have the right to terminate this Agreement in writing, on or prior to the expiration of the Due Diligence Period, or in the case of a supplement to the Preliminary Title Reports issued after the Due Diligence Period, five (5) Business Days after delivery of the supplement to the Preliminary Title Reports, and, in the absence of such termination Buyer shall be deemed to have waived its disapproval of the disapproved exception(s) or matter(s) that Seller has not agreed to remove. All matters shown in the Preliminary Title Reports or any supplement thereto, which matters are not disapproved by Buyer or as to which Buyer is deemed to have waived its disapproval, together with such additional matters as Buyer may approve, and all matters that would be disclosed by diligent inspection or survey of the Property, shall be considered to be "***Permitted Exceptions***." Notwithstanding the foregoing, on or prior to the Closing, Seller shall cause all monetary liens (other than nondelinquent property taxes and assessments prorated as of the Closing) to be removed from any title insurance policies issued pursuant to this Agreement. If Buyer timely disapproves a title matter, and Seller does not cause the disapproved matter to be timely removed, then Buyer's sole remedy shall be the return of the Deposit, less the Independent Consideration, together with any interest earned or accrued thereon which shall also be returned to Buyer.

4.3    <u>Condition of Title</u>. The Real Property shall be conveyed by Seller to Buyer on the Closing Date free and clear of all liens, encumbrances and easements, excepting only the following (collectively, the "***Permitted Encumbrances***"):

4.3.1    The Permitted Exceptions.

4.3.2    Current real estate taxes and assessments that are a lien not yet payable.

4.4    <u>Title Policy</u>.

4.4.1    Buyer, in its sole and absolute discretion, may make one or both of the following elections (collectively, the "***Title Elections***") with respect to the Owner's Title Policy: (a) upgrade the ALTA Form to an ALTA form of owner's extended policy of title insurance (the "***ALTA Extended***"); and (b) obtain such title endorsements to the Owner's Title Policy as Buyer may require or desire; provided that (i) the satisfaction of any of the Title Elections shall not be a condition of the Closing and shall not delay or postpone the Closing, (ii) Buyer shall bear any and all additional costs of any Title Elections, (iii) in the event that the Title Company requires an ALTA Survey as a condition to the issuance of an ALTA Extended or the performance of the other Title

4818-3374-2076,v.2

Elections, Buyer shall be responsible for providing such ALTA Survey at its sole cost. Buyer shall confirm that its Title Election are available from the Title Company during the Due Diligence Period.

4.4.2    At Closing, Seller shall cause the Title Company to issue to Buyer an Owner's Title Policy covering the Real Property. The term "Owner's ***Title Policy***" means (i) a ALTA Form or (ii) an ALTA Extended, if Buyer has made a Title Election pursuant to Section 4.4.1(a) and has satisfied the conditions of Section 4.4.1. The Owner's Title Policy shall: (a) be issued by the Title Company in an amount equal to the amount of the Purchase Price set forth in Section 2.1; and (b) show title to the Real Property vested in Buyer, subject only to the Permitted Encumbrances.

4.5    Partial Release by Lender. As a condition of this transaction, Farm Credit West, FLCA ("Lender"), must approve this sale and agree to and record partial releases of the Real Property from that certain deed of trust to secure and original indebtedness of $17,500,000 recorded March 23, 2007 as Instrument No. 2007-005727, that certain notice of advance recorded February 6, 2009 as Instrument No. 2009-005727, that certain deed of trust to secure an original indebtedness of $300,000 recorded February 26, 2010 as Instrument No. 2010-011915, and that certain notice of advance in the amount of $650,000 recorded December 28, 2010 as Instrument No. 2010-066312.

## ARTICLE V
## OPENING AND CLOSING OF ESCROW

5.1    Establishment of Escrow. An escrow for the purpose of facilitating the consummation of the purchase and sale of the Property pursuant to this Agreement (the "***Escrow***") shall be established at A & A Escrow Services, Inc, 415 N. Crescent Drive, Suite 320, 415 N. Crescent Drive, Suite 320 Beverly Hills, CA 90210, Antonia Delgado, escrow agent (the "***Escrow Holder***").

5.2    Opening of Escrow. Escrow shall be deemed to have opened on the date of the receipt by Escrow Holder of: (a) the original or counterparts of this Agreement, duly executed by Seller and Buyer.; and (b) confirmation from Trustee he has received the Deposit from Buyer ("***Opening of Escrow***").

5.3    Form Escrow Instructions. This Agreement shall constitute escrow instructions among Seller and Buyer for the Escrow. Seller and Buyer agree to execute such additional documents that may be required by Escrow Holder attendant to this Agreement and the purchase and sale herein contemplated. In the event of any conflict between the form escrow instructions and this Agreement, the terms and conditions of this Agreement shall control and govern.

5.4    Closing Date. Unless earlier terminated by a Party pursuant to a specific right of termination expressly set forth in this Agreement, the consummation of the purchase and sale of the Property pursuant to this Agreement (the "***Closing***") shall occur on the first Business Day to occur three (3) calendar days following the date upon which the Sale Order has become a final order (the "***Closing Date***"). Notwithstanding the above, the Parties may

4818-3374-2076,v.2



EXHIBIT A, PAGE 20

mutually agree to a sooner Closing Date so long as there is no stay of the Sale Order pending appeal.

5.5    Outside Closing Date. Provided Lender supports this sale, if the Closing does not occur by December 31, 2021, then either Party may terminate this Agreement and cancel the Escrow, so long as the terminating Party is not in material breach of any of its representations, warranties, covenants or agreements contained in this Agreement. For the avoidance of doubt if Buyer is not in material breach of this agreement and Seller is unable or unwilling to close on or prior to December 31, 2021, the Deposit, less the Independent Consideration, and any other portion of the Purchase Price which has been delivered to Escrow Holder shall be returned to Buyer, and neither party shall have any further rights or obligations hereunder. If the Lender does not support this sale, the Buyer acknowledges that Lender has the right to foreclose after December 1, 2021.

### ARTICLE VI
### CONSUMMATION OF SALE AND CONDITIONS TO CLOSING

6.1    Documents and Funds Delivered into Escrow or by Escrow Holder. The following shall be delivered into the Escrow in connection with the purchase and sale of the Property:

6.1.1    No later than 12:00 noon, Pacific time, one (1) Business Day prior to the Closing Date, Seller shall deposit into Escrow:

(a)    One (1) original of a grant deed to the Real Property (the "***Grant Deed***"), duly executed by Seller and notarized in the form set forth in Exhibit B to this Agreement.

(b)    One (1) original of a Bill of Sale (the "***Bill of Sale***"), duly executed by Seller, in the form set forth in Exhibit C to this Agreement, by which Seller transfers to Buyer all right, title and interest of Seller in and to the Tangible Personal Property, if any, and without any warranty by Seller.

(c)    Two (2) originals of an Assignment Agreement (the "***Intangible Assignment***") in the form set forth in Exhibit D to this Agreement, duly executed in counterpart by Seller, by which Seller assigns to Buyer all of Seller's interest, if any, and without any Seller's warranty in and rights to the: (i) Intangible Property and (ii) Service Contracts, if any

(d)    Two (2) originals of a written certification from Seller which satisfies the requirements of section 1445 of the Internal Revenue Code, as amended (the "***1445 Certificate***"), duly executed by Seller, in a form acceptable to Buyer and the Title Company.

(e)    Two (2) originals of a Withholding Exemption Certificate (Form 593) from the State of California ("***Form 593***"), duly executed by Seller.

4818-3374-2076,v.2



EXHIBIT A, PAGE 21

(f)      One (1) certified Sale Order (as defined below).

(g)      An approved closing statement prepared by Escrow setting forth the economic terms of the Closing in accordance herewith (the "***Closing Statement***"). The Closing Statement shall set forth the prorations and adjustments to the Purchase Price respecting the Property to be made pursuant to this Agreement and all other amounts to be charged to the Seller or paid out of the Escrow, executed by Seller. The Closing Statement shall include a holdback by Escrow of anticipated supplemental taxes due from the transfer of the property to Debtor in October 2020, if any.

(i)      Such other instruments and documents as may be reasonably required by the Title Company or governmental entities as a condition to its delivery of the Owner's Title Policy.

6.1.2    No later than 12:00 noon, Pacific time, one (1) Business Day prior to the Closing Date (other than the Closing Payment which shall be deposited with Escrow Holder not later than the time and date set forth in Section 2.2.2), Buyer shall deposit into Escrow:

(a)      Two (2) originals of the Intangible Assignment, duly executed in counterpart by Buyer.

(b)      One (1) original of a Preliminary Change of Ownership Report for the Real Property, which satisfies the requirements of California Revenue and Taxation Code section 480.3, fully completed and executed by Buyer (the "***Ownership Change Report***").

(c)      The Closing Payment required under Section 2.2.2, as adjusted by the prorations, costs and other items credited for or chargeable to Buyer pursuant to Article VII.

(d)      Such other instruments and documents as may be reasonably required by the Title Company as a condition to its delivery of the Owner's Title Policy.

6.2    <u>Conditions to Close</u>.

6.2.1    The Closing shall not occur unless and until the following conditions have been satisfied or waived in writing by Buyer:

(a)      All documents described in Section 6.1.1 have been delivered by Seller to Escrow.

(b)      All representations and warranties of Seller under Article VIII are true and correct as of the Closing.

14

**EXHIBIT A, PAGE 22**

(c)    Seller has complied with all of its obligations under this Agreement.

(d)    The Title Company is in a position to issue to the Owner's Title Policy.

(e)    Buyer confirms the residence is vacant.

6.2.2    The Closing shall not occur unless and until the following conditions have been satisfied or waived in writing by Seller:

(a)    All documents and funds described in Section 6.1.2 have been delivered by Buyer to Escrow.

(b)    All representations and warranties of Buyer under Article IX are true and correct as of the Closing.

(c)    Buyer has complied with all of its obligations under this Agreement.

6.2.3    Seller and Buyer mutually acknowledge and agree that whenever in this Agreement there are conditions to Closing which are provided for the benefit of a Party to this Agreement, that Party shall have the right, at any time during the Escrow Period (as hereinafter defined), to waive such conditions and the benefits conferred thereby and proceed to Closing without such conditions having been satisfied.

6.3    Recordation and Transfer. Upon satisfaction or waiver of all of the conditions set forth in Section 6.2, Escrow Holder shall transfer the Property as follows:

6.3.1    Cause the following documents (collectively, the "***Recordable Documents***") to be recorded in the official records of San Luis Obispo, California (the "***Official Records***"): the Sale Order and Grant Deed.

6.3.2    Cause the following documents to be delivered to the San Luis Obispo County Recorder: (a) the Statement of Transfer Tax and (b) the Ownership Change Report.

