D. EDWARD HAYS, #162507
ehays@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>NORTHERN HOLDING, LLC,<br><br>Debtor. | Case No. 8:20-bk-13014-ES<br><br>Chapter 7<br><br>CHAPTER 7 TRUSTEE'S MOTION TO AUTHORIZE CASH DISBURSEMENTS PURSUANT TO COURT-APPROVED STIPULATION FOR SUBORDINATION RE SALE PROCEEDS OF 2380 LIVE OAK ROAD, PASO ROBLES, CA; DECLARATION OF RICHARD A. MARSHACK; AND REQUEST FOR JUDICIAL NOTICE<br><br>Date:     May 5, 2022<br>Time:     10:30 a.m.<br>Ctrm:     5A[1]<br>Location:  United States Bankruptcy Court<br>        411 West Fourth Street<br>        Santa Ana, CA 92701-4593 |

TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Richard A. Marshack, the duly appointed and acting chapter 7 trustee ("Trustee") for the

bankruptcy estate ("Estate") of Northern Holding, LLC ("Debtor"), files this motion for order

authorizing the interim distribution of funds derived from the sale of real property commonly known

as 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property" or "Property") pursuant to 11

U.S.C. § 363. In support of this Motion, Trustee represents as follows:

---

[1] Hearing via ZoomGov.

## 1.    Summary of Argument

In a chapter 7 case, dividends to creditors shall be paid as promptly as practicable. In this case, after closing the sale of the Live Oak Property, Trustee made distributions of over $8 million to creditors and held the remainder of certain funds in reserve pursuant to an agreement with secured creditor, Farm Credit West, FCLA ("FCW"). FCW has already agreed in writing to the payment of certain items from the monies being held in the Estate's bank account including significant administrative fee reserves. By this motion, Trustee seeks entry of an order authorizing interim distributions from these administrative reserves to administrative creditors including interim compensation to Trustee and his retained professionals. Good cause exists to authorize these interim distributions to minimize ordinary-course bank fees which would unnecessarily deplete the Estate to the detriment of non-administrative creditors. Concurrently with this Motion, Estate professionals will be seeking approval of interim compensation. Due to the complexity of the case, the nature of the assets to be sold, and the various competing interests in the properties, Trustee's counsel has had to be very actively involved with the case, the firm's bills to date exceed $277,000 in fees and $13,729 in costs. Additionally, Trustee and his administrator have collectively logged over 330 hours in connection with this case, with Trustee accounting for over 259 of such hours. By this Motion, Trustee seeks only a partial payment of the accrued and owed administrative expenses from the specifically subordinated and segregated administrative expense reserve set up pursuant to the "carve-out" agreement with FCW and approved by the Court

## 2.    Factual Background

### A.    Pre-Petition

Erich Russell was the former owner and operator of Rabbit Ridge Winery ("Rabbit Ridge"), which was as of October 2020 located at 1172 San Marcos Road, Paso Robles, CA ("San Marcos Property"). To finance his business operations, Mr. Russell borrowed substantial sums of money from Farm Credit West, FLCA ("FCW"), which loans were secured certain assets including substantially all assets of Rabbit Ridge and Properties.[2]

---

[2] In additional to the Live Oak Property, Debtor is the title owner of real property, located at 1172 San Marcos Road, Paso Robles, CA ("San Marcos Property"), which includes a turnkey winery production facility and

On or about October 28, 2020, Mr. Russell signed quitclaim deeds transferring the Properties to Debtor. These quitclaim deeds were recorded on the same date. Additionally, ownership and control of Rabbit Ridge passed to LeRoy Codding ("Mr. Codding").

## B.    The Bankruptcy Case

On October 28, 2020 ("Petition Date"), Northern Holding, LLC, a Minnesota limited liability company (previously defined as "Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. Debtor's managing member was Mr. Codding.

On October 29, 2020, as Dk. No. 5, FCW filed a notice of continuation of perfection of security interest and demand to sequester cash collateral.

On November 6, 2020, as Dk. No. 11, FCW filed a motion for relief from the automatic stay regarding the Live Oak Property and Debtor's other two properties (which are not relevant for this motion). In short, FCW has a blanket lien in the approximate amount of $19-20 million over all assets of Debtor including the Properties.

On June 15, 2021, the case was converted to Chapter 7. Richard A. Marshack was appointed as the Chapter 7 trustee.

On July 28, 2021, as Dk. No. 159, Trustee filed a notice of assets. The Court set a claims bar date of November 1, 2021 ("Bar Date"). By the Bar Date, only eight proofs of claim had been filed, and only one proof of claim was filed as a partial general unsecured claim – the claim by the Franchise Tax Board in the amount of $10,297.92 (priority claim: $3,529.47). Thus, the vast majority of the nearly $30 million in claims are comprised of secured and administrative or priority unsecured claims.

On September 28, 2021, Trustee and Riboli Paso Robles, LLC ("Buyer") executed a purchase and sale agreement ("PSA") for those specified assets listed and described in Article I of the PSA (which includes, essentially, the Live Oak Property). Under the PSA, Buyer would continue conducting its due diligence which includes drilling exploratory water wells to determine the level of water at the Live Oak Property for future agricultural use. Due diligence for Buyer

real property identified as APN 027-145-022 in Paso Robles, CA ("Texas Road Property"). The Live Oak Property, San Marcos Property and Texas Road Property are collectively referred to as "Properties."

MOTION FOR ORDER AUTHORIZING INTERIM DISTRIBUTIONS
4833-0726-0118,v.1

1  continued with, among other things, exploratory well drilling (explained below).

2  On December 20, 2021, as Dk. No. 264, Trustee filed a motion to approve settlement and

3  partial subordination agreement with FCW, where FCW consented to certain terms for the sale of the

4  Live Oak Property and agreed to the payment of certain line-item expenses and compensation from

5  proceeds of the Live Oak Property ("Compromise Motion"). A true and correct copy of the

6  Compromise Motion is attached to the Request for Judicial Notice ("RJN") as Exhibit "1."

7  On January 14, 2022, as Dk. No. 276, the Court entered an order granting the Compromise

8  Motion ("Compromise Order"). A true and correct copy of the Compromise Order is attached to the

9  RJN as Exhibit "2."

10  On January 31, 2022, as Dk. No. 284, Trustee filed a stipulation between himself and FCW

11  regarding an additional stipulated line item out of the sale of the Live Oak Property for $6,000 to

12  Trustee's professionals to explore a negotiation with San Luis Obispo County to reduce the tax

13  liabilities owed on the San Marcos Property ("Tax Expense Stipulation").

14  On February 14, 2022, as Dk. No. 286, the Court entered an order approving the Tax

15  Expense Stipulation ("Tax Expense Order"). A true and correct copy of the Tax Expense Order is

16  attached to the RJN as Exhibit "3."

17  On February 24, 2022, upon the retirement of presiding judge Mark S. Wallace, the case was

18  reassigned to the Honorable Erithe A. Smith.

19  ## C.    Due Diligence and Sale Motion

20  On September 7, 2021, as Dk. No. 211, the Court entered an order approving the Operate

21  Motion ("Operate Order"). The harvest period has now ended as of November 2021 and Trustee has

22  been collecting crop proceeds.

23  On October 4, 2021, as Dk. No. 227, Trustee filed a motion for order authorizing water well

24  drilling on property to allow Buyer to acquire water data ("Drilling Motion").

25  On November 1, 2021, as Dk. No. 242, the Court entered an order granting the Drilling

26  Motion ("Drilling Order").

27  On January 19, 2022, as Dk. No. 278, Trustee filed a motion seeking authority to sell the

28

4833-0726-0118,v.1

Live Oak Property subject to overbid, with an initial bid price of $9,100,000 ("Sale Motion"). The Sale Motion was not substantially opposed.

On February 9, 2022, the Court conducted a hearing on the Sale Motion. No overbidders appeared and Buyer was the prevailing bidder. The parties set forth on the record that the Sale Motion would be conditionally granted pending the continuing completion of Buyer's due diligence, which had been unavoidably delayed due to circumstances outside of any party's control. After the hearing on the Sale Motion, the parties engaged in negotiations regarding the form of the sale order and Buyer completed its due diligence.

On March 4, 2022, as Dk. No. 292, the Court entered an order granting the Sale Motion ("Sale Order"). A true and correct copy of the Sale Order is attached to the RJN as Exhibit "4." Among other things, the Sale Order, paragraph 6 provided as follows:

e.      Trustee is authorized to receive the reduced compensation equal to 2.25% of the purchase price out of escrow, to be held pending further order;

f.      Trustee is authorized to receive $100,000 out of escrow and hold such amount for the purpose of paying attorneys' fees;

[…]

k.      Pursuant to the Stipulation filed as Docket No. 284 and express consent by FCW, Trustee is further authorized to receive and hold $6,000 for the purpose of paying attorneys' fees for the initial investigation into reducing property tax liabilities for the San Marcos Property…

This Motion follows to authorize payment of the held funds, totaling $310,750, to the interim payment of administrative expenses, divided as follows:

$106,000 – Marshack Hays LLP ($100,000 + $6,000)

$204,750 – Richard A. Marshack, Chapter 7 Trustee (2.25% of gross sale price)

On March 15, 2022, the sale of the Live Oak Property closed.

On March 18, 2022, as Dk. No. 299, Trustee filed a statement of property sold attaching the escrow closing statement for the Live Oak Property. A true and correct copy of the statement of

MOTION FOR ORDER AUTHORIZING INTERIM DISTRIBUTIONS

property sold is attached to the RJN as Exhibit "5."

## D. Post-Sale Allocation of Live Oak Proceeds

The proceeds of the sale of the Live Oak Property were distributed as follows:

| Description | Amount |
| --- | --- |
| Property Taxes (San Luis Obispo County) | $67,972.66 |
| Closing costs including transfer tax | $26,717.45 |
| Real Estate Commissions to Onyx (1.75%) | $159,250 |
| Real Estate Commission to Hilco (1.75%) | $159,250 |
| Farm Credit West, FCLA | $8,312,289.11 |
| ESTATE FUNDS ALLOCATED: | |
| Liability Insurance Reimbursement | $6,770.78 |
| Insurance Reserve | $15,000 |
| Miscellaneous Payment | $30,000 |
| Field Agent Fees | $12,000 |
| Trustee's Compensation (@ 2.25%) | $204,750 |
| Attorneys' Fees | $106,000 |
| ESTATE TOTAL | $374,520.78 |

As shown in the table above, Trustee made direct disbursements totaling around $8.7 million in connection with the sale of the Live Oak Property, and is holding $374,520.78 pending further order of the Court. Specifically, Trustee is holding a segregated administrative reserve of $310,750 ("Segregated Funds") for payment of Trustee's compensation and allowed attorneys' fees, pursuant to the subordination "carve-out" agreement with FCW and approved by this Court.

## E. Farm Operations and Collections

On August 9, 2021, as Dk. No. 186, Trustee filed a motion to approve a farm operator agreement and to authorize operations at the Properties for the limited purpose and scope of completing the Fall 2021 harvest with the assistance of a farm operator ("Operate Motion"). Under the agreement attached to the Operate Motion, the farm operator was to advance all costs of farming and seek reimbursement and compensation from the Estate after all proceeds had been paid to the Estate.

MOTION FOR ORDER AUTHORIZING INTERIM DISTRIBUTIONS
4833-0726-0118,v.1

On September 7, 2021, as Dk. No. 211, the Court entered an order granting the Operate Motion and providing for a stipulated structure for distribution of cash collateral – all proceeds of grape crops were cash collateral of FCW.

By March 31, 2022, Trustee collected $242,485.12 in gross proceeds from the sale of grape crops grown on the Properties. No further collections are anticipated.

On April 1, 2022, as Dk. No. 304, Trustee filed a motion for issuance of an order to show cause re: civil contempt against LeRoy Codding ("Codding") for, *inter alia*, his diversion and direct receipt of crop proceeds constituting property of the Estate ("OSC Motion").

## 3.    Legal Argument

"In a chapter 7 case, dividends to creditors shall be paid as promptly as practicable." Fed. R. Bankr. Proc. 3009.

### A.    Interim distributions may be authorized.

"The determination of when an administrative expense is to be paid is within the discretion of the trial court." *In re Verco Industries*, 20 B.R. 664, 665 (B.A.P. 9th Cir. 1982). "Courts take into account several factors in determining whether an administrative expense should be paid immediately: [1] the likelihood all administrative claims will be paid in full; [2] whether the administrative claimant could repay any payment that proves to be excessive; [3] the status of the case …; [4] whether the expense was incurred in the ordinary course of the debtor's business." *In re GPLA, Inc.*, 2016 Bankr. LEXIS 3085 at *6 (Bankr. C.D. Cal. August 22, 2016) (Kwan, J.) (quoting 3 March, Ahart, and Shapiro, *California Practice Guide: Bankruptcy*, ¶ 17:730).

Here, the Court ordered Trustee to hold certain specified sums pending a subsequent order of the Court, which sums were specifically reserved for the payment of Trustee's Chapter 7 administrative expenses. First, Trustee was to receive and hold a sum equal to 2.25% of the gross purchase price of the Live Oak Property ($9,100,000)[4] from the collateral proceeds from FCW – a sum of $204,750. Second, Trustee was to receive and hold $106,000 specifically designated for the

---

[4] Pursuant to 11 U.S.C. § 326, Trustee would be entitled to compensation of $296,250 on distributions of $9,100,000. The requested amount represents an approximate discount and reduction of $90,000 from the statutory compensation amount and a significant concession by Trustee.

1   payment of Chapter 7 attorneys' fees. Because these sums were specially designated collateral

2   distributions, they cannot be used for any purpose other than for the interim or final payment of

3   administrative expenses. Because bank fees accrue on a monthly basis as a percentage of the total

4   amounts held in the Estate's bank accounts, any further holding of these funds represents an

5   unnecessary depletion of the Estate. There is good cause to authorize payment of these interim

6   distributions of $204,750 to the Trustee and $106,000 to Trustee's attorneys Marshack Hays LLP,

7   for the payment of interim compensation of approved attorneys' fees. Concurrent with this Motion,

8   Trustee's counsel seeks approval of interim fees and expenses.

9        **B.    Payments may be allowed on an interim basis.**

10           "A trustee, an examiner, a debtor's attorney, or any professional person employed under

11  section 327 or 1103 of this title may apply to the court not more than once every 120 days after an

12  order for relief in a case under this title, or more often if the court permits, for such compensation for

13  services rendered before the date of such an application or reimbursement for expenses incurred

14  before such date as is provided under section 330 of this title. After notice and a hearing, the court

15  may allow and disburse to such applicant such compensation or reimbursement." 11 U.S.C. § 331.

16  "[W]hen counsel must wait an extended period for payment, counsel is essentially compelled to

17  finance the reorganization… a result that is clearly contrary to Congressional intent." *In re Knudsen*

18  *Corp.*, 84 B.R. 668, 672 (B.A.P. 9th Cir. 1988); *see also In re Commercial Consortium of*

19  *California*, 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991). Four factors may be considered by the Court

20  when determining whether to authorize interim compensation: "(1) The current availability of funds

21  from which fees can be disbursed; (2) The existence and amount of other accrued administrative

22  obligations of the same or higher priority that might exhaust available funds; (3) the continuing need

23  for funds to pay the necessary administrative expenses likely to be incurred in completing the

24  administration of the case; and (4) Inability to file a final fee application in the near future."

25  *Commercial Consortium*, 135 B.R. at 124-25. Interim fee awards are subject to final approval.

26  *Leichty v. Neary (In re Strand)*, 375 F.3d 854, 858 (9th Cir. 2004).

27

28

MOTION FOR ORDER AUTHORIZING INTERIM DISTRIBUTIONS
4833-0726-0118,v.1

By this Motion, Trustee seeks entry of an order authorizing the interim payment of administrative expenses. All four factors are satisfied for allowance of interim compensation.