6.3.3    Cause the Form 593 to be filed with the California Franchise Board.

6.3.4    Deliver to Buyer: (a) one (1) fully executed original of the Bill of Sale and 1445 Certificate; (b) one (1) fully executed counterpart original of the Intangible Assignment; (c) one (1) conformed copy of the recorded Recordable Documents and the Ownership Change Report.

6.3.5    Deliver to Seller: (a) one (1) conformed copy of the Recordable Documents; and (b) one (1) fully executed counterpart original of the Intangible Assignment.

15

EXHIBIT A, PAGE 23

6.3.6    Deliver to the Parties entitled thereto any other Closing documents.

6.3.7    Disburse all funds deposited with Escrow Holder by Buyer in the following manner:

(a)    Compute the amount of all costs and prorations chargeable to Seller and Buyer pursuant to Article VII.

(b)    Deliver to Seller, pursuant to written instructions to be delivered by Seller to Escrow Holder, an amount equal to the Purchase Price, less the costs and prorations which are chargeable to the account of Seller pursuant to Article VII. Deduct the amounts of all costs and prorations which are chargeable to the account of Buyer as calculated under Section 6.3.7(a).

(c)    Disburse the remaining balance of the funds deposited by Buyer, if any, to Buyer promptly upon the Closing pursuant to written instructions to be delivered by Buyer to Escrow Holder.

6.4    Bankruptcy Court Approval. This Agreement and the sale of the Property are subject to Bankruptcy Court approval. Buyer acknowledges that the sale to Buyer may be subject to overbid.

6.4.1    Sale Motion. Within 14 calendar days of the granting of the Bid Procedures Motion below, Seller shall file a motion for approval under 11 U.S.C. Section 363(b) and (f) ("Sale Motion").

(a)    The Sale Motion shall seek a final order ("Sale Order") approving the sale and all of the substantive terms and conditions contained in this Agreement and containing a finding that the Buyer is a good faith purchaser as provided in the Bankruptcy Code. The Sale Order shall also contain findings that (i) the sale of the Property was properly noticed to creditors under Sections 101(1)(A) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, and 6004; (ii) the sale was free of collusion and was negotiated at arm's length (iii) the requirements of Section 363(m) have been met and Buyer has acted in good faith; and (iv) the sale price of the Property to Buyer was reasonable, fair and as much or more than the Property's fair market value; The Sale Order shall not be submitted to the Court for approval and signing until it has been approved by Buyer. If Buyer does not approve the proposed Sale Order by the later of (i) two (2) days after the sale hearing or (ii) two (2) days after it is provided to Buyer with all material provisions (except the final price and identity of overbidders, if any) Buyer shall have the right to file objections with the Court.

(b)    The Sale Order approving the transaction shall provide the Property is being transferred to Buyer free and clear of all claims, liens and encumbrances, including claims against the Debtor and Erich L. Russel, and Robert G. Pierce, III, except as expressly provided in this Agreement.

(c)    The Sale Order approving the transaction shall authorize the

4818-3374-2076,v.2

EXHIBIT A, PAGE 24

payment of the customary costs of sale from escrow, including those costs and expenses described in Articles VII and XII of this Agreement.

6.4.2    <u>Bid Procedures Motion</u>. A Bid Procedures Motion shall be filed within seven business days of the signing of this Agreement. In the Bid Procedures Motion, the Seller shall request the following terms and overbid procedures:

(a)    If there are no overbids, Seller will recommend and request the approval of the sale to Buyer upon the terms and conditions contained in this Agreement.

(b)    In order to overbid, any prospective bidder shall be required to establish to the satisfaction of Seller its financial ability to successfully consummate the transaction. This shall include as conditions of eligibility to bid a non-refundable deposit equal to three (3%) of the Buyer's purchase offer, evidence of availability of cash to close, and the execution of a form of Purchase Agreement substantially the same as this Agreement. The only changes to it should be the bid price, the identity of the bidder and provision made for compliance with these Bidding Procedures.

(c)    If the Court conducts an auction of the Property, the initial minimum overbid shall FIFTY THOUSAND DOLLARS ($50,000.00) higher than Buyer's agreed Purchase Price plus the Breakup Fee, defined below, and thereafter will go up in TWENTY-FIVE THOUSAND DOLLAR ($25,000.00) increments.

(d)    If Buyer is not the successful bidder at the auction due to an overbid ("***Overbid***"), Buyer shall be entitled to receive the amount of its Due Diligence costs (not to exceed ONE HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($175,000.00) plus a break-up fee of TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS ($225,000.00) (collectively "Breakup Fee").

(e)    The Buyer's right to a Breakup Fee is contingent on: (i) Buyer being a ready, willing and able buyer for the Property at the time the Bankruptcy Court conducts the last hearing on the sale of the Property; (ii) Buyer has completed Buyer's Due Diligence, waived in writing all contingencies and confirmed in writing that all approval periods have expired; and (iii) Buyer is overbid and the successful bidder in fact purchases the Property for the sum it bids at the hearing

(f)    Buyer shall provide its Due Diligence costs, with backup documentation, to Trustee within five (5) days after the expiration of the Due Diligence Period. The Breakup Fee shall be paid within seven (7) business days of the close of the Property with the successful bidder

(g)    If there is an overbid of at least NINE MILLION FIVE HUNDRED FIFTY THOUSAND DOLLARS ($9,550,000.00) and Buyer is the successful bidder, Buyer shall be entitled to a credit to the overbid purchase price

17

in the amount of the Breakup Fee. If Buyer is not the successful bidder, Buyer agrees that its last bid shall serve as a back-up bid. The Deposit, less the Independent Consideration shall be returned to Buyer within seven (7) business days of the close of the Property with the successful bidder.

6.4.3    Trustee's Discretion. Trustee, as to two or more qualified bidders shall, in his sole discretion determine the "best bid."

6.5    Lender Carve-out. This Agreement and the sale of the Property are conditioned on Trustee and Estate entering into an acceptable carve-out agreement with Lender.

6.6    Termination Rights. To the extent that liens, claims, co-owners, encumbrances, or any other matter make the sale of the Property infeasible or unprofitable to the Estate, Seller, at his option, may terminate the Agreement. In such case, the Buyer and Escrow Holder agree to fully and completely release the Seller from any and all obligations under the Agreement and escrow shall be cancelled. Upon such cancellation, Buyer's Deposit, less the Independent Consideration shall be returned to Buyer. Seller and Buyer agree to promptly execute any documents reasonably requested by the other party or Escrow Holder to evidence the termination of this Agreement and the cancellation of Escrow and the return of the Deposit to Buyer.

# ARTICLE VII
## PRORATIONS AND COSTS

7.1    Taxes and Assessments. Real estate taxes and assessments relating to the Property shall be allocated and prorated between Seller and Buyer as follows:

7.1.1    General real estate taxes for the then-current fiscal year relating to the Property shall be prorated as of the Closing Date with each party to pay the taxes attributable to the time it owns the Property. If the Closing shall occur before the actual taxes for the then-current fiscal year are known, the apportionment of taxes shall be upon the basis of taxes for the immediately preceding fiscal year; provided that, if the taxes for the current year are thereafter determined to be more or less than the taxes for the preceding year (after any appeal of the assessed valuation thereof is concluded), Seller and Buyer promptly shall adjust the proration of such taxes and Seller or Buyer, as the case may be, shall pay to the other any amount required as a result of such adjustment. All special taxes or assessments related to the Property shall be prorated as of the Closing Date. All taxes or assessments relating to the Property arising out of a change in the use of the Property by Buyer after the Closing or a change in ownership after the Closing shall be allocated to and paid by Buyer. All refunds of general real estate taxes for the pre-Closing portion of the current fiscal year or any prior fiscal year shall belong to Seller and Buyer shall pay to Seller any such amounts received by Buyer.

7.1.2    Any supplemental real estate taxes or assessments against the Property, which are levied after the Closing but which are applicable to the period of time prior to the Closing (collectively, the "**Supplemental Taxes**"), will remain the responsibility of Seller on and after the Closing. Escrow shall hold back an amount of the estimated

18

supplemental taxes which may be owed by Seller, if any, and Escrow will reimburse Buyer for the amount of the Supplemental Taxes within thirty (30) calendar days after Escrow's receipt of Buyer's written demand therefore accompanied by the appropriate tax bill for the Supplemental Taxes. Seller shall have the right to reasonably review and approve any such Supplemental Taxes, and in the event Seller disapproves same, Seller may dispute all or any portion of such Supplemental Taxes, at Seller's sole cost and expense, with the appropriate taxing authority, provided that Seller's dispute of the Supplemental Taxes will have no adverse impact upon the Property, shall be at no cost to Buyer, and shall not require an unreasonable resource or time commitment on the part of Buyer. Any amount of the escrow holdback for estimated supplemental taxes not reimbursed to Buyer, will be paid to Seller.

7.2    Utilities.

7.2.1    Seller shall be responsible for all charges and/or amounts due to utilities related to the Property prior to the Closing Date. Outstanding charges for utilities to the Property which are provided by utility providers pursuant to accounts established in the name of Seller related to services provided on or after the Closing Date shall be paid by Buyer. Buyer shall promptly pay all utility bills for such utility services provided on or after the Closing Date.

7.2.2    Seller shall not assign to Buyer any deposits which Seller has with any of the utility services or companies servicing the Property. Buyer shall arrange with such services and companies to have accounts opened in Buyer's name beginning at 12:01 a.m. on the Closing Date.

7.3    Service Contracts. All fees paid or payable by Seller under any Service Contracts which are being transferred with the Property shall be prorated as of the Closing Date.

7.4    Insurance. Buyer shall obtain its own insurance coverage covering the Property as of the Closing.

7.5    Other Income and Expenses. All other customarily prorated items of expense or receipt shall be prorated between the Parties hereto as of the Closing in the customary manner. Except with respect to items prorated at the Closing, Seller shall be responsible for payment of any and all bills or charges incurred on or prior to the Closing for work, services, supplies or materials with respect to the Property, and Buyer shall be responsible for the payment of any and all bills or charges incurred after the Closing for work, services, supplies or materials with respect to the Property.

7.6    Closing Costs.

7.6.1    Documentary transfer taxes and local transfer or conveyance taxes shall be paid by Seller. Any escrow fee charged by the Escrow Holder shall be paid one-half (1/2) by Seller and one-half (1/2) by Buyer. Buyer shall pay the fee for the recording of the Grant Deed. Each Party shall be responsible for the payment of its own attorneys' fees incurred in connection with the transaction which is the subject of this Agreement.

4818-3374-2076,v.2

EXHIBIT A, PAGE 27

7.6.2   Seller shall pay toward the cost of the Owner's Title Policy an amount equal to the cost of the ALTA Form covering the amount of the Purchase Price. In the event that Buyer makes a Title Election to have an ALTA Extended issued at Closing in lieu of a ALTA Form and/or desires to increase the coverage to an amount in excess of the Purchase Price, Buyer shall pay the incremental cost to obtain an ALTA Extended and/or such excess coverage. In the event that Buyer makes a Title Election to have title endorsements issued by the Title Company for the Owner's Title Policy, Buyer shall also pay the cost of any title insurance endorsements requested by Buyer.