### i. Funds are available and specifically earmarked for distribution.

Pursuant the Compromise Motion and the Compromise Order, FCW agreed that $106,000 in proceeds from the sale of the Live Oak Property would be subordinated to the Estate for the payment of Chapter 7 attorneys' fees, and 2.25% of the gross sale price (totaling $204,750) would be subordinated to the Estate for the payment of Trustee's reduced compensation pursuant to 11 U.S.C. § 326. Thus, the first factor of funds available for distribution is satisfied – the funds in question are specifically earmarked for distribution to administrative creditors.

### ii. No other Chapter 7 administrative expenses may be paid from the administrative reserves.

As for the second factor of the existence and amount of other accrued administrative obligations of the same or higher priority, and the third factor of the continuing need for funds to pay ongoing administrative expenses, both factors are satisfied here with the specific line item subordinations from proceeds of the Live Oak Property. There are no other administrative expenses of any priority which are allowed to be paid from the subordinated proceeds, and the Chapter 7 administrative expenses are afforded a higher priority than the other allowed Chapter 11 priority administrative expenses of Debtor's former counsel and other expenses during the Chapter 11 operational period. Furthermore, all property of the Estate appears to be encumbered by FCW's various blanket liens, and absent consent from FCW (or an avoidance action by Trustee),[5] no administrative expenses or other creditors may be paid.

### iii. A final fee application is not anticipated in the near future.

Trustee continues to seek to sell the other properties including the San Marcos Property and the Texas Road Property, up until the time that FCW forecloses on such properties or they are

---

[5] No pre-petition avoidance actions are currently known to exist because Debtor received a day-of-bankruptcy transfer of all of its property, and Trustee understands that prior to the Petition Date, Debtor had no assets and no business activity.

MOTION FOR ORDER AUTHORIZING INTERIM DISTRIBUTIONS
4833-0726-0118,v.1

1  formally abandoned. Additionally, Trustee is in the process of negotiating with the County of San

2  Luis Obsipo regarding whether there is a basis for a stipulated avoidance of a portion of the

3  County's $3 million+ lien against the San Marcos Property. Finally, Trustee has filed an OSC

4  Motion against Codding and it is unknown whether the matter of Codding's alleged contempt can be

5  quickly resolved. It is therefore inequitable for professionals to have to wait for a final fee

6  application in order to receive earned monies which FCW has consented to be paid from its

7  collateral proceeds. All four factors weigh in favor of allowing interim payments at this time,

8  provided that the Court concurrently allows professional fees on an interim basis pursuant to 11

9  U.S.C. § 330. If the funds in the administrative reserve were not subject to the prior court-approved

10 subordination agreement, Trustee would not need to file this Motion.

## 4.    Conclusion

12  Based on the foregoing, Trustee respectfully requests that the Court enter an order that

13 provides that:

14  1.    The Motion is granted;

15  2.    Trustee may immediately disburse an interim payment of $204,750 from the

16 Segregated Funds as an interim distribution towards the Trustee's compensation pursuant to 11

17 U.S.C. § 326;

18  3.    Trustee may immediately disburse an interim payment of $106,000 from the

19 Segregated Funds as an interim distribution towards attorneys' fees, provided that such fees are

20 approved on an interim basis by the Court; and

21  4.    Such other and further relief as the Court may deem just and proper.

23  DATED: April 6, 2022                    MARSHACK HAYS LLP

25                                          By:  /s/ D. Edward Hays
                                                 D. EDWARD HAYS
26                                               TINHO MANG
                                                 Attorneys for Chapter 7 Trustee,
27                                               RICHARD A. MARSHACK

MOTION FOR ORDER AUTHORIZING INTERIM DISTRIBUTIONS
4833-0726-0118,v.1

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      I am the duly appointed and acting chapter 7 trustee ("Trustee") for the bankruptcy estates ("Estate") of Northern Holding, LLC ("Debtor").

4.      Pursuant to the Court-approved stipulation for partial subordination of the lien held by Farm Credit West, FCLA ("FCW") against property of the Estate, I effectuated the sale of real property commonly known as 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property") to Riboli Paso Robles, LLC for the price of $9,100,000. An order approving the sale was entered on March 4, 2022.

5.      In connection with the sale, I received out of escrow and am holding the following sums which were designated for the payment of administrative creditors: (1) $204,750 representing a reduced 2.25% of the purchase price of the Live Oak Property for my statutory compensation under 11 U.S.C. § 326; and (2) $106,000 representing a stipulated subordinated amount for payment of the Chapter 7 Estate's attorneys' fees in this case to my attorneys Marshack Hays LLP.

6.      Because such funds constitute property of the Estate, I am obligated to pay banking fees on the entire amount held in Estate bank accounts. Rather than unnecessarily deplete the funds of the Estate with ordinary-course bank fees, it is in the best interest of the Estate to immediately make approved disbursements to professionals, especially because the funds were specifically subordinated by FCW and are designated with the consent of FCW to the payment of allowed professional fees only.

7.      Due to the complex nature of the case and the unusual situation of the assets to be sold – over 450 acres of operational vineyards in Paso Robles with a medium-sized winery facility and a large residence – counsel has had to be very actively involved with most aspects of

MOTION FOR ORDER AUTHORIZING INTERIM DISTRIBUTIONS
4833-0726-0118,v.1

1  this case upon my appointment as Chapter 7 trustee when the case was converted from Chapter

2  11 to Chapter 7. I am informed that the outstanding accrued fees and costs for Marshack Hays

3  LLP exceed $277,000 in fees and $13,000 in costs, and the requested payment of $106,000 is

4  only a partial payment of the accrued fees and costs.

5         8.       Additionally, I have personally logged over 259 hours in the course of my

6  administration of this case, including personally reviewing and negotiating crop purchase

7  contracts, agreements for farming operations, and personally inspecting the properties in Paso

8  Robles. Collectively, I and my administrator have logged over 330 hours in this case through the

9  end of March 2022. Under 11 U.S.C. § 326, based on distributions of $9,100,000 to creditors, I

10  would be entitled to receive $296,250 in compensation – the administrative reserve of $204,750

11  is therefore a significant reduction in compensation.

12

13         I declare under penalty of perjury that the foregoing is true and correct. Executed on April 6,

14  2022.

15                                      _____

16                                          RICHARD A. MARSHACK

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER AUTHORIZING INTERIM DISTRIBUTIONS
4833-0726-0118,v.1

**REQUEST FOR JUDICIAL NOTICE**

Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy

estate ("Estate") of Northern Holding LLC ("Debtor"), through his attorneys Marshack Hays LLP,

hereby requests pursuant to Federal Rule of Evidence 201, that this Court take judicial notice of the

following documents to be considered in connection with this motion for order authorizing the

interim distribution of funds derived from the sale of real property commonly known as 2380 Live

Oak Road, Paso Robles, CA ("Live Oak Property" or "Property") pursuant to 11 U.S.C. § 363.

| | JUDICIALLY NOTICED DOCUMENTS |
|---|---|
| 1. | Chapter 7 Trustee's Motion to Approve Compromise and Subordination Agreement with Farm Credit West, FCLA Re: Distribution of Proceeds for Sale of Real Property Collateral, Waiver of Surcharge Claims for Consideration, filed on December 20, 2021, as Dk. No. 264. |
| 2. | Order Granting Chapter 7 Trustee's Motion to Approve Compromise and Subordination Agreement with Farm Credit West, FCLA Re: Distribution of Proceeds for Sale of Real Property Collateral, Waiver of Surcharge Claims for Consideration, filed on January 14, 2022, as Dk. No. 276. |
| 3. | Order Approving Stipulation Between Chapter 7 Trustee and Secured Creditor Farm Credit West, FCLA re: Voluntary Subordination of Lien for Sale of 2380 Live Oak Road, Paso Robles, CA, filed on February 14, 2022, as Dk. No. 286. |
| 4. | Order Granting Chapter 7 Trustee' Motion for Order Authorizing Sale of Real Property Located at 2380 Live Oak Road, Paso Robles, CA, filed on March 4, 2022, as Dk. No. 292. |
| 5. | Statement of Property Sold, filed on March 18, 2022, as Dk. No. 299. |

DATED: April 5, 2022                    MARSHACK HAYS LLP

                                       /s/ D. Edward Hays
                              By: _____
                                       KRISTINE A. THAGARD
                                       TINHO MANG
                                       Attorneys for Chapter 7 Trustee,
                                       RICHARD A. MARSHACK

4833-0726-0118,v.1

EXHIBIT  1

1 | KRISTINE A. THAGARD, #94401
kthagard@marshackhays.com
2 | TINHO MANG, #322146
tmang@marshackhays.com
3 | MARSHACK HAYS LLP
870 Roosevelt
4 | Irvine, California 92620
Telephone: (949) 333-7777
5 | Facsimile: (949) 333-7778

6 | Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK
7 |

8 |                 UNITED STATES BANKRUPTCY COURT

9 |          CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10 | In re                                    | Case No. 8:20-bk-13014-MW

11 | NORTHERN HOLDING, LLC,                    | Chapter 7

12 |         Debtor.                           | CHAPTER 7 TRUSTEE'S MOTION TO
                                               APPROVE COMPROMISE AND
13 |                                           SUBORDINATION AGREEMENT WITH
                                               FARM CREDIT WEST, FCLA, RE:
14 |                                           DISTRIBUTION OF PROCEEDS FOR
                                               SALE OF REAL PROPERTY
15 |                                           COLLATERAL, WAIVER OF
                                               SURCHARGE CLAIMS FOR
16 |                                           CONSIDERATION; MEMORANDUM OF
                                               POINTS AND AUTHORITIES;
17 |                                           DECLARATION OF RICHARD A.
                                               MARSHACK IN SUPPORT
18 |

19 |                                           Date:      January 10, 2022
                                               Time:      2:00 p.m.
20 |                                           Ctrm:      6C
                                               Location:  United States Bankruptcy Court
21 |                                                      411 West Fourth Street
                                                          Santa Ana, CA 92701-4593
22 |

23 | TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE

24 | OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES, ALL

25 | CREDITORS, AND/OR THEIR ATTORNEYS OF RECORD:

26 |         Richard A. Marshack, the duly appointed and acting chapter 7 trustee ("Trustee") for the

27 | bankruptcy estate ("Estate") of Northern Holding, LLC ("Debtor"), has entered into a proposed

28 |

---
                                      1
          MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

stipulation for subordination ("Agreement") with Secured Creditor, Farm Credit West, FCLA ("FCW") (Trustee and FCW are collectively referred to as the "Parties"). Trustee seeks court approval of the Agreement as being in the best interest of the estate. Pursuant to the Agreement, FCW is subordinating its lien on the Live Oak Property, Texas Road Property, and San Marcos Property (collectively "Properties") solely with regard to a limited portion of its interest in the proceeds of the sale thereof (and not on any real property itself). Also, the Trustee exchanged consideration for a waiver of various claims including surcharge claims with FCW.

## 1. Summary of Argument

A bankruptcy court can approve settlements that are fair and equitable and in the best interests of the estate. In this case, substantially all property of the Estate appears to be encumbered by FCW's security interest, and no sale is possible by the Trustee absent consent from FCW. After months of negotiations, FCW and the Trustee signed a stipulation containing terms for the consent of FCW to the sale of at least the Live Oak Property. Also, in order to simplify future potential situations, Trustee and FCW entered into a settlement regarding distributions and payments in the event that FCW forecloses on some or all of the real properties.

Approval of the Agreement will provide a benefit to creditors from administration of the Property where none would otherwise exist. This Court must decide whether to approve the Agreement a true and correct copy of which is attached to the Declaration of Richard A. Marshack ("Marshack Declaration") as **Exhibit 1**.

## 2. Factual Background

### A. Pre-Petition

Erich Russell was the former owner and operator of Rabbit Ridge Wine Sales, Inc. ("Rabbit Ridge"), which was as of October 2020 located at 1172 San Marcos Road, Paso Robles, CA ("San Marcos Property"). To finance his business operations, Mr. Russell borrowed substantial sums of money from Farm Credit West, FLCA ("FCW"), which were secured certain assets including substantially all assets of Rabbit Ridge and Properties.

EXHIBIT 1, PAGE 14

On March 23, 2007, as document no. 2007-19418 in the County of San Luis Obispo, FCW recorded a deed of trust in the principal amount of $17,500,000 against various properties owned by Erich Russell, including the San Marcos Property, adjacent farmland commonly known as the Texas Road Property, and residential real property located at 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property").

Over time, Rabbit Ridge became less successful and Mr. Russell eventually filed an individual bankruptcy petition under Chapter 11, case number 9:20-bk-10035-DS. This bankruptcy case was dismissed for cause on June 4, 2020, pursuant to motion by the United States Trustee. The dismissal order included a 180-day bar to refiling.

A subsequent foreclosure sale for the Properties was scheduled by FCW for October 29, 2020. Prior to the foreclosure date, Mr. Russell and FCW continued to discuss a possible forbearance and an extension of the foreclosure date.

On or about October 28, 2020, Mr. Russell signed quitclaim deeds transferring the Properties to Debtor. These quitclaim deeds were recorded on the same date. Additionally, ownership and control of Rabbit Ridge passed to LeRoy Codding, who operated as a *de facto* chief restructuring officer. The new chief financial officer of Rabbit Ridge was Mr. Codding's associate Steve Jones.

**B.    Statement of Facts**

On October 28, 2020 ("Petition Date"), Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code.

On October 29, 2020, as Dk. No. 5, FCW filed a notice of continuation of perfection of security interest and demand to sequester cash collateral. No motion to use cash collateral was ever filed.

On November 6, 2020, as Dk. No. 11, FCW filed a motion for relief from the automatic stay regarding the Live Oak Property and Debtor's other two properties (not relevant for this motion). In short, FCW has a blanket lien in the approximate amount of $19-20 million over all assets of Debtor including the Live Oak Property, while the estimated value of the Debtor's assets is well short of that amount. Additionally, the Trustee is informed that there may be a secured tax claim of

EXHIBIT 1, PAGE 15

1    approximately $3.5 million secured by the San Marcos Property. As such, FCW may be an
2    undersecured creditor.

3    On June 15, 2021, the case was converted to Chapter 7. Richard A. Marshack was appointed
4    as the Chapter 7 trustee. On July 16, 2021, as Dk. No. 140, the Trustee filed an application to
5    employ Onyx Asset Advisors, LLC ("Onyx") jointly with Hilco Real Estate, LLC ("Hilco") on
6    modified employment terms to market and sell the Properties on behalf of the Estate ("Broker
7    Employment Application"). On September 7, 2021, as Dk. No. 209, the Court entered an order
8    approving the Broker Employment Application, except that the payment of compensation was not
9    approved absent consent from FCW.

10    On August 9, 2021, as Dk. No. 186, the Trustee filed a motion seeking limited authority to
11    operate the Properties for the sole purpose of completing the harvest for fall 2021, with Mr. Codding
12    serving individually as the farm operator.

13    On August 26, 2021, as Dk. No. 201, Trustee and FCW filed a stipulation providing for
14    certain terms for relief from the automatic stay.

15    On September 7, 2021, as Dk. No. 210, the Court entered an order granting relief from stay
16    to FCW pursuant to the stipulated terms agreed to by Trustee and FCW. Importantly, the stipulated
17    terms provided that no enforcement action would be taken against the Live Oak Property before
18    December 1, 2021.

19    Also on September 7, 2021, as Dk. No. 211, the Court entered an order authorizing the
20    Trustee to operate for a limited purpose ("Operate Order").

21    On September 13, 2021, as Dk. No. 218, the Court entered an order compelling various
22    parties (including Rabbit Ridge and the Russells, among others) to turn the Properties over to the
23    sole control of the Trustee.