## ARTICLE VIII
## REPRESENTATIONS OF SELLER

Seller represents to Buyer that:

8.1   Execution and Delivery. The execution and delivery by Seller of, and Seller's performance under, this Agreement are subject to the approval of the Bankruptcy Court. As provided for in this Agreement, Seller will file the Sale Motion. Subject to the approval of the Bankruptcy Court of the Sale Order and as otherwise provided for in this Agreement, the execution and delivery by Seller of, and Seller's performance under, this Agreement are within Seller's powers and have been duly authorized by all requisite action, and the Person executing this Agreement on behalf of Seller has the authority to do so.

8.2   Legal and Binding Obligation. Subject to the approval of the Bankruptcy Court of the Sale Order and satisfaction or waiver of Seller's condition set forth in Section 6.2.2(d) hereof, this Agreement constitutes the legal, valid and binding obligation of Seller enforceable in accordance with its terms.

8.3   Not Foreign Person. Seller is a Chapter 7 Debtor under the United States Bankruptcy Code and not a "foreign person" within the meaning of section 1445 of the Internal Revenue Code of 1986 (i.e., Seller is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate, as those terms are defined in the Internal Revenue Code and regulations promulgated thereunder).

8.4   Anti-Terrorism. Seller is not in violation of any anti-terrorism law and Seller is not, as of the date hereof: (a) conducting any business or engaging in any transaction or dealing with any prohibited person, including the making or receiving of any contribution of funds, goods or services to or for the benefit of any prohibited person; (b) dealing in, or otherwise engaging in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224; or (c) engaging in or conspiring to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in, any anti-terrorism law. Neither Seller nor any of its officers, directors, shareholders or members, as applicable, is a prohibited person. As used herein, "anti-terrorism law" is defined as any law relating to terrorism, anti-terrorism, money-laundering or anti-money laundering activities, including, the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986, Executive Order No. 13224, and Title 3 of the USA Patriot Act, and any regulations promulgated under any of them. As used herein "Executive Order No. 13224" is defined as Executive Order

20

No. 13224 on Terrorist Financing effective September 24, 2001, and relating to "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism," as may be amended from time to time. "***Prohibited Person***" is defined as (i) a person or entity that is listed in the Annex to Executive Order No. 13224, or a person or entity owned or controlled by an entity that is listed in the Annex to Executive Order No. 13224; (ii) a person or entity with whom Buyer is prohibited from dealing or otherwise engaging in any transaction by any anti-terrorism law; or (iii) a person or entity that is named as a "specially designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control at its official website, http://www.treas.gov/ofac/t11sdn.pdf or at any replacement website or other official publication of such list. "USA Patriot Act" is defined as the "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001" (Public Law 107 56), as may be amended from time to time.

8.5    Survival. Seller acknowledges that Buyer is relying upon the foregoing Seller warranties, representations, and covenants in reaching its decision to enter into this Agreement to acquire the Property. The foregoing warranties, representations, and covenants will be deemed made on the Execution Date of this Agreement and again on the Closing Date and will survive the Closing and the passage of title for a period of one (1) year.

**ARTICLE IX**
**REPRESENTATIONS OF BUYER**

Buyer represents to Seller that:

9.1    Execution and Delivery. The execution and delivery by Buyer of, and Buyer's performance under, this Agreement are within Buyer's powers and have been duly authorized by all requisite action, and the Person executing this Agreement on behalf of Buyer has the authority to do so.

9.2    Legal and Binding Obligation. This Agreement constitutes the legal, valid and binding obligation of Buyer enforceable in accordance with its terms.

9.3    No Breach. Performance of this Agreement will not result in any breach of, or constitute any default under, any agreement or other instrument to which Buyer is a Party or by which Buyer might be bound.

9.4    No Insolvency. Buyer: (a) is not in receivership or dissolution; (b) has not made any assignment for the benefit of creditors; (c) has not admitted in writing its inability to pay its debts as they mature; (d) has not been adjudicated a bankrupt; (e) has not filed a petition in voluntary bankruptcy, a petition or answer seeking reorganization, or an arrangement with creditors under the Federal Bankruptcy Law or any similar law or statute of the United States and any state; and (f) does not have any such petition described in clause (e) filed against Buyer.

9.5    Litigation. There is no adverse claim, litigation or administrative proceeding or investigation pending or, to Buyer's actual knowledge, threatened, that does or will affect

21



EXHIBIT A, PAGE 29

the Buyer or the Buyer's ability to consummate the purchase of the Property as contemplated herein.

9.6    <u>Financial Capability</u>. Buyer is capable of performing its financial obligations set forth in this Agreement.

9.7    <u>Anti-Terrorism</u>. Buyer is not in violation of any anti-terrorism law and Buyer is not, as of the date hereof: (a) conducting any business or engaging in any transaction or dealing with any prohibited person, including the making or receiving of any contribution of funds, goods or services to or for the benefit of any prohibited person; (b) dealing in, or otherwise engaging in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224; or (c) engaging in or conspiring to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in, any anti-terrorism law. Neither Buyer nor any of its officers, directors, shareholders or members, as applicable, is a Prohibited Person. As used herein, "anti-terrorism law" is defined as any law relating to terrorism, anti-terrorism, money-laundering or anti-money laundering activities, including the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986, Executive Order No. 13224, and Title 3 of the USA Patriot Act, and any regulations promulgated under any of them. As used herein "Executive Order No. 13224" is defined as Executive Order No. 13224 on Terrorist Financing effective September 24, 2001, and relating to "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism," as may be amended from time to time.

### ARTICLE X
### [INTENTIONALLY OMITTED]

### ARTICLE XI
### CONDEMNATION AND DESTRUCTION

11.1    <u>Condemnation</u>.

11.1.1  In the event that any proceedings for the condemnation of the Property or any portion thereof are instituted by any Applicable Agency prior to Closing, then promptly upon a Party obtaining knowledge of the institution of the proceedings, that Party will notify the other Party in writing (the "***Condemnation Information Notice***") of the pendency of such proceedings.

11.1.2  If there is a total taking of the Property prior to Closing, this Agreement shall terminate pursuant to <u>Section 11.3</u> upon delivery of the Condemnation Information Notice.

11.1.3  If prior to Closing there is a partial taking of or the threatened partial taking of the Property pursuant to a resolution of intention to condemn by a Condemning Authority (as hereinafter defined), that would materially affect the use or development of the Property in the judgment of Buyer, then Buyer may elect to terminate this Agreement by written notice to Seller and Escrow Holder no later than fifteen (15) calendar days

4818-3374-2076,v.2



following the delivery of the Condemnation Information Notice (the "***Condemnation Termination Notice***"). If the Buyer fails to deliver the Condemnation Termination Notice to Seller and Escrow Holder within such fifteen (15)-day period, Buyer shall be deemed to have waived its right to terminate this Agreement pursuant to this <u>Section 11.1.3</u>.

11.1.4  Unless this Agreement is terminated pursuant to <u>Section 11.1.3</u> or another provision of this Agreement, then notwithstanding a partial taking of or the threatened partial taking of the Property pursuant to a resolution of intention to condemn by a Condemning Authority prior to Closing, Buyer shall consummate the purchase of the Property at Closing, but with the right to receive upon Closing the entire amount of the award paid by the Condemning Authority as a result of such partial taking of the Property.

11.1.5  As used in this Article: (a) the terms "condemnation," "condemn" or "taking" shall mean the exercise of, or intent to exercise, the power of eminent domain, expressed in writing, as well as the filing of any action or proceeding for such purpose, by a Condemning Authority, and shall include a voluntary sale by Seller to any such Condemning Authority, either under the threat of condemnation or while condemnation proceedings are pending; and (b) the term "Condemning Authority" means an Applicable Authority with the right or power of eminent domain. A condemnation shall be deemed to occur in point of time upon the actual physical taking of possession pursuant to the exercise of said power of eminent domain.

11.2    <u>Damage or Destruction</u>.

11.2.1  In the event that, prior to the Closing Date, the Property is damaged in whole or in part by fire or other casualty, Seller shall promptly notify Buyer in writing of such event (the "***Damage Information Notice***"). Subject to the provisions of <u>Section 11.2.2</u>, all risk or loss concerning the Property prior to the Closing shall be borne by Seller and all risk of loss concerning the Property subsequent to the Closing shall be borne by Buyer.

11.2.2  In the event that prior to the Closing Date the Property is damaged in whole or in part by fire or other casualty for which the Estate has insurance coverage, the following procedures shall apply:

(a)    A licensed contractor mutually acceptable to the Parties shall estimate in writing the cost of repairing the damage to the Property (the "***Estimate***").

(b)    If the Estimate to repair the damage to the Real Property is less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) (the "***Damage Repair Threshold***"), this Agreement shall remain in full force and effect and Seller shall not repair such damage prior to Closing, but, Buyer shall be entitled to receive at Closing (A) an assignment by Seller of any rights and proceeds under any casualty insurance policy maintained by Seller covering such damage

23

or loss to the Property, and (B) a credit against the Purchase Price in the amount of any deductible under such casualty insurance policy.

(c)    If the Estimate to repair the damage to the Property is equal to or greater than the Damage Repair Threshold, Buyer may elect to terminate this Agreement by written notice to Seller and Escrow Holder no later than fifteen (15) calendar days following the delivery of the Estimate (the "***Damage Termination Notice***"). If Buyer fails to deliver the Damage Termination Notice to Seller and Escrow Holder within such fifteen (15) day period, Buyer shall be deemed to have waived its right to terminate this Agreement pursuant to this Section. If Buyer does not terminate this Agreement pursuant to this Section 11.2.2(c), Buyer shall be entitled to receive at Closing (A) an assignment by Seller of any rights and proceeds under any casualty insurance policy maintained by Seller covering such damage or loss to the Property, and (B) a credit against the Purchase Price in the amount of any deductible under such casualty insurance policy.

11.2.3    In the event the casualty is not covered by insurance, then Seller may, at its option terminate this Agreement.

11.3    Termination. In the event that this Agreement is terminated pursuant to this Article XI, then: (a) this Agreement shall terminate as of the date of the termination of this Agreement under Section 11.1.2 , the delivery of the Condemnation Termination Notice or Damage Information Notice, or the delivery of a notice that the casualty is not covered by insurance, as applicable; (b) Escrow shall be cancelled; (c) neither Seller nor Buyer shall thereafter have any rights or obligations under this Agreement; (d) the Deposit, less the Independent Consideration, shall be returned to Buyer by Escrow Holder, together with any interest earned or accrued thereon; and (e) the Independent Consideration shall be delivered to Seller. Seller and Buyer agree to promptly execute any documents reasonably requested by the other Party or Escrow Holder to evidence the termination of this Agreement, the cancellation of Escrow and the return of the Deposit.