24    On September 28, 2021, Trustee and Buyer executed a purchase and sale agreement ("PSA")
25    for those specified assets listed and described in Article I of the PSA (which includes, essentially, the
26    Live Oak Property). Under the PSA, Buyer would continue conducting its due diligence which
27    includes drilling exploratory water wells to determine the level of water at the Live Oak Property for

28

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 1, PAGE 16

1   future agricultural use. Under the PSA, Buyer submitted an initial bid (contingent on ongoing due

2   diligence) to purchase the Live Oak Property for $9,100,000, subject to overbid. Trustee filed a

3   motion seeking approval of the bid procedures, which was approved in its entirety. On October 20,

4   2021, as Dk. No. 238, the Court entered an order approving the overbid procedures in their entirety

5   and setting a hearing for a sale of the Live Oak Property on December 13, 2021. Due to unforeseen

6   logistical difficulties with the drilling company (discussed below), the timeline for sale was delayed

7   to an anticipated January 2022 date instead of December 13.

8       On October 4, 2021, as Dk. No. 227, the Trustee filed a motion seeking authority to permit

9   Miller Drilling Company to assist Buyer with its due diligence by drilling water wells on the Live

10  Oak Property.

11      On October 31, 2021, Trustee's authorization to operate under the Court's Operate Order

12  expired. After this date, no operations, including farming and wine processing (which was never

13  authorized in the first place) were allowed at the Properties.

14      On November 1, 2021, as Dk. No. 242, the Court entered an order authorizing the water

15  wells to be drilled. Subsequently, Miller Drilling informed the Buyer and the Trustee that due to

16  prior commitments and a full schedule, it would be unable to commence drilling until late December

17  or early January at the latest.

18      On December 9-10, 2021, Trustee's agent Lori Ensley visited the Properties and, with the

19  assistance of FCW's representatives and a locksmith, fully re-keyed the Properties to prevent

20  unauthorized entities or individuals from accessing the Properties. On those dates, Ms. Ensley

21  discovered a crew of workers for Rabbit Ridge apparently using the San Marcos Property for

22  unauthorized purposes. Trustee's investigation continues.

23      On December 10, 2021, FCW's representative signed a stipulation with the Trustee regarding

24  the partial subordination of its lien pursuant to the terms set forth in the stipulation (previously

25  defined as "Agreement"). A true and correct copy of the executed Agreement is attached to the

26  Marshack Declaration as **Exhibit 1.**

27      Also on December 10, 2021, the Trustee transmitted a letter agreement to FCW regarding the

28

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 1, PAGE 17

1  clarification of certain terms. FCW's representative countersigned the letter agreement. A true and

2  correct copy of the letter agreement is attached to the Marshack Declaration as **Exhibit 2.**

3  **3.    Details of Compromise/Subordination Agreement**

4          FCW consents to the sale of the Live Oak Property consistent with the terms set forth in the

5  Agreement, and consents to the sale of the Live Oak Property **only**, free and clear of its lien pursuant

6  to 11 U.S.C. § 363(f)(2), provided that the Agreement is approved in its entirety (or, in the event of

7  any modification by the Court, FCW accepts such modifications).

8          The following is a summary of the substantive terms of the Agreement.[1]

9          Generally, FCW consented to the Trustee's marketing of the Properties and consented to the

10  Trustee's sale of the Live Oak Property provided that it would receive at least $8,250,000 in

11  proceeds from sale. FCW also agreed to the payment of various line items out of escrow to the

12  Trustee, his professionals, and to pay various other expenses and claims of the Estate.

13          FCW consented in principle to the payment of certain line items out of escrow if the Trustee

14  presented an acceptable offer for the sale of either the San Marcos Property or the Texas Road

15  Property. However, FCW has not consented to the sale of either property.

16          Finally, the Trustee agreed, subject to approval of the Court, to provide a waiver of claims

17  regarding the validity, priority, and extent of FCW's secured claim and also to waive any claim for

18  surcharge against FCW. In exchange, FCW provided the partial subordination described in the

19  Agreement and further agreed to provide a certain reimbursement of costs even if only some of the

20  Properties were foreclosed by FCW. For example, paragraph 9 of the Agreement provides a structure

21  of line item and lump sum payments to the Estate in the event that all three Properties are foreclosed

22  by FCW and no sale occurs. On the other hand, paragraph 10 of the Agreement provides that in the

23  event that some but not all of the Properties are sold by the Trustee, and FCW ultimately forecloses

24  on the remaining Properties, the Estate will receive an allocation of $30,000 per foreclosed property

25

26

27  ----
[1] All interested parties are advised to consult the Agreement for all terms and conditions. The statements contained
herein are a summary of the material terms and conditions only.

28

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 1, PAGE 18

as a settlement of the surcharge issues (in addition to any disbursements out of escrow). As such, the Agreement provides a benefit to the Estate and avoids further litigation costs and uncertainties.

## 4.    Legal Argument

"A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

### A.    Approval of the Agreement is in the best interest of the Estate.

Under Rule 9019, the court may approve a compromise or settlement on motion by the trustee. Fed. R. Bankr. Proc. 9019. It is well-established that a compromise should be approved if it is "in the best interest of the estate . . . and is fair and equitable for the creditors." *Schmitt v. Ulrich (In re Schmitt)*, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997); *ATKN Company v. Guy F. Atkinson Company of California (In re Guy F. Atkinson Company)*, 242 B.R 497, 502 (B.A.P. 9th Cir. 1999) ("At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate.") The standards to be applied to the approval of a settlement include:

1)    the probability of success of the litigation on its merits;

2)    the difficulties in collection on a judgment;

3)    the complexity of the litigation involved; and

4)    the expense, inconvenience or delay occasioned by the litigation, and the interest of creditors.

*United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (quoting *In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1989)).

In this case, all of the *A&C* factors weigh in favor of approving the compromise. Under the Agreement, Trustee can resolve the dispute between the Parties, obtain a definite recovery for the Estate, eliminate administrative and litigation costs, and can move forward to administer the Estate's assets for the benefit of the Debtor's creditors. The only claims being compromised pursuant to the Agreement are claims regarding the validity of FCW's secured claim and surcharge.

EXHIBIT 1, PAGE 19

### i.    Probability of success

"The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c). To prevail on surcharge, the trustee must show that his "expenses were reasonable, necessary, and provided a quantifiable benefit to the secured creditor." *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1068 (9th Cir. 2001). The trustee bears the burden of proof, and the analysis is not simple. *See USDA v. Hopper (In re Colusa Regional Medical Center)*, 604 B.R. 839, 853-58 (B.A.P. 9th Cir. 2019).

Regarding the validity of FCW's secured claim, the probability of success is low. Trustee knows of no dispute regarding the validity and perfection of FCW's secured claim, which was recorded over 10 years ago. Also, regarding surcharge claims under 11 U.S.C. § 506(c), as cited above, the analysis is not simplistic to obtain surcharge. While the Trustee believes that substantially all of his administration of the Properties has directly benefited FCW, and all actions he has taken were to preserve and maintain the Properties constituting FCW's collateral to the best of his ability, neither of the Parties wishes to litigate over the surcharge issues. The probability of success for the surcharge issues is highly uncertain, and this factor weighs strongly in favor of settlement rather than litigation.

### ii.    Difficulties in collection

The Trustee is informed that FCW is solvent and, in the event of litigation, there would not be a difficulty in collecting a money award against FCW. However, given the greatly uncertain likelihood of success and continued expense, convenience, and delay of further litigation, settlement is appropriate.

### iii.    Complexity

As discussed above, the only issue that might be litigated is the issue of surcharge. However, to obtain a full judicial determination of the issues surrounding surcharge, without the agreement by

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 1, PAGE 20

1  FCW that there was any benefit to FCW, the analysis would be unduly complex especially with

2  regard to quantifying any benefit to FCW. Debtor apparently kept poor written records and to sort

3  out the factual issues related to benefit would be complicated, and may involve reconstructing the

4  history of the Properties at great expense to the Estate (and FCW). Rather than to litigate these

5  issues, and sort out the complex question of quantifying the benefit to FCW by the Trustee's

6  administration, the Parties agreed to settle.

7             iv.    **Expense, inconvenience or delay**

8        Absent consent by FCW to the sale of any of the Properties, the Trustee could not sell any of

9  the Properties, and would be forced to litigate just the issues of possible surcharge upon

10  abandonment. *See In re KVN Corp.*, 514 B.R. 1, 6 (B.A.P. 9th Cir. 2014) ("sales of fully

11  encumbered assets are generally improper… the trustee's proper function is to abandon the property,

12  not administer it…"). And, in the event of litigation over the surcharge issues, there would be great

13  administrative expense and delay in the administration of the case.

14     **B.    The Subordination Provisions of the Agreement Provide Substantial**

15           **Benefits to the Estate**

16        Trustee does not believe that the subordination provision set forth in the Agreement

17  constitutes a "carve-out." Instead, the Agreement between the Parties effectuates a partial voluntary

18  subordination of FCW's secured claim pursuant to the terms stated in the Agreement. To the extent

19  the Court, however, determines that the subordination provisions of the agreement constitute a

20  carve-out, the requirements for approval of such a carve-out are met here. The requirements for

21  approval of a carve-out are: (1) whether the trustee "fulfilled his or her basic duties;" (2) whether

22  there is "a benefit to the estate, i.e., prospects for a meaningful distribution to unsecured creditors;"

23  (3) whether "the terms of the carve-out agreement been fully disclosed to the bankruptcy court." *See*

24  *In re KVN Corp.*, 514 B.R. at 8.

25        First, the Trustee has fulfilled his basic duties. The Trustee's basic duty is to administer

26  assets of the Estate, including maintaining the value of collateral and to liquidate any value available

27  for the benefit of creditors utilizing the Bankruptcy Code. By entering into the Agreement, the

28

EXHIBIT 1, PAGE 21

1  Trustee is generating a significant return for unsecured creditors, including specific separate

2  provisions for attorneys' fees, reduced professional fees in terms of broker and Trustee

3  compensation, and a separate sum for the benefit of unsecured creditors.

4      Second, there is a benefit to the Estate by approval of the Agreement. The Estate will realize

5  benefit primarily from the sale of the Properties and the collection of proceeds from the sale of

6  grapes from the fall 2021 harvest, which are estimated to be a gross collection of approximately

7  $300,000 to $400,000, with expenses to be determined. After payment of direct harvest expenses,

8  the Trustee anticipates that there will be a substantial sum to be divided between the Estate and FCW

9  pursuant to previously-approved terms for the division of such proceeds. By approval of the

10  Agreement, the Estate will further realize a benefit from the sale of the Properties.

11      Finally, the full agreement has been attached to the Marshack Declaration. The terms have

12  been fully disclosed to the Court.

13  **5.    Conclusion**

14      Because approval of the Agreement provides a sure benefit to the Estate when none would

15  otherwise likely not exist, Trustee respectfully requests that this Court enter an order:

16      1.    Granting the Motion;

17      2.    Approving the Agreement attached as **Exhibit 1** to the Marshack Declaration;

18      3.    Approving the letter agreement attached as **Exhibit 2** to the Marshack Declaration;

19      4.    Authorizing the Trustee to execute the Agreement and implement its terms, including

20  to distribute funds from a future sale of any of the Properties in accordance with the terms of the

21  Agreement; and

22      5.    For such other relief as the Court deems just and proper.

23  DATED: December 20, 2021                MARSHACK HAYS LLP

24

25                                          /s/ Tinho Mang
                                    By: _____
26                                      KRISTINE A. THAGARD
                                        TINHO MANG
27                                      Attorneys for Chapter 7 Trustee,
                                        RICHARD A. MARSHACK
28

EXHIBIT 1, PAGE 22

### Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare as follows:

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.     I am the duly appointed and acting chapter 7 trustee ("Trustee") for the bankruptcy estates ("Estate") of Northern Holding, LLC ("Debtor"), the title owner of real property commonly known as 2380 Live Oak Road, Paso Robles, CA ("Live Oak Property").

4.     Since my appointment, I have been negotiating with Farm Credit West, FCLA ("FCW") regarding a consensual sale of the Debtor's real properties. It was only on December 10, 2021 that FCW's representative signed the settlement and subordination agreement, which went through months of revisions, including probably over one dozen versions of the agreement. Each term of the agreement was extensively negotiated.

5.     A true and correct copy of the executed settlement and subordination agreement ("Agreement") is attached here as **Exhibit 1.**

6.     I prepared a letter agreement on December 10, 2021 setting forth certain clarifications to the Agreement and explaining the factual developments subsequent to the drafting of the Agreement. FCW's representative countersigned the letter agreement, which is attached as **Exhibit 2.**

7.     I have consulted with my counsel and considered the probability of success, the difficulties in collection, the complexity of any litigation, and the expense, inconvenience or delay occasioned with any litigation regarding the validity of FCW's secured claim and the issues regarding surcharge. Based on my investigation and familiarity with the issues, and the many hours I have spent attempting to negotiate this agreement, I believe in my business judgment that it is in the best interest of creditors for the Court to approve the Agreement and the letter agreement.

---

MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT
4833-0726-0118,v.1

EXHIBIT 1, PAGE 23

8.     I do not believe that the subordination provision set forth in the Agreement constitutes a "carve-out." However, to the extent the Court determines the provisions of the Agreement may be construed as a carve-out, the requirements for approval of a carve-out are met here, as set forth in the Motion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 20, 2021.

_____
RICHARD A. MARSHACK

12
MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT

4833-0726-0118,v.1

**EXHIBIT 1**

D. EDWARD HAYS, #162507
ehays@marshackhays.com
DAVID A. WOOD, #272406
dwood@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt Avenue
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>NORTHERN HOLDING, LLC,<br><br>       Debtor. | Case No. 8:20-bk-13014-MW<br><br>Chapter 7<br><br>STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND SECURED CREDITOR FARM CREDIT WEST, FCLA RE: VOLUNTARY SUBORDINATION OF LIEN FOR SALE OF 2380 LIVE OAK ROAD, PASO ROBLES, CA<br><br>[HEARING TO BE SET] |

TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

      This stipulation is entered into between Richard A. Marshack, in his capacity as Chapter 7

Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), on

one hand, and Farm Credit West, FCLA ("FCW"), on the other hand, with regard to the voluntary

subordination of certain aspects of FCW's lien to the extent and only under the conditions stated

below. Collectively, the Trustee and FCW will be referred to as the "Parties."

EXHIBIT 1, PAGE 13
EXHIBIT 1, PAGE 26

# Recitals

A.      On March 23, 2007, as document no. 2007-19418 in the County of San Luis Obispo, FCW recorded a deed of trust in the principal amount of $17,500,000 against various properties owned by Erich Russell, including the Live Oak Property (defined below).

B.      On October 28, 2020, Debtor filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the United States Code, initiating the above-captioned bankruptcy case. FCW is the senior secured lender holding a lien on substantially all assets of the Debtor.

C.      On June 15, 2021, the case was converted to Chapter 7 and the Trustee was appointed as the Chapter 7 trustee for the Estate.

D.      On August 26, 2021, as Dk. No. 201, Trustee filed a stipulation between him and FCW regarding stipulated relief from stay as to the Debtor's real properties effective as of December 1, 2021 ("Enforcement Date").

E.      On September 7, 2021, as Dk. No. 210, the Court entered an order approving the stipulated terms for relief from stay as between Trustee and FCW ("Stay Relief Order"). The execution of this stipulation does not in and of itself satisfy the condition in paragraph 4 of the Stay Relief Order extending the Enforcement Date.

F.      On September 28, 2021, Trustee signed a purchase and sale agreement ("PSA") with Riboli Paso Robles, LLC ("Buyer") regarding real property commonly known as 2380 Live Oak Road, Paso Robles, CA, and only to the extent of the rights being sold pursuant to the paragraph 1.1 of the PSA ("Live Oak Property").