**ARTICLE XII**
**COMMISSIONS**

Buyer and Seller agree that payment of the 1.75% commission to Hilco Real Estate, LLC ("Hilco") and 1.75% commission to Onyx Asset Advisors, LLC ("Onyx") described in the Application by Trustee to Jointly Employ Onyx and Hilco [Dkt. No. 140] (the "Commission") shall be the sole responsibility of the Seller, which Commission shall be (a) reflected in the Closing Statement, and (b) paid directly from Escrow to Onyx and Hilco, respectively, by the Escrow Holder at Closing. Other than Hilco and Onyx and commissions specifically described above the parties represent that no broker, salesman or finder has been engaged by it in connection with any of the transactions contemplated by this Agreement or, to their knowledge, is in any way connected with any of such transactions. In the event of any other claim for broker's, consultant's or finder's fees or commissions in connection with the negotiation, execution or consummation of this Agreement, Buyer shall indemnify, save harmless and defend Seller from and against such claim if it shall be based upon any statement, representation or

24

agreement made by Buyer; and Seller shall indemnify, save harmless and defend Buyer from and against such claim if it shall be based upon any statement, representation or agreement made by Seller.

## ARTICLE XIII
## REMEDIES

13.1    Seller's Remedy. IN THE EVENT THAT THE CLOSING SHALL NOT OCCUR AS A RESULT OF A DEFAULT BY BUYER IN THE PERFORMANCE OF ITS OBLIGATIONS HEREUNDER THAT IS NOT CURED WITHIN TEN (10) CALENDAR DAYS FOLLOWING WRITTEN NOTICE TO BUYER, THEN SELLER, AS ITS SOLE AND EXCLUSIVE REMEDY, MAY TERMINATE THIS AGREEMENT BY NOTIFYING BUYER THEREOF AND RECEIVE OR RETAIN THE DEPOSIT AS LIQUIDATED DAMAGES. THE PARTIES AGREE THAT SELLER WILL SUFFER DAMAGES IN THE EVENT OF BUYER'S DEFAULT ON ITS OBLIGATIONS UNDER THIS AGREEMENT. ALTHOUGH THE AMOUNT OF SUCH DAMAGES IS DIFFICULT OR IMPOSSIBLE TO DETERMINE, THE PARTIES AGREE THAT THE AMOUNT OF THE DEPOSIT IS A REASONABLE ESTIMATE OF SELLER'S LOSS IN THE EVENT OF BUYER'S DEFAULT. ACCORDINGLY, SELLER SHALL ACCEPT AND RETAIN THE DEPOSIT AS ITS LIQUIDATED DAMAGES, AND SUCH LIQUIDATED DAMAGES SHALL CONSTITUTE SELLER'S SOLE AND EXCLUSIVE REMEDY. IN CONSIDERATION OF SELLER RECEIVING THE LIQUIDATED DAMAGES, SELLER WILL BE DEEMED TO HAVE WAIVED ALL OF ITS CLAIMS AGAINST BUYER FOR DAMAGES.

This is inclusive of Seller's costs, fees and attorneys' fees incurred in preparing this Agreement, seeking this Agreement's approval along with the Bidding Procedures.

SELLER AND BUYER ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE PROVISIONS OF THIS SECTION 13.1 AND BY THEIR SIGNATURES IMMEDIATELY BELOW AGREE TO BE BOUND BY ITS TERMS.

_____            *(Please see next page for initials)*
Seller's Initials                            Buyer's Initials

It is expressly understood and agreed that the above liquidated damages do not limit Seller's indemnity rights under section 3.3 of this Agreement.

13.2    Buyer's Remedy. In the event that the Closing shall not occur as a result of a default by Seller in the performance of their obligations under this Agreement that is not cured within ten (10) Calendar Days following written notice to Seller, Buyer's sole remedy shall be the termination of this Agreement upon written notice to Seller, in which case: (a) this Agreement shall be terminated as of the date of delivery of the termination notice to Seller; (b) neither Seller nor Buyer shall thereafter have any rights or obligations under this Agreement; (c) Escrow shall be cancelled; (d) the Deposit, less the Independent Consideration, shall be returned to Buyer, together with any interest earned or accrued thereon; (e) the Independent Consideration shall be delivered to Seller. Seller and Buyer

EXHIBIT A, PAGE 33

agreement made by Buyer; and Seller shall indemnify, save harmless and defend Buyer from and against such claim if it shall be based upon any statement, representation or agreement made by Seller.

## ARTICLE XIII
## REMEDIES

13.1    <u>Seller's Remedy</u>. IN THE EVENT THAT THE CLOSING SHALL NOT OCCUR AS A RESULT OF A DEFAULT BY BUYER IN THE PERFORMANCE OF ITS OBLIGATIONS HEREUNDER THAT IS NOT CURED WITHIN TEN (10) CALENDAR DAYS FOLLOWING WRITTEN NOTICE TO BUYER, THEN SELLER, AS ITS SOLE AND EXCLUSIVE REMEDY, MAY TERMINATE THIS AGREEMENT BY NOTIFYING BUYER THEREOF AND RECEIVE OR RETAIN THE DEPOSIT AS LIQUIDATED DAMAGES. THE PARTIES AGREE THAT SELLER WILL SUFFER DAMAGES IN THE EVENT OF BUYER'S DEFAULT ON ITS OBLIGATIONS UNDER THIS AGREEMENT. ALTHOUGH THE AMOUNT OF SUCH DAMAGES IS DIFFICULT OR IMPOSSIBLE TO DETERMINE, THE PARTIES AGREE THAT THE AMOUNT OF THE DEPOSIT IS A REASONABLE ESTIMATE OF SELLER'S LOSS IN THE EVENT OF BUYER'S DEFAULT. ACCORDINGLY, SELLER SHALL ACCEPT AND RETAIN THE DEPOSIT AS ITS LIQUIDATED DAMAGES, AND SUCH LIQUIDATED DAMAGES SHALL CONSTITUTE SELLER'S SOLE AND EXCLUSIVE REMEDY. IN CONSIDERATION OF SELLER RECEIVING THE LIQUIDATED DAMAGES, SELLER WILL BE DEEMED TO HAVE WAIVED ALL OF ITS CLAIMS AGAINST BUYER FOR DAMAGES.

This is inclusive of Seller's costs, fees and attorneys' fees incurred in preparing this Agreement, seeking this Agreement's approval along with the Bidding Procedures.

SELLER AND BUYER ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE PROVISIONS OF THIS <u>SECTION 13.1</u> AND BY THEIR SIGNATURES IMMEDIATELY BELOW AGREE TO BE BOUND BY ITS TERMS.

*(Please see previous page for initials)*

| | *SVR* |
|---|---|
| Seller's Initials | Buyer's Initials |

It is expressly understood and agreed that the above liquidated damages do not limit Seller's indemnity rights under section 3.3 of this Agreement.

13.2    <u>Buyer's Remedy</u>. In the event that the Closing shall not occur as a result of a default by Seller in the performance of their obligations under this Agreement that is not cured within ten (10) Calendar Days following written notice to Seller, Buyer's sole remedy shall be the termination of this Agreement upon written notice to Seller, in which case: (a) this Agreement shall be terminated as of the date of delivery of the termination notice to Seller; (b) neither Seller nor Buyer shall thereafter have any rights or obligations under this Agreement; (c) Escrow shall be cancelled; (d) the Deposit, less the Independent Consideration, shall be returned to Buyer, together with any interest earned or accrued thereon; (e) the Independent Consideration shall be delivered to Seller. Seller and Buyer

25

agree to promptly execute any documents reasonably requested by the other party or Escrow Holder to evidence the termination of this Agreement and the cancellation of Escrow and the return of the Deposit to Buyer.

This is inclusive of Buyer's costs, fees and attorneys' fees incurred in preparing this Agreement, its Due Diligence costs, including the Drilling and Water Investigation, supporting this Agreement's approval along with the Bidding Procedures.

## ARTICLE XIV
## JURISDICTION; JURY WAIVER; AND JUDICIAL REFERENCE

14.1    <u>Governing Law, Jurisdiction, Venue</u>. Seller and Buyer acknowledge and agree that: (a) this Agreement shall be construed in accordance with, and shall be governed by, the laws of the State of California as applied by the United States Bankruptcy Court for the Central District of California. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Santa Ana Division, shall be the exclusive forum to resolve such dispute.

14.2    <u>Jury Waiver</u>. As a material inducement to Seller, and Buyer entering into and being bound by this Agreement, Seller and Buyer each UNCONDITIONALLY WAIVE ITS RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED ON, ARISING FROM OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION of any type brought by Seller or Buyer against the other party, whether with respect to contract claims, tort claims or otherwise. This waiver shall apply to any future amendments, renewals, supplements or modifications to this Agreement. This section constitutes a written consent to waiver of trial by jury pursuant to the provisions of California Code of Civil Procedure section 631.

## ARTICLE XV
## GENERAL PROVISIONS

15.1    <u>Notices</u>.

15.1.1   All notices, statements, demands, consents and other communications (collectively, the "***Notices***") required or permitted to be given by any Party to another Party pursuant to this Agreement or pursuant to any applicable law or requirement of public authority shall be properly given only if the Notice is: (a) made in writing (whether or not so stated elsewhere in this Agreement); (b) given by one of the methods prescribed in <u>Section 15.2</u>; and (c) sent to the Party to which it is addressed at the address set forth below or at such other address as such Party may hereafter specify by at least five (5) calendar days' prior written notice:

**If to Seller:**

Richard Marshack, Trustee

4818-3374-2076,v.2



EXHIBIT A, PAGE 35

Kristine Thagard, Esq.
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620
Ph: (949) 333-7777
Email:  rmarshack@marshackhays.com
kthagard@marshackhays.com

**If to Buyer**

Mr. Steven Riboli
Mr. Anthony Riboli
San Antonio Winery
737 Lamar Street
Los Angeles, CA 90031
Ph: (323) 330-8720
Email: steve.riboli@riboliwines.com
anthony@riboliwines.com

with a copy to:

Victor A. Sahn, Esq.
Sulmeyer Kupetz
333 South Grand Avenue, 34th Floor
Los Angeles, CA 90071
Ph: (213) 626 2311
Email: vsahn@sulmeyerlaw.com

**If to Real Estate Brokers:**

K. Kevin Otus
Onyx Asset Advisors, LLC
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Ph: (415) 799-3299
Email: kotus@thinkonyx.com

Hilco Real Estate, LLC
5 Revere Drive, Suite 320
Northbrook, Illinois 60062
Ph: (847) 418 2703
Email: Jazuse@hilcoglobal.com

Hilco Global
5 Revere Drive, Suite 206
Northbrook, Illinois 60062

27

4818-3374-2076,v.2



EXHIBIT A, PAGE 36

Ph: (847) 504-2462
Email: sbaker@hilcoglobal.com

**If to Title Company:**

Blake Uradomo
Fidelity National Title
1300 Dove Street, 3rd Floor
Ph: (949) 788-2800
Fax: (949) 341-0251
Email: lirot@firstam.com

**If to Escrow Holder:**

A & A Escrow Services, Inc
415 N. Crescent Drive, Suite 320,
Beverly Hills, CA 90210
Antonia Delgado
Ph: 310) 550-6055 X126
Email: antonia@aaescrow.com

15.2    Notices may be either: (a) delivered by hand; (b) delivered by a nationally recognized overnight courier which maintains evidence of receipt; or (c) sent by e mail or facsimile transmission with a confirmation. Notices shall be effective on the date of receipt. If any Notice is not received or cannot be delivered due to a change in address of the receiving Party, of which notice was not properly given to the sending Party, or due to a refusal to accept by the receiving Party, such Notice shall be effective on the date delivery is attempted.