G.      Under the PSA, Buyer submitted an initial bid (contingent on ongoing due diligence) to purchase the Live Oak Property for $9,100,000, subject to overbid. Trustee filed a motion seeking approval of the bid procedures, which was approved in its entirety. On October 20, 2021, as Dk. No. 238, the Court entered an order approving the overbid procedures in their entirety and setting a hearing for a sale of the Live Oak Property on December 13, 2021.

H.      Trustee acknowledges that the Live Oak Property appears to be fully encumbered by FCW's deed of trust and has entered into this stipulation with FCW for the voluntary subordination of FCW's lien solely to the extent stated below. FCW enters into this stipulation to facilitate the sale

EXHIBIT 1, PAGE 14
EXHIBIT 1, PAGE 27

of the Live Oak Property and to avoid further litigation over the distribution of proceeds including any right of the Trustee pursuant to 11 U.S.C. § 506(c), regarding the other properties. This Stipulation shall not extend to any other property of the Estate other than that which is specifically identified herein.

The Parties agree and STIPULATE as follows:

1.     FCW consents to the sale of the Live Oak Property consistent with the terms set forth below, and consents to the sale of the Live Oak Property **only**, free and clear of its lien pursuant to 11 U.S.C. § 363(f)(2), provided that this Stipulation is approved in its entirety (or, in the event of any modification by the Court, FCW accepts such modifications). The approved legal description of the Live Oak Property for which FCW consents to sale is appended to this Stipulation as **Exhibit "1"** and incorporated by reference. By signing this stipulation, FCW does not consent to the sale of any other property.

2.     Subject to its consent to sale, FCW agrees to voluntarily subordinate its lien on the Live Oak Property, Texas Road Property, and San Marcos Property (collectively "All Properties" or "the Properties" and as to the Texas Road Property and San Marcos Property (collectively "TS Adjoining Properties") **solely with regard to a limited portion of its interest in the proceeds of the sale thereof** (and not on any real property itself), and solely to pay the following line items, unless otherwise noted:

    a.     As to Live Oak Property from the Live Oak Property sale proceeds:   All reasonable closing costs for the sale of the Live Oak Property, which include and are estimated as follows: settlement fee (est. $500), title search fees (est. $250), escrow fees (est. $9,000), title insurance (est. $20,000), and county transfer taxes (calculated at $1.10 per $1000 of gross purchase price), which shall be pro-rated and allocated between buyer and seller pursuant to paragraph 7.6 of the PSA, and otherwise as customary between buyer and seller.

    b.     [Reserved].

c.    As to All Properties from the Live Oak Property sale proceeds: All reasonable and actually expended costs of maintaining insurance for assets of the Estate up through the close of escrow or when the assets/properties cease to be property of the Estate, including the $6,770.68 advanced and expended by Trustee for commercial liability insurance, approximately $6,800 advanced by Lee Codding through October 2021 to maintain insurance on the Live Oak Property (and at the ongoing rate of $1,700 per month for four months since June 2021), and an additional reserve to maintain future insurance in the amount of $15,000, which shall be held by Trustee in a segregated account and, in the event of any unused portion, shall be returned to FCW without need for further order of the Court.

d.    As to Live Oak Property from the Live Oak Property sale proceeds:  The sum of $100,000 for the Trustee's attorneys' fees for the Estate through the date of closing escrow on the Live Oak Property, which amount shall be held in a segregated account by the Trustee pending Court approval of Trustee's attorneys' fees (for informational purposes as of November 30, 2021, the outstanding balance for attorneys' fees for the Trustee exceeds $170,000).

e.    As to the San Marcos Property from the San Marcos Property sale proceeds: The sum of $60,000 for the Trustee's attorneys' fees for the Estate through the date of closing escrow on the San Marcos Property, which amount shall be held in a segregated account by the Trustee pending Court approval of such fees.

f.    As to the Texas Road Property from the Texas Road Property sale proceeds: The sum of $30,000 for the Trustee's attorneys' fees for the Estate through the date of closing escrow on the Texas Road Property, which amount shall be held in a segregated account by the Trustee pending Court approval of such fees.

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 16
EXHIBIT 1, PAGE 29

g.    As to the Live Oak Property, from the Live Oak Property sale proceeds: Broker's fees for the Estate's jointly employed broker Hilco Real Estate, LLC ("Hilco") in the amount of 1.75% of the gross sale price of the Live Oak Property, which shall be paid directly out of escrow.

h.    As to the Texas Road Property from the Texas Road Property sale proceeds: Broker's fees for the Estate's jointly employed broker Hilco in the amount of 1.75% of the gross sale price of the Texas Road Property, which shall be paid directly out of escrow.

i.    As to the San Marcos Property from the San Marcos Property sale proceeds: Broker's fees for the Estate's jointly employed broker Hilco in the amount of 1.75% of the gross sale price of the San Marcos Property, which shall be paid directly out of escrow.

j.    As to the Live Oak Property, from the Live Oak Property sale proceeds: Broker's fees for the Estate's jointly employed broker Onyx Asset Advisors, LLC ("Onyx") in the amount of 1.75% of the gross sale price of the Live Oak Property, which shall be paid directly out of escrow.

k.    As to the Texas Road Property from the Texas Road Property sale proceeds: Broker's fees for the Estate's jointly employed broker Onyx in the amount of 1.75% of the gross sale price of the Texas Road Property, which shall be paid directly out of escrow.

l.    As to the San Marcos Property from the San Marcos Property sale proceeds: Broker's fees for the Estate's jointly employed broker Onyx in the amount of 1.75% of the gross sale price of the San Marcos Property, which shall be paid directly out of escrow.

m.    As to the Live Oak Property, from the Live Oak Property sale proceeds: Compensation for the Trustee in an amount equal to 2.25% of the gross purchase price of each of the Live Oak Property, which amount shall be held

EXHIBIT 1, PAGE 17
EXHIBIT 1, PAGE 30

1    in a segregated account by the Trustee pending Court approval of Trustee's

2    compensation under 11 U.S.C. § 326.

3    n.    As to the Texas Road Property, from the Texas Road Property sale proceeds:

4    Compensation for the Trustee in an amount equal to 2.25% of the gross

5    purchase price of each of the Texas Road Property, which amount shall be

6    held in a segregated account by the Trustee pending Court approval of

7    Trustee's compensation under 11 U.S.C. § 326.

8    o.    As to the San Marcos Property from the San Marcos Property sale proceeds:

9    Compensation for the Trustee in an amount equal to 2.25% of the gross

10    purchase price of each of the San Marco Property, which amount shall be held

11    in a segregated account by the Trustee pending Court approval of Trustee's

12    compensation under 11 U.S.C. § 326.

13    p.    As to All Properties:  An additional $30,000 per closed sale transaction to be

14    paid solely from the proceeds of that sale which the Trustee consummates for

15    miscellaneous contribution for the benefit of the Estate to pay other

16    administrative expenses and other creditor claims.  This subparagraph shall

17    not apply for any sale transaction that does not close.

18    q.    As to Live Oak Property as noted and as to TS Adjoining Properties as noted:

19    The sum of $12,000 for the Trustee's field agent Lori Ensley of Bicher &

20    Associates and other professionals, including accountants and agents, or any

21    other permitted administrative expense, which shall be held by the Trustee and

22    paid according to the approved procedures set forth in the field agent's

23    employment application. As to TS Adjoining Properties, the actual amount for

24    services invoiced by Trustee's field agent or other permitted administrative

25    expenses not to exceed $12,000 per property.

26    r.    As to All Properties:  To the extent not paid directly by FCW, actual and

27    reasonable costs of securing and maintaining the properties including cost of

28

EXHIBIT 1, PAGE 18
EXHIBIT 1, PAGE 31

1    utilities and costs to secure the property and to change locks.  Trustee shall do

2    his best to notify FCW in advance of any expenses before they are incurred.

3        s.    For purposes of convenience only, preliminary estimates of 2.a. through 2.r.

4    are set forth in **Exhibit "2"**.

5        3.    Any line items which are not paid or used in full according to the descriptions above

6    shall be returned to FCW upon entry of further Court order, or the closing of the bankruptcy case,

7    whichever comes first.

8        4.    All funds not otherwise provided for above shall be paid immediately (i.e. no later

9    than the closing date) to FCW from escrow on a sale of the Live Oak Property, Texas Road Property,

10    and San Marcos Property in accordance with transfer instructions provided by FCW to the Trustee or

11    his escrow agent. All payments shall be made in good funds. Through this stipulation, FCW does not

12    consent to receiving any less than $8,250,000 through a sale of the Live Oak Property at the initial

13    bid price of $9,100,000, and its consent to sale under 11 U.S.C. § 363(f)(2) is expressly conditioned

14    on its receipt of no less than $8,250,000 through escrow from the Live Oak Property.  Further, FCW

15    has no obligation to consent to a sale or release their lien on TS Adjoining Properties, and FCW has

16    specifically advised the Trustee that it will not consent to the sale of any of the Properties that

17    includes a provision that FCW is required to carry any debt owed by the purchaser of any such

18    property at either a senior-most or junior priority level after the transaction closes.

19        5.    As to Live Oak Property:  Provided that the Court approves the bid procedures set

20    forth in the Live Oak  PSA, and a qualifying overbid is received and accepted by the Trustee, FCW

21    consents to the voluntary subordination of its deed of trust solely on the proceeds of a consummated

22    sale of the Live Oak Property to pay the break-up fee and due diligence costs to Buyer if it is the

23    unsuccessful bidder, pursuant to the terms of the PSA.

24        6.    As to Live Oak Property:  As previously agreed, if the gross purchase price of the

25    Live Oak Property exceeds $10,000,000, FCW agrees to an additional subordination of its lien (and,

26    as stated in paragraph 2 above, solely with regard to the Live Oak Property proceeds of sale out of

27    escrow, pursuant to the terms of this stipulation) in an amount equal to an additional 2.5% of the

28    gross purchase price of the Property which is in excess of $10,000,000 (i.e. if the purchase price is

EXHIBIT 1, PAGE 19
EXHIBIT 1, PAGE 32

1   $10,100,000, the Estate shall receive an additional 2.5% of $100,000, or $2,500.00) for the benefit of

2   the Estate to be allocated according to the Trustee's business discretion.

3          7.      The Parties acknowledge that FCW is under no compulsion or obligation to extend

4   the Enforcement Date. Due to unanticipated delays which cannot be attributed to either Buyer, FCW,

5   or Trustee, the anticipated closing date of the Live Oak sale has been postponed to early 2022. Upon

6   the execution of this Stipulation, FCW consents to the one-time extension and modification of the

7   Enforcement Date as follows: the Enforcement Date shall be extended from December 1, 2021 to

8   January 28, 2022. If, prior to the Enforcement Date, the Trustee has filed a motion with the Court

9   seeking approval of a sale of one or more of the real property parcels over which FCW asserts a

10  secured claim, then the Enforcement Date shall be extended to March 15, 2022. Nothing in this

11  Stipulation affects the ability of Trustee to seek abandonment of some or all of the Properties after

12  the Enforcement Date or FCW to foreclose on some or all of the Properties after the Enforcement

13  Date. The Parties agree to the entry of an amended order granting relief from the automatic stay to

14  memorialize the terms of this Stipulation and the extension of the Enforcement Date in substantially

15  the form of the order attached as **Exhibit "4."**

16         8.      As to All Properties:  Trustee on behalf of the Estate, stipulates and agrees to the

17  validity, extent, and priority of FCW's secured claim and liens, and, effective as of the Bankruptcy

18  Court's entry of an order approving this Stipulation, and, subject to the terms of this agreement,

19  releases FCW from all known or unknown claims held by the Trustee or the Estate, including any

20  claims under 11 U.S.C. § 506(c) regarding the Live Oak Property, San Marcos Property, the Texas

21  Road Property, and any other collateral of FCW. This provision and all other terms of this agreement

22  are not effective unless specifically approved by the Bankruptcy Court, after notice and a hearing.

23         9.      As additional consideration for the Trustee's waiver of the claims for surcharge

24  pursuant to 11 U.S.C. § 506(c) regarding the Properties and FCW's other collateral, the Parties agree

25  that, provided that the Court approves the Trustee's waiver of claims including the claims for

26  surcharge, in the event that FCW forecloses on or causes the disposition of all three of the

27  Properties, the following line items shall be reimbursed to the Estate and its professionals as follows:

28                 a.      $50,000 for the Trustee's attorneys' fees.

b.    Fees and expenses for Trustee's field agent Lori Ensley not to exceed $15,000.

c.    All actually expended, reasonable administrative expenses (i.e. costs, and not fees) related to the professional fees stated above, not to exceed $5,000.

d.    All insurance premiums actually paid by Trustee for coverage necessary to maintain the administration of any property of the Estate over which FCW asserts a secured claim.

e.    All post-petition *ad valorem* property taxes (if any) charged to the Estate over the course of the Trustee's administration. Alternatively, at FCW's discretion, FCW may choose to pay the outstanding property taxes such that no taxes are charged to the Estate.  FCW may dispute the amount of such taxes and pay the County of San Luis Obispo directly when FCW's dispute is resolved, and the Trustee is not entitled to compensation under 11 U.S.C. § 326 for any such payment(s) made by FCW directly to the County.

f.    The lump sum of $80,000 as a miscellaneous settlement payment for the surcharge issues.

g.    For purposes of convenience only, preliminary estimates of 9.a. through 9.f. are set forth in **Exhibit "3"**.

h.    The amounts set forth in this paragraph 9 shall only be earned by and paid to the Trustee if the Trustee delivers full possession of the Properties, without any unauthorized occupants or tenants, and the other remaining collateral of FCW ^(owned by Northern Ram) (*e.g.*, equipment and inventory) to FCW upon abandonment of the Properties and the other FCW collateral by the Trustee, or prior to the ^(owned by Northern Ram) foreclosure of such Properties by FCW.

10.    As additional consideration for the Trustee's waiver of the claims for surcharge pursuant to 11 U.S.C. § 506(c) regarding the Properties and FCW's other collateral, to the extent FCW forecloses on one or more of the Properties, it shall be responsible for either all post-petition *ad valorem* property taxes (if any) charged to the Estate over the course of the Trustee's

4439817v1 | 100967-0004                                    9

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 21
EXHIBIT 1, PAGE 34

1   administration for the property foreclosed upon, or, alternatively, at FCW's discretion, FCW shall

2   pay the outstanding property taxes such that no taxes are charged to the Estate with respect to the

3   property foreclosed upon.  FCW may dispute the amount of such taxes with the County of San Luis

4   Obispo.  FCW may also pay the County of San Luis Obispo directly for the taxes addressed in this

5   paragraph either before or after the resolution of any dispute over such taxes, and the Trustee is not

6   entitled to compensation under 11 U.S.C. § 326 for such payment(s) made by FCW directly to the

7   County.  Additionally, should the Trustee complete the sale of the Live Oak Property and FCW

8   thereafter proceeds to foreclose on the remaining TS Adjoining Properties, provided that the Trustee

9   delivers full possession of the remaining Properties, without any unauthorized occupants or tenants,

10  and possession the other remaining collateral of FCW (*e.g.*, equipment and inventory) to FCW upon
                                              ⌐ owned by Northern RAM

11  abandonment of the Properties and the other FCW collateral by the Trustee, or prior to the
                                              ⌐ owned by Northern RAM

12  foreclosure or disposition of such Properties by FCW, the, the Trustee shall be entitled to receive a lump

13  sum payment from FCW of $30,000 *per property* as consideration for the waiver of claims under 11

14  U.S.C. § 506(c), which is in addition to the any allocations stated in paragraph 2.

15          11.     Concurrently with the waivers described above, upon the Trustee's delivery of full

16  possession of FCW's collateral in accordance with this Stipulation, except for its allowed claim

17  against the Estate, FCW waives any and all other claims against the Estate, and any and all claims

18  against the Trustee and his agents and professionals acting in their capacities as agents for the Estate,

19  and any and all claims against the Trustee in his individual capacity related to the administration of

20  this case.