15.3    Assignment. This Agreement is not assignable; however, in the event of any assignment (whether authorized or unauthorized), this Agreement shall be binding upon and inure to the benefit of the successors and assigns of Seller and Buyer.

15.4    Attorneys' Fees and Legal Expenses. Should any Party hereto institute any action or proceeding in court to enforce or appeal any decision, the prevailing Party shall be entitled to receive from the losing Party all reasonable attorneys' fees and costs in connection with said proceeding. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be calculated to fully reimburse all attorneys' fees reasonably incurred. This is subject to the provisions of paragraph 13.1 and 13.2 above. Additionally, in the event of a dispute over the liquidated damages' deposit, the attorneys' fees and costs shall be limited to not more than $25,000 for either side.

15.5    No Buyer Contingencies. Other than as specifically provided in this Agreement, Buyer has NO CONTINGENCIES in this transaction, including but not limited to the contingency of obtaining financing & appraisal, inspections, etc. Buyer is responsible

4818-3374-2076,v.2

EXHIBIT A, PAGE 37

for conducting whatever inspections or appraisals, or obtaining whatever approvals it needs to complete the transaction, prior to entering into the Agreement, or prior to the expiration of the Due Diligence Period. Once the Due Diligence Period expires the Deposit is refundable only if the Bankruptcy Court accepts an overbid, or refuses to approve the Agreement for reasons not attributable to Buyer.

15.6    Reporting of Foreign Investment. Seller and Buyer agree: (a) to comply with any and all reporting requirements applicable to the transaction that is the subject of this Agreement which are set forth in any law, statute, ordinance, rule, regulation, order or determination of any Applicable Agency, including, but not limited to, the Foreign Investment in Real Property Tax Act of 1980, the Tax Reform Act of 1984 and California Revenue and Taxation Code section 18662; and (b) upon request of the other Party, to furnish that Party with evidence of such compliance.

15.7    Time Calculations. Should the calculation of any of the various time periods provided for herein result in an obligation becoming due on a Saturday, Sunday or legal holiday, then the due date of such obligation or scheduled time of occurrence of such event shall be delayed until the next Business Day.

15.8    Entire Agreement. This Agreement embodies the entire agreement between the Parties hereto and supersedes any prior understandings or written or oral agreements between the Parties concerning the Property.

15.9    Amendments. This Agreement may be varied, modified, amended or altered only by a written agreement signed by Seller and Buyer. No waiver by any Party of any term, covenant or provision of this Agreement, whether verbally or by course of conduct, shall be effective unless such waiver is in writing and signed by the Party waiving such term, covenant or provision.

15.10    Severability. If any portion of this Agreement is held to be unenforceable by a court of competent jurisdiction, the remainder of this Agreement shall remain in full force and effect.

15.11    Further Assurances. Seller and Buyer agree to execute all documents and instruments reasonably required in order to consummate the purchase and sale herein contemplated.

15.12    Counterpart Execution. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.

15.13    Electronic Signatures. The Parties agree that executed counterparts of this Agreement signed by one Party to this Agreement and sent by facsimile, email or other electronic transmission to the other Party to this Agreement: (a) shall have the same effect as an original signed counterpart of this Agreement; and (b) shall be conclusive proof, admissible in judicial proceedings, of such Party's execution of this Agreement.

4818-3374-2076,v.2

EXHIBIT A, PAGE 38

15.14  <u>Gender and Number</u>. Within this Agreement, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural, unless the context otherwise requires.

15.15  <u>Section Headings</u>. The section headings contained in this Agreement are for convenience only and shall in no way enlarge or limit the scope or meaning of the various and several sections hereof.

15.16  <u>Exhibits and Schedules Incorporated by Reference</u>. All exhibits and schedules attached to this Agreement are incorporated into this Agreement by reference.

15.17  <u>Trustee's Capacity and Liability</u>. Buyer acknowledges that in selling the Property, Richard A. Marshack, the court appointed and acting Chapter 7 Trustee for the Estate, is acting in his official capacity only. No personal liability shall be sought or enforced against Trustee or any of his professionals (including Marshack Hays LLP, Onyx or Hilco) with regard to the Agreement, the sale of the Property, the physical condition of the Property, or any other matter. In the event that Seller fails or refuses to complete the transaction for any reason, the limit of Seller's liability is the return of the Deposit less the independent consideration. Prior to and after the Closing, the United States Bankruptcy Court shall have and retain the sole and exclusive jurisdiction over the Property and the Agreement, and all disputes arising before and after Closing shall be resolved in said Court. No fees shall be paid, and no costs shall be reimbursed unless and until ordered by the Bankruptcy Court under U.S.C. Section 330 and/or 331. Any and all such fees and costs shall be the sole and exclusive liability of and claim against the Estate, and the Trustee shall not have any personal liability.

*[SIGNATURES ARE ON THE FOLLOWING PAGE]*

4818-3374-2076,v.2



**EXHIBIT A, PAGE 39**

IN WITNESS WHEREOF, Assignor and Assignee have executed this Agreement as of date first written above.

"Seller"                                          "Buyer"

Northern Holding, LLC, a California limited        Riboli Paso Robles, LLC, a
liability company,                                 California limited liability
                                                   company

By: _____Richard, Trustee_____        By: *(Please see next page for signature)*
    Richard A. Marshack, in his
    capacity as Chapter 7 Trustee for       Its: _____
    the Bankruptcy Estate of
    NORTHERN HOLDING, LLC

SIGNATURE PAGE FOR
AGREEMENT OF PURCHASE
AND SALE
AND ESCROW INSTRUCTIONS

EXHIBIT A, PAGE 40

IN WITNESS WHEREOF, Assignor and Assignee have executed this Agreement as of date first written above.

"Seller"                                                    "Buyer"

Northern Holding, LLC, a California limited          Riboli Paso Robles, LLC, a
liability company,                                          California limited liability
                                                            company

By: *(Please see previous page for signature)*        By: _____
        Richard A. Marshack, in his
        capacity as Chapter 7 Trustee for        Its: _____
        the Bankruptcy Estate of
        NORTHERN HOLDING, LLC

SIGNATURE PAGE FOR
AGREEMENT OF PURCHASE
AND SALE
AND ESCROW INSTRUCTIONS

EXHIBIT A, PAGE 41

**SCHEDULE 1.1.6**

NO SERVICE CONTRACTS ARE BEING ASSIGNED

EXHIBIT A, PAGE 42

## SCHEDULE 3.6

| FILE | TYPE | FOLDER |
|---|---|---|
| Appraisal-1172 San Marcos Road-Paso Robles CA 3 17 20 | PDF | Appraisal |
| Broker Opinion of Value 1172 San Marcos Road & 3280 Live Oak Road | PDF | Appraisal |
| Farm Credit Equipment Evaluation Release | PDF | Appraisal |
| NORTHEN HOLDINGS FARM CREDIT APPRAISAL Bankr.C.D.Cal._8-20-bk-13014 | PDF | Appraisal |
| Bio of Steven Jones | PDF | Bios |
| Northern Holdings_Rabbit Ridge Winery_Onyx Asset Advisors Offering | PDF | Brochure |
| NHC Balance Sheet 2021 | Excel | Financials |
| NHC Financials 2021 | Excel | Financials |
| Northern Holding Projected Cash Flows 2020 | Excel | Financials |
| RR Projections 10-2020 | Excel | Financials |
| Land Use | Excel | Land Use |
| Former Rabbit Ridge Tax Map | PDF | Tax Map |
| Live Oak Tax Map | PDF | Tax Map |
| Texas Road Winery Tax Map | PDF | Tax Map |
| Grape Varietal List - San Marcos | PDF | Varietals by Property |
| Grape Varietal List - Texas Road | PDF | Varietals by Property |
| Smoke Taint - Due Diligence | PDF | Vineyard - Bios |
| Vineyard Biography Russell Family   Vineyards Syrah Field 1 Block 19 East | PDF | Vineyard - Bios |
| Vineyard Biography Russell Family  Vineyards Syrah Field 1 Block 14 Top | PDF | Vineyard - Bios |
| Vineyard Biography Russell Family  Vineyards Syrah Field 1 Block 15 Top | PDF | Vineyard - Bios |
| Vineyard Biography Russell Family  Vineyards Syrah Field 1 Block 17 Top | PDF | Vineyard - Bios |
| Copy of Rabbit Ridge Winery Well  12-10-19 | PDF | Water & Well |
| Tank Chart 1172 San Marcos Rd | PDF | Water & Well |

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PASO ROBLES, COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1A:

AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1B:

AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHWEST* 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2 INCH REBAR CAPPED RCE 14994 IN BOOK 1 PAGE 159 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°3020" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

APN: 026-342-039

## END OF LEGAL DESCRIPTION

*THERE IS AN ISSUE THAT THIS SHOULD BE NORTHEAST

EXHIBIT A TO
AGREEMENT OF PURCHASE
AND SALE
AND ESCROW INSTRUCTIONS

EXHIBIT A TO

# EXHIBIT B

FORM OF GRANT DEED

FORM OF GRANT DEED

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:



MAIL TAX STATEMENTS TO:

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

The undersigned Grantor declares that the **DOCUMENTARY TRANSFER TAX IS**:
$_____ **City** $_____ **County**
_____ computed on the full value of the interest of property conveyed, or
_____ computed on the full value less the value of liens or encumbrances remaining thereon at
the time of sale.

____ OR transfer is EXEMPT from tax for the following reason:

_____          _____
Signature of declarant or agent determining tax          Firm Name

## GRANT DEED

FOR A VALUABLE CONSIDERATION, RECEIPT OF WHICH IS HEREBY
ACKNOWLEDGED, RICHARD A. MARSHACK, in his capacity as Chapter 7 Trustee for the
Bankruptcy Estate of NORTHERN HOLDING, LLC, bankruptcy case number No. 8:20-bk-
13014-MW, currently pending in the United States Bankruptcy Court for the Central District of
California, Santa Ana Division (**"Grantor"**) hereby GRANTS to Riboli Paso Robles, LLC, a
California limited liability company, the real property located in the in the unincorporated area of
the County of San Luis Obispo, State of California, commonly known by the street address of
2380 Live Oak Road, Paso Robles, CA.