21          12.     FCW shall immediately recommend to the Trustee one or more qualified security

22  agents and/or property managers to supervise and control the access to and use of all three properties

23  and all collateral of FCW, and shall consult with the Trustee to recommend necessary steps and

24  necessary agreements for the maintenance and preservation of the three properties and FCW's

25  collateral. The security agents/property managers shall be employed on behalf of the Estate by the

26  Trustee, if possible, and FCW shall directly advance and pay all costs and fees of and incurred by the

27  security agents/property managers. Security agents and/or property managers shall be employed as

28  necessary as determined by FCW with the consent of the Trustee; provided, however, there is no

EXHIBIT 1, PAGE 22
EXHIBIT 1, PAGE 35

obligation to employ security agents and/or property managers absent such a need, as determined by FCW – Trustee shall have no obligation to recommend collateral preservation procedures to FCW and shall not be held responsible in the event of any damage or deterioration to collateral after FCW assumes possession and control of the Properties.  The security agents/property managers shall not take any action and not incur any fees or expenses outside of what is in its or their contracts without the prior consent of the Trustee and FCW.  The security agents/property managers shall provide reasonable access to the properties to both FCW and the Trustee, and to those agents or representatives of FCW and the Trustee that are approved by both FCW and the Trustee. To the extent that the mutually approved security agents/property managers seek any recovery from the Estate including but not limited to recoveries on account of services performed for maintenance, access control, supervision, or preservation of FCW's collateral, FCW shall be directly liable for such expenses and FCW fully indemnifies the Estate for any such costs and shall immediately pay all such costs, and shall undertake to defend the Estate against adverse claims arising from the services performed by the security agents/property managers. The Trustee shall prepare and file a motion to employ the security agents/property manager on behalf of the Estate, if necessary, and the specific terms for management and control of the properties shall be memorialized in a separate agreement.

13.    This stipulation, after it has been approved by the Court, will fully meet and satisfy the requirements of Section 6.5 of the Live Oak PSA requiring an "acceptable carve out agreement" between the Trustee, the Estate, and FCW. This stipulation constitutes the entire agreement between the Parties.

14.    This stipulation is subject to approval by the Bankruptcy Court. No provision of this stipulation is effective or binding on any Party, unless the Court enters an order approving these provisions. Any disputes over the interpretation or enforcement of this stipulation shall be resolved solely by the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

EXHIBIT 1, PAGE 23
EXHIBIT 1, PAGE 36

1  15. Once this stipulation is approved by the Bankruptcy Court, no further material

2 modification or material amendment shall be effective unless: (1) such amendment or modification

3 is in writing, and (2) the amendment or modification is approved by the Bankruptcy Court.

4  16. This stipulation may be executed in one or more counterparts and facsimile or

5 electronic signatures may be used in filing this document with the Court.

6

7 Dated: December _10_, 2021    FARM CREDIT WEST, FCLA

8

9            By:

10           KEVIN RALPH

11           Position: _Executive Vice President_

12 Dated: December _6_, 2021

13            By:

14           RICHARD A. MARSHACK
             Chapter 7 Trustee for Debtor,

15           NORTHERN HOLDING, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

4439817v1 | 100967-0004      12
STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 24
EXHIBIT 1, PAGE 37

1  EXHIBIT 1

2                                      ∪        **LEGAL DESCRIPTION**

3

     THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF **CALIFORNIA**, COUNTY OF **SAN LUIS**
4    **OBISPO**, AND IS DESCRIBED AS FOLLOWS:

5      **PARCEL A: APN 026,342,039**

       THE NORTHEAST QUARTER OF SECTION 12, IN TOWNSHIP 27 SOUTH, RANGE 11 EAST MOUNT DIABLO
6      BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO
       THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND APPROVED BY THE SURVEYOR GENERAL.

7      **PARCEL A-1:**

8      AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND EXTENDING NORTH OVER
       THE EAST 10 FEET ON THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 12,
9      TOWNSHIP 27, RANGE 11, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS
       OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND
       APPROVED BY THE SURVEYOR GENERAL.
10
       **PARCEL A-2:**
11
       AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND INCIDENTAL PURPOSES TO THE
       SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE
12     11 EAST, MOUNT DIABLO BASE AND MERIDIAN OVER, UNDER AND UPON A STRIP OF LAND 30 FEET
       WIDE LOCATED IN THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST,
13     MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID
       LAND APPROVED BY THE SURVEYOR GENERAL, AND LYING EQUALLY ON EACH SIDE OF THE
       FOLLOWING DESCRIBED CENTERLINE:
14
       COMMENCING AT THE EAST QUARTER CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS
       A 1/2" REBAR CAPPED RCE 14994 IN BOOK 1, PAGE 159 OF OFFICIAL RECORDS;
15     THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 12, SOUTH
       89°29'51" WEST 1,393.11 FEET MORE OR LESS TO THE SOUTHWEST CORNER OF THE SOUTHEAST
16     QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING;
       THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH
17     BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48" LIVE OAK TREE;
       THENCE SOUTH 10°30'20" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00
       FEET FROM THE CENTER OF A CATTLE GUARD;
18     THENCE SOUTH 79°29' EAST TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO. M5262).

19     THE SIDE LINES OF THE ABOVE MENTIONED 30 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED
       TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

20

21

22

23

24

25

26

27

28

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 25
EXHIBIT 1, PAGE 38

**EXHIBIT 2**

Estimates as to Live Oak Property proceeds:

| Item | Amount |
|---|---|
| Closing costs: settlement fee | $500 |
| Closing costs: title search fee | $250 |
| Closing costs: escrow fee | $9,000 |
| Closing costs: title insurance | $20,000 |
| County transfer tax | $1.10 per $1,000 |
| Commercial liability insurance @ $3,946.50 for San Marcos (8/21 – 8/22) @ $2,824.18 for Live Oak (10/21 – 10/22) | $6,770.68 +$15,000 reserve |
| Insurance (Live Oak) (Monthly) | $1,700/mo. since June 2021 |
| Trustee's attorneys' fees | $100,000 |
| Broker's fee (Hilco) | 1.75% of gross |
| Broker's fee (Onyx) | 1.75% of gross |
| Trustee's compensation (reduced) | 2.25% of gross |
| Miscellaneous payment | $30,000 |
| Trustee's field agent Lori Ensley | $12,000 |
| All other actual costs of securing and maintaining property such as utilities | TBD |

Estimates as to San Marcos Property proceeds:

| Item | Amount |
|---|---|
| Closing costs | TBD |
| County transfer tax | $1.10 per $1,000 |
| Trustee's attorneys' fees | $60,000 |
| Broker's fee (Hilco) | 1.75% of gross |
| Broker's fee (Onyx) | 1.75% of gross |
| Trustee's compensation (reduced) | 2.25% of gross |
| Miscellaneous payment | $30,000 |
| Trustee's field agent Lori Ensley | $12,000 |
| All other actual costs of securing and maintaining property such as utilities | TBD |

Estimates as to Texas Road Property proceeds:

| Item | Amount |
|---|---|
| Closing costs | TBD |
| County transfer tax | $1.10 per $1,000 |
| Trustee's attorneys' fees | $30,000 |
| Broker's fee (Hilco) | 1.75% of gross |
| Broker's fee (Onyx) | 1.75% of gross |
| Trustee's compensation (reduced) | 2.25% of gross |
| Miscellaneous payment | $30,000 |
| Trustee's field agent Lori Ensley | $12,000 |
| All other actual costs of securing and maintaining property such as utilities | TBD |

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 26
EXHIBIT 1, PAGE 39

**EXHIBIT 3**

Estimates for consideration for surcharge waiver (all properties foreclosed):

| Item | Amount |
|---|---|
| Attorneys' fees without regard to category | $50,000 |
| Fees for field agent Lori Ensley | $15,000 |
| Administrative costs for professionals | $5,000 |
| Insurance premiums | $6,770.68<br>+ $1,700 monthly since June 2021 |
| Postpetition property taxes | TBD – paid directly by FCW |
| Miscellaneous payment | $80,000 |

Estimates for consideration for surcharge waiver (Live Oak sold, others foreclosed):

| Item | Amount |
|---|---|
| Attorneys' fees without regard to category | already paid per ¶ 2 |
| Fees for field agent Lori Ensley | already paid per ¶ 2 |
| Administrative costs for professionals | already paid per ¶ 2 |
| Insurance premiums | already paid per ¶ 2 |
| Postpetition property taxes | TBD – paid directly by FCW |
| Miscellaneous payment for San Marcos | $30,000 |
| Miscellaneous payment for Texas Road | $30,000 |
| Trustee's attorneys' fees for negotiating taxes | TBD – subject to separate stipulation if any |

EXHIBIT 1, PAGE 27
EXHIBIT 1, PAGE 40

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 4**

STIPULATION FOR VOLUNTARY SUBORDINATION OF LIEN

EXHIBIT 1, PAGE 28
EXHIBIT 1, PAGE 41

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>Michael J. Gomez (State Bar No. 251571)<br>  mgomez@frandzel.com<br>Reed S. Waddell (State Bar No. 106644)<br>rwaddell@frandzel.com<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>1000 Wilshire Boulevard, Nineteenth Floor<br>Los Angeles, California 90017-2427<br>Telephone: (323) 852-1000<br>Facsimile: (323) 651-2577<br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | FOR COURT USE ONLY |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – *SANTA ANA* DIVISION**

| | |
|---|---|
| In re:<br><br>NORTHERN HOLDINGS, LLC, | CASE NO.: 8:20-bk-13014-MW<br><br>CHAPTER: 11 |
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)** |
| | DATE: August 30, 2021<br>TIME: 2:00 p.m.<br>COURTROOM: 6C<br>PLACE: 411 West Fourth Street<br>        Santa Ana, CA 92701 |
| Debtor(s). | |

**Movant:** Farm Credit West, FLCA

1. The Motion was:    ☒ Opposed    ☐ Unopposed    ☒ Settled by stipulation

2. The Motion affects the following real property and the personal property described in item no. 17 below (collectively, the "Property"):

*Street address*:        2380 Live Oak Rd
*Unit/suite number*:
*City, state, zip code*:  Paso Robles, CA 93446
Legal description or document recording number (including county of recording):

☒ See attached page and item no. 17 below.

4439709v1 | 100967-0004 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT 1, PAGE 29
EXHIBIT 1, PAGE 42

The Motion is granted under:

   a.   ☒   11 U.S.C. § 362(d)(1)

   b.   ☒   11 U.S.C. § 362(d)(2)

   c.   ☐   11 U.S.C. § 362(d)(3)

   d.   ☒   11 U.S.C. § 362(d)(4).  The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

      (1)  ☒  The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

      (2)  ☒  Multiple bankruptcy cases affecting the Property.

      (3)  ☒  The court  ☒ makes  ☐ does not make  ☐ cannot make
            a finding that the Debtor was involved in this scheme.

      (4)  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing.

3.  ☒  As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

   a.   ☒   Terminated as to the Debtor and the Debtor's bankruptcy estate.

   b.   ☐   Modified or conditioned as set forth in Exhibit _____ to this order.

   c.   ☐   Annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

4.  ☒  Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

5.  ☐  Movant must not conduct a foreclosure sale of the Property before (*date*) _____.

6.  ☐  The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

7.  ☐  In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order.  The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency.  Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

8.  ☐  The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

9.  ☒  The 14-day stay as provided in FRBP 4001(a)(3) is waived.

10. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

11. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

4439709v1 | 100967-0004 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT 1, PAGE 30
EXHIBIT 1, PAGE 43

12. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the entry of this Order:

   (a) ☒ without further notice.

   (b) ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

14. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

15. ☒ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from entry of this Order:

   (a) ☒ without further notice.

   (b) ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

16. ☒ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

   (a) ☒ without further notice.

   (b) ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☒ Other (*specify*): Relief from the automatic stay is further granted under the grounds provided for above in item nos. 2.a., 2.b., 2.d., 3, 4, 9, 10, 15, and 16 as to the personal property described in the Security Agreement attached to the Motion as Exhibit 3 (Dkt. 11).

The Enforcement Date as defined and set forth in the Order Granting Relief from Stay (Dkt. 210), which affects the real properties, is being continued by separate stipulation and order. This Order does not affect that Enforcement Date.

### 

4439709v1 | 100967-0004 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 3                    **F 4001-1.RFS.RP.ORDER**

**EXHIBIT 1, PAGE 31**
**EXHIBIT 1, PAGE 44**

(This attachment is the continuation page for paragraph 2 of this order.)

2.     The Motion affects the following real property:

| Property Name | APN | Property Address / Location |
|---|---|---|
| Rabbit Ridge Winery | 026-104-001 | 1172 San Marcos Road, Paso Robles, CA, 93446. |
| Texas Road Vineyard | 027-145-022 | Located along the north side of Texas Road, just north of San Marcos Road and ~1.5 miles west of Highway 101, being ~4 miles northwest of Paso Robles, in rural San Luis Obispo County. |
| Live Oak Vineyard | 026-342-039 | 2380 Live Oak Road, Paso Robles, CA 93446. Located ~0.2 mile north of Live Oak Road and ~0.8 mile west of Arbor Road, being ~2.5 miles southwest of Paso Robles, in rural San Luis Obispo County. |

Legal description or document recording number (including county of recording):

PARCEL A: APN 026,342,039

The Northeast quarter of Section 12, in Township 27 South, Range 11 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

PARCEL A-1:

An Easement for utility purposes beginning at Live Oak Road and extending North over the East 10 feet on the Northeast quarter of the Southeast quarter of Section 12, Township 27, Range 11, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

PARCEL A-2:

An Easement to provide ingress, egress, public utilities and incidental purposes to the Southwest quarter of the Northwest quarter of Section 12, Township 27 South, Range 11 East, Mount Diablo Base and Meridian over, under and upon a strip of land 30 feet wide located in the Southeast quarter of Section 12, Township 27 South, Range 11 East, Mount Diablo Base and Meridian, according to the Official Plat of the Survey of said land approved by the Surveyor General, and lying equally on each side of the following described centerline:

Commencing at the East quarter corner of said Section 12, said corner being shown as a ½" rebar capped RCE 14994 in Book 1, Page 159 of Official Records;
Thence along the Northerly line of the Southeast quarter of said Section 12, South 89°29'51" West, 1,393.11 feet more or less to the Southwest corner of the Southeast quarter of the Northeast quarter of said Section 12 and the True Point of Beginning;
Thence leaving said Northerly line South 20°22'08" West, 701.76 feet to a point which bears South 70°16' East, 17.00 feet from the center of a 48" live oak tree;
Thence South 10°30'20" West, 341.71 feet to a point which bears South 79°29' East, 15.00 feet from the center of a cattle guard;
Thence South 79°29' East to the center of Live Oak Road (County Road No. M5262).

The side lines of the above mentioned 30 foot strip shall be lengthened and shortened to meet the beginning and ending boundary lines.

PARCEL B: APN 026,021,070

The Southerly 40 acres of the North half of the Northwest quarter of Section 12, in Township 26 South, Range 11 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General.

EXCEPTING THEREFROM an undivided ½ interest in and to all oil, gas and other hydrocarbon substances and minerals in or under said land, but without right of surface entry as reserved by Clara M. Guthier, a widow, in Deed recorded March 27, 1961 in Book 1115, Page 246 of Official Records.