This Grant Deed is made and delivered, and title to the aforesaid real property is conveyed
(i) subject to all matters of which the Grantee has notice, whether actual or constructive, and
(ii) without warranty or covenants of any kind whatsoever, whether express or implied,
contractual or statutory.

*[SIGNATURES ARE ON THE NEXT PAGE]*

2

NORTHERN HOLDING, LLC

By: _____
Richard A. Marshack, Chapter 7
Trustee for the Bankruptcy Estate of
Northern Holding, LLC

3

EXHIBIT A, PAGE 48

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               ) ss.
COUNTY OF _____        )

      On _____, 2021, before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

      I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

      WITNESS my hand and official seal.


Signature: _____    (Seal of Notary)_____

4

EXHIBIT A, PAGE 49

**Attachment 1**

## LEGAL
## DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PASO ROBLES, COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1A:

AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 1B:

AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2 INCH REBAR CAPPED RCE 14994 IN BOOK 1 PAGE 159 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°3020" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.
APN: 026-342-039

**END OF LEGAL DESCRIPTION**

THERE IS AN ISSUE THAT THIS SHOULD BE NORTHEAST

4818-3374-2076,v.2

# EXHIBIT C

FORM OF BILL OF SALE

BILL OF SALE
1

EXHIBIT A, PAGE 51

BILL OF SALE

This Bill of Sale (the "**Bill of Sale**") is executed on this ___ day of _____, 2021, by Richard A. Marshack, as Chapter 7 Trustee ("Trustee") for the Estate of Northern Holding, LLC ("Estate",) bankruptcy case number No. 8:20-bk-13014-MW ("Bankruptcy Case"), currently pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("**Seller**"), with reference to the following facts:

## R E C I T A L S

A.    Seller and Riboli Paso Robles, LLC, a California limited liability company, as the buyer (the "Buyer") are parties to a written Agreement of Purchase and Sale and Escrow Instructions, dated as of _____, 2021 (the "**Purchase Agreement**"), for the purchase and sale of the real property and improvements located in the unincorporated area of the County of San Luis Obispo, State of California, commonly known by the street address of 2380 Live Oak Road, Paso Robles, CA (the "**Real Property**").

B.    Pursuant to Sections 6.1.1(b) of the Purchase Agreement, Seller is required to execute and deliver this Bill of Sale at Closing, by which Seller assigns and transfers to Buyer all right, title and interest of Seller, if any, and without any warranty, in and to any included Tangible Personal Property (as defined in the Purchase Agreement) as of the Closing Date (as defined in Section 5.4 of the Purchase Agreement).

NOW, THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the adequacy, receipt and sufficiency of which is hereby acknowledged, Seller hereby agrees as follows:

## A G R E E M E N T

1.    Recitals. Each and all of the foregoing recitals of background facts are incorporated herein by this reference as though set forth herein verbatim.

2.    Definition of Terms Used Herein. The capitalized terms in this Bill of Sale shall have the meanings set forth in the Purchase Agreement unless otherwise expressly indicated herein.

3.    Sale and Assignment. Seller hereby sells, assigns, transfers and conveys to Buyer, all right, title and interest of Seller, if any, and without any warranty, in and to the included Tangible Personal Property set forth on **Schedule I** attached hereto.

4.    Contingent Upon Recordation of Deed. Notwithstanding anything to the contrary contained herein, this Bill of Sale shall be effective only upon the recordation in the Official Records of San Luis Obispo County of the Grant Deed transferring title to the Real Property from Seller to Buyer.

5.    Successors and Assigns. This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

BILL OF SALE
2

6.      <u>Applicable Law</u>. Seller and Buyer acknowledge and agree that: (a) this Bill of Sale shall be construed in accordance with, and shall be governed by, the laws of the State of California as applied by the United States Bankruptcy Court for the Central District of California. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Santa Ana Division, shall be the exclusive forum to resolve such dispute.

[SIGNATURES ARE ON THE FOLLOWING PAGE]

EXHIBIT A, PAGE 53

IN WITNESS WHEREOF, Seller has executed this Bill of Sale as of date first written above.

"Seller"

NORTHERN HOLDING, LLC

By: _____
Richard A. Marshack, Chapter 7
Trustee for the Bankruptcy Estate of
Northern Holding, LLC

SIGNATURE PAGE TO
BILL OF SALE

EXHIBIT A, PAGE 54

**SCHEDULE I**

NORTHERN HOLDINGS, LLC

PERSONAL PROPERTY ON-SITE

9-6-21


NONE


THE CROPS CURRENTLY ON THE VINE WILL BE HARVESTED BEFORE CLOSING
AND ARE AND WILL REMAIN THE PROPERTY OF SELLER


EXHIBIT C TO
AGREEMENT OF PURCHASE
AND SALE
AND ESCROW INSTRUCTIONS

# EXHIBIT D

FORM OF INTANGIBLE ASSIGNMENT

EXHIBIT D TO
AGREEMENT OF PURCHASE
AND SALE
AND ESCROW INSTRUCTIONS

## ASSIGNMENT AGREEMENT

This Assignment Agreement (the "**Agreement**") is entered into this __ day of _____, 2021, by and between Richard A. Marshack, as Chapter 7 Trustee ("Trustee") for the Estate of Northern Holding, LLC, bankruptcy case number . 8:20-bk-13014-MW, currently pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("**Assignor**") and Riboli Paso Robles, LLC, a California limited liability company, ("**Assignee**"), with reference to the following facts:

### R E C I T A L S

A.        Assignor, as the Seller and Assignee, as the Buyer, are parties to a written Agreement for Purchase and Sale and Escrow Instructions, dated as of _____, 2021 (the "**Purchase Agreement**"), for the purchase and sale of the real property and improvements located in the unincorporated area of the County of San Luis Obispo, State of California, commonly known by the street address of 2380 Live Oak Road, Paso Robles, CA (the "**Real Property**").

B.        Pursuant to Sections 6.1.1(c) and 6.1.2(a) of the Purchase Agreement, Assignor and Assignee desire to enter into an agreement for the assignment by Assignor of all rights, title and interest of Assignor, if any, and without any warranty, in and rights to the: (i) included Intangible Property and (ii) included Service Contracts pertaining to the Real Property and Tangible Personal Property.

NOW, THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the adequacy, receipt and sufficiency of which is hereby acknowledged, Assignor and Assignee do hereby agree as follows:

### A G R E E M E N T

1.        Recitals. Each and all of the foregoing recitals of background facts are incorporated herein by this reference as though set forth herein verbatim.

2.        Definition of Terms Used Herein. The capitalized terms in this Agreement shall have the meanings set forth in the Purchase Agreement unless otherwise expressly indicated herein.

3.        Assignment. Assignor hereby assigns, transfers and conveys to Assignee, as of the Closing Date, all rights, title and interest of Assignor, if any, and without any warranty, in and to:(i) included Intangible Property and (iii) included Service Contracts pertaining to the Real Property and Tangible Personal Property, if any.

4.        Contingent Upon Recordation of Deed. Notwithstanding anything to the contrary contained herein, this Agreement shall be effective only upon recordation in the Official Records of San Luis Obispo County of the Grant Deed transferring title to the Real Property from Assignor to Assignee.

ASSIGNMENT AGREEMENT
1

5.  <u>No Waiver</u>. This Agreement is entered into without waiver or modification of the respective rights and obligations of Assignee and Assignor under the Purchase Agreement.

6.  <u>Counterpart Execution</u>. To facilitate execution, this Agreement may be executed in as many counterparts as may be required. It shall not be necessary that signatures of all Persons (as defined in the Purchase Agreement) required to bind any Party (as defined in the Purchase Agreement) appear in each counterpart, but it shall be sufficient that the signature of all Persons required to bind any Party appear on one or more of such counterparts. All counterparts shall collectively constitute a single agreement.

7.  <u>Electronic Signatures</u>. The Parties agree that executed counterparts of this Agreement signed by one Party to this Agreement and sent by facsimile, email or other electronic transmission to the other Party to this Agreement: (a) shall have the same effect as an original signed counterpart of this Agreement; and (b) shall be conclusive proof, admissible in judicial proceedings, of such Party's execution of this Agreement.

8.  <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

9.  <u>Applicable Law</u>. Assignor and Assignee acknowledge and agree that: (a) this Assignment Agreement shall be construed in accordance with, and shall be governed by, the laws of the State of California as applied by the United States Bankruptcy Court for the Central District of California. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Santa Ana Division, shall be the exclusive forum to resolve such dispute.

[SIGNATURES ARE ON THE FOLLOWING PAGE]

EXHIBIT A, PAGE 58

IN WITNESS WHEREOF, Assignor and Assignee have executed this Agreement as of date first written above.

"Assignor"                                              "Assignee"

Northern Holding, LLC, a California limited            Riboli Paso Robles, LLC, a
liability company,                                     California limited liability
                                                       company

_____            By:  _____
Richard A. Marshack, in his
capacity as Chapter 7 Trustee for            Its:  _____
the Bankruptcy Estate of
NORTHERN HOLDING, LLC

2

EXHIBIT A, PAGE 59

**EXHIBIT 2**

EXHIBIT A, PAGE 60

# FIRST AMENDMENT TO AGREEMENT OF PURCHASE AND SALE

## AND ESCROW INSTRUCTIONS

### Among

### Richard A. Marshack, as Chapter 7 Trustee for the Estate of Northern Holding, LLC, as Seller

### And

### Riboli Paso Robles, LLC as Buyer

### Dated for reference purposes only: October 22, 2021

## AMENDMENT TO AGREEMENT OF PURCHASE AND SALE
## AND ESCROW INSTRUCTIONS

THIS FIRST AMENDMENT TO AGREEMENT OF PURCHASE AND SALE AND ESCROW INSTRUCTIONS, dated October 22, 2021 (this "***Amendment***") to the Agreement of Purchase and Sale and Escrow Instructions, dated for reference purposes only September 28, 2021 (the "***Purchase Agreement***"), is made, executed and entered into by and among Richard A. Marshack, as Chapter 7 Trustee ("Trustee") for the Estate of Northern Holding, LLC ("Estate"), bankruptcy case number No. 8:20-bk-13014-MW ("Bankruptcy Case") currently pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court"), as the seller (the "Seller"), and Riboli Paso Robles, LLC, a California limited liability company, as the buyer (the "Buyer"). Seller and Buyer are sometimes referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, subject to the terms and conditions set forth in this Amendment, and pursuant to the Purchase Agreement, the Parties desire to amend certain terms of the Purchase Agreement by entering into this Amendment.