PARCEL C: APN: 027,145,022

Government Lots 3 and 4 and the East half of the Southwest quarter of Section 31, Township 25 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the Official Plat of the Survey of said land approved by the Surveyor General, as described in Certificate of Compliance recorded September 13, 1985 as Instrument No. 052170 of Official Records.

EXCEPTING THEREFROM an undivided ½ interest in the land owners share of royalties from oil, gas, other hydrocarbons, or minerals actually produced on or from said land or any part thereof, as reserved by George Blechen and Marie Blechen, his wife and Elsie Loose, a widow in Deed dated May 16, 1958 and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

ALSO EXCEPTING 50% of grantors present interest in all oil, gas and other hydrocarbons and other minerals that are on or may be on or within said lands, together with 50% interest in and to all oil, gas and other hydrocarbons and other minerals as same may be increased upon expiration of royalty interests as reserved in Deed dated May 16, 1958 executed by George Blechen and Marie Blechen, his wife and by Elsie Loose, a widow and recorded June 10, 1958 in Book 943, Page 507 of Official Records.

Such mineral reservations in favor of grantors herein are without any right of entry to the surface of said land and are without any right of entry to the first 500 feet adjacent to and lying beneath the surface of said land.

PARCEL C-1:

A 30 foot wide Easement for ingress, egress and incidental purposes over that portion of Lot 4 of "Home of the Almond", in the County of San Luis Obispo, State of California, according to map recorded in, Book 2, Page 17 of Maps, the centerline of which is more particularly described as follows:

Commencing at the Southeast corner of said Lot 4;
Thence along the Easterly line of Lot 4, North 0°30'00" West, 65.00 feet to the point of beginning;
Thence parallel to the South line of Lot 4, North 89°45'00" West, 203.81 feet;
Thence South 73°38'54" West, 138.47 feet;
Thence South 78°42'47" West, 52.18 feet to a point that lies 15.00 feet North of the South line of said Lot 4;
Thence 15 feet Northerly of and parallel to said South line of Lot 4, North 89°45'00" West, 559.74 feet to the Westerly line of Lot 4.

PARCEL D: APN: 026,104,001

Lot 4 of Section 5, Lots 1, 2, 3 and 4, the Southwest Quarter of the Northeast Quarter and the Southeast Quarter of the Northwest Quarter of Section 6, all in Township 26 South, Range 12 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California, according to the official plate thereof.

EXCEPTING THEREFROM that portion lying South of San Marcos Road.

ALSO EXCEPTING THEREFROM ½ of the oil, gas, mineral and other hydrocarbon substances in and under said land as reserved by Robert L. Linnett, a married man and Henry C. Brigham, a married man in equal shares by deed recorded June 21, 1977 in Book 1988, Page 755 of Official Records.

PARCEL E: APN:. 014,311,014

The Northeast quarter of Section 23, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, in the County of San Luis Obispo, State of California.

PARCEL E-1:

A right of way for ingress to and egress from said Parcel 1, and for the installation and maintenance of utility pipe and pole lines, in, upon, along and under a strip of land 40 feet wide, containing 0.038 acres in the Southwest corner of the Southeast quarter of Section 14, Township 26 South, Range 10 East, and 0.638 acres in the Southwest quarter of said section, the centerline of which strip of land is described as follows:

Beginning at a point 28 feet East of the South ¼ corner of Section 14, Township 26 South, Range 10 East, Mount Diablo Base and Meridian, and running thence North 45° West, 68.85 feet to a point 20 feet West of the Easterly boundary line of the Southwest quarter of Section 14;
Thence North and parallel to said Easterly boundary line, 343.9 feet to a point;
Thence North 42°0' West, 28.5 feet to a point;
Thence North 59°40' West, 293.5 feet more or less to the Southeasterly boundary line of the San Marcos-Adelaide County Road.

Situated in the State of California, Unincorporated Area, County of Sonoma, and described as follows:

PARCEL ONE

BEGINNING on section line at a point 14.30 chains South from the northwest corner of Section 5, Township 8 North, Range 9 West, M.D,B, & M., and running thence North 89° 45' East, 63 21 chains to a station, thence North 69° East, 3.00 chains to an iron pin driven in the center of the county road leading from Healdsburg to Guerneville; thence South 13° 45' East, 2.15 chains to an iron pin, thence South 14° 30' East; 3 23 chains to an iron pin in the center of said road, thence North 77° 15' East, 1.91 chains; thence South 33° 40' East, 0.35 chains, thence South 74° 45' East, 0.30 chains; thence North 84° 30' East, 0.18 chains; thence North 62° 30' East, 0.39 chains; thence North 37° East, 0.62 chains to a station; thence North 77° 15' East, 24.82 chains to a stake driven in the middle of a slough in the division line between the lands herein described and the lands of John McClish; thence North 19° East, 2.71 chains; thence North 42° 30' East, 1.46 chains, thence North 32° East, 2.25 chains; thence North 24° 10' East, 0.65 chains to an iron pin at corner; thence South 78° 15' West, 32.85 chains to an iron pin in the center of aforesaid county road; thence North 22° West, in the center of road, 2.49 chains to an iron pin; thence South 89° 30' West, 65.00 chains to section line, and thence South on section line, 3.18 chains to the point of beginning.

EXCEPTING THEREFROM all that portion lying Easterly of the centerline of the Healdsburg — Guerneville Road.

PARCEL TWO

BEGINNING at a point, 14.30 chains South from the northwest corner of Section 5, Township 8 North, Range 9 West, M.D.B, & M,, and running thence, North 89° 45' East, 40.16 chains to a station in the center of a small creek, thence South 5.77 chains to the land of John McClish; thence West on said McClish's north line, 40.11 chains to section line; thence North on section line 5.54 chains to the point of beginning.

(110-070-026-000)

EXHIBIT 1, PAGE 36
EXHIBIT 1, PAGE 49

**EXHIBIT 2**

EXHIBIT 1, PAGE 50

# MARSHACK HAYS LLP

**ATTORNEYS AT LAW | LITIGATION | REORGANIZATION | BANKRUPTCY**

Richard A. Marshack
D. Edward Hays
Chad V. Haes
David A. Wood
Judith E. Marshack
Laila Masud
Tinho Mang
Bradford N. Barnhardt

*Of Counsel*
Kristine A. Thagard
Matthew W. Grimshaw

Reference No. 1015-146
Sender: Tinho Mang on behalf of Richard A.
Marshack

December 10, 2021

*VIA E-MAIL AND OVERNIGHT MAIL ONLY*

Reed Waddell, Esq.
Michael Gomez, Esq.
Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, CA 90017
rwaddell@frandzel.com

Re:     *In re Northern Holding, LLC*
        Case No. 8:20-bk-13014-MW
        **Letter Agreement re: Access to Paso Robles Properties and
        Maintenance of Collateral**

To Whom It May Concern:

I am the duly-appointed and acting Chapter 7 Trustee (the "Trustee") for the
Bankruptcy Estate ("Estate") of Northern Holding, LLC ("Debtor"), which is the owner
of record of the real properties commonly known as (1) 2380 Live Oak Road, Paso
Robles, CA ("Live Oak Property"); (2) 1172 San Marcos Road, Paso Robles, CA ("San
Marcos Property"); and (3) adjacent real property commonly known as the "Texas Road"
property. Together, these three real properties shall be referred to as the "Properties."

On November 22, 2021, I transmitted a letter to Farm Credit West, FLCA
("FCW") regarding my immediate authorization to FCW to take all actions to secure the
Properties, including re-keying all access doors, at FCW's sole expense, pursuant to and
subject to my ability to, on behalf of the Estate, assume possession and control of the
Properties at any time.

**MARSHACK HAYS** LLP | www.marshackhays.com
870 Roosevelt | Irvine, CA 92620 | 949.333.7777 | Fax 949.333.7778

December 10, 2021
Page 2

On November 29, 2021, my field agent Lori Ensley met with FCW's authorized representative Jacob Bingham and conducted a joint inspection of the Properties. No significant issues were identified as a result of this joint inspection, other than that FCW requested that I immediately remove all personnel from the Properties. As for collateral on the Properties, FCW did not identify any item of collateral which was not present during the inspection on November 29, 2021.

On December 6, 2021, I signed a Subordination Stipulation with Farm Credit West, FCLA ("FCW"), which includes provisions stating that I am required to deliver "full possession" of the Properties and "other remaining collateral of FCW (*e.g.*, equipment and inventory)" to FCW as a precondition to certain terms of the stipulation.

On December 7, 2021, a letter agreement was transmitted to counsel for FCW regarding the Trustee's intention relating to the possession of the Properties. Subsequently, FCW requested that access to the Properties be transferred to FCW starting on December 9, 2021 at 1:00 p.m., and arrangements were made.

On December 9-10, 2021, my field agent Lori Ensley accompanied FCW's authorized representatives and a locksmith at the Properties, where all occupants or persons on the Properties were instructed to voluntarily leave, and full control of all access doors and gates was assumed by FCW as of 12:34 p.m. on December 10, 2021, with no current occupants at any Properties.

As defined in the Subordination Stipulation, "full possession" of the Properties has been delivered by me and control of the Properties has been assumed by FCW, subject to my ability and authority to retake possession and control of the Properties at any time. All personal property of Northern Holding, LLC located on the Properties at the time of transferring access to FCW's representative is now deemed delivered to FCW as other remaining collateral, subject to my ability to retake possession and control of any and all Estate property at any time. On the other hand, any personal property or assets which are not the property of the Estate (such as, for example, any personal effects of any prior occupant of the Properties or personal effects of any workers on the Properties) should be released to the possession of such persons upon request, except where FCW claims a valid, perfected security interest in such assets. FCW shall not unreasonably withhold access to the Properties solely for the purpose of allowing third parties to retrieve their personal effects from the Properties under supervision by FCW's designated representative(s) and/or the Trustee's representative, if necessary.

December 10, 2021
Page 3

       All property located on the Properties as of 12:34 p.m. on December 10, 2021 is now deemed the management and financial responsibility of FCW, including any necessary and advisable measures to preserve, maintain, manage, and secure the real properties or personal property located thereon, subject to my authority to retake possession and control of the Properties at any time. This includes any preservation or maintenance requested by Anthony Riboli, whose purchase of the Live Oak Property benefits principally FCW. Mr. Riboli has been encouraged to directly contact FCW's representatives to discuss any property maintenance procedures which he requests or requires in order to proceed with his purchase of the Live Oak Property. No acts outside the ordinary course of business shall be permitted absent prior written notice to myself, with a copy to my counsel. As previously stated, no breach of the peace shall be caused by FCW's supervision of the Properties and no use of force is authorized on the Properties.

       FCW agrees that Trustee, Trustee's real estate agents or designee, and field agent Lori Ensley or her designee shall have full, reasonable access to the Properties and a full set of keys, passcodes, and combinations. LeRoy Codding and his business associates and affiliates are expressly forbidden from obtaining any method of access to the Properties except solely as necessary to retrieve any personal effects from the Properties under the supervision of either FCW or the Trustee's representatives. Trustee shall seek approval of this agreement concurrent with seeking approval of the Subordination Stipulation.

       If you have any questions or concerns, please contact trustee's counsel Tinho Mang at 949-333-7777.

Very truly yours,

RICHARD A. MARSHACK
Chapter 7 Trustee

SO AGREED TO THE ABOVE – FCW ACKNOWLEDGES THAT FULL ACCESS
(SUBJECT TO TRUSTEE'S ABILITY TO RETAKE POSSESSION AND CONTROL)
HAS BEEN DELIVERED TO FCW IN ACCORDANCE WITH THE TERMS OF THE
SUBORDINATION STIPULATION:

By: 

KEVIN RALPH
Authorized Representative for Farm Credit West, FCLA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT WITH FARM CREDIT WEST, FCLA, RE: DISTRIBUTION OF PROCEEDS FOR SALE OF REAL PROPERTY COLLATERAL, WAIVER OF SURCHARGE CLAIMS FOR CONSIDERATION; MEMORANDUMOF POINTS AND AUTHORITIES; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT; AND REQUEST FOR JUDICIAL NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 20, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **December 20, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR**
NORTHERN HOLDING, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT,
OR TO ANY OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE SERVICE
13217 JAMBOREE RD #429
TUSTIN, CA 92782

**U.S. TRUSTEE**
UNITED STATES TRUSTEE (SA)
411 W FOURTH ST., SUITE 7160
SANTA ANA, CA 92701-4593

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 20, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE MARK S. WALLACE
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 20, 2021 | Layla Buchanan | */s/ Layla Buchanan* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                               **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 1, PAGE 54

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
- **INTERESTED PARTY COURTESY NEF:** William H Brownstein Brownsteinlaw.bill@gmail.com
- **INTERESTED PARTY COURTESY NEF:** Steve Burnell sburnell@sulmeyerlaw.com, sburnell@ecf.courtdrive.com; sburnell@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com
- **ATTORNEY FOR U.S. TRUSTEE (SA):** Nancy S Goldenberg nancy.goldenberg@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR RESPONDENTS ERICH RUSSELL AND JOANNE RUSSELL:** Kari L Ley Ley1238@att.net
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE:** Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.:** Paul F Ready tamara@farmerandready.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR INTERESTED PARTY RIBOLI PASO ROBLES, LLC:** Victor A Sahn vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com; pdillamar@ecf.inforuptcy.com; vsahn@ecf.inforuptcy.com; cblair@sulmeyerlaw.com; cblair@ecf.inforuptcy.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Kristine A Thagard kthagard@marshackhays.com, kthagard@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
- **INTERESTED PARTY COURTESY NEF:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**: CONTINUED:

| SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR |
|---|---|---|
| ELRICH RUSSELL C/O KARI L. LEY, ATTORNEY AT LAW 264 CLOVIS AVENUE, SUITE 208 CLOVIS, CA 93612 | ERICH RUSSELL 2380 LIVE OAK ROAD PASO ROBLES, CA 93446-9693 | FARM CREDIT WEST ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE 3755 ATHERTON RD 11707 FAIR OAKS BLVD ROCKLIN, CA 95765 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 1, PAGE 55

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
C/O MICHAEL J. GOMEZ
FRANDZEL ROBINS BLOOM &
CSATO, L.C.
1000 WILSHIRE BOULEVARD,
19TH FLOOR
LOS ANGELES, CA 90017-2457

**SECURED CREDITOR**
MORTGAGE LENDER SERVICES
AS AGENT
FARM CREDIT WEST, FLCA, AS
TRUSTEE
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
11707 FAIR OAKS BLVD
FAIR OAKS, CA 95628-2816

**SECURED CREDITOR / POC ADDRESS**
FARM CREDIT WEST, FLCA
ATTN: KEVIN E. RALPH
3755 ATHERTON DRIVE
ROCKLIN CA 95765-3701

**SECURED CREDITOR / POC ADDRESS**
JAMES W. HAMILTON ACTTC
SAN LUIS OBISPO TAX COLLECTOR
1055 MONTEREY STREET
SUITE D-290
SAN LUIS OBISPO CA 93408-1003

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 1, PAGE 56

EXHIBIT  2

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  DAVID A. WOOD, #272406
   dwood@marshackhays.com
3  TINHO MANG, #322146
   tmang@marshackhays.com
4  MARSHACK HAYS LLP
   870 Roosevelt Avenue
5  Irvine, CA 92620
   Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7  Attorneys for Chapter 7 Trustee,
   RICHARD A. MARSHACK
8

FILED & ENTERED

JAN 14 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle           DEPUTY CLERK

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  SANTA ANA DIVISION

12

13  In re                          | Case No. 8:20-bk-13014-MW

14  NORTHERN HOLDING, LLC,         | Chapter 7

15        Debtor.                  | ORDER GRANTING CHAPTER 7
                                    | TRUSTEE'S MOTION TO APPROVE
16                                  | COMPROMISE AND SUBORDINATION
                                    | AGREEMENT WITH FARM CREDIT
17                                  | WEST, FCLA, RE: DISTRIBUTION OF
                                    | PROCEEDS FOR SALE OF REAL
18                                  | PROPERTY COLLATERAL, WAIVER OF
                                    | SURCHARGE CLAIMS FOR
19                                  | CONSIDERATION

20                                  | Hearing Date
                                    | Date:      January 10, 2022
21                                  | Time:      2:00 p.m.
                                    | Ctrm:      6C
22                                  | Location:  United States Bankruptcy Court
                                    |            411 West Fourth Street
23                                  |            Santa Ana, CA 92701-4593

24        On December 13, 2021, the Court conducted a hearing on the motion[1] filed by Richard A.

25  Marshack, the Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate of Northern Holding, LLC, on

26  _____

27  [1] All terms not otherwise defined in this order shall have the meaning ascribed to them in the

28  Motion.

                                    1

1  December 20, 2021, as Dk. No. 264, entitled "Chapter 7 Trustee's Motion to Approve Compromise

2  and Subordination Agreement with Farm Credit West, FCLA, Re: Distribution of Proceeds for Sale

3  of Real Property Collateral, Waiver of Surcharge Claims for Consideration" ("Motion"). No

4  opposition was filed. At the hearing, Tinho Mang appeared on behalf of the Trustee. Michael Gomez

5  appeared on behalf of Farm Credit West, FCLA. No party contested the tentative ruling.