NOW, THEREFORE, in consideration of the aforesaid premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, the Parties hereby agree as set forth below:

1.1    Definitions. Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Purchase Agreement unless otherwise indicated.

1.2    Purchase Agreement Section Numbering Issue and Clarification. It is acknowledged that in the preparation of the final execution copy of the Purchase Agreement there was an incorrect renumbering of the Section headings in Article III necessitating the amendments provided in Sections 1.3 and 1.4 of this Amendment below. The final executed Purchase Agreement contains two Section 3.5's. Additionally another Section heading was eliminated. The result of this incorrect renumbering was certain Section references being incorrect.

1.3    Clarification of Sections 3.5:

Section 3.5 of the Purchase Agreement entitled "Statutory Disclosure Requirements" commencing on page 6 shall be known as Section 3.5a.

Section 3.5 of the Purchase Agreement entitled "AS- IS" commencing on page 7 shall be known as Section 3.5b.

1.4    Correction of References:

The reference in the second line of the first sentence of Section 3.6 "Buyers Acknowledgment" shall be to Section 3.5b (not 3.7). Therefore, the first sentence of Section 3.6 shall commence "Without in any way limiting the generality of the provisions of Section 3.5b…"

2

EXHIBIT A, PAGE 62

The references in last line of Section 3.8 "Intangibles" shall be to Sections 3.5b, 3.6, 3.7 and 3.8 (not 3.7, 3.8, 3.9 and 3.10). Therefore, the last line of Section 3.8 shall read: The provisions of Sections 3.5b, 3.6, 3.7 and 3.8 shall survive the Closing Date.

1.5    Maintenance of Land ("Land Maintenance").   Trustee is informed and believes Lender is retaining an agricultural manager to maintain the Property. Trustee shall use his best efforts to encourage Lender to work with Buyer to determine the best procedure to maintain the Property until Closing.

1.6    Title. The Title Company may be changed to First American Title Insurance Company, Lawyers Title Company or Stewart Title Company at the election of Seller. The Parties may also mutually agree to use another title company.

1.7    Outside Closing Date.  The Outside Closing Date in Section 5.5 is extended to March 15, 2022. The Parties acknowledge that Lender intends to foreclose thereafter if the sale has not closed on or before March 15, 2022.

1.8    Entire Agreement.  This Amendment embodies the entire amendment between the Parties hereto and supersedes any prior understandings or written or oral agreements between the Parties concerning the Amendment of the Purchase Agreement.

1.9    Amendments. This Amendment may be varied, modified, amended or altered only by a written agreement signed by Seller and Buyer.  No waiver by any Party of any term, covenant or provision of this Amendment, whether verbally or by course of conduct, shall be effective unless such waiver is in writing and signed by the Party waiving such term, covenant or provision.

1.10    Severability. If any portion of this Amendment is held to be unenforceable by a court of competent jurisdiction, the remainder of this Amendment shall remain in full force and effect.

1.11    Further Assurances. Seller and Buyer agree to execute all documents and instruments reasonably required in order to consummate the purchase and sale herein contemplated.

1.12    Counterpart Execution. This Amendment may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.

1.13    Electronic Signatures.   The Parties agree that executed counterparts of this Amendment signed by one Party to this Amendment and sent by facsimile, email or other electronic transmission to the other Party to this Amendment:  (a) shall have the same effect as an original signed counterpart of this Amendment; and (b) shall be conclusive proof, admissible in judicial proceedings, of such Party's execution of this Amendment.

/ / /

/ / /

3

1.14    <u>Trustee's Capacity and Liability</u>. Buyer acknowledges that in selling the Property, Richard A. Marshack, the court appointed and acting Chapter 7 Trustee for the Estate, is acting in his official capacity only. No personal liability shall be sought or enforced against Trustee or any of his professionals (including Marshack Hays LLP, Onyx or Hilco) with regard to this Amendment, or any other matter.

IN WITNESS WHEREOF, Buyer and Seller have executed this Amendment as of date first written above.

"Seller"                                                "Buyer"

Northern Holding, LLC, a California limited             Riboli Paso Robles, LLC, a
liability company,                                      California limited liability
                                                       company

By: _____                          By: _____
        Richard A. Marshack, in his
        capacity as Chapter 7 Trustee for              Its: _____
        the Bankruptcy Estate of
        NORTHERN HOLDING, LLC

4

# FIRST AMENDMENT TO AGREEMENT OF PURCHASE AND SALE

# AND ESCROW INSTRUCTIONS

## Among

## Richard A. Marshack, as Chapter 7 Trustee for the Estate of Northern Holding, LLC, as Seller

## And

## Riboli Paso Robles, LLC as Buyer

## Dated for reference purposes only: October 22, 2021

## AMENDMENT TO AGREEMENT OF PURCHASE AND SALE
## AND ESCROW INSTRUCTIONS

THIS FIRST AMENDMENT TO AGREEMENT OF PURCHASE AND SALE AND ESCROW INSTRUCTIONS, dated October 22, 2021 (this "***Amendment***") to the Agreement of Purchase and Sale and Escrow Instructions, dated for reference purposes only September 28, 2021 (the "***Purchase Agreement***"), is made, executed and entered into by and among Richard A. Marshack, as Chapter 7 Trustee ("Trustee") for the Estate of Northern Holding, LLC ("Estate"), bankruptcy case number No. 8:20-bk-13014-MW ("Bankruptcy Case") currently pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court"), as the seller (the "Seller"), and Riboli Paso Robles, LLC, a California limited liability company, as the buyer (the "Buyer"). Seller and Buyer are sometimes referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, subject to the terms and conditions set forth in this Amendment, and pursuant to the Purchase Agreement, the Parties desire to amend certain terms of the Purchase Agreement by entering into this Amendment.

NOW, THEREFORE, in consideration of the aforesaid premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, the Parties hereby agree as set forth below:

1.1     <u>Definitions</u>.  Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Purchase Agreement unless otherwise indicated.

1.2     <u>Purchase Agreement Section Numbering Issue and Clarification</u>. It is acknowledged that in the preparation of the final execution copy of the Purchase Agreement there was an incorrect renumbering of the Section headings in Article III necessitating the amendments provided in Sections 1.3 and 1.4 of this Amendment below. The final executed Purchase Agreement contains two Section 3.5's. Additionally another Section heading was eliminated. The result of this incorrect renumbering was certain Section references being incorrect.

1.3     <u>Clarification of Sections 3.5</u>:

Section 3.5 of the Purchase Agreement entitled "Statutory Disclosure Requirements" commencing on page 6 shall be known as Section 3.5a.

Section 3.5 of the Purchase Agreement entitled "AS- IS" commencing on page 7 shall be known as Section 3.5b.

1.4     <u>Correction of References</u>:

The reference in the second line of the first sentence of Section 3.6 "Buyers Acknowledgment" shall be to Section 3.5b (not 3.7). Therefore, the first sentence of Section 3.6 shall commence "Without in any way limiting the generality of the provisions of Section 3.5b…"

2

The references in last line of Section 3.8 "Intangibles" shall be to Sections 3.5b, 3.6, 3.7 and 3.8 (not 3.7, 3.8, 3.9 and 3.10). Therefore, the last line of Section 3.8 shall read: The provisions of Sections 3.5b, 3.6, 3.7 and 3.8 shall survive the Closing Date.

      1.5    Court Approval of Sale.  At a hearing conducted before the United States Bankruptcy Court in Debtor's bankruptcy case on February 9, 2022, the sale of the Property to the Buyer was approved.  However, notwithstanding such approval, contingencies in the PSA remain in force and effect including the contingency regarding water testing at the Property and any other title issues which Buyer does not approve or waive.

      1.6    Maintenance of Land ("Land Maintenance").  Trustee is informed and believes Lender is retaining Alegre Vineyard Consulting, Inc., a California corporation, an agricultural manager, to maintain the Property. Trustee shall use his best efforts to encourage Lender to work with Buyer to determine the best procedure to maintain the Property until Closing.

      1.7    Title. The Title Company may be changed to First American Title Insurance Company, Lawyers Title Company or Stewart Title Company at the election of Seller. The Parties may also mutually agree to use another title company.

      1.8    Outside Closing Date.  The Outside Closing Date in Section 5.5 is extended to March 15, 2022. The Parties acknowledge that Lender intends to foreclose on March 22, 2022 if the sale has not closed by that date.

      1.9    Entire Agreement.  This Amendment embodies the entire amendment between the Parties hereto and supersedes any prior understandings or written or oral agreements between the Parties concerning the Amendment of the Purchase Agreement.

      1.10    Amendments.  This Amendment may be varied, modified, amended or altered only by a written agreement signed by Seller and Buyer.  No waiver by any Party of any term, covenant or provision of this Amendment, whether verbally or by course of conduct, shall be effective unless such waiver is in writing and signed by the Party waiving such term, covenant or provision.

      1.11    Severability.  If any portion of this Amendment is held to be unenforceable by a court of competent jurisdiction, the remainder of this Amendment shall remain in full force and effect.

      1.12    Further Assurances.  Seller and Buyer agree to execute all documents and instruments reasonably required in order to consummate the purchase and sale herein contemplated.

      1.13    Counterpart Execution.  This Amendment may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.

      1.14    Electronic Signatures.  The Parties agree that executed counterparts of this Amendment signed by one Party to this Amendment and sent by facsimile, email or other electronic transmission to the other Party to this Amendment:  (a) shall have the same effect as an original signed counterpart of this Amendment; and (b) shall be conclusive proof, admissible in judicial proceedings, of such Party's execution of this Amendment.

EXHIBIT A, PAGE 67

1.15 <u>Trustee's Capacity and Liability</u>. Buyer acknowledges that in selling the Property, Richard A. Marshack, the court appointed and acting Chapter 7 Trustee for the Estate, is acting in his official capacity only. No personal liability shall be sought or enforced against Trustee or any of his professionals (including Marshack Hays LLP, Onyx or Hilco) with regard to this Amendment, or any other matter.

IN WITNESS WHEREOF, Buyer and Seller have executed this Amendment as of date first written above.