6      For the reasons stated in the Motion and on the record, the Court finds good cause to grant

7  the Motion, and the Court enters its Order as follows:

8      IT IS ORDERED:

9      1.    The Motion is granted in its entirety;

10     2.    The Agreement attached as Exhibit "1" to the Motion is approved;

11     3.    The Letter Agreement attached as Exhibit "2" to the Motion is approved;

12     4.    The Trustee is authorized to execute the Agreement and implement its terms,

13  including to distribute funds from a future sale of any of the Properties in accordance with the terms

14  of the Agreement.

15     5.    The Trustee may file and serve a motion to sell property pursuant to the Motion with

16  a hearing on February 9, 2022 at 2:00 p.m.

17                                ###

18

19

20

21

22

23     Date: January 14, 2022              Mark S. Wallace

24                                         United States Bankruptcy Judge

25

26

27

28

2

4816-7517-2594v.1-1015.146

EXHIBIT  3

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  KRISTINE A. THAGARD, #094401
   kthagard@marshackhays.com
3  TINHO MANG, #322146
   tmang@marshackhays.com
4  MARSHACK HAYS LLP
   870 Roosevelt Avenue
5  Irvine, CA 92620
   Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7  Attorneys for Chapter 7 Trustee,
   RICHARD A. MARSHACK

8

```
┌─────────────────────────────────┐
│  FILED & ENTERED                 │
│                                  │
│  ┌───────────────────────────┐   │
│  │      FEB 14 2022           │   │
│  └───────────────────────────┘   │
│                                  │
│  CLERK U.S. BANKRUPTCY COURT     │
│  Central District of California  │
│  BY jie          DEPUTY CLERK    │
└─────────────────────────────────┘
```

9            UNITED STATES BANKRUPTCY COURT

10       CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

11

| 12 | In re | Case No. 8:20-bk-13014-MW |
|----|-------|---------------------------|
| 13 | NORTHERN HOLDING, LLC, | Chapter 7 |
| 14 | Debtor. | ORDER APPROVING STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND SECURED CREDITOR FARM CREDIT WEST, FCLA RE: VOLUNTARY SUBORDINATION OF LIEN FOR SALE OF 2380 LIVE OAK ROAD, PASO ROBLES, CA |
| 18 | | [NO HEARING REQUIRED] |

19

20       The Court having reviewed and considered the stipulation ("Stipulation"[1]) entered into

21  between Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy

22  Estate ("Estate") of Northern Holding, LLC ("Debtor"), and Farm Credit West, FCLA ("FCW"),

23  with regard to the preliminary exploration and negotiation of property taxes owed to the County of

24  San Luis Obispo ("SLO County"), filed on January 31, 2022, as Dk. No. 284, and good cause

25  appearing,

26

27

28
_____

[1] All terms not defined herein are used as they are defined in the Stipulation.

1

IT IS ORDERED:

1.    The Stipulation is approved.

2.    Trustee and his professionals are authorized to commence an initial investigation into negotiating and exploring the taxes owed to SLO County for the San Marcos Property, including providing a written report to FCW regarding the analysis of the issues.

3.    With the consent of FCW, Trustee may pay up to $6,000.00 in professional fees for investigations into tax issues, out of escrow from a sale of the Live Oak Property (if a sale of the Live Oak Property is consummated), or out of FCW's portion of proceeds for the sale of crop constituting FCW's cash collateral.

4.    The payment(s) in the Stipulation are in addition to, and a supplement to, all payments made on account of the Subordination Stipulation.

# # #

Date: February 14, 2022

Mark S. Wallace
United States Bankruptcy Judge

2

EXHIBIT  4

1 | KRISTINE A. THAGARD, #94401
kthagard@marshackhays.com
2 | TINHO MANG, #322146
tmang@marshackhays.com
3 | MARSHACK HAYS LLP
870 Roosevelt
4 | Irvine, California 92620
Telephone: (949) 333-7777
5 | Facsimile: (949) 333-7778

6 | Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

7

**FILED & ENTERED**

**MAR 04 2022**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY duarte     DEPUTY CLERK

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10 | In re

11 | NORTHERN HOLDING, LLC,

12 | Debtor.

Case No. 8:20-bk-13014-ES

Chapter 7

ORDER GRANTING CHAPTER 7
TRUSTEE'S MOTION FOR ORDER (1)
AUTHORIZING SALE OF REAL
PROPERTY LOCATED AT 2380 LIVE
OAK ROAD, PASO ROBLES, CA: (A)
OUTSIDE THE ORDINARY COURSE OF
BUSINESS; (B) FREE AND CLEAR OF
LIENS, CLAIMS, AND
ENCUMBRANCES; (C) SUBJECT TO
OVERBID; (D) FOR DETERMINATION
OF GOOD FAITH PURCHASER UNDER
11 U.S.C. §363(M); AND (2)
AUTHORIZING AMENDMENT TO
PURCHASE AND SALE AGREEMENT

▪ EXHIBIT ATTACHED
(SIGNATURES PAGE)

Date: February 9, 2022[1]
Time: 2:00 p.m.
Ctrm: 6C
Location: United States Bankruptcy Court
411 West Fourth Street
Santa Ana, CA 92701-4593

_____
[1] Hearing Date specially set with permission.

1

ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

1    On February 9, 2022, at 2:00 p.m., the Court held a hearing on the motion filed by Richard

2  A. Marshack, the duly appointed and acting chapter 7 trustee ("Trustee")[2] for the bankruptcy estate

3  ("Estate") of Northern Holding, LLC ("Debtor"), entitled *"Chapter 7 Trustee's Motion for Order (1)*

4  *Authorizing Sale of Real Property Located at 2380 Live Oak Road, Paso Robles, CA (A) Outside The*

5  *Ordinary Course Of Business; (B) Free And Clear Of Liens and Encumbrances; (C) Subject to*

6  *Overbids; and (D) For Determination of Good Faith Purchasers Under § 363(M; and (2)*

7  *Authorizing Amendment to Purchase and Sale Agreement"* filed on January 19, 2022, as docket

8  number 278 ("Motion").  Appearances were as noted on the record.

9    On October 20, 2021, as Dk. No. 238, the Court entered an order granting the Bid Procedure

10  Motion. At the hearing on the Motion, the Court inquired if there were any overbidders. The Court

11  hearing no overbids regarding the real property commonly known as 2380 Live Oak Road, Paso

12  Robles, CA ("Live Oak Property" or "Property") confirmed that  Riboli Paso Robles, LLC ("Buyer")

13  was the successful bidder at the price of $9,100,000.

14    The Property is legally described as follows:

15  THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF
    SAN LUIS OBISPO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:
16

17  PARCEL 1:

18  THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST,
    MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO,
19  STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

20  PARCEL 1A:

21  AN EASEMENT FOR UTILITY PURPOSES BEGINNING AT LIVE OAK ROAD AND
22  EXTENDING NORTH OVER THE EAST 10.00 FEET ON THE NORTHEAST 1/4 OF
    THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST,
23  MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF SAN LUIS OBISPO,
    STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.
24

25  PARCEL 1B:

26  AN EASEMENT TO PROVIDE INGRESS, EGRESS, PUBLIC UTILITIES AND
    INCIDENTAL PURPOSES TO THE SOUTHWEST 1/4 OF THE NORTHEAST ¼ AND
27  _____

28  [2] All terms not otherwise defined herein are used as they are defined in the Motion.

4833-0726-0118,v.1

EXHIBIT 4, PAGE 62

THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, OVER, UNDER AND UPON A STRIP OF LAND 30.00 FEET WIDE LOCATED IN THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 27 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, AND LYING EQUALLY ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING AT THE EAST 1/4 CORNER OF SAID SECTION 12, SAID CORNER BEING SHOWN AS A 1/2 INCH REBAR CAPPED RCE 14994 IN BOOK 1 PAGE 159 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF THE SOUTHEAST 1/4 OF SAID SECTION 12, SOUTH 89°29'51" WEST, 1,393.11 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION 12 AND THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID NORTHERLY LINE SOUTH 20°22'08" WEST, 701.76 FEET TO A POINT WHICH BEARS SOUTH 70°16' EAST, 17.00 FEET FROM THE CENTER OF A 48 INCH LIVE OAK TREE; THENCE SOUTH 10°30'20" WEST, 341.71 FEET TO A POINT WHICH BEARS SOUTH 79°29' EAST, 15.00 FEET FROM THE CENTER OF A CATTLE GUARD; THENCE SOUTH 79°29' EAST, TO THE CENTER OF LIVE OAK ROAD (COUNTY ROAD NO, M5262).

THE SIDE LINES OF THE ABOVE MENTIONED 30.00 FOOT STRIP SHALL BE LENGTHENED AND SHORTENED TO MEET THE BEGINNING AND ENDING BOUNDARY LINES.

APN: 026-342-039

Based on the evidence submitted in support of the Motion, the Court determines that the Property was subjected to a thorough and commercially reasonable marketing process, and $9,100,000 represents a reasonable and fair market value for the purchase of the Property.

After consideration of the Motion, the declarations and exhibits in support of the Motion, the conditional opposition to the Motion filed by Farm Credit West, FCLA ("FCW"), and the arguments of counsel at the hearing, the Court finds that it has jurisdiction to enter this order, and finds good cause to grant the Motion for the reasons set forth in the Motion and on the record during the hearing. Based on the proof of service of the Motion, and the declaratory evidence attached to the Motion, the Court finds that service of the Motion and notice of the Motion was adequate and proper. The Court incorporates its findings of fact and conclusions of law filed as Docket No. **291** and accordingly, the Court ORDERS as follows:

1.    The Motion is granted;

4833-0726-0118,v.1

EXHIBIT 4, PAGE 63

2.      No party other than FCW, which has conditionally consented to the sale, having

appeared or presented any evidence to the contrary pursuant to 11 U.S.C. § 363(p)(2), the Live Oak

Property is property of the Estate which may be sold and administered by Trustee;

3.      Trustee is authorized to sell the Live Oak Property pursuant to 11 U.S.C. § 363 and is

further authorized to pay from escrow, pursuant to demands submitted to escrow, all liens and

encumbrances to the extent provided for in the Motion, including specifically all charges and costs

agreed by FCW to be paid in exchange for a release of the Live Oak Property as collateral from

FCW DOT 1 (Recording No.[3] 2007-19418) and FCW DOT 2 (Recording No. 2009-5727), which

liens shall be paid to the extent of the agreement between FCW and Trustee;

4.      Trustee is authorized to sign all documents necessary to consummate the sale and

close escrow, including, but not limited to, the purchase and sale agreement, grant deed and escrow

instructions, and any amendments;

5.      Trustee is authorized to make distributions from the sale of the Live Oak Property in

accordance with the stipulated terms with FCW, including that:

    a.      Trustee is authorized to pay all customary costs of sale;

    b.      Trustee is authorized to pay all property taxes incurred on account of the Live

            Oak Property out of escrow, to be divided between buyer and seller according

            to the customary practices for the purchase of similarly situated real property;

    c.      Trustee is authorized to pay a broker's commission equal to 1.75% of the sale

             price out of escrow to Onyx;

    d.      Trustee is authorized to pay a broker's commission equal to 1.75% of the sale

             price out of escrow to Hilco;

    e.      Trustee is authorized to receive the reduced compensation equal to 2.25% of

             the purchase price out of escrow, to be held pending further order;

    f.      Trustee is authorized to receive $100,000 out of escrow and hold such amount

             for the purpose of paying attorneys' fees;

---

[3] All recording numbers herein shall refer to documents recorded with the San Luis Obispo County
Recorder's Office.

4833-0726-0118,v.1

g.   Trustee is authorized to receive $6,770.78 out of escrow for the Estate as a reimbursement for insurance premiums advanced on behalf of the Estate, once the Trustee submits evidence satisfactory to FCW that this cost was paid for the Estate;

h.   Trustee is authorized to receive $15,000 out of escrow for the Estate as a further reserve for future insurance costs, and may return such funds (if unused) to FCW without further order of the Court;

i.   Trustee is authorized to receive and hold $30,000 out of escrow for the Estate as a miscellaneous contribution;

j.   Trustee is authorized to receive $12,000 out of escrow for the purpose of paying the fees and expenses of Lori Ensley, his field agent;

k.   Pursuant to the Stipulation filed as Docket No. 284 and express consent by FCW, Trustee is further authorized to receive and hold $6,000 for the purpose of paying attorneys' fees for the initial investigation into reducing property tax liabilities for the San Marcos Property, but such funds will be immediately disbursed by the Trustee to FCW should FCW foreclose on the Property, as set forth in the Stipulation; and

l.   Trustee is authorized to disburse all remaining funds out of escrow to FCW on account of its secured claim, and may adjust and reduce in his business discretion any line item above to ensure that FCW receives no less than $8,250,000 out of escrow;

6.   The sale is in the best interest of the Estate, and the final bid price in the amount of $9,100,000 is a fair market price for the Live Oak Property;

7.   Satisfactory declaratory evidence having been provided to the Court of good faith and lack of collusion, Buyer is a good faith purchaser entitled to protection under 11 U.S.C. § 363(m);

5

ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

EXHIBIT 4, PAGE 65

8.      Except as set forth below in paragraphs 9 through 12, the Property is sold free and clear of all liens, claims, and interests of any creditor which consents to the sale pursuant to 11 U.S.C. § 363(f)(2);

9.      The Property is sold free and clear of FCW DOT 1 recorded as document no. 2007-19418, pursuant to 11 U.S.C. § 363(f)(2), upon payment out of escrow to FCW in satisfaction of the agreed-upon provisions in Paragraph 5;

10.     The Property is sold free and clear of FCW DOT 2 recorded as document no. 2009-5727, pursuant to 11 U.S.C. § 363(f), upon payment out of escrow to FCW in satisfaction of the agreed-upon provisions in Paragraph 5;

11.     The Property is sold free and clear of FCW DOT 3 recorded as document no. 2010-11915, pursuant to 11 U.S.C. § 363(f), upon payment out of escrow to FCW in satisfaction of the agreed-upon provisions in Paragraph 5;

12.     The Property is sold free and clear of FCW Advance recorded as document no. 2010-66312, pursuant to 11 U.S.C. § 363(f), upon payment out of escrow to FCW in satisfaction of the agreed-upon provisions in Paragraph 5;

13.     The Property is sold free and clear any interest of Erich Russell and Joanne Russell;

14.     The Property is sold free and clear of any interest of any non-Debtor third party arising from the Agreement To Purchase and Sell a Corporation and Real Estate, recorded as document no. 2020-61134;

15.     The Property is sold free and clear of any interest of any non-Debtor third party arising from the Assumption and Assignment Agreement, recorded as document no. 2020-61135;

16.     The Property is sold free and clear of any interest of any non-Debtor third party arising from the Assumption and Assignment Agreement, recorded as document no. 2020-61136;

17.     The Property is sold free and clear of any claim that the Property is subject to a trust or lien that might be created under the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a, et seq. ("PACA");

ORDER APPROVING SALE OF PROPERTY
4833-0726-0118,v.1

EXHIBIT 4, PAGE 66

18.     The Property is sold free and clear of any claim that the Property is subject to a trust or lien that might be created under the Packers and Stockyards Act, 7 U.S.C. §§ 181 *et seq.*, or under similar state laws;

19.     The Property is sold free and clear of any rights of any parties in possession of the Property;

20.     Except for FCW, the Property is sold free and clear of any interest of any party receiving notice of the hearing who failed to present any evidence of the validity, priority, and extent of its claims or liens against the Property, including but not limited to LeRoy E. Codding IV, Rabbit Ridge Wine Sales, Inc., and any affiliates, principals, employees, or subsidiaries of LeRoy E. Codding IV or Rabbit Ridge Wine Sales, Inc.;

21.     The Motion is granted and the Purchase and Sale Agreement and Escrow Instructions, including addendums and amendments attached to the Motion as **Exhibits "1" and "2"** are approved, and Trustee is authorized to execute the PSA, its exhibits and any further necessary amendments thereto;

22.     The sale of the Property shall be "as-is" and "where-is" with all faults and without warranty, representation, or recourse whatsoever;

23.     The 14-day stay regarding the effectiveness of the order is waived; and

24.     This Court retains jurisdiction: (a) to interpret, enforce, and implement the terms and provisions of this sale; and (b) to resolve any disputes arising under or related to this order.