"Seller"                                                    "Buyer"

Northern Holding, LLC, a California limited            Riboli Paso Robles, LLC, a
liability company,                                     California limited liability
                                                       company

By: _____            By: _____
        Richard A. Marshack, in his
        capacity as Chapter 7 Trustee for    Its: _____
        the Bankruptcy Estate of
        NORTHERN HOLDING, LLC

4

EXHIBIT A, PAGE 68

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **EXHIBIT A TO : FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 2380 LIVE OAK ROAD, PASO ROBLES, CA: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); AND (2) AUTHORIZING AMENDMENT TO PURCHASE AND SALE AGREEMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 1, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **March 1, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 1, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE ERITHE A. SMITH
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040
Santa Ana, CA 92701-4593

**VIA EMAIL:**
**INTERESTED PARTY,** LEEROY CODDING, LECODDINGIV@ICLOUD.COM

Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 1,  2022 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
- **INTERESTED PARTY COURTESY NEF:** William H Brownstein Brownsteinlaw.bill@gmail.com
- **INTERESTED PARTY COURTESY NEF:** Steve Burnell sburnell@sulmeyerlaw.com, sburnell@ecf.courtdrive.com; sburnell@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com
- **ATTORNEY FOR U.S. TRUSTEE (SA):** Nancy S Goldenberg nancy.goldenberg@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR RESPONDENTS ERICH RUSSELL AND JOANNE RUSSELL:** Kari L Ley Ley1238@att.net
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE:** Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.:** Paul F Ready tamara@farmerandready.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR INTERESTED PARTY RIBOLI PASO ROBLES, LLC:** Victor A Sahn vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com; pdillamar@ecf.inforuptcy.com; vsahn@ecf.inforuptcy.com; cblair@sulmeyerlaw.com; cblair@ecf.inforuptcy.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Kristine A Thagard kthagard@marshackhays.com, kthagard@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
- **INTERESTED PARTY COURTESY NEF:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**: CONTINUED:

| | |
|---|---|
| **DEBTOR**<br>NORTHERN HOLDING, LLC<br>ATTN: OFFICER, A MANAGING OR GENERAL AGENT,<br>OR TO ANY OTHER AGENT AUTHORIZED BY<br>APPOINTMENT OR LAW TO RECEIVE SERVICE<br>13217 JAMBOREE RD #429<br>TUSTIN, CA 92782 | **U.S. TRUSTEE**<br>UNITED STATES TRUSTEE (SA)<br>411 W FOURTH ST., SUITE 7160<br>SANTA ANA, CA 92701-4593 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**

**SECURED CREDITOR & INTERESTED PARTY / POC ADDRESS**
ERICH RUSSELL
C/O KARI L. LEY, ATTORNEY AT LAW
264 CLOVIS AVENUE, SUITE 208
CLOVIS, CA 93612

**SECURED CREDITOR & INTERESTED PARTY / POC ADDRESS**
ERICH RUSSELL
2380 LIVE OAK ROAD
PASO ROBLES, CA 93446-9693

**SECURED CREDITOR**
FARM CREDIT WEST
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE
3755 ATHERTON RD
11707 FAIR OAKS BLVD
ROCKLIN, CA 95765

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
C/O MICHAEL J. GOMEZ
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, 19TH FLOOR
LOS ANGELES, CA 90017-2457

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
ATTN: KEVIN E. RALPH
3755 ATHERTON DRIVE
ROCKLIN CA 95765-3701

**SECURED CREDITOR / POC ADDRESS**
JAMES W. HAMILTON ACTTC
SAN LUIS OBISPO TAX COLLECTOR
1055 MONTEREY STREET
SUITE D-290
SAN LUIS OBISPO CA 93408-1003

**SECURED CREDITOR**
MORTGAGE LENDER SERVICES AS AGENT
FARM CREDIT WEST, FLCA, AS TRUSTEE
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE
11707 FAIR OAKS BLVD
FAIR OAKS, CA 95628-2816

**CREDITOR**
ATTORNEY GENERAL
UNITED STATES DEPARTMENT OF JUSTICE
BEN FRANKLIN STATION
P.O. BOX 683
WASHINGTON, DC 20044

**CREDITOR**
CALIFORNIA DEPT OF TAX AND FEE ADMI
SPECIAL OPS, MIC 29
PO BOX 942879
SACRAMENTO, CA 94279-0005

**CREDITOR**
CIVIL PROCESS CLERK
UNITED STATES ATTORNEY'S OFFICE
FEDERAL BUILDING, ROOM 7516
300 NORTH LOS ANGELES STREET
LOS ANGELES, CA 90012

**CREDITOR / POC ADDRESS**
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

**CREDITOR / POC ADDRESS**
INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**CREDITOR**
JOANNE RUSSELL
C/O KARI L. LEY, ATTORNEY AT
LAW
264 CLOVIS AVENUE, SUITE 208
CLOVIS, CA 93612

**CREDITOR**
JOANNE RUSSELL
2380 LIVE OAK ROAD
PASO ROBLES, CA 93446-9693

**CREDITOR**
RABBIT RIDGE WINE SALES, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
179 NIBLICK RD, #406
PASO ROBLES, CA 93446-9693

**INTERESTED PARTY**
LEROY CODDING
13217 JAMBOREE RD #429
TUSTIN, CA 92782

**INTERESTED PARTY**
STEVEN L JONES, JR.
179 NIBLICK ROAD, SUITE 326
PASO ROBLES, CA 93446-4845

**INTERESTED PARTY**
HUMANITY WINE COMPANY LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
2814 COTTAGE LANE
PASO ROBLES, CA 93446

**INTERESTED PARTY**
ANY AND ALL UNKNOWN
OCCUPANTS OF 2380 LIVE OAK
ROAD
2380 LIVE OAK ROAD
PASO ROBLES, CA 93446

**INTERESTED PARTY**
MILLER DRILLING COMPANY, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
329 NORTH MAIN STREET
TEMPLETON, CA 93465

**INTERESTED PARTY**
CAROL J. DAHL
3151 NW 44TH AVE, LOT 179
OCALA, FL 34482-7832

**INTERESTED PARTY**
ROBERT G. PIERCE, III
820 S BETHEL ROAD
TEMPLETON, CA 93465-4013

**INTERESTED PARTY & BROKER**
BILL TOLAR
VINO TINTO CONSULTING
1172 SAN MARCOS ROAD
PASO ROBLES, CA 93446

**INTERESTED PARTY**
MY FAVORITE NEIGHBOR, LLC
C/O C T CORPORATION SYSTEM,
AGENT FOR SERVICE OF PROCESS
330 N BRAND BLVD STE 700
GLENDALE, CA 91203

**INTERESTED PARTY**
MY FAVORITE NEIGHBOR, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
2644 ANDERSON ROAD
PASO ROBLES, CA 93446

**INTERESTED PARTY**
MY FAVORITE NEIGHBOR, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
207 HIGH POINT DRIVE, BLDG 100
VICTOR, NY 14564

**INTERESTED PARTY**
MY FAVORITE NEIGHBOR, LLC
C/O ERIC JENSEN, MANAGING
MEMBER
2640 ANDERSEN ROAD
PASO ROBLES, CA 93446

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**INTERESTED PARTY**
CORBETT VINEYARDS LLC
C/O JOHN A. RONCA, JR.
755 SANTA ROSA ST., SUITE 310
SAN LUIS OBISPO, CA 93401

**INTERESTED PARTY**
CORBETT VINEYARDS LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
2195 CORBETT CANYON RD
ARROYO GRANDE, CA 93420

**INTERESTED PARTY**
CENTER OF EFFORT
NATHAN R CARLSON, GENERAL
MANAGER
2195 CORBETT CANYON ROAD
ARROYO GRANDE, CA 93420

**INTERESTED PARTY**
CATHARTES AURA LLC
C/O CHRISTIAN TIETJE, AGENT
FOR SERVICE OF PROCESS
3310 RAMADA DRIVE, SUITE B
PASO ROBLES, CA 93446

**INTERESTED PARTY**
O'NEILL VINTNERS & DISTILLERS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
101 LARKSPUR LANDING CIRCLE,
SUITE 350
LARKSPUR, CA 94939

**INTERESTED PARTY**
JAM CELLARS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
1460 FIRST STREET
NAPA, CA 94559

**INTERESTED PARTY**
JAM CELLARS, INC.
C/O NICHOLAS E DONOVAN,
AGENT FOR SERVICE OF
PROCESS
1000 MAIN STREET, SUITE 300
NAPA, CA 94559

**INTERESTED PARTY**
JAM CELLARS, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
1300 FIRST STREET, SUITE 468
NAPA, CA 94559

**INTERESTED PARTY**
JAM CELLARS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
PO BOX 120
NAPA, CA 94559

**INTERESTED PARTY**
BRADY VINEYARD
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
2489 HARVEST MEADOW PLACE
PASO ROBLES, CA 93446

**INTERESTED PARTY**
SYCAMORE RANCH VINEYARD &
WINERY, LLC
C/O RICHARD KRUMWIEDE, AGENT
FOR SERVICE OF PROCESS
174 N DART CANYON RD
CRESTLINE, CA 92325

**INTERESTED PARTY**
SYCAMORE RANCH VINEYARD &
WINERY, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
PO BOX 1479
CRESTLINE, CA 92325

**INTERESTED PARTY**
PALI WINE COMPANY, L.P.
C/O TIMOTHY B PERR, AGENT
FOR SERVICE OF PROCESS
881 ALMA REAL DRIVE, STE 205
PACIFIC PALISADES, CA 90272

**INTERESTED PARTY**
PALI WINE COMPANY, L.P.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
401 WILSHIRE BLVD, STE 300
SANTA MONICA, CA 90401

**INTERESTED PARTY**
RIBOLI FAMILY WINES
C/O SANTO J RIBOLI, AGENT FOR
SERVICE OF PROCESS
737 LAMAR STREET
LOS ANGELES, CA 90031

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**INTERESTED PARTY**
WARROOM CELLARS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
22985 EL CAMINO REAL
SANTA MARGARITA, CA 93453

**INTERESTED PARTY**
WARROOM VENTURES, LLC
C/O COLE STEVENS, AGENT FOR
SERVICE OF PROCESS
694 SANTA ROSA
SAN LUIS OBISPO, CA 93401

**INTERESTED PARTY**
NICORA WINES
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
2945 LIMESTONE WAY
PASO ROBLES, CA 93446

**INTERESTED PARTY**
NICORA WINES
C/O THOMAS J MADDEN, AGENT
FOR SERVICE OF PROCESS
1948 SPRING ST
PASO ROBLES, CA 93446

**INTERESTED PARTY**
GRAVEYARD VINEYARDS
C/O PAULA CAMPBELL-TAYLOR,
AGENT FOR SERVICE OF PROCESS
6990 ESTRELLA ROAD
SAN MIGUEL, CA 93451

**INTERESTED PARTY**
DAOU VINEYARDS, LLC
C/O ROY E. OGDEN, AGENT FOR
SERVICE OF PROCESS
656 SANTA ROSA STREET, STE 2B
SAN LUIS OBISPO, CA 93401

**INTERESTED PARTY**
DAOU FAMILY ESTATES, LLC
ATTN: DANIEL J. DAOU
2777 HIDDEN MOUNTAIN ROAD
PASO ROBLES, CA 93446

**INTERESTED PARTY**
NAKEDWINES.COM
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
136 GASSER DRIVE, SUITE A
NAPA, CA 94559

**INTERESTED PARTY**
RANGELAND WINES
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
6996 PEACHY CANYON ROAD
PASO ROBLES, CA 93446

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.