# # #

Date: March 4, 2022

Erithe Smith
United States Bankruptcy Judge

---

7

ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

1 | SIGNATURE PAGE TO ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR ORDER
(1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 2380 LIVE OAK ROAD,
2 | PASO ROBLES, CA: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND
CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; (D) FOR
3 | DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); AND (2)
AUTHORIZING AMENDMENT TO PURCHASE AND SALE AGREEMENT

4

5

6

7 | APPROVED AS TO FORM:

8

9 | FRANDZEL ROBINS BLOOM & CSATO, L.C.

10

11 | _____

12 | MICHAEL J. GOMEZ
REED S. WADDELL, Attorneys for
13 | FARM CREDIT WEST, FLCA

14

15 | SULMEYER KUPETZ

16

17 | _____

18 | VICTOR A. SAHN
STEVE BURNELL, Attorneys for
19 | RIBOLI PASO ROBLES, LLC

20

21

22

23

24

25

26

27

28

8

ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

EXHIBIT 4, PAGE 68

1  SIGNATURE PAGE TO ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR ORDER
(1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 2380 LIVE OAK ROAD,
2  PASO ROBLES, CA: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND
CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; (D) FOR
3  DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); AND (2)
AUTHORIZING AMENDMENT TO PURCHASE AND SALE AGREEMENT
4

5

6

7  APPROVED AS TO FORM:

8

9  FRANDZEL ROBINS BLOOM & CSATO, L.C.

10

11  _____

MICHAEL J. GOMEZ
12  REED S. WADDELL, Attorneys for
FARM CREDIT WEST, FLCA
13

14

15  SULMEYER KUPETZ

16

17  _____

VICTOR A. SAHN
18  STEVE BURNELL, Attorneys for
RIBOLI PASO ROBLES, LLC
19

20

21

22

23

24

25

26

27

28

8
ORDER APPROVING SALE OF PROPERTY

4833-0726-0118.v.1

EXHIBIT 4, PAGE 69

SIGNATURE PAGE TO ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 2380 LIVE OAK ROAD, PASO ROBLES, CA: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); AND (2) AUTHORIZING AMENDMENT TO PURCHASE AND SALE AGREEMENT

APPROVED AS TO FORM:


FRANDZEL ROBINS BLOOM & CSATO, L.C.

[See Attached Signature Page]

_____
MICHAEL J. GOMEZ
REED S. WADDELL, Attorneys for
FARM CREDIT WEST, FLCA



SULMEYER KUPETZ

[See Attached Signature Page]

_____
VICTOR A. SAHN
STEVE BURNELL, Attorneys for
RIBOLI PASO ROBLES, LLC

8
ORDER APPROVING SALE OF PROPERTY

4833-0726-0118,v.1

EXHIBIT  5

RICHARD A. MARSHACK
rmarshack@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620-5749
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| In re | Case No.: 8:20-bk-13014-ES |
|---|---|
| NORTHERN HOLDING LLC, | Chapter 7 |
| Debtor. | STATEMENT OF PROPERTY SOLD |
| | [NO HEARING REQUIRED] |

RICHARD A. MARSHACK, in his capacity as Chapter 7 Trustee ("Trustee") for the

Bankruptcy Estate of Northern Holding LLC, files this Statement of Property Sold pursuant to FRBP

6004(f)(1) and LBR 6004-1(g). Pursuant to the Sale Order entered March 4, 2022, Trustee has sold

the following property of the Estate. A true and correct copy of the escrow closing statement is

attached.

Asset Sold:    Estate's interest in 2380 Live Oak Road, Paso Robles, California

Purchaser:    Riboli Paso Robles, LLC

Sale Price:    $9,100,000

Dated: March 17, 2022                Respectfully submitted,

By:  /s/  Richard A. Marshack
        RICHARD A. MARSHACK
        Chapter 7 Trustee

1
STATEMENT OF PROPERTY SOLD

4882-9508-0214

EXHIBIT 5, PAGE 71

**A&A**
**ESCROW SERVICES, INC.**

415 N. Crescent Drive, Suite 320
Beverly Hills, CA 90210

Phone:  (310) 550-6055
Fax:    (310) 550-6130

### SELLER'S FINAL SETTLEMENT STATEMENT

**PROPERTY:**  2380 Live Oak Road
Paso Robles, CA 93446

**SELLER:**  Bankruptcy Estate of Northern Holding, LLC, Bankruptcy case number 8:20-bk-13014-MW

**DATE:**  March 15, 2022

**CLOSING DATE:**  March 15, 2022
**ESCROW NO.:**  105355-AA

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 9,100,000.00 |
| EMD paid to Trustee outside of escrow | 273,000.00 | |
| **PRORATIONS/ADJUSTMENTS** | | |
| 2nd 1/2 taxes 2021-2022 at $18,755.63/semi-annually from 03/15/2022 to 07/01/2022 | | 11,044.98 |
| **COMMISSION CHARGES** | | |
| Onyx Asset Advisors, LLC | 159,250.00 | |
| Hilco Real Estate, LLC | 159,250.00 | |
| **OTHER DEBITS/CREDITS** | | |
| MyNHD, Inc. for NHD Disclosure Report | 74.95 | |
| Bankruptcy Estate of Northern Holding, LLC for Trustee 2.25% compensation from funds on deposit with Seller POC (S) $204,750.00 | | |
| Bankruptcy Estate of Northern Holding, LLC to Trustee for hold for Attorney Fees from funds on deposit with Seller POC (S) $68,250.00 | 31,750.00 | |
| Bankruptcy Estate of Northern Holding, LLC to Trustee for reimbursement for insurance | 6,770.78 | |
| Bankruptcy Estate of Northern Holding, LLC to Trustee for reserve for future insurance costs | 15,000.00 | |
| Bankruptcy Estate of Northern Holding, LLC for Estate as miscellaneous contribution | 30,000.00 | |
| Bankruptcy Estate of Northern Holding, LLC for payment of fees to Lori Ensley, field agent | 12,000.00 | |
| Bankruptcy Estate of Northern Holding, LLC to Trustee to hold for attorney fees to reduce property tax liability | 6,000.00 | |
| **TITLE/TAXES/RECORDING CHARGES - Fidelity National Title** | | |
| Title - Owner's Title Insurance | 7,060.00 | |
| Title - Messenger Fee | 59.00 | |
| Title - Sub Escrow Fee | 62.50 | |
| Recording Sub & Recon | 20.00 | |
| Recording Sub & Recon | 20.00 | |
| Recording Court Order | 41.00 | |
| Transfer Tax - County to San Luis Obispo County | 10,010.00 | |
| 1st 1/2 Property Taxes 2021-22 +penalty to San Luis Obispo County Tax Collector | 20,631.19 | |
| 2nd 1/2 Property taxes 2021-22 to San Luis Obispo County Tax | 18,755.63 | |

EXHIBIT 5, PAGE 72

Case 8:20-bk-13014-ES   Doc 299   Filed 03/18/22   Entered 03/18/22 17:18:25   Desc
Main Document       Page 3 of 5

Date:  March 15, 2022                                                  Escrow No.:  105355-AA

Page 2 of 2:

|  | DEBITS | CREDITS |
|---|---|---|
| Collector | | |
| Supplemental taxes 2020-2021 to San Luis Obispo County Tax Collector | 5,940.01 | |
| Default Taxes 2020 -good to January 2022 to San Luis Obispo County Tax Collector | 33,690.81 | |
| | | |
| **ESCROW CHARGES - A & A Escrow Services, Inc.** | | |
| Title - Escrow Fee | 9,100.00 | |
| Title - 1099 Processing Fee to A & A Escrow Services Inc. | 75.00 | |
| Title - Drawing Documentation Fee | 75.00 | |
| Title - Wire Fee to A & A Escrow Services Inc. | 25.00 | |
| Title - Messenger/FedEx Fees to A & A Escrow Services Inc. | 45.00 | |
| Title - File Archive Fee* to Archive It! | 50.00 | |
| | | |
| **Net Proceeds to Farm Credit West per stipulation** | 8,312,289.11 | |
| | | |
| **TOTAL** | $ 9,111,044.98 | $ 9,111,044.98 |

### SAVE THIS STATEMENT FOR INCOME TAX PURPOSES

Multiple disbursements due to Bankruptcy Estate of Northern Holding, LLC in the total amount of $374,520.78 per stipulation. Seller received earnest money deposit in the sum of $273,000.00 outside of escrow. Balance of funds due to Estate in the amount of $101,520.78 consisting of the following:

| | |
|---|---|
| Bankruptcy Estate of Northern Holding, LLC for Trustee 2.25% compensation from funds on deposit with Seller POC (S) $204,750.00 | |
| Bankruptcy Estate of Northern Holding, LLC to Trustee for hold for Attorney Fees from funds on deposit with Seller POC (S) $68,250.00 | 31,750.00 |
| Bankruptcy Estate of Northern Holding, LLC to Trustee for reimbursement for insurance | 6,770.78 |
| Bankruptcy Estate of Northern Holding, LLC to Trustee for reserve for future insurance costs | 15,000.00 |
| Bankruptcy Estate of Northern Holding, LLC for Estate as miscellaneous contribution | 30,000.00 |
| Bankruptcy Estate of Northern Holding, LLC for payment of fees to Lori Ensley, field agent | 12,000.00 |
| Bankruptcy Estate of Northern Holding, LLC to Trustee to hold for attorney fees to reduce property tax liability | 6,000.00 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **STATEMENT OF PROPERTY SOLD** will be served
or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner
stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  **March
18, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On  **March 18, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will
be completed no later than 24 hours after the document is filed.

**DEBTOR**
NORTHERN HOLDING, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE SERVICE
13217 JAMBOREE RD #429
TUSTIN, CA 92782

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  _, I served the following persons
and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 18, 2022 | Pamela Kraus | /s/  Pamela Kraus |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 5, PAGE 74

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: continued:

- **INTERESTED PARTY COURTESY NEF:** William H Brownstein Brownsteinlaw.bill@gmail.com
- **INTERESTED PARTY COURTESY NEF:** Steve Burnell sburnell@sulmeyerlaw.com, sburnell@ecf.inforuptcy.com; sburnell@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com
- **ATTORNEY FOR U.S. TRUSTEE (SA):** Nancy S Goldenberg nancy.goldenberg@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR RESPONDENTS ERICH RUSSELL AND JOANNE RUSSELL:** Kari L Ley Ley1238@att.net
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE:** Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.:** Paul F Ready tamara@farmerandready.com
- **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
- **ATTORNEY FOR INTERESTED PARTY RIBOLI PASO ROBLES, LLC:** Victor A Sahn vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com; pdillamar@ecf.inforuptcy.com; vsahn@ecf.inforuptcy.com; cblair@sulmeyerlaw.com; cblair@ecf.inforuptcy.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Kristine A Thagard kthagard@marshackhays.com, kthagard@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
- **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
- **INTERESTED PARTY COURTESY NEF:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 5, PAGE 75

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S MOTION TO AUTHORIZE CASH DISBURSEMENTS PURSUANT TO COURT-APPROVED STIPULATION FOR SUBORDINATION RE SALE PROCEEDS OF 2380 LIVE OAK ROAD, PASO ROBLES, CA; DECLARATION OF RICHARD A. MARSHACK; AND REQUEST FOR JUDICIAL NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 5, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **April 6, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
NORTHERN HOLDING, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT,
OR TO ANY OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE SERVICE
13217 JAMBOREE RD #429
TUSTIN, CA 92782

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 6, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

PURSUANT TO COURTROOM POLICIES AND PROCEDURES OF HONORABLE ERITHE A. SMITH, COURTROOM 5A, § VIII. JUDGES' OR COURTESY COPIES, EXCEPT FOR DOCUMENTS 200 PAGES OR OVER, INCLUDING EXHIBITS, JUDGE SMITH **DOES NOT** REQUIRE JUDGES' COPIES.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 6, 2022 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                      **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **INTERESTED PARTY COURTESY NEF:** William H Brownstein Brownsteinlaw.bill@gmail.com
   - **INTERESTED PARTY COURTESY NEF:** Steve Burnell sburnell@sulmeyerlaw.com, sburnell@ecf.courtdrive.com; sburnell@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com
   - **ATTORNEY FOR INTERESTED PARTY LEE CODDING:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **ATTORNEY FOR U.S. TRUSTEE (SA):** Nancy S Goldenberg nancy.goldenberg@usdoj.gov
   - **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Michael J Gomez mgomez@frandzel.com, dmoore@frandzel.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR INTERESTED PARTY LEE CODDING:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR RESPONDENTS ERICH RUSSELL AND JOANNE RUSSELL:** Kari L Ley Ley1238@att.net
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
   - **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
   - **ATTORNEY FOR INTERESTED PARTY BANK DIRECT CAPITAL FINANCE:** Elissa Miller emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
   - **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Roksana D. Moradi-Brovia roksana@rhmfirm.com, matt@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
   - **ATTORNEY FOR CREDITOR ADLER BELMONT GROUP, INC.:** Paul F Ready tamara@farmerandready.com
   - **ATTORNEY FOR DEBTOR NORTHERN HOLDING LLC:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com
   - **ATTORNEY FOR INTERESTED PARTY RIBOLI PASO ROBLES, LLC:** Victor A Sahn vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com; pdillamar@ecf.inforuptcy.com; vsahn@ecf.inforuptcy.com; cblair@sulmeyerlaw.com; cblair@ecf.inforuptcy.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Kristine A Thagard kthagard@marshackhays.com, kthagard@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
   - **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Reed S Waddell rwaddell@frandzel.com, sking@frandzel.com
   - **ATTORNEY FOR CREDITOR FARM CREDIT WEST, FLCA:** Gerrick Warrington gwarrington@frandzel.com, sking@frandzel.com
   - **INTERESTED PARTY COURTESY NEF:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**